Joseph E. Caceres, Esq. (SBN 169164)
Charles Shamash, Esq. (SBN 178110)
CACERES & SHAMASH, LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212
Tel: (310) 205-3400
Fax: (310) 878-8308
Email: jec@locs.com

Attorneys for Claimant Atabek & Co.

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:25-bk-11235-NB |
| ITKIN & SABADASH, | Chapter 7 (Involuntary) |
| | **OPPOSITION OF ATABEK & CO. TO OBJECTION TO CLAIM NO. 10 FILED BY PUTATIVE PARTNER ALEXANDER SABADASH; DECLARATIONS OF ELENA GOFMAN, JON ATABEK, AND GARRY Y. ITKIN IN SUPPORT THEREOF** |
| | **[Re: Dkt. # 33]** |
| Debtor. | ***DECLARATION OF ELENA GOFMAN FILED SEPARATELY HEREWITH*** |
| | Date: June 3, 2025 |
| | Time: 2:00 p.m. |
| | Ctrm: 1545 |
| | 255 E. Temple Street |
| | Los Angeles, CA 90012 |

//

//

//

//

1

2

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ......................................................................................... 1

II.     STATEMENT OF FACTS ............................................................................ 2

III.    ARGUMENT ................................................................................................ 2

    A.      General Standards Regarding Objections to Claims................................. 2

    B.      Sabadash Admits that the Claim Objection is Premature ...................... 3

    C.      The Atabek Claim is a Legitimate Claim Against Itkin & Sabadash ................. 4

        1.    The Itkin & Sabadash Partnership Exists ........................................... 4

        2.    Atabek's Services Were for I&S, not Itkin Personally  ................... 6

        3.    Atabek's Fees Are Reasonable.......................................................... 8

        4.    Atabek's Claim is Not Barred by Any Statute of Limitations ........................ 8

        5.    Garry Itkin's Trial Testimony Did Not Magically Dissolve the
            Partnership ...................................................................................... 10

IV.     CONCLUSION.............................................................................................. 11

DECLARATION OF ELENA GOFMAN with EXHIBITS…………................. (separately filed)

DECLARATION OF JON ATABEK............................................................... . 12

DECLARATION OF GARRY Y. ITKIN ....................................................... . 18

LIST OF EXHIBITS ....................................................................................... .22

1  **TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE,**

2  **THE UNITED STATES TRUSTEE, AND OBJECTING PARTY:**

3      Claimant ATABEK & CO. ("Atabek") hereby submits its *Opposition of Atabek & Co. to*

4  *Objection to Claim No. 10 Filed by Putative Partner Alexander Sabadash; Declarations of Elena*

5  *Gofman, Jon Atabek, and Garry Y. Itkin in Support Thereof*, as follows.

6  **I.    INTRODUCTION**

7      The objection to Atabek's claim (the "Claim Objection") filed by self-described

8  "putative partner" Alexander Sabadash ("Sabadash") is largely based on his contention that the

9  "Itkin & Sabadash" partnership does not exist, such that there can be no claims against it.  As

10  Sabadash knows, however, a finding on that issue has not yet been made by this Court, although

11  he placed it squarely before the Court by virtue of his pending motion to dismiss the involuntary

12  petition.  Hence, the Claim Objection is premature, and should await a finding on the issue of the

13  existence of the partnership by this Court, as that decision could make the objection to claim moot

14  regardless of which way the Court rules (if it rules there is a partnership, the Claim Objection has

15  no merit; if it rules there is not, the case would presumably be dismissed).  Moreover, the Court

16  indicated at the initial hearing on the motion to dismiss that it was considering abstaining from

17  the involuntary, which might also moot the Claim Objection.

18      In apparent recognition of the foregoing, Sabadash admits that the Claim Objection is

19  premature, while also arguing that the Atabek Claim itself is premature.  Atabek agrees

20  wholeheartedly that the Claim Objection is premature for the reasons set forth above; but

21  disagrees with the contention that the claim itself is premature, as that latter contention stands

22  solely on Sabadash's spurious assertion that the claim was somehow filed "too early."  This is

23  nonsensical.  Moreover, after admitting that his Objection is premature, Sabadash goes on to

24  argue that the claim should be disallowed.  This is also nonsensical – since both parties agree that

25  the Objection is premature, it should be summarily overruled.

26      Should the Court, however, decide that a ruling on the merits of Atabek's claim is

27  appropriate despite the foregoing, the claim is valid for the reasons set forth below, including that

28  Atabek performed duties for the partnership, and Mr. Itkin affirmed and acknowledged the debt

1    as a partner of Itkin & Sabadash. Moreover, Sabadash's assertion that Atabek's claim is barred

2    by the statute of limitations has no merit. Finally, Sabadash's apparent conclusion that Garry

3    Itkin's trial testimony that he thought the partnership "ended" in 2016 somehow established that

4    the partnership was magically dissolved at that time is plainly incorrect; not to mention that it

5    flies in the face of his mantra that the partnership never existed in the first place.

6    **II.    STATEMENT OF FACTS**

7         The background of this case is described in detail in Petitioning General Partner

8    Garry Y. Itkin's *Opposition to Putative Partner Alexander Sabadash's Motion to Dismiss*

9    *Involuntary Petition Under FRCP 12(b)(l) and 12(b)(6) or, in the Alternative, Motion for*

10    *Summary Judgment*, filed April 8, 2025 as Dkt. # 16 ("Opposition to Motion to Dismiss"), and

11    currently before the Court on the same date and time as the Claim Objection. Hence, rather than

12    repeat that background, Atabek incorporates the factual recitation in the Opposition to Motion to

13    Dismiss herein by reference.

14    **III.    ARGUMENT**

15         **A.    General Standards Regarding Objections to Claims**

16         Pursuant to 11 U.S.C. § 502(a), a proof of claim is deemed allowed unless a party in

17    interest objects. Under Fed.R.Bankr.Proc. 3001(f), a proof of claim "filed in accordance with

18    these rules shall constitute *prima facie* evidence of the validity and amount of the claim." *See*

19    *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000).

20         When a creditor has filed a proof of claim that complies with the rules (thereby giving

21    rise to the presumption of validity), the burden shifts to the objecting party who must "present

22    evidence to overcome the prima facie case." *In re Medina*, 205 B.R. 216, 222 (9th Cir. B.A.P.

23    1996). To defeat the claim, the objecting party must provide sufficient evidence and "show facts

24    tending to defeat the claim by probative force equal to that of the allegations of the proofs of

25    claim themselves." *Lundell*, 223 F.3d at 1039 (quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir.

26    1991)). "The objector must produce evidence, which, if believed, would refute at least one of the

27    allegations that is essential to the claim's legal sufficiency." *Lundell*, 223 F.3d at 1040 (quoting

28    *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173-74 (3rd Cir. 1992)). If the objecting party produces

1   sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden

2   reverts back to the claimant to prove the validity of the claim by a preponderance of the evidence.

3   *See In re Consol. Pioneer Mort*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3rd 151 (9th

4   Cir. 1996) (quoting *Allegheny Int'l*, 954 F.2d at 173-74).

5              **B.**       **Sabadash Admits that the Claim Objection is Premature**

6          In apparent recognition of the realities of this case, Sabadash admits that the Claim

7   Objection is premature, and Atabek agrees.  The Claim Objection is largely based on Sabadash's

8   contention that the "Itkin & Sabadash" partnership does not exist, such that there can be no claims

9   against it.  As Sabadash knows, however, a finding on that issue has not yet been made by this

10  Court, although he placed it squarely before the Court by virtue of his pending *Motion to Dismiss*

11  *Involuntary Petition*, filed <u>March 20, 2025</u> as <u>Dkt. # 8</u> (the "Motion to Dismiss"), initially heard

12  before this Court at the first hearing on the matter on April 22, 2025 at 11:00 a.m., and continued

13  to the above date and time.  Hence, the Claim Objection should await a finding on the issue of the

14  existence of the partnership by this Court on that motion, as that decision could make the

15  objection to claim moot regardless of which way the Court rules (if there is a partnership, the

16  Claim Objection has no merit; if there is not, the case would presumably be dismissed).

17  Moreover, the Court indicated at the initial hearing on the Motion to Dismiss that it was

18  considering abstaining from the involuntary, which might also moot the Claim Objection.

19         Sabadash's contention, on the other hand, that the claim itself is also premature is

20  nonsensical, as that contention stands solely on his spurious assertion that the claim was somehow

21  filed "too early."  This makes no sense whatsoever.  FRBP 3002(c) sets an outside date for claims

22  to be filed, but it does not preclude an earlier filing, even in the involuntary period.  Moreover, it

23  stands to reason that creditors who filed joinders should be entitled to file claims to substantiate

24  their joinders; indeed, if the claims were not filed, Sabadash would surely be kicking and

25  screaming that those who filed joinders had not even filed claims.

26         In any event, after admitting that the Claim Objection is premature, Sabadash goes on to

27  argue that the claim should be disallowed.  This is nonsensical – since both parties agree that the

28  Objection is premature, the inquiry should end there, pending a decision on the issue of whether a

1    partnership exists, and on the Motion to Dismiss in general, given the possibility of abstention

2    raised by the Court.

3        For the foregoing reasons, Atabek agrees that the Claim Objection is premature, such that

4    the Claim Objection should be overruled on this basis alone.

5        **C.    The Atabek Claim is a Legitimate Claim Against Itkin & Sabadash**

6            **1.  The Itkin & Sabadash Partnership Exists**

7        As more fully set forth in the Declaration of Elena Gofman ("Gofman Decl.") filed

8    separately herewith, she (Gofman) is a Russian tax attorney that sued the Itkin/Sabadash

9    Partnership in Moscow and Los Angeles for unpaid legal fees, and received a monetary

10   judgement against Itkin & Sabadash in both jurisdictions.  Moreover, Gofman's judgment

11   specifically confirms the existence of the Itkin & Sabadash Partnership.

12       Not surprisingly, Sabadash completely ignores these facts, instead engaging in wild

13   speculation and opinion regarding alleged fraud on the part of Gofman and Mr. Itkin in obtaining

14   the judgment, trying to goad them into an unnecessary exercise of trying to prove a negative.  It is

15   noteworthy that Sabadash never made any allegations that the Moscow judgement was fake,

16   fraudulent, or based on counterfeit or forged documents in any of the 5 trial or appellate courts,

17   including the Los Angeles Superior Court, that considered the issues, yet now speculates wildly

18   that Gofman "appears" to be one of Mr. Itkin's personal lawyers, hired specifically to fake a

19   partnership through court judgments.  If true, why did Sabadash wait until now to make this

20   argument?  Not even Mr. Zorkin, who of course filed the instant Claim Objection, raised such

21   issues in the L.A. Superior Court.  The judgment referred to in the attached Gofman Decl. speaks

22   for itself; it cannot now be wished away by collateral attack in a different forum.  *See* Gofman

23   Decl., and **Exhibits A-H** thereto.

24       Regardless, if Sabadash believed the judgments were obtained fraudulently, his remedy

25   was to go back to the courts that issued them, not to seek to collaterally attack them in the context

26   of a claim objection, which is prohibited under the doctrines of res judicata and/or collateral

27   estoppel, as well as the *Rooker-Feldman* doctrine.  The United States Supreme Court explained as

28   follows in *Montana v. United States*, 440 U.S. 147 (1979):

4

1

2      A fundamental precept of common-law adjudication, embodied in the related doctrines of

3      collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue
       and directly determined by a court of competent jurisdiction ... cannot be disputed in a

4      subsequent suit between the same parties or their privies .... " *Southern Pacific R. Co. v.
       United States*, 168 U.S. 1. 48-49 (1897).  Under res judicata, a final judgment on the

5      merits bars further claims by parties or their privies based on the same cause of action.
       *Cromwell v. County of Sac*, 94 U.S. 351. 352 (1877); *Lawlor v. National Screen Service

6      Corp*., 349 U.S. 322, 326 (1955); 1BJ. Moore, Federal Practice if 0.405 [1], pp. 621-624
       (2d ed. 1974) (hereinafter 1B Moore); Restatement (Second) of Judgments § 47 (Tent.

