# EXHIBIT A

*Zoya Spivakovsky*
***Certified Russian Interpreter & Translator***
*Tel: + 1 (323) 652-0003*

Judicial Council of California
Certification No. 301037

# CERTIFICATE OF ACCURACY

October 31, 2019

    I, the undersigned, hereby certify that I am a professional translator, registered with the United States District Court, Central District of California and Los Angeles Superior Court as an official court interpreter and translator, and that I am thoroughly familiar with the Russian and English languages, and that the translation from Russian into English of the following attached document:

    ***Minutes of the Meeting of Partners of Simple Partnership "Itkin & Sabadash" dated 2/12/04 (2 pages)***

is a true, accurate and correct rendition of the original document in the English language to the best of my knowledge and belief.

Executed under penalty of perjury this 31[th] day of October 2019, in Los Angeles, California.

Zoya Spivakovsky,
Certified Court Interpreter & Translator

**MINUTES OF THE MEETING OF PARTNERS OF**
**SIMPLE PARTNERSHIP "ITKIN & SABADASH"**

**City of Moscow**                                   **February 12, 2004**

Partners of Simple Partnership "Itkin & Sabadash", Alexander Vitalyevich Sabadash (born April 12, 1965, Russian Passport No. 4004951777 issued on 11/15/2003 by Nevsky District Police Precinct No. 75 of the City of St. Petersburg), and Garry Yuri Itkin (born May 27, 1960, U.S. Passport No. 036320308 issued on 08/28/1997 by the Los Angeles Passport Agency, jointly referred to as the "Partners" or "Parties", hereby affirm that they have reached an agreement as to the following agenda items:

1. In 1998, in the City of Los Angeles, the Partners entered into a mutually beneficial agreement establishing Simple Partnership "Itkin & Sabadash", and agreeing to combine their assets, monetary funds, other financial resources, as well as the value of their education, professional experience, business reputation and business connections to jointly conduct business activities without forming a legal entity; based on successful business experience and mutual business interests, for purposes of effectively managing assets contributed to the Partnership by Alexander Vitalyevich Sabadash (hereinafter, the "Assets"), and to achieve maximum financial success. Garry Yuri Itkin made a commensurate contribution to the Partnership by virtue of his academic background, professional experience, business reputation and connections. Any and all of the assets contributed and owned outright by the Partners, as well as the products, income or assets created or accrued as the result of their joint efforts, shall be deemed as Partnership Assets and are divided among Partners proportionally to their contributions as follows: Alexander Vitalyevich Sabadash – 67%, Garry Yuri Itkin – 33%.

2. Partners agree that Simple Partnership "Itkin & Sabadash" shall exist indefinitely. Each Party may terminate his membership in the Simple Partnership by notifying the other Party at least three months prior to the termination while compensating the other Party for any actual losses caused by such termination. Upon termination of the Simple Partnership, Partners shall continue to bear equal responsibility as to the outstanding joint obligations in regards to third parties.
Division of joint owned by the Partners and the rights arising out of said ownership shall be established by a separate agreement executed between the Parties. Should Partners fail to reach an agreement as to the dissolution of the Partnership, the dissolution shall be governed by Russian Federation law. Once the Simple Partnership Agreement is terminated, all of Partnership assets shall be divided among the Partners in proportion to each Partner's share in the Partnership as stated above: Alexander Vitalyevich Sabadash – 67%, Garry Yuri Itkin – 33%.

3. Partners shall use joint property by mutual agreement, while profits received as the result of their joint efforts shall be deemed to be jointly owned by the Partners and may be withdrawn for personal use proportionally to their share in the Partnership.  Likewise, Partners are liable in proportion to their share in the Partnership in respect to all joint obligations, expenses and losses resulting from their joint efforts.

4. All business affairs under this Agreement shall be conducted jointly by the Partners.  A Partner may not dispose of his share in the joint property without obtaining the consent of the second Partner. Parties are equally entitled to have access to all business records related to the joint business activities. Each Partner shall be personally liable to the second Partner for non-performance or partial performance of his obligations hereunder.

Moreover, Partners shall serve as each other's fiduciaries. Each Party shall act in good faith towards his Partner and abstain from engaging in acts of gross negligence or recklessness, intentional unlawful acts or deliberate violations of the law. All disputes and disagreements which may arise between the Partners in the course of the Simple Partnership shall be resolved through negotiation, whenever possible.  In the event that a dispute may not be resolved through negotiation, Parties agree to resolve their dispute in the United States court system, under California law.

5. The terms of the agreement regarding the formation and operation of the Simple Partnership "Itkin & Sabadash" are deemed to be strictly confidential and are not to be disclosed or conveyed to third parties. All reports and other information pertaining to the Simple Partnership shall be deemed as confidential.  In consideration of the obligations of each Party to keep all the information received by the Partners hereunder confidential, Partners agree not to disclose the existence of the Simple Partnership to third parties (Silent Partnership). Any and all agreements entered into by Simple Partnership for the benefit of the Simple Partnership shall be entered into only upon mutual agreement of the Partners.

6. General day-to-day operations of the Simple Partnership "Itkin & Sabadash" shall rest with Garry Yuri Itkin, whose responsibilities include:
   - coordination of Partners' activities;
   - negotiations with third parties related to joint business activities, with the exception of instances when negotiations are be conducted by other Members under this Agreement or pursuant to an additional agreement made between the Parties;
   - recordkeeping and safekeeping of documents related to joint business activities.
   - keeping the other Partner informed in regards to joint business matters;
   - representing Partners' interests in regards to other entities, institutions and individuals;
   - if necessary, bringing claims and/or other legal actions and serving as the representative of the Simple Partnership in all legal matters, including arbitration court and other courts.

   Partners:          *[signature]*    *[signature]*

Протокол собрания партнеров
Простого товарищества "Иткин и Сабадаш"

г. Москва                                                                    «12» февраля 2004 г.

Партнеры Простого товарищества "Иткин и Сабадаш" Александр Витальевич Сабадаш, 13 апреля 1965 года рождения, паспорт 4004951777 выданный 13 ноября 2003 года 75 отделом милиции Невского района г. Санкт-Петербурга, и Гарри Юрий Иткин, 27 мая 1960 года рождения, паспорт США 036320508 выданный 38 августа 1997 года паспортным агентством г. Лос Анжелес, совместно именуемые «Партнеры или «Стороны», настоящим Протоколом подтверждают, что достигли взаимопонимания по следующему вопросу повестке:

1.    В 1998 году, в г. Лос Анжелес Партнеры заключили взаимовыгодное Соглашение о создании Простого товарищества "Иткин и Сабадаш" и обязались путем объединения имущества, денежных средств, иных материальных ресурсов, своего образования, профессионального опыта, а также деловой репутации и деловых связей совместно действовать без образования юридического лица. Эчнейшая положительной опыт деятельности, исходя из общих коммерческих интересов, в целях организации эффективного управления имуществом, внесенным Александром Витальевичем Сабадаш (далее - по тексту «Имущество»), а также для достижения положительного материального эффекта. Соразмерным вкладом Гарри Юрий Иткина в совместную деятельность являлось его образование, профессиональный опыт, а также деловая репутация и деловые связи.

Имуществом Товарищами являлись, которым они обладали на праве собственности, а также произведенная в результате совместной деятельности продукция и полученные от такой деятельности плоды и доходы признаются их общей долевой собственностью, пропорциональной вкладу каждого из Товарищей. Александр Витальевич Сабадаш 67%, Гарри Юрий Иткин 33%.

2.    Партнеры договорились, что Простое товарищество "Иткин и Сабадаш" будет бессрочным. Товарищ вправе объявить о прекращении своего участия в Простом товариществе заранее, не менее чем за три месяца, с возмещением другому участнику Простого товарищества реального ущерба, причиненного таким выходом. С момента прекращения Простого товарищества Товарищи несут солидарную ответственность по неисполненным общим обязательствам в отношении третьих лиц.

Раздел имущества, находящегося в общей собственности Товарищей, и возникших у них общих прав требование осуществляется путем подписания дополнительного соглашения, в ведущемся от ценности общего решения на основании законодательства РФ. При прекращении договора простого товарищества их собственность товарищества делится в соответствии с вышеизложенной доле в общем доле - Александр Витальевич Сабадаш - 67%, а Гарри Юрий Иткин - 33%.

3.    Пользование общим имуществом осуществляется по обоюму согласию Партнеров, а доходы, полученные в результате совместной деятельности, являются общей долевой собственностью Партнеров и могут быть сняты ими для личного пользования пропорционально их доле в общем доле. Также, все общие обязательства, расходы и убытки, возникающие в результате совместной деятельности, являются их общей солидарной ответственностью пропорционально их вышеуказанной доле в общем доле.

4.    Все общие доли по настоящему Договору ведутся Партнерами совместно. Партнер не вправе распоряжаться своей долей и общим имуществом без согласия второго Партнера. Партнеры имеют равное право на возмещение по всей документации из совместной деятельности. За неисполнение или ненадлежащее исполнение своих обязательств каждый Партнер несет личную и имущественную ответственность перед вторым Партнером. В особенности Партнеры являются доверенными лицами друг для друга. Каждый Партнер обязан действовать со всей добросовестностью по отношению к своему Партнеру, воздерживаться от совершения грубых халатных или безрассудных действий, умышленных неправомерных действий или сознательного нарушения закона. Все споры и разногласия, которые могут возникнуть между Партнерами в ходе деятельности, будут, по возможности, разрешаться путем переговоров. В случае невозможности разрешения споров путем переговоров Партнеры передают их на рассмотрение в судебную систему США, в соответствии с законами Штата Калифорния США.

5.    Условия договора создания и деятельности Простого товарищества "Иткин и Сабадаш" являются строго конфиденциальными, не подлежат разглашению и передаче третьим лицам. Все отчеты, а также вся иная информация Общества считается конфиденциальной. Предусмотрена обязанность сторон по соблюдению условий конфиденциальности в отношении полученной информации. Существующие Общества не раскрываются до третьих лиц (негласное товарищество). Договоры с третьими лицами и интересах Простого товарищества заключаются при согласовании обоими Партнерами.

6.    Ведение общих дел Товарищей в рамках деятельности Простого товарищества "Иткин и Сабадаш" возлагается на Гарри Юрий Иткина, в чьи обязанности входит:

- согласование действий Товарищей;

- ведение переговоров с третьими лицами по вопросам совместной деятельности, за исключением случаев, когда, согласно настоящему Договору или дополнительному соглашению к нему, ведение переговоров поручается другим Участникам;

- оформление и хранение документации, относящейся к совместной деятельности;

- обеспечение Товарищей информацией о ходе общих дел;

- представление общих интересов Товарищей перед другими организациями, учреждениями и гражданами;

- в случае необходимости предъявление претензий и исков, представительство интересов Товарищей в суде, арбитражном суде и других судебных инстанциях.

Партнеры:

[signatures]

# EXHIBIT B

*Zoya Spivakovsky*
***Certified Russian Interpreter & Translator***
***Slovo Interpreting Agency***
***1024 N. Ogden Drive***
***West Hollywood, CA  90046***
***Tel:  (323) 652-0003***
www.slovoservices.com
info@slovoservices.com

Judicial Council of California
Certification No. 301037

# CERTIFICATE OF ACCURACY

September 17, 2018

I, the undersigned, hereby certify that I am a professional translator, registered with the United States District Court, Central District of California and Los Angeles Superior Court as an official court interpreter and translator, and that I am thoroughly familiar with the Russian and English languages, and that the translation from Russian into English of the following attached document:

***Information Services Agreement dated February 12, 2004 with 3 Attachments (6 pages)***

is a true, accurate and correct rendition of the original document in the English language to the best of my knowledge and belief.

Executed under penalty of perjury this 17th day of September 2018, in Los Angeles, California.

Zoya Spivakovsky,
Certified Court Interpreter & Translator

# INFORMATION SERVICES AGREEMENT

Moscow                                                                        February 12, 2004

Simple Partnership **"Itkin and Sabadash"**, hereinafter referred to as "Client", represented by its partners        G. Y. Itkin and A. V. Sabadash, acting in accordance with the Simple Partnership Agreement, on the one hand, and    **E. N. Vasilieva**, duly qualified pursuant to Honors Diploma DBS No. 124053 issued on 07/27/2001 and Tax Consultant Certificate No.0017 dated 12/30/2003 issued by the Internal Revenue Ministry of the Russian Federation, on the other, hereby agree as follows:

## 1.  SUBJECT MATTER

1.1  Client hereby commissions Contractor and Contractor agrees to provide Client with consulting, information and legal services, as well as advice on tax matters, tax optimization and selection of optimal taxation structure, on-site and field tax audits, taxpayer rights and protection, accounting, tax planning, tax strategy risk assessment and monitoring of applicable law.

1.2   Client agrees to pay Contractor for its services within set timeframes and in accordance with procedure and conditions set forth herein.

## 2.  RIGHTS AND OBLIGATIONS OF THE PARTIES

2.1  Contractor shall:
-   Provide consulting and information services consistent with Client's interests pursuant to the provisions of applicable law as it pertains to Client's assets and property, namely:

1.  OAO[1] "Russkiy Diesel" located at: Leningrad Region, Vsevolozhskiy District, Kirpichniy Zavod Station, industrial zone;
2.  OAO "Vyborgskaya Celluloza" located at: Leningrad Region, Vyborgskiy District, pos. Sovetskiy, ul. Zavodskaya ., d. 2;
3.  ZAO[2] "LIVIZ" located at: Saint-Petersburg, Sinopskaya nab., d. 56-58;
4.  OOO[3] "LIVIZ" located at: Saint-Petersburg, Krasnoe selo, ul. Nagornaya., d. 5;
5.  Land entitlements, namely: 987 hectares of land shares held in Leninskiy Luch Collective Farm (Krasnogorskiy District,  Moscow Region);  197 hectares of land shares held in Petrovskiy Collective Farm (Krasnogorskiy District, Moscow Region); 430 hectares of land shares held in Ilyinsky Collective Farm (Krasnogorskiy District,  Moscow Region);  and 360 hectares of land shares held in "Dmitrovskiy" Collective Farm (Krasnogorskiy District, Moscow Region);

with the exclusion of the following property owned by Client: real estate property located as follows: Boulevard General Charles De Gaulle, 17, Cap Ferrat, France; Falcon 200 aircraft (Tail No. HB VNG), as the aforementioned assets are located outside the Russian Federation.

2.2   Contractor shall:
-   Represent Client pursuant to a duly executed Power of Attorney with respect to all entities, institutions and individuals on matters pertaining to the subject hereof;
-   Independently determine the form and manner of providing services under this Agreement in accordance with applicable Russian Federation law;
-   Examine documentation pertaining to Client's business operations for proper execution of its obligations under this Agreement;
-   Provide, at Client's request, specific information on matters of interest to Client including that of Russian Federation law and federal regulations underlying Contractor's explanatory notes and conclusions on aforementioned matters;

[*Official Round Seal*]:   RUSSIA/RUSSIA/SIMPLE PARTNERSHIP "ITKIN AND SABADASH"
[*Initials*] [*Initials*]                                                      [*signature*]

---

[1] OAO – abbreviation for Public Joint-stock Company [this and all subsequent footnotes are translator's notes].
[2] ZAO – abbreviation for Private Joint-Stock Company.
[3] OOO – abbreviation for Limited Liability Company.

- Inform Client in a timely manner of any potential adverse effects of certain accounting methods, practices or business activities;
- Conduct negotiations on Client's behalf and sign documents per Client's expressed authorization;
- Request and obtain any necessary documents from Client;
- Make copies of any documents to ensure proper execution of its obligations under this Agreement;
- Utilize services of any and all individuals and/or entities in order to perform services hereunder in a timely and proper manner, in accordance with the terms and conditions hereof while complying with a non-disclosure agreement.

2.3  Client shall:
- Provide Contractor with any available information or documents to ensure performance of Contractor's obligations hereunder;
- Provide Contractor with written and verbal instructions necessary for Contractor to conduct its research;
- Confer requisite powers upon Contractor within the terms of this Agreement by signing Power of Attorney or additional agreements;
- Accept minutes of meetings, letters, activity reports and other documents from Contractor;
- Acknowledge receiving Contractor's services and sign work completion reports;
- Provide  Contractor with a timely notice (at least five days in advance)  of the time and location of meetings related to Contractor's obligations hereunder;
- Compensate Contractor for its services within the timeframes, in the amount and on terms set forth in supplemental agreements hereto.

2.4  Client may:
- Request progress reports from Contractor as to its activities hereunder, as well as copies of documents confirming work performed by  Contractor;
- Request data and information from Contractor pertaining to meetings duly documented by appropriate records.

2.5   A work completion report shall serve as proof of completion of Contractor's obligations.

2.6  Work completion reports and activity reports shall be signed by the managing partner and Client's representative, G.Y. Itkin, as provided for by the "Itkin and Sabadash" Simple Partnership Agreement.

### 3.    DURATION OF AGREEMENT AND PAYMENT

3.1  This Agreement shall become effective on February 12, 2004.

3.2  The place of performance of obligations hereunder shall be shall be the City of Moscow.

3.3  Amount of compensation due Contractor for services rendered hereunder shall be 200,000 (two hundred thousand) RUB per year.

3.4  Under this Agreement, the Client shall make an advance payment of 200,000 (two hundred thousand) RUB by 02/20/2004.

3.5  Client shall remit payment for Contractor's services within five days of presentation of invoice in a manner mutually agreed upon by Parties.

3.6  Contractor may request payment for services rendered from each of the partners of the Simple Partnership "Itkin and Sabadash" which presumes joint liability of each partner.

### 4.    GROUNDS FOR TERMINATION OF THE AGREEMENT AND PARTIES' LIABILITY

4.1  Client may repudiate this Agreement provided Client fully reimburses Contractor for expenses incurred and work completed by the latter.

4.2  Contractor may repudiate this Agreement only after fully reimbursing Client for any sustained damages.

4.3  This Agreement shall be terminated in the following cases:
- Unilateral repudiation of this Agreement by a one of the parties hereto;
- Bilateral performance of the agreement;
- Mutual consent of the Parties.

[*Official Round Seal*]:   RUSSIA/RUSSIA/SIMPLE PARTNERSHIP "ITKIN AND SABADASH"

[*Initials*] [*Initials*]                                          [*signature*]

4.4 Parties are entitled to pursue any and all applicable legal remedies to recover damages incurred due to the actions of the other Party.

4.5 In the event that performance of obligations under this Agreement is prevented by circumstances outside of Parties' control, Client shall reimburse Contractor for expenses incurred by Contractor in the course of Contractor's performance of its obligations hereunder.

4.6 In the event that Client fails to compensate Contractor for Contractor's services in accordance with the terms set forth herein, Client shall pay Contractor a penalty in amount of 10% per annum on the underpaid amount, as well as one time fine of 50,000 (fifty thousand) RUB for breach of the Agreement.

4.7 Payment of late fees, penalties or fines does not release any Party from its contractual obligations.

4.8 Parties shall be released from liability for partial or complete failure of performance of their respective obligations hereunder, provided said failure resulted from circumstances of insuperable force which neither Party could foresee or prevent by its reasonable efforts that occurred after the date of execution of this Agreement.

4.9 Force Majeure event include  events include events beyond control of Parties hereto, and for which parties may not be held liable such as acts of God, extraordinary events of social nature  (war, civil unrest, etc), as well as government decrees or state ordinances resulting in the impossibility of subject transaction.

## 5. DISPUTE RESOLUTION

5.1 Any and all disputes and disagreements that may arise while performing this Agreement shall be resolved through negotiations whenever possible.

5.2 In the event that Parties are unable to resolve their disputes, all such matters shall be brought before the Moscow City Court as provided by Russian Federation law.
While said disputes are under judicial review when personal financial liability is calculated, respective shares in partnership interest as shall be taken into consideration, per Simple Partnership Agreement, namely: G. Y. Itkin:  33%, A. V.  Sabadash: 67%.

5.3 In all other matters not covered by this Agreement, Parties shall be governed by applicable Russian Federation law.

5.4 This Agreement is made in two copies, one copy for each Party.

## 6. PARTIES' ADDRESSES AND PERTINENT INFORMATION

**Client:**

**Contractor:**

**Simple Partnership "Itkin and Sabadash"**

**Vasilieva Elena Nikolayevna**

The address of the partnership shall be listed as physical location:
of the Managing Partner, G. Y. Itkin:
8501 Wilshire Blvd. Suite 330, Beverly Hills, California, 90211 USA.

(DOB: 04/30/1980)
 Physical location:
109051, Russian Moscow, Rogozhskiy pos. ., 3., kv. 42

Address of Partner Alexander Vitalyevich Sabadash is as follows: 7-41 Bedford Row, London, WC1R4JH, UK

[*Official Round Seal*]:   RUSSIA/RUSSIA/SIMPLE PARTNERSHIP "ITKIN AND SABADASH"

[*signature*]

[*signature*]                                                                                        [*signature*]

**SERVICE DELIVERY REPORT**

**PURSUANT TO THE AGREEMENT FOR PROVISION OF INFORMATION SERVICES OF 2/12/2004**

December 31, 2004

Simple Partnership "Itkin and Sabadash", hereinafter referred to as "Client", represented by Managing Partner G. Y. Itkin, acting pursuant to the Simple Partnership Agreement, on the one hand, and E. N. Vasilieva, on the other, jointly referred to as "Parties", have hereby issued this report as follows:

1. On February 12, 2004, Client and Contractor entered into an agreement for provision of information services (hereinafter, "Agreement").

2. During the period from 02/12/2004 to 12/31/2004, Contractor duly executed and discharged its obligations under the Agreement, namely provided consulting, information and legal services, as well as advice on tax matters, tax optimization and selection of optimal taxation structure, on-site and field tax audits, taxpayers rights and protection, accounting, tax planning, tax strategy risk assessment and monitoring of applicable law pertaining to Client's assets and property, namely:

   6. OAO "Russkiy Diesel", located at: Leningrad Region, Vsevolozhskiy District,  Kirpichniy Zavod Station, industrial zone;

   7. OAO "Vyborgskaya Celluloza" located at: Leningrad Region, Vyborgskiy District, pos. Sovetskiy, ul. Zavodskaya ., d. 2;

   8. ZAO "LIVIZ" located at: Saint-Petersburg, Sinopskaya nab., d. 56-58;

   9. OOO "LIVIZ" located at: Saint-Petersburg, Krasnoe selo, ul. Nagornaya., d. 5;

   10. Land entitlements, namely: 987 hectares of land shares held in Leninskiy Luch Collective Farm (Krasnogorskiy District, Moscow Region);  197 hectares of land shares held in Petrovskiy Collective Farm (Krasnogorskiy District, Moscow Region);  430 hectares of land shares held in Ilyinsky Collective Farm (Krasnogorskiy District, Moscow Region); and 360 hectares of land shares held in Dmitrovskiy Collective Farm (Krasnogorskiy District, Moscow Region);

   11. Purchase of real estate property located at: 58 Beverly Park, Beverly Hills, CA, USA;

   12. Purchase of Gulfstream G500 aircraft.

3. Client was provided with monthly written reports on work performed during the service period.

4. In view of the foregoing, Parties agree that services under this Agreement were fully and properly rendered; neither party has claims against the other with regard to the performance of this Agreement.

5. This Service Delivery Report is made in two copies, both of which have equal legal effect, with one copy intended for each Party.

6. The cost of services delivered under this Agreement is as follows: 200,000 (two hundred thousand) RUB.

**SIGNATURES OF THE PARTIES:**

**Client:**                                                          **Contractor**:

*[signature]*                                                    *[signature]*

[***Official Round Seal***]:
 *RUSSIA*    *RUSSIA*
SIMPLE PARTNERSHIP "ITKIN AND SABADASH"

**SERVICE DELIVERY REPORT**
**PURSUANT TO THE AGREEMENT FOR PROVISION OF INFORMATION SERVICES OF 2/12/2004**

December 31, 2005

Simple Partnership "Itkin and Sabadash", hereinafter referred to as "Client", represented by Managing Partner G. Y. Itkin, acting pursuant to the Simple Partnership Agreement, on the one hand, and E. N. Vasilieva, on the other, jointly referred to as "Parties", have hereby issued this report as follows:

1. On February 12, 2004, Client and Contractor entered into an agreement for provision of information services (hereinafter, "Agreement").

2. During the period from 01/12/2005 to 12/31/2005, Contractor duly executed and discharged its obligations under the Agreement, namely provided consulting, information and legal services, as well as advice on tax matters, tax optimization and selection of optimal taxation structure, on-site and field tax audits, taxpayers rights and protection, accounting, tax planning, tax strategy risk assessment and monitoring of applicable law pertaining to Client's assets and property, namely:
    1. Contribution of assets of OAO "Russkiy Diesel" to equity capital of Diesel Limited, a company located on Jersey Island, United Kingdom;
    2. Contribution of assets of OAO "Vyborgskaya Celluloza" to equity capital of Vyborg Limited, a company located on Jersey Island, United Kingdom;
    3. ZAO "LIVIZ" located at: Saint-Petersburg, Sinopskaya nab., d. 56-58;
    4. OOO "LIVIZ" located at: Saint-Petersburg, Krasnoe selo, ul. Nagornaya., d. 5;

3. Client was provided with monthly written reports on work performed during the service period.

4. In view of the foregoing, Parties agree that services under this Agreement were fully and properly rendered; neither party has claims against the other with regard to the performance of this Agreement.

5. This Service Delivery Report is made in two copies, both of which have equal legal effect, with one copy intended for each Party.

6. The cost of services delivered under this Agreement is as follows: 200,000 (two hundred thousand) RUB.

**SIGNATURES OF THE PARTIES:**

**Client:**                                    **Contractor**:

*[signature]*                                 *[signature]*

[*Official Round Seal*]:   RUSSIA/RUSSIA/SIMPLE PARTNERSHIP "ITKIN AND SABADASH"

**SERVICE DELIVERY REPORT**
**PURSUANT TO THE AGREEMENT FOR PROVISION OF INFORMATION SERVICES OF 2/12/2004**

December 31, 2006

Simple Partnership "Itkin and Sabadash", hereinafter referred to as "Client", represented by Managing Partner G. Y. Itkin, acting pursuant to the Simple Partnership Agreement, on the one hand, and E. N. Vasilieva on the other, jointly referred to as "Parties", have hereby issued this report as follows:

1. On February 12, 2004, Client and Contractor entered into an agreement for provision of information services (hereinafter, "Agreement").

2. During the period from 01/12/2006 to 12/31/2006, Contractor duly executed and discharged its obligations under the Agreement, namely provided consulting, information and legal services, as well as advice on tax matters, tax optimization and selection of optimal taxation structure, on-site and field tax audits, taxpayers rights and protection, accounting, tax planning, tax strategy risk assessment and monitoring of applicable law pertaining to Client's assets and property.

3. Client was provided with monthly written reports on work performed during the service period.

4. In view of the foregoing, Parties agree that services under this Agreement were fully and properly rendered; neither party has claims against the other with regard to the performance of this Agreement.

5. This Service Delivery Report is made in two copies, both of which have equal legal effect, with one copy intended for each Party.

6. The cost of services delivered under this Agreement is as follows: 200,000 (two hundred thousand) RUB.


**SIGNATURES OF THE PARTIES:**

**Client:**                                    **Contractor**:

*[signature]*                                    *[signature]*


[***Official Round Seal***]:   RUSSIA/RUSSIA/SIMPLE PARTNERSHIP "ITKIN AND SABADASH"

## ДОГОВОР НА ОКАЗАНИЕ ИНФОРМАЦИОННЫХ УСЛУГ

г. Москва                                                                    "12" февраля 2004г.

Простое товарищество "Иткин и Сабадаш", именуемое в дальнейшем "Заказчик", в лице партнера Иткина Г. Ю. и партнера Сабадаш А.В., действующий на основании Договора простого товарищества с одной стороны, и Васильева Е.Н., имеющая квалификацию в соответствии с Дипломом (с отличием) ДВС №1245053 от 27.07.2001г., Квалификационный аттестат консультанта по налогам и сборам МНС РФ №0017 от 30.12.2003г.,  с другой стороны, заключили настоящий договор о нижеследующем:

### 1. ПРЕДМЕТ ДОГОВОРА

1.1. Заказчик поручает, а Исполнитель обязуется оказать консультационные, информационные, правовые  услуги, а также консультации по налоговым вопросам, по оптимизации налогов, по выбору оптимальной системы налогообложения, по камеральным и выездным налоговым проверкам, по защите интересов налогоплательщиков,  по бухгалтерскому учету, налоговому планированию, оценке безопасности налоговых решений; мониторинг законодательства.

1.2. Заказчик обязуется оплатить услуги Исполнителя в порядке, в срок и на условиях, определенных настоящим договором.

### 2. ПРАВА И ОБЯЗАННОСТИ СТОРОН

2.1. Исполнитель обязуется:

- оказывать консультационные и информационные услуги предусматривая интересы Заказчика в соответствии с положениями действующего законодательства в отношении принадлежащего Заказчику активов, имущества, а именно:

1. ОАО "Русский Дизель" (адрес: Ленинградская область, Всеволожский район, станция Кирпичный завод, промзона);
2. ОАО "Выборгская целлюлоза" (адрес: Ленинградская область, Выборгский район, пос. Советский ул. Заводская д.2);
3. ЗАО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Синопская наб, д.56-58);
4. ООО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Красное село, ул. Нагорная д.5);
5. земельные паи в совхоз "Ленинский луч" (Московская область, Красногорский район) 987 га, совхоз "Петровский" (Московская область, Красногорский район) 197 га, совхоз "Ильинский" (Московская область, Красногорский район) 430 га, совхоз "Дмитровский" (Московская область, Красногорский район) 360 га;

исключая имущество Заказчика: недвижимое имущество, расположенное по адресу: Франция, Кап Феррат, бульвар имени Генерала   де Голя, д. 17; самолет Фалькон 200, бортовой номер HB VNG, в связи с нахождением имущества за пределами РФ.

2.2. Исполнитель имеет право:

- на основании выданной в установленном порядке доверенности представлять Заказчика по вопросам, являющимся предметом настоящего договора, в отношениях со всеми организациями, учреждениями и гражданами;
- самостоятельно определять формы и методы оказания Услуг по настоящему Договору, исходя из требований действующего законодательства Российской Федерации;
- исследовать в документацию, связанную с финансово-хозяйственной деятельностью Заказчика для надлежащего исполнения своих обязательств по настоящему Договору;
- предоставлять по требованию Заказчика необходимую информацию о требованиях законодательства Российской Федерации, касающихся интересующего Заказчика вопроса, а также о нормативных актах Российской Федерации, на которых основываются замечания и выводы Исполнителя;
- своевременно информировать Заказчика о возможных негативных последствиях ведения налогового учета, финансово-хозяйственной деятельности Заказчика в представленном для консультации виде;
- от имени Заказчика вести переговоры, а также подписывать документы, право подписания которых будет предоставлено Исполнителю Заказчиком;
- требовать и получать от Заказчика все необходимые документы,
- снимать копии с любых документов для использования в целях исполнения обязательств по настоящему договору;

- пользоваться услугами любых физических и юридических лиц в целях своевременного и качественного исполнения обязательств по договору с учетом соглашения о конфиденциальности.

