MICHAEL ZORKIN (Bar No. CA 313308)
Email: mz@thezorkinfirm.com
THE ZORKIN FIRM
6320 Canoga Ave., 15th Floor
Woodland Hills, California 91367
Telephone:  323.493.8075

Attorneys for Putative Partner of Debtor
Alexander Sabadash

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| In re: | No. 2:25-bk-11235-NB |
|---|---|
| Itkin & Sabadash, | Hon. Neil W. Bason |
| Debtor. | **DECLARATION OF ANDREW WOOD IN SUPPORT OF MOTION FOR FEES** |

16138988.1

I, Andrew Wood, declare as follows:

1. I, together with Alexander Adam, am a joint liquidator (together, the "**Joint Liquidators**"), of Golden Sphinx Limited ("**Golden Sphinx**"), a company incorporated and existing under the laws of Jersey. The Joint Liquidators are also the authorised foreign representatives in a related Chapter 15 proceeding pending before the Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**"), styled *In re Golden Sphinx, Limited,* Case No. 2:22-bk-14320-NB (the "**Chapter 15 Proceeding**") (in such capacity, the "**Foreign Representatives**"). I make this declaration in my capacity as a Joint Liquidator and Foreign Representative of Golden Sphinx in support of Alexander Sabadash's motion for fees (the "**Motion for Fees**") in relation to the dismissed involuntary bankruptcy case filed against an entity identified in the involuntary petition (the "**Involuntary Petition**") as a partnership by the name of "Itkin & Sabadash" (the "**Alleged Debtor**").[1] *See In re Itkin & Sabadash*, Case No. 2:25-bk-11235-NB (the "**Chapter 7 Case**") [Docket No. 1].

2. In my role as Joint Liquidator and Foreign Representative of Golden Sphinx, I have gained some knowledge of Golden Sphinx's history, operations, assets, financial condition, and business affairs. I also have knowledge of the filings and orders made in court proceedings to which Golden Sphinx is a party in California, Jersey and England. I make this declaration based on my knowledge as Joint Liquidator and Foreign Representative of Golden Sphinx and, if called as a witness, I can competently testify to the facts in this declaration.

3. Golden Sphinx's entire estate is being administered in Jersey by the Joint Liquidators under the supervision of the Royal Court of Jersey (the "**Jersey Court**"). Among Golden Sphinx's assets is New Albion Property Limited ("**New Albion**"), which is a company registered in England that owns real property located

---

[1] This Declaration refers to "Itkin & Sabadash" as the Alleged Debtor merely to reflect how the Involuntary Petition is styled. Nothing in this Declaration should be construed as an acknowledgment by me that the Alleged Debtor currently exists or ever existed.

16138988.1    - 2 -    DECLARATION OF ANDREW WOOD

at 58 Beverly Park, Beverly Hills, California (the "**Residence**").  Golden Sphinx acquired the entire shareholding in New Albion in 2013.

4. On September 20, 2016, Mr. Itkin, when he was sole director of Golden Sphinx, transferred New Albion's entire shareholding from Golden Sphinx to himself for no consideration (the "**NAPL Share Transfer**").

5. On March 29, 2022, Golden Sphinx commenced proceedings against Mr. Itkin in the Jersey Court (the "**Jersey Proceedings**"). In the Jersey Proceedings, Golden Sphinx, seeks various orders against Mr. Itkin, largely in relation to assets which belonged to Golden Sphinx and which Mr. Itkin misappropriated when he was its sole director. Golden Sphinx seeks return of those assets or payment of a sum equivalent to their value.  The NAPL Share Transfer is one of the transactions contested by Golden Sphinx in the Jersey Proceedings.

6. On July 6, 2022, the Joint Liquidators were appointed to Golden Sphinx and the Jersey Proceedings were automatically stayed on July 7, 2022.

7. On September 9, 2022, the Bankruptcy Court entered the *Order Granting Foreign Representatives' Motion for (I) Recognition of the Jersey Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief*. Ch. 15 Proceeding, Docket No. 42.

