MICHAEL ZORKIN (Bar No. CA 313308)
Email: mz@thezorkinfirm.com
THE ZORKIN FIRM
6320 Canoga Ave., 15th Floor
Woodland Hills, California 91367
Telephone:   323.493.8075

Attorneys for Putative Partner of Alleged Debtor
Alexander Sabadash

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| In re: | No. 2:25-bk-11235-NB |
|---|---|
| Itkin & Sabadash, | Hon. Neil W. Bason |
| Debtor, | **PUTATIVE PARTNER ALEXANDER SABADASH'S REPLY IN SUPPORT OF MOTION FOR FEES AND DAMAGES, UNDER 11 U.S.C. § 303(I)** |
| | Hearing Date: Sep. 9, 2025
Hearing Time: 2:00 p.m. |
| | Filed concurrently with:
1. Supplemental Declaration of Michael Zorkin. |

1
REPLY ISO MOTION FOR FEES

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

I. ALEXANDER SABADASH IS ENTITLED TO RECOVER HIS ATTORNEYS' FEES AND DAMAGES UNDER 11 U.S.C. § 303(i) BECAUSE THE PETITION WAS DISMISSED WITHOUT CONSENT OF THE PARTIES. ................................................ 1

    A. Mr. Sabadash has standing to seek fees under § 303(i). ............................................ 1

    B. The totality of the circumstances test favors imposition of fees. ............................... 4

    C. The petition was filed in bad faith. ............................................................................ 4

        1. The petition was filed for an improper purpose—stalling of the Jersey proceeding and forum-shopping. .................................................................... 5

        2. Mr. Itkin knew the debts were in bona fide dispute. ......................................... 6

        3. The Gofman fraud compels a finding of bad faith. ........................................... 8

II. MR. ITKIN, MR. MCCARTHY, AND MR. CACERES SHOULD BE JOINTLY AND SEVERALLY LIABLE FOR ANY AWARD. ......................................................... 9

III. THE COURT SHOULD AWARD ATTORNEYS' FEES AND PUNITIVE DAMAGES ....................................................................................................................... 10

    A. Fees for obtaining dismissal of the involuntary petition and for pursing fees. ........ 10

    B. Fees for work incurred on reply. .............................................................................. 11

    C. Punitive damages .................................................................................................... 11

IV. THE OPPOSITION ADVOCATES FOR A RULE ON REPLIES THAT DOES NOT EXIST. ................................................................................................................... 11

CONCLUSION ..................................................................................................................... 12

# INTRODUCTION

Alexander Sabadash seeks fees and damages because this involuntary bankruptcy petition was filed in bad faith. Nothing in the Opposition compels a different result.

The Opposition wastes pages rehashing the arguments made and rejected when the Court dismissed the petition. But all of its evidence, even if it had a shred of credibility, only shows that the existence of the partnership was subject to a bona fide dispute. The law is settled that creditors who file an involuntary petition knowing the claims are disputed act in bad faith.

And the Opposition does not dispute that the purpose of the petition was to move the dispute from Jersey to California. This improper attempt at forum shopping to stall ongoing proceedings is a hallmark of bad faith.

The Opposition's argument that Mr. Sabadash lacks standing to recover fees is meritless. Each court to have addressed this issue, including the Ninth Circuit, has held that a general partner may recover fees and damages for defeating an involuntary petition.

Mr. Sabadash asks the Court to hold Mr. Itkin, Mr. McCarthy, and Mr. Caceres jointly and severally liable for all attorneys' fees and damages incurred by Mr. Sabadash.

# ARGUMENT

## I. ALEXANDER SABADASH IS ENTITLED TO RECOVER HIS ATTORNEYS' FEES AND DAMAGES UNDER 11 U.S.C. § 303(i) BECAUSE THE PETITION WAS DISMISSED WITHOUT CONSENT OF THE PARTIES.

### A. Mr. Sabadash has standing to seek fees under § 303(i).

The Opposition finds it "odd" that Mr. Sabadash did not address his standing to seek fees in the Motion. (Opp. 5:14-15.) There is nothing odd about it—the Ninth Circuit has ruled that a putative partner who defeats an involuntary bankruptcy is entitled to fees. *Havens v. Leong P'ship*, 788 F. App'x 526, 527 (9th Cir. 2019). In

*Leong*, the Bankruptcy Court, the District Court, and the Ninth Circuit all agreed that a putative partner is entitled to fees. *See id.; Havens v. Leong P'ship*, 586 B.R. 760, 766 (N.D. Cal. 2018).

