**HILL, FARRER & BURRILL LLP**
Daniel J. McCarthy (SBN 101081)
dmccarthy@hillfarrer.com
City National Plaza
515 S. Flower Street, 7th Floor
Los Angeles, CA 90071
Telephone: (213) 621-0802
Fax: (213) 624-4840

Attorneys for Petitioning General Partner
Garry Y. Itkin

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>ITKIN & SABADASH,<br><br>           Involuntary Debtor. | Case No. 2:25-bk-11235-NB<br><br>Chapter 7<br><br>**OMNIBUS REPLY IN SUPPORT OF MOTIONS FOR COURT-ORDERED MEDIATION**<br><br>**Date:**      **December 16, 2025**<br>**Time:**      **2:00 p.m.**<br>**Courtroom: 1545 and via ZoomGov** |

-1-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

### A.    The Pending Motions

On November 19, 2025, Garry Itkin filed motions (the "**Motions**") by which he requested that the Court order a mediation between the parties in three cases: (1) the Chapter 7 case of Itkin & Sabadash, case no. 2:25-bk-11235-NB (the "**Partnership case**"); (2) the Chapter 15 case of Alexander Sabadash, aka, Aleksander Vitalievich Sabadash, case no. 2:23-bk-15574-NB (the "**Sabadash case**"); and (3) the Chapter 15 case of Golden Sphinx Limited, case no. 2:22-bk-14320-NB (the "**GSL case**").

Oppositions have been filed in all three cases.  This Omnibus Reply is being filed in all three cases.

The Oppositions do not dispute important matters.  First, at the September 9, 2025 hearing in the Partnership case, the Court ordered the parties to participate in a mediation, and it ruled that it would leave it up to the mediator to decide whether it made sense for other parties to participate in a mediation that included related disputes.

Second, the parties to the Partnership case engaged in an unsuccessful mediation with Bankruptcy Judge Meredith Jury (Ret.).

Third, without disclosing what occurred at that mediation session, Judge Jury stated that she was amenable to conducting a further "global mediation."

Fourth, Mr. Sabadash does not question that this Court clearly has the authority to order the parties in the three cases to a global mediation, even over their objection.  The Foreign Representatives in the GSL case, however, question that authority, which is addressed below.

### B.    The Oppositions

Oppositions were filed in the Partnership, GSL and Sabadash cases by putative general partner Alexander Sabadash ("**Mr. Sabadash**") and/or by Andrew Wood and Alexander Adam, in their capacities as the joint liquidators and authorized foreign representatives of GSL (the

"**Foreign Representatives**").[1]  Alexander Gavva, who is the recognized foreign representative of Mr. Sabadash in his Chapter 15 case, did not file an opposition.

The Oppositions fail to recognize the importance of the policy that encourages settlements.  They offer no good reason for the Court to deny the Motions.  They do not suggest any prejudice to the Court ordering a "global mediation" in an effort to resolve multiple disputes affecting Mr. Itkin, Mr. Sabadash and GSL dating back many years.  For these reasons, as more fully set forth below, the Motions should be granted.

## II.    THE MOTIONS SHOULD BE GRANTED

### A.    The Policy Encouraging Settlement Would Be Best Served By Granting the Motions

"It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation." *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979).  Mediations offer a mechanism to accomplish settlement.  Thus, in *In re Yellowstone Mountain Club, LLC,* 410 B.R. 658, 663 (Bankr. D. Mont. 2009), the Court stated as follows in ordering mediation: "Perhaps with a little dose of reality from a mediator who is knowledgeable about the bankruptcy process and with a little open-mindedness on the part of the parties, the parties might be able to resolve most, if not all, of their pending disputes."  Judge Meredith Jury (Ret.) is such a mediator.

### B.    Mr. Sabadash's Pessimism Is Not a Reason to Deny the Motions

Mr. Sabadash argues that "[t]he motion should be denied because mediation is not likely to result in a settlement."  (Partnership docket no. 120, at 2:8-9.)  He notes there have been prior settlement efforts, but none of them were "global mediations."  Mr. Sabadash presumably has communicated his pessimism to his counsel from the prison in Russia where he is incarcerated.  Such pessimism is unfortunate, but it is not reason to adopt a fatalistic approach in denying the Motions in a manner contrary to the policy favoring settlements.

---

[1] The Foreign Representatives' Oppositions in the Partnership and Sabadash cases observe that the Foreign Representatives are not parties to those cases, as acknowledged in the Motions.  That is why a separate Motion was filed in the GSL case to which they are parties.

**C.    The Motions Are Not Meant to Accomplish Prejudicial Delay**

**1.    Mr. Itkin Does Not Seek to Unduly Delay the Partnership Case In Any Way That Would Prejudice Mr. Sabadash**

The Oppositions suggest that the Motions are for the purpose of accomplishing delay.  It is odd that Mr. Sabadash and the Foreign Representatives are suddenly concerned about delay given that (1) the State Court action between Mr. Itkin, Mr. Sabadash, GSL and other parties was filed by GSL, Mr. Sabadash and other plaintiffs in January 2017; (2) trial in the State Court action had commenced in March 2020 when a mistrial was declared due to Covid-19 and it was rescheduled for November 14, 2022; (3) all pretrial deadlines had passed in the District Court action between Mr. Itkin and GSL; (4) the filing of GSL's Chapter 15 case on August 9, 2022, and the subsequent entry of a recognition order on September 9, 2022, effectuated an automatic stay of the State Court and District Court actions; and (5) the Foreign Representatives opposed Mr. Itkin's motions for relief from the automatic stay by which he asked that the State Court and District Court actions be permitted to proceed and which would have proceeded and been finished but for the automatic stay.

