HILL, FARRER & BURRILL LLP
Daniel J. McCarthy (SBN 101081)
dmccarthy@hillfarrer.com
515 South Flower Street, 7th Fl.
Los Angeles, CA  90071-3147
Telephone: (213) 621-0802
Fax: (213)624-4840

Attorneys for Petitioning General Partner
Garry Y. Itkin and Daniel J. McCarthy, in pro per

CACERES & SHAMASH, LLP
Charles Shamash (SBN 178110)
cs@locs.com
Joseph E. Caceres (SBN 169164)
jec@locs.com
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212
Tel: (310) 205-3400
Fax: (310) 878-8308

Attorneys for Creditors and Joseph E. Caceres, in pro per

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>ITKIN & SABADASH,<br><br>　　　　　Involuntary Debtor. | Case No. 2:25-bk-11235-NB<br>Chapter 7<br><br>**JOINT SUPPLEMENTAL OPPOSITION TO (1) PUTATIVE PARTNER ALEXANDER SABADASH'S MOTION FOR FEES AND DAMAGES, UNDER 11 U.S.C. § 303(I) (DOCKET NO. 90), AND (2) PUTATIVE PARTNER ALEXANDER SABADASH'S MOTION FOR FEES AND DAMAGES, UNDER 11 U.S.C. § 303(I) AND SANCTIONS UNDER FRBP 9011 AND THE COURT'S INHERENT AUTHORITY; (DOCKET NO. 91)**<br>[Declarations of Russian Arbitrator Dmitry Valeryevich Kynazev, Evidentiary Objections and Request for Judicial Notice Concurrently Filed]<br><br>Date:　July 14, 2026<br>Time:　2:00 p.m.<br>Place:　Courtroom 1545 |

-1-

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ......................................................................................................1

    A.    The Court's Memorandum and Itkin's Motion for Reconsideration ........................1

    B.    Mr. Sabadash's Fee and Sanctions Motions...........................................................1

    C.    The Mediations .......................................................................................................2

    D.    Mr. Sabadash's Supplemental Declarations Regarding Fees ..................................3

    E.    The Court's Scheduling Order ................................................................................3

    F.    Mr. Sabadash's Supplemental Brief .......................................................................4

    G.    Summary of Prior Argument on the Fee and Sanction Motion................................4

        1.    Argument on Fee Motion ............................................................................4

        2.    Argument on Sanctions Motion ..................................................................5

    H.    Summary of Supplemental Argument......................................................................6

II.    SUPPLEMENTAL ARGUMENT .........................................................................8

    A.    Mr. Sabadash Seeks Duplicative Fees....................................................................8

    B.    The Fees Incurred in Connection with Mediation and Preparing the  Second and Third Supplemental Declarations to Seek Those Fees Should Not Be Compensable ........................................................................................................9

    C.    The New Arguments Made for the First Time in the Reply Brief in Support of Mr. SabadasH's Motion to Dismiss that He Filed on April 15, 2025, Are Incorrect .........................................................................................................12

        1.    Mr. Itkin's Counsel Alerted the Court to This Issue .................................12

        2.    The Issues Newly-Raised in Mr. Sabadash's Reply Were  Material to the Court's Decision, but Mr. Sabadash Was  Incorrect .........................13

    D.    Mr. Sabadash Replies in Support His Fee and Sanctions Motions Also Were Incorrect and Ignored Important Arguments ..................................................15

        1.    Mr. Sabadash Ignored Responding Parties' Analysis Under 11 U.S.C. § 303(i) Regarding an Entitlement of a Non-Debtor Party to Fees and to Punitive Damages.........................................................15

        2.    Mr. Sabadash's New Arguments Were Incorrect.......................................18

        3.    Mr. Sabadash's Replies Ignored Other Important Arguments....................19

    E.    Mr. Sabadash's New Arguments Regarding Mr. Grant's Proof of  Claim,

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

Which Mr. Sabadash's Counsel Imported from AFB's Position in the District Court Action, Are Immaterial and Incorrect ...............................................20

1.    The Dispute with Mr. Grant in District Court ...........................................20

2.    Mr. McCarthy and Mr. Caceres Did Not Sign Mr. Grant's Proof of Claim No. 11 ......................................................................................................21

3.    Mr. Grant's Proof of Claim No. 11 Did Not Cause Damages .....................22

4.    The Dispute With Mr. Grant is Irrelevant to Mr. Sabadash's Fee and Sanctions Motions ..............................................................................22

5.    To the Extent Mr. Grant's Proof Claim No. 11 Is Relevant, It Was Deemed Allowed ........................................................................................23

6.    The Merits of AFB's Contentions Should Be Determined in the District Court Action ...................................................................................24

7.    Mr. Grant's Proof of Claim No. 11 is Based On An Authenticated Arbitration Award .....................................................................................24

8.    Mr. Grant's Reply in the District Court Action Explains That the Opposition of AFB, Like Mr. Sabadash's Arguments to This Court, Are Based Upon False and Inadmissible Documents .................................27

9.    The Supplemental Brief Is Based Upon Inadmissible Evidence .................35

IV.    CONCLUSION ..........................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Baker Hughes Servs. Int'l LLC v. Joshi Techs. Int'l Inc.*,
73 F.4th 1139 (10th Cir. 2023)............................................................................................. 31

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) ...................................................... 10

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
403 F.3d 85 (2d Cir. 2005) .................................................................................................... 32

*Folkways Music Publishers, Inc. v. Weiss*,
989 F.2d 108 (2d Cir. 1993) .................................................................................................. 32

*Franklin v. Four Media Co. (In re Mike Hammer Prods., Inc.)*,
294 B.R. 752 (9th Cir. B.A.P. 2003) ......................................................................... 16, 17, 19

*Hancock as Tr. of Hillman Mather Adams Norberg Tr. v. Blair House Assocs. Ltd.
P'ship*, No. 2:22-CV-00099-JDL, 2023 WL 2743641 (D. Me. Mar. 31, 2023) ............... 16, 19

*Havens v. Leong (In re Leong P'ship)*,
788 F. App'x 539 (9th Cir. 2019).......................................................................................... 19

*Havens v. Leong P'ship*,
586 B.R. 760 (N.D. Cal. 2018)................................................................................... 16, 18, 19

*Havens v. Leong P'ship*,
788 F. App'x 526 (9th Cir. 2019) ...................................................................................... 16, 18

*In re Fox Island Square P'ship*,
106 B.R. 962 (Bankr. N.D. Ill. 1989)................................................................................ 16, 19

*In re Leong Partnership*,
2018 WL 1463852 (9th Cir. B.A.P. Mar. 23, 2018),
*aff'd,* 788 F. App'x 539 (9th Cir. 2019)............................................................................... 18

*In re Marciano*,
708 F.3d 1123 (9th Cir. 2013)............................................................................................... 19

*In re S.California Sunbelt Devs., Inc.*,
608 F.3d 456 (9th Cir. 2010)............................................................................................... 9, 10

*Mencer v. Princeton Square Apartments*,
228 F.3d 631 (6th Cir. 2000)............................................................................................. 11, 12

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

*Mgmt. & Tech. Consultants S.A. v. Parsons-Jurden Int'l Corp.*,
 820 F.2d 1531 (9th Cir. 1987) ............................................................................................... 31

*Miles v. Okun (In re Miles)*,
 430 F.3d 1083 (9th Cir. 2005) .................................................................................. 16, 17, 19

*Speed Shore Corp. v. Denda*,
 605 F.2d 469 (9th Cir. 1979) ................................................................................................ 11

*Vatyan v. Mukasey*,
 508 F.3d 1179 (9th Cir. 2007) .............................................................................................. 30

*Vibe Micro, Inc. v. SIG Capital, LLC (In re 8Speed8, Inc.)*,
 921 F.3d 1193 (9th Cir. 2019) ....................................................................................*passim*

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
 126 F.3d 15 (2d Cir. 1997) ................................................................................................... 32

**State Cases**

*Comden v. Superior Court*,
 20 Cal. 3d 906 (1978) .......................................................................................................... 34

**Federal Statutes**

9 U.S.C. § 207 ...................................................................................................................... 29, 34

11 U.S.C. § 101(13) .............................................................................................................. 16, 17

11 U.S.C. § 303 ........................................................................................................................... 16

11 U.S.C. § 303(i) ...............................................................................................................*passim*

11 U.S.C. § 303(i)(1) .................................................................................................................. 10

11 U.S.C. § 303(i)(2) .................................................................................................................. 10

11 U.S.C. § 303(b)(3)(A) ............................................................................................................ 17

11 U.S.C § 502(a) ....................................................................................................................... 23

**Rules**

Cal. R. Prof. Conduct 3.7 ........................................................................................................... 34

F.R.B.P. 1004 .............................................................................................................................. 17

F.R.B.P. 1011 .............................................................................................................................. 16

F.R.B.P. 1011(a) .......................................................................................................................... 17

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

-v-

F.R.B.P. 9001 .................................................................................................................. 16, 17

F.R.B.P. 9001(5)(B) ......................................................................................................... 16, 17

F.R.B.P. 9011 ...................................................................................................................... *passim*

F.R.C.P. 11 ................................................................................................................................ 10

F.R.C.P. 12(b)(1) ....................................................................................................................... 1

F.R.C.P. 12(b)(6) ....................................................................................................................... 1

FRE 602 .................................................................................................................................... 33

FRE 701 .................................................................................................................................... 33

FRE 702 .................................................................................................................................... 33

FRE 901(a) ............................................................................................................................... 30

**Other Authorities**

Russian Federal Law No. 382-FZ § 2(17)................................................................................. 31

UNCITRAL Arbitration Rules Art. 6 ....................................................................................... 31

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

### A.      The Court's Memorandum and Itkin's Motion for Reconsideration

On March 20, 2025, Alexander Sabadash filed a Motion to Dismiss Involuntary Petition Under FRCP 12(b)(1) and 12(b)(6) or, in the Alternative, Motion For Summary Judgment, with a supporting declaration from Mr. Zorkin and a request for judicial notice. (Docket no. 8.) On April 8, 2025, petitioning general partner Garry Y. Itkin, filed an opposition (docket no. 16), a supporting request for judicial notice (docket no. 17), evidentiary objections to Mr. Zorkin's declaration (docket no. 18), and an objection to Mr. Sabadash's request for judicial notice. On April 15, 2025, Mr. Sabadash filed a reply, a supplemental declaration from Mr. Zorkin that presented new evidence (docket no. 21) and evidentiary objections (docket no. 22).

On May 1, 2025, Mr. Itkin filed Petitioning General Partner's Request for Leave to File "Supplemental Brief on Limited Issue of Ruling of Russian Ninth Arbitration Court of Appeal; Request for Judicial Notice." (Docket no. 45.) The purpose was to address new arguments made by Mr. Sabadash in his reply regarding the binding effect of the Russian Court's ruling.

On June 16, 2025, the Court entered a 23-page Memorandum of Decision Dismissing Involuntary Petition. ("Memorandum," docket no. 75.) On June 17, 2025, it also entered an Order Dismissing Involuntary Petition (the "Dismissal Order, docket no. 76.) A notice of dismissal was entered on the same day. (Docket no. 77.) The Court did not close the case. Instead, it retained jurisdiction under Local Bankruptcy Rule ("LBR") 1017-1(f).

On July 1, 2025, petitioning creditor Garry Y. Itkin ("Mr. Itkin") filed a Motion for Reconsideration of the Dismissal Order and Memorandum. (Docket no. 89.) That Motion now is scheduled for hearing on July 14, 2026.