7      Draft No.1 Mar. 28, 1973) (merger); id., § 48 (bar). Under collateral estoppel, once an
       issue is actually and necessarily determined by a court of competent jurisdiction, that

8      determination is conclusive in subsequent suits based on a different cause of action
       involving a party to the prior litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326

9      n. 5 (1979); Scott, Collateral Estoppel by Judgment, 56 Harv. L. Rev.1, 2-3 (1942);

10     Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, Apr. 15, 1977) (issue
       preclusion). Application of both doctrines is central to the purpose for which civil courts

11     have been established, the conclusive resolution of disputes within their jurisdictions.
       *Southern Pacific R. Co., supra, at 49*; *Hart Steel Co. v. Railroad Supply Co*., 244 U. S.

12     294. 299 (1917). To preclude parties from contesting matters that they have had a full and
       fair opportunity to litigate protects their adversaries from the expense and vexation

13     attending multiple lawsuits, conserves judicial resources, 154*154 and fosters reliance on

14     judicial action by minimizing the possibility of inconsistent decisions.

15
           In addition to the foregoing, the *Rooker-Feldman* doctrine applies to bar the action
16
       Sabadash is trying to take here.  This doctrine takes its name from *Rooker v. Fidelity Trust Co*.,
17
       263 US. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 US. 462 (1983).
18
19     In *Rooker*, the court held that federal statutory jurisdiction over direct appeals from state courts

20     lies exclusively in the United States Supreme Court and is beyond the original jurisdiction of

21     federal district courts.  *See* 263 U.S. at 415-16.  In *Feldman*, the court held that this jurisdictional

22     bar extends to particular claims that are "inextricably intertwined" with those claims that a state

23
       court has already decided.  *See* 460 U.S. at 486-87.  This is just such a case, as the exact same
24
       judgment is being attacked as fraudulent.
25

26         In short, five courts, including a California state court, have already considered and ruled

27     in Gofman's favor on the issue of the existence of a partnership and Gofman's entitlement to a

28     judgment against it.  Sabadash would have this court throw out all of these rulings and declare

Gofman's judgment to be fraudulent, notwithstanding the principles of res judicata and collateral

estoppel (issue preclusion), as well as the *Rooker-Feldman* doctrine. Making matters worse, he

asks that this Court do so based on nothing but his opinion and speculation. This attempt should

be rejected.

### 2.    Atabek's Services Were for I&S, not Itkin Personally

In line with Sabadash's modus operandi in this case, he claims that Atabak's claim is

invalid because he was really working for Garry Itkin, again relying on the tired argument that the

partnership does not exist. He also challenges the validity of Atabek's claim by asserting, among

other things discussed in the sections of this brief below, that Atabek's work was for Itkin

personally and that he had no authority to represent the partnership (which he was "told" by

Sabadash's attorney, of course), and that the representation suffered from a conflict of interest.

Each of these arguments fail.

First, as set forth above, a partnership does exist; and no amount of wishing it away on

Sabadash's part, or repeating his tired opinion that the Russian and Los Angeles rulings were

obtained by fraud, will change that. Again, if Sabadash wanted to challenge the rulings of the

various Russian courts and the L.A. Superior Court, his remedy was to go back to the courts that

issued them, not to seek to collaterally attack them in the context of a claim objection before this

Court.

Second, as set forth in much detail in the attached Declaration of Jon Atabek ("Atabek

Decl."), all of the work done by Atabek was indeed done for the partnership, notwithstanding

Sabadash's self-serving statements to the contrary. He was hired by Mr. Itkin on behalf of the

partnership pursuant to written retainer agreement, to defend a lawsuit filed by Elena Gofman

("Gofman") in the Los Angeles Superior Court to domesticate a foreign judgment against Itkin &

Sabadash, styled *Gofman v. Itkin and Sabadash*, Case No. 19STCP01412 (the "Gofman

Domestication Suit"). As Mr. Itkin was not named personally in this lawsuit, it stands to reason

1  that Atabek's defense was on behalf of the partnership.  Moreover, if Sabadash believes that his

2  proclamation that Atabek had no "authority" to represent the partnership – a partnership he

3  simultaneously claimed didn't exist – carries the weight of law or a court order, he is sadly

4  mistaken.  In other words, his proclamation is meaningless.[1]

5       Third, regarding conflicts of interest, as also discussed in the attached Atabek Decl.,

6  Atabek believes there was no such conflict because his representation of Itkin in a different suit

7  against Sabadash would not harm the partnership that he was representing against Gofman's suit.

8  Regardless, Itkin waived any such conflicts on behalf of the partnership.  *See* Atabek Decl. and

9  **Exhibit I** thereto; *see also* Itkin Decl.  Moreover, the parties' dealings make clear Atabek had

10  little choice but to continue to represent the partnership. When Atabek first began work for the

11  partnership, and before filing an Answer on its behalf in the Gofman suit, he inquired with

12  Sabadash's counsel in the partnership dissolution proceedings in state court.  *See* Atabek Decl.

13  Having received no objection, Atabek filed an Answer for the partnership, thereby making a

14  general appearance as its counsel of record. *Id.*  Indeed, Atabek first learned of Sabadash's

15  objection to that course of conduct on May 15, 2019 - day after Atabek had already appeared as

16  

17  counsel of record for the partnership.  *Id.* During those meet and confer efforts, Sabadash's

18  counsel refused to direct Atabek on behalf of the partnership, because Sabadash continued to

19  deny its existence.  *Id.*  Accordingly, Atabek continued to represent the partnership, based on his

20  understanding that nobody else would be stepping in to defend the partnership, particularly where

21  he had not been relieved of his duties as counsel of record by the trial court.  *Id.*

22       Finally, in his capacity as general partner of the partnership, Itkin promised to reimburse

---

[1] The parties' contemporaneous conduct also belies Sabadash's authority argument. As the domestication proceedings progressed, Sabadash's counsel even cooperated with Atabek (though to a very limited extent).  Indeed, Atabek continued to keep Sabadash's attorneys "in the loop" during the representation, and at other points in time, even cooperated with said counsel in light of a pending appeal filed in Russia that could serve as a total defense to the Gofman's domestication lawsuit.  *See* Atabek Decl.

7

Atabek for his fees, and periodically reaffirmed that promise, on behalf of the partnership.  *See* Atabek Decl. and Itkin Decl.

### 3. Atabek's Fees Are Reasonable

Sabadash also claims Atabek's fees are "unreasonable," although not entirely clear as to what he is basing this on.  If based on his belief that there is no partnership, he is incorrect for reasons previously stated.  If based somehow on the amount of the fees, Atabek is claiming only $21,358.88. This includes five years of pre-judgment interest on an original bill of only $13,694 relating to ten months of litigation, billed at the incredibly reasonable rate of $495 per hour—a rate other courts have confirmed at or around that time.  Moreover, the extent of those bills was exacerbated by having to respond to communications, accusations, threats, and motions lobbed by Sabadash.  Given the fact that Sabadash multiplied those proceedings substantially, his complaint that Atabek overbilled for his services is untrue and unfair.  *See* Atabek Decl.

### 4. Atabek's Claim is Not Barred by Any Statute of Limitations

Next, Sabadash asserts that Atabek's claim is barred by the "2 or 4" year statute of limitations, without any analysis whatsoever, or even citation to any such statute, whether from California (presumably he is referring to the 2 and 4 year statutes of limitation of *Calif. Code of Civ. Proc.* ("CCP") §§ 339 and 337, respectively)[2]; or from Russia.[3]  Regardless, as more fully set forth in the attached Declaration of I&S partner Garry Y. Itkin ("Itkin Dec."), this contention has

---

[2] *Calif. CCP § 337* provides, in pertinent part, that an action shall be commenced within 4 years if based on "(a) An action upon any contract, obligation or liability founded upon an instrument in writing…" or "(b) An action to recover (1) upon a book account whether consisting of one or more entries; (2) upon an account stated based upon an account in writing, but the acknowledgment of the account stated need not be in writing; (3) a balance due upon a mutual, open and current account, the items of which are in writing…."

*Calif. CCP § 339* provides, in pertinent part, that an action shall be commenced within 2 years if based on "1. An action upon a contract, obligation or liability not founded upon an instrument of writing…."

[3] In Russia, the statute of limitations is either 3 years if the debtor does not admit the debt, and 10 years if debtor does admit it, pursuant to its *Civil Code Section 196,* titled "General Statutes of Limitation Periods."  With regard to the 10-year period, the statute states, in pertinent part, that "The limitation period may not exceed ten years from the date of violation of the right for the protection of which this period is established…."

8

no merit, regardless of whether the California statute of limitations or the Russian statute of limitations applies, for the simple reason that Mr. Itkin continuously (at least once a year), spoke with Atabek (and others) and promised to pay them so as to avert further lawsuits such as Gofman's, hoping for the Los Angeles court to dissolve the Itkin & Sabadash Partnership so that its assets could be sold and debts paid.  He also issued these promises in writing.  *See* Itkin Decl.

Moreover, Atabek's focus on the fact that the invoice was only recently created is misplaced. While an obligation to pay did arise when Atabek performed the work, the payment was not due until Atabek billed for that work.  As noted by Sabadash, that work was not billed until after the initiation of these bankruptcy proceedings—thus any applicable statute of limitations had yet to even accrue.  Moreover, as noted in the Atabek Decl., the only reason Atabek had not previously billed the partnership for that work was because of his agreement with Itkin to wait to collect until after the partnership could be judicially dissolved, and its assets applied to pay Atabek's bill (as noted in Atabek's declaration, the Retainer Agreement specifically contemplated that payment would come from this source).  *Id*.  Unfortunately, due to the intervening Covid-19 Pandemic and subsequent international proceedings, Atabek's ability to collect on those bills was delayed, and before he could be paid for his services, the partnership was placed in involuntary bankruptcy, prompting Atabek to generate a bill and assert his claim to avoid losing it.  *Id*.  In short, the timing of the bill does not reflect any nefarious intent or scheming on the part of either Atabek or Itkin.  Certainly Sabadash cannot be heard to say that the work being billed was not done or the bill was made up, given his counsel's many communications with Atabek during the course of that very engagement.  The invoice is for actual work performed, and the timing of the bill does not change this.

For the foregoing reasons, both statutes of limitations, California's and Russia's, never accrued, but even if they did, were restarted and/or waived by acknowledgment of the debt, as allowed under *Calif. CCP* § 360 (providing that written acknowledgment or promise regarding

1  debt takes such debt out of the operation of statute of limitations), and Russian *Civil Code Section*
2  *196* (extending statute of limitations to 10 years where debtor admits the debt, as here).