2.3. Заказчик обязан:

- предоставить Исполнителю все имеющиеся у него сведения и документы, необходимые для исполнения настоящего договора

- предоставлять Исполнителю задания в письменном и устном виде, необходимые для проведения исследований

- предоставить Исполнителю необходимые полномочия в рамках настоящего договора, оформив это соответствующими доверенностями и договорами;

- принимать от Исполнителя протоколы переговоров, письма, справки о проделанной работе и другие материалы;

- принимать работу Исполнителя и подписывать акты выполненных работ;

- своевременно, не менее чем за пять дней, предупреждать Исполнителя о времени и месте проведения переговоров по вопросам, связанным с обязанностями Исполнителя по настоящему договору;

- оплатить услуги Исполнителя в порядке, в сроки и в размере, установленные дополнительными соглашениями к настоящему договору.

2.4. Заказчик имеет право:

- требовать у Исполнителя сведений о ходе исполнения договора, копии документов, подтверждающих проведенную Исполнителем работу;

- запрашивать у Исполнителя данные и сведения о проведенных переговорах, оформленные соответствующими протоколами.

2.5. Документами, подтверждающими исполнение обязательств перед Заказчиком, являются акты выполненных работ.

2.6. Акты выполненных работ и отчеты о проделанной работе передаются и подписываются управляющим партнером и представителем Заказчика Иткиным Г.Ю., что предусмотрено договором Простого товарищества "Иткин и Сабадаш".

## 3. СРОК ДЕЙСТВИЯ И ПОРЯДОК РАСЧЕТОВ

3.1. Настоящий договор действует с "12" февраля 2004 года.

3.2. Место исполнения настоящего договора: город Москва, РФ.

3.3. Размер вознаграждения Исполнителя за оказанные услуги по настоящему договору составляет 200 000 (двести тысяч) рублей в год.

3.4. В срок до 20.02.2004 года Заказчик производит предварительную оплату по договору в размере 200 000 (Двести тысяч) рублей.

3.5. Заказчик оплачивает услуги Исполнителя на основании счета, выставленного Исполнителем, в течение пяти дней с момента получения счета согласованным сторонами способом.

3.6. Исполнитель имеет право требовать оплаты выполненной работы у каждого из партнеров простого товарищества "Иткин и Сабадаш", что предполагает солидарную ответственность каждого партнера.

## 4. ОСНОВАНИЯ ПРЕКРАЩЕНИЯ ДОГОВОРА И ОТВЕТСТВЕННОСТЬ СТОРОН

4.1. Заказчик вправе отказаться от исполнения настоящего договора при условии оплаты Исполнителю фактически понесенных им расходов и выполненных услуг.

4.2. Исполнитель вправе отказаться от исполнения обязательств по настоящему договору лишь при условии полного возмещения Заказчику убытков.

4.3. Договор прекращает действие в следующих случаях:

- при одностороннем отказе одной из сторон от исполнения договора;

- при исполнении сторонами обязательств по договору;

- по соглашению сторон.

4.4. Стороны имеют право на возмещение убытков, причиненных по вине другой стороны, в соответствии с действующим законодательством.

4.5. В случае невозможности исполнения настоящего договора по обстоятельствам, за которые ни одна из сторон не отвечает, Заказчик возмещает Исполнителю фактически понесенные им расходы, связанные с исполнением обязательств по настоящему договору.

4.6. В случае нарушения Заказчиком сроков оплаты услуг Исполнителя Заказчик уплачивает Исполнителю пеню в размере 10% годовых от неуплаченной суммы, а также единовременный штраф за нарушение условий договора в размере 50000 (пятидесяти тысяч) рублей.

4.7. Уплата неустойки, пени, штрафа и возмещение убытков не освобождают стороны от выполнения принятых на себя обязательств.

4.8. Стороны освобождаются от ответственности за частичное или полное неисполнение обязательств по настоящему договору, если это неисполнение явилось следствием обстоятельств непреодолимой силы, возникших после заключения договора в результате событий чрезвычайного характера, которые стороны не могли ни предвидеть, ни предотвратить разумными мерами.

4.9. К обстоятельствам непреодолимой силы относятся события, на которые стороны не могут оказывать влияния и за возникновение которых не несут ответственности, например: стихийные бедствия, чрезвычайные события социального характера (война, массовые беспорядки и т.п.), правительственные постановления или распоряжения государственных органов, делающие невозможным реализацию объекта.

## 5. ПОРЯДОК РАЗРЕШЕНИЯ СПОРОВ

5.1. Все споры и разногласия, возникающие в процессе исполнения настоящего договора, будут, по возможности, разрешаться путем переговоров.

5.2. В случае если стороны не придут к соглашению по спорным вопросам, споры будут переданы на рассмотрение в суд г.Москвы в порядке, предусмотренном действующим законодательством РФ.

При рассмотрении спора и определении размера персональной материальной ответственности учитывается процентное соотношение долей, предусмотренное договором простого товарищества, а именно Иткин Г.Ю. - 33% и Сабадаш А.В. - 67%.

5.3. Во всем остальном, не предусмотренном настоящим договором, стороны руководствуются действующим законодательством РФ.

5.4. Настоящий договор заключен в двух экземплярах, по одному для каждой из сторон.

## 6. АДРЕСА И РЕКВИЗИТЫ СТОРОН

**Заказчик**

Простое товарищество "Иткин и Сабадаш" адрес товарищества определяется местом нахождения (жительства) управляющего партнера - Иткина Г.Ю.: 90211, США, штат Калифорния, город Беверли Хиллс, бульвар Вилшер, дом 8501, оф. 330. (8501 Wilshire Blvd., Suite 330 Beverly Hills, California 90211 USA)

Адрес партнера Сабадаш Александра Витальевича: WC1R4JH, Великобритания, город Лондон, улица Бедфорд роу, дом 37/41 (37-41 Bedford Row, London, WC1R4JH, UK)

**Исполнитель**

Васильева Елена Николаевна (30.04.1980г.р.) Место нахождения: 109051, РФ, г. Москва, ул. Рогожский пос., д. 3, кв. 42

### АКТ ОКАЗАННЫХ УСЛУГ
#### ПО ДОГОВОРУ НА ОКАЗАНИЕ ИНФОРМАЦИОННЫХ УСЛУГ ОТ "12" ФЕВРАЛЯ 2004Г.

31 декабря 2004 год

Простое товарищество "Иткин и Сабадаш", именуемое в дальнейшем "Заказчик", в лице управляющего партнера Иткина Г. Ю., действующий на основании Договора простого товарищества, с одной стороны, и Васильева Е.Н., с другой стороны, именуемые вместе – Стороны, составили настоящий акт о следующем:

1.    «12» февраля 2004 года между Заказчиком и Исполнителем был заключен договор на оказание информационных услуг (далее – Договор).

2.    В период с 12.02.2004г. по 31.12.2004г. Исполнитель надлежащим образом исполнял предусмотренные Договором обязательства, а именно
консультационные, информационные, правовые услуги, а также консультации по налоговым вопросам, по оптимизации налогов, по выбору оптимальной системы налогообложения, по камеральным и выездным налоговым проверкам, по защите интересов налогоплательщиков, по бухгалтерскому учету, налоговому планированию, оценке безопасности налоговых решений; мониторинг законодательства в отношении принадлежащего Заказчику активов, имущества, а именно

1.    ОАО "Русский Дизель" (адрес: Ленинградская область, Всеволожский район, станция Кирпичный завод, промзона);
2.    ОАО "Выборгская целлюлоза" (адрес: Ленинградская область, Выборгский район, пос. Советский ул. Заводская д.2);
3.    ЗАО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Синопская наб, д.56-58);
4.    ООО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Красное село, ул. Нагорная д.5);
5.    земельные паи в совхоз "Ленинский луч" (Московская область, Красногорский район) 987 га, совхоз "Петровский" (Московская область, Красногорский район) 197 га, совхоз "Ильинский" (Московская область, Красногорский район) 430 га, совхоз "Дмитровский" (Московская область, Красногорский район) 360 га;
6.    покупка недвижимого имущества находящегося по адресу: США, штат Калифорния, город Беверли Хиллс, улица Беверли Парк, д.58;
7.    покупка самолета Гольфстрим G500.

3.    В отчетный период Заказчику предоставлялись ежемесячные письменные отчеты о проделанной работе.

4.    На основании изложенного Стороны заявляют, что услуги по договору оказаны в полном объеме, надлежащего качества, претензий у Сторон по исполнению Договора друг к другу не имеют.

5.    Настоящий акт оказания услуг составлен в двух экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для каждой из Сторон.

6.    Выполнены услуги по Договору на сумму 200000 (Двести тысяч) рублей.

#### ПОДПИСИ СТОРОН:

**Заказчик:**                    **Исполнитель:**

**АКТ ОКАЗАННЫХ УСЛУГ**
**ПО ДОГОВОРУ НА ОКАЗАНИЕ ИНФОРМАЦИОННЫХ УСЛУГ ОТ "12" ФЕВРАЛЯ 2004Г.**

31 декабря 2005 год

Простое товарищество "Иткин и Сабадаш", именуемое в дальнейшем "Заказчик", в лице управляющего партнера Иткина Г. Ю., действующий на основании Договора простого товарищества, с одной стороны, и Васильева Е.Н., с другой стороны, именуемые вместе – Стороны, составили настоящий акт о следующем:

1. «12» февраля 2004 года между Заказчиком и Исполнителем был заключен договор на оказание информационных услуг (далее – Договор).

2. В период с 01.01.2005г. по 31.12.2005г. Исполнитель надлежащим образом исполнял предусмотренные Договором обязательства, а именно консультационные, информационные, правовые услуги, а также консультации по налоговым вопросам, по оптимизации налогов, по выбору оптимальной системы налогообложения, по камеральным и выездным налоговым проверкам, по защите интересов налогоплательщиков, по бухгалтерскому учету, налоговому планированию, оценке безопасности налоговых решений; мониторинг законодательства в отношении принадлежащего Заказчику активов, имущества, а именно

1. взнос активов ОАО "Русский Дизель"в качестве уставного капитала в компанию "Дизель Лимитед" (Diesel Limited) находящуюся на острове Джерси, Великобритания;
2. взнос активов ОАО "Выборгская целлюлоза" в качестве уставного капитала в компанию "Выборг Лимитед" (Vyborg Limited) находящуюся на острове Джерси, Великобритания;
3. ЗАО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Синопская наб, д.56-58);
4. ООО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Красное село, ул. Нагорная д.5);

3. В отчетный период Заказчику предоставлялись ежемесячные письменные отчеты о проделанной работе.

4. На основании изложенного Стороны заявляют, что услуги по договору оказаны в полном объеме, надлежащего качества, претензий у Сторон по исполнению Договора друг к другу не имеют.

5. Настоящий акт оказания услуг составлен в двух экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для каждой из Сторон.

6. Выполнены услуги по Договору на сумму 200000 (Двести тысяч) рублей.

**ПОДПИСИ СТОРОН:**

Заказчик:                                Исполнитель:

**АКТ ОКАЗАННЫХ УСЛУГ**
**ПО ДОГОВОРУ НА ОКАЗАНИЕ ИНФОРМАЦИОННЫХ УСЛУГ ОТ "12" ФЕВРАЛЯ 2004Г.**

31 декабря 2006 год

Простое товарищество "Иткин и Сабадаш", именуемое в дальнейшем "Заказчик", в лице управляющего партнера Иткина Г. Ю., действующий на основании Договора простого товарищества, с одной стороны, и Васильева Е.Н., с другой стороны, именуемые вместе – Стороны, составили настоящий акт о следующем:

1.      «12» февраля 2004 года между Заказчиком и Исполнителем был заключен договор на оказание информационных услуг (далее – Договор).

2.      В период с 01.01.2006г. по 31.12.2006г. Исполнитель надлежащим образом исполнял предусмотренные Договором обязательства, а именно
консультационные, информационные, правовые  услуги, а также консультации по налоговым вопросам, по оптимизации налогов, по выбору оптимальной системы налогообложения, по камеральным и выездным налоговым проверкам, по защите интересов налогоплательщиков, по бухгалтерскому учету, налоговому планированию, оценке безопасности налоговых решений; мониторинг законодательства в отношении принадлежащего Заказчику активов, имущества.

3.      В отчетный период Заказчику предоставлялись ежемесячные письменные отчеты  о проделанной работе.

4.      На основании изложенного Стороны заявляют, что услуги по договору оказаны в полном объеме, надлежащего качества, претензий у Сторон по исполнению Договора друг к другу не имеют.

5.      Настоящий акт оказания услуг составлен в двух экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для каждой из Сторон.

6.      Выполнены услуги по Договору на сумму 200000 (Двести тысяч) рублей.

**ПОДПИСИ СТОРОН:**

Заказчик:                                                Исполнитель:

**EXHIBIT C**

*Zoya Spivakovsky*
*Certified Russian Interpreter & Translator*
*Tel: + 1 (323) 652-0003*

Judicial Council of California
Certification No. 301037

## CERTIFICATE OF ACCURACY

September 27, 2018

I, the undersigned, hereby certify that I am a professional translator, registered with the United States District Court, Central District of California and Los Angeles Superior Court as an official court interpreter and translator, and that I am thoroughly familiar with the Russian and English languages, and that the translation from Russian into English of the following attached document:

*Judgement issued by the Arbitration Court of the City of Moscow on September 14, 2018 (4 pages)*

is a true, accurate and correct rendition of the original document in the English language to the best of my knowledge and belief.

Executed under penalty of perjury this 27th day of September 2018, in Los Angeles, California.

Zoya Spivakovsky.
Certified Court Interpreter & Translator

*[barcode]*

140_19965054

*[State Emblem of the Russian Federation]*

## ARBITRATION COURT OF THE CITY OF MOSCOW

115191, City of Moscow, ul. Bolshaya Tulskaya, d. 17

http://www.msk.arbitr.ru

### ARBITRATION COURT OF THE CITY OF MOSCOW
### IN THE NAME OF THE RUSSIAN FEDERATION

# JUDGEMENT

City of Moscow

Case No. A40-165165/18
140/4254

September 14, 2018

The Resolutive Part of the Judgment was issued on September 12, 2018.

The final judgment was issued on September 14, 2018.

Presiding:  Judge O. U. Parshukova

Bench Trial

Record of court proceedings provided by A. S. Burmak, Assistant Judge.

As per Court Transcript dated 09/12/2018, the following parties were present during the proceedings:

For Plaintiff: E. Gofman, Ministry of Justice Certificate No. 553787

For Defendant: I. N. Shadaev, Power of Attorney dated 08/07/2018

In the matter of a debt collection claim brought by Sole Proprietor Elena Gofman (INN[1] No. 772276917200) against Defendant Simple Partnership "Itkin and Sabadash" (8501 Wilshire Blvd. Suite 330, Beverly Hills, California, 90211 USA)

### THE COURT FINDS AS FOLLOWS:

Sole Proprietor Elena Gofman has filed a claim in Arbitration Court of the City of Moscow against Simple Partnership "Itkin and Sabadash" asking the Court to issue the following findings of fact: the Information Services Agreement dated 02/12/2004 was entered into in the usual course of the operation of her business and was effective; having entered into the Information Services Agreement dated 02/12/2004, the terms and obligations thereunder were satisfied [by Plaintiff] to the benefit of Simple Partnership "Itkin and Sabadash", namely: Contractor provided consulting and information services consistent with the interests of Simple Partnership "Itkin and Sabadash" in accordance with applicable law which is confirmed by Service Delivery Reports[2] dated 12/31/2004, 12/31/2005 and 12/31/2006; Simple Partnership "Itkin and Sabadash" failed to perform its obligations under the Information Services Agreement dated 02/12/2004; under the Information Services Agreement dated 02/12/2004, [Defendant had] a duty to fulfill its obligation to pay Contractor 826,000 RUB pursuant to Paragraph 4 of the

---

[1] INN – abbreviation for Individual Taxpayer Number. [This and the subsequent footnotes are translator's notes.]

[2] The phrase used in the original text is "Service Delivery Assets," which is a meaningless phrase in Russian and was most likely the result of a typing error, rather than the intended meaning based on the context of the paragraph. The Russian word "asset" («актив») is similar in spelling to the Russian word "report" («акт»).

Agreement, including late fees in the amount of 10% per annum on the underpaid amount of 480,602 RUB, as well as a fine in the amount of 150,000 RUB.

Plaintiff asserts her claim in its entirety on grounds put forth in the Complaint. The record contains evidence of name change to "Elena Gofman". In the course of the proceedings, the Court ruled that "Sole Proprietor E. N. Vasilyeva" be changed to "Sole Proprietor E. Gofman", in accordance with Article 48 of the Arbitration Procedure Code of the Russian Federation.

Defendant disputes the claim on grounds set forth in its written response to the Complaint.

Having reviewed the record and heard the positions of the Parties, the Court finds that the complaint merits a partial award [for Plaintiff] on the following grounds.

Based on the evidence presented in the case, Plaintiff and Defendant entered into a paid Information Services Agreement dated 02/12/2004, under which Plaintiff agreed to provide consulting and information services consistent with Client's interests pursuant to the provisions of applicable law in relation to Client's assets and property, as well as consultations on tax matters, tax optimization and selection of optimal taxation structure, on-site and field tax audits, taxpayer rights and protection, accounting, tax planning, tax strategy risk assessment and monitoring of applicable law, while Defendant agreed to compensate Contractor for services rendered within the timeframes, in the amount and on terms set forth in the Agreement (hereinafter, "Agreement"). The Agreement is effective until 02/12/2004.

Plaintiff rendered services provided for in the Agreement, namely: provided consulting and information services consistent with interests of Simple Partnership "Itkin and Sabadash" pursuant to the provisions of applicable law as it pertains to the assets and property of Simple Partnership "Itkin and Sabadash", namely:

1. OAO[3] "Russkiy Diesel" located at: Leningrad Region, Vsevolozhskiy District, Kirpichniy Zavod Station, industrial zone; contribution of assets of OAO "Russkiy Diesel" to equity capital of Diesel Limited, a company located on Jersey Island, United Kingdom;

2. OAO "Vyborgskaya Celluloza" located at: Leningrad Region, Vyborgskiy District, pos. Sovetskiy, ul. Zavodskaya, d. 2; Contribution of assets of OAO "Vyborgskaya Celluloza" to equity capital of Vyborg Limited, a company located on Jersey Island, United Kingdom;

3. ZAO[4] "LIVIZ" located at: Saint-Petersburg, Sinopskaya nab., d. 56-58;

4. OOO[5] "LIVIZ" located at: Saint-Petersburg, Krasnoe selo, ul. Nagornaya., d. 5;

5. Land entitlements, namely: 987 hectares of land shares held in Leninskiy Luch Collective Farm (Krasnogorskiy District, Moscow Region); 197 hectares of land shares held in Petrovskiy Collective Farm (Krasnogorskiy District, Moscow Region); 430 hectares of land shares held in Ilyinsky Collective Farm (Krasnogorskiy District, Moscow Region); and 360 hectares of land shares held in "Dmitrovskiy" Collective Farm (Krasnogorskiy District, Moscow Region);

6. Purchase of real estate property located at: 58 Beverly Park, Beverly Hills, CA, USA;

7. Purchase of Gulfstream G500 aircraft; with the exclusion of the following property owned by Client: real estate property located as follows: Boulevard

---

[3] OAO – abbreviation for Public Joint-stock Company [this and all subsequent footnotes are translator's notes].
[4] ZAO – abbreviation for Private Joint-Stock Company.
[5] OOO – abbreviation for Limited Liability Company.

General Charles De Gaulle, 17, Cap Ferrat, France; Falcon 200 aircraft (Tail No. HB VNG), as the aforementioned assets are located outside the Russian Federation.

Defendant accepted services performed by Plaintiff, which is confirmed by Service Delivery Reports. Pursuant to paragraph 2.5 and 2.6 of said Agreement, a Work Completion Delivery/Acceptance Report shall be executed bilaterally to serve as proof of acceptance of work performed by Contractor. Service Completion Reports and invoices were delivered to Defendant by courier, which Defendant does not deny and which is confirmed by evidence contained in the record.

Pursuant to paragraph 3.3 of the Agreement, the amount of remuneration due for services rendered under the Agreement is 200,000 (two hundred thousand) RUB per annum. Within the time period prior to 02/20/2004, Client remitted an advance payment under the Agreement in the amount of 200,000 (two hundred thousand) RUB.

In the time periods from February to December 2004, from January 2005 to December 2005 and from January 2006 to December of 2006, Plaintiff rendered services to Defendant under the Agreement totaling 600,000 (six hundred thousand) RUB and 00 kopecks[6]. Defendant made partial payments for services; this fact is confirmed by payment records submitted to the Court.

However, in breach of Paragraph 1.2 of the Agreement, to date Defendant has failed to pay the arrears in the amount of 400,000 (four hundred) RUB, which is confirmed by Service Delivery Reports dated 12/31/2005 and 12/31/2006.

Plaintiff's Demand for Payment (Notice of Claim) seeking to collect outstanding amounts due for services rendered was issued on 05/20/2018; with a second Demand for Payment, which referenced the intent to file a complaint with the Court, dated 06/06/2018. Defendant, represented by Managing Partner G. U. Itkin, has voluntarily partially satisfied [Plaintiff's] Demand for Payment by remitting 2,000 (two thousand) US dollars (an amount equal to 124,000 (one hundred twenty four thousand) RUB), citing paragraphs 3.6 and 5.6 of the Agreement, according to which Contractor may request payment for services rendered from each of the partners of Simple Partnership "Itkin and Sabadash"; when personal financial liability is calculated, respective shares in partnership interest are to be taken into consideration, as per Simple Partnership Agreement, namely: G. Y. Itkin: - 33%, A. V. Sabadash: - 67%, which is confirmed by G. U. Itkin's response dated 06/07/2018.

In accordance with Paragraph 1 of Article 779 of the Civil Code of the Russian Federation, under a paid services agreement the Contractor agrees, on the instruction of the Client, to render services (i.e. to undertake certain actions or specific activities), while Client agrees to pay for these services.

In accordance with Paragraph 1 of Article 781 of the Civil Code of the Russian Federation, the Client is obligated to pay for services rendered within the timeframes and in the manner set forth in the paid services agreement.

In accordance with Article 309 of the Civil Code of the Russian Federation, obligations shall be performed according to terms of subject obligation and requirements of law. In accordance with Paragraph 1 of Article 330 of the Civil Code of the Russian Federation, a late fee (fine/penalty) is an amount provided for by law or contractually, which the debtor shall pay

---

[6] копеск – a monetary unit of Russian currency, equal to one hundredth of a ruble (RUB).

creditor in the event of failure to perform or improper performance of the obligation, in particular a delay in performance thereof.

Pursuant to Paragraph 4.6 of the Agreement, in the event of Client's failure to compensate Contractor for Contractor's services in accordance with the terms of payment, Client shall pay Contractor a penalty in the amount of 10% per annum on the underpaid amount, as well as a one-time fine of 50,000 (fifty thousand) RUB for breach of the Agreement.

As of 2005, payment was 4,571 days overdue.

The arrears are calculated as follows:

| OVERDUE BALANCE: | PAYMENT DELINUINCY PERIOD | | | FORMULA | TOTAL INTEREST ACCRUED WITHIN THE PERIOD | TOTAL INTEREST |
| | FROM: | TO: | DAYS | | | |
| 200,000.00 | 12/31/2005 | 12/31/2007 | 731 | 200 000,00 x 731 / 365 x 10% + 40,054,79 RUB = 40,054,79 RUB | | |
| 200,000.00 | 01/01/2008 | 12/1/2008 | 366 | 200,000.00 x 366/366 x | 10% + 20,000.00 RUB = 60,054.79 RUB | |
| 200,000.00 | 01/01/2009 | 12/1/2011 | 1095 | 200,000.00 x 1095/365 x | 10% + 60,000.00 RUB = 120,054.79 RUB | |
| 200,000.00 | 01/01/2012 | 12/1/2012 | 366 | 200,000.00 x 366/366 x | 10% + 20,000.00 RUB 140,054.79 RUB | |
| 200,000.00 | 01/01/2013 | 12/1/2015 | 1095 | 200,000.00 x 1095/365 x | 10% + 60,000.00 RUB = = 200,054.79.00 RUB | |
| 200,000.00 | 01/01/2016 | 12/1/2016 | 366 | 200,000.00 x 366/366 x | 10% + 20,000.00 RUB = 220,054.79.00 RUB | |
| 200,000.00 | 01/01/2017 | 07/06/2018 | 552 | 200,000.00 x 552/365 x | 10% + 30,246.58 RUB = 250,301.37 RUB | |

Total interest:    250,301.37 RUB
Total principle:   200,000.00 RUB

As of 2006, payment was 4,206 days overdue.

The arrears were calculated as follows:

| OVERDUE BALANCE: | PAYMENT DELINUINCY PERIOD | | | FORMULA | TOTAL INTEREST ACCRUED WITHIN THE PERIOD | TOTAL INTEREST |
| | FROM: | TO: | DAYS | | | |
| 200,000.00 | 12/31/2006 | 12/31/2007 | 366 | 200,000 x 366/365 x 10% | +20,054.79 RUB | =20,054.79 RUB |
| 200,000.00 | 01/01/2008 | 12/31/2008 | 366 | 200,000 x 366/366 x 10% | +20,000.00 RUB | =40,054.79 RUB |
| 200,000.00 | 01/01/2009 | 12/31/2011 | 1095 | 200,000 x 1095/365 x 10% | +60,000.00 RUB | =100.054.79 RUB |
| 200,000.00 | 01/01/2012 | 12/31/2012 | 366 | 200,000 x 366/366 x 10% | +20,000.00 RUB | =120,054.79 RUB |
| 200,000.00 | 01/01/2013 | 12/31/2015 | 1095 | 200,000 x 1095/365 x 10% | +60,000.00 RUB | =180,054.79 RUB |
| 200,000.00 | 01/01/2016 | 12/31/2016 | 366 | 200,000 x 366/366 x 10% | +20,000.00 RUB | =200,054.79 RUB |
| 200,000.00 | 01/01/2017 | 07/06/2018 | 522 | 200,000 x 522/365 x 10% | +30,246.58 RUB | =230,301.37 RUB |

Total interest:    230,301.37 RUB
Total principle:   200,301.00 RUB

A fine of 150,000 (fifty thousand) RUB for breach of the Agreement [is imposed]. The total amount of liability is 930,602.74 (nine hundred and thirty thousand six hundred two rubles and 74 kopecks).

As noted in Defendant's answer, the statute of limitation for Plaintiff's claim for recovery of penalties and fines has passed.

The Court does not support Defendant's conclusion and denies this portion of the claim. Evidence presented at trial included correspondence which specifically contained Defendant's

5

response to Demand for Payment, in which Defendant did not dispute having entered into a paid Information Services Agreement dated 02/12/2014 and agreed to the total amount of debt, interest and fine arising out of the breach of the Agreement, in the amount provided for by the Agreement, thereby accepting Plaintiff's calculations.

Therefore, in this instance there was no interruption of the limitations period.

According to Article 65 of the Arbitration Procedure Code of the Russian Federation, each party participating in the arbitration process is required to prove the existence of circumstances which it cites in support of its claims and objections.

Based on the forgoing, the claim is subject to partial satisfaction.

In accordance with Article 110 of the Arbitration Procedure Code of the Russian Federation, administrative fees shall be paid by Defendant proportionally to the portion of Plaintiff's claim awarded by the Court.

In view of the foregoing and guided by Articles 309, 310, 329, 330, 990, 991, 998 and 999 of the Civil Code of the Russia Federation and Articles 41.65, 110, 167-170 and 176 of the Arbitration Procedure Code of the Russian Federation, the Court

## ISSUED THE FOLLOWING RULING:

The Court grants a partial satisfaction of the claim.

Simple Partnership "Itkin and Sabadash" (8501 Wilshire Blvd. Suite 330, Beverly Hills, California, 90211 USA) shall pay Sole Proprietor Elena Gofman (INN[7] 772276917200) the principal amount of 826,000 (eight hundred twenty-six thousand), including the late fee stipulated in Paragraph 4.6 of the Agreement in the amount of 10% per annum on the underpaid amount of 480,602 (four hundred eighty-six thousand six hundred and two) RUB; a fine of 150,000 (one hundred and fifty thousand) RUB, as well as administrative costs in the amount of 19,520 (nineteen thousand five hundred and twenty) RUB.

The remainder of the claim is denied.

An appeal of the judgment may be filed within one month from the date of entry of the judgement in the Federal Ninth Arbitration Court of Appeals.

Judge:                                                          O. U.  Parshukova

---

[7] INN – abbreviation for Individual Taxpayer Number. [This and the subsequent footnotes are translator's notes.]



# АРБИТРАЖНЫЙ СУД ГОРОДА МОСКВЫ

115191, г.Москва, ул. Большая Тульская, д. 17
http://www.msk.arbitr.ru
**АРБИТРАЖНЫЙ СУД г. МОСКВЫ**
**ИМЕНЕМ РОССИЙСКОЙ ФЕДЕРАЦИИ**
Р Е Ш Е Н И Е

г. Москва

Дело № А40-165165/18
140-4254

14 сентября  2018 г.
Резолютивная часть решения объявлена 12 сентября  2018 года
Полный текст решения изготовлен 14 сентября  2018 года
Председательствующего: Паршуковой О.Ю.
Судьей: единолично
При ведении протокола судебного заседания помощником судьи Бурмак А.С.
с участием сторон по Протоколу с/заседания от 12.09.2018 г.
от заявителя – Гофман Е. свидетельство МЮ-№ 553787
от ответчика – Шадаев И.Н. доверенность от 07.08.2018г.
по заявлению  индивидуального предпринимателя Гофман Елены  (ИНН 772276917200)
к ответчику Простое товарищество «Иткин и Сабадаш» (90211, США, штат Калифорния, город Беверли Хиллс, бульвар Вилшер, дом 8501, оф. 330)
о взыскании задолженности

## УСТАНОВИЛ:

Индивидуальный предприниматель Гофман Елена обратилась в Арбитражный суд г. Москвы с иском к Простое товарищество "ИткинСабадаш" с требованием об устаноивении факта заключения и действия договора на оказание информационных услуг от 12.02.2004г. в рамках осуществления своей хозяйственной деятельности; установить факт исполнения условий и обязанностей по заключенному договору  на оказание информационных услуг от 12.02.2004г. в пользу Простого товарищества "Иткин и Сабадаш", а именно: исполнитель оказал консультационные и информационные услуги предусматривая интересы Простого товарищества "Иткин и Сабадаш" в соответствии с положениями действующего законодательства в отношении принадлежащих Простому товариществу "Иткин и сабадаш" активов, имущества, что подтверждается активами оказанных услуг от 31.12.2004г. , 31.12.2005г., 31.12.2006г.; установить факт ненадлежащего исполнения своих обязательств по договору со стороны Простого товарищества "Иткин и сабадаш"; Об обязании исполнить обязательства по договору на оказание информационных услуг от 12.02.2004г. в размере 826 000 руб., включая неустойку, предусмотренную п.4.6 договора в размере 10% годовых от неуплаченной суммы в размере 480 602 руб. и штраф в размере 150 000 руб.