8. On February 6, 2024,  the stay in the Jersey Proceedings was lifted of consent. On February 7, 2024, Mr. Itkin consented to Golden Sphinx amending it claims in Jersey to include all of its claims against Mr. Itkin. The Jersey Court issued a timetable in respect of the Jersey Proceedings.

9. In his amended answer (defence) in the Jersey Proceedings, Mr. Itkin now asserts that Golden Sphinx and all of its assets are assets of the Alleged Debtor. This is disputed.

10. On September 17, 2024, Golden Sphinx issued to Mr. Itkin written requests for further information and clarification with respect to matters in dispute in the Jersey Proceedings (the "**Requests for Information**").  The Requests for

Information set forth ninety-three numbered requests for information. Mr. Itkin's responses to the Requests for Information were originally due on October 1, 2024. However, Mr. Itkin failed to provide responses to the majority of the Requests for Information by that date and, accordingly, Golden Sphinx, through the Joint Liquidators, applied to the Jersey Court for an order that Mr. Itkin provide his responses to the Requests for Information within 21 days. That application was heard by the Jersey Court on December 2, 2024.

11. On December 13, 2024, the Jersey Court issued a Judgment in the Jersey Proceedings and ordered Mr Itkin to (1) answer the majority of the Requests for Information by 4pm on January 17, 2025; and (2) pay Golden Sphinx the sum of £78,432 on account of its costs which were awarded by the Jersey Court on February 7, 2024. In its Judgment, the Jersey Court also stated the following:

   a) "all of the claims made between [Golden Sphinx] and Mr Itkin, whether originally brought in the US or in Jersey, are now being pursued in Jersey;

   b) the proceedings brought by [Golden Sphinx] against Mr Itkin in Jersey are being progressed and further directions will be given at the handing down of this judgment with a view to achieving a trial of all issues as expeditiously as possible;

   c) from the [Jersey] Court's perspective, parallel proceedings in multiple jurisdictions in relation to the same or similar subject matter are likely to serve only to deplete the liquidation estate, add to the complexity presented by this insolvency and increase the time that it will take to resolve outstanding matters."

A true and correct copy of the Dec. 13, 2024 Final Judgment is attached as **Exhibit AW1**.

12. The Foreign Representatives share the opinion of the Jersey Court.

13. On January 10 2025, Mt. Itkin's Jersey advocate, Advocate Jones, advised the Joint Liquidators' Jersey advocate, Advocate Barham, that Mr. Itkin had been the subject of an evacuation order relating to the California wildfires and

that his US legal team had been similarly impacted. An extension of 7 days was proposed for the provision of responses to the Requests for Information. Advocate Jones wrote again on January 23, 2025 indicating that matters had not changed and requested a further extension to January 31, 2025. The Joint Liquidators agreed to this on the basis that it would be a final extension and on condition that the interim payment on accounts of costs was also paid by that date. On January 31, 2025, Advocate Jones notified Advocate Barham that matters had not improved and that he was instructed to seek a stay of the Jersey Proceedings.

14. Mr. Itkin issued an application (the "**Stay Application**") to the Jersey Court to stay the Jersey Proceedings and vacate a hearing scheduled for February 25, 2025. In support of that application, Mr. Itkin filed an affidavit in the Jersey Court dated February 11, 2025, in which he swore under oath that, due to wildfires then affecting the Los Angeles area, he had "*not had the time or proper opportunity to speak with*" his Jersey Advocate; nor had he "*been able to take any advice from my US legal team who have been similarly impacted by the Wildfires*"; that "*the practice of law has not been possible and certainly not a priority*"; that "*even had I had the time to devote to this litigation I would have been and have been unable to engage meaningfully with my US legal team*"; and that since January 7, 2025 "*it has not been possible….for me to engage with* [his Jersey Advocate] *or spend the time focusing on the various issues which need to be progressed..*"

15. The Stay Application was heard by the Jersey Court on February 17, 2025, following which the Jersey Court issued an order (the "**February Order**") dismissing the Stay Application and fixing 12 noon on February 24, 2025 as the deadline by which Mr. Itkin was required to (1) pay Golden Sphinx the sum of £78,432, in respect of the costs order awarded in its favor; and (2) answer the Requests for Information. A true and correct copy of the February Order is attached as **Exhibit AW2**.