The explanation is simple: the petition alleged that Mr. Sabadash was a general partner of the debtor partnership. And under Rule 9001(5)(B), "if the debtor is a partnership, 'debtor' includes any or all of its general partners." *Leong P'ship*, 788 F. App'x at 527.

The Opposition ignores that there is no real debtor here. Even if the partnership was real, it would include only Mr. Itkin and Mr. Sabadash. As Judge Orrick explained,

> "there was a significant question regarding the very existence of the named debtor, the Leong Partnership. The Bankruptcy Court appropriately determined that Leong was the only person/entity who could respond to and contest the Involuntary Petition, and allowed him to answer the Petition and move for summary judgment. As recognized by the Bankruptcy Court, there must be a debtor in bankruptcy cases. Leong was not a third party watching as another debtor participated in the Involuntary Petition; throughout the case Leong was the only respondent as debtor.

*Leong P'ship*, 586 B.R. at 766.

So too here. Mr. Sabadash was accused of being a partner in a non-existent entity, he contested the petition, prevailed, and is now entitled to fees.

The Opposition relies chiefly on *Vibe Micro, Inc. v. SIG Cap., LLC (In re 8Speed8, Inc.)*, 921 F.3d 1193 (9th Cir. 2019) for its contention that Mr. Sabadash is not entitled to fees. But *Vibe Micro* did not involve a partnership debtor or whether a partner may recover fees under § 303(i). In *Vibe Micro*, the party seeking fees was a corporation that owned 50% of the debtor's stock. The court explained that the corporation had no real reason to defend the debtor and appeared voluntarily. *Id.*

*In re Miles*, 430 F.3d 1083, 1086 (9th Cir. 2005) does not help the Opposition either. There, the court held that the involuntary debtor's wife and daughter lacked standing to recover fees under § 303(i). *Id.*; *see Leong P'ship,* 586 B.R. at 766 ("*Miles* is significantly different from this case.")

The Opposition also cites *In re Mike Hammer Prods., Inc.*, 294 B.R. 752, 753 (B.A.P. 9th Cir. 2003), but the parties seeking fees were creditors of the debtor, not a putative general partner.

Cases that do not involve partnerships do not control the analysis. In *Leong*, the Ninth Circuit made clear that the reasoning of *Vibe Micro* and *In re Miles* does not apply to partners and partnerships. As the Opposition acknowledges, the *Leong* court was aware of *Vibe Micro* and even cited it but nevertheless ruled that a putative partner may recover fees. This shows that the Ninth Circuit disagrees with Mr. Itkin that *Vibe Micro* controls.

The Opposition provides no reason to depart from an on point decision by the District Court and the Ninth Circuit, and no reason to disregard authorities finding a putative partner can recover fees in favor of authorities not considering partnerships.

Indeed, each case that considered the issue of a putative partner's standing to recover fees has held that he could. *Leong P'ship*, 788 F. App'x at 527; *In re Fox Island Square P'ship*, 106 B.R. 962, 968 (Bankr. N.D. Ill. 1989); *Hancock as Tr. of Hillman Mather Adams Norberg Tr. v. Blair House Assocs. Ltd. P'ship*, No. 2:22-CV-00099-JDL, 2023 WL 2743641, at *13 (D. Me. Mar. 31, 2023). The Opposition cites no authority where a partner was denied fees after defeating an involuntary proceeding brought against the partnership.

Finally, the question of whether a putative partner may recover fees is the same as whether a putative partner has standing to contest the petition in the first place. Because Mr. Sabadash has standing to contest the petition (Rule 1011(a) "a

person who is alleged to be a general partner but denies the allegation, may contest the petition"), and Mr. Itkin never argued otherwise, he has standing to recover fees. A contrary result would be nonsensical.

In short, *Leong* has resolved this question against Mr. Itkin. This Court should not reject on point Ninth Circuit authority to allow Mr. Itkin to escape unscathed.

### B. The totality of the circumstances test favors imposition of fees.

11 U.S.C. § 303(i) creates a presumption that the debtor in a dismissed involuntary bankruptcy is entitled to recover reasonable attorneys' fees. *Higgins v. Vortex Fishing Sys., Inc.*, 379 F.3d 701, 707 (9th Cir. 2004). The only statutory prerequisite for fees is dismissal without consent of the creditors and debtors. 11 U.S.C. § 303(i). "Congress drafted the statute to make an award of costs and fees the norm." *In re Kidwell*, 158 B.R. 203, 217 (Bankr. E.D. Cal. 1993).