Moreover, the Oppositions fail to explain what would be *unduly* delayed by a Court-ordered global mediation.  In the Partnership case, Mr. Itkin's motion for reconsideration and Mr. Sabadash's motions for damages and sanctions against Mr. Itkin, his counsel and the creditors' counsel were scheduled for hearing on September 9, 2025, and were continued to December 16, 2025, to provide the parties an opportunity to mediate, which they did just over a month ago on November 3, 2025.  Mr. Itkin obviously believes that those matters should be postponed again for a short time while a global mediation is pursued—something that was not possible on November 3, 2025, due to the absence of the other parties to the GSL and Sabadash cases, i.e., the Foreign Representatives and Mr. Gavva, but which the Court suggested on September 9, 2025, was an option to be pursued.  Mr. Sabadash fails to explain any prejudice to a further postponement of the pending matters.

/ /

/ /

- 4 -

**2.      No Undue Delay Would Occur in the Jersey Proceeding if a**

**Global Mediation is Ordered**

The Foreign Representatives also fail to explain what would be unduly delayed by a Court-ordered global mediation.  GSL's Jersey proceeding is still in its early stages.  The Foreign Representatives have explained to the Court in prior filings as well as in their current Oppositions that (1) Mr. Itkin had failed to provide satisfactory responses to orders for further information and had not paid fees awarded against him, so he was subject to his answer being stricken and his default being entered, and (2) a hearing on pretrial scheduling, which they called a "directions hearing," had been postponed.

The Foreign Representatives' Opposition in the GSL case states: "By the Motion, Mr. Itkin seeks to further delay and distract from the Jersey Liquidation and the Jersey Proceedings by forcing the Foreign Representatives to a 'global mediation,' in the forum of his choosing."  (GSL docket no. 185, at 2:13-16.)  They offer no evidence of that.  Mr. Itkin has not sought to delay the slow-moving Jersey proceeding by the requested global mediation.

The Foreign Representatives' Opposition in the GSL case argues to this Court that Mr. Itkin has taken actions in the Jersey proceeding to delay that proceeding.  Mr. Itkin disagrees with that accusation, but that is an issue for the Royal Court in Jersey to resolve.  While this Court has shown great deference to the Royal Court, the Foreign Representatives are parties to the GSL case and may be ordered to mediation.  Deference to the Royal Court does not preclude an order that they engage in mediation, which they presumably would do in good faith.  Mr. Itkin recognizes that any settlement agreed to by the Foreign Representatives would be subject to the approval of the Royal Court.  He has not asked this Court to deprive the Royal Court of its jurisdiction and authority or to ignore the principle of comity.  The Foreign Representatives' Opposition appears to misunderstand that.

Notably, the Foreign Representatives' Opposition fails to describe the current procedural status of the Jersey proceeding, which then could *possibly* by delayed by a Court-ordered global mediation, if some party to the Jersey proceeding were to request such delay.  In prior status reports, the parties have explained that a "directions hearing" had been scheduled but continued

several times.  The Foreign Representatives' status report that was filed on December 16, 2024, informed the Court of the reason for that hearing: "The Jersey Court has now fixed a directions hearing for January 14, 2025 at which stage it will fix directions for disclosure, witness statements and expert reports, with trial dates to be fixed." (GSL docket no. 150, at 4:3-5.)  In their joint report that was filed in the GSL case on May 27, 2025, the parties explained that the directions hearing had been postponed to July 23, 2025.  (GSL docket no. 171.)

In multiple prior filings, the Foreign Representatives have explained that Mr. Itkin did not comply with certain orders of the Jersey Court.  On December 1, 2025, the Jersey Court entered a judgment on the issue of noncompliance.  (Ex. A hereto.)  It held that Mr. Itkin had cured his prior failure to provide responses.  (*Id.*, ¶ 3(i).)  It further held that it would *not* strike his answer, thereby imposing default sanctions, due to his failure to pay GSL an awarded sum of £78,432. (*Id.*, ¶ 28(i).)  That means that the "directions hearing" needs to be rescheduled to "fix directions for disclosure, witness statements and expert reports, with trial dates to be fixed."  However, before that occurs, the Royal Court has ordered the parties to exchange documents and draft "discovery protocols" by January 9, 2026, and to attempt to agree on the scope of "discovery protocols" by January 30, 2026,   (*Id.*, ¶ 29(i) and (ii).)  A hearing is scheduled for February 11, 2026.  (*Id.*, ¶ 29(iv).)

While asserting before this Court that they seek to advance the GSL proceeding against Mr. Itkin to trial, on December 8, 2025, the Foreign Representatives filed a notice of appeal from the December 1, 2025 judgment of the Royal Court.  (Ex. B hereto.)  If anything, that will delay that proceeding rather than expediting it.

Although the Jersey liquidation proceeding has been pending for more than three years since July 2022, the Jersey proceeding as between the Mr. Itkin and the Foreign Representatives is still at an early stage in which the Foreign Representatives seek to litigate claims that could have been determined in the State Court action.  Thus, the Foreign Representatives' complaint that a "global mediation" *might* be used to delay the Jersey proceedings between Mr. Itkin and them is especially hollow.  In any event, the Royal Court clearly can address the issue of whether a global mediation ordered by this Court should affect "discovery protocols" and trial dates in the

1  Jersey Court.  In arguing that this Court should not order the Foreign Representatives to

2  participate in a mediation, they imply that the Jersey Court would be incapable of preventing

3  delay that might be requested, which is clearly not the case.

4          **D.**      **The Court Should Not Set Settlement Boundaries in the Mediation**

5        Mr. Sabadash's Opposition to the Motion in the Partnerships' case argues that, if a further

6  mediation is ordered, this Court should set two conditions: (1) Mr. Itkin must make a confidential

7  offer that must include how much he is offering to pay, and (2) Mr. Itkin must agree to pay Mr.

8  Sabadash's attorneys' fees if a settlement is not reached.  (Partnership docket no. 120, at 2:11-18.)

9  Mr. Sabadash cites no authority for limiting the mediation in such a manner.  Such a request

10  obviously is contrary to the policy encouraging settlement.

11          **E.**      **This Court Has Authority to Order the Foreign Representatives**

12                    **to Participate in a Mediation**

13        The Foreign Representatives do not dispute this Court's inherent authority to order them

14  to participate in a global mediation.  In *Bandary v. Delta Air Lines, Inc.*, 623 F. Supp. 3d 1071,

15  1078 (C.D. Cal. 2022), the Court ordered the parties to participate in a second mediation,

16  demonstrating the discretionary authority of courts to mandate such processes.