### B.      Mr. Sabadash's Fee and Sanctions Motions

On July 1, 2025, Alexander Sabadash ("Mr. Sabadash") filed two motions. The first was entitled "Putative Partner Alexander Sabadash's Motion for Fees and Damages, Under 11 U.S.C. § 303(i)" (the "Fee Motion," docket no. 90.) The second was entitled "Putative Partner Alexander Sabadash's Motion for Fees and Damages under 11 U.S.C. § 303(i) and Motion for Sanctions

under FRBP 9011" (the "Sanctions Motion," docket no. 91, and, together with the Fee Motion, the "Fee and Sanctions Motions'.) On July 1, 2025, Mr. Sabadash also filed a Request for Judicial Notice in support of the Fee and Sanction Motions ("Mr. Sabadash's RJN). (Docket no. 92.)

The two Motions clearly overlap. Regarding the amount of $78,485 requested by both Motions, Mr. Zorkin's declaration explained that they were based upon (1) "93.9 hours on research and analysis, factual investigation, drafting the Motion to Dismiss, reviewing Itkin's opposition, drafting reply, and declarations, addressing proofs of claim, hearing attendance, and exhibit review"; (2) "48.8 hours on research and analysis, factual investigation, drafting the motion, and declarations"; and (3) $334.91 in costs, and he stated that he anticipated "pending additional time on reply and hearing attendance." (Zorkin Decl., ¶¶ 34-36.) The legal basis of the Motions also overlapped.

On August 5, 2025, Mr. Itkin, his counsel (Daniel McCarthy) and the Creditors' counsel (Joseph Caceres) (together, the "Responding Parties") filed their (1) Joint Opposition to the Fee Motion (docket no. 104); (2) Joint Opposition to the Sanctions Motion (docket no. 101); (3) Joint Omnibus Objections to the declarations submitted by Mr. Sabadash in support of his Fee and Sanctions Motion (docket no. 102); and (4) Joint Objections to Mr. Itkin's RJN (docket no. 103).

On August 12, 2025, Mr. Sabadash filed a Reply in support of his Fee Motion with a supplemental declaration from Mr. Zorkin (docket no. 106), and (2) a Reply in support of his Sanctions Motion with a supplemental declaration from Mr. Zorkin (docket no. 107). Mr. Zorkin's supplemental declarations stated that he had spent a total of an additional 27.2 hours on this matter and that he anticipated spending additional 5 hours in preparation and attendance at the hearing, for a total of an additional $17,710.00. (Docket nos. 106-1 and 107-1.)

The Replies raised a number of new arguments that this Omnibus Opposition will address.

At the September 9, 2025 hearing on Mr. Sabadash's Fee and Sanctions Motions, the Court ordered the parties to a mediation. (Docket no. 113.) With the parties' agreement, the Court appointed the Honorable Meredith A. Jury (Ret.) as the mediator. (Docket no. 114.)

### C.    The Mediations

The mediation between the parties to this case occurred before Judge Jury on November 3,

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

2025, but it was unsuccessful.  (Docket no. 116.)

On November 19, 2025, Mr. Itkin filed a motion in this case by which he requested that the Court order a "global mediation" between the parties in this case and in the bankruptcy cases of Alexander Sabadash, aka, Aleksander Vitalievich Sabadash, case no. 2:23-bk-15574-NB (the "Sabadash case"), and Golden Sphinx Limited, case no. 2:22-bk-14320-NB (the "GSL case"). (Docket no. 118.)  Similar motions were filed in the Sabadash and GSL cases.  The motion was granted in this action by order entered on December 17, 2025.  (Docket no. 125.)  Similar orders were entered in the Sabadash and GSL cases.  On January 16, 2026, the Court entered an order in this case appointing Judge Jury to handle the global mediation.  (Docket no. 128.)  Similar orders were entered in the Sabadash and GSL cases.  As previously reported to the Court by Mr. Itkin, two sessions of the global mediation occurred on February 24, 2026, and March 17, 2026, but a settlement was not reached.   (Docket no. 132.)

### D.   Mr. Sabadash's Supplemental Declarations Regarding Fees

Mr. Sabadash filed a second supplemental declaration from Mr. Zorkin on November 13, 2025 that sought $20,185.00 for 26.7 hours in fees incurred between September 5, 2025, and November 13, 2025, in preparing for and attending the hearing on the Fee and Sanctions Motions, participating in the appointment of the mediator, drafting and revising a mediation brief, preparing for and attending the mediation on November 3, 2025, and drafting the second declaration, plus an "additional 10 hours hearing preparation and attendance," (docket  no. 117), and he filed a third supplemental declaration on March 27, 2026, that sought $13,090.00 for 23.8 hours in fees incurred between November 20, 2025, and  March 27, 2026, in addressing Mr. Itkin's motions to compel mediation, preparing for and attending the two global mediation sessions, and preparing the third supplemental declaration.  (Docket no. 131.)

### E.   The Court's Scheduling Order

On April 23, 2026, the Court entered a Scheduling Order regarding further proceedings on Mr. Sabadash's Fee and Sanctions Motions and Mr. Itkin's Motion for Reconsideration.  (Docket no. 135.)  The Court ordered Mr. Sabadash to file a supplemental brief in support of his Fee and Sanctions Motions by June 16, 2026.

-3-

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

**F.      Mr. Sabadash's Supplemental Brief**

On June 16, 2026, Mr. Sabadash filed a "Supplemental Brief in Support of Motion for Sanctions under FRBP 9011 and the Court's Inherent Power" (docket 137) with supporting declarations from Mr. Zorkin (docket no. 137-1), Darya Trubina (docket no. 137-2) and Nadezhda Yurasova (docket no. 137-3).  That Brief basically argues that counsel for Mr. Itkin and counsel for the Creditors should be sanctioned because they should have determined that proof of claim no. 11 that was filed by Aleksandr Grant on June 2, 2025, purportedly was based upon a forged arbitration award.  This new argument will be addressed below.  With this Supplemental Opposition, Responding Parties are submitting apostilled, properly-authenticated copies of the September 6, 2021 Arbitration Award upon which Mr. Grant's proof of claim no. 11 was based, as well as a subsequent Arbitration Award dated August 15, 2025, in favor of Mr. Grant and against GSL and other parties, along with two declarations from the Russian Arbitrator who issued those Awards.  This evidence is discussed below.  Mr. Sabadash's falsely attempts to create an illusion that the Awards are forged based upon argument and inadmissible evidence.  That is an important reason why the Court should rule on the Evidentiary Objections to the supporting declarations that Responding Parties are filing with this Supplemental Opposition.

**G.      Summary of Prior Argument on the Fee and Sanction Motion**

The Responding Parties will briefly summarize the arguments made in the prior oppositions to the Fee and Sanctions Motions.  As an initial matter, Responding Parties request that the Court first rule on (1) the evidentiary objections that they filed on August 15, 2025 (docket no. 102); (2) the objections to Mr. Sabadash's RJN that they filed on August 15, 2025 (docket no. 103;: and (3) the evidentiary objections filed with this Supplement Opposition.

**1.      Argument on Fee Motion**

First, until Mr. Itkin's Motion for Reconsideration is decided, the Fee Motion is premature. If that Motion is granted, Mr. Sabadash's Fee Motion is moot.

Second, section 303(i) is discretionary.  Under the circumstances of this case, the Court should exercise its discretion to deny an award of fees and costs.

Third, under the language of section 303(i), a putative general partner who opposes an

involuntary petition is not entitled to an award of fees and costs.

Fourth, fees should be denied because Mr. Sabadash's Motions fail to (1) allocate the fees between the 19-page Fee Motion under section 303(i) and the 18-page Sanctions Motion under FRBP 9011; and (2) fees incurred in objecting to the creditors' claims (including the original defective objection), which are not compensable.

Fifth, there is no justification for awarding punitive damages on grounds that the Involuntary Petition was filed in bad faith. While the Court ultimately held that there was a bona fide dispute as to the existence of Itkin & Sabadash as a partnership -- based in part upon inadmissible evidence -- there was ample admissible evidence and legal authority to support the conclusion that the Partnership existed. Ten creditors filed claims totaling more than $4.6 million, which themselves evidenced the existence of the Partnership. The involuntary petition was filed to benefit them by having the petition granted and a trustee appointed to aggregate assets and pay those creditors. A key asset is the Beverly Hills property. It makes more sense for this Court to determine the existence of the Partnership under California law, to determine ownership of that Property under California law, and to determine the validity of claims under California law, rather than the Jersey Court doing so in the liquidation proceeding of Golden Sphinx Limited, where the claims of those creditors cannot be addressed, if Mr. Itkin were to prevail there.

Sixth, applicable law is clear that section 303(i) does not support an award of fees and costs against Mr. McCarthy and Mr. Caceres. Mr. Sabadash's remedy against them only exists under Federal Rule of Bankruptcy Procedure ("FRBP") 9011. As explained in the Joint Opposition to the Sanctions Motion, there are many reasons to deny an award against them.

### 2.      Argument on Sanctions Motion

First, until Mr. Itkin's Motion for Reconsideration is decided, the Sanctions Motion also is premature. If that Motion is granted, Mr. Sabadash's Sanctions Motion is moot.

Second, section 303(i) is discretionary. Under the circumstances of this case, the Court should exercise its discretion to deny an award of fees and costs. However, although the title to the Sanctions Motion states that it is brought pursuant to section 303(i), FRBP 9011 and the Court's inherent authority, the Notice of the Sanctions Motion only states: "Putative Partner of

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

Alleged Debtor Alexander Sabadash will move for sanctions under Fed. R. Bank. P. 9011 and the Court's inherent authority." (Docket no. 91, at 2:5-6.)  Section 303(i) is not stated as a basis for the Sanctions Motion.

Third, under the language of section 303(i), a putative general partner who opposes an involuntary petition is not entitled to an award of fees and costs. Again, however, section 303(i) does not appear to be a basis of the Sanctions Motion.

Fourth, fees should be denied because Mr. Sabadash's Motions fail to (1) allocate the fees between the 19-page Fee Motion under section 303(i) and the 18-page Sanctions Motion under FRBP 9011; and (2) fees incurred in objecting to the creditors' claims (including the original defective objection), which are not compensable.

Fifth, there is no justification for awarding sanctions under FRBP 9011 on the stated grounds that "[t]he claims, defenses, and other contentions were not warranted by existing law or by nonfrivolous argument to extend, modify, or reverse existing law. FRBP 9011(b)(2)" and that "[t]he allegations and factual contentions did not have evidentiary support.  9011(b)(3)." (Docket no. 91, at 2:10-13.)  As set forth above, while the Court ultimately held that there was a bona fide dispute as to the existence of Itkin & Sabadash as a partnership – based in part upon inadmissible evidence -- there was ample admissible evidence and legal authority to support the conclusion that the Partnership existed.

Sixth, section 303(i) does not authorize an award of fees and costs against petitioner's counsel, such as Mr. McCarthy, or against Creditors' counsel, Mr. Caceres.

**H.      Summary of Supplemental Argument**

As more fully explained below, Mr. Sabadash's Fee and Sanctions Motions should be denied in their entirety for multiple reasons.

First, Mr. Sabadash has duplicatively sought fees for anticipated and future hearings.

Second, Mr. Sabadash is not entitled to fees for unsuccessfully opposing Mr. Itkin's motion to require a global mediation or for fees in connection with the three mediations, including preparing a mediation brief and preparing for and attending those mediations.