3  ### 5.  Garry Itkin's Trial Testimony Did Not Magically Dissolve the Partnership

4  Finally, Sabadash's apparent conclusion that Garry Itkin's testimony during trial that he
5  thought the partnership "ended" in 2016 somehow established that the partnership was magically
6  dissolved at that time is plainly incorrect.  Moreover, this contention flies in the face of
7  Sabadash's mantra that the partnership never existed in the first place.
8
9  As set forth in more detail in the attached Itkin Decl., what Itkin meant in this testimony
10  was that when he was removed from his offices and was refused to have monies owed to him
11  paid, the partnership ended in its functionality; i.e., it stopped operating.  That is precisely why he
12  sued in State Court in the first place to dissolve the partnership, liquidate its assets, pay any debts
13  due, and determine the financial relationship between the partners.  If Sabadash was correct that
14  the partnership magically "dissolved" in 2016 just because of Itkin's use of the word "ended" in
15  trial testimony, Itkin would not have needed to file the lawsuit.  Moreover, it goes without saying
16  that a partnership cannot magically dissolve itself, but has to follow proper legal procedures,
17  either by a voluntary process between the partners or court order, to do so.  Unfortunately, the
18  lawsuit ended in a mistrial and stay due to the Covid-19 pandemic.
19
20  Although the partnership effectively stopped operating when Sabadash sought to freeze
21  out Itkin, a partnership can still exist, be sued, and incur debts even after its termination. *Credit*
22  *Bureaus of Merced County, Inc. v. Fuller*, 199 Cal.App.2d 495, 497–498 (1962) (noting that until
23  a formal notice of dissolution is published, that a partnership may continue to incur debts, and
24  that the partner denying the existence of the debt bears the burden of proof regarding public
25  notice given of such dissolution).  Indeed, Itkin's cross-complaint in the state court litigation
26  between Itkin and Sabadash sought to wind down that very same partnership to limit further
27
28  exposure through the partnership, but those proceedings were never concluded, in large part due

10

to Sabadash's procedural machinations in the Jersey courts, seeking to grind the partnership

dissolution proceedings to a halt through foreign liquidation proceedings.

For all of the foregong reasons, Sabadash's argument regarding termination of the

partnership has no merit.

## IV.    <u>CONCLUSION</u>

For all of the above reasons, the Claim Objection must be (1) overruled as

premature pending this court's decision on whether a partnership exists, whether to

dismiss the case, or whether to abstain from it; or (2) should the Court decide that a ruling

on the merits of the claim is appropriate at this time despite the foregoing, overrule the

Claim Objection on the basis that the claim is valid for the reasons set forth above.


Dated: May 20, 2025                    CACERES & SHAMASH, LLP

                                       /s/ Joseph E. Caceres
                                       _____
                                       Joseph E. Caceres, Esq.
                                       Charles Shamash, Esq.
                                       Attorneys for Claimant Atabek & Co.

**<u>DECLARATION OF JON ATABEK</u>**

I, Jon Atabek, declare as follows:

1.      I am an attorney licensed to practice in the state of California, admitted before both the state and federal courts, and the managing attorney of Atabek & Co.  I am over the age of 18. I make this declaration in response to the *Objection to Proof of Claim No. 10 Filed by Atabek & Co.* filed by putative partner Alexander Sabadash ("Sabadash"), and if called to testify under oath, I could and would testify competently to the matters set forth below.

2.      Sabadash's assertion that my company's claim is invalid because I was really working for Garry Itkin is incorrect, and relies on his mantra that the Itkin & Sabadash Partnership does not exist.  He also speculates wildly that the "invoice supporting the claim was created in 2025 to manufacture evidence for this proceeding."  This is categorically false.  He also claims that I was told that I had "no authority to represent the partnership on Itkin's behalf."  Not surprisingly, this proclamation came from one of Sabadash's own lawyers, which of course does not carry the weight of law or a court order.  Indeed, all of Sabadash's assertions against me are based wholly on his opinion and speculation.  The following explains my work for the partnership.

3.      On April 19, 2019, I was retained by Itkin & Sabadash partner Garry Y. Itkin ("Itkin") to defend a lawsuit filed by Elena Gofman ("Gofman") in the Los Angeles Superior Court to domesticate a foreign judgment against Itkin & Sabadash, styled Gofman v. Itkin and Sabadash, Case No. 19STCP01412 (the "Gofman Domestication Suit").  Itkin hired me to represent the partnership, not himself personally, as Itkin was not named in his personal capacity in the Gofman Domestication Suit. A true and correct copy of my Retainer Agreement and Conflict Waiver with Itkin & Sabadash is attached hereto as **<u>Exhibit I</u>** (as redacted due to concerns over attorney-client privilege).

12

4.      I immediately set to work on reviewing the underlying merits of the Gofman Domestication Suit, including review of the pleadings, relevant documents, and a rough translation of the judgment issued in Russia, as well as performing legal research regarding potential defenses to the domestication claim, in addition to engaging in substantial privileged communications with Itkin (acting in his capacity as a partner on behalf of the partnership) relating to the Gofman Domestication Suit.

5.      I was unable to communicate with Sabadash directly at that time. To my understanding, Sabadash was incarcerated in Russia (and remains so today).

6.      On May 2019, Itkin and Sabadash were adverse to one another in other court proceedings also pending the Los Angeles Superior Court, accusing each other of stealing from the partnership and various partnership entities, and seeking to terminate the partnership and distribute its assets (the "Partnership Suit"). I represented Itkin in the Partnership Suit, and three attorneys from the law firm of Manatt Phelps, Robert Platt, Reid Davis ("Davis"), and Michael Zorkin ("Zorkin"), represented Sabadash in that matter.  I did not believe there was a conflict because my representation of Itkin in this different suit against Sabadash would not harm the partnership that I was representing against Gofman's suit.  Regardless, Itkin waived any such conflicts on behalf of the partnership as set forth above.  *See* **Exhibit I**.

7.      Both because I had no means of direct communication, and because I represented a party adverse to Sabadash in the Partnership Suit, on May 10, 2019, I sent an email to Sabadash's counsel of record in the Partnership Suit, seeking to discuss the partnership's response to the pleadings in the Gofman Domestication Suit. I attached a copy of the Answer I proposed filing in that suit, together with a copy of Gofman's pleadings. I noted that I intended to file that Answer on May 13, 2019, unless I heard otherwise from Sabadash's lawyers. A true and correct copy of that email dated May 10, 2019, is attached hereto as **Exhibit J**.

8.      I filed the Answer in the Gofman Domestication Suit on behalf of the partnership on May 14, 2019, thereby making a general appearance as counsel of record for the partnership.

9.      On May 15, 2019, I received an email response from Mr. Davis (one of Sabadash's personal attorneys as set forth above), asserting his belief that Gofman's claim was manufactured, and that the partnership did not exist. Mr. Davis asserted that I was not authorized to take any action on behalf of a partnership involving Sabadash and threatening to seek sanctions against me. A true and correct copy of Mr. Davis's email response is attached hereto as **Exhibit K**.

10.     Throughout that day, I continued to meet and confer with Mr. Davis, noting the seeming contradiction between Sabadash's position that no partnership existed, and that Sabadash was somehow simultaneously instructing me not to act on behalf of a partnership that he denied existed. I also noted the written authority given to Itkin to manage partnership affairs, Sabadash's well-documented credibility issues, and explained I would continue to represent the partnership in the suit absent direction otherwise by a partner acting on behalf of the partnership. I also noted my concerns regarding incurring unnecessary fees on behalf of the partnership, both in the defense of the suit (given the seeming inevitability of domestication of the suit), and by Gofman, who would inevitably seek to recover her fees in the domestication action as well. A true and correct copy of my email communications with Mr. Davis throughout May 15, 2019, is attached hereto as **Exhibit L**.

11.     Based on my communications with Mr. Davis, I understood that Sabadash would not be stepping in to defend the lawsuit on behalf of the partnership, and thus I understood that I had to continue to do so unless and until I was relieved of my duties as counsel of record by the trial court.

12.     Despite the aggressive tack taken by Sabadash's counsel, I kept Sabadash's counsel "in the loop" as I continued to represent the partnership, forwarding relevant motions and communications I had with counsel for Gofman, Lee Lubin. As an example, I attached hereto as

14

**Exhibit M** a true and correct copy of my email to Mr. Davis forwarding Gofman's Motion for Judgment on the Pleadings.

13.    On or about July 16, 2019, Mr. Lubin notified me that Sabadash had filed some form of an appeal, or an application to file a late appeal (I was not clear on the exact procedure), in Russia. Notably, Sabadash's counsel chose not to copy me on the initial communication to Mr. Lubin on July 15, 2019. A true and correct copy of that email from Mr. Lubin is attached hereto as **Exhibit N**.

14.    On July 17, 2019, I received notice of Sabadash's ex parte application to either amend the Answer filed by the partnership in the Goffman Domestication Suit or to be permitted leave to intervene as a putative partner (the "Ex Parte"). A true and correct copy of the email I received attaching the Ex Parte is attached hereto as **Exhibit O**.

15.    I reviewed the Ex Parte Application, but ultimately did not oppose that application on behalf of the partnership, because a stay could have benefitted the partnership, and potential joinder by Sabadash could help clarify the difficult position I was put in by the allegations made against me by Sabadash's counsel. Specifically, a stay could have helped minimize fee exposure, and if the appeal in Russia was successful, it would be grounds to defeat the Gofman Domestication Suit altogether.

16.    I communicated this strategy to Sabadash's attorneys and asked that they keep me updated regarding the status of the appeal in Russia on a number of occasions. As an example, on August 7, 2019, I received an email from Mr. Lubin seeking to advance his motion for judgment on the pleadings. I forwarded that email to Mr. Davis, noting that I was not inclined to grant Mr. Lubin that courtesy on the chance that the Russian appeal could succeed and change the landscape of the Gofman Domestication Suit, noting that I would seek a stay on behalf of the partnership until after the Russian appeal could be ruled on. A true and correct copy of those emails sent on August 7, 2019, is attached hereto as **Exhibit P**.

17.     The appeal in Russia ultimately failed. Accordingly, I went back to seeking an efficient resolution of the Gofman Domestication Suit focused on mitigating fee exposure in light of the relatively small size of the overall claim (to avoid a "tail wagging the dog" situation with respect to fees).

18.     The Los Angeles Superior Court ultimately awarded Gofman a judgment against the partnership.

19.     Following the entry of the judgment, Mr. Lubin noted his intent to file a motion for attorneys' fees, and ultimately filed such a motion.

20.     I thereafter contacted Mr. Lubin to seek to negotiate a lesser agreed-upon amount of fees to resolve the matter without further motion practice. I noted that there was no guaranty that he could obtain fees available under Russian law in subsequent domestication proceedings based on the language of the contract he was seeking to enforce. We ultimately agreed upon a number.

21.     At each stage of my representation of the partnership, I understood that I was representing the partnership, and not Itkin in his personal capacity. If I was not satisfied based on my review of the evidence that the partnership existed, and that Itkin was authorized to act on its behalf, I would not have performed the substantial services that I had performed on behalf of that partnership. Moreover, given Sabadash's late response to my email (after I had already filed an Answer for the Partnership), I was effectively "stuck" representing the partnership at that time anyway.

22.     The services I performed were both highly efficient and reasonable in terms of the amounts I billed for them over the course of almost a year. At that time, $495 per hour was very low for a partner in a law firm with my same education and experience in the Los Angeles area, and I had been awarded that rate on more than one occasion.