Истец требования поддерживает в полном объеме, по основаниям,  изложенным в исковом заявление. В материалы дела предоставлено доказательство изменение имени о смене имени на Гофман Елену. Суд совещаясь на месте, определил в соответствии со ст. 48 АПК РФ изменить  с Индивидуального предпринимателя  Васильева Е.Н. на  Индивидуального предпринимателя Гофман Е.

Ответчик иск не признал, возразил по основаниям, изложенным в письменном отзыве на исковое заявление.

Исследовав материалы дела, заслушав мнение сторон, суд считает исковое заявление подлежащим удовлетворению частично по следующим основаниям.

Как следует из материалов дела, между истцом и ответчиком был заключен Договор возмездного оказания информационных услуг от 12.02.2004 г., согласно которому истец обязался оказывать консультационные и информационные услуги предусматривая интересы Заказчика в соответствии с положениями действующего законодательства в отношении принадлежащих Заказчику активов, имущества, а также консультации по налоговым вопросам,

по оптимизации налогов, по выбору оптимальной системы налогообложения, по камеральным и выездным налоговым проверкам, по защите интересов налогоплательщиков, по бухгалтерскому учету, налоговому планированию, оценке безопасности налоговых решений; мониторинг законодательства, а Ответчик обязывался оплатить указанные услуги Исполнителя в порядке, в срок и на условиях, определенных Договором на оказание информационных услуг (далее - "Договор"). Договор действует с 12.02.2004 года.

Истец предусмотренные Договором услуги оказал, а именно: оказал консультационные и информационные услуги предусматривая интересы Простого товарищества "Иткин и Сабадаш" в соответствии с положениями действующего законодательства в отношении принадлежащего Простого товарищества "Иткин и Сабадаш" активов, имущества, а именно:

1. ОАО "Русский Дизель" (адрес: Ленинградская область, Всеволожский район, станция Кирпичный завод, промзона); взнос активов ОАО "Русский Дизель"в качестве уставного капитала в компанию "Дизель Лимитед" (Diesel Limited) находящуюся на острове Джерси, Великобритания;

2.ОАО "Выборгская целлюлоза" (адрес: Ленинградская область, Выборгский район, пос. Советский ул. Заводская д.2); взнос активов ОАО "Выборгская целлюлоза" в качестве уставного капитала в компанию "Выборг Лимитед" (Vyborg Limited) находящуюся на острове Джерси, Великобритания;

3.ЗАО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Синопская наб, д.56-58);

4.ООО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Красное село, ул. Нагорная д.5);

5.Земельные паи в совхоз "Ленинский луч" (Московская область, Красногорский район) 987 га, совхоз "Петровский" (Московская область, Красногорский район) 197 га, совхоз "Ильинский" (Московская область, Красногорский район) 430 га, совхоз "Дмитровский" (Московская область, Красногорский район) 360 га;

6.Покупка недвижимого имущества находящегося по адресу: США, штат Калифорния, город Беверли Хиллс, улица Беверли Парк, д.58;

7. покупка самолета Гольфстрим G500; исключая имущество Заказчика: недвижимое имущество, расположенное по адресу: Франция, Кап Феррат, бульвар имени Генерала де Голя, д. 17; самолет Фалькон 200, бортовой номер HB VNG, в связи с нахождением имущества за пределами РФ.

Ответчик указанные услуги принял, что подтверждается актами выполненных работ. В соответствии с п.2.5, 2.6 указанного договора приемка результатов работ должна быть оформлена двусторонним актом сдачи-приемки выполненных работ. Акты выполненных работ и счета на оплату доставлялись ответчику нарочным, что не отрицается ответчиком и подтверждается имеющимися в материалах дела доказательствами.

Согласно п.3.3. Договора размер вознаграждения Исполнителя за оказанные услуги по настоящему договору составляет 200 000 (двести тысяч) рублей в год. В срок до 20.02.2004 года Заказчик произвел предварительную оплату по договору в размере 200 000 (Двести тысяч) рублей.

В период с февраля по декабрь 2004г., с января 2005г. по декабрь 2005 года, а также с января 2006г. по декабрь 2006 года истец оказал ответчику услуги по Договору на общую сумму 600 000 (Шестьсот тысяч) руб. 00 коп. Ответчик оплату услуг производил частично. Данный факт подтвержден представленными в материалы дела платежными документами.

Однако в нарушение п. 1.2 Договора по настоящее время Ответчик не погасил задолженность по оплате оказанных Истцом услуг в сумме 400 000 (Четыреста тысяч) рублей, что подтверждается Актами оказанных услуг от 31.12.05 г., 31.12.06г.

Требование (претензия) Истца было направлено от 20.05.2018 г. о погашении задолженности по оплате оказанных услуг, повторное требование с указанием о намерении передать спор на рассмотрение в суд от 06.06.2018г. Ответчик, в лице управляющего партнера Иткина Г.Ю., частично добровольно удовлетворил в размере 2000 (Две тысячи) Долларов США (что составляет 124 000 (сто двадцать четыре тысячи) рублей), сославшись на п.3.6 и п.5.2. Договора, согласно которому Исполнитель имеет право требовать оплаты выполненной работы у каждого из партнеров простого товарищества "Иткин и Сабадаш"; при рассмотрении спора и определении размера персональной материальной ответственности учитывается процентное соотношение долей, предусмотренное договором простого товарищества, а именно Иткин Г.Ю. -33% и Сабадаш А.В. - 67%, что подтверждается ответом Иткина Г.Ю. от 06.07.2018г.

В соответствии с п. 1 ст. 779 Гражданского кодекса Российской Федерации по договору возмездного оказания услуг исполнитель обязуется по заданию заказчика оказать услуги (совершить определенные действия или осуществить определенную деятельность), а заказчик обязуется оплатить эти услуги.

В соответствии с п. 1 ст. 781 Гражданского кодекса Российской Федерации заказчик обязан

3

оплатить оказанные ему услуги в сроки и в порядке, которые указаны в договоре возмездного оказания услуг.

В соответствии со ст. 309 Гражданского кодекса Российской Федерации обязательства должны исполняться надлежащим образом в соответствии с условиями обязательств и требованиями закона. В соответствии с п. 1 ст. 330 Гражданского кодекса Российской Федерации неустойкой (штрафом, пеней) признается определенная законом или договором денежная сумма, которую должник обязан уплатить кредитору в случае неисполнения или ненадлежащего исполнения обязательства, в частности, в случае просрочки исполнения.

В соответствии с п.4.6 Договора в случае нарушения заказчиком сроков оплаты услуг исполнителя заказчик уплачивает исполнителю пеню в размере 10% годовых от неуплаченной суммы, а также единовременный штраф за нарушение условий договора в размере 50 000 руб.

Просрочка по оплате за 2005 год составит 4 571 дней.

Расчет задолженности:

| Задолженность с | по | Период просрочки дней | Формула | Проценты за период | Сумма процентов |
|---|---|---|---|---|---|
| 200 000,00 | 31.12.2005 | 31.12.2007 | 731 | 200 000,00 × 731 / 365 × 10% | + 40 054,79 р. = 40 054,79 р. |
| 200 000,00 | 1.01.2008 | 1.12.2008 | 366 | 200 000,00 × 366 / 366 × 10% | +20 000,00 р. = 60 054,79 р. |
| 200 000,00 | 1.01.2009 | 1.12.2011 | 1095 | 200 000,00 × 1095/365 × 10% | +60 000,00 р. = 120 054,79 р. |
| 200 000,00 | 1.01.2012 | 1.12.2012 | 366 | 200 000,00 × 366 / 366 × 10% | + 20 000,00 р. = 140 054,79 р. |
| 200 000,00 | 1.01.2013 | 1.12.2015 | 1095 | 200 000,00 × 1095/365 × 10% | +60 000,00 р. = 200 054,79 р. |
| 200 000,00 | 1.01.2016 | 1.12.2016 | 366 | 200 000,00 × 366 / 366 × 10% | + 20 000,00 р. = 220 054,79 р. |
| 200 000,00 | 1.01.2017 | 6.07.2018 | 552 | 200 000,00 × 552/365 × 10% | + 30 246,58 р. = 250 301,37 р. |

Сумма процентов: 250 301,37 руб.

Сумма основного долга: 200 000,00 руб.

Просрочка по оплате за 2006 год составляет 4 206 дней.

Расчет задолженности:

| Задолженность с | по | Период просрочки дней | Формула | Проценты Сумма за период процентов |
|---|---|---|---|---|
| 200 000,00 | 31.12.2006 | 31.12.2007 | 366 | 200 000,00 × 366/365 × 10% + 20 054,79 р. = |
| 200 000,00 | 01.01.2008 | 31.12.2008 | 366 | 200 000,00 × 366/366 × 10% 20 054,79 р. + 20 000,00 р. = 40 054,79 р. |
| 200 000,00 | 01.01.2009 | 31.12.2011 | 1095 | 200 000,00 × 1095/365 × 10% + 60 000,00 р. = 100 054,79 р. |
| 200 000,00 | 01.01.2012 | 31.12.2012 | 366 | 200 000,00 × 366/366 × 10% + 20 000,00 р. = 120 054,79 р. |
| 200 000,00 | 01.01.2013 | 31.12.2015 | 1095 | 200 000,00 × 1095/365 × 10% + 60 000,00 р. = 180 054,79 р. |
| 200 000,00 | 01.01.2016 | 31.12.2016 | 366 | 200 000,00 × 366/366 × 10% + 20 000,00 р. = 200 054,79 р. |
| 200 000,00 | 01.01.2017 | 06.07.2018 | 552 | 200 000,00 × 552/365 × 1 0 % + 30 246,58 р. = 230 301,37 р. |

**Сумма процентов:** 230 301,37 руб.

**Сумма основного долга:** 200 000,00 руб.

Штраф за нарушение условий договора в размере 150000 (сто пятьдесят тысяч) рублей.

Общая сумма задолженности составляет 930602,74 (девятьсот тридцать тысяч шестьсот два рубля 74 коп.) рублей.

Как следует из отзыва ответчика, истцом пропущен срок исковой давности на взыскания неустойки и штрафов.

Суд считает в данной части не подлежащим удовлетворения вывод ответчика. Поскольку в материалы дела предоставлена переписка, а именно ответ по претензии, о том что ответчик не отрицает ни факта заключения договора возмездного оказания информационных услуг от 12.02.2014г., соглашается с общей суммой задолженности, процентами и штрафом за нарушение условий договора, в размере предусмотренным вышеуказанным договором, принимая расчеты истца.

Таким образом в данном случае не прерывается срок исковой давности.

В соответствии со ст. 65 АПК РФ каждое лицо, участвующее в арбитражном процессе, обязано доказать наличие тех обстоятельств, на которые оно ссылается в обоснование своих требований и возражений.

При указанных обстоятельствах исковые требования подлежат   удовлетворению частично.

В соответствии со ст. 110 АПК РФ расходы по оплате государственной пошлины подлежат отнесению на ответчика пропорционально удовлетворенным требованиям.

На основании изложенного, руководствуясь ст.ст., 309, 310, 329, 330, 990, 991, 998, 999 ГК РФ,   41,65, 110, 167-170, 176 Арбитражного процессуального кодекса Российской Федерации, суд

## РЕШИЛ:

Требования удовлетворить частично.

Взыскать с Простого товарищества «Иткин и Сабадаш» (90211, США, штат Калифорния, город Беверли Хиллс, бульвар Вилшер, дом 8501, оф. 330) в пользу индивидуального предпринимателя Гофман Елены   (ИНН 772276917200) сумму основного долга в размере 826 000 (восемьсот двадцать шесть тысяч), включая неустойку, предусмотренную п. 4 6 договора в размере 10% годовых от неуплаченной суммы в сумме 480 602 (четыреста восемьдесят шесть тысяч шестьсот два) руб.  и штраф  в размере 150 000 (сто пятьдесят тысяч) руб., расходы по оплате государственной пошлины в сумме 19  520 (девятнадцать тысяч пятьсот двадцать) руб.

В остальной части требований отказать

Решение может быть обжаловано в месячный срок с даты его принятия в Девятый арбитражный апелляционный суд.

Судья:                                       .                                               О.Ю.Паршукова

**EXHIBIT D**



Протокол собрания партнеров
Простого товарищества "Ятвин и Сабацци"

г. Москва                                          «12» февраля 2004 г.

Партнеры Простого товарищества "Ятвин и Сабацци" Александр Витальевич Сабацци, 12 апреля 1965 года рождения, паспорт 4604951777 выданный 13 ноября 2003 года 75 отделом милиции Невского района г. Санкт-Петербурга, и Гарри Юрий Ицхак, 27 мая 1960 года рождения, паспорт США 036320508 выданный 28 августа 1997 года паспортным агентством г. Лос Анжелес, совместно именуемые «Партнеры» или «Стороны», настоящим Протоколом подтверждают, что достигли взаимопонимания по следующим вопросам повестки:

1. В 1998 году, в г. Лос Анжелес Партнеры заключили взаимообязующее Соглашение о создании Простого товарищества "Ятвин и Сабацци" и обязались путем объединения имущества, денежных средств, иных материальных ресурсов, своего образования, профессионального опыта, а также деловой репутации и деловых связей совместно действовать без образования юридического лица. Учитывая взаимодополняемый опыт деятельности, исходя из общих коммерческих интересов, в целях организации эффективного управления имуществом, вносимым Александром Витальевичем Сабацци (далее - по тексту «Имущество»), а также для достижения положительного материального эффекта. Сгруппирован вкладом Гарри Юрий Ицхак в совместную деятельность являлись его образование, профессиональный опыт, а также деловая репутация и деловые связи.

Вносимое Товариществу имущество, которым они обладали на праве собственности, а также произведенная в результате совместной деятельности продукции и полученные от такой деятельности плоды и доходы признаются их общей долевой собственностью, пропорциональной вкладу каждого из Товарищей. Александр Витальевич Сабацци 67%, Гарри Юрий Ицхак 33%.

2. Партнеры договорились, что Простое товарищество "Ятвин и Сабацци" будет бессрочным. Товарищ вправе объявить о прекращении своего участия в Простом товариществе заявив, не менее чем за три месяца, с возмещением другому участнику Простого товарищества реального причиненного такими выходом. С момента прекращения Простого товарищества Товарищи несут солидарную ответственность по неисполненным общим обязательствам в отношении третьих лиц.

Раздел имущества, находившегося в общей собственности Товарищей, и возникших у них общих прав требования осуществляется путем выделения дополнительно согласования и заключения все принципы общего решения на основании законодательства РФ. При прекращении договора простого товарищества вся собственность товарищества делится в соответствии с вышеуказанной доле в общем доле - Александр Витальевич Сабацци - 67%, а Гарри Юрий Ицхак - 33%.

3. Пользование общим имуществом осуществляется по обоюдному согласию Партнеров, а доходы, полученные в результате совместной деятельности, являются общей долевой собственностью Партнеров и могут быть сняты ими для личного пользования пропорционально их доле в общем деле. Также, все общие обязательства, расходы и убытки, являются общей совместной деятельностью, распределяются их пропорционально их общий солидарной ответственностью пропорциональной их выполняемой доле в общем деле.

Все общие дела по настоящему Договору ведутся Партнерами совместно. Партнер не вправе распоряжаться своей доли в общем имуществе без согласия второго Партнера. Партнеры имеют равное право на ознакомление со всей документацией по совместной деятельности. За исполнение или невыполнение исполнения своих обязанностей каждый Партнер несет личную и персональную ответственность перед

второй Партнером. В особенности Партнеры являются доверенными лицами друг для друга. Каждый Партнер обязан действовать со всей добросовестностью по отношению к своему Партнеру, воздерживаться от совершения грубых халатных или безрассудных действий, умышленных неправомерных действий или сознательных нарушений закона. Все споры и разногласия, которые могут возникнуть между Партнерами в ходе исполнения настоящего соглашения, разрешаются путем переговоров. В случае невозможности разрешения спорок путем переговоров Партнеры передают их на рассмотрение в судебную систему США, в соответствии с законами Штата Калифорния США.

4. Условия договора строго конфиденциальны, не подлежат разглашению и передаче третьим лицам. Все отчеты, а также иная информация Общества считаются конфиденциальной. Предусматривается обязанность сторон по соблюдению условий конфиденциальности в отношении полученной информации. Существование Общества не раскрывается для третьих лиц (негласное товарищество). Договоры с третьими лицами в интересах Простого товарищества заключаются при согласовании обоих Партнерами.

5. Ведение общих дел Товарищей в рамках деятельности Простого товарищества "Ятвин и Сабацци" возлагается на Гарри Юрий Ицхак, в чьи обязанности входит:
- согласование действия Товарищей;
- ведение переговоров с третьими лицами по вопросам совместной деятельности, за исключением случаев, когда, согласно настоящему Договору или дополнительному соглашению к нему, ведение переговоров поручается другим Участникам;
- оформление и хранение документации, относящейся к совместной деятельности;
- обеспечение и хранение Товарищей документированной информации об общих делах;
- представление общих интересов Товарищей перед другими организациями, учреждениями и гражданами;
- в случае необходимости представление претензий и исков, представительство интересов Товарищей в суде, арбитражном суде и других судебных инстанциях.

Партнеры

# EXHIBIT E

Electronically FILED by Superior Court of California, County of Los Angeles on 08/07/2019 02:37 PM Sherri R. Carter, Executive Officer/Clerk of Court, by D. Johnson,Deputy Clerk

Case 2:25-bk-11235-NB    Doc 89-1    Filed 07/01/25    Entered 07/01/25 14:14:52    Desc
Exhibit A - K    Page 34 of 160

1 | Lee D. Lubin, Esq., Bar No. 167309
**LAW OFFICE OF LEE DAVID LUBIN, INC.**
2 | 16133 Ventura Boulevard, Suite 1175
Encino, California 91436
3 | PH: (818) 728-0712; FAX (818) 995-7335

4 | *Attorneys for* Plaintiff, ELENA GOFMAN

5

6

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **COUNTY OF LOS ANGELES - LIMITED JURISDICTION**

10

| | |
|---|---|
| ELENA GOFMAN, an individual, | **CASE NO:** 19STCP01412 |
| Plaintiff, | **NOTICE OF AND MOTION OF DEFENDANT ELENA GOFMAN FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| ITKIN AND SABADASH, a general partnership; and DOES 1 through 10, inclusive, | |
| Defendants. | **[Filed Concurrently with Request for Judicial Notice in Support of Motion for Judgment on the Pleadings]** |
| | Hearing Information: |
| | Date: December 17, 2019 |
| | Time: 8:30 a.m. |
| | Dept: 94 |
| | Reservation No. 176122932399 |
| | Case Assigned to Department 44, the Honorable Judge James E. Blancarte, presiding |

23 | TO THE COURT, ALL PARTIES, AND TO THEIR RESPECTIVE COUNSEL OF RECORD:

24 | PLEASE TAKE NOTICE that on December 17, 2019, at 8:30 a.m., in Department 17 of the Los

25 | Angeles Superior Court, located at 111 N. Hill Street, Los Angeles, CA 90012, Plaintiff ELENA GOFMAN

26 | (hereinafter referred to as "**Plaintiff**") will move the Court for an order granting Plaintiff judgment in her

27 | favor on the pleadings in this action, and against the Defendant ITKIN AND SABADASH, a general

28 | partnership (hereinafter referred to as "**Defendant**"), pursuant to Cal. Code of Civil Proc. § 438.

1

1      This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities

2  Plaintiff's Request for Judicial Notice, the court file in this action, and such other evidence and oral argument

3  as may be presented at the hearing on this matter.

4  Dated: August 7, 2019                          LAW OFFICE OF LEE DAVID LUBIN, INC.

5

6                                                 By:

7                                                 LEE DAVID LUBIN, ESQ.
                                                  *Attorneys for* Plaintiff, ELENA GOFMAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**NOTICE OF AND MOTION OF DEFENDANT ELENA GOFMAN FOR JUDGMENT ON THE PLEADINGS**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff ELENA GOFMAN (hereinafter referred to as "**Plaintiff**") seeks recognition of a foreign country money judgment against Defendant ITKIN AND SABADASH, a general partnership (hereinafter referred to as "**Defendant**") pursuant to the sole cause of action of the Complaint under California's Uniform Foreign-Country Money Judgments Recognition Act (hereinafter referred to as the "**Act**").

In its Answer to the Complaint, Defendant has admitted each of the elements of a cause of action for recognition of a foreign money judgment under the Act, except for the total amount of the debt. Defendant contends that a portion of the debt has been paid, in the amount of $10,000, which the Plaintiff does not dispute. As the pleadings establish and prove both the Plaintiff's right to recognition of the foreign judgment and the absence of any defense thereto, the Plaintiff is entitled to judgment in her favor on the pleadings.

## II.

## BACKGROUND FACTS - AS ADMITTED IN THE ANSWER.

The following facts alleged in the Complaint are admitted in Defendant's Answer:

1.    Defendant is a general partnership consisting of partners Garry Yuri Itkin (hereinafter referred to as "**Itkin**") and Alexander Vitalyevich Sabadash (hereinafter referred to as "**Sabadash**"), which is organized in Los Angeles County, California. (Complaint ¶ 3; Answer ¶ 3.)

2.    In February 2004, Plaintiff and Defendant entered into the written legal services contract, entitled, "Information Services Agreement," a copy of which is attached to the Complaint as Exhibit 1 (hereinafter referred to as the "**Services Agreement**"). (Complaint. ¶ 7, Ex. 1 to Complaint; Answer ¶ 7.) The contract permits Plaintiff to recover her attorney's fees as the prevailing party in any action to enforce the contract. (Complaint ¶ 7, Ex. 1; Answer ¶ 7.)

3.    In July 2018, Plaintiff filed a lawsuit in Moscow, Russia, against Defendant, and the court in Moscow served process on both Itkin and Sabadash. (Complaint. ¶¶ 8-9, Ex. 2 to Complaint; Answer ¶¶ 8-9.)

3

4.      After a court trial on the merits, the court in Moscow issued a money judgment in favor of Plaintiff and against Defendant in the amount of 1,476,122 RUB ($23,130.83 USD) (hereinafter referred to as the "**Moscow Judgment**"). (Complaint ¶¶ 10-13, Ex. 3; Answer ¶¶ 10-13.)

5.      Pursuant to the Act, Plaintiff is entitled to have the Moscow Judgment recognized by the State of California, to the same extent as if the money judgment was rendered by a California court, less $10,000 credit for sums already paid by Defendant in response to similar litigation in the United Kingdom. (Complaint ¶ 18; Answer ¶ 18.)

6.      Under the law of the Russian Federation, the Moscow Judgment is final, conclusive, and enforceable, as all applicable appeal periods have expired. (Complaint ¶ 20; Answer ¶ 20.)

7.      The Arbitration Courts of the judicial system of the Russian Federation provide impartial tribunals and procedures compatible with the requirements of due process of law under the laws of the State of California and the United States of America. (Complaint ¶ 21; Answer ¶ 21.)

8.      The Moscow Court had personal jurisdiction over Defendant Partnership based on Defendant Partnership's entry into the Services Agreement in Moscow, Russia, and based on Sabadash's current residence in Russia. (Complaint ¶ 22; Answer ¶ 22.)

9.      The Moscow Court had subject matter jurisdiction over the Moscow Lawsuit, because the Arbitration Courts of the Russian Federation resolve civil disputes such as breaches of contract and failure to pay debts. (Complaint ¶ 23; Answer ¶ 23.)

10.      Defendant Partnership, Sabadash, and Itkin each had actual notice of the Moscow Lawsuit with sufficient time to defend and did in fact present a defense at trial. (Complaint ¶ 24; Answer ¶ 24.)

11.      The Moscow Judgment was not obtained through fraud. (Complaint ¶ 25; Answer ¶ 25.) The Moscow Judgment and the grounds for it are not repugnant to the public police of the State of California or the United States of America. (Complaint ¶ 26; Answer ¶ 26.)

12.      The Moscow Lawsuit was not contrary to any agreement between the parties regarding the manner in which any dispute would be resolved. (Complaint ¶ 27; Answer ¶ 27.)

13.      Personal jurisdiction in the Moscow Lawsuit was not based solely on personal service of process. (Complaint ¶ 28; Answer ¶ 28.)

4

**NOTICE OF AND MOTION OF DEFENDANT ELENA GOFMAN FOR JUDGMENT ON THE PLEADINGS**

14.     The Moscow Judgment was not rendered under circumstances that raise substantial doubt about the integrity of the rendering court with respect to the Moscow Judgment. (Complaint ¶ 29; Answer ¶ 29.)

15.     The proceedings before the Moscow Court related to the Moscow Lawsuit were compatible with the requirements of due process of law under the laws of the State of California and the United States of America. (Complaint ¶ 30; Answer ¶ 30.)

16.     On balance, the grounds for recognition of the Moscow Judgment outweigh any grounds for nonrecognition. (Complaint ¶ 31; Answer ¶ 31.)

17.     The Moscow Judgment does not conflict with another final and conclusive judgment of any other court. (Complaint ¶ 32; Answer ¶ 32.)

## III.

## LEGAL STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS.

Code of Civil Procedure 438, provides in relevant part:

". . . (1)     A party may move for judgment on the pleadings.

". . . (c)

"(1)     The motion provided for in this section may only be made on one of the following
        grounds:

        "(A) If the moving party is a plaintiff, that the complaint states facts sufficient

        to constitute a cause or causes of action against the defendant and the answer

        does not state facts sufficient to constitute a defense to the complaint.

"(2)     The motion provided for in this section may be made as to either of the following:

        "(A) The entire complaint or cross-complaint or as to any of the causes of action

        stated therein.

        "(B) The entire answer or one or more of the affirmative defenses set forth in the

        answer.

". . .(d) The grounds for motion provided for in this section shall appear on the face of the challenged pleading or from any matter of which the court is required to take judicial notice.

5

1   Where the motion is based on a matter of which the court may take judicial notice pursuant to

2   Section 452 or 453 of the Evidence Code, the matter shall be specified in the notice of motion,

3   or in the supporting points and authorities, except as the court may otherwise permit.

4   "(e) No motion may be made pursuant to this section if a pretrial conference order has been

5   entered pursuant to Section 575, or within 30 days of the date the action is initially set for trial,

6   whichever is later, unless the court otherwise permits.

7   "(f) The motion provided for in this section may be made only after one of the following

8   conditions has occurred:

9   "(1) If the moving party is a plaintiff, and the defendant has already filed his or her answer to the

10   complaint and the time for the plaintiff to demur to the answer has expired.

11   "(h)

12   "(1) The motion provided for in this section may be granted with or without leave to file an

13   amended complaint or answer, as the case may be.

14   ". . .(3) If the motion is granted with respect to the entire complaint or answer without leave to

15   file an amended complaint or answer, as the case may be, then judgment shall be entered

16   forthwith in accordance with the motion granting judgment to the moving party."

17

18                                              **IV.**

19                    **PLAINTIFF IS ENTITLED TO JUDGMENT ON THE PLEADINGS.**

20          To prove her entitled to judgment for recognition of a foreign money judgment, Plaintiff must establish

21   that she obtained a foreign judgment that grants recovery of a sum of money, and that the judgment is "final,

22   conclusive, and enforceable . . . [u]nder the law of the foreign country where rendered. . ." [*Code of Civil*

23   *Procedure* §1715]. All of the aforementioned elements are established by the pleadings of the Complaint,

24   and admitted by the Defendant in the Answer (of which the Court may take judicial notice under Evidence

25   Code §452(d).(Answer ¶¶ 10-13, 19-20.)  Defendant even admits that Plaintiff is entitled to recognition of

26   the Judgment, less a $10,000 credit for sums already paid. (Answer ¶ 18.)

27

28

**NOTICE OF AND MOTION OF DEFENDANT ELENA GOFMAN FOR JUDGMENT ON THE PLEADINGS**

1       Furthermore, Defendant admits in its Answer that it cannot establish any of the defenses applicable to

2  a claim under the Act. (Answer ¶¶ 21-32.) As such, the pleadings establish both the Plaintiff's right to entry

3  of judgment and the Defendants inability to prove a defense to the Plaintiff's claims.

4       No pre-trial conference order has been made in this action, nor has an initial trial date been set. The

5  Defendant has filed its answer in this action, and the time for the Plaintiff to demur to the answer has expired.

6       Accordingly, Plaintiff is entitled to entry of judgment in her favor, recognizing the Moscow Judgment

7  in the State of California, in the amount of $23,130.83 USD, less a credit of $10,000, for a total judgment,

8  excluding prejudgment interest, costs, and legal fees (if applicable), in the amount of $13,130.83.[1]

9

10                                         **V.**

11                           **CONCLUSION**

12       The material allegations of the Complaint are admitted by the Defendant in the Answer, and for that

13  reason, no amendment to the Answer would enable the Defendant to plead a defense to the Plaintiff's

14  complaint. Based thereon, the Plaintiff respectfully requests that the Court enter judgment in her favor, on

15  the pleadings in this action, and against the Defendant, recognizing the Moscow Judgment in the State of

16  California, in the amount of $13,130.83, without leave to amend.

17  Dated: August 7, 2019                 Respectfully Submitted,

18                               LAW OFFICE OF LEE DAVID LUBIN, INC.

19

20

21                               By: Lee D. Lubin, Esq. Attorneys for Plaintiff,
                               ELENA GOFMAN

22

23

24

25

26

27

28       [1] Plaintiff reserves the right to seek an increase in the judgment for the Plaintiff's to costs of suit, pre-judgment interest, and legal fees (if applicable, and via separate motion should Plaintiff prevail).

7

**NOTICE OF AND MOTION OF DEFENDANT ELENA GOFMAN FOR JUDGMENT ON THE PLEADINGS**

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

      I am an attorney, licensed to practice before all Courts of the State of California.  I am not a party to the within action; my business address is: 16133 Ventura Boulevard, Suite 1175, Encino, California 91436.

      On August 7, 2019, I served the foregoing document(s)  described as:

**NOTICE OF AND MOTION OF DEFENDANT ELENA GOFMAN FOR JUDGMENT ON THE PLEADINGS;  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

on the interested parties in this action as follows *or* as indicated on the attached Service List.

\_\_\_\_    **BY MAIL**: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on the same day with postage thereon fully prepaid, at Encino, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

\_\_\_\_    **BY PERSONAL SERVICE**: I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s) pursuant to CCP § 1011.

**X**    **BY EXPRESS MAIL**: I deposited such documents at the Overnite Express or Federal Express Drop Box located at: 16133 Ventura Boulevard, Encino, California 91436.  The envelope was deposited with delivery fees thereon fully prepaid.

**X**    **BY ELECTRONIC TRANSFER**: I caused all of the pages of the above-entitled document(s) to be sent to the recipients via electronic mail at the recipient's e-mail addresses, as indicated on the attached Service List.

Executed on August 7, 2019, at Encino, California.