16. Mr. Itkin failed to comply with the February Order. On February 19,

2025, two days following the issuance of the February Order, Mr. Itkin filed the Involuntary Petition. The Involuntary Petition indicates that the Alleged Debtor's principal assets are located at the Residence.

17. On February 20, 2025, Mr. Itkin's counsel of record in the Involuntary Petition transmitted an email message to the Foreign Representatives' U.S. bankruptcy counsel, in which he stated that "*the filing of the Involuntary Petition operates as an automatic stay under 11 U.S.C. section 362(a) of all actions concerning all property claimed to be directly and indirectly owned by the partnership, including the* [Residence]."

18. On February 25, 2025 there was a hearing scheduled in the Jersey Proceedings, at which the Jersey Court was due to make various orders for directions in advance of a trial being fixed. However, as a result of Mr. Itkin filing the Involuntary Petition, the Jersey Court adjourned the Jersey Proceedings and, in its Judgment dated February 25, 2025, stated as follows:

> "8. By email dated 21 February 2025, Advocate Jones for Mr Itkin, notified the Court that Mr Itkin had filed a bankruptcy petition in relation to the "Itkin-Sabadash Partnership" and that that petition prevented both him and the Plaintiff from taking any further action in the proceedings before the Royal Court.....
>
> 12. Notwithstanding Mr Itkin's apparent inability to consult with his US lawyers, within 2 days of my orders, he managed to engage with US lawyers and to file a bankruptcy petition in relation to the alleged partnership. He did not however pay the monies on account of costs or file any responses to the Requests for Further Information.....
>
> 14. At the hearing, Counsel for the joint liquidators was at pains to stress that the joint liquidators did not want to breach, wilfully or at all, any orders of the US Court and that it was a matter for me as to how I progressed the litigation, if indeed, I did so. Counsel for Mr Itkin

submitted that having issued the petition, it was now for the joint liquidators to get guidance from the Royal Court, in the form of a separately constituted bankruptcy court, as to what they should do.

15. From the Court's perspective, this was not a very satisfactory position. Having chosen to issue a petition rather than to comply with my orders, and to have done so this close to the hearing in Jersey, it was incumbent on Mr Itkin to provide both the Court and the joint liquidators with proper evidence as to what he alleged the consequences of his actions to be. Bald assertions in correspondence were not sufficient.

16. However, out of an abundance of caution and with proper deference to the US Courts, it appears to me that I should not, at this stage, take any substantive steps in the Jersey proceedings until all parties have had an opportunity to take advice, to consider their respective positions and to bring such applications, if any, as they think fit.

17. Accordingly, I adjourn the proceedings for 6 weeks and direct that a date be fixed for the said adjourned hearing by close of business on 28 February 2025."

A true and correct copy of the Feb. 25, 2025 Judgment is attached as **Exhibit AW3**.

*(remainder of page intentionally left blank)*

1  The Jersey Proceedings were subsequently set down for a re-scheduled hearing on May 14, 2025. By consent, the Joint Liquidators and Mr. Itkin agreed to reschedule that hearing due to a motion to dismiss the Involuntary Petition which had been adjourned to June 3, 2025. A fresh hearing in the Jersey Proceedings has now been scheduled for July 23, 2025. The Joint Liquidators wish to progress the Jersey Proceedings. In the meantime, they support the Motion for Fees.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed June 30, 2025.

In St Helier, Jersey

*/s/ Andrew Wood*

_____
Andrew Wood

# In the Royal Court of Jersey

**Samedi Division**  2021/149

**In the year two thousand and twenty-four, the thirteenth day of December.**

Before Advocate David Michael Cadin, Master of the Royal Court.