The Opposition does not rebut this presumption. It argues primarily that the petition was not motivated by an improper purpose (addressed below) but ignores that bad faith is not a pre-requisite for recovery of attorneys' fees. *In re S. Cal. Sunbelt Devs., Inc.*, 608 F.3d 456, 462–63 (9th Cir. 2010) ("Bad faith is not a prerequisite to awarding attorney's fees and costs under § 303(i)(1).") Thus, even if this Court finds, and it shouldn't, that the petition was not filed in bad faith, Mr. Sabadash is still entitled to recover his attorneys' fees under §303(i)(1).

### C. The petition was filed in bad faith.

"Any petitioner who files in bad faith may be required to pay any damages proximately caused by such filing, together with punitive damages." *In re Kidwell*, 158 B.R. at 217; 11 U.S.C. § 303(i)(2)(A), (B). "Punitive damages may be awarded under § 303(i)(2)(B) even absent an award of actual damages under § 303(i)(2)(A)." *In re S. Cal. Sunbelt Devs., Inc.*, 608 F.3d at 465. "[I]f it smells like bad faith, it's got to be bad faith." *In re Mi La Sul*, 380 B.R. 546, 554 (Bankr. C.D. Cal. 2007).

4

REPLY ISO MOTION FOR FEES

### 1. The petition was filed for an improper purpose—stalling of the Jersey proceeding and forum-shopping.

"A petitioner has no valid bankruptcy purpose—and acts in bad faith—when his goal is to stall or disrupt litigation in another court." *In re Meltzer*, 516 B.R. 504, 515–16 (Bankr. N.D. Ill. 2014).

The Opposition all but admits that the petition was filed as an attempt to forum shop. The Opposition concedes, consistent with Mr. McCarthy's statements at the hearing (April 22, 2025, Hr. Tr. 15:6-12; 16:12-19) that the motive behind the petition was to move the dispute over Golden Sphinx's estate, the Beverly Hills house, to California in direct contravention of this Court's order recognizing Golden Sphinx's Chapter 15 bankruptcy. (Opp. 23:11-16.) Both Mr. Itkin and Mr. McCarthy intended and expected that this Court and the Jersey Court would capitulate to Mr. Itkin and transfer the dispute here so that Mr. Itkin can avoid paying fines, complying with discovery in Jersey, and apparently have a better chance to prevail. (Itkin Decl. ¶ 6-7, McCarthy Decl. ¶ 8-9.)

The Opposition's argument that the petition was filed to benefit the creditors (Mr. Itkin's friends and lawyers) is absurd as Mr. Itkin filed the petition, not the creditors. (Opp. 23:8-10.) Mr. McCarthy admits that Mr. Itkin provided the list of creditors and the basis of claims and instructed Mr. McCarthy to file to involuntary petition. (McCarthy Decl. ¶4.)

The timing of the petition cements bad faith. Mr. Itkin filed this petition two days after the Jersy Court ordered payment of sanctions. (Wood Decl., ¶ 16.) At the same time, on February 11, 2024, Mr. Itkin represented to the Jersey Court that he was unable to confer with his U.S. legal team due to the Palisades wildfires. (Wood Decl., ¶ 14.) But Mr. Itkin's and Mr. McCarthy's declarations reveal that precisely during February 2024, they were working on filing this involuntary petition. (Itkin Decl. ¶ 3; McCarthy Decl. ¶ 4 "I spent two weeks between February 5 and 18, 2025,

reviewing the grounds for an involuntary filing against Itkin & Sabadash with Mr. Itkin.")  These misrepresentations leave no doubt that Mr. Itkin filed this petition to disrupt the Jersey proceeding.