17        Instead, the Foreign Representatives dispute that the language of the Local Bankruptcy

18  Rules confers that authority because "[t]he Local Bankruptcy Rules do not state that a bankruptcy

19  judge may assign matters that are the subject of a foreign main proceeding to mediation."  (GSL

20  docket no. 185, at 6:9-11.)  They argue "there is nothing to mediate in this Chapter 15 case."  (*Id.*,

21  at 6:24.)

22        As an initial matter, the Local Bankruptcy Rules do not state that they in any way limit

23  this Court's inherent authority, nor could they.

24        Moreover, whether Mr. Itkin should be granted relief from the automatic stay to proceed

25  with the State Court and District Court actions at this point and/or should be permitted to obtain a

26  Rule 2004 order to obtain documents from East West Bank – both of which have been previously

27  denied by this Court – clearly are matters that are the subject of this Court's jurisdiction.  The

28  Foreign Representatives assert control over GSL's assets, which include its claims in the State

Court and District Court actions that were the subject of Mr. Itkin's relief from stay motions.  As

acknowledged in the Foreign Representatives' Opposition, paragraph 2 of Appendix III to the

Local Bankruptcy Rules states that any "other dispute in a bankruptcy case are eligible for referral

to the Mediation Program."  Surely, the Foreign Representatives do not contend that they have no

dispute with Mr. Itkin in the GSL case.

## II.    CONCLUSION

Based upon the foregoing, Mr. Itkin respectfully requests that the Court order the parties

and their counsel of record to a mediation in the Partnership, GSL and Mr. Sabadash's bankruptcy

cases before Judge Jury or such other mediator as the Court may appoint.

DATED:  December 9, 2025                    HILL, FARRER & BURRILL LLP


By:    _____/s/ Daniel J. McCarthy_____
       Daniel J. McCarthy
       Attorneys for Petitioning General Partner
       GARRY Y. ITKIN

- 8 -

**EXHIBIT A**

**[2025]JXXnnn**

**ROYAL COURT**
**(Samedi Division)**

**1st December 2025**

Before   :   Advocate David Michael Cadin, Master of the Royal
Court.

Between                          Golden Sphinx Limited                          Plaintiff

(In Creditors'' Winding Up)

And                              Garry Itkin                              Defendant

Advocate J Barham for the Plaintiff.

The Defendant in person.

**JUDGMENT**

**Introduction**

1.     This is my judgment in relation to applications by:

(i)     the Defendant, Mr Itkin, to set off the amount due by way of interim payment on account of
costs and the subject of an unless order, against his existing judgment against the Plaintiff
("GSL"); and

(ii)    GSL for judgment against Mr Itkin on the basis of his failure to comply with the unless order.

**Background**

2.     The background to these proceedings is set out fully in my judgments of 13 December 2024,
reported at [2024] JRC 279, 25 February 2025 reported at [2025] JRC 055 and 2 October 2025,
reported at [2025] JRC 244. I do not propose to recite that background in this decision.

16492165.1

1

3.      Since giving judgment on 2 October 2025, Mr Itkin has:

(i)      filed a Re-Amended Answer to reflect the amendments effected by that judgment;

(ii)     provided further information and documents which GSL acknowledges, in its Skeleton
         Argument, amount to *"compliance in substance"* with the orders made for further information;

(iii)    failed to pay the sum of £78,432 required under the unless order;

(iv)     had further orders made against him for taxed costs in the sum of £15,284.45 and an interim
         payment on account of costs in the sum of £79,960.64;

(v)      filed a further affidavit (sworn on 19 November 2025) and issued an application to strike out
         the proceedings (due to be heard in February 2026).

4.      Mr Itkin remains unrepresented and complains that he is at a material disadvantage as a result of
        his previous advocate's refusal to allow a new advocate to be instructed.  Given that Mr Itkin
        managed, without representation, to answer satisfactorily the outstanding Requests for Further
        Information, and to issue a further application, any disadvantage may be more perceived than real.

**The Parties' Submissions**

5.      GSL submits that Mr Itkin has failed to comply with the terms of the unless order in relation to costs
        which, by Act of Court dated 23 July 2025, required the Defendant to pay by 31 July 2025 the sum
        of £78,432 on account of the costs ordered on 7 February 2024, and in default, *"the Defendant's
        Amended Answer shall be struck out and he shall be debarred from defending the proceedings"*.
        The date for compliance was subsequently extended by an Act of Court dated 2 October 2025 to
        31 October 2025.  As at the date of the hearing on 24 November 2025, those monies had not been
        paid.  GSL notes that:

(i)      as set out in an affidavit from a Mr Keenan dated 14 November 2025, Mr Itkin has, or has
         had, company appointments and/or interests in property which he has not disclosed to the
         Court;

(ii)  despite Mr Itkin arguing that there must be a trial on the merits, he is still causing procedural issues and/or unnecessary costs to accrue through his lack of full and frank disclosure as to his means and/or the additional summons he has now issued; and

(iii)  Mr Itkin has continued to take steps in related US proceedings and, until recently, to instruct his Jersey Advocate; however, he had never provided any cogent explanation as to why he has been unable to make the payment on account of costs.

6.    Mr Itkin rejects the material set out in Mr Kennan's affidavit and submits that he is impecunious and unrepresented.  He says that it is therefore inappropriate to trigger the sanction in the unless order, particularly since he has an outstanding judgment against GSL.

**Set Off**

7.    In this case:

(i)  GSL has the benefit of an order for an interim payment on account of costs against Mr Itkin in the sum of £78,432;

(ii)  Mr Itkin has a judgment from the Royal Court in 2016 for the sum of £505,000, which was upheld by the Royal Court in 2021 and remains outstanding in the sum of approximately £867,162 including interest.