Third, section 303(i) does not authorize an award against counsel of the fees sought by Mr.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

Zorkin's Second and Third Supplemental Declarations.

Fourth, the arguments raised by Mr. Sabadash for the first time in his Reply in support of the Motion to Dismiss were incorrect.  As Mr. Itkin explained in his Motion for Reconsideration: (1) there was ample evidence to prove that Mr. Sabadash signed the Partnership Minutes, and his inadmissible declaration from the State Court action did not establish a bona fide dispute as to the existence of the Partnership; (2) Mr. Sabadash's inadmissible declaration did not claim that his signature on the Information Services Agreement with Ms. Gofman was forged, and that Agreement was independent evidence of the existence of the Partnership; (3) the misspelling on the stamp on the Partnership Agreement was not evidence of fraud, but instead was due to a last-minute order by Ms. Gofman of the stamp and the failure to note the minor misspelling; and (4) Ms. Gofman was not bribed by payments, but instead applied those payments to amounts she was owed by the Partnership and accounted for those payments in obtaining recognition by the Los Angeles Superior Court of the judgment in her favor against the Partnership by a Russian Court.

Fifth, Mr. Sabadash's belated informal objection to Mr. Grant's proof of claim no. 11 are not a basis for an award of sanctions against Mr. McCarthy or Mr. Caceres.  Briefly stated: (1) neither Mr. McCarthy nor Mr. Caceres signed Mr. Grant's proof of claim no. 11, so there is no basis for sanctions under Rule 9011; (2) Mr. Grant's claim did not cause damages to Mr. Sabadash given that no fees were incurred by Mr. Sabadash in objecting it; (3) Mr. Sabadash never filed an objection to Mr. Grant's proof of claim, so it was deemed allowed as of the hearing on Mr. Sabadash's Motion to Dismiss this case; (4) neither Mr. Sabadash's Motion to Dismiss (docket no. 8, filed March 20, 2025) nor his supporting reply (docket no. 21, filed April 15, 2025) asserted or could have asserted that Mr. Grant's subsequently-filed proof of claim was objectionable because it was based upon a supposedly forged arbitration award; (5) the Court's Memorandum did not hold that claim was in bona fide dispute because it supposedly was based upon a forged arbitration award; (6) Mr. Sabadash questioned Mr. Grant's proof of claim for the first time in his Sanctions Motion, even though Mr. Grant's claim had no bearing upon the filing or dismissal of this case; (7) the issue of whether Mr. Grant's arbitration award should be recognized is pending in a heavily-briefed action before the Honorable John F. Walter in case no. 2:25-cv-11869-JFW

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

(MBKx) in the United States District Court for the Central District of California between Mr. Grant and AFB Trading One, Inc. ("AFB") (also represented by Mr. Zorkin) and the issue should be decided between the parties to the dispute, rather than decided by this Court based upon the argument that counsel for Mr. Itkin (Mr. McCarthy) and counsel for the Creditors (Mr. Caceres) should have figured out the arbitration award – again, which Mr. Grant is asking the District Court to recognize based on substantial evidence – supposedly was forged; (8) if this Court is willing to even consider Mr. Sabadash's irrelevant argument, it should wait for Judge Walter to rule on it first at the hearing scheduled before him on July 13, 2026, on Mr. Grant's amended petition and AFB's opposition; (9) the evidence submitted by Mr. Grant to the District Court with his Amended Petition proves the authenticity of the arbitration award against the Partnership and AFB; (10) the reply filed by Mr. Grant in the District Court Action on June 19, 2026, explains why the opposition of AFB (like the arguments in Mr. Sabadash's Supplemental Brief) themselves are false and fraudulent; and (11) the evidence submitted by Mr. Sabadash regarding the supposed invalidity of Mr. Grant's arbitration award is inadmissible, as set forth in Responding Parties' the concurrently-filed Evidentiary Objections.

## II.    SUPPLEMENTAL ARGUMENT

### A.    Mr. Sabadash Seeks Duplicative Fees

As stated above, Mr. Zorkin's supplemental declarations that were filed with Mr. Sabadash's replies in support of his Fee and Sanction Motions stated that he had spent a total of 27.2 hours on this matter and that he anticipated spending additional 5.0 hours for "preparation and attendance" at the hourly rate of $550.00, for a total of an additional $17,710.00. (Docket nos. 106-1 and 107-1.)  Thus, he requested $2,750.00 for "preparation and attendance," but as stated below, he spent 4.0 hours as shown by the second supplemental declaration.  Mr. Sabadash is not entitled to the 5.0 hours anticipated and the 4.0 hours actually spent.

Mr. Zorkin's second supplemental declaration sought $20,185.00 for 26.7 hours in fees incurred between September 5, 2025, and November 13, 2025, in preparing for and attending the hearing on the Fee and Sanction Motions, participating in the appointment of the mediator, drafting and revising a mediation brief, preparing for and attending the mediation on November 3,

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7ᵀᴴ FLOOR
LOS ANGELES, CALIFORNIA 90071

2025, and drafting the second declaration, plus an "additional 10 hours hearing preparation and attendance." (Docket no. 117.)  The accounting attached to that second supplemental declaration showed that Mr. Zorkin charged 4.0 hours on September 9, 2025, in preparing for and attending the hearing on the Fee and Sanctions Motions, rather than the 5.0 hours he had estimated.

Further, the "additional 10 hours hearing preparation and attendance" presumably refers to the continued hearing on the Fee and Sanctions Motions, which has not occurred yet.  The anticipated 10 hours is excessive given the 4.0 hours that were previously charged for preparing for and attending the September 9, 2025 hearing.

> **B.    The Fees Incurred in Connection with Mediation and Preparing the Second and Third Supplemental Declarations to Seek Those Fees Should Not Be Compensable**

As explained above, Mr. Sabadash filed the Second and Third Supplemental Declarations of Mr. Zorkin describing a total of $33,275.00 in fees incurred in (1) preparing for and attending the hearing on the Fee and Sanctions Motions, which was for 4.0 hours as explained above; (2) drafting a mediation brief and participating in the Court-ordered mediation in this case on November 3, 2025; (3) opposing the motion to compel the global mediation, which the Court granted; (4) participating in the two global meditation sessions; (5) preparing the Second and Third Supplemental Declarations; and (6) an anticipated 10.0 hours at $550.00 per hour for "preparation and attendance," which has not occurred yet.  (Docket nos. 117 and 131.)

The Supplemental Brief that Mr. Sabadash filed on June 16, 2026, failed to cite any case law supporting an entitlement to fees incurred in unsuccessfully opposing Mr. Itkin's motion for a global mediation, for preparing a mediation brief, for attending the three court-ordered mediation sessions, or for filing the second and third supplemental declarations setting forth those fees.  It will be too late to do so in Mr. Sabadash's reply brief that is due on June 30, 2026, although he may attempt to do so in further violation of LBR 9013-1(c)(3) and 9013-1(g)(3).

In his second supplemental declaration, Mr. Zorkin argued: "An award of the additional fees is appropriate because 11 U.S.C. § 303(i) is a fee-shifting provision that applies to all facets of the case. *See In re S.California Sunbelt Devs., Inc.*, 608 F.3d 456, 463 (9th Cir. 2010)."

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

(Docket nos. 117 and 131.)  That, of course, is a legal conclusion and not a statement of fact. Moreover, it is a misleading statement of law.

First, the Court in *Southern California Sunbelt Devices* affirmed the bankruptcy court's award of fees to the debtors "to recover attorney's fees incurred litigating their entitlement to fees under § 303(i)(1)" and "to recover fees incurred litigating claims for damages under § 303(i)(2)." *Id.* at 463, emphasis added.  It did not suggest that fees incurred in unsuccessfully opposing mediation or in connection with court-ordered mediation are compensable.

The *Southern California Sunbelt Devices* decision is important for another reasons.  The Court distinguished between the *fee-shifting* provisions of section 303(i) and the debtors' request for *sanctions*.  The court stated: "appellants…contend that the bankruptcy court improperly included the costs of litigating the motions for sanctions in the costs and fees the court ordered them to pay under its inherent power to impose sanctions. We agree." *Id.* at 466.  Thus, the Court reversed the bankruptcy court's award of fees incurred by the debtors in "post-dismissal litigation" in seeking sanctions under the court's "inherent power." *Id.*  It relied upon *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406–07, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), which denied fees incurred in seeking sanctions under Rule 11. *Id.*  This is important because Mr. Sabadash seeks fees under section 303(i), but he also seeks sanctions under the Court's inherent power and Rule 9011.  The fees incurred by Mr. Sabadash in seeking sanctions are not compensable, but as pointed out in Responding Parties' Oppositions to the Fee and Sanctions Motions, Mr. Sabadash fails to allocate fees between the Motions, leaving the Court and the Responding Parties to guess about that allocation.  Mr. Sabadash had an opportunity to provide that allocation in his reply briefs that he filed on August 12, 2025, and in the supplemental brief that he filed on June 16, 2026, but he has failed to do so.  Without that allocation, all requested fees should be denied.  It will be too late to provide that allocation for the first time in Mr. Sabadash's reply brief.

Second, as explained in Responding Parties' oppositions to Mr. Sabadash's Fee and Sanctions Motions, the plain language of section 303(i) *only* authorizes an award against the

*petitioner.*[1]  It does not authorize an award against the petitioner's counsel or Creditors' counsel, as requested by Mr. Sabadash.  The plain language of section 303(i) should govern.

Third, section 303(i) does not *mandate* an award of fees or costs.  Instead, it is discretionary in stating "the court may grant judgment."  See *Vibe Micro, Inc. v. SIG Capital, LLC (In re 8Speed8, Inc.),* 921 F.3d 1193, 1196 (9th Cir. 2019) ("Indeed, 'the plain language of the statute clearly contemplates that fees and costs will not be awarded in all cases….' (Citation)."  Fees incurred by Mr. Sabadash in unsuccessfully opposing the global mediation should not be compensable given that Mr. Sabadash's objection was overruled.   Responding Parties further submit that fees incurred by Mr. Sabadash in unsuccessfully opposing the global mediation and in connection the three mediations should not be compensable because an award of fees would contradict the policy in favor of settlement.  That policy was the reason why the Court ordered the parties to a global mediation pursuant to Section 5.2 to Appendix III to the Local Bankruptcy Rules.  "It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation." *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979).

In *Mencer v. Princeton Square Apartments,* 228 F.3d 631 (6th Cir. 2000), for example, the court ordered parties to a housing discrimination case to mediation.  After the defendant prevailed, it sought its fees under a fee-shifting statute.  While the court upheld the award of fees incurred in the mediation based upon the parties' agreement to be bound by Michigan mediation rules,

---

[1] 11 U.S.C. § 303(i) states:

If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
(1) <u>against the petitioners</u> and in favor of the debtor for—
   (A) costs; or
   (B) a reasonable attorney's fee; or
(2) <u>against any petitioner</u> that filed the petition in bad faith, for—
   (A) any damages proximately caused by such filing; or
   (B) punitive damages.

(Emphasis added.)

-11-

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

including a provision that explicitly allowed for "sanctions relating to costs and attorneys fees provided by such rule," it stated:

> Plaintiffs also claim that mediation sanctions discourage parties from pursuing legitimate claims to trial, undercutting the purpose and policy of civil rights laws. This point is well-taken. We have previously recognized that fee-shifting mechanisms are mighty levers to be used only sparingly. *Tiedel v. Northwestern Michigan College*, 865 F.2d 88 (6th Cir.1988). That is why the "American rule" broadly applies in federal courts, whereby "absent express statutory language or an enforceable contract, litigants pay their own attorneys' fees." *Id.* at 92 (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)).