23.     To the extent Sabadash's counsel questions the extent of such billing in a suit where the merits were largely unopposed, a large part of that billing arose from Sabadash's counsel's aggressive accusations, communications, and law and motion practice. Until Sabadash's counsel changed tack to a more cooperative approach after filing of the appeal in Russia, I was forced to respond to accusatory emails, ex parte applications, and other work created by Sabadash's attorneys, in addition to responding to the work created by Gofman and her counsel.

24.     Ultimately, at that time I did not yet bill the partnership for the work. Itkin promised to pay those bills through the partnership if and when the partnership was recognized by the Court in the Partnership Suit—indeed, trial in that matter was set to begin in early March 2020, but was cut short due to the Covid-19 Pandemic and resulting shut-down of the courts.  He periodically reaffirmed those promises to me.

25.     Indeed, my Retainer Agreement with Itkin & Sabadash specifically contemplated that my payment would ultimately come from the liquidation of partnership assets in the dissolution proceedings.  *See* **Exhibit I**.

26.     However, before that could happen, the partnership was put into involuntary bankruptcy on February 19, 2025, forcing me to generate a bill and assert my claim as part of those proceedings, or potentially lose my right to payment on my bills altogether.  This is why I issued my bill in March of 2025.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May __20__, 2025 at Newport Beach, California.


Jon Atabek

# DECLARATION OF GARRY Y. ITKIN

I, Garry Y. Itkin, declare as follows:

1.       I am a partner of Itkin & Sabadash, the Involuntary Debtor in this case.  I am over the age of 18.  The facts contained within this declaration are of my personal knowledge except where stated on information and belief, and if called upon to testify to them I would do so.  As to matters set forth on information and belief, I believe them to be true.

2.       Sabadash's assertion that Atabek & Co.'s  ("Atabek") claim is invalid because Atabek was really working for me personally is incorrect, and relies on his mantra that the Itkin & Sabadash Partnership does not exist.  He also speculates wildly that the "invoice supporting the claim was created in 2025 to manufacture evidence for this proceeding."  This is categorically false.  He also claims that Atabek was told that he had "no authority to represent the partnership on Itkin's behalf."  Not surprisingly, this proclamation came from one of Sabadash's own lawyers, which of course does not carry the weight of law or a court order.  Indeed, all of Sabadash's assertions against Atabek and myself are based wholly on his opinion and speculation (as are his other claims such as that I "paid Gofman to file the lawsuit to manufacture evidence").

3.       The work done for Itkin & Sabadash by Atabek is set forth in much detail in the attached Declaration of Jon Atabek ("Atabek Decl."), and I agree with his recitation of the work done in the matter described.  Regarding conflicts of interest, I too believe there was no such conflict because Atabek's representation of me in a different suit against Sabadash would not harm the partnership that he was representing against Gofman's suit.  Regardless, I waived any such conflicts on behalf of the partnership.  *See* **Exhibit I** (true and correct copy of Atabek Retainer Agreement and Conflict Waiver with Itkin & Sabadash (as redacted due to concerns with attorney-client privilege).  As to all other statements set forth in the Atabek Decl., such as those regarding Atabek's communications with Sabadash's and Gofman's attorneys, I am

1    informed and believe that they are true.

2        4.    By mutual agreement, and in my capacity as General Partner of the Partnership, I

3    promised to reimburse Atabek for his fees, and periodically acknowledged the debt and

4    reaffirmed that promise, on behalf of the partnership.  I also acknowledged the debt and

5    confirmed this promise in writing on July 29, 2022.  A true and correct copy of this letter is

6    attached hereto as **<u>Exhibit Q</u>** (as redacted due to concerns over attorney-client privilege).

7        5.    Sabadash also asserts that the "claims are barred by both the 2 or 4-year statute of

8    limitations for either oral or written obligations."  In this regard I note that I have continuously (at

9    least once a year), spoken with Atabek (and others) and promised to pay them so as to avert

10   further lawsuits such as Gofman's lawsuit that resulted in a judgment against Itkin & Sabadash.  I

11   also issued these promises in writing, as set forth above.  My hope was that the Los Angeles court

12   would dissolve the Itkin & Sabadash Partnership so that its assets could be sold and debts paid.

13   The sale of assets and resulting payment of creditors is also my goal for this involuntary case, and

14   
15   the reason I commenced the case as a general partner.

16       6.    In an attempt to show that no partnership exists, Sabadash asserts that because I

17   testified at trial in L.A. Sup.Ct. Case No. BC647351 that the partnership "ended" in 2016, that

18   meant in and of itself that the partnership was magically dissolved at that time.  Attached hereto

19   as **<u>Exhibit R</u>** is a true and correct copy of the relevant two pages of my trial testimony from

20   where he drew these conclusions (*see* p.25:18 – 26:3).  This is the exact testimony appearing on

21   those pages:

22       *Q. Are you still a member or in the partnership?*

23       *A. I don't think so. We're in a courtroom trying to enter [sic; end] this partnership and*

24       *figure out who owes what to whom.*

25       *Q. When did the partnership end?*

26       *MR. KABATECK: Calls for a legal conclusion.*

19

*THE COURT: Sustained.*

*Q. BY MR. PLATT: When did you believe the partnership ended?*

*A. I believe the partnership ended when I was removed from the offices and refused to be*

*paid monies that I'm owed.*

*Q. Would that be in 2016?*

*A. I believe so.*

What I meant in this testimony was that when I was removed from my offices and was refused to have monies owed to me paid, the partnership ended in its functionality; i.e., it stopped operating.  That is precisely why I sued in State Court to dissolve the partnership, liquidate its assets, pay any debts due, and determine the financial relationship between the partners.  If Sabadash was correct that the partnership magically "dissolved" in 2016, I would not have needed to file the lawsuit; but it was obvious to me even as a lay person that a partnership could not magically dissolve itself, but had to follow proper legal procedures, either by a voluntary process between the partners or court order, to do so.  Unfortunately, the lawsuit ended in a mistrial and stay due to the Covid-19 pandemic.

7.      In short, Sabadash's apparent conclusion that the foregoing established that the partnership was in essence "dissolved" in 2016 is incorrect; not to mention that it flies in the face of his mantra that the partnership never existed.

8.      Finally, as a partner of Itkin & Sabadash, I have reviewed all nine claims that have

//

//

//

//

//

//

20

been filed to date in the involuntary case, including the one discussed in this opposition, and

acknowledge that they are all valid claims against the partnership.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on May <u>20</u>, 2025 at Beverly Hills, California.


_Garry Itkin_
_____
Garry V. Itkin

# LIST OF EXHIBITS

Exhibit No.                                                                      Pages

EXHIBIT I -   Retainer Agreement and Conflict Waiver with Itkin & Sabadash (redacted)
              (dated 04/19/2019)…………………………………………….…….... 23-33

EXHIBIT J -   Email from Atabek to R. Davis re Answer to Gofman Domestication Suit
              (dated 05/10/2019)…………………………………………………..... 34-36

EXHIBIT K -   Email from R. Davis to Atabek Responding to 05/10/2019 Email
              (dated 05/15/2019)…………………………………………………..... 37-39

EXHIBIT L -   Emails Between Atabek and R. Davis re Meet & Confer
              (through 05/15/2019)………………………………………………..... 40-49

EXHIBIT M -  Email from Atabek to R. Davis Attaching Gofman MJP
              (dated 06/28/2019)…………………………………………………..... 50-51

EXHIBIT N -   Email from Lee Lubin to Atabek re Sabadash Appeal in Russia
              (dated 07/16/2019)…………………………………………………..... 52-55

EXHIBIT O -   Email from M. Zorkin to Atabek Attaching Ex Parte Application
              (dated 07/17/2019)…………………………………………………..... 56-58

EXHIBIT P -   Email from Atabek to M. Zorkin and R. Davis re Gofman MJP
              (dated 08/07/2019)…………………………………………………..... 59-62

EXHIBIT Q -   Itkin Letter Acknowledging Atabek Debt and Waiving SOL (redacted)
              (dated 07/29/2022)…………………………………………..………………… 63-64

EXHIBIT R -   Copy of Relevant Pages of Garry Itkin Trial Testimony…………………….. 65-67

# EXHIBIT I

0023



| | |
|---|---|
| Established In 2011 | Atabek & Associates, P.C.<br>16330 Bake Parkway<br>Irvine, CA 92618<br>T. (213) 394-5943<br>F. (213) 402-3413 |
| Of Counsel:<br>Robert M. Cohen<br>Sheila Alcabes | Attorneys:<br>Jon Atabek<br>jatabek@atabeklaw.com |

April 19, 2019

**VIA EMAIL ONLY**
Gary Itkin
T: 310.293.3333
itkin1@icloud.com

Re: Terms of Engagement for Legal Services

Dear Mr. Itkin:

We are pleased you have decided to retain Atabek & Associates, P.C. ("Attorneys") on behalf of Itkin and Sabadash, a general partnership ("Client") to render legal services in connection with its legal matter (the "Action"). Since California law encourages attorneys to reduce to writing the lawyer-client relationship, this Agreement (this "Agreement") sets forth the terms, conditions and limitations of your engagement of the Attorneys.

This letter agreement is entered into by and between you and the Attorneys, as of May 20, 2025; provided, that it will not take effect, and the Attorneys will have no obligation to provide legal services to you, until and unless you return a signed copy of this Agreement, and any retainer deposit funds have been delivered and those funds have cleared.

### Scope of Representation

The scope of our representation is limited to the representation of the Client in connection with the Action, a dispute between Elena Gofman, and the Client with respect to certain claims to domesticate a foreign country money judgment in California, in that case styled *Gofman v. Itkin and Sabadash, a general partnership, et al*, LASC 19STCP01412. This representation is limited to efforts to defendant the Action.

Our Firm's representation does not include (a) representing you in any related matters that may arise; or (b) representing you in pursuing claims for other benefits, pursuing or answering an appeal from a judgment or award in your Action, or taking steps to collect any judgment or award in your Action. The scope of our representation may expand from the work described above only as specifically agreed by both parties and subject to a separate retainer agreement pursuant to which the Attorneys may charge additional legal fees.

/ / /

/ / /

/ / /

CONFIDENTIAL
ATTORNEY/CLIENT COMMUNICATION

0024

CONFIDENTIAL
ATTORNEY/CLIENT COMMUNICATION

## Legal Fees – Retainer Deposit

### *Hourly Fee Arrangement*

Client shall pay and Attorney shall accept fees based on services rendered per hour, billed in one tenths (.1) of an hour, according to the following scheduled rate for services rendered: The rate of $495.00 per hour for Jon A. Atabek, Esq.

### *Retainer Deposit*

Client is not responsible for delivering a retainer deposit. Rather, Client agrees to pay Attorneys as part of dissolution proceedings out of the liquidation of partnership assets, which proceedings are currently pending in the Los Angeles Superior Court in that matter styled *AFB Trading One, Inc., et al, v. Itkin, et al.*

### *Billing*

At various times, Attorneys will send you a bill for their services for a given period of time. All sums billed are immediately due and owing on the date the bill is mailed to you. Bills will include a summary of services rendered on the Client's behalf, the hours spent on said services, any sums owed carried over from previous bills, costs advanced on Client's behalf, and the total amounts due and owing on the date of the bill.

### *Award of Attorneys' Fees*

In the event that your recovery includes an award of attorneys' fees and costs, the Attorneys would be entitled recover any sums then due and owing by Client in favor of Attorneys from the award, prior to any sums being paid to the Client.