**XXX**    (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

LEE LUBIN

1

## SERVICE LIST

2  Jon A. Atabek, Esq.
   ATABEK & ASSOCIATES, P.C.
3  16330 Bake Parkway
   Irvine, CA 92618
4  PH: (213) 394-5943
   FAX: (213) 402-3413
5  E-mail: jatabek@atabeklaw.com

6  Attorneys for Defendant,
   ITKIN AND SABADASH, a general partnership

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8/7/2019                        Make a Reservation | Journal Technologies Court Portal

 **Journal Technologies Court Portal**

# Make a Reservation

## ELENA GOFMAN vs ITKIN AND SABADASH, A GENERAL PARTNERSHIP

Case Number: 19STCP01412   Case Type: Civil Limited   Category: Other Enforcement of Judgment Case
Date Filed: 2019-04-19   Location: Stanley Mosk Courthouse - Department 94

### Reservation

Case Name:
ELENA GOFMAN vs ITKIN AND SABADASH, A
GENERAL PARTNERSHIP

Case Number:
19STCP01412

Type:
Motion for Judgment on the Pleadings

Status:
RESERVED

Filing Party:
Elena Gofman (Plaintiff)

Location:
Stanley Mosk Courthouse - Department 94

Date/Time:
12/17/2019 8:30 AM

Number of Motions:
1

Reservation ID:
176122932399

Confirmation Code:
CR-MRDMM9NTMPX446ZPH

### Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Motion for Judgment on the Pleadings | 60.00 | 1 | 60.00 |
| Credit Card Percentage Fee (2.75%) | 1.65 | 1 | 1.65 |
| TOTAL | | | **$61.65** |

### Payment

Amount:
$61.65

Type:
Visa

Account Number:
XXXX2021

Authorization:
05687D

🖨 Print Receipt       ➕ Reserve Another Hearing

Copyright © Journal Technologies, USA. All rights reserved.

**EXHIBIT F**

# MIKHAIL BOGOMOLNY
## TRANSLATION, NOTARY AND APOSTILE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MPBOGO@YAHOO.COM
P. 1.818.857.6329

## CERTIFICATION OF TRANSLATION

*Translation from Russian into English*

IT IS HEREBY DECLARED THAT THE TRANSLATION OF THE DOCUMENT ATTACHED HEREWITH IS A COMPLETE, TRUE, CORRECT ENGLISH LANGUAGE TRANSLATION, PROVIDING ALL RELEVANT INFORMATION CONTAINED IN THE ORIGINAL RUSSIAN LANGUAGE DOCUMENT.

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER, DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

MIKHAIL BOGOMOLNY,   TRANSLATOR 

 NAJIT  National Association of Judiciary Interpreters & Translators

Member ID: 3826 valid through 03/27/2020

CFI  CALIFORNIA FEDERATION OF INTERPRETERS

Member ID: 2613 valid through 01/17/2020

The union and professional association for court interpreters



**SUPREME COURT OF THE RUSSIAN
FEDERATION
JUDICIAL DEPARTMENT**

**Operations office of the
arbitration and specialized courts**

31 Gilyarovskogo Street, build. 2,
Moscow, State postal service no. 6,
107996

Phone: 8-495-684-80-73; Fax: 8-495-684-80-73
http://www.cdep.ru;  Email: e-post@cdep.ru

To:

Vasileva (Gofman) E.N.
5 Energeticheskaya Street., apt 31,
Moscow 111116

December 12, 2019 no. CD-6 OG/4783-2259-19

**Dear Elena Nikolayevna!**

The Operations office of the arbitration and specialized courts at the Supreme Court of the
Russian Federation has reviewed your submission dated December 9, 2019.

In accordance with the Federal law "On the Judicial Department at the Supreme Court of
the Russian Federation" no. 7-FZ of January 8, 1998, the Judicial department is the federal
state authority, providing support to the operations of the courts, including human
resources, financial, technical, informational and other types of support, aimed at the
creation of conditions for full and impartial administration of justice.

Pursuant to article 195 of the Code of the Civil Procedure of the Russian Federation "The
decision of the court must be lawful and well-founded"; article 196 of the Code of the Civil
Procedure of the Russian Federation "In issuing its decision, the court considers evidence,
determines the circumstances relevant to the case which were established, and those which
were not established, the violations of law committed by the parties, the law to be applied
in the specific case, and whether the favorable adjudication in warranted".

In accordance with the order of the Plenum of the Supreme Court of the Russian Federation
"On the Court Decision" N 23 of 12/19/2003 (as amended on 06/23/2015) "The decision
is considered lawful if rendered in strict application of the norms of the procedural law,

and in full compliance with the norms of the substantive law, applicable to the violation at hand, or based on the application of analogous statute or similar law, in certain cases… The decision is considered lawful when the relevant facts are confirmed by the evidence, reviewed by the court and established to be relevant and admissible as to the rule of law, or to be circumstances not requiring proof; and when exhaustive findings of the court arise from the established facts. The establishment of circumstances by the party, forming the basis to the statement of claim or objection is indicated in the ratio decidendi part, concurrent with the findings of the court with regard to the establishment of the said circumstances, unless establishment of circumstances is not permitted by law".

The decision of the Court of the Russian Federation, in accordance with the current legislation, must be lawful, to wit, well-founded and executable by each of the parties. The Court is the guarantor of the enforceability of the lawful decision. Consequently, during the trial, the court verifies a priori the actions of each of the parties, as well as the existence of each of the parties, provided that non-existence of the parties (death, liquidation etc.) invalidates legal proceedings, the decision and the enforceability of such decision. The lawful decision of the arbitration court is legally binding on all parties. Failure to comply with the court ruling, as well as non-compliance with the orders of the arbitration court results in liability as provided by the federal laws of the Russian Federation.

In its work, the Judicial Department is bound by the constitutional principle of non-interference with the administration of justice.
In an event of the disagreement with the procedural actions of the judges and the decisions rendered by them, you have the right to file an appeal in a manner prescribed by the procedural laws of the Russian Federation.

Dept. Head Pro Tem

Yakubovsky O.V. */Signature/*


L.E. Adamova
8(495)684-88-17



**СУДЕБНЫЙ ДЕПАРТАМЕНТ
ПРИ ВЕРХОВНОМ СУДЕ
РОССИЙСКОЙ ФЕДЕРАЦИИ**
(Судебный департамент)

**Управление по обеспечению
деятельности арбитражных
и специализированных судов**

ул. Гиляровского, д.31, корп. 2,
Москва, ГСП-6, 107996

Тел.: 8-495-684-80-73; факс: 8-495-684-80-73
http://www.cdep.ru; E-mail: e-post@cdep.ru

12.12.2019 № СД-6 от/4783- 2259-19

На № _____ от _____

Васильевой (Гофман) Е.Н.

ул. Энергетическая, д. 5, кв. 31
г. Москвы, 111116

Уважаемая Елена Николаевна!

Управлением по обеспечению деятельности арбитражных и специализированных судов Судебного департамента при Верховном суде Российской Федерации Ваше обращение от 09.12.2019 рассмотрено.

В соответствии с Федеральным законом от 08.01.1998 №7-ФЗ "О Судебном департаменте при Верховном суде Российской Федерации" Судебный департамент является федеральным государственным органом, осуществляющим организационное обеспечение деятельности судов, под которым понимаются мероприятия кадрового, финансового, материально-технического, информационного и иного характера, направленные на создание условий для полного и независимого осуществления правосудия.

В соответствии со статьей 195 ГПК РФ определяется: «Решение суда должно быть законным и обоснованным»; статьей 196 ГПК РФ - «При принятии решения суд оценивает доказательства, определяет, какие обстоятельства, имеющие значение для рассмотрения дела, установлены и какие обстоятельства не установлены, каковы правоотношения сторон, какой закон должен быть применен по данному делу и подлежит ли иск удовлетворению»; статьей 168 АПК РФ - «При принятии решения арбитражный суд оценивает доказательства и доводы, приведенные лицами, участвующими в деле, в обоснование своих требований и возражений; определяет, какие обстоятельства, имеющие значение для дела, установлены и какие обстоятельства не установлены, какие законы и иные нормативные правовые акты следует применить по данному делу; устанавливает права и обязанности лиц, участвующих в деле; решает, подлежит ли иск удовлетворению».

В соответствии с Постановлением Пленума Верховного суда РФ «О судебном Решении» от 19.12.2003 N 23 (ред. от 23.06.2015) «…Решение является законным в том случае, когда оно принято при точном соблюдении норм процессуального права и в полном соответствии с нормами материального права, которые подлежат применению к данному правоотношению, или основано на применении в необходимых случаях

аналогии закона или аналогии права…Решение является обоснованным тогда, когда имеющие значение для дела факты подтверждены исследованными судом доказательствами, удовлетворяющими требованиям закона об их относимости и допустимости, или обстоятельствами, не нуждающимися в доказывании, а также тогда, когда оно содержит исчерпывающие выводы суда, вытекающие из установленных фактов…О признании стороной обстоятельств, на которых другая сторона основывает свои требования или возражения, указывается в мотивировочной части решения одновременно с выводами суда об установлении этих обстоятельств, если не имеется предусмотренных законом оснований, по которым принятие признания обстоятельств не допускается».

Решение суда Российской Федерации в соответствии с действующим законодательством должно быть законным, а значит обоснованным и исполнимым каждой из сторон. Суд является гарантом исполнения законного решения, а следовательно в ходе судебного следствия суд априори проверят факт действительного действия каждой из сторон, равно как и существование каждой из сторон, т.к. отсутствие любой из сторон (смерть, ликвидация и т.п.) делает невозможным ведение судопроизводства и постановление, а также исполнение решения суда. Вступившее в законную силу Решение Арбитражного суда обязательно для исполнения всеми участниками взаимоотношений. Неисполнение судебных актов, а также невыполнение требований арбитражных судов влечет за собой ответственность, установленную федеральными законами Российской Федерации.

В своей деятельности Судебный департамент руководствуется конституционным принципом невмешательства в осуществление правосудия.

В случае несогласия с процессуальными действиями судей и принятыми ими судебными решениями Вы вправе обжаловать их в установленном процессуальным законодательством Российской Федерации порядке.

Врио начальника Управления                                                    О.В. Якубовский

Л.Э. Адамова
8(495)684-88-17

# EXHIBIT G

# MIKHAIL BOGOMOLNY
## TRANSLATION, NOTARY AND APOSTILE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MPBOGO@YAHOO.COM
P. 1.818.857.6329

## CERTIFICATION OF TRANSLATION

*Translation from Russian into English*

IT IS HEREBY DECLARED THAT THE TRANSLATION OF THE DOCUMENT ATTACHED HEREWITH IS A COMPLETE, TRUE, CORRECT ENGLISH LANGUAGE TRANSLATION, PROVIDING ALL RELEVANT INFORMATION CONTAINED IN THE ORIGINAL RUSSIAN LANGUAGE DOCUMENT.

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER, DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

MIKHAIL BOGOMOLNY,    TRANSLATOR 

 NAJIT    National Association of Judiciary
Interpreters & Translators

Member ID: 3826 valid through 03/27/2020

CFI    CALIFORNIA FEDERATION OF INTERPRETERS

Member ID: 2613 valid through 01/17/2020

The union and professional association for court interpreters



Moscow District Arbitration Court
9 Seleznevskaya Street, State postal service no. 4,
Moscow, Russia, 127994
Phone (495) 609-57-75  Fax (495) 609-57-65
Email: info@fasmo.arbitr.ru
http://fasmo.arbitr.ru
Org. reg. no 40139251  State reg. no.
1037739209749
Tax ID: 77085525 Bank code: 770701001

To:
Vasileva (Gofman) E.N.
5 Energeticheskaya Street., apt 31,
Moscow 111116

December 13, 2019   Doc. no. S5-5150


Moscow District Arbitration Court, having reviewed your submission hereby informs you of the following:

Authority of the Arbitration Court is regulated by the Federal constitutional law no. 1-FKZ (On Arbitration Courts of the Russian Federation) dated April 28, 1995, and by the norms of the arbitration procedural code of the Russian Federation.

Pursuant to art. 24 of the federal constitutional law no 1-FKZ (On Arbitration Courts of the Russian Federation) dated April 28, 1995,  Moscow district arbitration court reviews judicial actions, heard by the arbitration courts of the city of Moscow and the Moscow region, as well as judicial actions of the appellate arbitration courts, founded in this judicial district. Additionally, Moscow District Arbitration Court, in the capacity of the court of the first instance, reviews claims for damages arising out of the violation of the right to the prompt administration of justice or the right to an enforcement of a judicial act within a reasonable period of time.

In accordance with the Guidelines to the administration of justice by the arbitration courts of the Russian Federation (trial, appellate cassation courts), approved by the order of the Plenum of the Supreme Arbitration Court of the Russian Federation on December 25, 2013 N 100 ("On the adoption of the guidelines to the administration of justice by the arbitration courts of the Russian Federation (trial, appellate cassation courts" (paragraph. 4 of the guidelines), information about the name (last, first, patronymic name), place of residence or location of the plaintiff and defendant, taxpayer ID number (hereafter "TIN"), acquisition of the status of the "sole proprietor" by an individual, or termination of activity by an individual, acting as the sole proprietor is logged by the specialist of the arbitration

court registration team into the SAS, based on the information, contained in the abstract from the

Unified State Registry of Legal Entities (USRLE) or Unified State Registry of Sole Proprietors (USRSP), as provided by the plaintiff in the paper form or electronically, duly registered by the issuing authority, or by other duly certified document, confirming existence of such information or lack thereof.

Upon review and adjudication of the claim, the Arbitration court establishes the existence of each of the parties to each claim, which is a prerequisite to issuance of legally binding decision.   The said procedure of establishment of the parties is undertaken at the preparation stage of the case review.

In accordance with article 41.2.2. Guidelines to the administration of justice by the arbitration courts of the Russian Federation (trial, appellate cassation courts), approved by the order of the Plenum of the Supreme Arbitration Court of the Russian Federation on December 25, 2013 N 100, employees of the arbitration court do not provide legal advice.


Acting head of the clerk's office
of the presiding judge

Komukova T.V.        /Signature/



**АРБИТРАЖНЫЙ СУД
МОСКОВСКОГО ОКРУГА**

Селезневская ул., д.9,
ГСП-4, Москва, 127994
тел. (495) 609-57-75 Факс (495) 609-57-65
E-mail: info@fasmo.arbitr.ru
http://fasmo.arbitr.ru
ОКПО 40139251, ОГРН 1037739209749,
ИНН 77085525, КПП 770701001

Е.Н. Васильевой (Гофман)

ул. Энергетическая, д.5, кв. 31,
г. Москва, 111116

13.12.19 № С5-5150

На № _____ от _____

Арбитражный суд Московского округа, рассмотрев Ваше обращение, сообщает следующее.

Полномочия арбитражного суда регламентированы Федеральным конституционным законом от 28 апреля 1995 года № 1-ФКЗ "Об арбитражных судах в Российской Федерации" и нормами Арбитражного процессуального кодекса Российской Федерации.

Согласно статье 24 Федерального конституционного закона от 28 апреля 1995 года №1-ФКЗ "Об арбитражных судах в Российской Федерации" Арбитражный суд Московского округа осуществляет проверку судебных актов, принятых арбитражными судами города Москвы и Московской области, и судебных актов арбитражных апелляционных судов, образованных в данном судебном округе. Также Арбитражный суд Московского округа рассматривает в качестве суда первой инстанции заявления о присуждении компенсации за нарушение права на судопроизводство в разумный срок или права на исполнение судебного акта в разумный срок.

В соответствии с Инструкцией по делопроизводству в арбитражных судах Российской Федерации (первой, апелляционной и кассационной инстанций), утвержденной Постановлением Пленума Высшего Арбитражного Суда Российской Федерации от 25 декабря 2013 N 100 "Об утверждении Инструкции по делопроизводству в арбитражных судах Российской Федерации (первой, апелляционной и кассационной инстанций" (пункт 4 Инструкции) Сведения о наименовании (фамилии, имени, отчество) месте нахождения или месте жительства истца и ответчика, идентификационном номере налогоплательщика (далее - ИНН), приобретении физическим лицом статуса индивидуального предпринимателя либо прекращении физическим лицом деятельности в качестве индивидуального предпринимателя заносятся специалистом группы регистрации арбитражного суда в САС на основании сведений, содержащихся в представленной истцом выписке из Единого государственного реестра юридических лиц (далее - ЕГРЮЛ или Единого государственного реестра индивидуальных предпринимателей (далее - ЕГРИП) (представленной на бумажном носителе либо в электронном виде и заверенной регистрирующим органом надлежащим образом), либо иным документом, подтверждающим наличие или отсутствие этих сведений, который удостоверен надлежащим образом.

При рассмотрении дела и постановлении решения Арбитражный суд удостоверяет факт существования каждой из сторон по каждому делу, что является условием для постановления законного решения. Указанная процедура установления сторон производится при подготовке к рассмотрению дела.

В соответствии с пунктом 41.2.2. Инструкции по делопроизводству в арбитражных судах Российской Федерации (первой, апелляционной и кассационной инстанций), утвержденной Постановлением Пленума Высшего Арбитражного Суда Российской Федерации от 25 декабря 2013 года № 100, юридические консультации работниками арбитражного суда не даются.

И.о. руководителя секретариата
председателя суда

Т.В. Комукова

# EXHIBIT H

FILED & ENTERED

JUN 17 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY sumlin    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Itkin & Sabadash,<br><br><br><br><br><br><br><br><br><br>Debtor. | Case No.:     2:25-bk-11235-NB<br><br>Chapter:      7<br><br>**ORDER DISMISSING INVOLUNTARY PETITION**<br><br>Initial Hearing:<br>Date:  April 22, 2025<br>Time:  11:00 a.m.<br><br>Continued Hearing:<br>Date:  June 3, 2025<br>Time:  2:00 p.m.<br><br>Further Continued Hearing (appearances not required):<br>Date:  June 17, 2025<br>Time:  2:00 p.m.<br>Place: Courtroom 1545<br>         255 E. Temple Street<br>         Los Angeles, CA 90012<br>(or via ZoomGov per posted procedures) |

//

-1-

For the reasons set forth in the concurrently-issued "Memorandum Decision Dismissing Involuntary Petition" (dkt. 75), it is hereby ORDERED:

1) This above-captioned involuntary petition is dismissed.

2) Notwithstanding the dismissal of this case, this Court retains jurisdiction to the full extent provided by LBR 1017-2(f), including with respect to any damages, sanctions, or other issues that might arise with respect to this case.

3) Nothing in this dismissal order should be construed as mooting any motions that seek *in rem* or retroactive relief from the automatic stay.  Without further notice, and with or without any written order, this Court may determine that any other pending motion or adversary proceeding is or is not mooted by the dismissal of this case.  *See In re Carraher*, 971 F.2d 327, 328 (9th Cir. 1992); *In re Casamont Investors, Ltd.,* 196 B.R. 517, 522-26 (9th Cir. BAP 1996).

###

Date: June 17, 2025

Neil W. Bason
United States Bankruptcy Judge

-2-

# EXHIBIT I

FILED & ENTERED

JUN 16 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY ghaltchi   DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Itkin & Sabadash,<br><br><br><br><br><br><br>Debtor. | Case No.:    2:25-bk-11235-NB<br><br>Chapter:    7<br><br>**MEMORANDUM DECISION DISMISSING INVOLUNTARY PETITION**<br><br><u>Initial Hearing:</u><br>Date:  April 22, 2025<br>Time:  11:00 a.m.<br><br><u>Continued Hearing:</u><br>Date:  June 3, 2025<br>Time:  2:00 p.m.<br><br><u>Further Continued Hearing (appearances not required):</u><br>Date:  June 17, 2025<br>Time:  2:00 p.m.<br>Place: Courtroom 1545<br>       255 E. Temple Street<br>       Los Angeles, CA 90012<br>(or via ZoomGov per posted procedures) |

On February 19, 2025 an involuntary bankruptcy petition (dkt. 1) was filed against the above-captioned alleged Debtor, Itkin & Sabadash, by its alleged partner Garry Y. Itkin ("Mr. Itkin"). In response, the other alleged partner, Alexander Sabadash ("Mr. Sabadash"), has filed a motion to dismiss the petition, or alternatively for summary judgment of dismissal (dkt. 8, the "MTD").

Mr. Sabadash asserts that the alleged partnership "Itkin & Sabadash" never existed, and therefore that this Court lacks jurisdiction because Itkin & Sabadash is not a "person" that can be a debtor under § 303(b)(3), § 109(a), and § 101(41).[1]  In the alternative, he argues that at the very least there is a _bona fide dispute_ about the existence of any Itkin & Sabadash partnership, and hence about the existence of any purported debts of Itkin & Sabadash.  Therefore, he argues, this Court cannot grant the involuntary petition because it is impossible to find that there are any debts that are not "subject to a _bona fide dispute_ as to liability or amount" such that Itkin & Sabadash could be found to be "generally not paying [its non-disputable] debts."  § 363(h) (emphasis added).  In the alternative, he argues that this Court should abstain in favor of an earlier filed Chapter 15 proceeding (_In re Golden Sphinx Ltd._, Case No. 2:22-bk-14320-NB) "involving the same estate."  MTD (dkt. 8) PDF p. 2:14-15.

Mr. Itkin's principal counter-arguments are that the existence of the alleged partnership Itkin & Sabadash has been determined by courts in both Russia and California, and that Mr. Sabadash presents no admissible evidence to the contrary.  Alternatively, Mr. Itkin argues that the involuntary petition, which has now been joined in and supported by several alleged creditors of Itkin & Sabadash (_see_ dkt. 10-14 and 25-33), states at least a "plausible" claim for relief.  _See_ Rule 12(b)(6) (incorporated by Rules 7012 and 9014(c)).  Alternatively, to the extent that this Court applies Rule 56 (incorporated by Rules 7056 and 9014(c)), Mr. Itkin argues that there is a "genuine dispute" as to material facts regarding the existence of the alleged partnership Itkin & Sabadash.  Opp. (dkt. 16) p. 12:7–25:22.

Mr. Sabadash counters this last argument by asserting that the presence of a "genuine dispute" as to the existence of the alleged partnership actually means that he is entitled to dismissal of the involuntary petition.  His argument is that because the

---

[1] Unless the context suggests otherwise, a "chapter" or "section" ("§") refers to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), a "Rule" means the Federal Rules of Bankruptcy Procedure or other federal or local rule, and other terms have the meanings provided in the Bankruptcy Code, Rules, and the parties' filed papers.

1   burden is upon petitioning creditors to show the absence of a bona fide dispute, *In re*

2   *Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1069 (9th Cir. 2002), Mr. Itkin's "[o]pposition,

3   even if taken at face value, only helps establish a bona fide dispute over the existence

4   of the partnership and the validity of the derivative creditor claims." Reply (dkt. 21) pp.

5   21:26–28.

6   For the reasons set forth below, this Court will dismiss the involuntary petition on

7   three alternative grounds. First, this Court will enter a summary judgment of dismissal

8   under Rule 56. Second, supposing for the sake of discussion that the MTD would be

9   more properly treated under Rule 12, this Court will dismiss the involuntary petition

10  under that rule. Third, this Court will grant Mr. Sabadash's request that this Court

11  abstain under § 305.

12  **1. PROCEDURAL ISSUES**

13  **(a) Mr. Sabadash's request for dismissal is more properly adjudicated**

14  **under Rule 56 rather than Rule 12; but alternatively the same outcome**

15  **applies under either rule**

16  The MTD seeks dismissal of the involuntary petition under Rule 12(b)(1) and, at

17  least nominally, under Rule (b)(6). In support of that request, Mr. Sabadash relies

18  extensively upon materials outside the pleadings. He does not address how that would

19  be permissible under Rule 12(b)(6).[2] Rather, his theory is that reliance upon such

20  extrinsic materials is appropriate within the context of a Rule 12(b)(1) motion because,

21  "[i]n resolving a factual attack on *jurisdiction*, the [trial] court may review evidence

22  beyond the complaint without converting the motion to dismiss into a motion for

---

[2] Mr. Sabadash's MTD briefly recites the legal standards under paragraph "(6)" of Rule 12(b) ("failure to
state a claim upon which relief can be granted"), which is different from the bulk of his argument that
focuses on paragraph "(1)" of that rule ("lack of subject-matter jurisdiction"). *See* MTD (dkt. 8) p. 8:19–27.
But every argument he presents depends upon materials outside the pleadings that are not properly
considered within the context of a Rule 12(b)(6) motion. It is true that in limited circumstances this Court
may consider extrinsic materials when adjudicating a Rule 12(b)(6) motion. *See, e.g.*, *Barron v. Reich*, 13
F.3d 1370, 1377 (9th Cir. 1994). But none of those limited exceptions would allow this Court to consider
the extrinsic materials introduced by Mr. Sabadash were it to apply Rule 12(b)(6) when considering his
MTD. Therefore, this Court declines to consider the MTD under Rule 12(b)(6), and instead the remainder
of this discussion addresses the MTD under Rule 12(b)(1) and Rule 56.

summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted, emphasis added).

Under Rule 12(b)(1), a motion to dismiss must be treated as a motion for summary judgment when "the jurisdictional issue and substantive issues … are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Safe Air*, 373 F.3d 1035, 1040. The jurisdictional issues (whether the Itkin & Sabadash partnership exists) are so intertwined with the substantive issues (whether the alleged Debtor is not a "person" or whether there are no genuine debts of the alleged Debtor that are not being paid as they come due because the partnership does not exist) that they cannot be separated.

Under Rule 12(d), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and all "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *See also Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1182 (9th Cir. 2019). Both parties have had "a reasonable opportunity" to present all such material. Among other things, after this Court conducted the Initial Hearing as set forth in the caption above, Mr. Itkin requested authorization to file supplemental papers responding to evidence introduced in Mr. Sabadash's reply. Dkt. 45 & 48. This Court grants Mr. Itkin's request and has considered the supplemental brief that he filed on May 1, 2025 (dkt. 45) and, because this Court is not persuaded by that supplemental brief, it is not necessary to provide additional time for Mr. Sabadash to respond to that brief.

This Court has also reviewed (A) the proofs of claim filed by Progressive Management Inc. (POC 1-1), Jeff Ratner and Associates Inc. (POC 2-1 and 3-1), Alexei Kurochkin (POC 4-1), Evgeniv Avilov (POC 5-1), Elena Gofman (POC 6-1), Maria Habarova (POC 7-1), Ildar Shadaev (POC 8-1), Maria Samsonova (POC 9-1), and Atabek & Co. (POC 10-1); (B) the objections to each of those proofs of claim filed by Mr. Sabadash (dkt. 22–23 & 25–33); (C) the oppositions to Mr. Sabadash's claim objections

filed by each claimant (dkt. 52–62); (D) Mr. Sabadash's omnibus reply in support of his claim objections (dkt. 63); and (E) the joinders to the involuntary petition filed by alleged creditors Elena Gofman (dkt. 11), Evgeniy Avilov (dkt. 12), Maria Samsonova (dkt. 13), Ildar Shadaev (dkt. 14), Progressive Management, Inc. (dkt. 49), Jeff Ratner & Associates Inc. (dkt. 50), Alexey Kurochkin (dkt. 51), and Atabek & Co. (dkt. 60).

In papers filed on April 8, 2025, Mr. Itkin contends that Mr. Sabadash's request for dismissal of the involuntary petition should not be treated under Rule 56, because Mr. Itkin was not provided sufficient time to respond to the request under this Court's local rules, and Mr. Sabadash failed to comply with other procedural requirements applicable to requests for relief under Rule 56 – such as filing a statement of uncontroverted facts and conclusions of law and a proposed form of summary judgment.  Opp. (dkt. 16) p. 20:9–15.  But analyzing the motion under Rule 56 does not prejudice Mr. Itkin, because as set forth above this Court has considered Mr. Itkin's supplemental brief.  That brief was filed on May 1, 2025 – 42 days after the filing of Mr. Sabadash's motion on March 20, 2025.  Under the Local Bankruptcy Rules, Mr. Itkin is entitled to a period of only 21 days to respond to a Rule 56 motion.  LBR 7056-1(c)(1).  Therefore, Mr. Itkin's response time has not been shortened.  In addition and in the alternative, this Court has the authority to "waive the application of any Local Bankruptcy Rule in any case or proceeding … in the interest of justice."  LBR 1001-1(d).  Finally, under Rule 1001, "[w]hen a petition in an involuntary case is contested, the court must: (1) rule on the issues presented *at the earliest practicable time*; and (2) *promptly* issue an order for relief, dismiss the petition, or issue any other appropriate order" (emphasis added).

Alternatively, although it is appropriate to treat Mr. Sabadash's MTD as a request for the entry of summary judgment under Rule 56 dismissing the involuntary petition (as opposed to a request for entry of an order granting a Rule 12(b)(1) motion dismissing the petition), this Court would ultimately reach the same result regardless of whether it

proceeded under Rule 12(b)(1) or Rule 56.  To assure a complete record, the legal

standards applicable under both Rules 12(b)(1) and 56 are set forth below.

### (b) Rule 12(b)(1)

Under Rule 12(b)(1), a party may move to dismiss a complaint "for lack of

subject-matter jurisdiction …."  "A Rule 12(b)(1) jurisdictional attack may be facial or

factual.  In a facial attack, the challenger asserts that the allegations contained in a

complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a

factual attack, the challenger disputes the truth of the allegations that, by themselves,

would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d

1035, 1039 (9th Cir. 2004) (citation omitted).  In adjudicating a Rule 12(b)(1)

jurisdictional attack, this Court need not presume the truthfulness of the allegations in

the complaint.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

"Once the moving party has converted the motion to dismiss into a factual motion by

presenting affidavits or other evidence properly brought before the court, the party

opposing the motion must furnish affidavits or other evidence necessary to satisfy its

burden of establishing subject matter jurisdiction."  *Savage v. Glendale Union High

Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

### (c) Rule 56

Under Rule 56(a), summary judgment (on all or on part of a claim) is proper

when the pleadings, discovery, and affidavits show that there is no genuine dispute as

to any material fact and that the movant is entitled to judgment as a matter of law.  The

evidence and inferences therefrom must be viewed in the light most favorable to the

non-moving party.  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574,

587 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  But a mere

"scintilla" of evidence in opposition to summary judgment is insufficient.  *Anderson v.

Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

**"Genuine":**  If one party's "version of events is so utterly discredited by the

record that no reasonable jury could have believed him" summary judgment is

1   appropriate.  *Scott v. Harris,* 550 US 372, 380 (2007).  But the Ninth Circuit has

2   observed that "cases where intent is a primary issue generally are inappropriate for

3   summary judgment[.]"  *Provenz v. Miller,* 102 F.3d 1478, 1489 (9th Cir. 1996).  As the

4   Bankruptcy Appellate Panel for the Ninth Circuit has explained: "Fraud claims, in

5   particular, normally are so attended by factual issues (including those related to intent)

6   that summary judgment is seldom possible."  *In re Stephens,* 51 B.R. 591, 594 (9th Cir.

7   BAP 1985).

8       **"Material":** Material facts which would preclude entry of summary judgment are

9   those which, under applicable substantive law, could affect the outcome of the case.