BETWEEN          Golden Sphinx Limited
                 (In Creditors' Winding Up)          PLAINTIFF

AND              Garry Itkin                         DEFENDANT

Upon hearing the advocates for the Plaintiff and the Defendant and for the reasons set out in a judgment dated 13 December 2024 handed down electronically IT IS HEREBY ORDERED THAT:

1. Mr Itkin's application to strike out those parts of the Amended Order of Justice dealing with the Promissory Note Claim and/or the Default Judgment Claim shall be dismissed;

2. Mr Itkin's application for security in the sum of £505,000 in respect of the Default Judgment shall be dismissed;

3. Mr Itkin's application for security for costs be adjourned;

4. Pursuant to RCR 12/2(3), Mr Itkin shall pay GSL the sum of £78,432 on account of the costs ordered pursuant to the Act of Court dated 7 February 2024;

5. Mr Itkin shall answer Requests 2 (ii) to (viii); 5, 6, 10, 13, 14, 15, 19, 20, 22, 23, 24, 25, 26, 41, 43, 44, 45, 49, 50, 51, 52, 54, 57, 58, 59, 60, 61, 62, 63, 64, 69, 77, 79, 80, 87, and 92 of GSL's Requests for Further Information addressed by 4pm on 17 January 2025; and

6. the issue of further directions and the costs of the hearing shall be adjourned to Tuesday, 14 January 2025 at 10am with a TE of ½ a day; counsel to upload all material relied upon by cob 9 January 2025; and

7. liberty to apply.

Master of the Royal Court

AC (MO'C)
BJ (IJ)
CC (SH)

# *In the Royal Court of Jersey*

**Samedi Division**             **2021/149**

In the year two thousand and twenty-five, the seventeenth day of February.

Before Advocate David Michael Cadin, Master of the Royal Court.

| | | |
|---|---|---|
| BETWEEN | Golden Sphinx Limited (In Creditors' Winding Up) | PLAINTIFF |
| AND | Garry Itkin | DEFENDANT |

UPON hearing Counsel for the Parties;

AND UPON Mr Itkin having failed to comply with paragraph 5 of the Act of Court dated 13 December 2024 IT IS ORDERED THAT:

1. the Defendant's application for a stay be dismissed and the issue of costs of and incidental to the said application be adjourned to the hearing scheduled for 25 February 2025;

2. paragraphs 4 and 5 of the Act of Court dated 13 December 2024 are varied to read that:

   *"4. Pursuant to RCR 12/2(3), Mr Itkin shall pay GSL the sum of £78,432 on account of the costs ordered pursuant to the Act of Court dated 7 February 2024; <u>such sum to be received in cleared funds by the Plaintiff by 12 noon GMT on 24 February 2025</u>;*

   *5. Mr Itkin shall answer Requests 2 (ii) to (viii); 5, 6, 10, 13, 14, 15, 19, 20, 22, 23, 24, 25, 26, 41, 43, 44, 45, 49, 50, 51, 52, 54, 57, 58, 59, 60, 61, 62, 63, 64, 69, 77, 79, 80, 87, and 92 of GSL's Requests for Further Information by <u>12 noon GMT on 24 February 2025</u>;"*

3. the Plaintiff's application for unless orders shall be adjourned to 25 February 2025;

4. in relation to the freeze date for the said hearing on 25 February 2025:

   a. it shall be 5pm on 19 February 2025; and

   b. the parties have permission to upload additional material between 2pm and 5pm on 24 February 2025 evidencing the Defendant's compliance or non-compliance with the above varied orders.

5. liberty to apply.

*[signature]*
Master of the Royal Court

CC (JB) & AC (MO'C)
BJ (IJ)

[2025]JXXnnn

**ROYAL COURT**
**(Samedi Division)**

25th February 2025

Before  :  Advocate David Michael Cadin, Master of the Royal Court.

| | | |
|---|---|---|
| Between | Golden Sphinx Limited | Plaintiff |
| | (In Creditors'' Winding Up) | |
| And | Garry Itkin | Defendant |

Advocate J Barham/Advocate M O'Connell for the Plaintiff.

Advocate I Jones for the Defendant.

**JUDGMENT**

**Introduction**

1. This judgment is provided to explain my reasons for granting a short adjournment of the proceedings for 6 weeks on 25 February 2025.

**Background**

2. GSL issued proceedings against Mr Itkin in April 2022. In July 2022, proceedings were stayed following GSL having entered into a creditors' winding up. That stay was lifted on 6 February 2024 and permission was given to GSL to file an Amended Order of Justice and for consequential amended pleadings. Thereafter the proceedings were stayed for ADR.