The weight of authority, that the Opposition did not distinguish, compels a finding of bad faith.  *See In re Anmuth Holdings LLC*, 600 B.R. 168, 193 (Bankr. E.D.N.Y. 2019) ("Where, as in this case, a petition is filed as a litigation tactic, solely to avoid the consequences of an adverse state court decision, bad faith is manifest."); *In re Fox Island Square P'ship*, 106 B.R. at 968 (finding bad faith when the involuntary petition was filed after a motion to change venue in another court was denied); *In re Meltzer*, 516 B.R. at 516 ("The filing of an involuntary case shortly before a hearing in related litigation strongly suggests the case was filed only to stall the hearing.") (collecting cases); *In re Homesite Holdings LLC*, No. BAP SC-22-1112-BSG, 2023 WL 3918405, at *8 (B.A.P. 9th Cir. 2023) ("Filing a bankruptcy case to defeat or delay state court litigation, *even if that is not the only purpose for the filing,* can constitute bad faith.") (emphasis added); *In re WLB-RSK Venture*, 296 B.R. 509, 515 (Bankr. C.D. Cal. 2003), *aff'd,* 320 B.R. 221 (B.A.P. 9th Cir. 2004), *aff'd,* 223 F. App'x 555 (9th Cir. 2007) (finding bad faith for involuntary petition filed "in a forum shopping effort to avoid the latest, still pending litigation in the state court.")

**2.** <u>Mr. Itkin knew the debts were in bona fide dispute.</u>

The Opposition mainly rehashes arguments that this Court already rejected—that the there was no bona fide dispute about the existence of a partnership or the debts.  Mr. Itkin's attempt to re-litigate the dismissal here is unhelpful and inappropriate.  This Court has already ruled on this issue and Mr. Sabadash will not address the merits of the dispute again.

Nonetheless the Opposition cannot help but admit the existence of a bona fide dispute.  In repeating its losing arguments about the merits of the petition, the Opposition betrays confusion about the effect of its evidence on this dispute.  Mr.

Itkin's evidence, even if believed, does not eliminate the bona fide dispute, but, by countering Mr. Sabadash's evidence, highlights it.

All that Mr. Itkin's evidence does is *dispute* Mr. Sabadash's contention that no partnership existed. What the evidence does not do is show that Mr. Itkin and his counsel were unaware of the dispute about the partnership before they filed the petition (the legal grounds for bad faith). When two parties dispute an issue to the point that the issue cannot be resolved on the pleadings or on summary judgment, but has to be taken to a jury, by definition, a bona fide dispute exists. *In re Meltzer*, 516 B.R. at 517 (finding a claim that is in litigation in state court is in bona fide dispute.)

And Mr. McCarthy admitted that he was familiar with the state court action between Mr. Itkin and Mr. Sabadash. (McCarthy Decl. ¶ 5.) Whether Mr. Itkin did not share the details of that case with Mr. McCarthy or Mr. McCarthy did not ask the right questions, the results is the same—this petition was filed with knowledge of a bona fide dispute. Mr. Itkin is thus subject to the rule that "[c]reditors act in bad faith when they file an involuntary petition knowing their claims are in bona fide dispute." *In re Anmuth Holdings LLC*, 600 B.R. at 197–98.

The Opposition does not distinguish the weight of authority finding bad faith under similar facts. *See In re Fox Island Square P'ship*, 106 B.R. at 968–69 ("At the time the Petitioners filed the Involuntary Petition, they knew the Oak Park debt was highly disputed, and they knew *or reasonably should have known* that the Oak Park debt was not a Partnership debt.") (emphasis added); *In re Johnston Hawks Ltd.*, 72 B.R. 361, 367 (Bankr. D. Haw. 1987), *aff'd,* 885 F.2d 875 (9th Cir. 1989) (finding bad faith when the claim was subject to a bona fide dispute); *In re Meltzer*, 516 B.R. at 517 ("Creditors act in bad faith when they file an involuntary petition knowing their claims are in bona fide dispute."); *In re Anmuth Holdings LLC*, 600 B.R. at 197–98 ("It is obvious that the Petitioning Creditors were aware, at all

relevant times, that their claims were disputed. *The claims had been the subject of over four years of litigation between the parties in state court.*") (emphasis added); *In re Oakley Custom Homes, Inc.*, 168 B.R. 232, 239 (Bankr. D. Colo. 1994) (bad faith found where "Involuntary Petition is the product of a business war and personal vendetta carried on primarily by [creditor] against this Alleged Debtor and its principal.")

### 3. The Gofman fraud compels a finding of bad faith.

The Opposition relies largely on Gofman's judgments to justify this petition. But the Opposition's defense of the Gofman fraud only deepens the showing of bad faith. Mr. Sabadash will not rehash every argument from the motion. The point has been made, and Mr. Itkin's excuses do not withstand scrutiny. But the Opposition's attempt to explain why the Russian court was told the Gofman judgment was satisfied, while two U.S. courts were told the opposite, demands a response.