(iii)  whilst that judgment is impugned in these proceedings, Commissioner Bailhache described the merits of that challenge as *"both sides have an arguable case, and a decision as to which was correct could only be reached following evidence being given at trial"*;

(iv)  if the amount of the interim payment for costs were set off against the order obtained by Mr Itkin against GSL, the unless order will have been satisfied and there will be no need to consider enforcement.

8.    Mr Itkin submits that it is entirely illogical and inappropriate not to set one judgment off against the other; both are judgments of the Royal Court requiring payment of sums of money and there is a right of *"legal or equitable set-off"* in respect of these mutual debts.  Moreover, he says that it would be wholly wrong for the Royal Court to prefer one judgment to another by enforcing the unless order and ignoring the other.  Conversely, GSL submits that there is no jurisdiction to set off one judgment

against another; alternatively, to the extent that a discretion exists, it should not be exercised in favour of Mr Itkin.

9.   The Royal Court Rules (Rules 8/1 and 8/2) make provision for the Court to take set-offs into account when determining interim payments under RCR Part 8.  However, for the purposes of that Part of the Royal Court Rules, an interim payment excludes an interim payment on account of costs (RCR 8/1(1)).  There is no express provision under RCR 12/2(3) dealing with interim payments on account of costs and set-off, but in T v S [2025] JRC 162, I held that:

> *"22.    As to whether cost orders in favour of the paying party should be taken into account when deciding to make an interim payment, in my judgment, this is a matter for the discretion of the Court making the order, albeit that the usual approach is to take such orders into account…"*

10.  The position in Jersey can be contrasted to that in England where section 72 of the County Courts Act 1984 expressly allows judgments to be set off against one another in accordance with the provisions of CPR r.40.13.  In Fearns v Anglo Dutch Paint and Chemical Co. Ltd [2010] EWHC 2366 (CH), the High Court held that:

> *"37. CPR r.40.13 applies where the court gives judgment for specified amounts both for the claimant on his claim and against the claimant on a counterclaim: in such circumstances the court may order the party whose judgment is for the lesser amount to pay the balance.  More generally, it has long been the practice of the courts as part of their inherent jurisdiction over their own proceedings to allow cross-judgments given in the same action, or in different actions, to be set off against each other: see Edwards v Hope (1885) 14 QBD 922; Reid v Cupper [1915] 2 KB 147; In re a Debtor, No 21 of 1950 (No 2) [1951] 1 Ch 612. As these cases show, this jurisdiction encompasses judgments for damages and also orders for costs. Unlike legal or equitable set-off, such a 'set-off involves treating the judgment in favour of one party as satisfying pro tanto the judgment in favour of the other. There is accordingly an extinction of liabilities.*

> *38. It is clear from the authorities mentioned, and from the word "may" in CPR r.40.13(2), that the power of the court to order such a set-off is discretionary. In Edwards v Hope, supra, Brett MR (at 926) and Bowen LJ (at 927) described the power as "an equitable jurisdiction". By this they plainly did not mean a jurisdiction exercised by courts of equity (as they were referring to the*

> *practice of the common law courts) but a jurisdiction to order a set-off where the*
> *court considers it just and equitable to do so."*

11.   Whilst there may not be a statutory provision allowing set off, it would appear from <u>Fearns</u> that the
English Courts asserted power so to do under their inherent jurisdiction and in my judgment, the
position in Jersey is no different.  Moreover, as Master Thompson noted in <u>Bertrand des Pallieres</u>
<u>v RBC Trustees (CI) Limited</u> [2018] JRC 172, although the Master does not have a *"general inherent*
*jurisdiction"*, unlike the Royal Court, he does have such inherent jurisdiction as may allow him *"all*
*procedural power necessary to act as a court in a meaningful sense"* (reflecting the words of the
Court of Appeal in paragraph 37 of <u>Halabi v Wilson and HMRC</u> [2018] JCA 114).  In my judgment,
I have a general inherent jurisdiction to stay enforcement of orders, and to direct that any order
issued by me be set off against any other existing order.  Absent such a power, I would not be a
court in a meaningful sense.  Accordingly, I reject GSL's submission that I do not have jurisdiction
to set off the order requiring an interim payment from Mr Itkin, against the judgment of the Royal
Court.

12.   However, this is not a simple case of two, equally enforceable, mutual judgments.  GSL is in a
creditors' winding up and Article 166 of the Companies (Jersey) Law 1991 provides that:

> *"...the same rules prevail with regard to the respective rights of secured*
> *and unsecured creditors, to debts provable, to the time and manner of proving*
> *debts, to the admission and rejection of proofs of debts, to the order of payment*
> *of debts and to setting off debts as are in force for the time being with respect*
> *to persons against whom a declaration has been made under the Désastre Law*
> *."*

13.   Under the Bankruptcy (Désastre) (Jersey) Law 1990 (the "Désastre Law"), judgments are provable
in the *désastre* (under Article 29(1)), and only recoverable in the *désastre* (Article 10(1)(a):

> *"10(1)    With effect from the date of the declaration a creditor to whom*
> *the debtor is indebted in respect of a debt provable in the "désastre" shall not –*
>
> *(a)    have any other remedy against the property or person of the debtor*
> *in respect of the debt;..."*

14.   Accordingly, Mr Itkin's judgment against GSL is unenforceable outside of the proof process and in
my judgment, any set off is currently prohibited as a result of Article 10(1)(a) of the Désastre Law.
If I am wrong about that, to allow a set off at this stage would be to give an impermissible preference

to Mr Itkin (following <u>Guidon Investments Ltd v Malet de Carteret</u> (1980) JJ 109) in that it would involve the acceptance of a liability, the validity of which is being questioned on grounds that Commissioner Bailhache found were *"arguable"*, and that has not been proven in the liquidation. I therefore reject Mr Itkin's application.

**Enforcement of the Unless Order**

15.    In the absence of any full and frank evidence to the contrary, I remain of the view, as noted in the judgment of 2 October 2025, that Mr Itkin can pay, but will not pay, the order on account of costs.