*Id.* at 636.

Similarly, the fee-shifting provisions of section 303(i) should not be applied to award fees incurred in mediation.  There is not express statutory language in section 303(i) or in case law applying it that extends a prevailing debtor's entitlement to fees that were incurred in court-ordered mediation.  This is even more so when the mediation occurs post-dismissal.

> ### C.    The New Arguments Made for the First Time in the Reply Brief in Support of Mr. Sabadash's Motion to Dismiss that He Filed on April 15, 2025, Are Incorrect

> #### 1.    Mr. Itkin's Counsel Alerted the Court to This Issue

As explained in Mr. Itkin's Motion for Reconsideration, the parties were given little time to argue the Motion to Dismiss that came at the initial hearing on April 22, 2025.  (Docket no. 85; also see docket no. 89 (Motion for Reconsideration), Ex. J, Transcript 4/22/2025, at 7-21.)

The hearing was continued to June 3, 2025, at which the Court read and/or paraphrased its 21-page tentative ruling, which the Court acknowledged it was still working on.  (Docket no. 87; also see docket no. 89 (Motion for Reconsideration), Ex. K, Transcript 06/03/2025, at 6-23.)  Mr. Itkin's counsel then addressed several procedural issues.  (*Id.* at 24- 32.)  One issue concerned the lack of any opportunity to respond to the evidence and arguments raised for the first time in Mr. Sabadash's reply.  (*Id.* at 25:2-17, 26:5-10.)  Mr. McCarthy again asked that the Court ruling on the evidentiary objections and additionally asked that the Court grant the request to file the supplemental brief.  (*Id.* at 28:4-8.)

The Court continued the hearing to June 17, 2025.

**2.      The Issues Newly-Raised in Mr. Sabadash's Reply Were**

**Material to the Court's Decision, but Mr. Sabadash Was**

**Incorrect**

Mr. Itkin's Motion for Reconsideration discusses the new issues raised by Mr. Sabadash in his reply to which Mr. Itkin never had an opportunity to respond to in writing, except in the Motion for Reconsideration at pages 25-26.  That analysis will be repeated below.[2]

First, without *any admissible* supporting evidence, Mr. Sabadash's reply argued that Mr. Sabadash's signatures on the Partnership Minutes and the Information Services Agreement were forged.  Those documents confirmed the existence of the Partnership.  Mr. Sabadash submitted his *inadmissible* declaration from the State Court action between Mr. Itkin, Mr. Sabadash, GSL, and other entities, which the Court extensively quoted and relied upon in its Memorandum of Decision in concluding that the inadmissible declaration was sufficient to establish a bona fide dispute regarding the validity of the Partnership Minutes only.  (Docket no. 75, at 17:11-18:17.)  Notably, Mr. Itkin's inadmissible declaration did not claim that his signature on the Information Services Agreement was forged.  That Agreement, which the Court's Memorandum did not mention, independently confirmed the existence of the Partnership.  In authenticating those documents, Mr. Itkin already stated in his declaration attached to the Opposition to the Motion to Dismiss that he saw Mr. Sabadash sign those documents.  (Docket no. 16, at 38:3-4; 38:11-12.)  Ms. Gofman's declaration that was attached to the Motion for Reconsideration also confirms that she prepared those documents and saw Mr. Sabadash sign those documents.  (Docket no. 89, Gofman Decl., ¶ 10, Exs. A and B.)  There was not a forgery.  Notably, Mr. Sabadash's signature on the inadmissible declarations that are attached as Exhibit 2 and 3 to Mr. Sabadash's Motion to Dismiss are remarkably similar to his signatures on the Partnership Minutes and the Information

---

[2] As explained at pages 17-25 of Mr. Itkin's Motion for Reconsideration, the Court also made five factual findings in drawing inferences based upon arguments that Mr. Sabadash had not made. Mr. Itkin explained how those adverse inferences violated the evidentiary standard applicable to summary judgment motions and why those inferences (made for the first time in the Court's Memorandum) were incorrect.  That analysis will not be repeated herein because this Supplemental Brief is for the purpose of responding to Mr. Sabadash's arguments.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

Services Agreement.  (Docket no. 8-1, at 37 and 40 of 86; docket no. 89 (Motion for Reconsideration), Gofman Decl., Ex. A and B.)

Second, without *any* supporting evidence, Mr. Sabadash's reply argued that Mr. Itkin tried to give the Information Services Agreement with Ms. Gofman "an aura of legitimacy by stamping it with a seal of the 'Itkin & Sabadash Partnership,' but he botched the partnership seal misspelling Mr. Sabadash's name proving that it is a fraud."  In truth, Ms. Gofman ordered that stamp because according to Russian custom at that time every organization needed an official stamp.  Since the Partnership did not have a stamp, she ordered it on an urgent basis and apparently a misspelling of Mr. Sabadash's name occurred.  Mr. Itkin and Ms. Gofman did not realize that at the time. (Docket no. 89 (Motion for Reconsideration), Gofman Decl., ¶ 17; Suppl. Itkin Decl., ¶ 11.)  The simple explanation was that a mistake was made, not that the incorrect spelling was evidence of an imagined fraud.  The Court's Memorandum of Decision admittedly did not specifically refer to this argument by Mr. Sabadash regarding the misspelled stamp, but it arguably supported Mr. Sabadash's inadmissible assertion that his signature on the Partnership Minutes was forged, which the Court relied upon.

Third, without *any* supporting evidence, Mr. Sabadash's reply speculated that Mr. Itkin paid Ms. Gofman $21,000 between July 2018 and March 2019 to "bribe" her pursuant to a conspiracy between them to file the lawsuits against the Partnership in Russia and the Los Angeles Superior Court so that Mr. Itkin could "weaponize" those judgments against Mr. Sabadash.  Ms. Gofman and Mr. Itkin's declarations , which were attached to the Motion for Reconsideration, addressed those defamatory statements.  Ms. Gofman pursued those lawsuits to collect on the amounts owed to her by the Partnership pursuant to her Information Services Agreement.  (Docket no. 89 (Motion for Reconsideration), Gofman Decl., ¶ 15; Itkin Decl., ¶ 9.)  A payment of $2,000 in July 2018 was expressly accounted for in her Russian Judgment against the Partnership. (Docket no. 89 (Motion for Reconsideration), Gofman Decl., ¶ 5, Ex. C; Itkin Decl., ¶3.)  Further payments of $10,000 between July 2018 and March 2019 were credited against the Russian Judgment when Ms. Gofman sought and was awarded $13,130.83 by the Superior Court.  (Docket no. 89 (Motion for Reconsideration), Gofman Decl., ¶ 6, Ex. E; Itkin Decl., ¶ 4.)  The balance of

-14-

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

$9,000 was applied to fees incurred by her in obtaining the Russian Judgment and also obtaining recognition of the Russian Judgment in the United Kingdom.  (Docket no. 89 (Motion for Reconsideration), Gofman Decl., ¶ 6, Ex. E; Itkin Decl., ¶ 4.)

The Court's Memorandum of Decision also did not specifically refer to the accusation of bribery, but it did question Ms. Gofman's decision not to enforce "the Recognition Judgment, which awards her $13,130.83, since it was entered approximately six years ago," from which the Court drew the inferences adverse to Mr. Itkin that that it "lends credence to Mr. Sabadash's assertion that the Recognition Judgment was obtained solely as a ploy to preclude Mr. Sabadash from contesting the existence of the partnership" and "[t]hat, in turn, casts doubt about both the existence of the partnership and the validity of Ms. Gofman's claim against it.   (Docket no. 75, at 22:1-8.)  As Ms. Gofman explained in her declaration attached to the Mr. Itkin's Motion for Reconsideration, which was Mr. Itkin's first opportunity to address the accusation of bribery made for the first time in Mr. Sabadash's Reply in support of his Fee and Sanctions Motions, there was a simple explanation for not pursuing collection:

> First, the fees and costs that would be incurred by me in seeking to enforce the Recognition Judgment would be disproportionate to the $13,130.83 judgment amount. Second, I have been unaware of any assets directly owned by the Partnership in California that could be the subject of an inexpensive effort to enforce the Recognition Judgment.

(Docket no. 89, Gofman Decl., ¶ 3.)

### D.    Mr. Sabadash Replies in Support His Fee and Sanctions Motions Also Were Incorrect and Ignored Important Arguments

#### 1.    Mr. Sabadash Ignored Responding Parties' Analysis Under 11 U.S.C. § 303(i) Regarding an Entitlement of a Non-Debtor Party to Fees and to Punitive Damages

Mr. Sabadash's Fee and Sanctions Motion failed to address the threshold issue of whether a putative general partner is entitled to fees under section 303(i).  In violation of the Local Bankruptcy Rules, he "saved" his analysis for his reply briefs, but then failed to respond to many arguments raised by Responding Parties.  Responding Parties explained that only a debtor is entitled to fees under 303(i).  In *Vibe Micro, Inc. v. SIG Capital, LLC (In re 8Speed8, Inc.)*, 921

F.3d 1193 (9th Cir. 2019), cert. denied 140 S. Ct. 48, 205 L. Ed.2d 132 (2019), the Court held that a 50% shareholder of an involuntary debtor not entitled to recover under section 303(i).  It explained three reasons for its conclusion: (1) the House and Senate reports suggest only the debtor could recover fees, *id.* at 1195; (2) the courts in *Miles v. Okun (In re Miles)*, 430 F.3d 1083, 1093–94 (9th Cir. 2005) and *Franklin v. Four Media Co. (In re Mike Hammer Prods., Inc.)*, 294 B.R. 752, 753-754 (9th Cir. B.A.P. 2003), had decided that a non-debtor cannot recover fees; *id.* at 1195; and (3) "reading § 303(i) to permit only the debtor to seek damages is consistent with its purpose and the policy interests underlying it. Section 303(i) is intended to alleviate the consequences that involuntary proceedings impose on the debtor." *Id.* at 1196.

In affirming the bankruptcy court's order awarding the contesting general partner fees under section 303(i), the Court in *Havens v. Leong P'ship,* 586 B.R. 760, 767 (N.D. Cal. 2018), it mentioned 11 U.S.C. § 101(13) and F.R.B.P. 9001 that allows debtor to designate a person to control the partnership.  In a footnote, it noted that a partner could be viewed as the debtor in under Rule 1011. *Id.* at 767, n.11. The Ninth Circuit affirmed in an unpublished decision based upon the definition of a "debtor" under section 101(13) and Rule 9001(5)(B).  *Havens v. Leong P'ship*, 788 F. App'x 526, 527 (9th Cir. 2019).  That Court mentioned *In re 8Speed8, Inc.*, 788 App'x at 527, for the applicable standard of review, but then completely *ignored* its earlier reasoning in *In re 8Speed8, Inc.*  The *Havens v. Leong P'ship* Court did not rely upon Rule 1011, which the lower court had cited.  Regarding the definition of "debtor," there are cases holding that partner can be viewed as the debtor if he acts on behalf of the debtor to save it from bankruptcy. See, e.g., *In re Fox Island Square P'ship,* 106 B.R. 962 (Bankr. N.D. Ill. 1989).  The *Fox Island* decision was well known to the Ninth Circuit majority in *In re 8Speed8, Inc.,* because it was discussed at length in the dissent, yet the majority was not persuaded. The *Fox Island* Court held that the challenging partner (Frey) "attempted to save the Partnership from bankruptcy, represented the Partnership and thus may seek an award under Section 303. *Id.* at 967.  The Court in *Hancock as Tr. of Hillman Mather Adams Norberg Tr. v. Blair House Assocs. Ltd. P'ship,* No. 2:22-CV-00099-JDL, 2023 WL 2743641, at *5 (D. Me. Mar. 31, 2023), cited *Fox Island* decision for the proposition that a partner, who <u>acts on behalf of the partnership</u> in challenging an

-16-

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

involuntary petition on grounds that the partnership is paying its debts that are not subject to bona fide as they become due, is entitled to fees.