### *Award of Sanctions*

Monetary sanctions awarded to the Attorneys during the course of any litigation, arbitration or other formal proceeding shall not be considered part of your recovery, unless intended as recovery to you by the applicable court or other adjudicative body. Any such sanctions shall be deemed compensation to, and shall belong to, the Attorneys for extraordinary time and effort expended as a result of an opposing party's bad faith conduct or failure to comply with discovery demands, court orders or similar obligations.  But if the sanctions award includes an item of cost (such as the filing fee for making a motion), the amount thereof shall be credited to your costs account upon reimbursement of costs to the Attorneys.

## Legal Costs

Client is responsible for all litigation costs. Attorneys will occasionally advance costs of litigation, including, but not limited to, costs of investigators, process servers, attorney services and messengers, court reporters, expert witnesses, discovery referees and mediators, filing fees and other court costs, and charges for long distance telephone calls, photocopies, postage and fax charges (in each case, to the extent applicable).  Costs are due as they are billed.

ATABEK & ASSOCIATES, P.C.
Attorneys at Law
10171.10

Page 2 of 5

Gofman v. Itkin and Sabadash Partnership
Retainer Agreement
LASC Case No. 19STCP01412

0025

CONFIDENTIAL
ATTORNEY/CLIENT COMMUNICATION

In addition, you understand that if your case proceeds to court action or arbitration, you may be required to pay fees and/or costs to other parties in the Action. Any such award shall be entirely your responsibility.

## Client Responsibilities

You acknowledge that your responsibilities as a client include, without limitation, being reasonably available, in person and by telephone, to communicate with the Attorneys on all aspects of your matter, to be truthful and forthright in all of your communications with the Attorneys, to provide the Attorneys with all relevant information, witness contacts, and documents in a timely manner, to keep us advised of your current work and home addresses and telephone numbers at all times, to comply with your monetary obligations set forth in this agreement, to take no action that will jeopardize or diminish your claims, and to not unreasonably refuse a settlement offer which we recommend you take, or unreasonably agree to accept a settlement offer we recommend that you not take.

Your obligation to be reasonable with respect to the acceptance of a settlement offer is a material condition of our agreement to represent you on a contingency fee basis. Accordingly, if you refuse to accept a reasonable settlement offer, or insist on accepting an unreasonable offer, either of us will have the right to terminate our attorney-client relationship at that time. You will not make any settlement of any nature of any of your claims without prior notice to the Attorneys.

## Firm Discretion and Outside Attorneys

You understand the Attorneys may do whatever it deems advisable in this matter in its discretion, including, but not limited to, continuing hearings, trials, and other dates as necessary to accommodate Attorneys' schedules, entering into procedural stipulations and other agreements with the opposing party as necessary to advance the Action, hiring investigators, paralegals, experts, and any and all other services. You also agree that the Attorneys may (a) assign any lawyers associated with the Attorneys to your matter; and (b) engage one or more outside or "contract" attorneys to perform services (including, without limitation, to appear on your behalf in any proceeding or lawsuit) and may share fees with them, whether hourly, contingent or otherwise.

## No Guarantee as to Result

No law firm or attorneys, including the Attorneys and our attorneys, can guarantee the outcome of any actual or potential legal dispute or transactional matter. Thus, although an attorney or attorneys of the Attorneys may offer an opinion about possible results regarding the Action or any other matter in which we represent or advise, we do not and cannot guarantee any particular result, and any expressions by us that may suggest otherwise are matters of opinion only.

## No Tax, Immigration, or Bankruptcy Law Advice

You understand that the Attorneys does not practice in the fields of tax law, immigration law, or bankruptcy law and will not provide advice to you regarding tax, immigration, or bankruptcy matters, including the characterization or taxability of amounts recovered for you. You are advised to consult with qualified professionals if you require advice in these fields. We would be happy to provide references upon request.

ATABEK & ASSOCIATES, P.C.                Page 3 of 5                Gofman v. Itkin and Sabadash Partnership
Attorneys at Law                                                              Retainer Agreement
10171.10                                                              LASC Case No. 19STCP01412

0026

CONFIDENTIAL
ATTORNEY/CLIENT COMMUNICATION

### Retention for Post-Trial, Post-Judgment or Appellate Work

You acknowledge that the Attorneys do not hereby agree to undertake any post-trial, post-judgment or appellate work.  Further, you understand that unless the Attorneys and you execute a further written agreement affirming that the Attorneys will be doing such work subject to another retainer deposit and other applicable terms and conditions, no such work will be done by the Attorneys and you will be responsible for retaining an appellate attorney to handle any appeal.  For the avoidance of doubt, should the Attorneys undertake appellate work for you, the fees charged and retainer deposit required for such work will be in addition to the fees set forth in the section above entitled "Legal Fees – Retainer Deposit".

### Termination of Representation

We do not foresee any circumstance that would lead to termination of our attorney-client relationship, other than completion of all anticipated tasks on your behalf.  However, you are permitted to discharge the Attorneys at any time and for any reason upon written notice to the Attorneys; provided, that, in the event of such discharge, (a) you shall promptly reimburse us for any and all costs advanced by the Attorneys in connection with your Action; and (b) such discharge shall not affect your obligation to pay the Attorneys' fees (in full).

Our Firm may withdraw as counsel at any time and for any reason upon written notice to you, subject to compliance with applicable state and federal law. In the event of such withdrawal, you shall promptly reimburse us for any and all costs advanced by the Attorneys in connection with your Action, and pay any outstanding attorneys' fees then due and owing to Attorneys.

Under no circumstances shall the Attorneys be responsible for continuing legal services following withdrawal or for any costs incurred in connection with your procurement of substitute legal counsel in the unlikely event that you discharge our services.

### File Retention

All files and/or documents retained our the Firm relating to your representation are and remain your property, as the client, except for the Attorneys' internal or administrative documents, such as attorney time sheets.  You may have access to these materials at any time, and upon termination of our representation, you may withdraw these materials with prior written notice.  Our Firm reserves the right to photocopy these materials.  We reserve the right to destroy all files five (5) years after the cessation of representation, or as soon as permitted by the State Bar of California's Rules of Professional Conduct, whichever is later, unless you request the files' return. In the unlikely event that you choose to change representation to any attorney outside the Attorneys, a written notice authorizing the transfer of your files must be submitted to the Attorneys.

### If a Dispute Arises Between Us

We appreciate the opportunity to serve as your attorneys.  However, in the event that you become dissatisfied with any aspect of our relationship including, for example, the quality or adequacy of our representation or the fees charged, we encourage you to bring any such concerns to our attention immediately.  It is our belief that most problems can be resolved by good faith discussion between us.  Nevertheless, it is always possible that a dispute may arise which cannot be resolved by discussion between us.

ATABEK & ASSOCIATES, P.C.                    Page 4 of 5                    Gofman v. Itkin and Sabadash Partnership
Attorneys at Law                                                                            Retainer Agreement
10171.10                                                                            LASC Case No. 19STCP01412

0027

CONFIDENTIAL
ATTORNEY/CLIENT COMMUNICATION

If a dispute exists between us regarding attorneys' fees and/or costs, you and the Attorneys agree that the dispute will be submitted to binding arbitration pursuant to California Business and Professions Code section 6200, et. seq. The Firm will provide you with written notice of your right to arbitrate pursuant to that law. You are advised that by agreeing to binding arbitration, you are giving up your right to a jury trial and other procedural aspects of a jury trial.

### Other Legal Matters

This Agreement sets forth the full understanding between you and the Attorneys with respect to the subject matter hereof and supersedes all prior understandings, written, unwritten, or implied. You acknowledge independent counsel may be retained to advise you regarding the terms and conditions set forth herein. No failure on the part of either party to exercise any right, power, or privilege hereunder shall operate as a waiver thereof. This Agreement may not be amended or modified, and no provision of this Agreement may be waived, except by a written document executed by the party against whom any such amendment, modification, or waiver would be enforced. The parties intend that this Agreement shall be interpreted and enforced to carry out its intent, notwithstanding that any particular provision of this Agreement shall be declared unenforceable for any reason. This Agreement shall not be construed strictly against the drafter hereof. Counterparts and facsimile copies of this Agreement shall be binding.

### Association with Other Counsel

**ATABEK & ASSOCIATES, P.C.** is currently a solo practice, with two "of-counsel" attorneys, and does not employ other attorneys as employees of the firm. **ATABEK & ASSOCIATES, P.C.** occasionally associates with other attorneys and law firms when providing legal services or in litigation. Client understands that "& Associates" is only a moniker, and acknowledges that **ATABEK & ASSOCIATES, P.C.** consists of only one employed attorney in entering into this Agreement.

### Acknowledgement of this Agreement

Please acknowledge this Agreement by signing and returning it to us, keeping a signed copy for your records. We appreciate the confidence you have in the Attorneys. We look forward to serving you.

ATABEK & ASSOCIATES, P.C.

By: _____

Jon Atabek, Esq.
Managing Attorney

**APPROVED, ACCEPTED AND AGREED, TO THIS**

**19th DAY OF APRIL, 2019**

_____

by Garry Y. Itkin
As a general partner of the Itkin and Sabadash general partnership

ATABEK & ASSOCIATES, P.C.
Attorneys at Law
10171.10

Page 5 of 5

Gofman v. Itkin and Sabadash Partnership
Retainer Agreement
LASC Case No. 19STCP01412

0028

CONFIDENTIAL
ATTORNEY/CLIENT COMMUNICATION

ATABEK & ASSOCIATES, P.C.
Attorneys at Law
10171.10

Page 6 of 5

Gofman v. Itkin and Sabadash Partnership
Retainer Agreement
LASC Case No. 19STCP01412

0029

CONFIDENTIAL
ATTORNEY/CLIENT COMMUNICATION

## CONFLICTS WAIVER

Garry Y. Itkin ("Client A") and Itkin and Sabadash, a general partnership ("Client B") (collectively, "Clients"), to render legal services in connection with ongoing legal matters. As you are aware, our representation of both Client A and Client B in separate actions may create certain conflicts of interest, in that the interests and objectives of each client individually on certain issues related to the actions are, or may become, inconsistent with the interests and objectives of the other, particularly if the other partner of Client B, Alexander Sabadash, should take some action to acknowledge the existence of the partnership and purport to give instruction to Attorneys on behalf of Client B.



There are additional problems resulting from joint defense. In cases of joint representation, counsel must fully inform each client as to information obtained during the representation. Moreover, under California Evidence Code § 962 and California case law, in cases of joint representation there is *no* attorney-client privilege between or among the joint clients so that joint representation may result in a waiver of the attorney-client privilege with respect to the Action.

For these reasons, our normal practice in these circumstances is to represent only one party. However, you have advised us that neither of Clients wishes to seek other counsel in this matter at the present time, and that you have decided that we should represent your multiple interests in connection with the Action.

As you know, we have previously represented Client A with respect to the *AFB Trading One, Inc., et al v. Itkin, et al*, lawsuit. As attorneys, we are governed by specific rules relating to our representation of clients when present or potential conflicts of interest exist.

Rule 3-310 of the California Rules of Professional Conduct provides in part:

**(A)** For purposes of this rule:

(1) "Disclosure" means informing the client or former client of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client or former client;

(2) "Informed written consent" means the client's or former client's written agreement to the representation following written disclosure;

(3) "Written" means any writing as defined in Evidence Code section 250.