10  The substantive law will identify which facts are material.  *Anderson v. Liberty Lobby,*

11  *Inc.,* 477 U.S. 242, 248 (1986).  At the summary judgment stage, the court does not

12  weigh the evidence and determine the truth of the matter, but determines whether there

13  is a genuine issue for trial. *Id.* at 249.

14      **Shifting burdens:** The moving party bears the initial burden of showing that

15  there is no genuine issue of material fact.  If the moving party meets its initial burden,

16  the burden then shifts to the non-moving party to set out, by affidavits or admissible

17  discovery material, specific facts showing a genuine issue for trial.  *Celotex*, 477 U.S. at

18  324.  The party opposing summary judgment must produce affirmative evidence that is

19  sufficiently probative on the issue that a jury reasonably could rely on that evidence to

20  decide the issue in his or her favor at trial.  *Matsushita Elec. Indust. Co., Inc. v. Zenith*

21  *Radio Corp.*, 475 U.S. 574, 588 (1986).  Without such evidence, there is no reason for a

22  trial. *Celotex*, 477 U.S. at 323.  *See also Nissan Fire and Marine Ins. Co. v. Fritz,* 210

23  F.3d 1099, 1103 (9th Cir. 2000) (analyzing burdens of production and proof).

24      **Evidence:**  Finally, the evidence presented by the parties must be admissible, or

25  at least it must be capable of later being presented in admissible form if the litigation

26  were to proceed to trial.  *JL Beverage Co., LLC v. Jim Beam Brands Co.,* 828 F.3d

27  1098, 1110 (9th Cir. 2016); *Sec. & Exch. Comm'n v. Strategic Glob. Invs., Inc.,* 262

28  F.Supp.3d 1007, 1019 (S.D. Cal. 2017) (hearsay evidence could be considered on

summary judgment "if the content of the evidence proffered could later be provided in
an admissible form at trial") (citing *JL Beverage*).

A party cannot create a genuine issue of fact simply by filing a sworn statement
that contradicts an earlier sworn statement.  *See, e.g., Kennedy v. Allied Mut. Ins. Co.*,
952 F.2d 262, 266 (9th Cir. 1991).

## 2. LEGAL STANDARDS APPLICABLE TO DISMISSAL OF AN INVOLUNTARY PETITION

An involuntary petition against a partnership may be commenced "by fewer than
all of the general partners in such partnership …." § 303(b)(3).  But, as set forth in
§ 303(h)(1), when an involuntary petition is contested "the court shall order relief … only
if the debtor is generally not paying such debtor's debts as such debts become due
unless such debts are the subject of a *bona fide dispute* as to liability or amount …."
(Emphasis added.)  A "bona fide dispute" exists if "there is an objective basis for either a
factual or a legal dispute as to the validity of the debt."  *In re Vortex Fishing Sys., Inc.*,
277 F.3d 1057, 1064 (9th Cir. 2002).  "[T]he *burden is on the petitioning creditors* to
show that no bona fide dispute exists…. [I]f there is either a genuine issue of material
fact that bears upon the debtor's liability, or a meritorious contention as to the
application of law to undisputed facts, then the petition must be dismissed."  *Id.* (citation
omitted; emphasis added).

Very similar issues were presented in the case of *In re Leong Partnership*, 2018
WL 1463852 (9th Cir. BAP Mar. 23, 2018), *aff'd,* 788 F. App'x 539 (9th Cir. 2019).  In
*Leong Partnership* the Bankruptcy Appellate Panel of the Ninth Circuit (the "BAP")
affirmed the bankruptcy court's entry of summary judgment dismissing an involuntary
petition filed against an alleged partnership.  Acknowledging that application of the
summary judgment standard was "somewhat confusing" in the context before it, the
BAP explained that to be entitled to summary judgment dismissing the involuntary
petition, the debtor was "required … to establish that there was *no genuine dispute that
[the claims asserted against the alleged debtor] were disputed*."  *Leong Partnership*,

2018 WL 1463852, at *7 & n. 13 (emphasis added).  Among other genuine disputes in *Leong Partnership,* the "equivocal nature" of the evidence regarding the existence of any partnership "demonstrated the existence of a bona fide dispute as to the existence of the partnership and, by extension, the existence of any claims against such entity." *Id.* at *8.

**3. DISCUSSION**

Mr. Sabadash's primary argument is that dismissal of the involuntary petition is required because "there can be no doubt that a bona fide dispute exists as to the existence of the debtor [the Alleged Partnership] and the debt."  Motion (dkt. 8) p. 8:1–2.  Mr. Itkin counters that the Itkin & Sabadash partnership has existed since 1998, and that judgments entered against the partnership by courts in Russia and the United States preclude Mr. Sabadash from challenging the existence of the partnership.  Opp. (dkt. 16) pp. 13:5–27:14.  This Court first examines whether Mr. Sabadash is precluded from contesting the existence of the partnership, and then turns to the question of whether Mr. Itkin has failed to establish a genuine issue that the claims to which he points are beyond bona fide dispute.

**(a) Mr. Sabadash is Not Precluded from Contesting the Existence of the Alleged Partnership**

**(i) Legal standards for preclusion**

To determine the preclusive effect of an existing nonbankruptcy court judgment, the bankruptcy court generally "must apply the forum state's law of issue preclusion."  *In re Plyam*, 530 B.R. 456, 462 (9th Cir. BAP 2015).  This requirement emanates from 28 U.S.C. § 1738, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States … as they have by law or usage in the courts of such State … from which they are taken."  The Supreme Court has explained that this statute "directs a federal court to refer to the preclusion law of the State in which judgment was rendered."  *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).

As to any final rulings of the California Courts, California preclusion law applies. As to Russian judgments, the parties have not briefed whether any preclusion law other than California preclusion law applies or, if so, whether such other law would apply any materially different standards.  In the absence of such briefing, and based on this Court's general understanding that similar principles apply to the preclusive effect of foreign judgments as to domestic judgments, this Court will apply California preclusion law.  Any arguments for a different standard are deemed waived and forfeited.  *See Hamer v. Neighborhood Housing Svcs.,* 138 S.Ct. 13, 17 n. 1 (2017) (distinguishing waiver and forfeiture).

California preclusion law requires that:
1) The issue sought to be precluded from relitigation is identical to that decided in a former proceeding;
2) The issue was actually litigated in the former proceeding;
3) The issue was necessarily decided in the former proceeding;
4) The decision in the former proceeding is final and on the merits; and
5) The party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding. [*Lucido v. Super. Ct.*, 795 P.2d 1223, 1225 (Cal. 1990).]

Even if all five elements are satisfied, preclusion is appropriate "only if application of preclusion furthers the public policies underlying the doctrine."  *In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001) (citing *Lucido*, 795 P.2d 1223, 1225).  In California, the public policies supporting preclusion are "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation."  *Lucido*, 795 P.2d 1223, 1227.

**(ii) Rulings against Itkin & Sabadash by courts in Russia are not preclusive**

Mr. Itkin relies in part on rulings of the Russian courts to establish that the partnership Itkin & Sabadash exists.  The first ruling, on September 14, 2018, is a Judgment by the Arbitration Court of the City of Moscow (the "Moscow Arbitration Court") in favor of Ms. Elena Gofman, and against Itkin & Sabadash, in the amount of 826,000 rubles, based upon Itkin & Sabadash's failure to pay Ms. Gofman for consulting

services that she claimed to have performed on behalf of the alleged partnership.

Judgment (Ex. C to Opp. (dkt. 16-1) (PDF pp. 22–27 of 187) (certified translation of

judgment).

The Moscow Arbitration Court's Judgment appears – if considered in isolation –

to support Mr. Itkin's arguments that the alleged partnership exists, and moreover that

Mr. Sabadash has personal financial liability (with Mr. Itkin) for the partnership debt to

Ms. Gofman:

> [Ms. Gofman] may request payment for services rendered from each of
> the partners of Simple Partnership "Itkin and Sabadash"; when *personal
> financial liability* is calculated, respective shares in partnership interest are
> to be taken into consideration, as per *Simple Partnership Agreement*,
> namely: G. Y. Itkin: - 33%, A. V. *Sabadash: - 67%*, which is confirmed by
> G. U. Itkin's response dated 06/07/2018.  [Judgment of Moscow
> Arbitration Court, p. 3 (Ex. C to Opp., dkt. 16) (certified translation) (Bates
> p. 24 of 187) (emphasis added).]

Mr. Sabadash appealed the judgment, arguing among other things that he had

been unable to participate in the proceedings before the Moscow Arbitration Court

because he had been incarcerated.  But on September 12, 2019, the Ninth Arbitration

Court of Appeal (the "Russian Appellate Court") affirmed the judgment.  That court

declined to consider Mr. Sabadash's arguments in opposition to the judgment.

The Russian Appellate Court ruled that the Moscow Arbitration Court had not in

fact made any decision as to the rights and obligations of Mr. Sabadash, including

whether he was deemed to be a member of the Alleged Partnership:

> [Mr. Sabadash's] position is that the [Moscow Arbitration] Court
> made its decision as to [his] rights and obligations, *deeming [him] to be a
> member of the Simple Partnership "Itkin and Sabadash"* **which is
> factually incorrect**.
> The Panel of Judges believes that *the decision of the trial court
> does not address Mr. Sabadash's personal rights and obligations*.
> There is no reference to Mr. Sabadash's personal rights or
> obligations in either *the resolutive or the declarative parts* of the court
> decision.  [Ruling of the Russian Appellate Court (Ex. 17 to Reply, dkt. 21-
> 1, PDF pp. 51–52 of 68) (certified translation) (emphasis added).]

This Bankruptcy Court interprets the above-quoted language from the Russian

Appellate Court to mean that the previously-quoted language from the Moscow

Arbitration Court is dicta.  Thus, there was no "decision" in the "resolutive or the

declarative parts" of the Judgment about either the existence of the partnership or Mr.

Sabadash's personal rights and obligations.

The Russian Appellate Court went on to hold that Mr. Sabadash lacked standing

to participate in the appeal because he had not been a party to the underlying lawsuit

and, even if he were a partner in the alleged partnership of Itkin & Sabadash, that did

not make him "directly" affected:

> Mr. Sabadash is not party to the lawsuit.  The mere existence of a simple partnership agreement does not form sufficient basis for allowing Applicant to appeal the ruling.
> Furthermore, having an interest in the outcome of the case does not vest Mr. Sabadash who is not party to the claim with the right to appeal the judicial ruling.  Individuals who are not party to a court action may appeal judicial rulings only if they are able to demonstrate that said ruling not only impacted said individual's personal rights and obligations, but that it _directly_ addressed said rights and obligations.
> According to Article 264, Part 1, Paragraph 1 of the Arbitration Procedure Code of the Russian Federation, the Arbitration Court of Appeals must deny the appeal if in the process of determining whether to accept the complaint the court will have established that appellant had no legal standing to file the appeal. [Ruling of the Court No. 09AP-43744/2019-GK (Ex. 17 to Reply, dkt. 21-1, PDF pp. 51–52 of 68) (certified translation) (emphasis added).]

The Russian courts had before them a written contract purporting to be between

Ms. Gofman and the alleged Itkin & Sabadash partnership, and they ruled that this

contract was enforceable, while leaving for another day any disputes between Mr. Itkin

and Mr. Sabadash about their respective liabilities for the debt to Ms. Gofman, including

whether or not the alleged partnership between them even existed and whether (as Mr.

Sabadash alleges) Mr. Itkin forged his signature on the contract (but perhaps gave Mr.

Itkin at least apparent authority to act for him).  In any event, whatever the reasoning of

the Russian Appellate Court, its holding seems clear: any assertion that an actual

decision had been made about the existence of the alleged partnership Itkin &

Sabadash was "factually incorrect."  Ruling of the Russian Appellate Court (Ex. 17 to

Reply, dkt. 21-1, PDF pp. 51–52 of 68) (certified translation).

Mr. Itkin argues to the contrary, citing an "Information Summary" issued by a single Deputy Presiding Judge of the Russian Appellate Court.  Ex. D to Opp. (dkt. 16-1) at PDF pp. 32-42 of 187 (English translation).  But Mr. Itkin cites no authority that the "Information Summary" qualifies as a judgment or decision that would be entitled to preclusive effect, especially when it does not address the apparently plain statement of the Russian Appellate Court that it is "factually incorrect" to assert that any decision was made about the existence of the alleged partnership.

Alternatively, supposing for the sake of argument that the rulings of the Russian courts did in fact affirm the existence of the alleged partnership Itkin & Sabadash (which they did not), the existence of any partnership at the time of Ms. Gofman's litigation is irrelevant to (i) whether any such partnership continues to exist today and, thus, whether it is a "person" that is eligible to be a debtor in bankruptcy, or (ii) whether it existed at other times in connection with other purported debts.  The Moscow Arbitration Court's Judgment found that Ms. Gofman's services were performed from "February … 2004 to … December of 2006" and the partners (assuming for the sake of discussion that they ever were partners) might have held themselves out as a partnership only as to Ms. Gofman and only during that time period.  Indeed, Mr. Itkin has testified, in other litigation between him and Sabadash-related entities, that "the partnership ended" in 2016, which illustrates the point that it could have ended at any time.  *See* Judgment, p. 3 (Ex. C to Opp. (dkt. 16-1) (PDF pp. 22–27 of 187) (certified translation of judgment) *and* Trial Tr. 3/11/20, pp. 25:25-26:3 (AFB Trading One, Inc. et al. v. Itkin et al., Cal. Superior Ct., Case No. BC647351) (Ex. 9 to MTD, dkt. 8-1, at PDF pp. 74-75 of 86).

Alternatively, assuming for the sake of discussion that the Russian courts' rulings undermined the MTD (which they do not) and that Ms. Gofman could have filed a written opposition to the MTD on that basis, she did not file any such written opposition.  Mr. Itkin has not cited any authority that he is in privity with Ms. Gofman for this purpose.  To the contrary, Mr. Itkin's own papers cite authority that, by analogy, suggests that he cannot use litigation between Ms. Gofman and himself (acting on

behalf of the alleged partnership Itkin & Sabadash) against Mr. Sabadash: "'[i]t is generally recognized that partners are not in such privity with one another that a judgment against one partner in an action brought against him personally on a tort arising out of the partnership business is res judicata when the same issues are raised in subsequent litigation against another partner.'" *Patel v. Crown Diamonds, Inc.*, 247 Cal. App. 4th 29, 39, (Cal. Ct. App. 2016), *as modified* (Apr. 29, 2016) (citation omitted).

Proceedings pertaining to the Judgment in California further undercut Mr. Itkin's attempts to weaponize that Judgment for the purpose of invoking its alleged preclusive effect against Mr. Sabadash.  In April 2019, Ms. Gofman filed a complaint in the Los Angeles Superior Court (the "State Court") seeking recognition of the Judgment.  Itkin Decl. (dkt. 16) ¶ 41 & Ex. E (dkt. 16-1, PDF pp. 56–97 of 187).  Mr. Sabadash attempted to intervene in the recognition action, but the State Court denied his application for leave to file an amended answer to Ms. Gofman's complaint on behalf of the alleged Itkin & Sabadash partnership.  Itkin RJN (dkt. 17) Ex. 19 (PDF pp. 194–202 of 260).  The State Court's minute order explained that the "attorney filing this application apparently indicates that his client does not exist," and that a "non-existing entity has no ability to bring a motion."  Itkin RJN (dkt. 17) Ex. 20 (PDF p. 204 of 260). On November 7, 2019, the State Court entered judgment in favor of Ms. Gofman recognizing the Moscow Arbitration Court's judgment (the "Recognition Judgment"). Itkin RJN (dkt. 17) Ex. 21 (PDF pp. 206–07 of 260).  Specifically, the Recognition Judgment held that Itkin & Sabadash owed Ms. Gofman $13,130.83.  *Id.*

As noted above, preclusion is appropriate only if the "party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding." *Lucido v. Super. Ct.*, 795 P.2d 1223, 1225 (Cal. 1990).

"Privity exists where the nonparty has an identity of interest with, *and adequate representation by*, the party in the first action and the *nonparty should reasonably expect to be bound* by the prior adjudication."  *Helfand v. Nat'l Union Fire Ins. Co.*, 10 Cal. App. 4th 869, 902 (Cal. 1992) (emphasis added).  As discussed above, the State Court refused to permit Mr. Sabadash to file papers on behalf of the alleged Itkin & Sabadash partnership contesting Ms. Gofman's entitlement to recognition of the Judgment in the state of California.  The State Court did not consider Mr. Sabadash's argument that the answer that Mr. Itkin had filed on behalf of the alleged partnership was part of a scheme "to manufacture evidence to support [Mr. Itkin's] frivolous and malicious claim for dissolution of partnership" in other litigation.  Motion for Leave to File Amended Answer p. 1:2–4 [Itkin RJN (dkt. 17) Ex. 19 (PDF pp. 194–202 or 260)].  It cannot be said that any party adequately represented Mr. Sabadash's interests before the State Court, and therefore there is no reason why Mr. Sabadash should "reasonably expect to be bound" by the State Court's adjudication of issues pertaining to the alleged partnership, *Helfland*, 10 Cal. App. 4th 869, 902.

A different result might be compelled if, for example, the State Court had refused to consider Mr. Sabadash's arguments as a sanction for litigation misconduct.  That, however, is not what occurred.  As described above, the State Court's minute order explained that it would not permit Mr. Sabadash to be heard as a result of Mr. Sabadash's position that the Itkin & Sabadash partnership did not exist.  *See* Minute Order (Itkin RJN (dkt. 17) Ex. 20 (PDF p. 204 of 260)) (stating that the "attorney filing this application apparently indicates that his client does not exist," and that a "non-existing entity has no ability to bring a motion").

This Court is fully aware that, under the *Rooker-Feldman* doctrine, it has "no authority to review the final determinations of a state court in judicial proceedings."  *In re Gruntz*, 202 F.3d 1074, 1078 (9th Cir. 2000) (citation omitted).  It is therefore worth emphasizing that this Court is expressing no opinion as to the merits of the State Court's actions.  Instead, this Court's role is limited to determining whether the

Recognition Judgment precludes Mr. Sabadash from now challenging the existence of the Itkin & Sabadash partnership.

To summarize the foregoing analysis, this Court does not interpret the Russian Courts' judgments as having decided the existence of the alleged Itkin & Sabadash partnership. Alternatively, Mr. Itkin has not established that he has any privity that would entitle him to rely on Ms. Gofman's Russian judgments or the Recognition Judgment by the California Court, such that Mr. Itkin could apply any rulings of any of those Courts against Mr. Sabadash.

In addition, one of the public policies underlying the issue preclusion doctrine – "preservation of the integrity of the judicial system" (*Lucido*, 795 P.2d 1223, 1227) – supplies an alternative and equally compelling reason for declining to apply the doctrine. The Recognition Judgment awarded Ms. Gofman $13,130.83 against Itkin & Sabadash. Recognition Judgment p. 2 (Itkin RJN (dkt. 17) Ex. 21 (PDF pp. 206–07 of 260)). The question presented by the filing of this involuntary petition – the existence of the alleged Itkin & Sabadash partnership – has the potential to determine which court presides over the disposition of assets worth tens, if not hundreds, of millions of dollars. Nothing in the record indicates that in determining whether to issue the Recognition Judgment, the Russian Courts or the State Court enjoyed the benefit of an adversarial process with respect to the issue of whether that partnership existed. To the contrary, it appears that the opposite was true – as Mr. Sabadash summarizes the proceedings, "Mr. Itkin, purporting to act on behalf of the partnership, strategically and promptly admitted allegations, revived the time-barred suit in Russia, admitted allegations once more in California, and conceded a judgment against the purported partnership by failing to oppose Gofman's motion for judgment on the pleadings." Reply (dkt. 21) p. 9:15–19.

Under these circumstances, the integrity of the judicial system would be severely impaired if this Court were to accord preclusive effect to the Recognition Judgment to bar Mr. Sabadash from now challenging the existence of the alleged Itkin & Sabadash partnership. As stated by one California court, "[e]ven if the minimal requirements for

application of collateral estoppel [aka issue preclusion] are satisfied, courts will not apply the doctrine if considerations of policy or fairness outweigh the doctrine's purposes as applied in a particular case, or if the party to be estopped had no full and fair opportunity to litigate the issue in the prior proceeding." *Kerner v. Superior Ct.*, 206 Cal. App. 4th 84, 125 (2012), *as modified* (May 21, 2012) (citation omitted).

**(b) Mr. Itkin has failed to establish a genuine issue that his claims are beyond bona fide dispute**

To support the existence of the partnership, Mr. Itkin relies upon a document captioned "Minutes of the Meeting of Partners of Simple Partnership 'Itkin & Sabadash'" (the "Partnership Minutes") dated February 12, 2004.  Itkin Decl. (dkt. 16) pp. 37:13–38:6 & Ex. A (dkt. 16-1, PDF pp. 2–5 of 187).  According to Mr. Itkin, at the recommendation of tax lawyer Elena Gofman (the same person whose judgment he relies upon for the existence of the alleged partnership), he and Mr. Sabadash "held an in-person partnership meeting in Moscow, Russia, on February 12, 2004, at which [Ms. Gofman][3] was present at which we discussed and confirmed the terms of the verbal partnership we had entered into in 1998."  Itkin Decl. (dkt. 16) p. 37:23–26.  Mr. Itkin maintains that after that meeting, Ms. Gofman prepared the Partnership Minutes, which he and Mr. Sabadash then signed.  *Id.* p. 37:27–38:6.  Mr. Itkin states that the Partnership Minutes were not prepared until 2004 – six years after he and Mr. Sabadash orally agreed to become partners – because only at that time did it become necessary for Mr. Itkin to become the sole public face of the partnership as a result of Mr. Sabadash's election to the Russian Senate.  *Id.* p. 37:13–20.

The Partnership Minutes summarize the purported creation of the Itkin & Sabadash partnership as follows:

> In 1998, in the City of Los Angeles, the Partners entered into a mutually beneficial agreement establishing Simple Partnership "Itkin & Sabadash", and agreeing to combine their assets, monetary funds, other financial

---

[3] At the time of the meeting, Ms. Gofman was known as "Elena Nikolayevna Vasilieva."  She subsequently changed her surname to "Gofman."  To avoid confusion, this Court refers to Ms. Gofman by her current surname regardless of the time period.

-17-

resources, as well as the value of their education, professional
experience, business reputation and business connections to jointly
conduct business activities without forming a legal entity; based on
successful business experience and mutual business interests, for
purposes of effectively managing *assets contributed to the Partnership by
Alexander Vitalyevich Sabadash* (hereinafter, the "Assets"), and to
achieve maximum financial success.  *Garry Yuri Itkin made a
commensurate contribution to the Partnership by virtue of his academic
background, professional experience, business reputation and
connections*.  Any and all of the assets contributed and owned outright by
the Partners, as well as the products, income or assets created or accrued
as the result of their joint efforts, shall be deemed as Partnership Assets
and are divided among Partners proportionally to their contributions as
follows: Alexander Vitalyevich Sabadash – 67%, Garry Yuri Itkin – 33%.
[Partnership Minutes ¶ 1 (dkt. 16-1, Ex. A, PDF pp. 2–5 of 187) (emphasis
added).]

Mr. Sabadash maintains that the Partnership Minutes are a forgery.  In litigation

conducted before the State Court, Mr. Sabadash testified:

In 2000, I hired Itkin as an accountant and financial manager for my
U.S. and European business entities.  To that end, I appointed Itkin an
officer and/or director of several corporations wholly owned by me.  Itkin's
primary duties included accounting and tax services.  Additionally, Itkin
would sometimes negotiate contracts on behalf of my businesses and on
my behalf, subject to my approval.  In his fiduciary function as accountant
and financial manager, Itkin had access to bank accounts of the
corporations which he managed and ensured my business bank accounts
were not overdrawn and bills were timely covered.  Itkin was also charged
with ensuring that property taxes and maintenance bills for my U.S.
residence were paid.  Itkin has never held any ownership interest in any
company that I own directly or beneficially.

I have never offered, consented, or otherwise agreed to enter into a
partnership with Itkin.  He and I have never been business partners in any
enterprise.  Itkin has never had any equity interest in any of my assets,
real estate, or businesses….

I have never met or spoken with Elena Gofman (or Vasilieva).  I
have never hired her to perform any services.  I am not aware of any
services she performed for any of my businesses….

I have never seen or approved the [Partnership Minutes].  My
signature on that document is a forgery.  The contents of that document
are false.  [Sabadash Decl. ¶¶ 1–3 & 6–7 (dkt. 8-1, Ex. 3, PDF pp. 39–40
of 86).][4]

---

[4] Mr. Itkin objects to this testimony as inadmissible hearsay.  That objection is overruled.  The testimony is
offered not to establish the truth of the matters set forth therein, but instead to demonstrate the existence

As explained in "Part 2" of this Memorandum Decision (above), to be entitled to entry of summary judgment dismissing the involuntary petition, Mr. Sabadash is required only to show that a bona fide dispute exists either as to the existence of the Itkin & Sabadash partnership or as to the validity of the claims asserted against the partnership. Mr. Sabadash has met that standard. He has shown that there is no genuine dispute that there does in fact exist a bona fide dispute as to both the existence of the partnership and the validity of the claims asserted against the alleged partnership.

Notably, to obtain a summary judgment of dismissal, Mr. Sabadash is *not* required to show the *absence* of a genuine dispute as to the existence of the partnership. Under that more demanding standard, this Court could not issue a summary judgment of dismissal, because there clearly is a genuine dispute as to whether the Itkin & Sabadash partnership exists. But the standard that this Court must apply is far more lenient to Mr. Sabadash. He must show only that there is no genuine dispute that the existence of the partnership, or the claims against the partnership, are in fact subject to a bona fide dispute. Put another way, he must show that there *is* a genuine issue of material fact as to either the existence of the Itkin & Sabadash partnership or its liability for damages.

This Court has little difficulty in concluding that Mr. Sabadash has carried his burden. The evidence proffered by Mr. Itkin to establish the existence of the partnership is replete with inconsistencies and contradictions – thereby demonstrating the existence of genuine issues of material fact. To give only a few examples:

(1) Mr. Itkin testifies that initially he declined Mr. Sabadash's offer to become business partners because at the time "Russia was run largely by various local mafias, where poverty and violent crime were rampant"; Mr. Itkin did not want to give up his successful accounting practice and comfortable life in Los Angeles; and there was no guarantee that the proposed partnership would be successful, because one of Mr. Sabadash's potentially most valuable

---

of a bona fide dispute as to the existence of the Itkin & Sabadash partnership (as distinguished from a frivolous dispute, concocted at the last minute).

business interests, a pulp and paper factor near St. Petersburg, was "controlled by its workers, who refused to recognize private ownership of the plant, and continued to claim communal ownership of it." Itkin Decl. (dkt. 16) p. 34:20–35:7. Mr. Itkin testifies that he ultimately acquiesced and decided to accept the proposal because Mr. Sabadash was so confident that the partnership would succeed that he guaranteed Mr. Itkin a *minimum income of $4 million per year* from the partnership's projected profits. *Id.* p. 35:8–13. Mr. Itkin offers no explanation as to why, despite this alleged promise of an enormous sum of money every year, and despite all of his alleged reluctance to move to Russia without a firm and strong commitment to compensate him for doing so, he did not bother to obtain a written memorialization of the offer at the time. That failure to insist upon a written agreement is especially striking given that Mr. Itkin was an accountant who presumably would have been aware of the importance of documenting important business transactions.

(2) According to the minutes on which Mr. Itkin relies, he allegedly obtained this minimum of $4 million per year, and a 30% or so interest in assets that turned out to be worth hundreds of millions of dollars, in exchange for a "commensurate contribution" consisting of his "academic background, professional experience, business reputation and connections." Partnership Minutes ¶ 1 (dkt. 16-1, Ex. A, PDF pp. 2–5 of 187). There is no indication that Mr. Itkin's "academic background" is so unique as to be worth anything more than what any other professional could do for a regular fee at a small fraction of the $4 million plus 30% or more that Mr. Itkin claims. The same is true for his "professional experience, business reputation and connections" – there is not even a resume in evidence, let alone any evidence of "connections" that generated tens or hundreds of millions of dollars in revenue, for example.

(3) Mr. Itkin testifies that in 1998, Mr. Sabadash asked Mr. Itkin to become business partners with him, move to Russia, and "take over the operation and growth of _all_ of [Mr. Sabadash's] existing business ventures, as well as pursue[] new business ventures."  Itkin Decl. (dkt. 16) p. 34:15–18 (emphasis added).  He further testifies that he "took steps to modernize/westernize the Partnership's business interests and looked into marketing our products abroad for export [from Russia]."  _Id._ p. 36:17–18.  But in litigation before the State Court, Mr. Itkin testified that he did not manage cash flow generated by the alleged partnership's operations in Russia and that "I have no clue where" the "Russian flow of funds" originated.  Mar. 27, 2019 Itkin Depo. 93:25–94:4 (Zorkin Decl. (dkt. 8) Ex. 1)).  This Court can conceive of possible ways to try to reconcile these statements, but at the very least they would only establish that Mr. Sabadash's dispute is bona fide.[5]

(4) Mr. Itkin testifies that when he and Mr. Sabadash "first moved to St. Petersburg, … [we] lived together in a run-down, one-bedroom apartment that [Mr. Sabadash] informed me was owned by his mother-in-law," and Mr. Itkin "slept on the couch."  Itkin Decl. (dkt. 16) p. 36:1–22.  He further testifies that "[e]ven when I did rent my own apartment, that apartment was even more squalid – the stairwell constantly smelled of human waste, and the building was dilapidated."  _Id._ p. 36:5–6.  But in litigation before the State Court, Mr. Itkin testified that "practically right away" after moving to Russia, he began receiving $50,000.00 per month from the partnership.  Mar. 27, 2019 Itkin Depo. 148:15–149:1 (Zorkin Decl. (dkt. 8) Ex. 1).  Mr. Itkin does not explain why he was required to live in such squalid conditions if he was drawing $50,000.00 per month from the partnership.

---

[5] Mr. Itkin's prior testimony is admissible for at least the following reason.  It is offered not to establish the truth of the matters to which he testifies, but instead to demonstrate the existence of a bona fide dispute as to the existence of the Itkin & Sabadash partnership.  _See_ n. 3.

(5) Ms. Gofman has not attempted to enforce the Recognition Judgment, which

awards her $13,130.83, since it was entered approximately six years ago.

Her failure to enforce the Recognition Judgment lends credence to Mr.

Sabadash's assertion that the Recognition Judgment was obtained solely as

a ploy to preclude Mr. Sabadash from contesting the existence of the

partnership. That, in turn, casts doubt about both the existence of the

partnership and the validity of Ms. Gofman's claim against it.

To be very clear, this Court is not making a determination under the summary

judgment standard that the partnership either does or does not exist. Instead, for all the

reasons set forth above, there are genuine issues of material fact as to both the

existence of the Itkin & Sabadash partnership and the validity of the claims asserted

against it. Within the context of this case, that is sufficient to warrant entry of a

summary judgment dismissing the involuntary petition.