3. The matter came back before me in December 2024, when for the reasons set out in a judgment, reported at [2024] JRC 279, I ordered that Mr Itkin pay GSL the sum of £78,432 on account of

costs, and that he answers a number of Requests for Further Information by 17 January 2024. A hearing to determine the costs of the applications and to give further directions was originally scheduled for 14 January 2025 but this was subsequently moved, by consent, to 25 February 2025.

4. By an email dated 10 January 2025, Advocate Jones, for Mr Itkin, notified Advocate Barham, for GSL, that Mr Itkin had been the subject of an evacuation order relating to the Californian wildfires, and that the principal lawyer in his US legal team had been similarly impacted. Advocate Jones proposed an extension of 7 days *"in the first instance"* to the deadline for the provision of the further information. Advocate Jones wrote again on 23 January 2025, indicating that matters had not changed, and he requested a further extension to 31 January 2025. Advocate Barham replied, agreeing to *"a final extension to 31 January 2025 on condition that the interim payment on account of costs (the Costs) is also paid by that date."* On 31 January 2025, Advocate Jones notified Advocate Barham that matters had not improved in California and he was therefore instructed to seek a stay.

5. Advocate Barham's response, dated 31 January 2025, is relevant in that he noted that:

> *"…we have had access to publicly available information which shows that your client's home is not in an evacuation zone but is in a zone marked as "safe", Accordingly, if your client would like the JLs to consider agreeing a further extension (a general stay clearly being inappropriate in the circumstances), please provide detailed evidence to support the assertion that your client and his legal team have been displaced. We would expect this to include copies of the evacuation orders/notices, detail their current circumstances, explain what systems and documents they require access to in order to respond to the RFIs and why they are unable to access them from their present locations and provide you with instructions, if that is the issue.*
>
> *Further, we note that you have not addressed the payment of outstanding Costs. Please could you confirm, by return, that they will now be paid or provide an explanation as to why they cannot be paid."*

6. Mr Itkin issued an application on 3 February 2025 to stay the proceedings and to vacate the hearing listed for 25 February 2025. The Plaintiff also issued an application on the same day for unless orders.

7. Those applications were heard by me on 17 February 2025, when for the reasons given in an *ex tempore* judgment, I refused Mr Itkin's application for a stay and varied my previous order of 13

December 2024, so as to require Mr Itkin to pay the monies on account of costs and to answer the various requests for further information, by noon on 24 February 2024.

8. By email dated 21 February 2025, Advocate Jones for Mr Itkin, notified the Court that Mr Itkin had filed a bankruptcy petition in relation to the "Itkin-Sabadash Partnership" and that that petition prevented both him and the Plaintiff from taking any further action in the proceedings before the Royal Court on the basis that:

> *"As the Joint Liquidators will doubtless be advised, the filing by Mr Itkin of the Involuntary Petition operates as an automatic stay under '11 U.S.C. section 362(a)'. The stay applies to all and any actions which concern any property claimed to be directly and indirectly owned by the Itkin-Sabadash partnership. As your clients will be aware, the Itkin-Sabadash partnership asserts claims ownership of the real property at 58 Beverley Park in Beverly Hills; '11 U.S.C. section 362(a)' as of yesterday, operates so as to prevent your clients taking any further action in GSL -v- Itkin - 2021/149."*

**The Hearing**

9. Having recently sat, and delivered an *ex tempore* judgment, matters relating to this case, and in particular, the evidence filed, were fresh in my mind.