As explained in the motion, and not disputed by the Opposition, both Mr. Itkin and Mr. Gofman told the Russian Cassation Court that the judgment had been satisfied. (Zorkin Decl., Ex. 19.) The Cassation Court relied on their statements, noting in its ruling:

> "Furthermore, *as stated by the claimant [Gofman] and the respondent's representative [Itkin]* at the cassation court hearing, the court decision in this case, which has entered into legal force, has been fully satisfied."

As the Cassation Court made clear *both* Mr. Itkin and Ms. Gofman represented to the court that the judgment has been paid. That finding makes Mr. Itkin's sworn testimony, that he merely "considered" the judgment satisfied while Gofman did not, untrue. (Opp. 31-32; Itkin Decl. ¶ 6.) They acted in concert to ensure that Mr. Sabadash's appeal would fail.

The timeline of the payments compared to court actions exposes the fraud. Gofman's Russian judgment was issued on October 18, 2018. She filed her California complaint on April 19, 2019 and, on November 7, 2019, obtained a

8
REPLY ISO MOTION FOR FEES

$13,130.83 judgment. By their own account, she was owed that amount on November 7, 2019. *But the Cassation decision was issued on Nov. 13, 2019 – six days after the California judgment – based partly on Gofman's representation that the judgment has been satisfied.* In the same week, Gofman, supported by Itkin, obtained a U.S. judgment, while telling the Russian court that the same judgment has been paid.

And Gofman's apparent application of Mr. Itkin's bribes to her legal fees is belied by her California motion for attorneys' fees where she demanded the full amount (which the court denied because there were no legal grounds to recover attorneys' fees). Mr. Itkin did not oppose. (Supp. Zorkin Decl. Ex. 28.)

Finally, Gofman submitted a creditor claim for $63,678 without mentioning the $21,000 bribe. (Clam 6-1.)

The pattern is clear: inconsistent statements, concealed payments, and coordinated misrepresentations to courts in two countries. Section 303(i) and punitive damages exist to punish creditors who turn the bankruptcy process into a personal weapon.[1]

## II. MR. ITKIN, MR. MCCARTHY, AND MR. CACERES SHOULD BE JOINTLY AND SEVERALLY LIABLE FOR ANY AWARD.

Mr. McCarthy and Mr. Caceres should be jointly and severally liable with Mr. Itkin for their role in the bad-faith conduct described above.

This Court has broad discretion under § 303(i) and its own inherent powers to apportion fees between offending parties. On similar facts, *In re Fox Island Square P'ship*, 106 B.R. 962, 971 (Bankr. N.D. Ill. 1989) held attorneys jointly and severally liable "*for attorney fees and costs assessed pursuant to Section 303(i)(1) of the*

---

[1] The Opposition's attacks on the credibility of Mr. and Mrs. Sabadash are irrelevant and not well taken. Mrs. Sabadash is not even a party to this case. That the Opposition spent three pages on character attacks rather than address the relevant legal concepts highlights the weakness of its arguments.

*Bankruptcy Code*, Bankruptcy Rule 9011 and Section 1927 of the Judiciary Act." (emphasis added).

While the Opposition is correct that *In re Cadena* did not hold counsel jointly and severally liable for fees under § 303(i), it did hold counsel jointly and severally liable for fees under Rule 9011. *In re Cadena*, 634 B.R. 1038, 1056–57 (Bankr. C.D. Cal. 2022). Mr. Sabadash has asked this Court to do the same.

### III. THE COURT SHOULD AWARD ATTORNEYS' FEES AND PUNITIVE DAMAGES

#### A. Fees for obtaining dismissal of the involuntary petition and for pursing fees.

The Opposition makes no real argument for reduction of the claimed fees except to complain that the fees were not apportioned between the motion for fees and motion for sanctions. There is no authority requiring such apportionment and the Opposition cites none. Mr. Sabadash is not seeking duplicative fees. The total amount requested was for all work performed in obtaining dismissal and pursuing fees. The Court has discretion to apportion the award as fees and damages under section 303(i) or as sanctions under Rule 9011.