16.    At paragraphs 41 to 46 of the judgment of 2 October 2025, I set out my rationale for not triggering the unless order on that occasion.  In short:

(i)    I acknowledged that the proceedings were *"both complex and aged, and if the sums set out in the Amended Order of Justice are recovered at full value, these claims amount to a sum in excess of USD 50 million, if not USD 100 million"* (paragraph 41);

(ii)    it would not be *"just or proportionate to impose a liability on Mr Itkin running to many millions of dollars simply for failing to comply with an order requiring him to pay slightly less than £80,000 on account of costs"* (paragraph 42);

(iii)    *"there are alternative and proportionate remedies which do not involve the striking out of the Defendant's Amended Answer, at least at this first stage"* (paragraph 44); and

(iv)    an order for costs, to be summarily assessed on an indemnity basis, together with an extension of time for compliance and consideration of a <u>Hadkinson</u> order was appropriate (paragraphs 45 and 46).

17.    GSL criticises that assessment as being *"misconceived"* insofar as the effect of judgment is concerned as:

*"The main operative provisions of the draft order provide declaratory relief, the effect of which would be to enable to return of significant assets to the Plaintiff which the Defendant admits that he took from the Plaintiff (but claims that he was entitled to do so). The draft order then provides, at paragraph 3, for an assessment of quantum*

*and, aside from paragraphs 5 and 6, there would be no money judgment against the
Defendant which would be immediately enforceable."*

18.   The terms of the draft order proposed by the Plaintiff are as follows:

*"1. The judgment of the Royal Court dated 2 December 2016 (File number
2016/335) entered against the Plaintiff in favour of the Defendant in the sum of
£505,000 plus interest, fixed costs and interest on costs (the Default Judgment) and
all orders of the Royal Court arising from it is set-aside;*

*2. The Court declares that:*

*a. the document entitled "Guaranty" dated 9 October 2012 and signed by the
Defendant as "Sole Director and Officer" of the Plaintiff (the Guaranty) is a nullity and
is void ab initio;*

*b. the document entitled "Promissory Note secured by Pledged Collateral"
dated 21 August 2015 (the 2015 Promissory Note) is a nullity and is void ab initio;*

*c. the Deed of Assignment dated 20 September 2016 executed on behalf of
the Plaintiff and M-NICE Limited (a company incorporated in the Isle of Man) in favour
of the Defendant (the M-NICE Assignment) is void;*

*d. the Deed of Assignment dated 20 September 2016 executed on behalf of
the Plaintiff and M-BJEP Limited (a company incorporated in Isle of Man) in favour of
the Defendant (the M-BJEP Assignment) is void;*

*e. the transfer of the shares in New Albion Property Limited (an English
company incorporated on 11 April 2002 with registered number 04414858) (NAPL) on
26 September 2016 from the Plaintiff to the Defendant is void;*

*f. the Defendant holds the shares in NAPL on constructive trust for the Plaintiff;*

*g. the Defendant holds the sum of US$473,554.09 (the Curacao Funds) and
their traceable proceeds on constructive trust for the Plaintiff,*

*h. the Defendant breached his fiduciary duties and/or duties arising pursuant
to Article 74 of the Companies (Jersey) law 1991 or customary law by procuring*

*payments from the Plaintiff's accounts in the aggregate amount of US$1,458,539.17
and EUR € 138,788.86 (the Credit Card Payments)*

*3. The Defendant shall account for or pay to the Plaintiff equitable
compensation, in a sum to be assessed, in respect of [the Guaranty, the 2015
Promissory Note, the M-NICE Assignment,  the M-BJEP Assignment, the NAPL share
transfer, the Curaçao Funds, the Default Judgment, and the Credit Card Payments].*

*4. The Defendant shall transfer legal title to the NAPL shares to the Plaintiff
within 14 days of the date of this Act of Court and take all necessary steps to procure
the registration of the Plaintiff as legal and beneficial holder of the NAPL shares;*

*5. The Defendant shall pay to the Plaintiff the sum of US$473,554.09
representing the Curacao Funds with interest thereon within 14 days of the date of this
Act of Court;*

*6. The Defendant shall pay to the Plaintiff the sum of US$ 1,458,539.17 and
EUR € 138,788.86 representing the Credit Card Payments within 14 days of the date
of this Act of Court;"*

19.   This is significant, and in my judgment disproportionate, relief when viewed against the sum of
£78,432 specified in the unless order in that:

(i)   the Default Judgment is for some £867,000 and has already been the subject of an
unsuccessful set aside application before Commissioner Bailhache in 2021.  Whilst a
judgment can be set aside for fraud (as noted in paragraphs 21 to 22 of the December 2024
judgment), it does not seem to me to be appropriate for the Master to set-aside on the basis
of a default by the Defendant in relation to costs, a judgment of the Royal Court which the
Royal Court itself has already declined to set aside, if there are alternatives.  If this judgment
is to be set aside, it should preferably be done on its merits.

(ii)   the sums involved in these underlying claims are far in excess of the amount in the unless
order in that the Guaranty was purportedly called upon in relation to a debt of USD 55.52
million;   the M-Nice assignment concerns a debt for USD 15.5 million;   the M-BJEP
assignment concerns a debt for USD 19.5 million; and NAPL owns a property in California
that was purchased for USD 22 million.

20.  Insofar as the Plaintiff submits that this order would enable the *"return of significant assets to the Plaintiff which the Defendant admits that he took from the Plaintiff (but claims that he was entitled to do so)"*, this is a reference to Mr Wood's First Affidavit, sworn on 5 February 2024, in which he deposed that Mr Itkin had admitted in the US proceedings that he had taken action *"to "lock down" the assets to keep them safe, and that "all [his] actions were designed to protect assets."* In his video deposition dated 28 March 2019, Mr Itkin stated that this applied to the M-BJEP and M-NICE assignments, and other assets. Mr Itkin submits that he was entitled to take all of these assets as they were partnership assets and denies GSL's claims for declaratory relief and/or equitable compensation.

21.  In my judgment, the relief sought in the draft order is substantive relief; not simply a change in the identity of the person *"holding the ring"* pending determination at trial. Moreover, none of these declarations is going to be simple to enforce and all may involve satellite litigation in other jurisdictions which may, in turn, be rendered more complex by the judgment having been obtained by default rather than on the merits.