These decisions can easily be squared. A general partner, who tries to save the partnership from bankruptcy, is acting for the debtor under 11 U.S.C. § 101(13) and F.R.B.P. 9001, may be entitled to fees. But, as here, where the putative general partner asserts that the partnership never existed, he is not saving the alleged non-existent partnership from bankruptcy. Instead, he is representing his individual interests. Mr. Sabadash is more like the type of non-debtor party that the Court in *In re 8Speed8, Inc.,* 921 F.3d at 1195, held is not entitled to fees, and like the non-debtors in the *Miles* and *Hammer* cases it relied upon.

Section 101(13) and Rule 9001(5)(B) also do not  support an award of fees to Mr. Sabadash. Section 101(13) states: "The term 'debtor' means person or municipality concerning which a case under this title has been commenced." Mr. Sabadash was not a "person…concerning which a case under this title has been commenced." *Mr. Sabadash's replies in support of his Fee and Sanction Motions did not respond.* Rule 9001(5)(B) only defines a general partner as a debtor for purposes of performing an act for a partnership or appearing for examination. It does not define a putative general partner as a debtor for purposes of section 303(i), so fees may not be awarded to a prevailing putative general partner under that statute. See 10A *Collier on Bankruptcy* (16th ed. 2025), ¶ 9001.06. *Mr. Sabadash's replies in support of his Fee and Sanction Motions did not respond.*

Rule 1011(a) also is not a basis for a general partner's right to fees under section 303(i). It states: "Who May Contest a Petition…..In a partnership case under Rule 1004, a nonpetitioning general partner-or a person who is alleged to be a general partner but denies the allegation-may contest the petition." Rule 1011(a) permits a general partner to challenge an involuntary petition under section 303(b)(3)(A), yet section 303(i) does not refer to a "general partner," much less a self-described "putative" general partner. It states that the Court may "grant judgment—(1) against the petitioners and in favor of the debtor." *Mr. Sabadash's replies in support of his Fee and Sanction Motions did not respond.*

/ /

-17-

## 2.    Mr. Sabadash's New Arguments Were Incorrect

When Mr. Sabadash finally addressed the threshold issue of a putative general partners' entitlement to fees under section 303(i) for then first time in his replies in support of his Fee and Sanction Motions, he cited *Havens v. Leong P'ship*, 788 F. App'x 526, 527 (9th Cir. 2019), in asserting "the Ninth Circuit has ruled that a putative partner who defeats an involuntary bankruptcy is entitled to fees." (Docket no. 106, at 1:25-27.)  Mr. Sabadash's blind reliance on the Ninth Circuit's decision on *Havens v. Leong P'ship* was misplaced.  In that decision, the Court affirmed the decision of the Court in *Havens v. Leong P'ship,* 586 B.R. 760, 767 (N.D. Cal. 2018), which explained the previous ruling of the bankruptcy court that dismissed the case.  The dismissal order was not on appeal to the District Court or the Ninth Circuit in that case.

The dismissal order previously was appealed to the BAP in *In re Leong Partnership*, 2018 WL 1463852 (9th Cir. B.A.P. Mar. 23, 2018), *aff'd,* 788 F. App'x 539 (9th Cir. 2019).  The issue was whether the claims of petitioning creditors were in bona fide dispute.  After the opposing alleged partner's (Leong) motion to dismiss was denied, he brought a motion for summary judgment.  The Court ruled: "As for Havens' claims, the bankruptcy court determined based on the uncontroverted facts that both claims were subject to bona fide dispute." *Id.* at *4.  "There is simply nothing to support the contention that the Leong Partnership owed Havens rent and salary." *Id.* at *7.  "The same is true regarding Havens' tort claims, which remain unliquidated." *Id.* "Given the absence of any evidence to suggest that the Leong Partnership was liable to Havens for rent and salary, or for any tort, the bankruptcy court correctly ruled that Havens failed to establish a genuine issue that his claims were beyond bona fide dispute." *Id.* at *8.

In *dicta,* the Court then went on to address the statements that the partner/creditor (Havens) relied upon to prove the existence of the partnership.  Even the Court acknowledged the *dicta*: "The parties and the bankruptcy court invested much time and effort addressing the existence of the Leong Partnership. Because Havens' claims were subject to bona fide dispute, <u>our analysis of the existence of the partnership is not essential to our resolution of this appeal</u>." *Id.* at *8, emphasis added.  It then noted: "The litigant statements that Havens relied upon to fashion the existence of the Leong Partnership were, themselves, equivocal at best." *Id.* at *8.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

In affirming the BAP's decision, the Ninth Circuit *only* relied upon the bona fide dispute as to creditors' claims: "Second, the bankruptcy court correctly determined that there existed a bona fide dispute as to the validity of the petitioning creditors' claims against Leong Partnership for salary and rent and for tort liability." *Havens v. Leong (In re Leong P'ship)*, 788 F. App'x 539, 540 (9th Cir. 2019). It said nothing about the BAP's *dicta* regarding the existence of the partnership as a possible basis for the dismissal order.

The dismissal the involuntary case in *Leong* was based upon the dispute as to creditors. The dispute as to the existence of the partnership was raised, but it was *dicta* as far as the *Leong* decisions were concerned. Mr. Sabadash's argument regarding an entitlement to fees for disputing the existence of the partnership is founded on that *dicta*, while ignoring the distinction between a partner who has attempted to save a partnership from bankruptcy (such as in *Fox Island* and *Blair House*) and a non-debtor party (such as in *8Speed8*, *Miles* and *Hammer*), who cannot be viewed as acting on behalf of the debtor.

Responding Parties' oppositions to the Fee and Sanctions Motions also explained that in *In re 8Speed8, Inc.*, 921 F.3d at 1196, the Court held punitive damages may be awarded after an unsuccessful involuntary petition due to the serious consequences to the debtor (such as loss of credit) that can flow from the initiation of involuntary proceedings, but that Mr. Sabadash cited no such consequences to the partnership or himself (nor could he, given his incarceration in Russia) so he is not entitled to punitive damages. *Mr. Sabadash's replies did not respond.*

### 3. Mr. Sabadash's Replies Ignored Other Important Arguments

Mr. Sabadash's replies in support of his Fee and Sanctions Motions did not respond to the following analysis in Responding Parties' oppositions to the Fee and Sanctions Motions, all of which affect the propriety of fees and sanctions that are requested:

Mr. Gofman's State Court judgment meant that her claim was not in bona fide dispute. *In re Marciano,* 708 F.3d 1123, 1127 (9th Cir. 2013). (Docket no. 104, at 10 and 31.)

The Court should not consider the self-interested declarations of Alexander and Larissa Sabadash. (Docket no. 104, at 24-27.)

Mr. Sabadash's supplemental declaration was contradicted by detailed declarations of Mr.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

-19-

Itkin and Ms. Gofman.  (Docket no. 104, at 27-29.)

The Partnership Minutes and Information Services Agreement were not forged, and Mr. Sabadash did nor assert the issue of forgery before the Russian courts or in his ex parte application in the Gofman State Court action.  (Docket no. 104, at 30-31.)

Regarding the argument that Mr. Grant's proof of claim no. 11 was invalid: the August 25, 2021 order submitted by Mr. Sabadash did not have a round stamp showing its authenticity, whereas there was the required round stamp on the September 6, 2021 Arbitration Award (based upon the proceedings on August 31, 2021) that was the basis of Mr. Grant's proof of claim no. 11 was valid.  (Docket no. 104, at 30-31.)

The misspelling on the partnership stamp was not evidence of the Partnership Agreement being fabricated.  Mr. Itkin did not order it.  Ms. Gofman ordered it at the last minute because it was needed, but she did not notice of misspelling.  (Docket no. 104, at 31-32.)

Regarding the Russian version of Partnership Minutes: They were legible enough to be translated; the original was submitted by her to the Russian Court but not received back; and a more legible copy was attached to Motion for Reconsideration.  (Docket no. 104, at 31.)

Ms. Gofman's judgment has not been paid.  (Docket no. 104, at 31-32.)

**E.      Mr. Sabadash's New Arguments Regarding Mr. Grant's Proof of Claim, Which Mr. Sabadash's Counsel Imported from AFB's Position in the District Court Action, Are Immaterial and Incorrect**

**1.      The Dispute with Mr. Grant in District Court**

Mr. Zorkin is AFB's counsel in District Court case number 2:25-cv-11869-JFW (MBKx) in which Aleksandr Grant has petitioned the Court for recognition of the September 6, 2021 arbitration award that also was the basis of his proof of claim no. 11 and a second arbitration award dated August 15, 2025.  After extensive briefing by the parties, Judge Walter dismissed Mr. Grant's original petition with leave to amend primarily on grounds that the arbitration award was not properly authenticated in light of AFB's incredible contention that it was forged.  (Responding Parties' RJN, Ex. 2.)  With leave of Judge Walter, Mr. Grant filed an Amended Petition on May 27, 2026, which included apostilled, properly-authenticated copies of the First and Second

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

Arbitration Awards as Exhibits 1 and 2 to the declaration of Russian Arbitrator Dmitry Valeryevich Knyazev, who issued both Awards. (*Id.*, Ex. 3.)  On behalf of AFB, Mr. Zorkin filed an opposition on June 15, 2026, which was supported by declarations from Mr. Zorkin, Darya Trubina, Nadezhda Yurasova, Larissa Sabadash, Alexander Sabadash, Tatiana Hay, Tatiana Padalko, and Andrew Wood.  (*Id.*, Ex. 1, docket nos. 59 to 70 .)  Mr. Grant filed his reply on June 22, 2026. (*Id.*, Ex. 4.)  The hearing is scheduled for July 13, 2026 (*id.*, Ex. 2) , although it is likely that Judge Walter will decide the Amended Petition without a hearing, just as he did with Mr. Grant's original petition.

Mr. Zorkin submitted an abbreviated version of his filings in District Court in the form of the Supplemental Brief that he filed in this case on June 16, 2026, which not coincidentally is supported by declarations from Mr. Zorkin, Darya Trubina and Nadezhda Yurasova that largely duplicate their declarations that Mr. Zorkin filed in the District Court action on June 15, 2026.