ATABEK & ASSOCIATES, P.C.
Attorneys at Law
10171.10

Page 7 of 5

Gofman v. Itkin and Sabadash Partnership
Retainer Agreement
LASC Case No. 19STCP01412

0030

CONFIDENTIAL
ATTORNEY/CLIENT COMMUNICATION

**(B)** A member shall not accept or continue representation of a client without providing written disclosure to the client where:

(1) The member has a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; or

(2) The member knows or reasonably should know that:

(a) the member previously had a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; and

(b) the previous relationship would substantially affect the member's representation; or

(3) The member has or had a legal, business, financial, professional, or personal relationship with another person or entity the member knows or reasonably should know would be affected substantially by resolution of the matter; or

(4) The member has or had a legal, business, financial, or professional interest in the subject matter of the representation.

**(C)** A member shall not, without the informed written consent of each client:

(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

(2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or

(3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

Accordingly, we request that you sign and return to us a copy of this letter acknowledging that you have been advised of the Rule and of the potential conflicts associated with your respective interests; that you have been advised of our present and continuing relationship with each of the Clients; and that you nevertheless want us to represent each of you in connection with the matters discussed above.

Date: April 19, 2019

ATABEK & ASSOCIATES, P.C.

By: _____

Jon Atabek, Esq.
Managing Attorney

ATABEK & ASSOCIATES, P.C.
Attorneys at Law
10171.10

Page 8 of 5

Gofman v. Itkin and Sabadash Partnership
Retainer Agreement
LASC Case No. 19STCP01412

0031

CONFIDENTIAL
ATTORNEY/CLIENT COMMUNICATION

## <u>CONSENT</u>

Attorney has explained to each of the undersigned that there exist potential conflicting interests in the above-described matter and has informed both of us of the possible consequences of these conflicts. We also understand that we have the right to and have been encouraged to consult independent counsel before signing this consent.

Each of the undersigned nevertheless desires representation by Attorney to the extent described above and, therefore, consents and gives approval to such representation.

**APPROVED, ACCEPTED AND AGREED, TO:**

**CLIENT A**
**19th day of April, 2019**

_____
by Garry Y. Itkin
For himself

**CLIENT B**
_19__ **day of April, 2019**

_____
by Garry Y. Itkin
As a general partner of the Itkin and Sabadash
general partnership

ATABEK & ASSOCIATES, P.C.          Page 9 of 5          Gofman v. Itkin and Sabadash Partnership
Attorneys at Law                                                                    Retainer Agreement
10171.10                                                                    LASC Case No. 19STCP01412

0032

Reserved

CONFIDENTIAL
ATTORNEY/CLIENT COMMUNICATION

# EXHIBIT J

 Outlook

---

### 10171.3 AFB v. Itkin: 3rd Party Creditor Lawsuit Against Partnership

---

**From** jon atabek <jatabek@atabeklaw.com>

**Date** Fri 5/10/2019 4:40 PM

**To** Davis, Reid <redavis@manatt.com>; Platt, Robert <rplatt@manatt.com>; Michael Zorkin <MZorkin@manatt.com>

**Cc** Shella Sadovnik <salcabes@atabeklaw.com>

📎 2 attachments (13 MB)
gofmanv_itkinandsabadashlasccaseno_19stcp01412.zip; 10171.10 D's Answer to Complaint 05-10-19.pdf;


Counsel,

As you are no doubt aware by now in light of documents we have produced in this action, Elena Gofman, a lawyer previously hired by Mr. Itkin and Mr. Sabadash, sued them in Moscow in their capacity as a general partnership, related to an unpaid contract for legal services.

Ms. Gofman has filed suit for recognition of the judgment here in California and served Mr. Itkin. I have attached a copy of her pleadings. To the extent any judgment would effect Mr. Sabadash as well, I thought it prudent to give you notice of the lawsuit.

I am in the process of responding to it. I have attached a copy of our proposed Answer. Please let me know if you have any additions, questions, or concerns, or if you have any objection to my filing the attached Answer, by no later than EOB on Monday, May 13, 2019.

Best Regards,

--
Jon A. Atabek, Esq.
Atabek & Associates, P.C.
Phone: (213) 394-5943
Fax: (213) 402-3413

This e-mail message (including any attachments) contains information that may be confidential, may be protected by the attorney-client or other applicable privileges, or may constitute non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasury Department, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for

the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT K

 Outlook

## RE: 10171.3 AFB v. Itkin: 3rd Party Creditor Lawsuit Against Partnership

**From** Davis, Reid <REDavis@manatt.com>

**Date** Wed 5/15/2019 8:57 AM

**To**    jon atabek <jatabek@atabeklaw.com>

**Cc**    Shella Sadovnik <salcabes@atabeklaw.com>; Platt, Robert <rplatt@manatt.com>; Zorkin, Michael
<MZorkin@manatt.com>

Jon,

We firmly believe that this is yet another event falsely manufactured by your client to gain an illicit advantage in
litigation.  There is no plausible reason that an individual would go to the expense of hiring attorneys in multiple
countries to enforce a purported $23,000 judgment abroad.

As you know well by know, we deny the existence of any partnership.  Accordingly, you are not authorized to file
any answer or any other pleading purporting to be on behalf of a partnership allegedly involving Alexander.  Any
filing you submit must be on behalf of your individual client only.  Again: you are not authorized to file anything
purporting to represent Alexander's interest whether in the capacity of a "partner" or otherwise.

We will be sending a letter to Mr. Lubin articulating our position on this matter, and noting our intent to pursue
appropriate sanctions for this patent abuse of process.

Further, there appears to be no basis for the false deadline set forth in your email below.  The complaint was not
even filed until 4/19/2019, and it appears that as of today no proof of service has been filed.  Thus, there appears
to be no reason to file your proposed answer by May 13 other than to expedite Itkin's charade.  If you have
already filed the proposed answer, ahead of any deadline to do so, please confirm that by the end of this week
you will file an errata or other filing expressly indicating that you/Itkin are not authorized to make the admissions
set forth in your proposed answer on behalf of the alleged "partnership," and that any response by Itkin is made
on behalf of his individual interest alone.

Regards,

**Reid Davis**
Partner

---

**Manatt, Phelps & Phillips, LLP**
11355 W. Olympic Blvd
Los Angeles, CA  90064
**D** (310) 312-4235   **F** (310) 914-5786

REDavis@manatt.com
**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information
that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any
disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this

transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**From:** jon atabek [mailto:jatabek@atabeklaw.com]
**Sent:** Friday, May 10, 2019 4:41 PM
**To:** Davis, Reid; Platt, Robert; Zorkin, Michael
**Cc:** Shella Sadovnik
**Subject:** 10171.3 AFB v. Itkin: 3rd Party Creditor Lawsuit Against Partnership

Counsel,

As you are no doubt aware by now in light of documents we have produced in this action, Elena Gofman, a lawyer previously hired by Mr. Itkin and Mr. Sabadash, sued them in Moscow in their capacity as a general partnership, related to an unpaid contract for legal services.

Ms. Gofman has filed suit for recognition of the judgment here in California and served Mr. Itkin. I have attached a copy of her pleadings. To the extent any judgment would effect Mr. Sabadash as well, I thought it prudent to give you notice of the lawsuit.

I am in the process of responding to it. I have attached a copy of our proposed Answer. Please let me know if you have any additions, questions, or concerns, or if you have any objection to my filing the attached Answer, by no later than EOB on Monday, May 13, 2019.

Best Regards,

--
Jon A. Atabek, Esq.
Atabek & Associates, P.C.
Phone: (213) 394-5943
Fax: (213) 402-3413

This e-mail message (including any attachments) contains information that may be confidential, may be protected by the attorney-client or other applicable privileges, or may constitute non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasury Department, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT L

 Outlook

---

## Re: 10171.3 AFB v. Itkin: 3rd Party Creditor Lawsuit Against Partnership

---

**From** jon atabek <jatabek@atabeklaw.com>

**Date** Wed 5/15/2019 10:18 PM

**To** Davis, Reid <REDavis@manatt.com>

**Cc** Lee Lubin <leelubin@gmail.com>; Platt, Robert <rplatt@manatt.com>; Shella Sadovnik <salcabes@atabeklaw.com>; Zorkin, Michael <MZorkin@manatt.com>

Hi Reid,

Respectfully, you cannot both disclaim the existence of the partnership and purport to give instruction on behalf of it. It is one or the other. While I understand what you are saying, your statements are also wrong on the facts and law, and appear to miss much of the point.

That said, you should take notice that I will continue to take instruction from Mr. Itkin on this matter on behalf of the partnership with respect to this lawsuit.

Best Regards,

Jon

On Wed, May 15, 2019 at 3:10 PM Davis, Reid <REDavis@manatt.com> wrote:

> I reiterate: Itkin does not have authority to act on behalf of the purported "partnership" because: (i) no partnership has ever existed, and alternatively (ii) even if we indulge the notion that a partnership exists (it does not), Mr. Sabadash – who you allege owns 2/3 of the partnership – has expressly denied Itkin authorization to undertake any actions in connection with Gofman's litigation.  Itkin does not have authorization to accept service on behalf of the purported partnership.  He does not have authorization to file an answer on behalf of the purported partnership.  He does not have authorization to otherwise participate in the litigation on behalf of the purported partnership.  I do not believe this statement of our position is in any way unclear.
>
>
>
> **From:** jon atabek [mailto:jatabek@atabeklaw.com]
> **Sent:** Wednesday, May 15, 2019 2:45 PM
> **To:** Davis, Reid
> **Cc:** Lee Lubin; Platt, Robert; Shella Sadovnik; Zorkin, Michael
> **Subject:** Re: 10171.3 AFB v. Itkin: 3rd Party Creditor Lawsuit Against Partnership
>
>
>
> Reid,

 Are you disagreeing with my version of events, or the portions of Mrs. Sabadash's sworn deposition where she admits to the existence of her lawsuit against her husband for fraud?  Should I dig up your old email asserting that your client did not intend to sell the French Villa? Do you deny that your client denied being in St. Petersburg on the aforementioned date in verified responses to discovery, only to be proven a liar by flight logs and the testimony of the pilot who flew him there? Do you deny that your client is currently in prison in Russia, convicted of fraud? If you are going to accuse me of inaccuracies, maybe I should attach the documents and show which of us is being dishonest.


 As to your latter point about notice and authority, the contract attached to the lawsuit appears to designate Mr. Itkin as the managing partner for purposes of the contract.  Your client apparently gave my client authority back when the contract was originally signed.


 Is your client now purporting to withdraw that authority?


Best,


Jon


On Wed, May 15, 2019 at 2:34 PM Davis, Reid <REDavis@manatt.com> wrote:

> Jon,
>
>
> Needless to say, I disagree with your version of events.  But we will let the jury sort it out.  For present purposes, suffice it to say that both you and Mr. Lubin are on notice that the Answer was filed without authorization and service of the complaint has not been validly effected because either: (i) no partnership exists (as we contend), or alternatively (ii) even if a partnership did exist, Mr. Sabadash – who you allege to own 2/3 of the partnership – has expressly denied Itkin authorization to undertake any actions in connection with the Gofman's litigation.
>
>
> Regards,
>
>
> **Reid Davis**
>
> Partner

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA 90064

**D** (310) 312-4235   **F** (310) 914-5786

REDavis@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential
information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby
notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you
have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading
them or saving them to disk. Thank you.

**From:** jon atabek [mailto:jatabek@atabeklaw.com]
**Sent:** Wednesday, May 15, 2019 12:25 PM
**To:** Davis, Reid
**Cc:** Shella Sadovnik; Platt, Robert; Zorkin, Michael; Lee Lubin
**Subject:** Re: 10171.3 AFB v. Itkin: 3rd Party Creditor Lawsuit Against Partnership

Dear Reid,

I tried calling. You did not answer. Also, I am CC'ing Mr. Lubin.