### (c) In the alternative, dismissal is warranted under § 305(a)

Section 305(a) provides:
> The court, after notice and a hearing, may dismiss a case under this title, or
> may suspend all proceedings in a case under this title, at any time if—
> (1) the interests of creditors and the debtor would be better served by
>     such dismissal or suspension; or
> (2)
>     (A) a petition under section 1515 for recognition of a foreign proceeding
>         has been granted; and
>     (B) the purposes of chapter 15 of this title would be best served by
>         such dismissal or suspension. [11 U.S.C. § 305(a).]

Mr. Itkin contends that the alleged Itkin & Sabadash partnership holds an

ownership interest in property located at 58 Beverly Park, Beverly Hills, CA (the

"Beverly Hills Property"). Opp. (dkt. 16) p. 4:24. Ownership of the Beverly Hills

Property is also at issue in the case of Golden Sphinx Limited (Case No. 2:22-bk-

14320-NB, "Golden Sphinx"). On September 9, 2022, this Court entered an order in

Golden Sphinx's bankruptcy case granting a petition for recognition of a foreign

proceeding pending before the Royal Court of Jersey (the "Royal Court"). Golden

Sphinx dkt. 42. Even if the genuine issues of material facts as to the existence of the

1    Itkin & Sabadash partnership did not entitle Mr. Sabadash to a judgment of dismissal

2    (which they do), abstention and dismissal of this case under § 305 would be warranted.

3    **4. CONCLUSION**

4        Based upon the foregoing, a separate judgment dismissing this involuntary

5    petition will be issued concurrent with this Memorandum Decision.

6                                                          ###

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24        Date: June 16, 2025

25                                          Neil W. Bason
                                            United States Bankruptcy Judge
26

27

28

**EXHIBIT J**

**ORIGINAL**

1              UNITED STATES BANKRUPTCY COURT

2          CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

3                        --oOo--

4   In Re:                          )
                                    ) Case No. 2:25-bk-11235-NB
5                                   )
    ITKIN & SABADASH and            ) Chapter 7
6   ALEKSANDR VITALIEVICH           )
    SABADASH,                       )
7                                   )
                 Debtor.            ) Los Angeles, California
8                                   ) Tuesday, 11:00 A.M.
    ----------------------------X April 22, 2025
9

10                                  HEARING RE: DEBTOR'S MOTION
                                    TO DISMISS INVOLUNTARY
11                                  PETITION UNDER FRCP 12(b)(1)
                                    AND 12(b)(6) OR, IN THE
12                                  ALTERNATIVE, MOTION FOR
                                    SUMMARY JUDGMENT
13
                                    STATUS CONFERENCE RE: CHAPTER
14                                  7 INVOLUNTARY PETITION

15

16              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE NEIL BASON
17             UNITED STATES BANKRUPTCY JUDGE

18  APPEARANCES:

19  For the Five Joining       JOSEPH E. CACERES, ESQ.
    Creditors:                 Caceres & Shamash, LLP
20                             9701 Wilshire Boulevard
                               Suite #1000
21                             Beverly Hills, California 90212

22  For Himself:               JOSEPH ATABEK, *Pro Se*
                               250 Newport Center Drive
23                             Suite #306
                               Newport Beach, California 92660

24

25  Proceedings produced by electronic sound recording;
    transcript produced by transcription service.

```
 1   APPEARANCES (Continued):

 2   For Gary Y. Itkin:        DANIEL J. McCARTHY, ESQ.
                               Hill Farrer & Burrill, LLP
 3                             300 South Grand Avenue
                               37th Floor
 4                             Los Angeles, California 90071

 5   For Alexander Sabadash:   MICHAEL ZORKIN, ESQ.
                               The Zorkin Firm
 6                             6320 Canoga Avenue
                               15th Floor
 7                             Suite #1500
                               Woodland Hills, California 91367
 8
     Court Recorder:          Dawnette Francis
 9                            U.S. Bankruptcy Court
                              Central District of California
10                            Edward R. Roybal Federal Building
                                and Courthouse
11                            255 East Temple Street, Room #1639
                              Los Angeles, California  90012
12                            (855) 460-9641

13   Court Transcriptionist:  Ruth Ann Hager, C.E.T.**D-641
                              Ben Hyatt Certified Deposition
14                              Reporters
                              17835 Ventura Boulevard
15                            Suite #310
                              Encino, California  91316
16

17

18

19

20

21

22

23

24

25
```

Page                                                            3

1          LOS ANGELES, CALIFORNIA, TUESDAY, APRIL 22, 2025

2                         11:03 A.M.

3                         --oOo--

4          THE CLERK:  Please come to order.  This court is

5   now in session, the Honorable Neil W. Bason presiding.

6          THE COURT:  All right.  Good morning, everyone.

7   I will do an abbreviated version of my usual announcements.

8   Please, just wait until I call upon you so that we're not

9   all talking at once.

10         All right.  I've had a priority request on

11  calendar #7.00 and #8.00, so let start with those matters.

12  And let me start by getting appearances in the courtroom.

13         MR. ZORKIN:  Good morning, Your Honor.  Michael

14  Zorkin for Alexander Sabadash.

15         THE COURT:  Thank you.  And Mr. Zorkin, for this

16  matter I'm going to ask you to stand at the lectern so that

17  people will -- on the video can see you and you can see

18  them -- or you'll be able to see them, regardless, but all

19  right.

20         Mr. McCarthy.

21         MR. MCCARTHY:  Good morning, Your Honor.  Dan

22  McCarthy for petitioning general partner Gary Itkin.

23         THE COURT:  Thank you.

24         Mr. Caceres.

25         MR. CACERAS:  Yes.  Good morning, Your Honor.



Page                                                          4

1   Joseph Caceres, Caceres & Shamash, LLP, for the five

2   joining creditors.

3            THE COURT:  Thank you.

4            MR. CACERES:  Joined in the petition, not the

5   motion.

6            THE COURT:  I -- that was my assumption.  All

7   right.  Thank you.

8            Mr. Atabek.

9            MR. ATABEK:  Good morning, Your Honor.  John

10  Atabek on behalf of myself, a creditor.

11           THE COURT:  Thank you.

12           Anyone else who wishes to be heard on this

13  matter?

14           THE COURT:  Okay.  So let me start by saying you

15  all gave me a lot to read, including a lot of evidentiary

16  objections.  I think I have a fairly good grasp of the

17  issues, but I haven't finished working my way through all

18  of the matters.

19           I'm inclined to give you some oral tentative

20  rulings and then give you a brief period of time for

21  argument and then I'll probably continue this hearing and

22  we can figure out where we go from there.

23           So before I do that, I try always before I start

24  expressing views to make sure I'm not messing anything up

25  in case there's been any settlement or even if not a

Page                                                          5

1   settlement some other development that should mean I should

2   keep my mouth shut.

3          So let me go around the room, make sure any

4   objection to me proceeding with giving you an oral

5   tentative ruling.  Mr. Zorkin?

6          MR. ZORKIN:  No, Your Honor.

7          THE COURT:  Thank you.  Mr. McCarthy?

8          MR. McCARTHY:  No objection, Your Honor.

9          THE COURT:  Thank you.

10         Mr. Caceres?

11         MR. CACERES:  No, Your Honor.

12         THE COURT:  And Mr. Atabek?

13         MR. ATABEK:  No, Your Honor.

14         THE COURT:  Okay.  All right.  So I was not

15  actually familiar with the authority that facts can be

16  presented in support of a motion to dismiss on the

17  jurisdictional issue, but it does seem that that authority

18  says when those facts or factual issues are intertwined

19  with the merits, the motion has to be analyzed as a motion

20  for summary judgment.

21         So I'm inclined to think that I probably need to

22  analyze things from the perspective of the standards for a

23  motion for summary judgment.  Again, this is just the

24  tentative ruling, but that's my initial reaction.

25         As to the disputed factual issues, I think

Page                                                                    6

1  they're possibly genuine and so probably I would have to

2  deny the motion as to dismissal.  As to abstention, it

3  seems to me -- I'm not sure there are any -- any of the

4  factual issues that are disputed, I'm not sure that they

5  would bear on or at least be determinative of the

6  abstention issue.  And it seems to me that it would be more

7  consistent with my previous rulings and with the

8  principles, as I understand them, of Chapter 15 and

9  principals of international comity and attempting to

10 prevent inconsistent judgments and so on for me to abstain

11 on at least the issue of whether a partnership exists,

12 because the matter -- those matters seem to be so

13 intertwined with the matters that I've already deferred on

14 to the Jersey court.  And, of course, if that court does

15 not wish to adjudicate that issue, then I'm happy to and we

16 could have a trial here on that issue.

17         Now, I have not fully worked out -- there may be

18 other matters on which it would be appropriate to defer to

19 the Jersey court and by "Jersey," of course, I mean, the

20 Isle of Jersey, the British jurisdiction, not New Jersey

21 here in the United States.

22         Obviously, I think I would not and could not

23 defer to that court on issues of bankruptcy law, U.S.

24 bankruptcy law.  So there may be issues under Section 303

25 of the Bankruptcy Code that I would not be deferring to or

Page                                                                7

1    asking the Jersey court to express any opinion on.  The

2    factual issue that I think is front and center is whether a

3    partnership exists.

4           There may be subsidiary issues, such as if it

5    does exist, what would be the terms of the partnership or

6    what would be the authority to file for bankruptcy and

7    things of that sort, but I think those are probably very

8    subsidiary and the real main issue is whether a partnership

9    exists or not.

10          So that's my oral tentative ruling.  And as you

11   can see, I've got a lot of matters on calendar.  You've

12   also commendably done a very thorough briefing on all of

13   these matters and so I'm just going to give you a

14   relatively short period of time in which to argue on those

15   issues or persuade me if I'm missing some issues and I

16   should focus on something else.

17          So Mr. Zorkin, why don't you take five minutes

18   and address what you think I need to focus on?

19          MR. ZORKIN:  Yes, thank you, Your Honor.

20          So the Court definitely has the authority to

21   convert this motion into a motion for summary judgment,

22   even in an involuntary proceeding.  We cited case law on

23   that.  But on a subject matter jurisdiction challenge there

24   is ample Ninth Circuit authority for a factual attack where

25   evidence is submitted and evidence considered.  And we

Page                                                                                      8

1   actually cited two cases, one from the Bankruptcy Court

2   here in the Central District, one from the Bankruptcy Court

3   in Tennessee that heard a subject matter 12(b)(1) motion to

4   dismiss and voluntary proceedings specifically on the issue

5   of whether a debtor exists.  In *Micr Toner*, the Central

6   District case, the issue is whether an involuntary

7   proceeding could be commenced against a corporation that is

8   dissolved.  And *In Re: Taylor*, it was specifically this

9   issue here.

10          THE COURT:  That was by Judge Robles.  Yes.

11          MR. ZORKIN:  Yes.  So a 12(b)(1) subject matter

12  jurisdiction can be brought in a factual basis with

13  evidence without the need to convert the motion -- for a

14  motion for summary judgment, so I think that's an important

15  part of your tentative.

16          The second part is whether the motion for -- if

17  the Court is inclined to treat it as a motion for summary

18  judgment whether that motion should be denied.  So *In Re:*

19  *Long Partnership* case that we cite, also a Bankruptcy Court

20  decision that was affirmed in the Bankruptcy Appellate

21  Panel and in the Ninth Circuit, that case explains very

22  thoroughly what happens on -- in a summary judgment motion

23  where the issue is whether there is a *bona fide* dispute as

24  to either the existence of the entity or the validity of

25  the debt.

Page                                                                9

1          And the BAP actually explained that if there is a

2     genuine issue of fact, the motion actually has to be

3     granted because the petitioning creditors have the burden

4     to prove there is no dispute as to the validity of the debt

5     or the amount of the debt.

6          So in a case where the Court finds that there is

7     a factual dispute either as to -- and this is what they

8     said -- either as to the existence of the partnership

9     because that case was about the existence of the

10    partnership.  So if there is a dispute either as to the

11    existence of the partnership or as to the validity or the

12    amount of the debt, summary judgment motion has to be

13    granted, not denied.  It's a backwards analysis because the

14    creditor has the burden to prove there is no dispute.

15         So if the creditor submits evidence that actually

16    shows there is a dispute as is the case here, the motion

17    for summary judgment has to be granted.  So that's the

18    other thing that I think the Court should focus on.  And *In

19    Re: Long* goes through a pretty thorough analysis of what

20    happens in a summary judgment motion, specifically on these

21    facts, whether there's a partnership, whether there's a

22    *bona fide* dispute, so that's that.

23         On the abstention, I think the Court is correct.

24    Mr. Itkin is not getting the results he wants in Jersey.

25    He's asserted the existence of a partnership as a defense

Page                                                                    10

1   there.  He has been fined 78,000 pounds by the Jersey

2   court.  He's been ordered to submit evidence.  He had a

3   deadline of a Monday and on Friday he filed this petition.

4   And so what he's trying to accomplish here is to stay the

5   previously filed Chapter 15 that's being administered in

6   Jersey in favor of this involuntary and I just -- there's

7   no support for -- to accomplish something like that.  I

8   think the Court is correct that it would be inconsistent

9   with your previous rulings to stop everything in Jersey to

10  adjudicate the partnership issue here, especially because

11  Mr. Itkin is asserting the partnership issue as a defense

12  in Jersey.

13        And I'm happy to discuss the merits.  The Court

14  did not go into the actual merits of the existence of the

15  partnership, so I'm happy to discuss that.  It will take

16  more than five minutes.  But I also want to -- I would like

17  to take questions from the Court as well.

18        THE COURT:  Okay.  I'm going to clarify something

19  that I had said before.  So one thing I didn't touch on was

20  the evidentiary disputes about the existence of the

21  partnership and the -- and whether there is a preclusive

22  effect from rulings of the courts in Russia.  I am

23  tentatively inclined to think based on the ruling of the

24  Ninth Arbitration Court of Appeals, the Russian court, and

25  this is at -- in the supplemental declaration of

Page                                              11

1  Mr. Zorkin, docket 21. And this is Exhibit -- it's part of

2  Exhibit 17 and it's at page 77 of 94 on my screen. And

3  then reading the bottom of that page and on to the next

4  page, it seems to me that there is not a preclusive effect

5  from the Russian proceedings that there is no determination

6  that a partnership did exist. So it seems to me it's back

7  to a factual issue and that it seems to me there are some

8  hotly contested issues about whether the partnership

9  exists.

10          So with that supplemental oral tentative ruling,

11  let me turn to Mr. McCarthy.

12          MR. McCARTHY: Thank you, Your Honor. I'm going

13  to make a brief statement about the evidence. The exhibits

14  that we submitted in opposition to the motion, all were

15  exhibits to a motion for summary adjudication that was

16  filed in state court. They were also trial exhibits. They

17  should have been addressed in the motion. They were not.

18  We brought them up in the opposition and we hear responses

19  for the very first time in the reply. We were sandbagged

20  and I object to that.

21          The new evi -- and so the new arguments that are

22  now made in the reply, the new evidence that is submitted

23  should not be considered under the Local Rules, which

24  preclude new argument and new evidence in reply briefs,

25  including the document you just cited, Your Honor.

Page                                                          12

1          Mr. Zorkin's supplemental declaration submits

2     multiple exhibits, which I'd be happy to address one by one

3     because I think that a misleading presentation has been

4     given of the exhibits, but all those exhibits should be

5     stricken and not considered by the Court.

6          As to the one document Your Honor just referred

7     to, I respectfully disagree, Your Honor.  That document

8     refers to the partnership repeatedly.  You're talking about

9     Exhibit 17 to Mr. Zorkin's declaration.

10         What it said was the lower court did not

11    determine Mr. Sabadash's personal rights and obligations.

12    That's true, but it does not take away from the fact that

13    the lower court determined that there was a partnership.

14    It awarded Ms. Gofman a judgment against the partnership.

15    So that issue was resolved and there should be a preclusive

16    effect as that, as well as Mr. Gofman's judgment against

17    the partnership confirmed in the LA Superior Court, which

18    Mr. Sabadash opposed.  That also determined that there was

19    a partnership in entering a judgment against the

20    partnership based on the Russian judgment.

21         Your Honor, I won't go through all the

22    evidentiary objections.  I think there needs to be a ruling

23    on them before Your Honor goes any further.  Let me address

24    the issues that you and Mr. Zorkin addressed.

25         I agree with you that the summary judgment

Page                                                              13

1  standard applies to a determination of subject matter

2  jurisdiction and I disagree with Mr. Zorkin that the burden

3  of proof -- I'm sorry -- the burden of prevailing is

4  imposed upon the petitioning creditor.  If there's a

5  dispute as to whether you should grant an order for relief,

6  the proper procedure is to set an evidentiary hearing.

7  It's not to find that there hasn't been sufficient

8  evidence.

9          But beyond that, Your Honor, there's overwhelming

10  evidence that we submitted of the existence of the

11  partnership and notably, it's all documentary evidence.

12          Now, Mr. Zorkin's reply brief for the first time

13  hoped -- tries to poke holes in it by coming up with this

14  fantastic theory of forgery and conspiracy with Ms. Gofman,

15  a lawyer in Russia, and bribery.  Odd thing, Your Honor.

16  We've been in litigation with Mr. Sabadash now for eight

17  years.  Never did he make this argument in the LA Superior

18  Court.  He didn't make the argument to -- before Russian

19  courts.  He didn't make the argument in the Gofman

20  proceeding in LA Superior.  These are arguments made for

21  the first time without evidence in the reply brief and

22  they're fantastical.  It's like a Hollywood movie.

23          There clearly is evidence to support the

24  conclusion that there was a partnership and that the Court

25  had jurisdiction.  And if the Court doesn't make the ruling

Page                                                        14

1   on that today, there should be an evidentiary hearing in

2   that regard both on the issue of whether there's a

3   partnership and whether there are creditors whose claims

4   are not in *bona fide* dispute.

5           Notably, four of those claims were filed before

6   the motion and Mr. Zorkin didn't address any of those in

7   the motion.  We heard about them for the first time in the

8   reply brief.

9           There recently was submitted an objection to the

10  claims, which I don't think you should consider because it

11  violated the Local Rules in multiple respects that objected

12  to all the claims and which are not similarly situated, so

13  it violates the rules against omnibus objection.  It was

14  not set for hearing on 30 days' notice.  Copies of the

15  claims were not attached.  There's no evidence in the

16  objection.  Those claims are valid and at least should be

17  considered for evidentiary purposes for showing that there

18  are creditors who are owed money.

19          Let me address the issue of abstention, Your

20  Honor.  You have a history of it.  When you defer to the

21  Jersey court, this proceeding wasn't finished.  You

22  deferred to the Jersey court and you asked for instructions

23  from the Jersey court on whether the matter should proceed

24  here in California and the Jersey court responded, you

25  should do what you think you should do.  Didn't give you

Page                                                          15

1  any instructions.  It left you freehand to act

2  appropriately to take on determination of issues here or to

3  permit relief from stay for the state court to determine

4  issues.

5        Now we have a different set of circumstances.

6  This proceeding concerning a California general partnership

7  that's on California property involves issues that should

8  be determined here.  The idea that you should defer to the

9  Jersey court to determine whether a partnership existed

10  under California law really is backwards.  That's an issue

11  that you should take on and that Jersey court should defer

12  to you.

13        In our opposition brief we analyzed the purposes

14  of Chapter 15 for five purposes, which were ignored in the

15  motion and ignored in the reply.  We cited the *RHTC*

16  *Liquidating Company* case regarding those five factors.  And

17  all of those factors point to the conclusion that the

18  Jersey court should defer to you, rather than the opposite.

19  I understand the idea that you want to be consistent in

20  your position, but now we have changed circumstances with

21  this involuntary position in front of you.

22        Culminating, as we pointed out in our reply

23  brief, is a two-way street and the Jersey could -- should

24  be deferential to you, a California partnership and a

25  California real property, as you were initially inclined to

Page                                                    16

1   be to the Jersey court before this involuntary case was

2   filed.  Mr. Zorkin questioned in his oral argument and in

3   his motion and in his reply brief the reason for the filing

4   of this involuntary.  He attributes it to Mr. Itkin trying

5   to avoid payment of an award that the Jersey court required

6   him to pay.

7           That argument is not serious, Your Honor.  We

8   only think what this involuntary petition did with respect

9   to the proceedings in Jersey was the seven-week

10  postponement of the hearing.  Surely a seven-week

11  postponement is not an argument in support of avoiding

12  payment of an award.  What this hearing -- what this

13  involuntary really is about is putting the issues before

14  the proper court to be determined; again, whether there's a

15  partnership under California law and whether that

16  partnership owns California real property.  Your Honor,

17  you're the one to make that determination or relief from

18  stay should be granted for it to be determined in state

19  court.

20          One final thing on that in terms of efficiency

21  and where this should be determined.  Keep in mind that the

22  issue of dissolution of the partnership was before the

23  state court.  Trial was started in March of 2020.

24  Mr. Zorkin was and is trial counsel in that case.

25  Mr. Atabek is trial counsel for Mr. Itkin.  These attorneys

Page                                                    17

1  and their clients all were prepared to go to trial and

2  actually did commence trial until this trial was declared

3  because of COVID in March of 2020.  The case was

4  rescheduled for trial and that was stayed when the *Golden*

5  *Sphynx* bankruptcy was filed.

6              So you have attorneys already for trial here to

7  determine that issue either in state court or it can be

8  litigated in front of you or you have a Jersey court where

9  it's in its infancy.  No trial date has been set, no

10 discovery deadlines, discovery hasn't been taken.  The idea

11 that you should let it proceed in Jersey where all the

12 attorneys there are just getting up to speed on claims that

13 have been asserted really has it backwards.  It should

14 proceed here and that's why abstention would be improper

15 and the Jersey court should defer to you.  Thank you, Your

16 Honor.

17             THE COURT:  Mr. Caceres.

18             MR. CACERES:  Your Honor, we would agree with --

19 obviously with Mr. McCarthy, which won't come -- won't come

20 as a surprise to the Court given that we -- my clients

21 joined in the petition.  I think he's correct as to the

22 objections to the claims.  That objection was totally

23 improper in almost every way under Local Bankruptcy Rule

24 3007-1.  No hearing, no notice, claims not attached,

25 omnibus objection differently situated claims.  And it

Page                                                                    18

1   seems to me that those objections put the cart before the

2   horse because they're largely based on the main issue here

3   which is whether a partnership exists or not.

4           So if the Court decides that a partnership

5   exists, I think those objections largely fall away.  So I

6   think the Court does need to make that determination.  It's

7   the first thing -- and Your Honor mentioned that that was

8   the main issue, which I -- we agree with.  I think that

9   needs to be decided and it should be decided here.

10          THE COURT:  Thank you.

11          Mr. Atabek.

12          Oh, wait a minute.  I'll --

13          MR. ATABEK:  So you're --

14          THE COURT:  -- just add my usual caution when

15  somebody is representing themselves.  Bankruptcy

16  proceedings tend to be very tricky and I think you may be a

17  very experienced lawyer, for example, in some areas, maybe

18  even bankruptcy, but it's tricky to represent yourself and

19  it's easy to shoot yourself in the foot.

20          So usually less in more when somebody is speaking

21  without counsel -- bankruptcy counsel in a bankruptcy

22  proceeding, but I'll -- that said, I welcome your comments.

23          MR. ATABEK:  Sure.  And I'll keep it focused just

24  on the evidentiary issues -- or sorry, not the evidentiary

25  issues, the legal issue.

Page                                                                    19

1           So the first one I was going to mention, Your

2    Honor, just from having been familiar with the proceedings

3    going on in Jersey, I would note that there may even be an

4    estoppel-type issue here, Your Honor.  From what I

5    understand, the joint liquidators are arguing in Jersey

6    that the existence of a partnership is completely

7    irrelevant to their position.  So to the extent that

8    they're asserting in Jersey that the partnership is

9    irrelevant but it's clearly relevant here, you know, in

10   terms of whether or not to grant abstention I think, you

11   know, the other side is talking a little bit out of both

12   sides -- on this issue, Your Honor.

13          And then just turning to the issue of the

14   evidentiary hearing, we would tend to agree.  Again, as

15   Mr. McCarthy said, both sides currently (phonetic) tried

16   this case and it's not going to try it for a very long time

17   in Jersey.  To the extent that the partnership issue is

18   relevant here, why not just have an evidentiary issue --

19   evidentiary hearing just on that issue here.  Could try it

20   very quickly.  The exhibit books were ready.  We got five

21   days.  We were almost through Mr. Sabadash's case on this.

22   It would not be a heavy lift to simply do an evidentiary

23   hearing here and figure the issue out.

24          THE COURT:  Thank you.

25          MR. ATABEK:  That's all I'll say.

Page                                                                20

1              THE COURT:  Okay.

2              MR. ZORKIN:  May I respond very briefly?

3              THE COURT:  Very, very briefly because I do have

4    a lot of people --

5              MR. ZORKIN:  Yes.  I'm sorry.  So obviously we

6    can respond and reply to evidence that's presented in

7    opposition and we had to do it because two of the exhibits

8    that were provided to this court by deposition were one was

9    a false translation and one was some sort of cockamamie

10   summary written by somebody instead of a Court of Appeal

11   decision.  So if the opposition was not playing games we

12   wouldn't have to do half of what we did.

13             All these arguments -- there was no sandbagging.

14   All these arguments were previously made.  Mr. Itkin knows

15   that he misspelled the partnership, a seal name.  He knows

16   that the minutes of the partnership are completely

17   illegible, not admissible anywhere in any proceeding.  All

18   of this he knows.  I don't understand why Mr. McCarthy said

19   this is a new argument, probably because he doesn't know it

20   himself.

21             Just two final things.  This court cannot hold an

22   evidentiary hearing if there's a *bona fide* dispute as to

23   the existence of the debtor or the validity of the debt.

24   There has to be a ruling first and as I think this court

25   understands at the very lease there is a dispute and if

Page                                                              21

1  there is a dispute, there is no involuntary.  And this

2  issue that we need to forget that there's a subject matter

3  jurisdiction challenge and jump straight to the evidentiary

4  hearing, that's not the law.  Nobody here will disagree

5  that there is a *bona fide* dispute as to the existence of

6  the partnership and the validity of these claims, which

7  were all created by Mr. Itkin and all the creditors are his

8  friends or his lawyers, so no one in this room was born

9  yesterday.

10          So there has to be a ruling on whether there's a

11  *bona fide* dispute.  Every single person here, including the

12  Court, recognizes there is a *bona fide* dispute.  The motion

13  has to be granted, either as -- either as a subject matter

14  jurisdiction challenge or it can be converted into summary

15  judgment and if there's a *bona fide* dispute, the

16  involuntary must be dismissed.  There's no way to object to

17  a hearing.

18          And what I would request is a supplemental brief

19  on the summary judgment standard in this type of proceeding

20  because the *In Re: Long Court*, which was affirmed by the

21  Ninth Circuit was very clear that it's a different standard

22  than a Rule 56 motion.

23          THE COURT:  Thank you.  So I'm going to note --

24  I'll just disregard any aspersions regarding Mr. McCarthy

25  or anything of that sort.

Page                                                    22

1          What I will do is continue this matter.  I'm not

2    going to give an opportunity for supplemental briefing yet.

3    I want to take some time, look at this with my law clerks

4    and figure out how to proceed on this matter.  That may

5    be -- maybe I'll decide if I can give you a ruling on the

6    existing record.  Maybe I'll decide that I need additional

7    proceedings, whether that's supplemental briefing or an

8    evidentiary hearing or maybe I'll just decide things on the

9    existing record.

10         So I think a continuance to June 3rd is

11   appropriate.  Any objection to June 3rd at 11:00.  I'll go

12   around the room.  Mr. Zorkin?

13         MR. ZORKIN:  At 11:00 a.m.?

14         THE COURT:  11:00 a.m.

15         MR. ZORKIN:  That -- oh, I'm sorry.  One second,

16   please.  I'm back in April for some reason.

17         THE COURT:  While you're looking at that,

18   Mr. McCarthy?  You're on mute, Mr. McCarthy.

19         MR. McCARTHY:  Thank you.  June 3rd at 11:00

20   works.  I note that we're going to be before you on

21   June 3rd at 2:00 in the *Golden Sphynx* case for a status

22   conference.

23         THE COURT:  Ah, that's a good point.  Why don't I

24   make it June 3rd at 2:00 and so parties don't have to show

25   up multiple times?  Mr. Zorkin?

Page                                                                23

1          MR. McCARTHY:  Thank you, Your Honor.

2          MR. ZORKIN:  That works.  I have kind of a

3    question that relates to the Jersey proceeding.  The Jersey

4    court has been involved by (indiscernible) attorneys that

5    there's an automatic stay in place on the Jersey

6    proceeding, which is itself a recognized Chapter 15.  So

7    they're waiting for some sort of an answer.  And I'm not

8    putting the Court on the spot to give an answer, but I

9    think it -- is that -- is that what's happening there, not

10   to do anything until there's a further ruling from the

11   Court, because that's what the Jersey court seems to think.

12         THE COURT:  I understand the question.  I don't

13   think it's appropriate for me to express any views on that.

14   There's no motion --

15         MR. ZORKIN:  Just floating as an issue that's out

16   there.  Thank you.

17         THE COURT:  Understood.  Okay.

18         Mr. McCarthy  --

19         MR. McCARTHY:  We do have a scheduling question,

20   Your Honor.  You know, we talked about the objection to

21   claim that was filed and my thinking was that it would

22   actually make sense to have the objection refiled properly

23   in compliance with the Local Rules, a hearing set on that

24   and the Court to determine those claims on a summary basis,

25   you know, in connection with the usual claims objection

Page                                                        24

1   procedure so we can get that out of the way before a ruling

2   is made on the other issues.

3           THE COURT:  So Mr. Zorkin, I didn't address this

4   before, but I think that there are some legitimate points

5   raised in connection with the objection.  Not only Local

6   Rules, but also the national rules, as I recall.  Omnibus

7   objections have to fall into very specific types of

8   categories and I'm not sure that this one does, but I

9   haven't analyzed the issue.  So there's that on top of the

10  Local Rule issues.

11          That said, my mentor always taught me that the --

12  a lot of the time the question is, was there any prejudice.

13  So I don't know that there's been any prejudice from not

14  attaching the claims.  It's much more convenient for the

15  Court and for parties if the claims are attached, but -- so

16  what I'd be inclined to do is to say, let's set that for

17  hearing for June 3rd.  And that gives you -- if you want to

18  go with a 30-day period under the Rules for filing and

19  serving claim objections, that gives you until May 3rd and

20  then I guess maybe you add three days for service by mail.

21  I've forgotten how the Local Rule is phrased.  So why not

22  direct you to do that?

23          MR. ZORKIN:  Your Honor, I -- there is a subject

24  matter jurisdiction challenge pending.

25          THE COURT:  Yes.

Page                                                                              25

1          MR. ZORKIN:  And my understanding of the Federal

2    Rules is that there's nothing to be done while there's a

3    subject matter jurisdiction challenge pending.  I also --

4    and I will, of course, defer to you on the bankruptcy

5    procedure issues.  But I don't believe there's a need to

6    file objections to these claims until there's an order for

7    relief entered and we actually have a Chapter 7 proceeding

8    going.