10. Mr Itkin swore an affidavit on 11 February 2025 setting out the basis for his application for a stay. That affidavit recorded his address as 8501 Wilshire Blvd., Suite 330 Beverly Hills, California, USA and noted that:

> *"3…The reason I seek an adjournment and / or a stay is because of the recent devastating events in the Los Angeles area; specifically, the Wildfires. Since 7th January this year I have not been able to engage meaningfully with this litigation. I have not had the time or proper opportunity to speak with Advocate Jones, certainly not substantively, nor have I been able to take any advice from my US legal team who have been similarly impacted by the Wildfires…*
>
> *5… Many homes suffered extensive smoke damage to their homes - mine was one of these homes - in particular to their HVAC systems. My own system is yet to be repaired and / or replaced and until it is, living at home with my family and my nearly 87 year old mother is extremely difficult owing to the various respiratory problems that it causes. Naturally a lot of my time and focus has had to be on the well-being and safety of my family - not to mention myself…*

> *9. While I feel very fortunate to have been left with my own home largely intact - notwithstanding the extensive smoke damage to the HVAC system; and while I am fortunate to not have been directly impacted by the Wildfires in the way that others have, I have nevertheless been living in close proximity to the impacted areas, at this point on a long term basis - I and my legal team, continue to face a range of long-term challenges such as our mental and physical health, economic stability, and overall sense of security….*
>
> *16. Unfortunately, the reality of the situation, as I have tried to detail above, is that I remain unable to consult with my US legal team and as a consequence I am unable to give Advocate Jones full instructions. I will therefore not be able to comply with the requirements of the current orders of the Court; nor would I be able to meet or otherwise satisfy the proposed 'unless order'. As matters stand that is simply not possible.*"

11. Mr Wood, one of the Joint Liquidators of GSL, swore an affidavit on 12 February 2025. In that affidavit, he noted that:

   (i)   in all of the affidavits sworn by Mr Itkin in these proceedings, Mr Itkin had given his address as 8501 Wilshire Blvd., Suite 330 Beverly Hills, California;

   (ii)  Mr Itkin's US lawyer, Mr Atabek, made a solemn declaration under pain of perjury on 17 March 2022 in support of an application by Mr Itkin to set aside a default judgment in which he stated that:

   > *"Mr. Itkin further advised me that he obtained the CMC Statement from the offices of his accountant located at 8501 Wilshire Blvd., Suite 330, Beverly Hills, California (the "Wilshire Address"). Mr. Itkin stated to me that he used to work out of the Wilshire Address, but ceased doing so in the year 2015."*

   (iii) in other Californian proceedings, Mr Itkin appears to be associated with a property at 13355 Mulholland 20 Drive, Beverly Hills, CA 90210;

   (iv)  Mr Itkin is represented by ACTS Law and by Atabek & Co. with addresses at 16001 Ventura Boulevard and New Beach respectively;

   (v)   according to the publicly available information, neither of Mr Itkin's addresses, nor those of his lawyers, fall within the area affected by the wildfires.

12. Notwithstanding Mr Itkin's apparent inability to consult with his US lawyers, within 2 days of my orders, he managed to engage with US lawyers and to file a bankruptcy petition in relation to the alleged partnership. He did not however pay the monies on account of costs or file any responses to the Requests for Further Information.

13. Moreover, in issuing the bankruptcy petition, he recorded both his mailing address and that of the alleged partnership, as 8501 Wilshire Blvd., Suite 330 when according to his lawyer's 2022 declaration, this was neither his residential address nor his business address.

14. At the hearing, Counsel for the joint liquidators was at pains to stress that the joint liquidators did not want to breach, wilfully or at all, any orders of the US Court and that it was a matter for me as to how I progressed the litigation, if indeed, I did so. Counsel for Mr Itkin submitted that having issued the petition, it was now for the joint liquidators to get guidance from the Royal Court, in the form of a separately constituted bankruptcy court, as to what they should do.

15. From the Court's perspective, this was not a very satisfactory position. Having chosen to issue a petition rather than to comply with my orders, and to have done so this close to the hearing in Jersey, it was incumbent on Mr Itkin to provide both the Court and the joint liquidators with proper evidence as to what he alleged the consequences of his actions to be. Bald assertions in correspondence were not sufficient.

16. However, out of an abundance of caution and with proper deference to the US Courts, it appears to me that I should not, at this stage, take any substantive steps in the Jersey proceedings until all parties have had an opportunity to take advice, to consider their respective positions and to bring such applications, if any, as they think fit.

17. Accordingly, I adjourn the proceedings for 6 weeks and direct that a date be fixed for the said adjourned hearing by close of business on 28 February 2025.