The Opposition is also wrong in its argument that fees expended on litigating creditor claim objections are not recoverable. The Ninth Circuit held that section 303(i) is a fee shifting provision that encompasses all phases of proceeding. *In re S. Cal. Sunbelt Devs., Inc.*, 608 F.3d at 462 ("§ 303(i) shifts costs for the litigation as a whole rather than a discrete portion. When a petition is dismissed, a court may grant a debtor 'a reasonable attorney's fee'—a single fee award presumably covering the entire action."); *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161 (1990) ("[A] fee award presumptively encompasses all aspects of the civil action.")

These principles apply with full force here. Mr. Itkin and the creditors ran up the costs by insisting on separate objections to each proof of claim, while Mr. Sabadash asked the Court to rule on his motion to dismiss before litigating specific

claims. Creditors, having caused Mr. Sabadash to incur attorneys' fees on litigating the claim objections, cannot now complain that § 303(i) has shifted those fees to them.

Because the Opposition makes no argument that either the hourly rates or the number of hours works is unreasonable or unnecessary, the Court should award the full amount sought.

### B. Fees for work incurred on reply.

Mr. Sabadash incurred $17,710 in fees for work on this matter since the motion was filed. (Supp. Zorkin Decl., Ex. 29.) Mr. Sabadash estimates that he will incur an additional 5 hours for preparation for hearing and hearing attendance. This is calculated as $550 hourly for 32.2 hours of work.

### C. Punitive damages

Because of the egregious conduct by Mr. Itkin and his counsel, an award of punitive damages is appropriate.

"Under § 303(i)(2), a court may award actual *or* punitive damages, without limitation; the sole precondition is a showing of bad faith." *In re S. Cal. Sunbelt Devs., Inc.*, 608 F.3d at 465 (emphasis original). The Ninth Circuit has held that punitive damages may be awarded even in absence of actual damages. *Id.* That said, the "cost of defense" incurred is a "tangible harm" and the Court may base its punitive damages award on the cost of defense. *Id.* Mr. Sabadash asks the court to treble the fees award to calculate punitive damages.

### IV. THE OPPOSITION ADVOCATES FOR A RULE ON REPLIES THAT DOES NOT EXIST.

The Opposition asks the Court to create a new rule that prevents Mr. Sabadash from responding to the Opposition. The rule that new arguments are not allowed in reply refers to arguments that were not made in either the moving papers or the opposition. *See, e.g., In re Cruz*, 516 B.R. 594, 600 (B.A.P. 9th Cir. 2014)

("Pursuant to Local Bankruptcy Rule 9013–1(g)(1), the court refused to consider new arguments raised by Cruz that were not responsive to SS Trust's opposition.")

The purpose of the reply is to respond to arguments made in opposition. LBR 9013-1(g)(1) expressly allows "declarations or other evidence" in reply so long as it "respond[s] directly to the opposition documents." This is exactly what Mr. Sabadash has done in the past and will continue to do. Mr. Itkin cannot prevent Mr. Sabadash from responding to his arguments made in Opposition.

What is more, all arguments made in reply to the previous motion and in this reply are based on evidence in Mr. Itkin's possession. Mr. Itkin's counsel cannot complain that he is "blindsided" with evidence his client has had all along.[2]

## CONCLUSION

This involuntary petition was an egregious attempt at manipulating the court for an improper purpose. Fees, damages, and sanctions are warranted.

Dated:     August 12, 2025            THE ZORKIN FIRM

By: /s/ Michael Zorkin
Michael Zorkin
Attorneys for Putative Partner
Alexander Sabadash

---

[2] The Opposition's evidentiary objections are not serious. The declarations were made on personal knowledge, deposition and trial transcripts are not hearsay, and all exhibits have been authenticated either by Mr. Zorkin or by Mr. Itkin himself. Mr. Sabadash requests an opportunity to address the evidence at the hearing if the Court is inclined to sustain any objection.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

6320 Canoga Ave., 15th Floor, Woodland Hills, CA 91367

A true and correct copy of the foregoing document entitled (*specify*):Reply in support of motion for fees; Reply in support of motion for sanctions; Supplemental declaration of Michael Zorkin
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _8/12/2025_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Joseph E Caceres jec@locs.com, generalbox@locs.com
Daniel J McCarthy dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;dflowers@hfbllp.com
Kurt Ramlo Adam RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email
Charles Shamash cs@locs.com, generalbox@locs.com
Oleg Stolyar astolyar@loeb.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.g

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/12/2025 | Michael Zorkin | /s/ Michael Zorkin |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    F 9013-3.1.PROOF.SERVICE