22.  Advocate Barham for GSL notes that *"there are few English authorities which assist in relation to the enforcement of unless orders in respect of costs because any sanction for failure to comply has effect unless the party in default applies for and obtains relief from the sanction"* but does rely upon the English decision of the Court of Appeal in <u>Credico Marketing Ltd v Lambert</u> [2023] EWCA Civ 262 to submit that the Court should not be overly concerned at any comparison between the amount of costs and the sums in issue. That case concerned an unsuccessful application for permission to appeal and to adduce fresh evidence. Credico brought proceedings against the defendant for almost £2 million. The High Court made unless orders requiring the defendant to answer requests for further information and to pay costs of some £14,400 failing which the defence would be struck out. Applications were made, and granted, for extensions of time but 2 months after the order was made, the Court refused a further extension of time and triggered the unless order on the basis that *"no good reason had been advanced for why the defendants could not pay the costs ordered"*. It did not trigger it on the basis of the failure to provide the further information and the Court indicated that if the additional information had been the only outstanding issue, it would have granted an extension of time. The Court of Appeal noted that when triggering the unless order:

> ***"13…[the Judge] also referred to the history of the litigation generally. The relevance of this went beyond the simple fact of prolonged non-payment. It included the fact that Mr Lambert had apparently found funds to instruct solicitors in the appeal to the Court of Appeal, which had by then been heard, and indeed for security for costs, but not to pay the (by comparison) fairly small sums which had been ordered to be paid to Credico. The judge also referred to an Instagram post by Mr Lambert in which he appeared to be crowing over the***

*costs which he had caused Credico to incur for no result. He said at paragraph 61 of his judgment:*

> *"The defendants have, in my judgment, been playing fast and loose with both the claimants and the courts in relation to these matters and in the process have been causing the claimants to incur more and more costs in reasonably resisting applications which have been made by the defendants. We thus have the costs of meeting the application of 30 March, the costs of meeting the application of 3 May and the costs of today's application. In my judgment, it is simply inappropriate for the defendants to conduct litigation in this way and that, as Mr Mehrzad submitted, enough is enough and the time has come to put an end to this."*

23. That decision of the English High Court echoes Master Thompson's comments in <u>Newman v de Lima</u> [2018] JRC 155 at paragraph 47 to 49 where he held that:

> *"47. In my judgment in this jurisdiction, the discretion is a more general one. This discretion still requires me to consider whether the case can be dealt with justly and at proportionate cost and any relevant factors listed in Rule1/6. However, I consider that I am also required to look at the case as a whole and the nature of the proceedings in particular, what is in issue where some form of strike out of a claim is contemplated. In cases involving a failure to issue a summons for directions (albeit pre-dating the overriding objective), the Royal Court has noted that the most severe sanction of striking out a plaintiff's claim should not be applied if there are other sanctions which could be applied which would enable justice to be done between the parties - see for example Viera v Kordas [2014] JRC 042 at paragraph 19 and Mayhew v Bois Bois [2016] JRC 024 at paragraphs 8 and 9. Whether the failure is to issue a summons for directions required by the Rules or a failure to comply with a particular order, I consider that the same approach should be taken to imposition of sanction which has the effect of striking out a claim or counterclaim or an answer, thus depriving a party of their day in Court.*

> *48. I also consider it may be possible to make orders which fall short of striking out the entire claim. Depending on the breach it may be possible to limit the sanction to striking out part of a case or that if a particular step is not complied with part of the case will be struck out or evidence may not be adduced on a particular issue. There is also the sanction of costs.*

*49. I have referred to these different possibilities available to the Court because they are all illustrative of the more general discretion available to the Court where a party has not complied with a Court order. In reaching this view, it should not be forgotten that procedure is a means to an end namely a trial or settlement and breaches should be kept in that context. The key issue is therefore the effect of any non-compliance and whether or not a fair trial can take place after a breach. I accept I have to also take into account, if it is right to impose a sanction for non-compliance, whether that non-compliance was either deliberate or there is no justification for it. In every case <u>there will always come a point where the conduct of a party in ignoring Court orders will lead to the ultimate sanction of a case being dismissed even if a trial could still take place.</u> This judgment should not therefore be taken as any indication that non-compliance of any Rules and Practice Directions is acceptable, will be tolerated, or will not, in appropriate cases lead to the ultimate penalty of a claim or answer being struck out." (Emphasis Added)*

24.   In my judgment, notwithstanding any perceived disparity between the quantum of the claim and the outstanding order for costs, there will come a point at which *"enough is enough"* and the Court will strike out an Answer notwithstanding that in numerical terms alone, it might appear disproportionate so to do.  However, I do not think that we are at that point yet.

25.   As Master Thompson acknowledged, the test in England is different to that applied in Jersey.  The discretion as to how to respond to a failure to comply with Court orders is more general and less prescriptive.   When I last considered triggering the unless orders, the requests for further information were also outstanding and I noted that:

*"50.  The Requests dealing with the partnership and/or the ownership of GSL and/or the entitlement of Mr Itkin and others to act as they did are at the heart of this case. Without proper responses to those Requests, the Court may well have no option but to strike out the whole of his Amended Answer. However, having admonished his previous failures in this judgment, it seems to me proportionate to give Mr Itkin a final opportunity to respond properly to these Requests, particularly given that they concern factual issues rather than legal principles, and are capable of being answered by Mr Itkin without legal assistance."*

26.   Mr Itkin has now answered all of those requests.  A fair trial is clearly possible and, in my judgment, the Court and the parties should focus on progressing this matter expeditiously and fairly, particularly given the comments in my judgment of December 2024:

*"70…(ii) the proceedings brought by GSL against Mr Itkin in Jersey are being progressed and further directions will be given at the handing down of this judgment with a view to achieving a trial of all issues as expeditiously as possible and within the next 12 months or so, should the case not settle;*