### 2.    Mr. McCarthy and Mr. Caceres Did Not Sign Mr. Grant's Proof of Claim No. 11

Sanctions under FRBP 9011 are premised on counsel signing a pleading or other documents filed with the Court.  Mr. McCarthy neither signed nor filed proof of claim no. 11, and he was not Mr. Grant's counsel.  Regarding that claim, paragraph 7 of Mr. Caceres' declaration that was attached to the Oppositions to Mr. Sabadash's Fee and Sanctions Motions explained:

> With regard to the Aleksandr Grant claim (POC 11), this claim was never objected to by Mr. Sabadash, and only raised for the first time in his Sanctions Motion. Hence, even if the claim were in fact frivolous, it could not have caused Mr. Sabadash to incur any damages or costs, even if he was otherwise entitled to collect such damages and costs as a self-described "putative partner."  I also note that I did not sign this proof of claim.  Regardless, my office did not conspire to falsify a claim with Mr. Itkin regarding this matter, as Mr. Sabadash would have this Court believe.  Rather, my office received information and documents through Yakov Fridman.  In short, we reasonably believed the claim to be valid based on the documents we examined, and the fact that the entities against which Mr. Grant had obtained an arbitration decision were owned by the Itkin & Sabadash Partnership. (Footnote 9.)
>
> A copy of the arbitration award and an English translation of that award is attached to Mr. Grant's proof of claim no. 11.  It is dated August 31, 2021.  Mr. Zorkin contends it is "fake" because the arbitrator supposedly emailed an order dated August 25, 2021, that is attached as Exhibit 22 to Mr. Zorkin's declaration, and it stated that the arbitrator lacked jurisdiction.  At no point did I receive any information indicating that this arbitration award was falsified, or have any reason to believe it was.  Further, if the Court compares Exhibit 22 to Mr. Zorkin's

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

declaration (the alleged August 25, 2021 order) to the order attached to Mr. Grant's proof of claim, which is Exhibit 24 to Mr. Zorkin's declarations, it is notable that the Russian version of the alleged August 25, 2021 order attached to Mr. Zorkin's declarations does not have the arbitrator's official round stamp (docket no. 90-1 and 91-1, at 257 of 348), which means it is not authenticated as a filing in that arbitration. However, the August 31, 2021 order that is attached to Mr. Grant's proof of claim contains that round stamp on the first page and the last page. (Docket no. 90-1 and 91-1, at 266 and 286 of 348.) The signature block in the translated version of the August 31, 2021 order states:

Sole judge, Knyazev Dmitry Valerievich [Signature]

Ad hoc tribunal for specific dispute resolution

Official round seal of the issuing authority

The fact that it contains the official round seal suggests that the August 31, 2021 order is legitimate and that the August 25, 2021 order is in fact a fake order. In short, there was no reason for Mr. Shamash or I to suspect that the August 31, 2021 order was fake.

Moreover, I note that Mr. Zorkin fails to explain in the Fee Motion and the Sanctions Motion why he has not taken any steps with the arbitrator to vacate the August 31, 2021 order, if he truly believes it was fabricated.

(Docket nos. 101 and 104, Caceres Decl.)

### 3.    Mr. Grant's Proof of Claim No. 11 Did Not Cause Damages

Mr. Grant's proof of claim No. 11 was never formally objected to by Mr. Sabadash. The objection to that claim was informally raised for the first time in Mr. Sabadash's Sanctions Motion. Even if the claim is frivolous, it did not cause Mr. Sabadash to incur any damages.

### 4.    The Dispute With Mr. Grant is Irrelevant to Mr. Sabadash's Fee and Sanctions Motions

The premise of the Supplemental Brief simply makes no sense. It argues that Mr. Itkin's counsel (Mr. McCarthy) and the Creditors' counsel (Mr. Caceres) should have conducted an adequate investigation and determined what Mr. Zorkin believes he has later correctly determined, which is that the Arbitration Award that is the basis of Mr. Grant's District Court action and that was the basis of his proof of claim no. 11 was forged and fraudulent.

Mr. Grant's proof of claim no. 11 had no bearing on the dismissal of this case, which means it has no bearing upon whether Mr. McCarthy and Mr. Caceres should be sanctioned under 11 U.S.C. § 303(i) and F.R.B.P. 9011. Mr. Grant's proof of claim was filed on June 2, 2025, which was well after Mr. Sabadash filed his Motion to Dismiss on March 20, 2025 (docket no. 8),

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

and his supporting replies on April 15, 2025 (docket no. 21). Mr. Sabadash did not argue and could not have argued that Mr. Grant's future proof of claim was without merit because it was based upon a forged arbitration award and that the petition should be dismissed. Mr. Itkin's opposition to the Motion to Dismiss was filed on April 8, 2025, did not defend the petition on the basis of Mr. Grant's future proof of claim. (Docket no.16.)

On May 1, 2025, Mr. Itkin filed a Request for Leave to File "Supplemental Brief on Limited Issue of Ruling of Russian Ninth Arbitration Court of Appeal; Request for Judicial Notice," which had the brief attached. (Docket no. 45.) That Request sought to address certain new arguments made by Mr. Sabadash in the replies that he had filed on April 15, 2025. The proposed supplemental brief also was not based upon Mr. Grant's future proof of claim no. 11.

The hearing on Mr. Sabadash Fee and Sanctions Motions initially occurred on April 22, 2025, at which there was limited argument. (Docket no. 85; also see docket no. 89, Ex. J, Transcript 4/22/2025, at 7:-21.) The hearing was continued to June 3, 2025, at which the Court read and/or paraphrased its 21-page tentative ruling, which the Court acknowledged it was still working on. (Docket no. 87; also see docket no. 89 (Motion for Reconsideration), transcript 06/03/2025, at 6-23.) Mr. Grant's proof of claim no. 11 had just been filed the previous day on June 2, 2025. The merits of that proof of claim, which Mr. Sabadash had not objected to, was not a basis of the Court's June 16, 2025 Memorandum.

With this chronology in mind, Mr. Sabadash's Supplemental Brief makes no sense. Mr. Grant's proof of claim no. 11 was not a basis of the petition or Mr. Itkin's opposition to Mr. Sabadash's Motion to Dismiss, so Mr. Itkin's counsel did not violate section 303(i) or Rule 9011 in prosecuting the involuntary petition based upon that future claim. There is a further lapse of logic in Mr. Sabadash arguing that Creditors' counsel violated Rule 9011 by filing proof of claim no. 11 on June 2, 2025, because it was immaterial to the Court's June 16, 2025 Memorandum.

### 5.    To the Extent Mr. Grant's Proof Claim No. 11 Is Relevant, It Was Deemed Allowed

Mr. Sabadash never filed an objection to Mr. Grant's proof of claim no. 11. That meant the claim was deemed allowed under 11 U.S.C § 502(a). To the extent the merits of that claim

have any bearing upon the Fee and Sanctions Motion, it was valid.

### 6.    The Merits of AFB's Contentions Should Be Determined in the District Court Action

There is an existing dispute between Mr. Grant and AFB regarding the validity of the arbitration award. It has been fully briefed. Mr. Grant's Amended Petition is scheduled for hearing on July 13, 2026. This Court should exercise deference to Judge Water in allowing him to decide the issue as between parties to the actual dispute, rather than this Court attempting to decide whether Mr. Sabadash's duplicative arguments in his Supplemental Brief are so compelling and correct that Mr. Itkin's counsel and the Creditors' counsel should be sanctioned under Rule 9011 for not conducting the significant investigation done by Mr. Zorkin <u>after the Court dismissed this case</u>, and then failing to come to the conclusion that Mr. Zorkin supposedly is correct.

Assuming arguendo that counsel for Mr. Itkin and the Creditors' counsel should have conducted the very involved investigation that Mr. Zorkin conducted <u>after</u> dismissal of the involuntary case, what were they supposed to have done with that information? The case already had been dismissed. The Motion for Reconsideration that was filed shortly after dismissal mentioned proof of claim no. 11, but the validity of that claim is not material to that motion.

### 7.    Mr. Grant's Proof of Claim No. 11 is Based On An Authenticated Arbitration Award

As mentioned above, Judge Walter dismissed Mr. Grant's original petition with leave to amend because it was based upon an inadequately authenticated Arbitration Award. (Responding Parties' RJN, Ex. 2.) Mr. Grant submitted a properly authenticated copy of the First and Second Awards with his amended petition along with two supporting declarations from Russian Arbitrator Dmitry Valeryevich Knyazev, who issued the First Award dated September 6, 2021, upon which Mr. Grant based his proof of claim no. 11, and the Second Award dated August 15, 2025 . (Responding Parties' RJN, Ex. 3.)

Copies of Arbitrator Knyazev's declarations are filed herewith. The first declaration is the "Declaration of Russian Arbitrator, Dmitry Valeryevich Knyazev and Exhibits 1 to 6 Hereto in Support of Amended Petition to Confirm Foreign Arbitral Award," docket no. 58-4. This

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

declaration explains that Arbitrator Knyazev was the Russian Arbitrator who issued the First Award dated September 6, 2021, in favor of Davilla Investing Limited and against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited for the "principal debt in the amount of USD 1,022,000 (one million twenty-two thousand U.S. dollars), plus accrued interest in the amount of USD 782,017.80 (seven hundred eighty-two thousand seventeen U.S. dollars and eighty cents). The First Award states that Michael Zorkin appeared in the arbitration proceeding, as does paragraph 3 of Arbitrator Knyazev's declaration. Exhibit 1 to Arbitrator Knyazev's declaration is an apostilled, properly-authenticated copy of the First Award. A copy of the First Award was attached to Mr. Grant's proof of claim no. 11, which was filed on June 2, 2025, in this Chapter 7 case.

Arbitrator Knyazev also issued the Second Award dated August 15, 2025, which concerned recovery of the debt under the First Award. Exhibit 2 to his declaration is an apostilled, properly-authenticated copy of the Second Award. The Second Award confirmed that the rights of Davilla Investing Limited under the First Award had been assigned to Mr. Grant by written agreement dated May 15, 2023. The Second Award held "AFB Trading One, Inc. and Golden Sphinx Limited jointly liable to pay Aleksandr Aleksandrovich Grant, the successor of Davilla Investing Limited, the principal debt in the total amount of 1,807,503.80 USD… and interest for the use of funds for the period from August 30, 2021, to August 15, 2025, in the amount of 962,853 USD…." It also held "Golden Sphinx Limited jointly liable to reimburse Aleksandr Aleksandrovich Grant, the successor of Davilla Investing Limited, legal expenses in the amount of ₽300,000 (Three hundred thousand rubles)."

The second declaration is the "Declaration of Dmitry Valeryevich Knyazev re: Response to Docket Nos. 49 and 50 and Exhibits A to C Hereto," docket no. 58-11. This Declaration responds to a submission by AFB dated March 23, 2026, in the District Court Action. It explains Arbitrator Knyazev's authority as the arbitrator with the "International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation (ICAC at the RF CCI….)", which is "an independent permanent arbitration institution located in Moscow, Russia," and "is the leading arbitration institution in Russia and in East European countries which deals with resolving

-25-

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

disputes of international nature." It explains that "[t]he US court has recognized and enforced three arbitral awards issued by the ICAC at the RF CCI against a US company." On page 2, Arbitrator Knyazev refers to the "the letter purportedly signed by the secretary of ICAC (Exhibit A)," which Mr. Zorkin submitted to the District Court on behalf of AFB. That is the submission dated March 23, 2026/ In addition to questioning the letter's authenticity, Arbitrator Knyazev further explains the lack of authority of the signer:

> The letter is produced by ICAC department of Internal, sports disputes, as evident from the letterhead. This department is not involved with contractual and other civil law relationships arising in the course of foreign trade and other forms of international economic relations. The ICAC department of Internal, sports disputes would not be correct department to provided administrative or logistical support to the ad hoc arbitration involving 2021 or 202s awards. The case number 1aoo-4/1301 should not be registered in ICAC department of Internal, sports disputes.