**Answer and Service of Process:**

I filed the Answer yesterday. I gave you the entire weekend and Monday to respond. I waited an
extra day for a response. Why did you wait so long to respond, or even ask for more time?

As to service, I was authorized to, and did accept service.

## Authority to Act for the Partnership:

As to my authority to do so, as you know, California follows the entity theory of partnership. (Cal. Corp. Code 16201.) One of the partners gave me authority to accept service and file an Answer, and the other did not object--so I filed it. Moreover, you now assert that no partnership exists. You cannot both deny the existence of the Partnership and purport to act on its behalf to reject Itkin's actions on behalf of the Partnership. Because you have not given me a valid reason to withdraw the Answer, I will not be filing an errata at this time.

## Plausibility of Ms. Gofman's Suit:

As to the plausibility of Ms. Gofman pursuing her judgment, you will have to take that up with Mr. Lubin. But, I imagine it probably has to do with the attorney's fees provision in her contract--an issue of serious concern for me. I note, I regularly represent international creditors in suits against domestic debtors. With a foreign judgment in hand, and an applicable attorney's fees provision, I would do exactly what Mr. Lubin is doing right now, especially since he is just below the jurisdictional limit for a limited collections action (which is much more efficient for a plaintiff). Nothing about this appears suspicious to me at all, but I am happy to hear you out.

## Exigence of the Suit:

As to why I am moving quickly, again, I am concerned that dragging this out will result in the tail wagging the dog on attorney's fees.

Moreover, this is an action to recognize an existing judgment. The effort and cost of fighting recognition of the judgment, especially in light of the size of the judgment, does not justify a big fight.

I believe it is in the Partnership's best interests to mitigate their exposure to a fee award by allowing the action to proceed efficiently, rather than dragging it out an incurring costs. Mr. Lubin has what we believe to be a valid judgment, and I have no facts to dispute its enforcement here, other than to challenge the amount of it, which should be reduced to reflect past payments Mr. Itkin has made on behalf of the Partnership. The Russian action appears to have been validly served on both of our clients according to the Russian court's own records, and it was defended at trial, which the Partnership appears ot have lost.

If you have some basis to dispute the merits of the lawsuit for recognition of the judgment that I am unaware of, I am all ears.

**Allegations of Impropriety:**

As to your letter to Mr. Lubin regarding sanctions, and accusing Mr. Itkin of fabrication, what do you base that on? Again, Mr. Lubin appears to have a valid judgment from an action defended on the merits, of which both of our clients had notice.

Moreover, to the extent Mr. Sabadash denies signing the contract with Ms. Gofman, or receiving service of process of the Russian lawsuit, I note, **Mr. Sabadash has a track record of dishonesty in this action**. As you now know, Mr. Sabadash has used you (personally) to commit fraud against both my client, and your other client, Mrs. Sabadash, regarding the sale of the French Villa. As you also know, Mrs. Sabadash is currently suing Mr. Sabadash for that fraud in France, after you falsely asserted to me (and presumably to Mrs. Sabadash) in December of 2017 that your clients did not intend to sell the French Villa (as an aside, I am shocked you still represent both parties in light of Mrs. Sabadash's admission that she did not sign a conflicts waiver, that your clients are suing each other, and your personal role in Mr. Sabadash's fraud on Mrs. Sabadash--unless of course the French lawsuit and the divorce between your clients are all part of a conspiracy to commit fraud cooked up between your clients... I am just saying). Mr. Sabadash has also been caught lying under oath about being in St. Petersburg on May 5, 2014, on a date when a critical meeting took place between our clients. To top it all off, your client is currently in prison **for fraud**, and other courts have already deemed Mr. Sabadash not credible in denying receipt of service of process in other litigation. Given the foregoing, I would not blame Mr. Lubin for being skeptical of anything Mr. Sabadash (or you) might say about who is fabricating what.

You know I usually prefer not to engage in litigation by email. However, because you've threatened to defame my client to third parties, I am forced to set the record straight. Next time, if you have an issue or you want to discuss, just give me a call rather than making baseless threats and accusations.

Best Regards,

Jon

On Wed, May 15, 2019 at 8:57 AM Davis, Reid <<REDavis@manatt.com>> wrote:

> Jon,

We firmly believe that this is yet another event falsely manufactured by your client to gain an illicit advantage in litigation.  There is no plausible reason that an individual would go to the expense of hiring attorneys in multiple countries to enforce a purported $23,000 judgment abroad.

As you know well by know, we deny the existence of any partnership.  Accordingly, you are not authorized to file any answer or any other pleading purporting to be on behalf of a partnership allegedly involving Alexander.  Any filing you submit must be on behalf of your individual client only.  Again: you are not authorized to file anything purporting to represent Alexander's interest whether in the capacity of a "partner" or otherwise.

We will be sending a letter to Mr. Lubin articulating our position on this matter, and noting our intent to pursue appropriate sanctions for this patent abuse of process.

Further, there appears to be no basis for the false deadline set forth in your email below.  The complaint was not even filed until 4/19/2019, and it appears that as of today no proof of service has been filed.  Thus, there appears to be no reason to file your proposed answer by May 13 other than to expedite Itkin's charade.  If you have already filed the proposed answer, ahead of any deadline to do so, please confirm that by the end of this week you will file an errata or other filing expressly indicating that you/Itkin are not authorized to make the admissions set forth in your proposed answer on behalf of the alleged "partnership," and that any response by Itkin is made on behalf of his individual interest alone.

Regards,

**Reid Davis**

Partner

_____

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA 90064

**D** (310) 312-4235  **F** (310) 914-5786

REDavis@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**From:** jon atabek [mailto:jatabek@atabeklaw.com]
**Sent:** Friday, May 10, 2019 4:41 PM
**To:** Davis, Reid; Platt, Robert; Zorkin, Michael
**Cc:** Shella Sadovnik
**Subject:** 10171.3 AFB v. Itkin: 3rd Party Creditor Lawsuit Against Partnership

Counsel,

As you are no doubt aware by now in light of documents we have produced in this action, Elena Gofman, a lawyer previously hired by Mr. Itkin and Mr. Sabadash, sued them in Moscow in their capacity as a general partnership, related to an unpaid contract for legal services.

Ms. Gofman has filed suit for recognition of the judgment here in California and served Mr. Itkin. I have attached a copy of her pleadings. To the extent any judgment would effect Mr. Sabadash as well, I thought it prudent to give you notice of the lawsuit.

I am in the process of responding to it. I have attached a copy of our proposed Answer. Please let me know if you have any additions, questions, or concerns, or if you have any objection to my filing the attached Answer, by no later than EOB on Monday, May 13, 2019.

Best Regards,

--

Jon A. Atabek, Esq.

Atabek & Associates, P.C.
Phone: (213) 394-5943

Fax: (213) 402-3413

This e-mail message (including any attachments) contains information that may be confidential, may be protected by the attorney-client or other applicable privileges, or may constitute non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasury Department, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

--

Jon A. Atabek, Esq.

Atabek & Associates, P.C.
Phone: (213) 394-5943

Fax: (213) 402-3413

This e-mail message (including any attachments) contains information that may be confidential, may be protected by the attorney-client or other applicable privileges, or may constitute non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasury Department, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

--

Jon A. Atabek, Esq.

Atabek & Associates, P.C.
Phone: (213) 394-5943

Fax: (213) 402-3413

This e-mail message (including any attachments) contains information that may be confidential, may be protected by the attorney-client or other applicable privileges, or may constitute non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.


CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasury Department, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.


--
Jon A. Atabek, Esq.
Atabek & Associates, P.C.
Phone: (213) 394-5943
Fax: (213) 402-3413

This e-mail message (including any attachments) contains information that may be confidential, may be protected by the attorney-client or other applicable privileges, or may constitute non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasury Department, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT M

**Outlook**

---

## Motion for Judgment on the Pleadings

---

**From** jon atabek <jatabek@atabeklaw.com>

**Date** Fri 6/28/2019 3:42 PM

**To** Davis, Reid <redavis@manatt.com>; Platt, Robert <rplatt@manatt.com>; Michael Zorkin <MZorkin@manatt.com>; Speier, Emily <ESpeier@manatt.com>

📎 2 attachments (3 MB)

(S) Motion for Judgment on the Pleadings.pdf; (S) Request for Judicial Ntc re Motion for JOP.pdf;

Reid,

See attached.

--

Jon A. Atabek, Esq.
Atabek & Associates, P.C.
Phone: (213) 394-5943
Fax: (213) 402-3413

This e-mail message (including any attachments) contains information that may be confidential, may be protected by the attorney-client or other applicable privileges, or may constitute non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasury Department, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT N

## Outlook

### Re: Gofman v. Itkin and Sabadash; Case No. 19STCP01412

**From** Lee Lubin <leelubin@gmail.com>
**Date** Tue 7/16/2019 1:05 PM
**To** Zorkin, Michael <MZorkin@manatt.com>
**Cc** Davis, Reid <REDavis@manatt.com>; Platt, Robert <rplatt@manatt.com>; jon atabek <jatabek@atabeklaw.com>

Dear Mr. Zorkin:

Thank you for your message and attachment. As a preliminary matter, I must inquire as to what party you represent in this action, as the named defendant (the same entity defendant against whom judgment was entered in Russia) has appeared and is represented in this case. Notwithstanding that issue, you are correct that my client's complaint and motion alleges that no appeal of the underlying judgment was filed. However, your statement that an appeal has now been filed, is not supported by the document you provided. It is my understanding that said document (for which you offered no translation and which lacks information that would indicate it has actually been filed) purports only to be a request for leave to file a late appeal - thus proving that no timely appeal was ever filed, and that no right to file an appeal has been granted. As such, the statements in my client's complaint and motion were accurate when made, and remain as such. For those reasons, there is no information to report to the court in the pending state court matter, or any basis for requesting a stay of the proceedings (even assuming that it would be my client's duty to make such a request, which it's not).

Thank you again for bringing this matter to my attention.

--
Sincerely,

Lee Lubin
**LAW OFFICE OF LEE DAVID LUBIN, INC.**
16133 Ventura Boulevard, Suite 1175
Encino, California 91436
PH: 818-728-0712
FAX: 818-995-7335
Leelubin@gmail.com

*This transmission is intended by the sender and proper recipient(s) to be confidential, intended only for the proper recipient(s) and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you are not the intended recipient(s) you are notified that the dissemination, distribution or copying of this message is strictly prohibited. If you receive this message in error, or are not the proper recipient(s), please notify the sender at either the email address or telephone number above and delete this email from your computer. Receipt by anyone other than the proper recipient(s) is not a waiver of any attorney-client, work product, or other applicable privilege. Thank you.*

*Unless expressly stated to the contrary herein, (a) Nothing contained in this message was intended or written to be used, can be used, nor may be relied*

upon or used, by any taxpayer for the purpose of avoiding penalties that could be imposed upon the taxpayer under the Internal Revenue Code of 1986,
as amended; and (b) Any written statement contained herein relating to any federal tax transaction or issue may not be used by any individual or entity to
recommend or support the promotion or marketing of any such transaction or issue.