9          So far, there's a challenge to this entire thing

10   and these claims, which were, you know, as the claims --

11   the filed claims indicate very clearly, Mr. Itkin created

12   those claims by writing letters and things like that.  So

13   they all go away if there is a -- if the Court finds there

14   is no subject matter jurisdiction.

15         THE COURT:  So -- but I think there is a bit of a

16   Catch-22 in that approach because it seems to me the

17   question under Section 303 is, are there the requisite

18   number of creditors petitioning and they have to be

19   creditors of the entity and is there an entity or not.

20         Well, these particular persons who have submitted

21   claims would have standing, I think, to appear and be heard

22   on the issues that Mr. McCarthy also has raised and with

23   filed claims they're normally deemed allowed and so that

24   would presuppose the existence of a partnership and so

25   don't we need to get to all of those issues anyway?  I --

Page                                                              26

1   now, maybe --

2          MR. ZORKIN:  I don't think so.

3          THE COURT:  Intellectually maybe you need to work

4   through things in a different fashion, but I would think

5   this needs to be part and parcel of the same proceeding or

6   at least scheduled and then if I decide on further review

7   that I can take the matters in a certain sequence, that's

8   fine, but I don't want to get to June 3rd and think, boy, I

9   wish I had this before me because that's really the nub of

10  the issue.

11         MR. ZORKIN:  So what I would -- so first, I think

12  *In Re: Long* has also addressed this issue and it really

13  essentially said these claims, we don't have to look at the

14  claims because we find there's a *bona fide* dispute as to

15  the existence of the entity.  So we don't have to worry

16  about the claims.

17         But I understand what Your Honor is saying.  I

18  think that it would make sense to set the hearing on the

19  claims objections for some time after there is a decision

20  on the motion to dismiss.

21         THE COURT:  Again, I'm worried about delay here

22  and the possibility that these things are all going to be

23  interrelated so that I have to decide them as well.  I have

24  not read *In Re: Long*.  I have read some of the other

25  authorities that have been cited in our papers, but that

Page                                                                27

1   was not one I had -- that I've actually gotten to.

2          So for the moment, I'm going to schedule the

3   claims objection for hearing on June 3rd with a deadline of

4   April 30th for you to file and serve an amended set of

5   claims objections.  And then the usual deadlines apply for

6   any responses.

7          MR. ZORKIN:  Understood.

8          THE COURT:  Okay.  Thank you, Mr. McCarthy, for

9   raising that issue.  Obviously, we'll see between now and

10  then.  Maybe I'll decide that we don't need to go forward

11  with that after all, but I think it's better to have it set

12  for hearing on that date and we can move forward if we need

13  to.

14         All right.  Mr. Caceres, any objection to

15  June 3rd at 2:00?

16         MR. CACERES:  No, Your Honor, that's fine.

17         THE COURT:  Thank you.

18         Mr. Atabek?

19         MR. ATABEK:  No objection, Your Honor.  Works for

20  us.

21         THE COURT:  Okay.  All right.  I think that's it

22  for today.

23         MR. McCARTHY:  Your Honor --

24         THE COURT:  Mr. McCarthy?

25         MR. McCARTHY:  Sorry to interrupt, Your Honor.

Page                                                                    28

1   Just one more thing.

2           You declined Mr. Zorkin's request for further

3   briefing.  I'm assuming you don't want any further briefing

4   unless you ask for it.

5           THE COURT:  Thank you for clarifying.  We've had

6   that issue come up in this case before.  Yes, no further

7   briefing unless I ask for it, which I may do either by

8   issuing an order between now and the next hearing or by

9   maybe at the next hearing I'll say, you know, I've gotten

10  to this point in my analysis, but I need more briefing on

11  this other point.  So we'll -- but thank you.

12          For now, no further briefing and no further

13  papers.  No evidentiary issues, no legal briefs.  Thank

14  you.

15          MR. McCARTHY:   Thank you, Your Honor.

16          THE COURT:  All right.

17          MR. ZORKIN:  Thank you.

18          THE COURT:  You're welcome.

19  (End at 11:41 a.m.)

20                  * * * * * * *

21

22

23

24

25

Page                                                                29

1           I certify that the foregoing is a correct

2    transcript from the electronic sound recording of the

3    proceedings in the above-entitled matter.

4

5    *Ruth Ann Hager*

6    _____        Date:  6/23/2025

7    RUTH ANN HAGER, C.E.T.**D-641

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


P 888.272.0022 F 818.343.7119    BENHYATT    www.benhyatt.com
Certified Deposition Reporters

**EXHIBIT K**

**ORIGINAL**

1                UNITED STATES BANKRUPTCY COURT

2          CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

3                    --oOo--

4  In Re:                )

                       ) Case No. 2:25-bk-11235-NB

5                    )

  ITKIN & SABADASH and      ) Chapter 7

6  ALEKSANDR VITALIEVICH     )

  SABADASH,              )

7                    )

            Debtor.   ) Los Angeles, California

8                    ) Tuesday, 2:00 P.M.

  ------------------------------X June 3, 2025

9

10

11                  HEARING RE: PUTATIVE PARTNER

                     ALEXANDER SABADASH'S

12                 OBJECTION TO PROOF OF CLAIM

                     FILED BY PROGRESSIVE

13                 MANAGEMENT, INC. (CLAIM No.

                     1)

14                 HEARING RE: PUTATIVE PARTNER

                     ALEXANDER SABADASH'S

15                 OBJECTION TO PROOF OF CLAIM

                     FILED BY JEFFREY RATNER &

16                 ASSOCIATES, INC. (CLAIMS No.

                     2 AND 3)

17

18                 HEARING RE: PUTATIVE PARTNER

                     ALEXANDER SABADASH'S

19                 OBJECTION TO PROOF OF CLAIM

                     FILED BY ALEXEI KUROCHKIN

20                 (CLAIM No. 4)

21                 HEARING RE: PUTATIVE PARTNER

                     ALEXANDER SABADASH'S

22                 OBJECTION TO PROOF OF CLAIM

                     FILED BY EVGENIY AVILOV

23                 (CLAIM No. 5)

24

25  Proceedings produced by electronic sound recording;

  transcript produced by transcription service.



1         HEARING RE: PUTATIVE PARTNER
         ALEXANDER SABADASH'S

2         OBJECTION TO PROOF OF CLAIM
         FILED BY ELENA GOFMAN (CLAIM

3         No. 6)

4         HEARING RE: PUTATIVE PARTNER
         ALEXANDER SABADASH'S

5         OBJECTION TO PROOF OF CLAIM
         FILED BY MARIA HABAROVA

6         (CLAIM No. 7)

7         HEARING RE: PUTATIVE PARTNER
         ALEXANDER SABADASH'S

8         OBJECTION TO PROOF OF CLAIM
         FILED BY ILDAR SHADAEV (CLAIM

9         NO. 8)

10        HEARING RE: PUTATIVE PARTNER
        ALEXANDER SABADASH'S

11        OBJECTION TO PROOF OF CLAIM
        FILED BY MARIA SAMSONOVA

12        (CLAIM No. 9)

13        HEARING RE: PUTATIVE PARTNER
        ALEXANDER SABADASH'S

14        OBJECTION TO PROOF OF CLAIM
        FILED BY ATABEK & COMPANY

15        (CLAIM No. 10)

16        CONTINUED HEARING RE: DEBTOR
        MOTION TO DISMISS INVOLUNTARY

17        PETITION UNDER FRCP 12(b)(10
        AND 12(b)(6) OR, IN THE

18        ALTERNATIVE, MOTION FOR
        SUMMARY JUDGMENT

19

20        CONTINUED STATUS CONFERENCE
        RE: CHAPTER 7 INVOLUNTARY
        PETITION

21

22

23      TRANSCRIPT OF PROCEEDINGS
     BEFORE THE HONORABLE NEIL BASON
     UNITED STATES BANKRUPTCY JUDGE

24

25

1  APPEARANCES:

2  For the Five Joining        JOSEPH E. CACERES, ESQ.
   Creditors:                  Caceres & Shamash, LLP
3                              9701 Wilshire Boulevard
                               Suite #1000
4                              Beverly Hills, California 90212

5  For Gary Y. Itkin:          DANIEL J. McCARTHY, ESQ.
                               Hill Farrer & Burrill, LLP
6                              300 South Grand Avenue
                               37th Floor
7                              Los Angeles, California 90071

8  For Alexander Sabadash:     MICHAEL ZORKIN, ESQ.
                               The Zorkin Firm
9                              6320 Canoga Avenue
                               15th Floor
10                             Suite #1500
                               Woodland Hills, California 91367
11
   For the Joint               KURT ERNEST RAMLO, ESQ.
12 Liquidators and Foreign     Levene Neale Bender Yoo &
   Representatives of             Golubchik, LLP
13 Golden Sphynx Limited:      2818 La Cienega Avenue
                               Los Angeles, California  90034
14
   Court Recorder:             Shemainee Carranza
15                             U.S. Bankruptcy Court
                               Central District of California
16                             Edward R. Roybal Federal Building
                                  and Courthouse
17                             255 East Temple Street, Room #1639
                               Los Angeles, California  90012
18                             (855) 460-9641

19 Court Transcriptionist:     Ruth Ann Hager, C.E.T.**D-641
                               Ben Hyatt Certified Deposition
20                                Reporters
                               17835 Ventura Boulevard
21                             Suite #310
                               Encino, California  91316
22

23

24

25

P 888.272.0022  F 818.343.7119    BENHYATT    www.benhyatt.com
                                  Certified Deposition Reporters

Page                                                              4

1            LOS ANGELES, CALIFORNIA, TUESDAY, JUNE 3, 2025

2                              2:29 P.M.

3                              --oOo--

4            THE COURT:  Now, for the 2:30 p.m. calendar we

5    actually don't have that matters on, but they're

6    potentially involved for the Itin & Sabadash matter.  I

7    have not issued a written decision.  My plan is to pull up

8    my draft here on the screen and talk to the parties about

9    what that says and then get the parties input from there

10   and then issue it either later tonight or tomorrow.

11           But I'm also planning to take the Glubian Totaro

12   (phonetic) matters out of order and then there's one other

13   matter on calendar that I -- it's to do with a Cherry Mann

14   (phonetic) case that I plan to take out of order and then

15   get to Itkin and Sabadash.  My hope would be that that

16   will -- I'll be able to get back to Itkin and Sabadash by

17   2:45 and I will promise you that I won't get to it before

18   that, so if you need to leave the courtroom, do other

19   things, you can do that.

20           (Recess from 2:30 p.m. to 2:46 p.m.)

21           THE COURT:  Okay.  I think that's everything on

22   the 2:00 p.m. calendar, except for the Itkin & Sabadash

23   matters.  Is there anyone I've missed who wishes to be

24   heard on any of the other matters?

25           (No response.)

Page                                                                  5

1          Okay.  Hearing no response, that brings us to

2   Itkin & Sabadash.  So we start by getting -- and I should

3   say, related -- the related matters, there's no appearance

4   required in Golden Sphynx and the Sabadash individual

5   bankruptcy case.

6          So let me start by getting appearances.

7   Mr. Zorkin?

8          MR. ZORKIN:  Yes.  Michael Zorkin for putative

9   partner Alexander Sabadash.

10          THE COURT:  Thank you.

11          Mr. McCarthy?

12          MR. McCARTHY:  Good afternoon, Your Honor.  Dan

13   McCarthy for petitioning general partner, Gary Itkin.

14          THE COURT:  Thank you.

15          Mr. Caceres?

16          MR. CACERES:  Yes.  Good afternoon, Your Honor.

17   Joseph Caceres, Caceres and Shamash, LLP, for the various

18   claimants that were subject to the objections to claims.

19          THE COURT:  Thank you.

20          Mr. Ramlo.

21          MR. RAMLO:  Good morning -- good afternoon, Your

22   Honor.  Kurt Ramlo for the joint liquidators and foreign

23   representatives of Golden Sphynx Limited.

24          THE COURT:  Thank you.  And Mr. Ramlo, you're

25   coming through pretty faint, so just for future reference.

Page                                                              6

1           Anyone else who wishes to state an appearance in

2    this matter at this time?

3           (No response.)

4           Okay.  So I posted the tentative ruling, which

5    wasn't posted until 8:41 or 2 or something this morning.

6    Stated that I anticipated issuing a written tentative

7    ruling for dismissal of this matter before this hearing,

8    but I've had an inordinate matters today that have gone on

9    a little longer than typical.  A lot of pro se stuff, too.

10   So what I mentioned before -- before one of the breaks was

11   that I was expecting to read you the gist of the written

12   ruling that is drafted and not quite finalized.  So give me

13   a moment and I will do that, unless somebody tells me that

14   there's something that moots all of this and then I will

15   hear from the parties.  Okay.  Just a moment.

16                      (Pause)

17          Okay.  Let me see.  What I've got here is

18   currently 21 pages, so I don't want to spend the time to

19   read through all of those pages, so let me see if I can

20   summarize it and then if I'm skipping over anything that

21   any of you want to hear more about, let me know.

22          So Mr. Sabadash has asserted that the alleged

23   partnership, Itin & Sabadash, never existed and that,

24   therefore, this Court lacks jurisdiction because the

25   purported partnership isn't a "person" that can be a debtor

Page                                                                        7

1   under the Bankruptcy Code.   In the alternative, he argues

2   that there's at least a *bona fide* dispute about the

3   existence of any partnership and hence, about the existence

4   of any purported debts on the part of the partnership.

5   And, therefore, he argues that the Court can't grant the

6   involuntary petition, because 363(h) requires that only

7   debts that -- that there's -- debts aren't being paid or

8   generally not being paid, but counting only debts that are

9   not subject to a modified dispute, and if they're all

10  subject to *bona fide* dispute then there's no way to make

11  that finding.

12          All right.   Mr. Itkin's counter-arguments are

13  principally that the existence of the alleged partnership

14  has been determined by courts in both Russia and California

15  and Mr. Sabadash presents not visible evidence to the

16  contrary and, alternatively, that the involuntary petition,

17  which has now been joined in and supported by several

18  alleged creditors, states at least a plausible claim for

19  relief or, alternatively, there's a genuine dispute of

20  material fact regarding the existence and so granting

21  summary judgment wouldn't be appropriate.

22          Mr. Sabadash counters this last argument

23  asserting that if there is a genuine dispute, that just

24  proves the point that then there is a *bona fide* dispute

25  about the issues and, therefore, that 363(h) -- 303(h) is

Page                                                                    8

1  not satisfied.

2          Okay.  So there are related procedural disputes

3  and so on.  My -- what I'm inclined to do is to -- because

4  the -- I think the issues under 303(h) and, for that

5  matter, whether the partnership is a person or not that

6  qualifies under the Bankruptcy Code, those issues are

7  intertwined with the jurisdictional issues and, therefore,

8  I don't think I can follow the case law under 12(b)(1) that

9  says that I can consider some factual matters without

10 converting it into a summary judgment motion.

11         So I think I have to analyze everything under the

12 summary judgment standard.  Procedurally, I'm not persuaded

13 that there's been any unfairness to Mr. Itkin.  In terms of

14 Rule 56 procedure as a practical matter Mr. Itkin has had

15 additional time.  He's submitted a supplemental brief.

16 That would be more time than he would have had anyway in

17 normal procedures in Rule 56.  The lack of proposed --

18 well, a statement of uncontroverted issues has not been

19 shown to have caused any prejudice and, in the interests of

20 justice and in the interests of handling this matter in a

21 timely fashion and because the parties are well represented

22 and I -- again, I don't see any prejudice, I have the

23 authority to waive any technical non-compliance with the

24 Local Rules, and I think it's appropriate to do so in terms

25 of the timing on the -- and procedures for the Rule 56

Page                                                              9

1  disposition.

2          In terms of evidentiary issues, I'm inclined to

3  sustain a number of the objections by Mr. Itkin to the

4  evidence if I were to take the evidence that's submitted

5  for the truth of the matters asserted, but it seems to me

6  that for the most part what I'm being asked to do is just

7  to recognize that positions have been taken in other

8  litigation that would show that the matter has not been

9  waived and that there is actually room for a *bona fide*

10 dispute as to the validity or amount of claims for purposes

11 of 303(h).

12         And so for those purposes, it seems to me that

13 the -- I can properly take account of a number of the

14 papers that were pointed to by Mr. Sabadash.  I don't think

15 that includes the -- how to describe it because I don't

16 have this right at my fingertips, but the chart that

17 shows -- the organizational chart that shows Mr. Sabadash

18 as 100 percent owner, my recollection is that that was a

19 color chart that was then presented in black and white to

20 somebody at a deposition and also presented through an

21 email from an attorney to another party, and it seems to me

22 it's too many steps removed.  It's not the sort of -- it

23 doesn't fall under the category of the other matters that I

24 was describing that are pleadings that are simply pointed

25 to, to show that there is a dispute and that the dispute is

Page                                                    10

1  *bona fide.*

2         So moving on, I won't recap the standards under

3  Rule 12(b)(1) and Rule 56, but I will note that in terms of

4  the standards applicable to dismissal of an involuntary

5  petition, the burden is on the petitioning creditors to

6  show that no *bona fide* dispute exists under binding Ninth

7  Circuit precedent and then there's a *bona fide* dispute of

8  an objective basis for either a factual or a legal dispute

9  exists as to the validity of the debt -- excuse me -- then

10 the BAP decision, the *Leong Partnership* decision affirmed

11 by the Ninth Circuit on different grounds, but the BAP's

12 decision I think is instructive and it describes the

13 slightly convoluted analysis here that the issue before me

14 is whether there is a genuine dispute that the claims

15 asserted against the alleged debtor are disputed, that

16 there's a -- no genuine dispute about a *bona fide* dispute.

17 And so with those preliminary remarks, let me get to the

18 main arguments.

19         I am not persuaded that preclusion applies, that

20 the -- either the decisions of the Russian court -- of

21 courts, plural, or of the California state court

22 established the existence of a partnership.  Here are my

23 reasons for that.

24         First of all, under 28 U.S.C. 1738 and the cases

25 interpreting it, I believe I need to apply California

Page                                                      11

1   preclusion law and so the issue needs to be identical to

2   that decided in the other proceeding.  It has to be

3   actually litigated, necessarily decided, final and on the

4   merits and the party has to be the same or in privity with

5   the party of a formal proceeding.  That's all from *Lucido*

6   *v. Superior Court*, 795 P.2d 1223 at 1225, (CA Supreme Court

7   1990).

8           And then even if all five of those elements are

9   satisfied, preclusion is only appropriate if the

10  application preclusion furthers the public policies

11  underlying the doctrine and those policies are preservation

12  of the integrity of the judicial system, promotion of

13  judicial economy and protection of litigants from

14  harassment by vexatious litigation.

15          Okay.  There's a bit of a gloss on some of those

16  things.  They actually litigated prong, for example, can be

17  a default judgment and -- but I won't get into the details

18  right now.  Those are the -- that's the outline.

19          I don't interpret the Russian court's decisions

20  as being preclusive for a number of reasons.  First of all,

21  on their own terms the Moscow arbitration court did rule in

22  favor of Ms. Elena Gofman and against a -- what it

23  described as a partnership of Itkin & Sabadash in the

24  amount of 800,000 rubles based on failure to pay Ms. Gofman

25  for consulting services she claimed to have performed for

Page                                                                12

1   the partnership.  And the Moscow arbitration court's

2   judgment appears to support Mr. Itkin's arguments that a

3   partnership exists and that Mr. Sabadash, in fact, has

4   personal liability with Mr. Itkin for the partnership

5   debts.

6           The Court said in part that Ms. Gofman "may

7   request payment for services rendered from each of the

8   partners of simple partnership Itkin & Sabadash.  Once

9   personal financial liability is calculated, respective

10  shares in the partnership interest need to be taken into

11  consideration as per simple partnership agreement, namely

12  J. Y Itkin 33 percent, A.V. Sabadash 67 percent," and so

13  on.

14          So that's -- Mr. Sabadash appealed that judgment

15  arguing, among other things, that he'd been unable to

16  participate in the proceedings because he'd been

17  incarcerated, but in 2019 the Ninth Arbitration Court of

18  Appeal affirmed the judgment.  That court declined to

19  consider Mr. Sabadash's arguments in opposition to the

20  judgment.

21          But here's the important part for me; it's the

22  grounds on which it did so.  The Russian appellate court

23  ruled that the Moscow arbitration court had not, in fact,

24  made any decision as to the rights and obligation of

25  Mr. Sabadash, including whether he was deemed to be a

Page                                                              13

1    member of the alleged partnership.  The appellate court

2    said Mr. Sabadash's position is that the Moscow arbitration

3    court made its decision as to his rights and obligations

4    "deeming him to be a member of the simple partnership Itkin

5    & Sabadash, which is factually incorrect."  And then it

6    went on to say the panel of judges believes that the

7    decision of the trial court "does not address

8    Mr. Sabadash's personal rights and obligations," and

9    there's no reference to his personal rights or obligations

10   in either of the "resolutive or the declarative parts of

11   the court decision."  Those parts.

12            So I read all of that to mean that the quoted

13   language from the Moscow arbitration court is dicta.  The

14   resolutive and declaratory part of the Court's decision

15   revealing with other things the dicta was about the

16   existence of the partnership and that language that I

17   quoted about personal financial liability of 67 percent of

18   the partnership's debts for Mr. Sabadash that that was

19   dicta.

20            That would explain why the appellate court says

21   there was no "decision" in the "resolutive or the

22   declaratory parts" of the judgment, either the existence of

23   the partnership or Mr. Sabadash's personal rights and

24   obligations.

25            So because of that, I interpret the Russian

Page                                                          14

1   courts looking at what was before them and saying that they

2   had a written contract that purported to be between Ms.

3   Gofman and the alleged partnership and they ruled the

4   contract was enforceable, leaving for another day disputes

5   between Mr. Itkin and Mr. Sabadash about their respective

6   liabilities, including whether or not the alleged

7   partnership is between them even existed or whether, as

8   Mr. Sabadash alleges, Mr. Itkin forged his signature on the

9   contract with Ms. Gofman.

10          So in any event, even if I'm wrong about that

11  interpretation of what was really going on there, I don't

12  think I can get beyond the Russian appellate court's

13  holding, which seems clear that any assertion that an

14  actual decision had been made about the existence of the

15  alleged partnership, Itkin & Sabadash, was "factually

16  incorrect."

17          Now, Mr. Itkin argues to the contrary citing a --

18  what's called an information summary issued by a single

19  deputy presiding judge of the Russian appellate court.  But

20  Mr. Itkin cites no authority that the information summary,

21  whatever that is, qualifies as a judgment or a decision

22  that would be entitled to preclusive effect, especially

23  when that summary doesn't explain any of the issues that

24  I've gotten into about why I read that what seems to be a

25  plain statement of the Russian appellate court that it's

Page                                                              15

1  factually incorrect to assert that any decision was made

2  about the existence of the partnership.  There's no

3  explanation squaring the summary with that holding, not

4  even an attempt to address that.

5           So alternatively, supposing for the sake of

6  argument the rulings of the Russian courts did, in fact,

7  affirm the existence of the alleged partnership of Itkin &

8  Sabadash which, again, I don't believe they did.  The --

9  I -- it seems to me that the existence of any partnership

10 at the time of Ms. Gofman's litigation is irrelevant to

11 whether any such partnership continues to exist today and

12 thus, whether the alleged partnership is currently a person

13 that's eligible to be a debtor in bankruptcy or whether it

14 existed at other times in connection with other purported

15 debts that are now attempted to be enforced.

16           And the Moscow arbitration court's judgment found

17 that Ms. Gofman's services were performed from February

18 2004 to December of 2006 and so that is consistent with the

19 partners, assuming for the sake of discussion if they ever

20 were partners, could have held themselves out as a

21 partnership only to Ms. Gofman and only during that time

22 period.

23           In fact, supporting all of this, Mr. Itkin has

24 testified in other litigation between him and the

25 Sabadash's related entities that the partnership ended in

Page                                                          16

1   2016, which illustrates the point that the partnership

2   doesn't necessarily exist today, doesn't -- didn't

3   necessarily exist as to any other persons or any other

4   debts.

5           And finally, assuming for the sake of

6   discussion -- this is yet another alternative -- that the

7   Russian court's rulings did, in fact, undermine the motion

8   to dismiss, which I'm not persuaded to do but that, that

9   would have been a basis for Ms. Gofman to have filed a

10  written opposition to the motion to dismiss on that basis,

11  but she didn't file any such opposition.  It's Mr. Itkin

12  who has filed an opposition and he hasn't cited authority

13  that he's in privity with Ms. Gofman for this purpose.  In

14  fact, to the contrary, his papers cite authority that the

15  offensive use of privity by one partner against another

16  partner based on determinations against the partnership is

17  not permitted.

18          And so it seems to me that the Russian court

19  decisions are not determinative of the issues before this

20  Bankruptcy Court nor would the state court, the Los Angeles

21  Superior Court's recognition of a foreign judgment that

22  involves Ms. Gofman be binding on this Bankruptcy Court for

23  the different issue, not of enforcement of that judgment

24  but for the issue of whether there's a *bona fide* dispute as

25  to the existence of the partnership and, hence, the

Page                                                    17

1  existence of the debts.

2          And layered on top of all of that is a public

3  policy concern that if all of this is a misinterpretation,

4  assuming for the sake of discussion that I'm somehow

5  misinterpreting the Russian appellate court and, for

6  example, that it wasn't saying that this is dicta and it

7  was simply on some other basis preventing Mr. Sabadash from

8  being able to argue his position, there isn't any

9  sufficient explanation to square with California public

10 policy.  It seems to me that the -- any rule of decision

11 that says you can't be heard because you're not really

12 involved in this, but you are involved in this and,

13 therefore, we're going to sock you with liability and that

14 liability can't later on be challenged because this is

15 preclusive, that that would not be consistent with

16 California law -- California principles of preclusion.

17         So that to me resolves the issue of preclusion

18 and then we've got the issue of, well, if there's not

19 preclusion is there evidence one way or the other.  And on

20 the evidence Mr. Itkin relies on a document entitled

21 "Minutes of the Meeting of Partners of Simple Partnership

22 Itkin & Sabadash" dated February 12, 2004 -- and this is

23 prepared by and at the behest of the same Ms. Gofman who

24 holds a claim against the partnership -- and supposedly,

25 Mr. Sabadash later signed the minutes, although he says

Page                                                        18

1  this was forged.  I note that there are a number of things

2  that call into question and, to me, raise at the very least

3  genuine issues of material fact about whether that document

4  and other documents are genuine and whether, in fact, a

5  partnership exists.

6          I start with the overall issue that is pointed

7  out by Mr. Sabadash in his papers, that it seems astounding

8  that a sophisticated businessman like Mr. Itkin would agree

9  to an arrangement involving very serious dollars or very

10 serious amounts of money in whatever currency without

11 having anything in writing.  There is some evidence that

12 the parties needed to keep some things secret either for

13 purposes of compliance with Russian law about who can serve

14 in the Duma or other reasons, but that particular issue

15 came up much later when Mr. Sabadash was elected to the

16 Duma.

17          Beyond that, there's some indication -- well,

18 there's no allegation, let alone evidence, of reasons why

19 this couldn't have been put into writing.  And even if

20 something shouldn't be publicized for various reasons,

21 legitimate or illicit, in other words, trying to evade laws

22 or for legitimate legal purposes, either way, it's one

23 thing to not want to have something published, but it's

24 another thing to not have an agreement, even as between the

25 two parties involved.

Page                                                            19

1          So for large dollar amounts to be involved and

2     yet no writing is surprising to begin with, beyond that

3     they -- Mr. Itkin asserts in his current declaration that,

4     in fact, large dollar amounts maybe were not involved.  He

5     doesn't make this quite as plain as this, but I'm picking

6     up on something that he said there, that when he was first

7     living in -- when he first moved to Moscow that he was

8     living in a squalid apartment and so on, but he testified

9     in other proceedings that he was getting $50,000 a month

10    from the start or very near the start.  Those things don't

11    mesh or at least not without a much better -- well, some

12    explanation and there's none, but any explanation would

13    have to be pretty good to explain how those things would

14    mesh.

15         So I come back to it certainly seems as if from

16    the very inception there were at least promises, according

17    to Mr. Itkin made of four million dollars a year, lots of

18    money, $50,000 a month being actually received, four

19    million dollars a year being supposedly promised and yet

20    none of this is in writing.  Okay.  So that's one major red

21    flag.

22         Another thing is that the minutes themselves,

23    they document that Mr. Itkin relies on, talks about how he

24    is being persuaded to enter into this supposed partnership

25    for purposes of effectively managing assets contributed to

Page                                                          20

1   the partnership by Mr. Sabadash, so there's no question

2   that Mr. Sabadash is contributing the assets.

3          And then the minutes go on to say, Gary Itkin

4   made a commensurate contribution to the partnership by

5   virtue of his academic background.  Well, that's a heck of

6   a payoff for an academic background, four million dollars

7   minimum payment a year for an academic background.

8   Professional experience.  Again, you can hire a whole lot

9   of lawyers and really good accountants for four million

10  dollars a year.

11         Business reputation and connections.  Well, in

12  terms of connections and any sort of business

13  representation that could accomplish anything, again,

14  there's inconsistent testimony.  There's testimony that in

15  the latest declaration that Mr. Itkin was involved in

16  helping to expand the Russian operations so that they could

17  look to markets outside of Russia, for example.

18          I'm not sure that there's a whole lot more

19  detail than that, but there -- but in any event, he was

20  involved to some extent.  But then there's other testimony

21  that says he wasn't involved in the finances in Russia and

22  he didn't know where the money came from.

23         So whatever connections he had don't seem to have

24  been terribly connected to the primary source of revenues.

25  Now, he does seem to have managed assets through indirect

Page                                                                    21

1   ownership that were held elsewhere, such as the mansion in

2   Beverly Hills that's been the subject of other proceedings

3   before this Court.  But that's not an asset that jumps out

4   right away as requiring lots of management or generating

5   revenue or anything that would warrant four million dollars

6   a year of minimum compensation.

7          And similarly, Mr. Itkin doesn't point to

8   anything else that would support this notion set forth in

9   the minutes that somehow he made a commensurate

10  contribution to that type of level of compensation, whether

11  it's through his business connections or anything else.

12         Mr. Sabadash points to a number of other problems

13  with various documents that are relied upon by Mr. Itkin or

14  the evidence that Mr. Itkin points to.  But without going

15  through each and every item, it seems to me that based on

16  the papers presented and the evidence that's been

17  presented, including just the evidence presented by

18  Mr. Itkin himself, so regardless of what the ruling might

19  be on any evidentiary objections -- and again, I'm inclined

20  to sustain a number of them, but not all -- but even if I

21  were to sustain all of the evidentiary objections, it seems

22  to me the evidence presented by Mr. Itkin himself is

23  sufficiently subject to challenge and suspect on its face

24  that there is at least a *bona fide* dispute about the

25  existence of any debts of the alleged partnership because

Page                                                                    22

1    there's a *bona fide* dispute about the existence of any

2    partnership at all.