*(iii) having noted that the claims in Jersey have previously been stayed repeatedly by consent without any resolution having been achieved, and that the parties singularly failed to chase a response to Mr Bason's letter, the Royal Court will be far more proactive in its management of these proceedings going forward;…"*

27.     The issue for the Court is how it should respond to Mr Itkin's repeated failure to comply with the unless order for costs, and the perceived concern on the part of GSL that Mr Itkin will make the future progression of this litigation as difficult as possible, notwithstanding his apparent desire, in submissions, for a judgment on the merits.  In determining a response, I must take into account that:

     (i)     Mr Itkin has answered the Requests for Further Information;

     (ii)     Mr Itkin has a judgment against GSL for a sum greater than the amount of costs and were the judgment to be proven in the liquidation, the costs order would be set off against it under Article 34 of the Désastre Law;

     (iii)     in a complex case such as this one, there are, at this stage, alternative options available to the Court which do not involve striking out the whole of Mr Itkin's Answer;

     (iv)     pursuant to the Act of Court dated 23 July 2025, the next stage in the proceedings is for discovery protocols to be agreed and for discovery to take place.

28.     In my judgment:

     (i)     it is neither appropriate nor proportionate, at this stage, to strike out Mr Itkin's Answer for non-payment of the sum of £78,432 or to make an order, in whole or in part, in the terms sought by GSL;

(ii)    it is entirely appropriate to impose a sanction given that Mr Itkin will not pay the order for costs previously made by the Court;

(iii)    the appropriate order is one of costs, reminding Mr Itkin of the ability of the Court to decline to hear summonses if he is in default, and of reframing the unless order to ensure that Mr Itkin's failures to comply with Court orders neither repeat nor impact on the orderly, and expeditious, future progression of this litigation.

29.    Accordingly, I discharge the unless order, but not the order for an interim payment on account of costs, and direct that:

(i)    by 9 January 2026:

(a)    the parties shall provide to one another, on affidavit, details of the extent of the hard copy documents in their custody, power and/or possession which are or might be subject to Practice Direction RC 17/07 together with the information required pursuant Practice Direction RC17/08;

(b)    the parties shall exchange draft discovery protocols in relation to documents held in electronic form;

(ii)    thereafter the parties shall use reasonable endeavours to agree the scope of the said protocols before 30 January 2026;

(iii)    unless Mr Itkin complies with the said orders, his Answer shall be struck out;

(iv)    any issues arising in relation to the said affidavits and protocols shall be determined at the hearing scheduled for 11 February 2026, TE 1 day;

(v)    the Defendant pay the Plaintiff's cost of these applications, to be summarily assessed on an indemnity basis, if not agreed.

**Authorities**

[2024] JRC 279

[2025] JRC 055

[2025] JRC 244

Royal Court Rules 2024

T v S [2025] JRC 162

Fearns v Anglo Dutch Paint and Chemical Co. Ltd [2010] EWHC 2366 (CH)

Bertrand des Pallieres v RBC Trustees (CI) Limited [2018] JRC 172

Halabi v Wilson and HMRC [2018] JCA 114

Companies (Jersey) Law 1991

Guidon Investments Ltd v Malet de Carteret (1980) JJ 109

Credico Marketing Ltd v Lambert [2023] EWCA Civ 262

Newman v de Lima [2018] JRC 155

Practice Directions RC 17/07 and 17/08

**EXHIBIT B**

# *In The Royal Court Of The Island Of Jersey*
### (Samedi Division)

**BETWEEN**

**GOLDEN SPHINX LIMITED**
**(in creditors' winding up)**

**Plaintiff**

**and**

**Mr GARRY YURI ITKIN**

**Defendant**

---

**NOTICE OF APPEAL**

---

## A.  INTRODUCTION

1.  The Plaintiff appeals against the decision made by the Master in these proceedings, as set out in an Act of Court dated 27 November 2025 and Judgment dated 1 December 2025 (together, the **Decision**).

2.  The Decision relates to the Plaintiffs' application by Summons dated 7 August 2025 (the **Application**) for judgment to be entered following the Defendant's breach of an unless order dated 23 July 2025 (the **Unless Order**).

3.  The appeal is lodged pursuant to Rule 20.2 of the Royal Court Rules 2004 (the **RCR**).  As it relates to the exercise of a discretion vested in the Royal Court pursuant to Rule 6/26(10) and delegated to the Master, the test on appeal is as set out in *Murphy v Collins* [2000] JLR 276 and the appeal is to be conducted by way of rehearing.

## B.  GROUNDS OF APPEAL

4.  The Plaintiff's grounds of appeal are that:-

    a.  The Master erred in concluding that *"it was neither appropriate nor proportionate,*

*at this stage, to strike out [the Defendant's] Answer for non-payment of the sum of £78,432 or to make an order, in whole or in part, in the terms sought by GSL"* (paragraph 28(i)) and discharging the Unless Order (paragraph 29)*;*

b.  Having previously imposed the sanction of the Unless Order, the sanction took effect immediately unless relief from sanctions was obtained (see <u>Marcan Shipping (London) Limited v Kefalas</u> [2007] EWCA Civ 463 for the analogous position in England summarising the pre-CPR position at paragraphs 11-15 by reference to the case law which formed the test in <u>Leeds v Admatch</u> [2008] JRC 086]).

c.  The Defendant had not formally applied for relief from sanctions despite purporting to do so by skeleton argument dated 16 September 2025.  That notwithstanding, at a previous hearing of the Application (reported at [2025] JRC 244) (the **Previous Judgment**), the Master had proceeded as if the Defendant had applied for relief and:-

   i.  Recorded that this *"appeared to be a case of the Defendant saying that he "will not pay" rather than he "cannot pay""* (paragraph 20(ii));

   ii.  Proceeded on the basis that the Defendant will not pay the order (paragraph 23);

   iii.  Concluded that *"I do not think that there are any grounds for any retrospective extensions of time or other relief from sanction"* (paragraph 38); and

   iv.  Found that *"the Defendant's failure to comply with the unless orders ought to be subject to sanction"*.