(Declaration, p. 2, ¶ 2, emphasis in original.)

In further supporting the authenticity of his First Award, Arbitrator Knyazev states:

> 5.    ICAC Chairman A.A. Kostin has approved and had every right to approve my Arbitration Award dated August 31, 2021, in his capacity of President of the ICAC. Secretary's signature to approve awards is not at all required.

> 6. My Arbitration Award dated August 31, 2021, bears seal of the Chamber of Commerce and Industry of the Russian Federation (CCI RF), and true signature of ICAC Chairman A.A. Kostin, as evidenced by submitted apostilled documents.

The inadmissible letter dated March 23, 2026, shows it was requested by "D. Trubina." It purports to be from the V.A. Frolochkin, who is identified as the ICAC Executive Secretary. It is not a court document. It is not even authenticated by a declaration from V.A. Frolochkin. The declaration of Ms. Trubina that Mr. Sabadash filed with this Court on June 16, 2026, does not attempt to authenticate it. (Docket no. 137-2.)

Instead, Ms. Trubina's declaration (presumably drafted by Mr. Zorkin) makes the knowingly false argument that the First Award appears to have been prepared later and back-dated. She states: "The decision of D.V. Knyazev was issued on August 31, 2021 (hereinafter, the Decision of August 31, 2021)." (Docket no. 137-2, ¶ 6.) "That is, in the Decision of August 31, 2021, the court referred to the clarifications of the Russian Ministry of Justice dated September 2,

2021, i.e., clarifications dated two days after the decision was rendered."   (Docket no. 137-2, ¶ 8.) Mr. Zorkin and Ms. Trubina are intentionally misleading this Court.  The First Award reports *the results* of the August 31, 2021 arbitration  hearing.  It was not "issued" on or *dated* August 31, 2021.  On the first page of the English translation, it is quite clearly *dated* September 6, 2021.  Mr. Zorkin, who professes fluency in Russian, and Ms. Trubina, who states she is "a practicing attorney in the Russian Federation specializing in bankruptcy and corporate law matters," presumably were able to translate the stamped *date* of "06 CEH 2021" on the first page of the Russian version of the First Award.  "CEH" is the abbreviation of the Russian word "сентябрь," which means September, as a simple Google search would have told them, but which they probably already knew.  Obviously, September 6, 2021, is four days *after* the date of September 2, 2021, that is referred to in the First Award.

On June 19, 2026, Mr. Grant filed his reply in the District Court Action in support of his amended petition, which fully explains why it should be granted.  (Responding Parties' RJN, Ex. 4.)  The relevant analysis from that reply will be repeated below.

**8.      Mr. Grant's Reply in the District Court Action Explains That the Opposition of AFB, Like Mr. Sabadash's Arguments to This Court, Are Based Upon False and Inadmissible Documents**

Since Mr. Sabadash chose to repeat the analysis he submitted to the District Court in opposition to Mr. Grant's Amended Petition, Responding Parties believe it is appropriate to repeat the responding analysis of Mr. Grant in the Reply that he filed in the District Court action on June 19, 2026.  (Responding Parties' RJN, Ex. 4.)  The following analysis is a verbatim quote from that Reply.  The Reply of Mr. Grant in the District Court action stated as follows:

*Quote from Mr. Grant's Reply (Responding Parties' RJN, Ex. 4, pp. 5-15):*

**I.      PRELIMINARY STATEMENT.**

In the original opposition, Respondent's near-exclusive position was that the Awards were *"fake. A phony. A forgery."* Original Opp. (Dkt. No. 18) at 1. That accusation was and is specious from the start. It relied on mischaracterizations of disputed Russian-language documents by

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7ᵀᴴ FLOOR
LOS ANGELES, CALIFORNIA 90071

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

counsel of record using speculation about institutional seals by witnesses with no forensic qualification and challenging the entirety of the Awards based on a one-letter Cyrillic-orthography complaint. The prior asserted absence of an apostille that Respondent insisted could not be produced has been produced and valid the Awards as genuine undisputedly.

Petitioner now produced the apostilles and each Award now before this Court are supported by the true Declarations of arbitrator Knyazev Dmitry Valeryevich and Petitioner Aleksandr Aleksandrovich Grant which bear apostilles issued by the competent authority of the Russian Federation under the Hague Convention of October 5, 1961.[3] The Respondnet's [sic] *"fake"* theory has been neutralized by the very international authentication Respondent represented could never be obtained themselves.

Confronted with that evidence, Respondent does not now contend, in this Opposition, that the Awards are forgeries. The accusation is conspicuously absent. In its place, Respondent recycles the same five *"indicia of forgery"* from its original Opposition — repackaged through different witnesses, presented this time as *"expert"* opinion or *"institutional"* evidence rather than as direct forgery accusations.

In the latest opposition, Mr. Zorkin no longer signs his own name to the forgery charge. The translator, Ms. Hay, improperly opines on a single Cyrillic dieresis and the Russian counsel, Trubina, speculates about *"individuals outside Russia"* having drafted the Award. The opposition also wrongly claims that their ICAC letter and the Russian Ministry of Justice letter address procedural questions that confirm, rather than refute the validity of an *ad hoc* arbitration conducted under FZ-382 and the UNCITRAL Rules.

Each of these arguments was raised in substance in the original Opposition and each was addressed in Petitioner's original Reply (Dkt. No. 31). Thus, the recycled arguments fail after presentment of apostilled Awards. As such, recycling the same theories through new witnesses

---

[3] Petitioner is still being receipt of apostilled declarations from the Russian Federation which are expected to be lodged on or about the week of June 29, 2026 or sooner as international processing and transit times had been and are compromised due to the bureaucracy and war time challenges in that part of the world. Dkt#58-3 and 58-4.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

does not rehabilitate arguments that the international authentication provided now foreclosed.

Petitioner has been held to the apostille standard by Respondent and by this Court and the Court found in its April 21, 2026 Order that an amended petition with apostille certification was proper. Petitioner has now satisfied that standard fully but Respondent, by contrast, has submitted five foreign-national declarations from Trubina (Russia), Yurasova (Russia), Aleksandr Sabadash (Russia, incarcerated), Padalko (Russia), and Wood (Jersey, United Kingdom), without one apostilled and none of which is consularly authenticated. Accordingly, the Respondent's evidence is faulty on top of being without good basis.

Three foundational facts dispose of the opposition and require confirmation under 9 U.S.C. § 207. **First,** both Awards and the arbitrator's Declaration are apostilled or originally signed with apostilled copies in transit as well. That authentication is conclusive of genuineness under Article IV of the New York Convention.

**Second,** the person with first-hand dispositive knowledge of every factual dispute Respondent raises, the arbitrator, has sworn under oath that the Awards are genuine, that he did not issue the alleged August 25, 2021 dismissal order, that the August 31, 2021 hearing proceeded as scheduled, that Tatiana Padalko personally appeared and was advised of the continuance, and that the proceeding was conducted as an *ad hoc* arbitration under FZ-382 and the UNCITRAL Rules. Knyazev Second Decl. ¶¶ 1-19; Knyazev Original Decl. (Dkt. No. 31) ¶¶ 1-23; Knyazev Supplement Decl. (Dkt. No. 43) ¶¶ 1-2.

**Third,** AFB Trading One, Inc. is the California shell of Aleksandr Vitalievich Sabadash, a convicted Russian financial criminal who has been incarcerated in Moscow since May 2014, a fact Sabadash himself has sworn to in this District. (Sabadash Decl. attached to Dkt. No. 31 as Ex. 11.) Thus, the forgery arguments Respondent waged in this Court is actually being orchestrated from a Russian prison cell through a California shell corporation by the same counsel (Zorkin Firm) who simultaneously represents Sabadash in the related involuntary-bankruptcy proceeding (Case No. 2:25-bk-11235-NB).

Hence there is no viable Article V defense survives these facts and the Court has good cause to grant the amended petition and all the requested relief.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

## II.    THE KNYAZEV DECLARATIONS ARE DISPOSITIVE OF EVERY FACTUAL DISPUTE.

Federal Rule of Evidence 901(a) requires only "testimony of a witness with knowledge" to authenticate. The arbitrator presided over the hearings, who took the evidence and authored both Awards, has provided all required facts and evidence under oath. No more authoritative form of evidence is available to a court asked to confirm a foreign arbitral award. *Vatyan v. Mukasey,* 508 F.3d 1179, 1185 (9th Cir. 2007). The apostilled Knyazev Second Declaration establishes:

(1) the First Award (8/31/2021) and Second Award (8/15/2025) are genuine, executed by the arbitrator, and bear his authentic seal (Knyazev Second Decl. ¶¶ 3-4, 13, 19; Exs. 1-2);

(2) no order dismissing the proceedings was issued on August 25, 2021, and the document Respondent presented as Dkt. No. 18-1, Ex. 14 is not authentic (Knyazev Second Decl. ¶¶ 11, 14, 19; Knyazev Original Decl. ¶¶ 22-23); (3) the August 31, 2021 merits hearing proceeded on the continued date (Knyazev Second Decl. ¶¶ 5, 10, 13; Knyazev Original Decl. ¶ 9);

(4) Tatiana Padalko personally appeared at the 8/25/2021 hearing venue, was advised of the continuance, and agreed to notify Mr. Zorkin and Mrs. Sabadash (Knyazev Second Decl. ¶ 10; Knyazev Original Decl. ¶ 11);

(5) the proceeding was an *ad hoc* arbitration conducted under Federal Law No. 382-FZ and UNCITRAL Rules pursuant to the parties' August 23, 2012 Arbitration Agreement (Knyazev Second Decl. ¶¶ 1-2, 6 and Ex. 6); and

(6) Mr. Zorkin filed three written submissions in the arbitration on AFB's behalf, with substantive engagement on jurisdiction, the merits, and falsification — conduct inconsistent with absence of notice and inconsistent with belief that the case had been dismissed (Knyazev Second Decl. ¶¶ 6-9; Knyazev Original Decl. ¶ 12).

Respondent has offered no contrary testimony from any person who was present at the Moscow venue on August 31, 2021, no qualified forensic document examiner, no chain-of-custody declaration for any of its exhibits, and no expert report. What it has offered are Respondent's counsel's own mischaracterizations (Zorkin) which can be considered *ipse dixit*, interested-party denials (L. Sabadash, A. Sabadash, Padalko) along with the institutional letter

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

from the wrong institution (Yurasova/ICAC). Likewise the irrelevant Ministry-of-Justice clarification (Trubina) and their translator's typographical opinion (Hay), are not sufficient.

A US court reviewing a New York Convention award may not set aside the award based on speculation, hearsay, or the arbitrator's alleged mistakes. *Baker Hughes Servs. Int'l LLC v. Joshi Techs. Int'l Inc.,* 73 F.4th 1139, 1148 (10th Cir. 2023); *Mgmt. & Tech. Consultants S.A. v. Parsons-Jurden Int'l Corp.,* 820 F.2d 1531, 1534 (9th Cir. 1987) (review of foreign arbitral awards is "strictly limited").

### III.   RESPONDENT'S NEW EVIDENCE DOES NOT WITHSTAND SCRUTINY.

#### A.   The ICAC Letter Confirms And Does Not Contradict The *Ad Hoc* Status of the Arbitration.

Respondent's main exhibit is a letter from the International Commercial Arbitration Court at the Russian Chamber of Commerce and Industry ("ICAC"), confirming that ICAC "never, at any time, including in 2021 or 2025, provided administrative or logistical support to the ad hoc arbitration involving the parties and arbitrator D.V. Knyazev," and that Knyazev was not on ICAC's roster of registered arbitrators. Yurasova Decl. Ex. 1, p. 1. Curiously, Respondent treats this as proof the arbitration was fictitious when in fact the opposite is true.

The ICAC letter affirms what the Awards themselves recite, what the arbitrator has sworn to, and what the Arbitration Agreement of August 23, 2012 establishes that this was an *ad hoc* arbitration was a proceeding conducted by an arbitrator selected and stipulated to by the parties without administration by a permanent arbitral institution.

UNCITRAL Arbitration Rules Art. 6; Russian Federal Law No. 382-FZ § 2(17) (defining ad hoc arbitration as "conducted in the absence of administration by a permanent arbitral institution"). Thus, the First Award correctly states that the proceeding was held "in accordance with the provisions of Federal Law No. 382-FZ of 12/29/2015 'On Arbitration (Arbitral Proceedings) in the Russian Federation.'" Knyazev Second Decl. Ex. 1, p. 1; *see also* Knyazev Second Decl. ¶ 1; Knyazev Original Decl. ¶ 1.

The assertion that ICAC did not have Knyazev on its institutional roster and did not administer this case is precisely what an *ad hoc* arbitration is supposed to be. The New York

Convention does not require institutional administration at all and the Convention's authentication standard in Article IV is satisfied by "the duly authenticated original award or a duly certified copy thereof," together with the arbitration agreement. Here, the Court has been given both and thus it is irrelevant that whether ICAC was involved in the confirmation. Cleanly Respondent's argument inverts the structure of the Convention since, under that logic no ad hoc Russian arbitration could ever be enforced in the United States because ICAC and the Chamber of Commerce will by definition disclaim knowledge of it. That is not the law. *See, e.g., Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.,* 403 F.3d 85, 90 (2d Cir. 2005) ["review of arbitral awards under the New York Convention is "very limited ... in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Yusuf Ahmed Alghanim*, 126 F.3d at 23 (quoting *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993))."]

**B.      The Ministry of Justice Letter Confirms That *Ad Hoc* Arbitrators Require No State Authorization.**

Respondent's second institutional exhibit is asserted to be a letter dated April 7, 2026 from the Russian Ministry of Justice. Trubina Decl. Ex. 2. The letter confirms three points that defeat rather than support Respondent's opposition. **First,** the MoJ confirms that "the resolution of disputes through arbitration may be carried out... by an arbitral tribunal formed by the parties to resolve a specific dispute (ad hoc arbitration)." Trubina Ex. 2, p. 1. **Second,** the MoJ confirms that "an ad hoc arbitral tribunal is constituted by virtue of the parties' agreement for the purpose of resolving a specific dispute and ceases to exist after the dispute has been resolved. Given the nature of the ad hoc arbitration described above, no authorization to perform its functions is required." *Id.* at p. 2. **Third,** the MoJ confirms that Federal Law 382-FZ "does not provide for the maintenance by the Ministry of Justice of Russia of any register or list of persons who may perform, are performing, or have performed the functions of an ad hoc arbitrator." *Ibid.*

Each statement undermines Respondent's position since the MoJ confirms that ad hoc arbitrators (i) require no authorization, (ii) need not be registered, and (iii) function entirely from the parties' written agreement. Here, the Arbitration Agreement of August 23, 2012, which the

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

apostilled Awards expressly invoke and which Respondent's own attorneys did not contest as a written agreement during the underlying proceeding. Knyazev Second Decl. Ex. 6.

The MoJ's separate statement about the use of the Coat of Arms is a question of Russian administrative law unconnected to the validity of an arbitral award. Neither FZ-382, the New York Convention, the FAA, nor Article IV of the Convention requires any particular seal style, much less the absence of a coat of arms. In this case, the arbitrator's apostilled signature is what authenticates the Award. Accordingly, the challenge to the dieresis on the seal deals with symbology not the validity of arbitral proceedings and thus does not matter.

Trubina's separate accusation that the Award "appears falsified" and "was prepared retroactively by individuals residing outside of Russia who are not fluent in Russian, Russian laws, or Russian legal terminology" (Trubina Decl. ¶¶ 4-5) is pure speculation by a foreign attorney with no personal knowledge of who drafted the Award or where. It is inadmissible under FRE 602, 701, and 702, and is directly refuted by the apostilled Declaration of the arbitrator himself, who wrote the Award and is fluent in Russian language, law, and terminology.

**C.    Ms. Hay's One-Letter Typography Opinion Is Inadmissible and Was Already Addressed.** [Intentionally omitted.]

**D.    Mr. Zorkin's "Native .eml" Testimony Is Self-Authentication by Counsel of Record.**

Mr. Zorkin wears too many hats and cannot simultaneously act as Respondent's counsel of record and as its only fact witness on the events of August 2021. Now as a foundation witness for the "native .eml file," he incorrectly says it proves the case was dismissed. Zorkin Decl. ¶¶ 8-15.[4] But he purports to identify Internet headers, locate authentication checks, and authenticate

---

[4] Concurrently, Respondent lodged a flash drive (Dkt. No. 70) purporting to contain "native" Outlook versions of these same emails as Exhibits 26 and 27. By Respondent's own description, those exhibits are the identical August 25, 2021 emails already filed in PDF as Exhibit 15 (Dkt. No. 60-6); the Notice states the native files "will be provided to Petitioner's counsel," and Petitioner has not been served with copies of Exhibits 26 and 27 as lodged until June 18. In any event, the native metadata of an email's transmission does not authenticate the dismissal order said to be attached, which the arbitrator has declared under apostille he never issued. Knyazev Second Decl. ¶¶ 11, 14, 19.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

Microsoft Outlook metadata all from his one-sided personal review. He provides no chain of custody from receipt in August 2021 to production in 2026,--a 4.5-year gap. He also fails to provide any comparison with verified Knyazev emails. Zorkin fails to also provide any analysis from a qualified third-party forensic examiner. The advocate-witness conflict is direct and disqualifying. Cal. R. Prof. Conduct 3.7; *Comden v. Superior Court,* 20 Cal. 3d 906, 912 (1978). Even if admissible, Mr. Zorkin's metadata testimony does not establish what he claims since the email headers reflect server routing, not the content's authenticity.

A forged email document attached to a real email message produces a real header sequence. The **document** Mr. Zorkin describes, which he said is the alleged August 25, 2021 dismissal order, has already been declared **inauthentic** by the arbitrator himself under oath. Knyazev Second Decl. ¶ 11; Knyazev Original Decl. ¶¶ 22-23. As such, no quantity of header analysis by counsel of record can rehabilitate a document the arbitrator says he did not issue.

        **E.**      **Ms. Padalko's Denial Is Refuted by the Apostilled Arbitrator Declaration.**  [Intentionally omitted.]

        **F.**      **Respondent's Foreign-National Declarations Lack the Authentication Petitioner Has Been Required to Provide.**  [Intentionally omitted.]

**III.**    **EACH ARTICLE V DEFENSE FAILS.  [Intentionally omitted.]**

*The foregoing is end of the quoted portion of the Reply that Mr. Grant filed on June 19, 2026.* At pages 11-12, Mr. Grant's Reply concerns a one-page typography opinion of Tatiana Hay.  At pages 13-14, it addresses Ms. Padalko's denial of going to the Arbitrator's office.  At pages 14-15, it explains the lack of authentication of foreign national's declarations, which is an objection raised by Responding Parties in the concurrently-filed objections to the declarations of Darya Trubina and Nadezhda Yurasova.  At pages 15-18, Mr. Grant's Reply addressed AFB's "Article V" Defenses regarding notice of the August 31, 2021 arbitration hearing, the validity of the 2012 guaranty, the alleged incapacity of Golden Sphinx Limited, and the timeliness of Mr. Grant's petition under 9 U.S.C. § 207.  (Responding Parties' RJN, Ex. 4.)  Given the page limit on this Brief, that Mr. Sabadash did not submit declarations from Ms. Hay or Ms. Padalko, and that he did not raise any of those Article V defenses in the Supplemental Brief that he filed on June 16,

2026, this Supplemental Opposition does not quote analysis from Mr. Grant's Reply on those issues. However, if Mr. Sabadash seeks to introduce these new arguments in his Reply in support of his Fee and Sanctions Motions before this Court, Responding Parties refer this Court to that analysis by Mr. Grant.

**8.    The Supplemental Brief Is Based Upon Inadmissible Evidence**

Just as Mr. Sabadash did when he filed his Motion to Dismiss and Fee and Sanction Motions, the supplemental brief that Mr. Sabadash filed on June 16, 2026, is based upon inadmissible evidence. That evidence was objected to by Mr. Grant in the District Court action, but that did not deter Mr. Zorkin from submitting the same inadmissible evidence to this Court. The Responding Parties have filed Evidentiary Objections to that evidence, which should be determined first, if the Court chooses to involve itself in the dispute between Mr. Grant and AFB.

**IV.    CONCLUSION**

The Responding Parties respectfully request that the Court first rule on the evidentiary objections to Mr. Sabadash's declarations that they filed on August 5, 2025 (docket. no. 102); the objections to Mr. Sabadash's RJN that they filed on August 5, 2025 (docket no. 103); and the Evidentiary Objections to the further declarations filed by Mr. Sabadash on June 16, 2026, that are being filed with this Joint Supplemental Opposition.

Based upon the foregoing and the analysis set forth in Mr. Itkin's Motion for Reconsideration (docket no. 89) and in Responding Parties' oppositions to Mr. Sabadash's Fee and Sanctions Motions (docket nos. 101 and 104), Responding Parties respectfully request that the Court deny Mr. Sabadash's Fee and Sanctions Motions in their entirety.

DATED: June 23, 2026

HILL, FARRER & BURRILL LLP                CACERES & SHAMASH, LLP

By:  _/s/ Daniel J. McCarthy_             By: _____
    Daniel J. McCarthy                         Charles Shamash
Attorneys for Petitioning General Partner    Attorneys for Creditors and Joseph E. Caceres, in
GARRY Y. ITKIN, and Daniel J. McCarthy,      pro per
in pro per

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 515 South Flower Street, 7th Floor, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*):**JOINT OPPOSITION TO PUTATIVE PARTNER ALEXANDER SABADASH'S MOTION FOR FEES AND DAMAGES, UNDER 11 U.S.C. § 303(I) AND SANCTIONS UNDER FRBP 9011 AND THE COURT'S INHERENT AUTHORITY; (DOCKET NO. 91); DECLARATIONS OF GARRY Y. ITKIN, DANIEL J. McCARTHY, JOSEPH E. CACERES AND CHARLES SHAMASH**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date* June 23, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Joseph E Caceres jec@locs.com,  generalbox@locs.com
Daniel J McCarthy  dmccarthy@hillfarrer.com,  spadilla@hillfarrer.com;dflowers@hfbllp.com
Kurt  Ramlo Adam RamloLegal@gmail.com,  kr@ecf.courtdrive.com,ramlo@recap.email
Charles  Shamash cs@locs.com,  generalbox@locs.com
Oleg Stolyar  astolyar@loeb.com
United States Trustee (LA)  ustpregion16.la.ecf@usdoj.gov
Michael  Zorkin  mz@thezorkinfirm.com

☐  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 23, 2026 | Sonia Padilla | /s/ Sonia Padilla |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071