On Mon, Jul 15, 2019 at 1:48 PM Zorkin, Michael <[MZorkin@manatt.com](mailto:MZorkin@manatt.com)> wrote:

Mr. Lubin,

I write regarding the lawsuit that you filed on behalf of Ms. Gofman against Itkin and Sabadash (a nonexistent entity), Case No. 19STCP01412. In the complaint, you allege that no appeal challenging the Moscow judgment has been filed. In fact, an appeal has been filed. I am attaching a copy of the Notice of Appeal filed in the Moscow Arbitration court on July 3, 2019. Feel free to verify that this document has indeed been filed and that the case has been assigned to the Moscow court of appeal by visiting [http://kad.arbitr.ru/](http://kad.arbitr.ru/) and entering the case number.

I understand that this information was not available to you at the time that you filed the complaint and the motion for judgment on the pleadings. But now that you are aware, please confirm that you will bring the appeal to Judge Moreton's attention immediately and seek a stay of proceedings until the appeal proceedings conclude pursuant to CCP 1720.

If we do not receive your confirmation by Wednesday, July 17 at 9:00 am, we will proceed to take the necessary steps to bring this to the Court's attention.

Thank you.

**Michael Zorkin**

Associate

_____

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd

Los Angeles, CA 90064

**D** (310) 312-4157  **F** (310) 914-5730

[MZorkin@manatt.com](mailto:MZorkin@manatt.com)

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

# EXHIBIT O

 Outlook

---

## RE: Ex Parte Notice -- Gofman v. Itkin and Sabadash; Case No. 19STCP01412

**From** Zorkin, Michael <MZorkin@manatt.com>

**Date** Wed 7/17/2019 10:56 AM

**To** Lee Lubin <leelubin@gmail.com>; jon atabek (jatabek@atabeklaw.com) <jatabek@atabeklaw.com>

**Cc** Davis, Reid <REDavis@manatt.com>; Platt, Robert <rplatt@manatt.com>

📎 5 attachments (7 MB)
2019-07-17 Dft Ex Parte Application for Stay or Leave to File Amended An....pdf; 2019-07-17 Declaration of Michael Zorkin re Dft's Ex Parte Application.pdf; 2019-07-17 Request for Judicial Notice.pdf; 2019-07-17 [Proposed] Order.pdf; 2019-07-17 Proof of Service.pdf;


Counsel,

Please see the *ex parte* documents filed today.

Thanks.

**Michael Zorkin**
Associate

────────────

**Manatt, Phelps & Phillips, LLP**
11355 W. Olympic Blvd
Los Angeles, CA 90064
**D** (310) 312-4157  **F** (310) 914-5730

MZorkin@manatt.com
**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**From:** Zorkin, Michael
**Sent:** Wednesday, July 17, 2019 9:01 AM
**To:** 'Lee Lubin'; jon atabek (jatabek@atabeklaw.com)
**Cc:** Davis, Reid; Platt, Robert
**Subject:** Ex Parte Notice -- Gofman v. Itkin and Sabadash; Case No. 19STCP01412

Counsel,

Please take notice that on July 18, 2019 at 8:30 a.m. in Dept. 44 of LASC, located at 111 N. Hill St., Los Angeles, CA 90012, Defendant will apply for an *ex parte* order:

1. Stay this action pending the outcome of a previously filed LASC action concerning the same subject matter (Case No. BC647351);

2. Alternatively, stay this action pending the outcome of the appeal challenging the validity of the foreign judgment Ms. Gofman seeks to enforce;

3. Grant leave to file an amended answer asserting proper affirmative defenses;

4. Alternatively, set a hearing for an order to show cause why this action should not be stayed; and

5. Defer ruling on Ms. Gofman's Motion for Judgment on the Pleadings (set for July 22, 2019) until the above issues are resolved.

Please advise whether you will appear and oppose this application.

Thank you.

**Michael Zorkin**
Associate

_____

**Manatt, Phelps & Phillips,** LLP
11355 W. Olympic Blvd
Los Angeles, CA  90064
**D** (310) 312-4157   **F** (310) 914-5730

MZorkin@manatt.com
**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

# EXHIBIT P

 **Outlook**

---

## Fwd: Gofman v. Itkin & Sabadash - Motion for Judgment on the Pleadings

---

**From** jon atabek <jatabek@atabeklaw.com>

**Date** Wed 8/7/2019 5:21 PM

**To**    Michael Zorkin <MZorkin@manatt.com>; Reid Davis <REDavis@manatt.com>

📎 2 attachments (5 MB)
(s) Motion for Judgment on the Pleadings (for 12.17.19).pdf; Req for JN - Mot JOP (s).pdf;

Reid and Michael,

See below/attached.

What is the timing on the Russian appeal?  While I am generally inclined to accommodate counsel regarding requests on timing of motions as a professional courtesy, I am obviously not going to agree to move the hearing up before a decision is rendered on the Russian appeal, since, if the Russian judgment is vacated, it will serve as a complete defense to Mr. Lubin's action.

But if the Russian appeal is denied, I'm not going to waste anymore of the client's money defending this thing.

Is there currently a hearing date on calendar in the Russian appeal? Is it before or after this December motion hearing?

If it is after, I will seek a stay of Lubin's action until that appeal can be heard.

Best Regards,

Jon

---------- Forwarded message ---------
From: **Lee Lubin** <leelubin@gmail.com>
Date: Wed, Aug 7, 2019 at 2:47 PM
Subject: Gofman v. Itkin & Sabadash - Motion for Judgment on the Pleadings
To: jon atabek <jatabek@atabeklaw.com>

Jon,

Hope you're doing well.

As you may have seen, the above case has been assigned to Dept. 94.  Earlier today I reserved a new hearing date for the motion for judgment on the pleadings, and filed the motion.  A copy is attached.

The new hearing date is December 17, 2019. I'd really like to have this heard earlier than 4 months from now. Would you stipulate to an order to advance the motion, on the grounds that it is the same motion that was previously filed of which full statutory notice was previously given?

Let me know.

Talk to you soon.

--
Sincerely,

Lee Lubin
**LAW OFFICE OF LEE DAVID LUBIN, INC.**
16133 Ventura Boulevard, Suite 1175
Encino, California 91436
PH: 818-728-0712
FAX: 818-995-7335
Leelubin@gmail.com


*This transmission is intended by the sender and proper recipient(s) to be confidential, intended only for the proper recipient(s) and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you are not the intended recipient(s) you are notified that the dissemination, distribution or copying of this message is strictly prohibited. If you receive this message in error, or are not the proper recipient(s), please notify the sender at either the email address or telephone number above and delete this email from your computer. Receipt by anyone other than the proper recipient(s) is not a waiver of any attorney-client, work product, or other applicable privilege. Thank you.*

*Unless expressly stated to the contrary herein, (a) Nothing contained in this message was intended or written to be used, can be used, nor may be relied upon or used, by any taxpayer for the purpose of avoiding penalties that could be imposed upon the taxpayer under the Internal Revenue Code of 1986, as amended; and (b) Any written statement contained herein relating to any federal tax transaction or issue may not be used by any individual or entity to recommend or support the promotion or marketing of any such transaction or issue.*

--
Jon A. Atabek, Esq.
Atabek & Associates, P.C.
Phone: (213) 394-5943
Fax: (213) 402-3413

This e-mail message (including any attachments) contains information that may be confidential, may be protected by the attorney-client or other applicable privileges, or may constitute non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasury Department, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for

the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT Q

July 29th  2022

To:    Atabek & Associates, P.C.
       16330 Bake Parkway
       Irvine, CA. 92618

████████████ I, in my capacity of General Partner of Itkin & Sabadash Partnership, do accept and
agree that Itkin & Sabadash Partnership duly owns Atabek & Associates, P.C $13,694 plus interest pursuant our
engagement agreement dated 4.19.2019. I further confirm that our indebtedness to Atabek & Associates, P.C is
valid and binding and hereby do unconditionally promise to pay said amount in full, plus interest on unpaid
balance, and hereby waive our right to assert the statute of limitations as a defense to your attempts to collect
this debt.

████████████████████████████████████████████████

Thank you for everything
Best Regards,

Garry Itkin, General Partner of Itkin & Sabadash Partnership

# EXHIBIT R

1    my family maybe once a month, once every couple months.

2         Q.    And part of your compensation package was

3    Mr. Sabadash paid for you to fly business class a certain

4    number of times a year back and forwards between Russia and

5    Los Angeles?

6         A.    I did not have a compensation package, sir.

7         Q.    Mr. Sabadash paid for you to fly back and forth,

8    correct?

9         A.    The payments for my travel, just as much as

10   payments for Mr. Sabadash's travels.  Were coming out of our

11   partnership accounts.

12        Q.    Now, when you -- let me ask another question

13   before I jump into that.

14        Is the partnership still alive?  Is it operating?

15        MR. KABATECK:  Calls for a legal conclusion.

16        THE COURT:  Sustained as worded.

17        MR. PLATT:  Okay.

18        Q.    Are you still a member or in the partnership?

19        A.    I don't think so.  We're in a courtroom trying

20   to enter this partnership and figure out who owes what to

21   whom.

22        Q.    When did the partnership end?

23        MR. KABATECK:  Calls for a legal conclusion.

24        THE COURT:  Sustained.

25        Q.    BY MR. PLATT:  When did you believe the

26   partnership ended?

27        A.    I believe the partnership ended when I was

28   removed from the offices and refused to be paid monies that

1    I'm owed.

2         Q.    Would that be in 2016?

3         A.    I believe so.

4         Q.    I didn't hear you.

5         A.    I believe so.  I'm sorry.

6         Q.    And when you claim this partnership was formed,

7    you didn't put any of the purported terms in writing, right?

8         A.    That is correct.

9         Q.    And the partnership was never documented in any

10   writings?

11        A.    That's incorrect, sir.

12        Q.    Let's take a look at page 529, lines 8 to 12.

13        MR. KABATECK:  There is an objection interposed there,

14   your Honor.

15        THE COURT:  Otherwise?

16        MR. KABATECK:  Otherwise I have no objection.

17        THE COURT:  Just take that part out, please.  That's at

18   line 11.

19              (Videotaped deposition of Garry Itkin

20                   played as transcribed.)

21              "Q.  From '98 to 2014 there's not a

22              single writing that reflects that a

23              partnership existed between you and

24              Alexander Sabadash; is that correct?

25              "A.  I don't know."

26        Q.    BY MR. PLATT:  So between 1998 and 2014 you're

27   not aware.

28        Now, did you make any efforts after 2014 to document

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9701 Wilshire Blvd., Suite 1000, Beverly Hills, CA 90212

The foregoing documents described as   **Opposition of Atabek & Co. to Objection to Claim No. 10 Filed by Putative Partner Alexander Sabadash; Declarations of Elena Gofman, Jon Atabek, and Garry Y. Itkin in Support Thereof [Re: Dkt. # 33];**   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ___05/20/2025___ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**II. SERVED BY UNITED STATES MAIL**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 05/20/2025 | Joseph E. Caceres | /s/ Joseph E. Caceres |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

# Mailing Information for Case 2:25-bk-11235-NB

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Joseph E Caceres**    jec@locs.com, generalbox@locs.com
- **Daniel J McCarthy**    dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;dflowers@hfbllp.com
- **Charles Shamash**    cs@locs.com, generalbox@locs.com
- **Oleg Stolyar**    astolyar@loeb.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Michael Zorkin**    mz@thezorkinfirm.com

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Itkin & Sabadash**
8501 Wilshire Blvd., Suite 330
Beverly Hills, CA 90211

**Aleksandr Vitalievich Sabadash**
,

## Creditor List

Click the link above to produce a complete list of **creditors** only.

## List of Creditors

Click on the link above to produce a list of **all** creditors and **all** parties in the case. User may sort in columns or raw data format.