3            So for all of those reasons, I am prepared to

4    grant the motion, which I view is a motion for summary

5    judgment or for abstention, but it could also be

6    alternatively if it were viewed as a motion to dismiss,

7    would for the same reasons grant that as well.  And for the

8    same reasons, it seems to me it's appropriate to abstain

9    because if I am going to take the approach that I've

10   outlined, then I don't reach the -- whether I'm actually

11   denying the claim objections or not -- sustaining the claim

12   objections or not.  I am simply ruling that there is a *bona*

13   *fide* dispute and, therefore, as to any alleged claims

14   because there's a *bona fide* dispute about the existence of

15   the partnership and, therefore, that it's impossible to

16   make a finding that the debtor is not paying its debts that

17   are not subject to *bona fide* dispute that it's generally

18   not paying those debts.  And, therefore, I have to dismiss

19   the bankruptcy petition or, alternatively, it's appropriate

20   to abstain and let the -- principally the Jersey court, but

21   possibly other jurisdictions decide other disputes between

22   the parties.

23           So those are the matters addressed in the written

24   disposition that I have not finalized.  And let me hear now

25   from the parties as set forth in the tentative ruling.  I'm



Page                                                        23

1   not -- I think that we already had some argument about

2   these issues and so I'm not inviting re-argument on them.

3   Instead, I want to focus more on whether anyone thinks

4   that, for example, I've mixed up too parties or I've

5   decided something that's material that's incorrect or --

6   and also, any procedural issues that we should be dealing

7   with post-dismissal.

8           So let me start with Mr. Zorkin, actually, and

9   then turn to Mr. McCarthy and anybody else who wishes to be

10  heard, probably Mr. Caceres.

11          So Mr. Zorkin, go ahead.

12          MR. ZORKIN:  Thank you, Your Honor.  The only --

13  I only have one issue.  As far as the chart that Mr. Itkin

14  did to Mr. Sabadash, which is Exhibit 7 of the motion, it

15  is actually -- Exhibit 7 itself is actually an email from

16  Mr. Itkin to Mr. Sabadash's attorney attaching the chart,

17  so I would submit that this is an opposing party statement

18  and is not hearsay, so hearsay objection should be

19  overruled.

20          Other than that, I don't -- I didn't hear

21  anything factually inaccurate from what the Court just said

22  and that would -- just like to have a couple of minutes to

23  address anything the other party says.

24          THE COURT:  Thank you.

25          Mr. McCarthy.

Page                                                            24

1          MR. McCARTHY:  Thank you, Your Honor.  My

2     comments mostly have to do with procedural issues, what

3     Your Honor said substantively.  I do want to start out by

4     saying the *Leong Partnership* case, which Your Honor noted

5     and the other party has relied upon, presented

6     circumstances that were extremely different than what you

7     had before you.  The judge in the decision said that the

8     evidence was uncontradicted as to whether there was a *bona*

9     *fide* dispute.  And the issue of whether there was a

10    partnership in dicta, the Court said that the statements

11    that the partner creditor relied on were "equivocal at

12    best."

13          Well, Your Honor, in that case there was no

14    evidence to support the position taken and I think we have

15    something very different in this case.  And so the question

16    becomes drawing a line on where you have a *bona fide*

17    dispute or just a dispute.  And so as a matter of procedure

18    when there are disputes on the validity of an involuntary

19    petition, ordinarily they're set for a evidentiary hearing

20    if there's evidence to get by summary judgment.  And I

21    would, with due respect, suggest that there is enough

22    evidence to get by summary judgment, even under the

23    standard that *Leong* stated, which Your Honor described as

24    somewhat awkward in stating.  There has to be no genuine

25    dispute that there is a *bona fide* dispute, we think is the

Page                                                                          25

1   way the Court said it.

2            So regarding the evidence, Your Honor, one of the

3   things that I expressed at the last hearing was my

4   frustration that all the evidence that we had presented in

5   our opposition, which Mr. Sabadash and Mr. Zorkin were

6   familiar with because they were trial exhibits in the state

7   court action and presented with cross-motions for summary

8   judgment weren't addressed until the reply brief.  And I

9   felt that that was unfair to my client.  My client had no

10  chance to respond in writing and I made that point to you

11  in my request for permission to file a supplemental brief

12  in which I stated there are a lot of issues that were

13  argued for the first time in the reply brief, but there was

14  one in particular that I thought was very important to

15  bring to your attention, which was the reason for the

16  information summary, which Mr. Zorkin discounted and

17  disparaged.

18           And, Your Honor, yourself mentioned it and you

19  weren't quite sure what it was from the judge, but it's

20  from a judge of the very same court that issued the prior

21  decision and it was in response to a request for

22  clarification of that decision.  Your criticism of the

23  information summary seems to be that the judge didn't go

24  far enough in trying to square what the judge was saying in

25  the information summary with the prior ruling, but it's

Page                                                          26

1  clear that it's a clarification of the prior ruling and it

2  was final.  The clarification wasn't further appeal, so I

3  just wanted to clarify that, what the procedure on that

4  was.

5          So anyway, I was frustrated with the lack of

6  opportunity to respond in writing to what Mr. Zorkin had

7  argued for the first time in his reply brief.  And I had a

8  lot to say about some of that evidence and his responses,

9  which we actually didn't get into at the last hearing.  We

10 had a very short hearing.

11         But I want to note something, Your Honor.  You

12 were critical of a lot of Mr. Itkin's evidence in what you

13 just stated, questioning, for example, the -- why would the

14 partnership agreement be worded the way it was, that Mr.

15 Itkin's statement that partnership had terminated.  These

16 are things that he explained in his declaration.

17         But here's what's important about that, Your

18 Honor.  Your criticisms of that evidence -- and I

19 understand them -- but they're different than what was

20 argued in the motion or in the reply.  So now it's a

21 situation where I didn't have a chance to respond to what

22 Mr. Zorkin said for the first time in the reply and I'm

23 being presented with your questioning of Mr. Itkin's

24 evidence and also some reliance on inadmissible evidence

25 submitted by -- by Mr. Zorkin, again without a chance to

Page                                                                    27

1   respond in writing.

2         But I'll just give you on example of that, Your

3   Honor.  When the reply brief talked about the written

4   confirmation of the partnership from February 2004, which

5   Ms. Gofman drafted, the criticisms in the reply brief was

6   that it was forged, no evidence; that it was in the same

7   style and pen, so that was the suggestion that there might

8   be forgery, no evidence, no comparison; that there was a

9   conspiracy between Mr. Itkin and the Russian attorney Elena

10  Gofman, no evidence, just an accusation; and that the

11  Russian version was illegible, although it was translated.

12  So it was legible enough to be translated and I don't read

13  Russian, but it seemed like pretty clear Russian letters to

14  me but, in any event, it was translated into English and

15  that's what is required to be submitted to a court in the

16  U.S.  Those were the criticisms of that in the reply brief.

17        Your criticisms of it are a little bit different

18  and there's evidence that you didn't mention that Mr. Itkin

19  had presented as well, annual reports from Ms. Gofman to

20  the partnership, cash flow statements that Mr. Itkin had

21  prepared for the partnership for a five-and-a-half-year

22  period, and there was other evidence, too, especially the

23  detail in his declaration as to background.

24        So the issue procedurally, Your Honor, there was

25  plenty of evidence that was presented by Mr. Itkin, some of

Page                                                                    28

1  which was criticized in the reply brief, some of which

2  you've criticized and we have not really had an opportunity

3  to explain to you why those criticisms are unfair.

4          Now, a few other things procedurally.  The

5  supplemental brief that I asked for leave to file, I would

6  ask that you at least grant that so it's part of the

7  record.  And also, I'd ask for evidentiary rulings.  You

8  know, for example, the suggestion is made that there was

9  forgery.  That's what Mr. Sabadash claimed.  Well, what

10 admissible evidence of that?  A declaration from a state

11 court action or declaration from his wife from a state

12 court action?

13         I'll give you another example of testimony that

14 was carefully cited in the reply brief.  There were Exhibit

15 13 to Mr. Zorkin's declaration attached to the reply brief

16 with a supplemental response to request for documents,

17 but -- and he selectively cited one request or one

18 response, I should say.

19         But if you go through the responses, they

20 repeatedly refer to the partnership with Mr. Sabadash.

21 Well, he didn't note those points about the supplemental

22 response.  Exhibit 14 was a supplemental response to

23 special interrogatories.  They also repeatedly refer to the

24 partnership with Mr. Sabadash.  And these are from 2019,

25 Your Honor.  And the interrogatory responses identified

Page                                                                29

1  witnesses with knowledge of the partnership.

2          Mr. Ratner's deposition was something else that

3  was attached for the first time to the reply brief.  And

4  again, there are selective citations to the deposition

5  transcript, but there are also portions of the part that

6  Mr. Zorkin submitted where Mr. Ratner testified that Itkin

7  informed him of a proposed partnership that would own

8  corporations.  Mr. Zorkin didn't point that out.  And when

9  Mr. Ratner filed his opposition to the objection to his

10 claim which, in part, was based on the existence of the

11 partnership, Mr. Ratner attached other relevant portions of

12 his deposition transcript that Mr. Zorkin didn't present to

13 you and that we didn't present to you because we didn't

14 have a chance to in response to the reply where Mr. Ratner

15 testified repeatedly to being aware that there was a

16 partnership and being told about that.  That's the problem

17 with, in violation of the Local Rules, presenting evidence

18 for the first time in reply brief and not giving the other

19 party a chance to respond to them.

20         So that's the procedural issue, Your Honor.  I

21 just -- I believe that we haven't had affidavit air due

22 process opportunity to respond to the new evidence and

23 arguments submitted with the reply and, in part, to some of

24 the ways that you've discounted the evidence that Mr. Itkin

25 has cited and also relied upon what I think is inadmissible

Page                                                              30

1   evidence that Mr. Zorkin presented.

2           One final thing, Your Honor.  On the abstention

3   issue, we did actually have a little bit of an opportunity

4   to argue about that at the last hearing and in your

5   statements that you just summarized you said alternatively

6   abstention could be a basis for my decision.  And I'm

7   wondering if your memorandum of decision intends to go into

8   any detail on abstention or that's just going to be another

9   one-liner at the end.

10          THE COURT:  Well, because it's at the end that's

11  the part that I haven't finished drafting, so I don't know.

12  Okay.

13          MR. McCARTHY:  Let me just make one point, Your

14  Honor, about that.  Under 305(a)(2) if you were to invoke

15  an abstention, you have the alternative remedies of

16  dismissal or suspending the case.  You're not required to

17  dismiss it and relief under 305(a)(2) is rarely granted.

18  One of the reasons for it is you can't appeal that to the

19  Court of Appeal.  Your only appellate remedy is to the

20  District Court or the BAP (phonetic) and so bankruptcy

21  courts are careful about issuing that remedy.

22          And here's what I think if you were to consider

23  that remedy, the proper remedy would be suspension and not

24  dismissal of the case.  And there were several reason for

25  that and perhaps you'd like to address that, you know, when

Page                                                                    31

1  you finalize your memorandum.  There are creditors of the

2  partnership.  They've been objected -- their claims have

3  been objected to, but they hold millions of dollars of

4  claims that they believe are owed by the partnership.

5  You're not getting to those objections today because I --

6  because you, you know, view those as moot given the ruling.

7       But Mr. Caceres presented compelling opposition

8  to those objections presenting detailed evidence of why

9  there was no *bona fide* dispute as to many claims of

10 creditors who joined the petition and their claims alone

11 are additional evidence of the fact that there's a

12 partnership.

13      The fact that there are creditors of the

14 partnership is one reason that I think the better remedy

15 would be to suspend this proceeding, rather than dismiss

16 it.  Those creditors are not creditors of Golden Sphynx

17 Limited.  They're not protected in the Jersey litigation.

18 They only can be protected in a bankruptcy of Itkin &

19 Sabadash, the one that we filed.  And that -- you may get

20 to the point, depending on what happens in Jersey, where

21 this ends up coming back to you in connection with the

22 involuntary case where decisions need to be made.

23      Well, think, for example, the Jersey court held

24 that there was a partnership and that -- but that it can't

25 do anything to help the creditors of that partnership.



Page                                                                    32

1        Well, if you had a suspended case you could then

2   look at those developments and say, yeah, I should consider

3   that in deciding how to proceed.  In other words, take a

4   wait-and-see approach as you had in connection with the

5   Golden Sphynx case, to see how things proceeded in Jersey

6   before deciding what to do in the United States.

7        Well, the same thing applies to the Itkin &

8   Sabadash partnership.  I think it's just a -- it's better

9   to wait to see what happens before dismissal, instead

10  suspended in the meantime.

11       And one final reason -- and we argued this

12  against abstention -- you have a partnership that's

13  governed by California law concerning California property

14  that was the subject of a California action where Mr. Itkin

15  was seeking dissolution.  The Jersey court may finally end

16  up telling you, you know what, although it didn't before

17  when you asked for assistance, the Jersey court may end up

18  telling you, you know what, we're not experts on California

19  law.  We need a California judge or a bankruptcy judge in

20  California to address these issues.

21       So I would suggest that you leave the issue open

22  how this case is going to be wound up by merely suspending

23  instead of dismissing if you're going to consider a remedy

24  under 305(a)(2).  And that's the last procedural point I

25  wanted to make.

Page                                                                    33

1          THE COURT:  Thank you.

2          Mr. Caceres.

3          MR. CACERES:  Yes, Your Honor.  First, I'd like

4  to join in Mr. McCarthy's arguments there.  I think, if

5  anything, the Court should set an evidentiary hearing.  I

6  understand that Mr. Zorkin would argue that there's a *bona*

7  *fide* dispute, but they can't be, that the mere fact that he

8  says there is one and he submits certain -- we think the

9  fact of evidence that there is a *bona fide* dispute can

10 carry the day without the Court first examining all the

11 facts and evidence and deciding whether these claims, for

12 example, the existence of a partnership doesn't really

13 exist.  Otherwise, we run into the danger of any claimant

14 or any objecting party to an involuntary being able to muck

15 up the proceedings simply by claiming there are *bona fide*

16 disputes as to creditors or as to whether a partnership

17 exists or so on, and throw out whatever they can to see

18 what sticks to the wall and, therefore, defeat any given

19 involuntary.

20          So I don't think that in itself should lead to

21 sort of a summary dismissal and this is a motion for

22 summary judgment for that is what essentially the Court

23 would be doing.

24          Now, the second and I think maybe even more

25 important point is that I'm looking at these decisions and

Page                                                                    34

1   the Court cited these decisions are attached to a

2   declaration of Elena Gofman, so I can cite the Court to the

3   specific exhibit pages.  The declaration of Ms. Gofman

4   was -- that I filed as docket number 62, Exhibit C, I think

5   is the decision the Court is referring to the ruling of

6   the -- of the Ninth Arbitration Court of Appeals.

7          Then on pages -- Bates stamped pages 33 and 34 to

8   that declaration at docket 62, I think what the Court is

9   saying, if I understood you correctly and there's a lot

10  there to digest, is in reading the following language:

11         "The appellee's position is that the court made

12      its decision as to applicant's rights and obligations

13      deeming A.V. Sabadash to be a member of the simple

14      partnership Itkin & Sabadash, which is factually

15      incorrect."

16         When the court said that, I don't think that they

17  meant that the existence of Itkin & Sabadash was factually

18  incorrect.  I think what they meant was that the decision

19  by the lower court was not determining Mr. Sabadash's

20  individual rights as opposed to whether there was

21  partnership or not.  The lawsuit by Ms. Gofman was against

22  the partnership, not against Mr. Sabadash personally and I

23  think that's what the court was trying to get to.

24         The next line bolsters and it says:

25         "The panel of judges believes that the decision

Page                                                                35

1          of the trial court does not address Mr. Sabadash's

2          personal rights and obligations."

3              That's correct.  It didn't.  It only addressed

4    Itkin & Sabadash, the partnership's obligations.

5              The next sentence:

6          "There is no reference to Mr. Sabadash's personal

7          rights or obligations in either the relative or

8          declarative parts of the court's decision."

9              That's correct.  There wasn't.  It was

10   determining the -- her rights as against the partnership.

11   And I think that's what this court was getting to and it

12   makes sense because every one of these Russian court

13   decisions -- and it went through, I think, four layers; a

14   trial court and three appeals -- every single one of them

15   said, Itkin & Sabadash exists.

16             So this can't be a statement that, well, no,

17   that's wrong.  Mr. Sabadash doesn't exist because if it

18   didn't exist how could the court have sustained

19   Ms. Gofman's judgment against Itkin & Sabadash if it was

20   saying here, no, it's incorrect, that partnership doesn't

21   exist.  That doesn't make sense to me.

22             The only way to make this make sense is to say

23   that this court was simply saying what I said, what I just

24   stated, that it was telling Mr. Sabadash your personal

25   rights weren't determined here, so you can't appeal this.

Page                                                                    36

1   The partnership's rights were established or were effective

2   and the partnership exists.

3           And then the next line in this court decision,

4   "Furthermore, having an interest in the outcome of the

5   case," yeah, he has an interest in the outcome of the case

6   if he's a partner, "does not vest Mr. Sabadash who is not a

7   party to the claim."  Correct.  He wasn't a party to the

8   claim; the partnership was.  "... with the right to appeal

9   the judicial ruling.  Individuals who are not party to a

10  court action may appeal judicial rulings only a variable to

11  demonstrate that said ruling not only impacted said

12  individuals' personal rights and obligations, but that it

13  directly addressed those rights and obligations."

14          So it may have impacted him indirectly by virtue

15  of the fact that he's a partner of the partnership but it

16  wasn't addressing his rights and obligations personally.

17          Now, the Supreme Court decision, which affirmed

18  all this is Exhibit D to docket 62, Ms. Gofman's

19  declarations.  This, I believe -- let's see.  It's at --

20  let me make sure I have this right.  It may be Exhibit E.

21  Yes, Exhibit E of Ms. Gofman's declaration at docket 62 at

22  Bates stamped page 46.  The Supreme Court said as follows:

23          "The court of appeal in terminating proceedings

24      on the appeal of Sabadash, A.V., was guided by the

25      provisions of Article 42, 15264 of the Arbitration

Page                                                                  37

1       Procedure Code, Code of the Russian Federation, by the

2       explications set forth in paragraph 2 of Decision 36

3       of the plenum of the Supreme Arbitration Court of the

4       Russian Federation, dated May 2029 -- 2009 on

5       application of the Arbitration Procedure Code of the

6       Russian Federation of the proceedings, Arbitration

7       Court of Appeal noting that an individual lacks the

8       right to appeal the decision of the trial court since

9       the decision did not concern his rights and

10      responsibilities."

11          The court also noted the interests of a person in

12  the outcome of the case does not by itself vest such

13  individual with the right to appeal the court's decision.

14  And then the court goes on to affirm the lower decision.

15          So I think that's the correct reading of these

16  decisions, Your Honor, and I would urge the court before it

17  makes any decisions to perhaps go back and maybe review

18  these sections, these Exhibit C and D that I attached to

19  that declaration of Ms. Gofman, and further consider that

20  before it finalizes any decision in this matter, as well as

21  the comments that Mr. McCarthy made that if we get past --

22  I think there is preclusion, so we get past that, then, of

23  course, the evidentiary issues that Your Honor cited still

24  exists and then we need an evidentiary hearing to decide

25  both issues as to whether there's a partnership.  And then

Page                                                                                   38

1  if there's a partnership, of course, a lot of -- you know,

2  probably 70, 80 percent of Mr. Zorkin's or Sabadash's

3  objections to my client's claim goes away because a lot of

4  it, if not most of it, is based on his allegation that

5  there's no partnership.  We think there is a partnership

6  and that would, you know, significantly reduce any issues

7  to be considered in connection with those objections as

8  well.  Thank you, Your Honor.

9          THE COURT:  Thank you.  Mr. Ramlo, did you wish

10 to be heard?

11         MR. ZORKIN:  You're on mute.

12         MR. RAMLO:  Can you hear me now, Your Honor?

13         THE COURT:  Yes.

14         MR. RAMLO:  Sorry, Your Honor.  Again, Kurt

15 Ramlo.  I have nothing to add to the argument, Your Honor.

16 Thank you.

17         THE COURT:  Thank you.  Anyone else before I

18 return to Mr. Zorkin?

19         (No response.)

20         MR. ZORKIN:  Okay.  Mr. Zorkin.

21         MR. ZORKIN:  Thank you.  Just briefly, to address

22 the last thing that Mr. McCarthy said request to keep the

23 case in abeyance or suspension, Section 305 does not trump

24 Section 303, so there is a *bona fide* dispute.  There's no

25 way to keep the case in abeyance.  The Ninth Circuit in *In*

Page                                                                39

1   *Re: Vortex* said the petition shall be dismissed, so there's

2   no way to do that with the finding of a *bona fide* dispute.

3          Another thing that has been brought up several

4   times, the reply did not violate the Local Rules.  The

5   Local Rules specifically allow introduction of evidence on

6   reply to respond to evidence in opposition.  So the -- it's

7   the opposition that brought up Ms. Gofman.  It's the

8   opposition that brought up Mr. Ratner, so it's permissible

9   to reply.

10         Another concern that's being raised again

11  multiple times is that this has not been mentioned before.

12  So in the state court litigation I personally filed two

13  motions in limine addressing Ms. Gofman's evidence, which

14  is the 2004 minutes of the partnership and 2004 contract

15  for services where, you know, I'm not going to -- I don't

16  want to admit to anything, but this motion is essentially a

17  copy-and-paste of those motions.  And all those arguments

18  were raised in the state court litigation that signatures

19  are fake, there is a -- there is a partnership seal that

20  misspelled Mr. Sabadash's name.  Those documents never

21  appeared during discovery.  Only appeared after discovery

22  was closed and Mr. Itkin never mentioned Ms. Gofman at his

23  deposition or in the discovery responses as a person who

24  knows about the partnership.  All of these were raised.

25         And as far as unfairness, Ms. Gofman submitted a

Page                                                            40

1  declaration in support of all of the creditors' claims,

2  proof of claims a few weeks ago.  In that declaration she

3  does not deny that the signatures are forged.  She doesn't

4  explain the partnership seal that misspells Mr. Sabadash's

5  name.  She doesn't explain why Mr. Sabadash's signature is

6  the only one that appears electronically affixed, which in

7  2004 in Russia I'm confident that Adobe Acrobat was not

8  available, and she doesn't deny that Mr. Itkin paid her

9  $21,000 personally from his account to her account exactly

10 at the time that she filed the lawsuit against the

11 partnership.

12         So the -- Ms. Gofman had all the opportunity in

13 the world to explain herself and she didn't do that.

14 There's no fairness and the -- all the rules have been

15 followed.

16         This information summary, again, that was

17 submitted and cited in opposition as a decision of the

18 Russian court, no one has ever heard of this.  This was

19 not -- whatever this was, let's assume -- give Mr. Itkin

20 the benefit of the doubt that this was an actual request to

21 an actual officer of the court in Russia.  This was not

22 served on anybody.  There was no opportunity for

23 Mr. Sabadash to get clarification.  There was no --

24 frankly, I just don't know how it came about, so I'm going

25 to leave it at that, but it definitely was not a proceeding

Page                                                        41

1   that was -- that had any semblance of due process.  This

2   document just appeared.  It appeared now.  It did not

3   appear in the state court litigation.

4          And I think everything else that was said by my

5   colleagues is really just disagreement with the law.  The

6   Ninth Circuit law is very clear.  If there is any

7   legitimate dispute the petition must be denied.  It's

8   simply not an involuntary proceeding.  Thank you.

9          THE COURT:  Okay.  Thank you.

10          MR. CACERES:  Your Honor, may I respond just

11   briefly to that?

12          THE COURT:  Yes, just very briefly.

13          MR. CACERES:  Okay.  All this stuff about Gofman

14   didn't deny forgery, she didn't deny this, she has a

15   judgment.  Okay.  And you know what?  Sometimes courts make

16   wrong judgments, but as a litigant you're still bound by

17   that judgment.  Your remedies are appeal it, go through the

18   normal channels if you think the decision was wrong, but

19   you can't just say, eh, I think it was wrong so, therefore,

20   I don't have to obey it, I'm not bound by it.

21          That's essentially what Mr. Zorkin is asking you

22   to accept.  The documents went through several layers of

23   appeals domesticated in Los Angeles.  It should have

24   brought this up earlier and let those courts that had the

25   cases before then determine if any of that stuff is true,

Page                                                                    42

1   number one.

2          Number two, this is -- even if you could consider

3   that now and weren't bound by these judgment, it's --

4   there's no -- he has no evidence other than Sabadash's

5   opinion or the lawyer's opinion that he saw two signatures

6   and they looked different.  There's no proof, no

7   handwriting experts, nothing.  There's no evidence of any

8   of this, even if Ms. Gofman needed to refute it, which she

9   doesn't.  She has a judgment.  He's bound by it.  Should

10  have appealed it earlier and that's the whole point of the

11  preclusion doctrine.  Thank you.

12          THE COURT:  Okay.  Give me a moment to make a

13  note.

14          All right.  Well, what I'm going to do is take

15  this under submission, see about whether I'm going to

16  finalize the written disposition that I talked about or

17  whether I will make that a written tentative ruling that

18  then gives an opportunity for any further response.

19          I'm leaning against that.  I'm leaning against

20  just dismissing.  And in response to Mr. McCarthy's points

21  about issues not having been raised until the reply or, to

22  some extent, not raised until I gave you my oral rulings or

23  tentative rulings in this hearing, a couple of things on

24  that.

25          In terms of the reply, I do think that Mr. Zorkin

Page                                                                          43

1  is correct that when matters are raised in the opposition

2  there's an opportunity to address them in the reply.

3  There -- it is possible to ask for a surreply.  In this

4  instance there was a request for a supplemental brief that

5  was, in fact, filed.  So I don't see that there's any

6  either technical violation or any lasting harm from --

7  there's no -- there's no unfairness to Mr. Itkin from that.

8          In terms of me raising things, I want to take

9  that very seriously.  It's true that I have gone a little

10 beyond Mr. Sabadash's arguments when it comes to

11 interpretation of the Russian court rulings.  That said,

12 neither party, I felt, actually grappled with how to

13 reconcile the different Russian court statements.  You've

14 got statement by one -- or the information summary that

15 seems to say one thing and yet, what it's purporting to

16 summarize seems to me to say the opposite.  And so I

17 realize that it might be that Mr. Itkin didn't want to

18 acknowledge that there was that tension and, therefore,

19 didn't argue about a different interpretation which

20 Mr. Caceres has now argued for that, oh, no, the Russian

21 courts actually only meant that it was incorrect to say

22 that there was a finding as to the individual liability,

23 not as to the partnership.  Hey, I'm not sure that that's

24 persuasive, but maybe.  I mean, I'm going to take a further

25 look at that.

Page                                                                        44

1        But the point is Mr. Itkin chose not to get into

2   that issue in his opposition papers and now to say, well,

3   Judge, you've kind of ambushed us by getting into that

4   issue, well, yeah, it was sitting out there.  Neither side

5   had reconciled these different positions.

6        So as I say, I will take a further look at the

7   Russian decisions and see if they're susceptible of the

8   interpretation or urged by the petitioning creditors.  I'm

9   still a little hung up on the Moscow Arbitration Court, the

10   trial court having specifically said about personal

11   liability of Mr. Sabadash as part and parcel of the --

12   there being a partnership.

13        And so I don't know how an appellate court could

14   say it's factually incorrect to say that there's anything

15   about personal liability in that context.  It seems to me

16   the Russian court was either saying -- the appellate court

17   was either saying it was dicta or it wasn't and if that was

18   dicta, then the bit about the partnership was dicta as

19   well.

20        I guess I come back to it's one thing to say in

21   effect, look, Mr. Itkin and Mr. Sabadash, who knows between

22   the two of you whether you were dealing with apparent

23   authority, actual authority, partnership or what have you,

24   but we've got before us this document that says it was

25   signed by a partnership, this person performed the

Page                                                                45

1   services, and now you're trying to stiff her by saying,

2   well, it ain't me, it's the other guy.  And don't play

3   those games; we, the Russian courts, are going to say the

4   partnership is liable and leave it to the two of you to

5   figure out what that means in terms of your own personal

6   individual liability.  That's very different to me from

7   saying that for all purposes, for all creditors that there

8   is such a thing as a partnership and that there are debts

9   owed by the partnership to all these other claims.  There's

10  also a statute of limitations issue.  There are a number of

11  issues that I want to look at a little further, but what I

12  think I need to do for today is to have a -- probably a

13  briefer continuance so as to keep my feet to the fire to

14  try to get this thing resolved.

15          And so looking at the calendar, I'm thinking

16  probably June 17 at 2:00.  So any objections to that date?

17          All right.  Hearing none, June 17th at 2:00.  And

18  between now and then, I hope to issue a written

19  disposition, but we'll see.

20          Now, Mr. Zorkin, you look as if you wanted to add

21  something.

22          MR. ZORKIN:  Yes, I think one thing has been lost

23  about the Russian proceeding is that Mr. Sabadash was not

24  served or appeared at the first trial level, so all they

25  had was a person saying, here's a contract, I haven't been

Page                                                                46

1   paid and no defense.  And so the court -- you know, there

2   was breach of contract, so it's perfectly understandable

3   that the -- Ms. Gofman won that case because there was no

4   defendant when -- what we're reading from is Mr. Sabadash

5   when he found out he attempted to appeal that decision and

6   the appellate court said, you don't have standing to

7   appeal.  You're not a party to this.  Your rights have not

8   been violated.  You claimed you were deemed a member of the

9   partnership.  That's not correct.  That's not what the

10  court did.  The court ruled on the breach of contract claim

11  and that's it.

12          There was no -- in terms of our issue preclusion

13  parlance, there was no -- the partnership issue was neither

14  litigated nor decided in that case.  It was simply a breach

15  of contract to which no one appeared to defend -- well, I

16  should say, Mr. Itkin sent a lawyer who admitted liability,

17  so someone did appear on behalf of the partnership, but not

18  Mr. Sabadash.  I think that's it.

19          THE COURT:  Thank you.

20          MR. ZORKIN:  Thank you.

21          THE COURT:  Okay.  Again, as usual, I want to

22  thank the parties.  This has been well briefed and argued

23  and I hope to get something out between now and the

24  June 17th.

25          MR. ZORKIN:  Thank you very much.

Page                                                                          47

1              THE COURT:  All right.

2              MR. McCARTHY:  Thank you, Your Honor.

3              THE COURT:  You're welcome.

4              MR. CACERES:  Thank you, Your Honor.

5              THE COURT:  Absolutely.

6     (End at 3:58 p.m.)

7                        *  *  *  *  *  *  *

8              I certify that the foregoing is a correct

9     transcript from the electronic sound recording of the

10    proceedings in the above-entitled matter.

11

12    *Ruth Ann Hager*

13    _____        Date:  6/24/2025

14    RUTH ANN HAGER, C.E.T.**D-641

15

16

17

18

19

20

21

22

23

24

25