d.  To the extent that the test in <u>Newman v De Lima</u> [2018] JRC 155 remained relevant in light of that finding and in the absence of any application for relief:-

   i.  the breach was serious and significant; the Defendant was originally ordered to respond to Requests for Information (the **RFIs**) by 17 January 2025 and make an interim payment on account of costs (the **Costs**) by 7

February 2025.  He eventually provided satisfactory responses to the RFIs on 20 October 2025 and has still not paid the Costs;

ii.    no good reason for the breach had been provided by the Defendant; the Defendant had previously asserted that he could not pay the Costs but had not filed an affidavit addressing his financial position in accordance with paragraph 2 of the Act of Court dated 14 August 2025;

iii.    Looking at the case as a whole:-

1.    The merits of the Defendant's Answer are slim at best, having effectively admitted breaches of directors' duty but claiming to be entitled to do so by reference to some over-arching partnership agreement;

2.    The Defendant had failed to comply with numerous court orders in relation to the RFIs which were aimed at understanding an otherwise factually and legally incoherent defence;

3.    The Defendant has only kept the hopes of defending the proceedings alive by belatedly responding to the RFIs.  Even then, the responses are largely a recital of his own evidence in separate, related proceedings in the USA rather than a coherent response or pleading;

4.    The Defendant had issued several applications which had been dismissed;

5.    Previous directions as to discovery have not been complied with at all;

6.    The Defendant's conduct had been contumelious and vexatious;

7.    The proceedings have been delayed by a year;

8.    A significant amount of the court's time and resources have been expended dealing with the Defendant's breaches and applications;

9.  The Defendant has still not complied with the order for Costs;

10. The Plaintiff has been put to considerable cost in responding to unmeritorious applications from the Defendant and prosecuting applications which would have been unnecessary but for his conduct;

11. The Defendant had been ordered to pay additional costs by the time of the Decision (and will likely be ordered to pay further costs before this appeal is heard);

12. There are no effective means of the Plaintiff recovering those costs because the Defendant has no assets in the jurisdiction and the Plaintiff cannot enforce interim costs orders in the USA, where the Defendant is resident; and

13. if the matter is to proceed to trial without sanction, the Defendant's conduct is likely to continue and the Plaintiff will suffer a considerable injustice.

5.  Having regard to those considerations, the decision to discharge the Unless Order is plainly wrong (i.e. irrational in the sense that no reasonable decision-maker could have reached it).

6.  The Plaintiff submits that the just and proportionate course would have been to accede to the application and strike out the Defendant's Answer.  This is consistent with both Jersey and English authorities:-

   a.  in _Newman_, at [49], the court recognised that _"In every case there will always come a point where the conduct of a party in ignoring Court orders will lead to the ultimate sanction of a case being dismissed even if a trial could still take place."_

   b.  In _Credico Marketing Ltd v Lambert_ [2023] EWCA Civ, the English Court of Appeal refused permission to appeal the striking out of parts of a Defence for failure to pay modest sums in respect of costs and endorsed the judgment of the judge below

> that where Defendants are *"playing fast and loose with both the claimants and the*
> *courts . . . it is simply inappropriate for the defendants to conduct litigation in this*
> *way and . . . enough is enough and the time has come to put an end to this."*

7.  Even if the Master was concerned that the striking out of the Defendant's Answer was not
    a proportionate sanction, he could, in line with the guidance in <u>*Newman,*</u> have imposed
    some other sanction which would address the mischief presented by the Defendant's
    conduct.  In the Previous Judgment, the Master had alighted upon the possibility of an
    order preventing the Defendant from issuing any interlocutory summonses unless and until
    the costs order is satisfied (a variation of the Hadkinson order (<u>*Hadkinson v Hadkinson*</u>
    [1952] P 285)) (paragraph 45 – 46).

8.  Despite referring to this in the Decision, the Master did not make such an order, instead
    concluding, at paragraph 28(iii) that

    > *"the appropriate order is one of costs, <u>reminding Mr Itkin of the ability of the Court</u>*
    > <u>*to decline to hear summonses if he is in default*</u>*, and of reframing the unless order*
    > *to ensure that Mr Itkin's failures to comply with Court orders neither repeat nor*
    > *impact on the orderly, and expeditious, future progression of this litigation."*
    > (emphasis added).

## C.  RELIEF SOUGHT

9.  the Plaintiff asks the court to rehear the Application on appeal and seeks, by way of relief,
    an order that:-

    a.  Paragraph 1 of the Act of Court dated 27 November 2025 is set aside;

    b.  There be judgment for the Plaintiff on the terms sought in the Amended Order of
        Justice dated 9 February 2024 (as reflected in the draft order produced for the
        hearings before the Master);

    c.  Alternatively, sanctions be imposed for breach of the Unless Order including, at
        least, an order preventing the Defendant from issuing any interlocutory summonses

or filing any evidence in response to the Plaintiff's interlocutory summonses unless and until the costs order is satisfied;

d.  The Defendant pay the costs of this Appeal and the proceedings below on the indemnity basis.

**Jonathan Barham**

**Collas Crill LLP**

**8 December 2025**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 515 S. Flower Street, 7ᵗʰ Floor, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **OMNIBUS REPLY IN SUPPORT OF MOTIONS FOR COURT-ORDERED MEDIATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>December 9, 2025</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Joseph E Caceres  jec@locs.com,  generalbox@locs.com
Daniel J McCarthy  dmccarthy@hillfarrer.com,  spadilla@hillfarrer.com;dflowers@hfbllp.com
Kurt  Ramlo Adam RamloLegal@gmail.com,  kr@ecf.courtdrive.com,ramlo@recap.email
Charles  Shamash cs@locs.com,  generalbox@locs.com
Oleg Stolyar  astolyar@loeb.com
United States Trustee (LA)  ustpregion16.la.ecf@usdoj.gov
Michael  Zorkin  mz@thezorkinfirm.com

☐   Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

COURTESY COPY NOT REQUIRED BY COURT

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 9, 2025 | Sonia Padilla | */s/ Sonia Padilla* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |