HILL, FARRER & BURRILL LLP
Daniel J. McCarthy (SBN 101081)
dmccarthy@hillfarrer.com
515 South Flower Street, 7th Fl.
Los Angeles, CA  90071-3147
Telephone: (213) 621-0802
Fax: (213)624-4840

Attorneys for Petitioning General Partner
Garry Y. Itkin and Daniel J. McCarthy, in pro per

CACERES & SHAMASH, LLP
Charles Shamash (SBN 178110)
cs@locs.com
Joseph E. Caceres (SBN 169164)
jec@locs.com
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212
Tel: (310) 205-3400
Fax: (310) 878-8308

Attorneys for Creditors and Joseph E. Caceres, in pro per

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:25-bk-11235-NB |
| ITKIN & SABADASH, | Chapter 7 |
| Involuntary Debtor. | **DECLARATIONS OF RUSSIAN ARBITRATOR DMITRY VALERYEVICH KYNAZEV IN OPPOSITION TO (1) PUTATIVE PARTNER ALEXANDER SABADASH'S MOTION FOR FEES AND DAMAGES, UNDER 11 U.S.C. § 303(I) (DOCKET NO. 90), AND (2) PUTATIVE PARTNER ALEXANDER SABADASH'S MOTION FOR FEES AND DAMAGES, UNDER 11 U.S.C. § 303(I) AND SANCTIONS UNDER FRBP 9011 AND THE COURT'S INHERENT AUTHORITY; (DOCKET NO. 91)** |
| | Date:    July 14, 2026<br>Time:    2:00 p.m.<br>Place:   Courtroom 1545 |

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

-1-

**TO:    THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY**

**JUDGE, AND TO ALL PARTIES IN INTEREST AND THEIR**

**ATTORNEYS OF RECORD:**

In response to the Supplemental Brief in Support of Motion for Sanctions under FRBP 9011 and the Court's Inherent Power" (docket 137) that was filed on June 16, 2026, and in opposition to (1) Putative Partner Alexander Sabadash's Motion for Fees and Damages, Under 11 U.S.C. § 303(I) (Docket No. 90), and (2) Putative Partner Alexander Sabadash's Motion for Fees and Damages, Under 11 U.S.C. § 303(i) and Sanctions Under FRBP 9011 and the Court's Inherent Authority, which are scheduled for continue hearing on July 14, 2026, responding parties Garry Y. Itkin, Daniel J. McCarthy and Joseph E. Caceres ("Responding Parties") submit the following attached declarations of Dmitry Valeryevich Kynazev that previously were filed by petitioner Aleksandr Aleksandrovich Grant, as assignee and successor to Davila Investing Limited, on May 27, 2026, in support of Mr. Grant's  Amended Petition in case no. 25-cv-11869-JFW (MBKx) before the United States District Court for the Central District of California (the "District Court action"):

1.    Declaration of Russian Arbitrator, Dmitry Valeryevich Knyazev and Exhibits 1 to 6 Hereto in Support of Amended Petition to Confirm Foreign Arbitral Award, docket no. 58-4 in the District Court action.

2.    Declaration of Dmitry Valeryevich Knyazev re: Response to Docket Nos. 49 and 50 and Exhibits A to C Hereto, docket no. 58-11 in the District Court Action.

Responding Parties request that the Court take judicial notice of Exhibits 1 and 2 to the first attached declaration, which are apostilled, properly-authenticated copies of the First Arbitration Award of Arbitrator Kynazev dated September 6, 2021, and the Second Arbitration Award of Arbitrator Kynazev dated August 15, 2025, both of which are the subject of Mr. Grant's petition in the District Court action.  "An American court can take judicial notice of a foreign judgment (citations)." *Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 696 (7th Cir. 2009); Federal Rule of Evidence 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it:…(2) can be accurately and readily determined from

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

sources whose accuracy cannot reasonably be questioned.")

Responding Parties further request that the Court take judicial notice of both declarations

regarding the fact that they were filed in the District Court Action on May 27, 2026.

DATED: June 23, 2026

HILL, FARRER & BURRILL LLP          CACERES & SHAMASH, LLP

By:   /s/ Daniel J. McCarthy          By: _____
    Daniel J. McCarthy                    Charles Shamash
Attorneys for Petitioning General Partner     Attorneys for Creditors and Joseph E. Caceres, in
GARRY Y. ITKIN, and Daniel J. McCarthy,    pro per
in pro per

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

# EXHIBIT 1

Joseph M. Kar (SBN 207414)
jkar@civillegal.com
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite PH-1220
Sherman Oaks, CA 91403
Telephone:  (818) 501-6930
Facsimile:   (818) 501-6935

**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH,
GRANT, ASSIGNEE AND SUCCESSOR OF
DAVILLA INVESTING LIMITED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual<br><br>Petitioner,<br><br>v.<br><br>AFB TRADING ONE, INC., a California Corporation;<br><br>Respondents. | **Case No.: 2:25-cv-11869-JFW (MBKx)**<br><br>**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV AND EXHIBITS 1 TO 6 HERETO IN SUPPORT OF AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**<br><br>**Judge: Honorable John F. Walter**<br>**Ctrm:  7A**<br><br>**DATE: JULY 13, 2026**<br>**TIME: 1:30 PM**<br>**CTRM: 7A**<br><br>**[9 U.S.C. § 207]**<br><br>**Trial: Not set** |

**TO THE HONORABLE COURT, ALL INTERESTED PARTIES AND**

1

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

**THEIR ATTORNEYS OF RECORDS:**

COMES NOW, PETITIONER, ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual, by and through his attorneys, and hereby respectfully submits the following declaration in reply to the opposition to the petition to confirm the foreign arbitral awards:

## DECLARATION OF DMITRY VALERYEVICH KNYAZEV, RUSSIAN ARBITRATOR

I, Dmitry Valeryevich Knyazev, declare as follows:

1. I am duly authorized to practice law in the Russian Federation and am authorized and practice as an arbitrator in the Russian Federation. I have personal knowledge of the facts stated herein, except where I expressly indicate that a statement is based upon my review of public records or information in the arbitration file. If called as a witness, I could and would testify competently to the facts stated in this declaration. This declaration was made in connection with the amended petition to confirm foreign arbitral awards pending with this Court. This signed declaration and its attachments/exhibits are provided with an apostille to certify and authenticate this declaration and its attachments and exhibits.

2. I am a citizen of the Russian Federation, hold a higher legal education (Diploma No. ABC 0715029, Specialized Institute of Jurisprudence of Moscow), and have no criminal record. I was duly appointed by the parties pursuant to their written Agreement on Identity of the Arbitrator and Applicable Regulations dated August 23, 2012 (the "Arbitration Agreement"), a true and correct copy of which is attached hereto as **Exhibit 6** and incorporated herein as if fully set forth. That Arbitration Agreement was received and admitted by me as evidence in the arbitration. That agreement also identifies me by name — "Juris Doctor Dmitry Valerievich Knyazev" — as the sole arbitrator appointed to serve pursuant to the parties' agreement, and reflects signatures on behalf of Agragorn Holdings

2

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

Limited, Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited. The signatory lines of the Arbitration Agreement identify Garry Itkin as the signing officer for Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited; and, as set forth in paragraph 8 below, witness Itkin testified at the underlying arbitration and confirmed under oath that he signed the Arbitration Agreement on behalf of those three entities in his respective authorized capacities, at the time of the hearing.

3.  I served as the sole arbitrator in the ad hoc arbitration concerning the debt dispute in the arbitration matter of Davilla Investing Limited against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited, Arbitration Case No. 1800-4/1301, the subject of which was decided by way of the final written arbitration award I issued on August 31, 2021. A true and correct copy of the final First Arbitration Award I issued on August 31, 2021 in the arbitration of Davilla Investing Limited against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited, Arbitration Case No. 1800-4/1301, is attached hereto as **Exhibit 1** and incorporated herein as if fully set forth. (Hereinafter "First Award").  The within First Award is genuine, contains a seal appearing on the First Award is my arbitral seal. The signature on the First Award is my signature.  In addition, the parties and their counsel made general appearances in the arbitration, including, Mr. Michael Zorkin making a general appearance for AFB Trading One, Inc. with Larissa Sabadash and Tatiana Padalko as its authorized representatives at the hearing, at the first arbitration hearing.

4.  Thereafter, a further arbitration hearing was held following an assignment of the creditor's rights under that award to Aleksandr Alksandrovich Grant by Davilla Investing Limited and concerning the non-payment of debt and the award.  After due notice to all parties of the hearing, I issued an August 15, 2025 Award and

3

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

made additional findings ("Second Award"). A true and correct copy of the final arbitration award I issued on August 15, 2025 in the arbitration of *Grant Aleksandr Aleksandrovich, the successor of Davilla Investing Limited against AFB Trading One, Inc. and Golden Sphinx Limited, under the Arbitration Award issued August 31, 2021 in* Arbitration Case No. 1800-4/1301, which is attached hereto as **Exhibit 2** and incorporated herein as if fully set forth. (Hereinafter "Second Award"). The within Second Award is genuine, contains a seal appearing on the Second Award is my arbitral seal. The signature on the Second Award is my signature.

5. The first arbitration proceeding was commenced by Davilla Investing Limited against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited for recovery of debt arising from the loan, debt modification/ forbearance agreement, and guarantees, which Defendants failed to pay. The arbitration file reflects that, on May 18, 2021, notice of arbitration with the statement of claim and annexes was sent by registered mail to all parties including Defendants. The file further reflected subsequent written and electronic participation by persons acting on behalf of the Respondents or aligned with their interests.

6. During the pendency of the first arbitration, I received communications and submissions from persons identifying themselves as representatives of the Respondents, including Tatiana Padalko, Larissa Sabadash, and Michael Zorkin (including from the email address mz@thezorkinfirm.com). These communications and submissions clearly demonstrated that the Respondents received actual notice and appeared in the underlying arbitration proceedings. For example, I received an email from Mr. Zorkin on August 25, 2021 at or about 3:50 am entitled, "Subject: AFB Trading One, Inc. and Golden Sphinx Limited" with several attachments and writing in the body to me in Russian,

"**Mr. Knyazev,**

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

Please find attached the Response to the Claim of Larisa Sabadash on behalf of AFB Trading One, Inc. and Golden Sphinx Limited.

**Michael Zorkin**

Managing Partner"

A true and correct copy of Michael Zorkin's email of August 25, 2021 at 3:50 am is attached hereto as **Exhibit 3** and incorporated herein as if fully set forth.

7. On July 19, 2021, Tatiana Padalko also wrote to the tribunal identifying herself as the financial administrator of Alexander V. Sabadash, and submitted a statement to the Tribunal with a copy of the ruling by the Moscow Region Arbitration Court in case No. A41-100887/19 dated November 10, 2020, which was appended to the case file confirming her authority to act on behalf of the Respondents. Attached hereto as **Exhibit 4** is a true and correct copy of Ms. Padalko's email of July 19, 2021 and my reply on August 9, 2021, and incorporated herein as if fully set forth. Her statement in substance was that the respondent organizations belonged to Sabadash and she had made accusations that the documents submitted to me in the dispute were falsified and that the claim expired under the statute of limitations. I considered those accusations and defenses in the due course of the proceedings. I reviewed the original documents presented in the arbitration, the submissions from the parties, and the additional information submitted to the tribunal. Based on that review, I found no falsification of the operative documents, and I found that the claim was not barred by the statute of limitations.

8. As part of the first arbitration proceedings, on August 5, 2021, I sent a written request for information to Garry Itkin, which responded shortly after. In his sworn testimony, Itkin stated, among other things, that he signed the Arbitration Agreement (**Exhibit 6**) on behalf of Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited in his respective authorized capacities, and was authorized to do so. I considered his testimony together with all

5

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

documentary evidence and party submissions in the arbitration. In the course of the arbitration, I also reviewed, among other things: (a) the April 20, 2010 Loan Agreement; (b) proof of transfer of approximately USD 1,022,000; (c) the August 23, 2012 Agreement on Modification and Deferral of Debt; (d) the related guarantees; (e) the parties' written arbitrator-selection agreement; and (f) the later assignment materials. Based on the evidence before me, I concluded that the relevant agreements were validly executed and enforceable.

9. On and about August 19, 23, 24, and 25, 2021, I received written various submissions from representatives of the Respondents, including Tatiana Padalko (in her capacity as court-appointed financial administrator for Sabadash A.V.), Larisa Sabadash (as Director of AFB Trading One, Inc. and Golden Sphinx Limited), and Attorney Michael Zorkin. I considered all of them in the arbitration. Importantly, the Respondents, by and through Mr. Zorkin and Ms. Sabadash, "confirmed proper notice of the hearing scheduled for August 25, 2021, at 12:00 PM Moscow time." **Ex. 1**, pg. 10 (bottom paragraph). Attached hereto as **Exhibit 5** is a true and correct copy of emails to/from Michael Zorkin, Esq., Larissa Sabadash and myself on July 19, 2021 and August 9, 23-25, 2021 re: AFB Trading One, Inc. and Golden Sphinx Limited, collectively, entitled "Missed deadline statement and Falsification of EV", and "Ad hoc arbitration procedure," and incorporated herein as if fully set forth.

10. On August 25, 2021, no party representative for Respondents appeared at the scheduled hearing time of 12:00 noon. I waited 30 minutes but instead Tatiana Padalko arrived more than two and one-half hours after the scheduled start time. I informed her that I had received the Respondents' late submissions and had elected to consider them despite the submissions being late; that as a result I would not proceed on the merits that day; and that the hearing was continued to August 31, 2021. Ms. Padalko acknowledged her understanding and expressed her gratitude to me that I was not proceeding without consideration of the Respondents' late

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

submissions.  Ms. Padalko also confirmed notice of the next hearing and that she would notify Michael Zorkin and Larisa Sabadash.

11.   At no time did I issue any order dismissing the arbitration for lack of jurisdiction at any time. No such order exists in my records and I have searched my email records and have found no communication matching the document submitted as Exhibit 14 to the Zorkin declaration filed with this Court on March 2, 2026, Dkt#18-1, Ex. 14 thereto, purportedly an order of dismissal of the underlying arbitration from me transmitted at approximately 2:12 AM on August 25, 2021. That document was not issued by me and was not signed by me.

12.   To be more precise, Respondents, by Michael Zorkin, Esq., attempted to make late submissions asserting issues such as liquidation, legal incapacity, and related defenses. However, those submissions did not invalidate the parties' arbitration agreement, did not constitute a proper and timely challenge to my appointment as the parties' selected arbitrator, and did not negate my jurisdiction under the parties' written agreement and the applicable arbitration law.  See, **Ex. 5**, above.  I want to be clear that the document attached to the declaration of Mr. Michael Zorkin in this case as Exhibit 14, Dkt# 18-1, is not authentic or genuine and is a false or fake order dismissing the underlying arbitration for lack of jurisdiction on August 25, 2021.  At no time did I issue any order at any time, dismissing the arbitration for lack of jurisdiction or terminating the proceedings. To the extent that document purports to bear my ruling or signature, it is false.

13.   But, the First Award, **Exhibit 1**, specifically finds and reflects that:

(a) Tatiana Padalko's response did not contest the arbitration agreement under the ad hoc procedure; and

(b) Larisa Sabadash's response likewise did not dispute my jurisdiction as Arbitrator, while instead only raising substantive defenses tied to liquidation and the alleged termination of guarantee obligations.

See, **Ex. 1**, pgs. 10-11.

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

14. Thus, at no time was there any motion to dismiss or objections raised contesting my jurisdiction by the respondents, or their representatives, Tatiana Padalko, Larissa Sabadash, Michael Zorkin, or anyone on behalf of the Respondents in the First Award.

15. I have attempted to locate the email and order Mr. Zorkin claims to have received from me on August 25, 2021 at or about 2:12 am, but after a diligent and reasonable search of my email records, I have not been able to find any such communication or transmission matching those reflected in Exhibits 14 and 15 to Mr. Zorkin's declaration, Dkt#18-1. I therefore cannot authenticate those exhibits; and again, the order purporting to dismiss the arbitration dated August 25, 2021 was NOT issued or signed by me (Exhibit 14 to Zorkin Declaration), ibid.

16. After the First Award was issued, an application to modify and renew the award was later submitted to me because there was a continued nonpayment of the debt reflected in the First Award of August 31, 2021. The application did not ask to re-evaluate or reconsider the merits of the First Award, but instead the relief requested included award additional relief arising from the non-payment of the debt with any accrued interest and costs, and in connection with the enforcement of an assignment of rights.

17. After commencement of further proceedings, and proper and due notice to all parties, I reviewed the Assignment Agreement dated May 15, 2023 between Davilla Investing Limited and Grant A.A. and admitted as sufficient evidence of Mr. Grant's standing to proceed as legal successor to the creditor and with respect to his rights to the unpaid indebtedness under the First Award. That proceeding was held in absentia since respondents did not appear or respond to the application. Therefore, on August 15, 2025, I issued a written Second Award (**Exhibit 2**) and made additional findings.

18. After learning of the opposition and objections to the original petition in this federal action, in or about March 2026, I conducted a brief search of public

8

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

records and files of the courts of the Russian Federation and related public records. After said review, it is my understanding that:

· Alexander Sabadash is a felon, who has been convicted three times of fraud and bank-fraud-related offenses in the Russian Federation. He is continuously incarcerated in various Russian penitentiary facilities, serving his sentences, since approximately 2014. Currently he is in midst of two additional pending criminal fraud trials in Moscow, Russian Federation, alongside his accomplice Tatiana Padalko, formerly his attorney.

· Tatiana Padalko (Alexander Sabadash former attorney) is charged with being Alexander Sabadash's co-conspirator in one of his criminal charges for fraud. She is currently held without bail in one of Moscow jails and is being prosecuted as a co-defendant with Alexander Sabadash.

· Darya Trubina is a Russian attorney acting in defense of Alexander Sabadash and Tatiana Padalko in currently ongoing criminal fraud proceedings noted above.

· Michael Zorkin is Alexander Sabadash's attorney in the United States. He also acts as attorney for AFB Trading One, Inc. and for Larisa Sabadash, the wife of Alexander Sabadash.

19.  I include these facts not for sensational effect, but because they are directly relevant to my assessment of credibility and Respondents current or future statements they might make or any new surprise accusations of falsification of documents in this action. Indeed, the current claims of falsification and fraud were similarly being advanced Respondents or their representatives during the first arbitration itself and were rejected.

20.  As an arbitrator, I invoke and reserve all immunities, privileges, rights and entitlements permitted me under law and treaty or convention with no communication or submission hereto to be considered a waiver.

I declare under penalty of perjury that the foregoing is true and correct under

9

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

the laws for penalty of perjury in the United States. Executed this ^K 30 day of April, 2026, in Moscow, Russian Federation.

_____

Dmitry Valeryevich Knyazev

10

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

# EXHIBIT 1

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV



«Согласовано»
Председатель МКАС при
Торгово-промышленной
палате РФ (Москва)
А.А.Костин
№ 1800-4
«06» 20
**0 6 СЕН 2021**

Арбитражный суд в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

Единый арбитр (судья), выбранный и согласованный сторонами,

Князев Дмитрий Валерьевич

Адрес: 109012, РФ, город Москва, улица Ильинка, д.4, оф. 102-103/

## РЕШЕНИЕ

31 августа 2021г. в г. Москва Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора (далее также – суд), в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича (далее также – судья или арбитр), рассмотрев исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) (далее также – истец) к Голден Спиритс Лимитед (Golden Spirits Limited) (далее также – Ответчик 1), ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 2), Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее также – Ответчик 3), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) (далее также – Третье лицо) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.

Третейское разбирательство проведено в соответствии с положениями Федерального закона № 382-ФЗ от 29.12.2015 г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382), в присутствии сторон:

от истца: Давилла Инвестинг Лимитед (Davilla Investing Limited) – адвокат Селезнева Ирина Борисовна, в подтверждение полномочий к материалам дела приобщена копия доверенности Davilla Investing Limited.

от ответчика 1: Голден Спиритс Лимитед (Golden Spirits Limited)

от ответчика 2: ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) - Татьяна Падалко, финансовый управляющий Сабадаша А.В., в подтверждение полномочий к материалам дела приобщена копия Арбитражного суда Московской области по делу №А41-100887/19 от 10.11.2020г.

от ответчика 3: Голден Сфинкс Лимитед (Golden Sphinx Limited)

от третьего лица: Аграгорн Холдингс Лимитед (Agragorn Holdings Limited)

24 августа 2021г. Суд получил Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) от гр. Сабадаш Ларисы, как от директора ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), как от директора Голден Сфинкс Лимитед (Golden Sphinx Limited).

24 августа 2021г. Суд получил Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) от гр. Падалко Татьяны Алексеевны, как от финансового управляющего Сабадаша А.В., как от собственника ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.).

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие нормам статей 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда.

Компетенция Третейского судьи:

В соответствии со ст. 2 Федерального закона № 382-ФЗ от 29.12.2015г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382):

2) арбитраж (третейское разбирательство) - процесс разрешения спора третейским судом и принятия решения третейским судом (арбитражного решения);

16) третейский суд - единоличный арбитр или коллегия арбитров

1) арбитр (третейский судья) - физическое лицо, избранное сторонами или избранное (назначенное) в согласованном сторонами или установленном федеральным законом порядке для разрешения спора третейским судом.

3) администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора;

Арбитражная оговорка, являющаяся частью договора, признается соглашением, не зависящим от других условий договора. Принятие арбитражного решения о том, что договор недействителен, само по себе не влечет недействительность арбитражного соглашения.

Заявление об отсутствии у третейского суда компетенции может быть сделано соответствующей стороной арбитража не позднее представления ею первого заявления по существу спора».

**До начала третейского разбирательства по существу настоящего спора, заявлений об отсутствии компетенции у Третейского судьи рассматривать данный спор, не поступило.**

Руководствуясь статьями 7, 19, 52 Закона об арбитраже, Третейский судья принял решение о наличии у него компетенции рассматривать переданный на его разрешение спор.

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие

нормам статьи 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда:

I. В соответствии с ч. 3 ст. 239 АПК РФ:

П.1 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: одна из сторон третейского соглашения, на основании которого спор был разрешен третейским судом, не обладала полной дееспособностью».

От сторон заявления по данному пункту не поступали.

П.2 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: «Третейское соглашение, на основании которого спор был разрешен третейским судом, недействительно по праву, которому стороны его подчинили, а при отсутствии такого указания - по праву Российской Федерации».

В силу ст. 7 ФЗ-382, «арбитражное соглашение является соглашением сторон о передаче в арбитраж всех или определенных споров, которые возникли или могут возникнуть между ними в связи с каким-либо конкретным правоотношением, независимо от того, носило такое правоотношение договорный характер или нет. Арбитражное соглашение может быть заключено в виде арбитражной оговорки в договоре или в виде отдельного соглашения.

При толковании арбитражного соглашения любые сомнения должны толковаться в пользу его действительности и исполнимости».

**Стороны извещены надлежащим образом о формировании состава суда, дате, месте и времени судебного разбирательства.**

В силу статьи 3 Закона об арбитраже, стороны считаются извещенными надлежащим образом, по аналогии со ст. 123 АПК РФ.

Аналогичный вывод подтвержден позицией Судебной коллегии Верховного Суда Российской Федерации от 30 декабря 2015 года N 302-ЭС15-11092:

П.5) «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства представит доказательство того, что: Состав третейского суда или процедура арбитража не соответствовали соглашению сторон или федеральному закону».

А) Состав третейского суда: В соответствии с ч. 2 ст. 11 ФЗ-382, Стороны арбитража могут согласовать по своему усмотрению процедуру избрания (назначения) арбитра или арбитров при условии соблюдения положений частей 4 - 11 настоящей статьи.

На основании соглашения о передаче прав по Договору займа от 07.09.2020, заключенного между истцом и третьим лицом, на основании Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г., заключенного между Третьим лицом, Ответчиком 1, Ответчиком 2, Ответчиком 3, утвержденного сторонами действующим в настоящее время Арбитражным регламентом ЮНСИТРАЛ стороны согласились о том, что любые споры,

разногласия, расхождения во мнениях или претензии, которые могут возникнуть из или в связи с перечисленными выше соглашениями и договорами, включая, но, не ограничиваясь, теми, которые связаны с его вступлением в силу, исполнением, изменением, нарушением, прекращением или действительностью, подлежат разрешению и окончательному урегулированию посредством арбитражного разбирательства AD HOC. Любой спор будет рассмотрен единолично согласованным сторонами Арбитром. Таким образом, данный конкретный спор передается на рассмотрение данного сформированного суда, единым арбитром назначается магистр юриспруденции Дмитрий Валерьевич Князев, Гражданин Российской Федерации.

**Личность Арбитра установлена** на основании Паспорта гражданина Российской Федерации на имя Князева Дмитрия Валерьевича, подтверждается имеющейся копией в материалах третейского дела. Наличие у избранного Третейского судьи, Князева Дмитрия Валерьевича, высшего юридического образования, подтверждается Дипломом РФ г. Москва Специализированным институтом юриспруденции № АВС 0715029, имеющейся копией в материалах третейского дела.

Отсутствие судимости подтверждается Справкой ГУ МВД России по г. Москве от 11.07.2021 г. № 13/5-099/264646-Е, имеющейся в материалах третейского дела.

Согласно разъяснениям Минюста России от 02.09.2021 г. № 12-103924/2021, Положения Федерального закона № 382-ФЗ не предусматривают возможности предоставления третейскому суду, образованному сторонами для разрешения конкретного спора, права на осуществлении функций постоянно действующего арбитражного учреждения и выполнение им функций по администрированию арбитража. Таким образом, каких-либо дополнительных лицензий или разрешений для третейского судьи, действующим законодательством не предусмотрено.

**Таким образом, формирование состава Третейского суда произведено с соблюдением положений Закона об арбитраже.**

Б) Процедура арбитража: В соответствии с п.п. 1, 2 ст. 19 Закона об арбитраже: «При условии соблюдения положений настоящего Федерального закона стороны могут по своем усмотрению договориться о процедуре арбитража. При отсутствии договоренности третейский суд может с соблюдением положений настоящего Федерального закон осуществлять арбитраж таким образом, какой он посчитает надлежащим, в том числе отношении определения допустимости, относимости и значения любого доказательства».

В соответствии с ч. 2 ст. 2 Закона об арбитраже: «Администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора».

Во исполнение данной нормы, Единый Арбитр рассмотрел спор самолично, что подтверждается материалами третейского дела:

• лично избран сторонами в арбитражном соглашении,

• лично получил исковое заявление и принял к производству,

• лично выбрал и получил в пользование помещение для проведения судебного разбирательства,

• на личный банковский счет получил арбитражный сбор,

• лично оплатил расходы, связанные с рассмотрением спора (почтовые расходы, канцелярские принадлежности, оргтехника, помещение и т.п.),

• лично направил сторонам почтой судебные извещения и иные документы,

• лично назначил и провел судебное заседание,

• лично вынес постановления и арбитражное решение,

• Возражений о нарушении процедуры арбитража от сторон не поступало.

• Заявлений о самоотводах и об отводах, не поступило.

В соответствии с ч. 1 ст. 11 ГК РФ, защиту нарушенных или оспоренных гражданских прав осуществляет в соответствии с подведомственностью дел, установленной процессуальным законодательством, суд, арбитражный суд или третейский суд.

В соответствии с ч. 1 ст. 33 АПК РФ, споры, возникающие из гражданско-правовых отношений, а также индивидуальные трудовые споры спортсменов, тренеров в профессиональном спорте и спорте высших достижений могут быть переданы сторонами на рассмотрение третейского суда при наличии между сторонами спора действующего арбитражного соглашения, если иное не предусмотрено федеральным законом.

В соответствии с ч. 3 ст. 1 Закона об арбитраже, в арбитраж (третейское разбирательство) по соглашению сторон могут передаваться споры между сторонами гражданско-правовых отношений, если иное не предусмотрено федеральным законом.

Действующее законодательство не содержит запрета на передачу споров по договорам займа, цессии, заключенными между юридическими лицами, на рассмотрение в третейский суд.

Договоры займа, цессии, не являются контрактом, заключенным в сфере закупок для государственных и муниципальных нужд, а также не является договором, заключенным в порядке, предусмотренном Федеральным законом N 223-ФЗ.

**Каких-либо заявлений от Сторон о том, что рассматриваемый спор не может быть предметом третейского разбирательства, или о наличии противоречий публичному порядку Российской Федерации, не поступало, а Третейским судьей не установлено.**

Единолично Арбитр (третейский судья), при ведении протокола судебного заседания, рассмотрел исковое заявление, представленные сторонами доказательства

## УСТАНОВИЛ:

Истец обратился в суд с иском к Ответчику 1, Ответчику 2, Ответчику 3, Третьему лицу, направив 18 мая 2021г. заказной почтой всем сторонам по делу уведомление об арбитраже с исковым заявлением с приложениями, указав:

что Истец информирует стороны о передаче требования по взысканию задолженности по Договору займа на арбитражное разбирательство;

что спор возник из Договора займа от 20 апреля 2010г. заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Голден Спиритс Лимитед (Golden Spirits Limited), Соглашения об изменении и отсрочке долга от 23 августа 2012г. заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Голден Спиритс Лимитед (Golden Spirits Limited), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и ЭйЭфБи Трейдинг Уан, Инк. (AFB Trading One. Inc.), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Голден Сфинкс Лимитед (Golden Sphinx Limited), Соглашения по передаче прав по Договору займа от 07 сентября 2020г., заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Давилла Инвестинг Лимитед (Davilla Investing Limited);

что 20 апреля 2010г. Компания Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компания Голден Спиритс Лимитед (Golden Spirits Limited) заключили договор займа. В соответствии с условиями данного договора Третье лицо предоставило заемщику в долг денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США. В соответствии с п.4.1. договора займа Ответчик 1 должен был вернуть заем не позднее двух лет с момента предоставления займа и в соответствии с п.4.2. договора займа уплатить 1,1% годовых с суммы займа. 21.04.2010г. Третье лицо перевело Ответчику 1 денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США и уплатил комиссию за перевод вразмере 268,36 (Двести шестьдесят восемь) долларов США. Таким образом, в полном объеме выполнил обязательства по договору займа. Обязанности по возврату суммы займа и процентов по займу Ответчиком 1 выполнены не были в полном объеме. 23 августа 2012г. Третье лицо и Ответчик 1 заключили соглашение об изменении и отсрочке долга. В соответствии с данным соглашением стороны продлили срок исполнения обязательства по возврату долга Ответчиком 1 до «01» января 2020г. При этом процентная ставка, указанная в пункте 4.2 Договора займа, в соответствии с п.4 соглашения об изменении и отсрочке долга повышается до 6,5% годовых (в год), с ежемесячным начислением сложных процентов, начиная с даты изменения, до полной выплаты. А также

стороны согласовали следующих гарантов: ЭйЭфБи Трейдинг Уан, Инк., зарегистрированная в Штате Калифорния, США, зарегистрированные офисы которой расположены по адресу: 8501 Вилшир Бульвар, Суит 330, Беверли-Хиллз, Калифорния, США («Гарант 1»), и Голден Сфинкс Лимитед, компания, зарегистрированной в Штате Калифорния, США, зарегистрированные офисы которой расположены по адресу: 43 Ла Мотт Стрит, Сент-Хелиер, остров Джерси, JE4 8SD, Нормандские Острова («Гарант 2»). 23 августа 2012г. Третье лицо и ЭйЭфБи Трейдинг Уан, Инк.(AFB One. Inc.) заключили корпоративную гарантию в соответствии с которой Ответчик 2 отвечает перед Истцом за исполнение обязательств Ответчиком 1 в том числе в случае неисполнения Ответчиком 1 своих обязательств гарантирует погашение задолженности в течение 10 дней с момента предъявления требования. 23 августа 2012г. Третье лицо и Голден Сфинкс Лимитед (Golden Sphinx Limited) заключили корпоративную гарантию в соответствии с которой Ответчик 3 отвечает перед Истцом за исполнение обязательств Ответчиком 1 в том числе в случае неисполнения Ответчиком 1 своих обязательств гарантирует погашение задолженности в течение 10 дней с момента предъявления требования. 23 августа 2012г. Третье лицо, Ответчик 1, Ответчик 2, Ответчик 3 заключили ДОГОВОР О ВЫБОРЕ (ЛИЧНОСТИ) АРБИТРА И ПРИМЕНЯМЫХ ПРАВИЛАХ. 07 сентября 2020г. Третье лицо и компания Давилла Инвестинг Лимитед (Davilla Investing Limited), заключили соглашение по передаче прав по договору займа, в соответствии с которым, все права по договору займа от 20 апреля 2010г. с изменениями от 23 августа 2012г., заключенному между Третьим лицом и Ответчиком 1, перешли к Истцу, включая обеспечение в виде корпоративных гарантий, заключенных Третьим лицом с Ответчиком 2 и Ответчиком 3. 21 декабря 2020г. Истец направил Ответчику 2 требование об оплате задолженности Ответчика 1. 21 декабря 2020г. Истец направил Ответчику 3 требование об оплате задолженности Ответчика 1. До настоящего времени ни один из ответчиков не произвел погашение задолженности по существующим обязательствам. Таким образом, у Ответчиков есть солидарная задолженность на общую сумму 1804017,81 долл. США из которых: 1022000 долларов США – сумма основного долга. 1874,53 долл. США - сумма процентов за период с 21.04.2010г. по 21.04.2012г. 780143,28 долл. США за период с 21.04.2012г. по 12.12.2020г.;

что Истец просит солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов. Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы.

Согласно представленным суду заверенным копиям перечисленных выше договоров и соглашений, а именно: на основании арбитражного соглашения сторон, которое включено в

соглашение об изменении и отсрочке долга, заключенного между Третьим лицом и Ответчиком 1 под пунктом 12.F;на основании арбитражного соглашения сторон, которое включено в Корпоративную гарантию, заключенную между Истцом и Ответчиком 2 под пунктом 5.7;на основании арбитражного соглашения сторон, которое включено в Корпоративную гарантию, заключенную между Истцом и Ответчиком 3 под пунктом 5.7;на основании соглашения о передаче прав по Договору займа от 07.09.2020, заключенного между истцом и третьим лицом;на основании Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г., заключенного между Третьим лицом, Ответчиком 1, Ответчиком 2, Ответчиком 3, утвержденного сторонами действующим в настоящее время Арбитражным регламентом ЮНСИТРАЛ стороны согласились о том, что любые споры, разногласия, расхождения во мнениях или претензии, которые могут возникнуть из или в связи с перечисленными выше соглашениями и договорами, включая, но, не ограничиваясь, теми, которые связаны с его вступлением в силу, исполнением, изменением, нарушением, прекращением или действительностью, подлежат разрешению и окончательному урегулированию посредством арбитражного разбирательства AD HOC. Любой спор будет рассмотрен единолично согласованным сторонами Арбитром. Таким образом, данный конкретный спор передается на рассмотрение данного сформированного суда, единым арбитром назначается доктор юриспруденции Дмитрий Валерьевич Князев, Гражданин Российской Федерации.

Стороны согласились, что разрешение спора может происходить только на основе письменных материалов, предоставленных сторонами, без обязательного проведения устного слушания и вызова сторон, при этом допускается участие сторон и арбитра во встречах посредством электронной видеоконференции, например Skype. Стороны договорились, что разбирательство будет проводиться в Москве, Российская Федерация, на русском языке и в соответствии с законодательством Российской Федерации. Стороны договорились, что Арбитр определяет наличие и масштаб соглашения, подлежащего осуществлению арбитражного разбирательства, и уполномочен выносить решение, денежное или не денежное, приводить в исполнение решение, в максимально возможной степени.

20 мая 2021г. Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича вынес Определение о назначении спора к слушанию, которым был создан данный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, утвержден единым арбитром (судьей), выбранного и согласованного сторонами Князев Дмитрий Валерьевич, принято указанное выше исковое заявление к рассмотрению данным судом, назначен 25-дневный срок для подготовки дела к третейскому разбирательству с предложением сторонам представить все документы, необходимые для рассмотрения спора, включая отзывы на иск до 14 июня 2021г.

В соответствии со ст.11 Гражданского кодекса Российской Федерации «Защиту нарушенных или оспоренных гражданских прав осуществляет суд, арбитражный суд или третейский суд (далее - суд) в соответствии с их компетенцией».

В соответствии с Федеральным Законом Российской Федерации «О Третейских судах в Российской Федерации» ст.1 «1. Настоящий Федеральный закон регулирует порядок образования и деятельности третейских судов, находящихся на территории Российской Федерации. 2. В третейский суд может по соглашению сторон третейского разбирательства (далее также - стороны) передаваться любой спор, вытекающий из гражданских правоотношений, если иное не установлено федеральным законом. 3. Действие настоящего Федерального закона не распространяется на международный коммерческий арбитраж. 4. Если международным договором Российской Федерации установлен иной порядок образования и деятельности третейских судов, чем предусмотренный настоящим Федеральным законом, то применяются правила международного договора».

В соответствии с Европейской конвенцией о внешнеторговом арбитраже от 21 апреля 1961 года ст.4 Осуществление арбитражного процесса «1. Стороны арбитражного соглашения могут по своему усмотрению: «...b) предусматривать передачу споров на разрешение арбитража по данному делу (арбитраж adhoc) и в этом случае, в частности: i) назначать арбитров или устанавливать в случае возникновения какого-либо спора методы их назначения; ii) устанавливать местонахождение арбитражного суда; iii) устанавливать правила процедуры, которых должны придерживаться арбитры...».

Подготовка дела к рассмотрению проведена Арбитром надлежащим образом, а именно: Определением от 02 Августа 2021 года Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича назначил третейское разбирательство по иску Давилла Инвестинг Лимитед (Davilla Investing Limited) к Голден Спиритс Лиитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк (AFB Tradig One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям к рассмотрению на 31 августа 2021г. в 12 часов 00 минут по г. Москве по адресу: 109012, РФ, город Москва, улица Ильинка, д.4, оф. 102-103; истцу предложено представить подлинные документы в обоснование заявленных требований; ответчикам и третьему лицу в срок до 25 августа 2021г. предложено представить в суд отзывы на иск, подтвержденные документально, в судебное заседание подлинные документы в обоснование возражений. 05 августа 2021 года Арбитром направлен судебный запрос свидетелю по делу в лице Гарри Иткин (Garry Itkin).

Свидетель Гарри Иткин (Garry Itkin) на запрос суда представил надлежащим образом оформленные свидетельские показания, имеющие значения для правильного разрешения спора, а именно показал:

1.       Да, 20 апреля 2010-го года я являлся Директором компании Golden Spirits Limited

2. Да, я подписывал договор займа между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 20 апреля 2010-го года на сумму USD 1,022,000

3. Да, я подтверждаю мою подпись на договоре займа между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 20 апреля 2010-го года на сумму USD 1,022,000

4. Да, я был уполномочен подписывать договор займа между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 20 апреля 2010-го года на сумму USD 1,022,000

5. Да, сумма USD 1,022,000 была ли перечислена на счёт компании Golden Spirits Limited компанией Agragorn Holdings Limited 21 апреля 2010-го года в соответствии с договором займа от 20 апреля 2010-го года

6. Да, сумма USD 1,022,000 была ли зачислена на счёт компании Golden Spirits Limited банком указанном в договоре займа от 20 апреля 2010-го года

7. Нет, компания Golden Spirits Limited не возвратила компании Agragorn Holdings Limited долг в соответствии с договором займа от 20 апреля 2010-го года

8. Да, 23 августа 2012-го года я являлся Директором компании Golden Spirits Limited?

9. Да, я подписывал соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Spirits Limited

10. Да, я подтверждаю мою подпись на соглашении об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Spirits Limited

11. Да, я был уполномочен подписывать соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Spirits Limited

12. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года безусловно отвечало интересам компании Golden Spirits Limited и было подписано в интересах компании Golden Spirits Limited

13. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно выгодным для компании Golden Spirits Limited

14. Да, встречное удовлетворение в соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно являлось достаточным для компании Golden Spirits Limited

15. 23 августа 2012-го года я являлся Директором компании Golden Sphinx Limited

16. Да, я подписывал соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Sphinx Limited

17. Да, я подтверждаю мою подпись на соглашении об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Sphinx Limited

18. Да, я был уполномочен подписывать соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Sphinx Limited

19. Да, компания Golden Sphinx Limited была материально заинтересована в финансовом успехе компании Golden Spirits Limited

20. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года безусловно отвечало интересам компании Golden Sphinx Limited и было подписано в интересах компании Golden Sphinx Limited

21. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно выгодным для компании Golden Sphinx Limited

22. Да, встречное удовлетворение в соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно являлось достаточным для компании Golden Sphinx Limited

23. 23 августа 2012-го года я являлся Президентом, Финансовым и Исполнительным Директором и Казначеем, компании AFB Trading One Inc

24. Да, я подписывал соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании AFB Trading One Inc

25. Да, я подтверждаю мою подпись на соглашении об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании AFB Trading One Inc

26. Да, я был уполномочен подписывать соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании AFB Trading One Inc

27. Да, компания AFB Trading One Inc была материально заинтересована в финансовом успехе компании Golden Spirits Limited

28. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года безусловно отвечало интересам компании AFB Trading One Inc и было подписано в интересах компании AFB Trading One Inc

29. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно выгодным для компании AFB Trading One Inc

30. Да, встречное удовлетворение в соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно являлось достаточным для компании AFB Trading One Inc

31. Да, я подписывал корпоративную гарантию от лица компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, безотзывно и безоговорочно гарантируя компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited

32. Да, я подтверждаю мою подпись на корпоративной гарантии от лица компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

33. Да, я был уполномочен подписывать корпоративную гарантию от лица компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

34. Да, компания Golden Sphinx Limited была материально заинтересована в финансовом успехе компании Golden Spirits Limited

35. Да, безотзывная и безоговорочная гарантия своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компанией Agragorn Holdings Limited от 23 августа 2012-го года безусловно отвечала интересам компании Golden Sphinx Limited и была подписана в интересах компании Golden Sphinx Limited

36. Да, выпуск безотзывной и безоговорочной гарантии своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компанией Agragorn Holdings Limited от 23 августа 2012-го года был безусловно выгодным для компании Golden Sphinx Limited

37. Да, встречное удовлетворение в корпоративной гарантии компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, гарантирующее компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited, безусловно являлось достаточным для компании Golden Sphinx Limited

38. Да, я подписывал корпоративную гарантию от лица компании AFB Trading One Inc в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, безотзывно и безоговорочно гарантируя компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited

39. Да, я подтверждаю мою подпись на корпоративной гарантии от лица компании AFB Trading One Inc в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

40. Да, я был уполномочен подписывать корпоративную гарантию от лица компании AFB Trading One Inc в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

41.     Да, компания AFB Trading One Inc была материально заинтересована в финансовом успехе компании Golden Spirits Limited

42.     Да, безотзывная и безоговорочная гарантия своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компанией Agragorn Holdings Limited от 23 августа 2012-го года безусловно отвечала интересам компании AFB Trading One Inc и была подписана в интересах компании AFB Trading One Inc

43.     Да, выпуск безотзывной и безоговорочной гарантии своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компании Agragorn Holdings Limited от 23 августа 2012-го года был безусловно выгодным для компании AFB Trading One Inc

44.     Да, встречное удовлетворение в корпоративной гарантии компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, гарантирующее компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited, безусловно являлось достаточным для компании AFB Trading One Inc

45.     Да, я подписывал соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Spirits Limited

46.     Да, я подтверждаю свою подпись на соглашении о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Spirits Limited

47.     Да, я был уполномочен подписывать соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Spirits Limited

48.     Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно отвечало интересам компании Golden Spirits Limited и было подписано в интересах компании Golden Spirits Limited

49.     Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года был безусловно выгодным для компании Golden Spirits Limited

50.     Да, встречное удовлетворение в соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно являлось достаточным для компании Golden Spirits Limited

51.     Да, я подписывал соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Sphinx Limited

52.     Да, я подтверждаю свою подпись на соглашении о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Sphinx Limited

53.     Да, я был уполномочен подписывать соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Sphinx Limited

54.     Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно отвечало интересам компании Golden Sphinx Limited и было подписано в интересах компании Golden Sphinx Limited

55. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года был безусловно выгодным для компании Golden Sphinx Limited

56. Да, встречное удовлетворение в соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно являлось достаточным для компании Golden Sphinx Limited

57. Да, я подписывал соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании AFB Trading One Inc

58. Да, я подтверждаю свою подпись на соглашении о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании AFB Trading One Inc

59. Да, я был уполномочен подписывать соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании AFB Trading One Inc

60. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно отвечало интересам компании AFB Trading One Inc и было подписано в интересах компании AFB Trading One Inc

61. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года был безусловно выгодным для компании AFB Trading One Inc

62. Да, встречное удовлетворение в соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно являлось достаточным для компании AFB Trading One Inc

19.07.2021 года в рамках рассмотрения настоящего дела от Татьяна Падалко, представившаяся финансовым управляющим Сабадаша А.В., в подтверждение полномочий к материалам дела приобщена копия Арбитражного суда Московской области по делу №А41-100887/19 от 10.11.2020г., позволяющих действовать от имени ответчиков, заявила в переписке, направленной суду: «Добрый день, я являюсь финансовым управляющим Сабадаша А.В. Организации – ответчики принадлежат Сабадашу А.В. Документы по данному спору были сфальсифицированы прошу представить ваши контактные данные для связи» (цитата из письма Татьяна Падалко <arbitrpadalko@gmail.com>). Данные заявления Татьяны Падалко оценены Арбитром в качестве доказательств наравне с иными доказательствами по делу.

19 августа 2021г. Суд получил от ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) ходатайство, где указанные Ответчики ставят вопрос о компетенции данного Суда в связи с ликвидацией 31.10.2013г. Ответчика Компании Голден Спиритс Лимитед (Golden Spirits Limited), участника данного спора и подписанта Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г.

24 августа 2021г. Суд получил Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) подписанный гр. Падалко Татьяны Алексеевны, как от финансового управляющего Сабадаша А.В., как от собственника ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), где не оспаривается соглашение о назначении арбитра в рамках арбитражной процедуры AD HOC, где также заявляется о прекращении деятельности в связи с ликвидацией 31.10.2013г. Ответчика -

Компании Голден Спиритс Лимитед (Golden Spirits Limited), поручителями по обязательствам которой являются Голден Сфинкс Лимитед (Golden Sphinx Limited), а также обязательства ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.). Представитель Ответчика просит отказать в удовлетворении иска в связи с утратой правоспособности заемщика Компании Голден Спиритс Лимитед (Golden Spirits Limited) с 01.10.2013г.

25 августа 2021г. Суд получил электронное сообщение от Managing Attorney Michael Zorkin: "Господин Князев, Прилагаю Отзыв На Исковое Заявление Ларисы Сабадаш от имени AFB Trading One, Inc. и Golden Sphinx Limited". Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) от гр. Сабадаш Ларисы (датированное 24.08.2021г., как от директора ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), как от директора Голден Сфинкс Лимитед (Golden Sphinx Limited), в которым подтверждает надлежащее уведомление о судебном рассмотрении 25 августа 2021г. в 12-00 по мск времени спора Арбитром, подтверждает заключение соглашения от 23.12.2012г. между сторонами и не оспаривает компетенцию Арбитра, указывает на то, что с 03.10.2016г. является директором ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), с 17.09.2019г. является директором Голден Сфинкс Лимитед (Golden Sphinx Limited), просит учесть, что Голден Спиритс Лимитед (Golden Spirits Limited) не существует с 31.10.2013г., заявляет, что поскольку основной заемщик Голден Спиритс Лимитед (Golden Spirits Limited)с 01.10.2013г. утратил правоспособность, соответственно полагает, что и обеспечивающие его обязательства по договорам поручительства следует считать прекратившимися, на основании чего просит отказать истцу в иске.

Суд рассмотрел отзыв гр. Сабадаш Ларисы и позицию ее представителя Михаила Зорькина, усмотрев признание и наличие долговых обязательств Голден Сфинкс Лимитед (Golden Sphinx Limited), а также обязательства ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.).

В соответствии со ст. 309 Гражданского кодекса Российской Федерации обязательства должны исполняться надлежащим образом в соответствии с условиями обязательства и требованиями закона.

Доводы представителей Ответчиков о пропуске срока исковой давности Арбитр усматривает несостоятельными постольку, поскольку гарантийные обязательства по займу Компании Голден Спиритс Лимитед (Golden Spirits Limited) были выданы до 01.10.2013г., а соответственно являются действующими.

Суд, рассмотрев в судебном заседании заявление финансового управляющего Сабадаша А.В., Падалко Т.А. о том, что организации – ответчики принадлежат Сабадашу А.В., с целью проверки указанных доводов по ходатайству истца изучил дело № А40-165165/18 по иску в Арбитражный суд г. Москвы Индивидуального предпринимателя Гофман Е. к Простому товариществу "Иткин и Сабадаш" с требованием об установлении факта заключения и действия договора. 10 октября 2019г. Решение Арбитражного суда города Москвы от 14.09.2018 г. по апелляционной жалобе гр. Сабадаша А.В., оспаривавшего факт создания Простого Товарищества «Иткин и Сабадаш» и принадлежность последнему имущества и активов, а именно: 1. ОАО

"Русский Дизель" (адрес: Ленинградская область, Всеволожский район, станция Кирпичный завод, промзона); взнос активов ОАО "Русский Дизель" в качестве уставного капитала в компанию "Дизель Лимитед" (Diesel Limited) находящуюся на острове Джерси, Великобритания; 2.ОАО "Выборгская целлюлоза" (адрес: Ленинградская область, Выборгский район, пос. Советский ул. Заводская д.2); взнос активов ОАО "Выборгская целлюлоза" в качестве уставного капитала в компанию "Выборг Лимитед" (Vyborg Limited) находящуюся на острове Джерси, Великобритания; 3.ЗАО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Синопская наб, д.56-58); 4.ООО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Красное село, ул. Нагорная д.5); 5.Земельные паи в совхоз "Ленинский луч" (Московская область, Красногорский район) 987 га, совхоз "Петровский" (Московская область, Красногорский район) 197 га, совхоз "Ильинский" (Московская область, Красногорский район) 430 га, совхоз "Дмитровский" (Московская область, Красногорский район) 360 га; 6.Покупка недвижимого имущества находящегося по адресу: США, штат Калифорния, город Беверли Хиллс, улица Беверли Парк, д.58; 7. покупка самолета Гольфстрим G500; исключая имущество Заказчика: недвижимое имущество, расположенное по адресу: Франция, Кап Феррат, бульвар имени Генерала де Голя, д. 17; самолет Фалькон 200, бортовой номер HB VNG, в связи с нахождением имущества за пределами РФ., что было проверено и удостоверено Девятым Арбитражный Апелляционный Суд города Москвы в Определении от 12.09.2019 г., который рассмотрев в судебном заседании, дал оценку представленным доказательством и доводам господина Сабадаша, изложенных в его апелляционной жалобе, установил и подтвердил существование Простого Товарищества «Иткин и Сабадаш».

Таким образом изучив материалы дела № А40-165165/18, учитывая преюдициальность судебных актов, вступивших в законную силу и подлежащих обязательному исполнению, ответы сторон, третьих лиц и свидетелей на судебные запросы, Суд установил, что вопреки заявлению финансового управляющего Сабадаша А.В., гр. Падалко Т.А., организации – ответчики и активы, которыми они владеют, фактически принадлежат Простому Товариществу «Иткин и Сабадаш», хотя номинально зарегистрированы на имя Сабадаша А.В. и Амбер Траст (Amber Trust), управляемый Сабадашем А.В.

**Суд в ходе рассмотрения доказательств по данному делу установил следующее:**

- Ответчик 1, Голден Спиритс Лимитед (Golden Spirits Limited), находясь в номинальном владении Сабадаша А.В, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Ответчик 2, ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.), находясь в номинальном владении траста Амбер Траст (Amber Trust), управляемым Сабадашем А.В, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Ответчик 3, Голден Сфинкс Лимитед (Golden Sphinx Limited), находясь в номинальном владении траста Амбер Траст (Amber Trust), управляемым Сабадашем А.В, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- ОАО "Русский Дизель" (адрес: Ленинградская область, Всеволожский район, станция Кирпичный завод, промзона), и компания "Дизель Лимитед" (Diesel Limited) находящаяся на острове Джерси, Великобритания, находясь в номинальном владении Ответчика 2, фактически принадлежат Простому Товариществу «Иткин и Сабадаш»;

- ОАО "Выборгская целлюлоза" (адрес: Ленинградская область, Выборгский район, пос. Советский ул. Заводская д.2) и компания "Выборг Лимитед" (Vyborg Limited), находящаяся на острове Джерси, Великобритания, находясь в номинальном владении Ответчика 2, фактически принадлежат Простому Товариществу «Иткин и Сабадаш»;

- Недвижимое имущество, находящееся по адресу: США, штат Калифорния, город Беверли Хиллс, улица Беверли Парк, д.58, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Самолет Гольфстрим G500 фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Недвижимое имущество, расположенное по адресу: Франция, Кап Феррат, бульвар имени Генерала де Голя, д. 17 фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

Согласно представленным Арбитру доказательствам, 21.04.2010г. Третье лицо перевело Ответчику 1 денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США и уплатил комиссию за перевод в размере 268,36 (Двести шестьдесят восемь) долларов США. Таким образом, в полном объеме выполнил обязательства по договору займа. Обязанности по возврату суммы займа и процентов по займу Ответчиком 1 выполнены не были.

23 августа 2012г. Третье лицо и Ответчик 1 заключили соглашение об изменении и отсрочке долга. В соответствии с данным соглашением стороны продлили срок исполнения обязательства по возврату долга Ответчиком 1 до «01» января 2020г. При этом процентная ставка, указанная в пункте 4.2 Договора займа, в соответствии с п.4 соглашения об изменении и отсрочке долга повышается до 6,5% годовых (в год), с ежемесячным начислением сложных процентов, начиная с Даты изменения, до полной выплаты. А также стороны согласовали следующих гарантов: ЭйЭфБи Трейдинг Уан, Инк., зарегистрированная в Штате Калифорния, США, зарегистрированные офисы которой расположены по адресу: 8501 Вилшир Бульвар, Суит 330, Беверли-Хиллз, Калифорния, США («Гарант 1»), и Голден Сфинкс Лимитед, зарегистрированные офисы которой расположены по адресу: 43 Ла Мотт Стрит, Сент-Хелиер, остров Джерси, JE4 8SD, Нормандские Острова («Гарант 2»).

23 августа 2012г. Третье лицо и ЭйЭфБи Трейдинг Уан, Инк.(AFB Tradig One.Inc.) (далее – Ответчик 2) заключили корпоративную гарантию в соответствии с которой Ответчик 2 отвечает перед Истцов за исполнение обязательств Ответчиком 1 в том числе в случае неисполнения Ответчиком 1 своих обязательств гарантирует погашение задолженности в течение 10 дней с момента предъявления требования.

23 августа 2012г. Третье лицо и Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее – Ответчик 3) заключили корпоративную гарантию в соответствии с которой Ответчик 3 отвечает

перед Истцов за исполнение обязательств Ответчиком 1 в том числе в случае неисполнен[и]я Ответчиком1 своих обязательств гарантирует погашение задолженности в течение 10 дней [с] момента предъявления требования.

23 августа 2012г. Третье лицо, Ответчик 1, Ответчик 2, Ответчик 3 заключили ДОГОВОР [О] ВЫБОРЕ (ЛИЧНОСТИ) АРБИТРА И ПРИМЕНЯМЫХ ПРАВИЛАХ

07 сентября 2020г. Третье лицо и компания Давилла Инвестинг  Лимитед (Davilla Investin[g] Limited) (далее Истец), заключили соглашение по передаче прав по договору займа, в соответстви[и] с которым, все права по договору займа от 20 апреля 2010г. с изменениями от 23 августа 2012г. заключенному между Третьим лицом и Ответчиком 1, перешли к Истцу, включая обеспечение [в] виде корпоративных гарантий, заключенных Третьим лицом с Ответчиком 2 и Ответчиком 3.

21 декабря 2020г. Истец направил Ответчику 2 требование об оплате задолженности Ответчика 1.

21 декабря 2020г. Истец направил Ответчику 3 требование об оплате задолженности Ответчика 1.

До настоящего времени ни один из ответчиков не произвел погашение задолженности по существующим обязательствам.


**Изложенные выше обстоятельства подтверждаются следующими доказательствами:**

1.      Договор займа от 20 апреля 2010г. между Третьим лицом и Ответчиком 1;

2.      Банковская выписка от 21 апреля 2010г. подтверждающая перевод 1022000 долларов США от Третьего лица Ответчику 1;

3.      Соглашение об изменении и отсрочке долга от 23 августа 2012г. между Третьим лицом и Ответчиком 1;

4.      Корпоративная гарантия от 23 августа 2012г. выданная Ответчиком 2 Третьему лицу;

5.      Корпоративная гарантия от 23 августа 2012г. выданная Ответчиком 3 Третьему лицу;

6.      Соглашение по передаче прав по договору займа от 07 сентября 2020г. между Третьим лицом и Истцом.

7.      Требованиями об оплате задолженности.


В соответствии со ст.810 ГК РФ «… Заемщик обязан возвратить займодавцу полученную сумму займа в срок и в порядке, которые предусмотрены договором займа».

В соответствии со ст.809 ГК РФ «1. Если иное не предусмотрено законом или договором займа, займодавец имеет право на получение с заемщика процентов за пользование займом в размерах и в порядке, определенных договором. При отсутствии в договоре условия о размере процентов за пользование займом их размер определяется ключевой ставкой Банка России, действовавшей в соответствующие периоды.

2. Размер процентов за пользование займом может быть установлен в договоре с применением ставки в процентах годовых в виде фиксированной величины, с применением ставки в процентах годовых, величина которой может изменяться в зависимости от предусмотренных договором условий, в том числе в зависимости от изменения переменной величины, либо иным путем, позволяющим определить надлежащий размер процентов на момент их уплаты.

3. При отсутствии иного соглашения проценты за пользование займом выплачиваются ежемесячно до дня возврата займа включительно...».

В соответствии со ст.363 ГК РФ «1. При неисполнении или ненадлежащем исполнении должником обеспеченного поручительством обязательства поручитель и должник отвечают перед кредитором солидарно, если законом или договором поручительства не предусмотрена субсидиарная ответственность поручителя.

2. Поручитель отвечает перед кредитором в том же объеме, как и должник, включая уплату процентов, возмещение судебных издержек по взысканию долга и других убытков кредитора, вызванных неисполнением или ненадлежащим исполнением обязательства должником, если иное не предусмотрено договором поручительства.

3. Лица, совместно давшие поручительство (сопоручители), отвечают перед кредитором солидарно, если иное не предусмотрено договором поручительства. Если из соглашения между сопоручителями и кредитором не следует иное, сопоручители, ограничившие свою ответственность перед кредитором, считаются обеспечившими основное обязательство каждый в своей части. Сопоручитель, исполнивший обязательство, имеет право потребовать от других лиц, предоставивших обеспечение основного обязательства совместно с ним, возмещения уплаченного пропорционально их участию в обеспечении основного обязательства...».

В соответствии со ст. 384 ГК РФ «Если иное не предусмотрено законом или договором, право первоначального кредитора переходит к новому кредитору в том объеме и на тех условиях, которые существовали к моменту перехода права. В частности, к новому кредитору переходят права, обеспечивающие исполнение обязательства, а также другие связанные с требованием права, в том числе право на проценты...».

Таким образом, у Ответчиков есть солидарная задолженность на общую сумму 1804017,81 долл. США из которых:

1022000 долларов США – сумма основного долга.

1874,53 долл. США - сумма процентов за период с 21.04.2010г. по 21.04.2012г.

780143,28 долл. США за период с 21.04.2012г. по 12.12.2020г.

В соответствии с Федеральным Законом Российской Федерации «О Трстейских судах в Российской Федерации» ст.16.

В соответствии с Арбитражным регламентом ЮНСИТРАЛ (регламент, принятый Комиссией ООН по праву международной торговли в 1976 г. и рекомендованный к использованию Генеральной Ассамблеей ООН 15 декабря 1976 г. с изменениями).

31 августа 2021г. третейский суд, образованный сторонами для разрешения конкретного спора в составе единоличного третейского судьи, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича, рассмотрев исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) ( истец) к Голден Спиритс Лимитед (Golden Spirits Limited) (Ответчик 1), ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (Ответчик 2), Голден Сфинкс Лимитед (Golden Sphinx Limited) (Ответчик 3), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям

## РЕШИЛ:

1. Удовлетворить исковые требования по иску Давилла Инвестинг Лимитед (Davilla Investing Limited) к Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.

2. Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов.

3. Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы в размере 278000 (Двести семьдесят восемь тысяч) рублей.

4. В соответствии с арбитражным соглашением, решение третейского суда окончательно. Вступает в законную силу немедленно с даты принятия, подлежит немедленному исполнению. В соответствии с ч. 4 ст. 238 АПК РФ, обстоятельства, установленные третейским судом, не подлежат переоценке либо пересмотру, по существу.

Арбитражный суд

в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

единый арбитр (судья),

выбранный и согласованный сторонами

Князев Дмитрий Валерьевич

АРБИТРАЖНЫЙ СУД
В РАМКАХ АРБИТРАЖНОЙ ПРОЦЕДУРЫ
AD...

ЕДИНЫЙ АРБИТР (...

КНЯЗЕВ
ДМИТРИЙ ВАЛЕРЬЕВИЧ

# INTENTIONALLY LEFT BLANK



«Согласовано»
Председатель МКАС при
Торгово-промышленной
палате РФ (Москва)
А. Костин
№ 1800-4

06 СЕН 2021

Арбитражный суд в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

Единый арбитр (судья), выбранный и согласованный сторонами,

Князев Дмитрий Валерьевич

Адрес: 109012, РФ, город Москва, улица Ильинка, д.4, оф. 102-103/

## РЕШЕНИЕ

31 августа 2021г. в г. Москва Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора (далее также – суд), в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича (далее также – судья или арбитр), рассмотрев исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) (далее также – истец) к Голден Спиритс Лимитед (Golden Spirits Limited) (далее также – Ответчик 1), ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 2), Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее также – Ответчик 3), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) (далее также – Третье лицо) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.

Третейское разбирательство проведено в соответствии с положениями Федерального закона № 382-ФЗ от 29.12.2015 г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382), в присутствии сторон:

от истца: Давилла Инвестинг Лимитед (Davilla Investing Limited) – адвокат Селезнева Ирина Борисовна, в подтверждение полномочий к материалам дела приобщена копия доверенности Davilla Investing Limited.

от ответчика 1: Голден Спиритс Лимитед (Golden Spirits Limited)

от ответчика 2: ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) - Татьяна Падалко, финансовый управляющий Сабадаша А.В., в подтверждение полномочий к материалам дела приобщена копия Арбитражного суда Московской области по делу №А41-100887/19 от 10.11.2020г.

от ответчика 3: Голден Сфинкс Лимитед (Golden Sphinx Limited)

от третьего лица: Аграгорн Холдингс Лимитед (Agragorn Holdings Limited)

24 августа 2021г. Суд получил Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) от гр. Сабадаш Ларисы, как от директора ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), как от директора Голден Сфинкс Лимитед (Golden Sphinx Limited).

24 августа 2021г. Суд получил Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) от гр. Падалко Татьяны Алексеевны, как от финансового управляющего Сабадаша А.В., как от собственника ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.).

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие нормам статей 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда.

Компетенция Третейского судьи:

В соответствии со ст. 2 Федерального закона № 382-ФЗ от 29.12.2015г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382):

2) арбитраж (третейское разбирательство) - процесс разрешения спора третейским судом и принятия решения третейским судом (арбитражного решения):

16) третейский суд - единоличный арбитр или коллегия арбитров

1) арбитр (третейский судья) - физическое лицо, избранное сторонами или избранное (назначенное) в согласованном сторонами или установленном федеральным законом порядке для разрешения спора третейским судом.

3) администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора;

Арбитражная оговорка, являющаяся частью договора, признается соглашением, не зависящим от других условий договора. Принятие арбитражного решения о том, что договор недействителен, само по себе не влечет недействительность арбитражного соглашения.

Заявление об отсутствии у третейского суда компетенции может быть сделано соответствующей стороной арбитража не позднее представления ею первого заявления по существу спора».

**До начала третейского разбирательства по существу настоящего спора, заявлений об отсутствии компетенции у Третейского судьи рассматривать данный спор, не поступило.**

Руководствуясь статьями 7, 19, 52 Закона об арбитраже, Третейский судья принял решение о наличии у него компетенции рассматривать переданный на его разрешение спор.

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие

нормам статьи 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда:

I. В соответствии с ч. 3 ст. 239 АПК РФ:

П.1 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: одна из сторон третейского соглашения, на основании которого спор был разрешен третейским судом, не обладала полной дееспособностью».

От сторон заявления по данному пункту не поступали.

П.2 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: «Третейское соглашение, на основании которого спор был разрешен третейским судом, недействительно по праву, которому стороны его подчинили, а при отсутствии такого указания - по праву Российской Федерации».

В силу ст. 7 ФЗ-382, «арбитражное соглашение является соглашением сторон о передаче в арбитраж всех или определенных споров, которые возникли или могут возникнуть между ними в связи с каким-либо конкретным правоотношением, независимо от того, носило такое правоотношение договорный характер или нет. Арбитражное соглашение может быть заключено в виде арбитражной оговорки в договоре или в виде отдельного соглашения.

При толковании арбитражного соглашения любые сомнения должны толковаться в пользу его действительности и исполнимости».

**Стороны извещены надлежащим образом о формировании состава суда, дате, месте и времени судебного разбирательства.**

В силу статьи 3 Закона об арбитраже, стороны считаются извещенными надлежащим образом, по аналогии со ст. 123 АПК РФ.

Аналогичный вывод подтвержден позицией Судебной коллегии Верховного Суда Российской Федерации от 30 декабря 2015 года N 302-ЭС15-11092:

П.5) «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства представит доказательство того, что: Состав третейского суда или процедура арбитража не соответствовали соглашению сторон или федеральному закону».

А) Состав третейского суда: В соответствии с ч. 2 ст. 11 ФЗ-382, Стороны арбитража могут согласовать по своему усмотрению процедуру избрания (назначения) арбитра или арбитров при условии соблюдения положений частей 4 - 11 настоящей статьи.

На основании соглашения о передаче прав по Договору займа от 07.09.2020, заключенного между истцом и третьим лицом;на основании Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г., заключенного между Третьим лицом, Ответчиком 1, Ответчиком 2, Ответчиком 3, утвержденного сторонами действующим в настоящее время Арбитражным регламентом ЮНСИТРАЛ стороны согласились о том, что любые споры,

разногласия, расхождения во мнениях или претензии, которые могут возникнуть из или в связи с перечисленными выше соглашениями и договорами, включая, но, не ограничиваясь, теми, которые связаны с его вступлением в силу, исполнением, изменением, нарушением, прекращением или действительностью, подлежат разрешению и окончательному урегулированию посредством арбитражного разбирательства AD HOC. Любой спор будет рассмотрен единолично согласованным сторонами Арбитром. Таким образом, данный конкретный спор передается на рассмотрение данного сформированного суда, единым арбитром назначается магистр юриспруденции Дмитрий Валерьевич Князев, Гражданин Российской Федерации.

**Личность Арбитра установлена** на основании Паспорта гражданина Российской Федерации на имя Князева Дмитрия Валерьевича, подтверждается имеющейся копией в материалах третейского дела. Наличие у избранного Третейского судьи, Князева Дмитрия Валерьевича, высшего юридического образования, подтверждается Дипломом РФ г. Москва Специализированным институтом юриспруденции № АВС 0715029, имеющейся копией в материалах третейского дела.

Отсутствие судимости подтверждается Справкой ГУ МВД России по г. Москве от 11.07.2021 г. № 13/5-099/264646-Е, имеющейся в материалах третейского дела.

Согласно разъяснениям Минюста России от 02.09.2021 г. № 12-103924/2021, Положения Федерального закона № 382-ФЗ не предусматривают возможности предоставления третейскому суду, образованному сторонами для разрешения конкретного спора, права на осуществлении функций постоянно действующего арбитражного учреждения и выполнение им функций по администрированию арбитража. Таким образом, каких-либо дополнительных лицензий или разрешений для третейского судьи, действующим законодательством не предусмотрено.

**Таким образом, формирование состава Третейского суда произведено с соблюдением положений Закона об арбитраже.**

Б) Процедура арбитража: В соответствии с п.п. 1, 2 ст. 19 Закона об арбитраже: «При условии соблюдения положений настоящего Федерального закона стороны могут по своем усмотрению договориться о процедуре арбитража. При отсутствии договоренности третейский суд может с соблюдением положений настоящего Федерального закон осуществлять арбитраж таким образом, какой он посчитает надлежащим, в том числе отношении определения допустимости, относимости и значения любого доказательства».

В соответствии с ч. 2 ст. 2 Закона об арбитраже: «Администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора».

Во исполнение данной нормы, Единый Арбитр рассмотрел спор самолично, что подтверждается материалами третейского дела:

- лично избран сторонами в арбитражном соглашении,
- лично получил исковое заявление и принял к производству,
- лично выбрал и получил в пользование помещение для проведения судебного разбирательства,
- на личный банковский счет получил арбитражный сбор,
- лично оплатил расходы, связанные с рассмотрением спора (почтовые расходы, канцелярские принадлежности, оргтехника, помещение и т.п.),
- лично направил сторонам почтой судебные извещения и иные документы,
- лично назначил и провел судебное заседание,
- лично вынес постановления и арбитражное решение,
- Возражений о нарушении процедуры арбитража от сторон не поступало.
- Заявлений о самоотводах и об отводах, не поступило.

В соответствии с ч. 1 ст. 11 ГК РФ, защиту нарушенных или оспоренных гражданских прав осуществляет в соответствии с подведомственностью дел, установленной процессуальным законодательством, суд, арбитражный суд или третейский суд.

В соответствии с ч. 1 ст. 33 АПК РФ, споры, возникающие из гражданско-правовых отношений, а также индивидуальные трудовые споры спортсменов, тренеров в профессиональном спорте и спорте высших достижений могут быть переданы сторонами на рассмотрение третейского суда при наличии между сторонами спора действующего арбитражного соглашения, если иное не предусмотрено федеральным законом.

В соответствии с ч. 3 ст. 1 Закона об арбитраже, в арбитраж (третейское разбирательство) по соглашению сторон могут передаваться споры между сторонами гражданско-правовых отношений, если иное не предусмотрено федеральным законом.

Действующее законодательство не содержит запрета на передачу споров по договорам займа, цессии, заключенными между юридическими лицами, на рассмотрение в третейский суд.

Договоры займа, цессии, не являются контрактом, заключенным в сфере закупок для государственных и муниципальных нужд, а также не является договором, заключенным в порядке, предусмотренном Федеральным законом N 223-ФЗ.

**Каких-либо заявлений от Сторон о том, что рассматриваемый спор не может быть предметом третейского разбирательства, или о наличии противоречий публичному порядку Российской Федерации, не поступало, а Третейским судьей не установлено.**

Единолично Арбитр (третейский судья), при ведении протокола судебного заседания, рассмотрел исковое заявление, представленные сторонами доказательства

## УСТАНОВИЛ:

Истец обратился в суд с иском к Ответчику 1, Ответчику 2, Ответчику 3, Третьему лицу, направив 18 мая 2021г. заказной почтой всем сторонам по делу уведомление об арбитраже с исковым заявлением с приложениями, указав:

что Истец информирует стороны о передаче требования по взысканию задолженности по Договору займа на арбитражное разбирательство;

что спор возник из Договора займа от 20 апреля 2010г. заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Голден Спиритс Лимитед (Golden Spirits Limited), Соглашения об изменении и отсрочке долга от 23 августа 2012г. заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Голден Спиритс Лимитед (Golden Spirits Limited), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и ЭйЭфБи Трейдинг Уан, Инк. (AFB Trading One. Inc.), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Голден Сфинкс Лимитед (Golden Sphinx Limited), Соглашения по передаче прав по Договору займа от 07 сентября 2020г., заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Давилла Инвестинг Лимитед (Davilla Investing Limited);

что 20 апреля 2010г. Компания Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компания Голден Спиритс Лимитед (Golden Spirits Limited) заключили договор займа. В соответствии с условиями данного договора Третье лицо предоставило заемщику в долг денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США. В соответствии с п.4.1. договора займа Ответчик 1 должен был вернуть заем не позднее двух лет с момента предоставления займа и в соответствии с п.4.2. договора займа уплатить 1,1% годовых с суммы займа. 21.04.2010г. Третье лицо перевело Ответчику 1 денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США и уплатил комиссию за перевод в размере 268,36 (Двести шестьдесят восемь) долларов США. Таким образом, в полном объеме выполнил обязательства по договору займа. Обязанности по возврату суммы займа и процентов по займу Ответчиком 1 выполнены не были в полном объеме. 23 августа 2012г. Третье лицо и Ответчик 1 заключили соглашение об изменении и отсрочке долга. В соответствии с данным соглашением стороны продлили срок исполнения обязательства по возврату долга Ответчиком 1 до «01» января 2020г. При этом процентная ставка, указанная в пункте 4.2 Договора займа, в соответствии с п.4 соглашения об изменении и отсрочке долга повышается до 6,5% годовых (в год), с ежемесячным начислением сложных процентов, начиная с даты изменения, до полной выплаты. А также

стороны согласовали следующих гарантов: ЭйЭфБи Трейдинг Уан, Инк., зарегистрированная в Штате Калифорния, США, зарегистрированные офисы которой расположены по адресу: 8501 Вилшир Бульвар, Суит 330, Беверли-Хиллз, Калифорния, США («Гарант 1»), и Голден Сфинкс Лимитед, компания, зарегистрированной в Штате Калифорния, США, зарегистрированные офисы которой расположены по адресу: 43 Ла Мотт Стрит, Сент-Хелиер, остров Джерси, JE4 8SD, Нормандские Острова («Гарант 2»). 23 августа 2012г. Третье лицо и ЭйЭфБи Трейдинг Уан, Инк.(AFB One. Inc.) заключили корпоративную гарантию в соответствии с которой Ответчик 2 отвечает перед Истцом за исполнение обязательств Ответчиком 1 в том числе в случае неисполнения Ответчиком 1 своих обязательств гарантирует погашение задолженности в течение 10 дней с момента предъявления требования. 23 августа 2012г. Третье лицо и Голден Сфинкс Лимитед (Golden Sphinx Limited) заключили корпоративную гарантию в соответствии с которой Ответчик 3 отвечает перед Истцом за исполнение обязательств Ответчиком 1 в том числе в случае неисполнения Ответчиком1 своих обязательств гарантирует погашение задолженности в течение 10 дней с момента предъявления требования. 23 августа 2012г. Третье лицо, Ответчик 1, Ответчик 2, Ответчик 3 заключили ДОГОВОР О ВЫБОРЕ (ЛИЧНОСТИ) АРБИТРА И ПРИМЕНЯМЫХ ПРАВИЛАХ. 07 сентября 2020г. Третье лицо и компания Давилла Инвестинг Лимитед (Davilla Investing Limited), заключили соглашение по передаче прав по договору займа, в соответствии с которым, все права по договору займа от 20 апреля 2010г. с изменениями от 23 августа 2012г., заключенному между Третьим лицом и Ответчиком 1, перешли к Истцу, включая обеспечение в виде корпоративных гарантий, заключенных Третьим лицом с Ответчиком 2 и Ответчиком 3. 21 декабря 2020г. Истец направил Ответчику 2 требование об оплате задолженности Ответчика 1. 21 декабря 2020г. Истец направил Ответчику 3 требование об оплате задолженности Ответчика 1. До настоящего времени ни один из ответчиков не произвел погашение задолженности по существующим обязательствам. Таким образом, у Ответчиков есть солидарная задолженность на общую сумму 1804017,81 долл. США из которых: 1022000 долларов США – сумма основного долга. 1874,53 долл. США - сумма процентов за период с 21.04.2010г. по 21.04.2012г. 780143,28 долл. США за период с 21.04.2012г. по 12.12.2020г.;

что Истец просит солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов. Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБн Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы.

Согласно представленным суду заверенным копиям перечисленных выше договоров и соглашений, а именно: на основании арбитражного соглашения сторон, которое включено в

соглашение об изменении и отсрочке долга, заключенного между Третьим лицом и Ответчиком 1 под пунктом 12.F;на основании арбитражного соглашения сторон, которое включено в Корпоративную гарантию, заключенную между Истцом и Ответчиком 2 под пунктом 5.7;на основании арбитражного соглашения сторон, которое включено в Корпоративную гарантию, заключенную между Истцом и Ответчиком 3 под пунктом 5.7;на основании соглашения о передаче прав по Договору займа от 07.09.2020, заключенного между истцом и третьим лицом;на основании Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г., заключенного между Третьим лицом, Ответчиком 1, Ответчиком 2, Ответчиком 3, утвержденного сторонами действующим в настоящее время Арбитражным регламентом ЮНСИТРАЛ стороны согласились о том, что любые споры, разногласия, расхождения во мнениях или претензии, которые могут возникнуть из или в связи с перечисленными выше соглашениями и договорами, включая, но, не ограничиваясь, теми, которые связаны с его вступлением в силу, исполнением, изменением, нарушением, прекращением или действительностью, подлежат разрешению и окончательному урегулированию посредством арбитражного разбирательства AD HOC. Любой спор будет рассмотрен единолично согласованным сторонами Арбитром. Таким образом, данный конкретный спор передается на рассмотрение данного сформированного суда, единым арбитром назначается доктор юриспруденции Дмитрий Валерьевич Князев, Гражданин Российской Федерации.

Стороны согласились, что разрешение спора может происходить только на основе письменных материалов, предоставленных сторонами, без обязательного проведения устного слушания и вызова сторон, при этом допускается участие сторон и арбитра во встречах посредством электронной видеоконференции, например Skype. Стороны договорились, что разбирательство будет проводиться в Москве, Российская Федерация, на русском языке и в соответствии с законодательством Российской Федерации. Стороны договорились, что Арбитр определяет наличие и масштаб соглашения, подлежащего осуществлению арбитражного разбирательства, и уполномочен выносить решение, денежное или не денежное, приводить в исполнение решение, в максимально возможной степени.

20 мая 2021г. Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича вынес Определение о назначении спора к слушанию, которым был создан данный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, утвержден единым арбитром (судьей), выбранного и согласованного сторонами Князев Дмитрий Валерьевич, принято указанное выше исковое заявление к рассмотрению данным судом, назначен 25-дневный срок для подготовки дела к третейскому разбирательству с предложением сторонам представить все документы, необходимые для рассмотрения спора, включая отзывы на иск до 14 июня 2021г.

В соответствии со ст.11 Гражданского кодекса Российской Федерации «Защиту нарушенных или оспоренных гражданских прав осуществляет суд, арбитражный суд или третейский суд (далее - суд) в соответствии с их компетенцией».

В соответствии с Федеральным Законом Российской Федерации «О Третейских судах в Российской Федерации» ст.1 «1. Настоящий Федеральный закон регулирует порядок образования и деятельности третейских судов, находящихся на территории Российской Федерации. 2. В третейский суд может по соглашению сторон третейского разбирательства (далее также - стороны) передаваться любой спор, вытекающий из гражданских правоотношений, если иное не установлено федеральным законом. 3. Действие настоящего Федерального закона не распространяется на международный коммерческий арбитраж. 4. Если международным договором Российской Федерации установлен иной порядок образования и деятельности третейских судов, чем предусмотренный настоящим Федеральным законом, то применяются правила международного договора».

В соответствии с Европейской конвенцией о внешнеторговом арбитраже от 21 апреля 1961 года ст.4 Осуществление арбитражного процесса «1. Стороны арбитражного соглашения могут по своему усмотрению: «…b) предусматривать передачу споров на разрешение арбитража по данному делу (арбитраж adhoc) и в этом случае, в частности: i) назначать арбитров или устанавливать в случае возникновения какого-либо спора методы их назначения; ii) устанавливать местонахождение арбитражного суда; iii) устанавливать правила процедуры, которых должны придерживаться арбитры…».

Подготовка дела к рассмотрению проведена Арбитром надлежащим образом, а именно: Определением от 02 Августа 2021 года Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича назначил третейское разбирательство по иску Давилла Инвестинг Лимитед (Davilla Investing Limited) к Голден Спиритс Лиитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк (AFB Tradig One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям к рассмотрению на 31 августа 2021г. в 12 часов 00 минут по г. Москве по адресу: 109012, РФ, город Москва, улица Ильинка, д.4, оф. 102-103; истцу предложено представить подлинные документы в обоснование заявленных требований; ответчикам и третьему лицу в срок до 25 августа 2021г. предложено представить в суд отзывы на иск, подтвержденные документально, в судебное заседание подлинные документы в обоснование возражений. 05 августа 2021 года Арбитром направлен судебный запрос свидетелю по делу в лице Гарри Иткин (Garry Itkin).

Свидетель Гарри Иткин (Garry Itkin) на запрос суда представил надлежащим образом оформленные свидетельские показания, имеющие значения для правильного разрешения спора, а именно показал:

1.      Да, 20 апреля 2010-го года я являлся Директором компании Golden Spirits Limited

2. Да, я подписывал договор займа между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 20 апреля 2010-го года на сумму USD 1,022,000

3. Да, я подтверждаю мою подпись на договоре займа между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 20 апреля 2010-го года на сумму USD 1,022,000

4. Да, я был уполномочен подписывать договор займа между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 20 апреля 2010-го года на сумму USD 1,022,000

5. Да, сумма USD 1,022,000 была ли перечислена на счёт компании Golden Spirits Limited компанией Agragorn Holdings Limited 21 апреля 2010-го года в соответствии с договором займа от 20 апреля 2010-го года

6. Да, сумма USD 1,022,000 была ли зачислена на счёт компании Golden Spirits Limited банком указанном в договоре займа от 20 апреля 2010-го года

7. Нет, компания Golden Spirits Limited не возвратила компании Agragorn Holdings Limited долг в соответствии с договором займа от 20 апреля 2010-го года

8. Да, 23 августа 2012-го года я являлся Директором компании Golden Spirits Limited?

9. Да, я подписывал соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Spirits Limited

10. Да, я подтверждаю мою подпись на соглашении об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Spirits Limited

11. Да, я был уполномочен подписывать соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Spirits Limited

12. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года безусловно отвечало интересам компании Golden Spirits Limited и было подписано в интересах компании Golden Spirits Limited

13. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно выгодным для компании Golden Spirits Limited

14. Да, встречное удовлетворение в соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно являлось достаточным для компании Golden Spirits Limited

15. 23 августа 2012-го года я являлся Директором компании Golden Sphinx Limited

16.     Да, я подписывал соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Sphinx Limited

17.     Да, я подтверждаю мою подпись на соглашении об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Sphinx Limited

18.     Да, я был уполномочен подписывать соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Sphinx Limited

19.     Да, компания Golden Sphinx Limited была материально заинтересована в финансовом успехе компании Golden Spirits Limited

20.     Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года безусловно отвечало интересам компании Golden Sphinx Limited н было подписано в интересах компании Golden Sphinx Limited

21.     Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно выгодным для компании Golden Sphinx Limited

22.     Да, встречное удовлетворение в соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно являлось достаточным для компании Golden Sphinx Limited

23.     23 августа 2012-го года я являлся Президентом, Финансовым и Исполнительным Директором и Казначеем, компании AFB Trading One Inc

24.     Да, я подписывал соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании AFB Trading One Inc

25.     Да, я подтверждаю мою подпись на соглашении об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании AFB Trading One Inc

26.     Да, я был уполномочен подписывать соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании AFB Trading One Inc

27.     Да, компания AFB Trading One Inc была материально заинтересована в финансовом успехе компании Golden Spirits Limited

28.     Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года безусловно отвечало интересам компании AFB Trading One Inc и было подписано в интересах компании AFB Trading One Inc

29. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно выгодным для компании AFB Trading One Inc

30. Да, встречное удовлетворение в соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно являлось достаточным для компании AFB Trading One Inc

31. Да, я подписывал корпоративную гарантию от лица компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, безотзывно и безоговорочно гарантируя компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited

32. Да, я подтверждаю мою подпись на корпоративной гарантии от лица компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

33. Да, я был уполномочен подписывать корпоративную гарантию от лица компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

34. Да, компания Golden Sphinx Limited была материально заинтересована в финансовом успехе компании Golden Spirits Limited

35. Да, безотзывная и безоговорочная гарантия своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компанией Agragorn Holdings Limited от 23 августа 2012-го года безусловно отвечала интересам компании Golden Sphinx Limited и была подписана в интересах компании Golden Sphinx Limited

36. Да, выпуск безотзывной и безоговорочной гарантии своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компанией Agragorn Holdings Limited от 23 августа 2012-го года был безусловно выгодным для компании Golden Sphinx Limited

37. Да, встречное удовлетворение в корпоративной гарантии компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, гарантирующее компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited, безусловно являлось достаточным для компании Golden Sphinx Limited

38. Да, я подписывал корпоративную гарантию от лица компании AFB Trading One Inc в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, безотзывно и безоговорочно гарантируя компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited

39. Да, я подтверждаю мою подпись на корпоративной гарантии от лица компании AFB Trading One Inc в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

40. Да, я был уполномочен подписывать корпоративную гарантию от лица компании AFB Trading One Inc в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

41.     Да, компания AFB Trading One Inc была материально заинтересована в финансовом успехе компании Golden Spirits Limited

42.     Да, безотзывная и безоговорочная гарантия своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компанией Agragorn Holdings Limited от 23 августа 2012-го года безусловно отвечала интересам компании AFB Trading One Inc и была подписана в интересах компании AFB Trading One Inc

43.     Да, выпуск безотзывной и безоговорочной гарантии своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компании Agragorn Holdings Limited от 23 августа 2012-го года был безусловно выгодным для компании AFB Trading One Inc

44.     Да, встречное удовлетворение в корпоративной гарантии компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, гарантирующее компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited, безусловно являлось достаточным для компании AFB Trading One Inc

45.     Да, я подписывал соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Spirits Limited

46.     Да, я подтверждаю свою подпись на соглашении о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Spirits Limited

47.     Да, я был уполномочен подписывать соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Spirits Limited

48.     Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно отвечало интересам компании Golden Spirits Limited и было подписано в интересах компании Golden Spirits Limited

49.     Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года был безусловно выгодным для компании Golden Spirits Limited

50.     Да, встречное удовлетворение в соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно являлось достаточным для компании Golden Spirits Limited

51.     Да, я подписывал соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Sphinx Limited

52.     Да, я подтверждаю свою подпись на соглашении о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Sphinx Limited

53.     Да, я был уполномочен подписывать соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Sphinx Limited

54.     Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно отвечало интересам компании Golden Sphinx Limited и было подписано в интересах компании Golden Sphinx Limited

55. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года был безусловно выгодным для компании Golden Sphinx Limited

56. Да, встречное удовлетворение в соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно являлось достаточным для компании Golden Sphinx Limited

57. Да, я подписывал соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании AFB Trading One Inc

58. Да, я подтверждаю свою подпись на соглашении о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании AFB Trading One Inc

59. Да, я был уполномочен подписывать соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании AFB Trading One Inc

60. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно отвечало интересам компании AFB Trading One Inc и было подписано в интересах компании AFB Trading One Inc

61. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года был безусловно выгодным для компании AFB Trading One Inc

62. Да, встречное удовлетворение в соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно являлось достаточным для компании AFB Trading One Inc

19.07.2021 года в рамках рассмотрения настоящего дела от Татьяна Падалко, представившаяся финансовым управляющим Сабадаша А.В., в подтверждение полномочий к материалам дела приобщена копия Арбитражного суда Московской области по делу №А41-100887/19 от 10.11.2020г., позволяющих действовать от имени ответчиков, заявила в переписке, направленной суду: «Добрый день, я являюсь финансовым управляющим Сабадаша А.В. Организации – ответчики принадлежат Сабадашу А.В. Документы по данному спору были сфальсифицированы прошу представить ваши контактные данные для связи» (цитата из письма Татьяна Падалко <arbitrpadalko@gmail.com>). Данные заявления Татьяны Падалко оценены Арбитром в качестве доказательств наравне с иными доказательствами по делу.

19 августа 2021г. Суд получил от ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) ходатайство, где указанные Ответчики ставят вопрос о компетенции данного Суда в связи с ликвидацией 31.10.2013г. Ответчика Компании Голден Спиритс Лимитед (Golden Spirits Limited), участника данного спора и подписанта Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г.

24 августа 2021г. Суд получил Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) подписанный гр. Падалко Татьяны Алексеевны, как от финансового управляющего Сабадаша А.В., как от собственника ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), где не оспаривается соглашение о назначении арбитра в рамках арбитражной процедуры AD HOC, где также заявляется о прекращении деятельности в связи с ликвидацией 31.10.2013г. Ответчика -

Компании Голден Спиритс Лимитед (Golden Spirits Limited), поручителями по обязательствам которой являются Голден Сфинкс Лимитед (Golden Sphinx Limited), а также обязательства ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.). Представитель Ответчика просит отказать в удовлетворении иска в связи с утратой правоспособности заемщика Компании Голден Спиритс Лимитед (Golden Spirits Limited) с 01.10.2013г.

25 августа 2021г. Суд получил электронное сообщение от Managing Attorney Michael Zorkin: "Господин Князев, Прилагаю Отзыв На Исковое Заявление Ларисы Сабадаш от имени AFB Trading One, Inc. и Golden Sphinx Limited". Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) от гр. Сабадаш Ларисы (датированное 24.08.2021г., как от директора ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), как от директора Голден Сфинкс Лимитед (Golden Sphinx Limited), в которым подтверждает надлежащее уведомление о судебном рассмотрении 25 августа 2021г. в 12-00 по мск времени спора Арбитром, подтверждает заключение соглашения от 23.12.2012г. между сторонами и не оспаривает компетенцию Арбитра, указывает на то, что с 03.10.2016г. является директором ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), с 17.09.2019г. является директором Голден Сфинкс Лимитед (Golden Sphinx Limited), просит учесть, что Голден Спиритс Лимитед (Golden Spirits Limited) не существует с 31.10.2013г., заявляет, что поскольку основной заемщик Голден Спиритс Лимитед (Golden Spirits Limited)с 01.10.2013г. утратил правоспособность, соответственно полагает, что и обеспечивающие его обязательства по договорам поручительства следует считать прекратившимися, на основании чего просит отказать истцу в иске.

Суд рассмотрел отзыв гр. Сабадаш Ларисы и позицию ее представителя Михаила Зорькина, усмотрев признание и наличие долговых обязательств Голден Сфинкс Лимитед (Golden Sphinx Limited), а также обязательства ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.).

В соответствии со ст. 309 Гражданского кодекса Российской Федерации обязательства должны исполняться надлежащим образом в соответствии с условиями обязательства и требованиями закона.

Доводы представителей Ответчиков о пропуске срока исковой давности Арбитр усматривает несостоятельными постольку, поскольку гарантийные обязательства по займу Компании Голден Спиритс Лимитед (Golden Spirits Limited) были выданы до 01.10.2013г., а соответственно являются действующими.

Суд, рассмотрев в судебном заседании заявление финансового управляющего Сабадаша А.В., Падалко Т.А. о том, что организации – ответчики принадлежат Сабадашу А.В., с целью проверки указанных доводов по ходатайству истца изучил дело № А40-165165/18 по иску в Арбитражный суд г. Москвы Индивидуального предпринимателя Гофман Е. к Простому товариществу "Иткин и Сабадаш" с требованием об установлении факта заключения и действия договора. 10 октября 2019г. Решение Арбитражного суда города Москвы от 14.09.2018 г. по апелляционной жалобе гр. Сабадаша А.В., оспаривавшего факт создания Простого Товарищества «Иткин и Сабадаш» и принадлежность последнему имущества и активов, а именно: 1. ОАО

"Русский Дизель" (адрес: Ленинградская область, Всеволожский район, станция Кирпичный завод, промзона); взнос активов ОАО "Русский Дизель" в качестве уставного капитала в компанию "Дизель Лимитед" (Diesel Limited) находящуюся на острове Джерси, Великобритания; 2.ОАО "Выборгская целлюлоза" (адрес: Ленинградская область, Выборгский район, пос. Советский ул Заводская д.2); взнос активов ОАО "Выборгская целлюлоза" в качестве уставного капитала в компанию "Выборг Лимитед" (Vyborg Limited) находящуюся на острове Джерси Великобритания; 3.ЗАО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Синопская наб, д.56-58); 4.ООО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Красное село, ул. Нагорная д.5); 5.Земельные паи в совхоз "Ленинский луч" (Московская область, Красногорский район) 987 га, совхоз "Петровский" (Московская область, Красногорский район) 197 га, совхоз "Ильинский" (Московская область, Красногорский район) 430 га, совхоз "Дмитровский" (Московская область, Красногорский район) 360 га; 6.Покупка недвижимого имущества находящегося по адресу: США, штат Калифорния, город Беверли Хиллс, улица Беверли Парк, д.58; 7. покупка самолета Гольфстрим G500; исключая имущество Заказчика: недвижимое имущество, расположенное по адресу: Франция, Кап Феррат, бульвар имени Генерала де Голя, д. 17; самолет Фалькон 200, бортовой номер HB VNG, в связи с нахождением имущества за пределами РФ., что было проверено и удостоверено Девятым Арбитражный Апелляционный Суд города Москвы в Определении от 12.09.2019 г., который рассмотрев в судебном заседании, дал оценку представленным доказательством и доводам господина Сабадаша, изложенных в его апелляционной жалобе, установил и подтвердил существование Простого Товарищества «Иткин и Сабадаш».

Таким образом изучив материалы дела № А40-165165/18, учитывая преюдициальность судебных актов, вступивших в законную силу и подлежащих обязательному исполнению, ответы сторон, третьих лиц и свидетелей на судебные запросы, Суд установил, что вопреки заявлению финансового управляющего Сабадаша А.В., гр. Падалко Т.А., организации – ответчики и активы, которыми они владеют, фактически принадлежат Простому Товариществу «Иткин и Сабадаш», хотя номинально зарегистрированы на имя Сабадаша А.В. и Амбер Траст (Amber Trust), управляемый Сабадашем А.В.

**Суд в ходе рассмотрения доказательств по данному делу установил следующее:**

- Ответчик 1, Голден Спиритс Лимитед (Golden Spirits Limited), находясь в номинальном владении Сабадаша А.В, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Ответчик 2, ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.), находясь в номинальном владении траста Амбер Траст (Amber Trust), управляемым Сабадашем А.В, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Ответчик 3, Голден Сфинкс Лимитед (Golden Sphinx Limited), находясь в номинальном владении траста Амбер Траст (Amber Trust), управляемым Сабадашем А.В, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- ОАО "Русский Дизель" (адрес: Ленинградская область, Всеволожский район, станция Кирпичный завод, промзона), и компания "Дизель Лимитед" (Diesel Limited) находящаяся на острове Джерси, Великобритания, находясь в номинальном владении Ответчика 2, фактически принадлежат Простому Товариществу «Иткин и Сабадаш»;

- ОАО "Выборгская целлюлоза" (адрес: Ленинградская область, Выборгский район, пос. Советский ул. Заводская д.2) и компания "Выборг Лимитед" (Vyborg Limited), находящаяся на острове Джерси, Великобритания, находясь в номинальном владении Ответчика 2, фактически принадлежат Простому Товариществу «Иткин и Сабадаш»;

- Недвижимое имущество, находящееся по адресу: США, штат Калифорния, город Беверли Хиллс, улица Беверли Парк, д.58, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Самолет Гольфстрим G500 фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Недвижимое имущество, расположенное по адресу: Франция, Кап Феррат, бульвар имени Генерала де Голя, д. 17 фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

Согласно представленным Арбитру доказательствам, 21.04.2010г. Третье лицо перевело Ответчику 1 денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США и уплатил комиссию за перевод в размере 268,36 (Двести шестьдесят восемь) долларов США. Таким образом, в полном объеме выполнил обязательства по договору займа. Обязанности по возврату суммы займа и процентов по займу Ответчиком 1 выполнены не были.

23 августа 2012г. Третье лицо и Ответчик 1 заключили соглашение об изменении и отсрочке долга. В соответствии с данным соглашением стороны продлили срок исполнения обязательства по возврату долга Ответчиком 1 до «01» января 2020г. При этом процентная ставка, указанная в пункте 4.2 Договора займа, в соответствии с п.4 соглашения об изменении и отсрочке долга повышается до 6,5% годовых (в год), с ежемесячным начислением сложных процентов, начиная с Даты изменения, до полной выплаты. А также стороны согласовали следующих гарантов: ЭйЭфБи Трейдинг Уап, Инк., зарегистрированная в Штате Калифорния, США, зарегистрированные офисы которой расположены по адресу: 8501 Вилшир Бульвар, Суит 330, Беверли-Хиллз, Калифорния, США («Гарант 1»), и Голден Сфинкс Лимитед, зарегистрированные офисы которой расположены по адресу: 43 Ла Мотт Стрит, Сент-Хелиер, остров Джерси, JE4 8SD, Нормандские Острова («Гарант 2»).

23 августа 2012г. Третье лицо и ЭйЭфБи Трейдинг Уан, Инк.(AFB Tradig One.Inc.) (далее – Ответчик 2) заключили корпоративную гарантию в соответствии с которой Ответчик 2 отвечает перед Истцов за исполнение обязательств Ответчиком 1 в том числе в случае неисполнения Ответчиком1 своих обязательств гарантирует погашение задолженности в течение 10 дней с момента предъявления требования.

23 августа 2012г. Третье лицо и Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее – Ответчик 3) заключили корпоративную гарантию в соответствии с которой Ответчик 3 отвечает

перед Истцов за исполнение обязательств Ответчиком 1 в том числе в случае неисполнен Ответчиком1 своих обязательств гарантирует погашение задолженности в течение 10 дней момента предъявления требования.

23 августа 2012г. Третье лицо, Ответчик 1, Ответчик 2, Ответчик 3 заключили ДОГОВОР ВЫБОРЕ (ЛИЧНОСТИ) АРБИТРА И ПРИМЕНЯМЫХ ПРАВИЛАХ

07 сентября 2020г. Третье лицо и компания Давилла Инвестинг Лимитед (Davilla Investir Limited) (далее Истец), заключили соглашение по передаче прав по договору займа, в соответстви с которым, все права по договору займа от 20 апреля 2010г. с изменениями от 23 августа 2012г заключенному между Третьим лицом и Ответчиком 1, перешли к Истцу, включая обеспечение виде корпоративных гарантий, заключенных Третьим лицом с Ответчиком 2 и Ответчиком 3.

21 декабря 2020г. Истец направил Ответчику 2 требование об оплате задолженност Ответчика 1.

21 декабря 2020г. Истец направил Ответчику 3 требование об оплате задолженнос Ответчика 1.

До настоящего времени ни один из ответчиков не произвел погашение задолженности по существующим обязательствам.

**Изложенные выше обстоятельства подтверждаются следующими доказательствами:**

1.  Договор займа от 20 апреля 2010г. между Третьим лицом и Ответчиком 1;

2.  Банковская выписка от 21 апреля 2010г. подтверждающая перевод 1022000 долларов США от Третьего лица Ответчику 1;

3.  Соглашение об изменении и отсрочке долга от 23 августа 2012г. между Третьим лицом и Ответчиком 1;

4.  Корпоративная гарантия от 23 августа 2012г. выданная Ответчиком 2 Третьему лицу;

5.  Корпоративная гарантия от 23 августа 2012г. выданная Ответчиком 3 Третьему лицу;

6.  Соглашение по передаче прав по договору займа от 07 сентября 2020г. между Третьим лицом и Истцом.

7.  Требованиями об оплате задолженности.

В соответствии со ст.810 ГК РФ «… Заемщик обязан возвратить займодавцу полученную сумму займа в срок и в порядке, которые предусмотрены договором займа».

В соответствии со ст.809 ГК РФ «1. Если иное не предусмотрено законом или договором займа, займодавец имеет право на получение с заемщика процентов за пользование займом в размерах и в порядке, определенных договором. При отсутствии в договоре условия о размере процентов за пользование займом их размер определяется ключевой ставкой Банка России, действовавшей в соответствующие периоды.

2. Размер процентов за пользование займом может быть установлен в договоре с применением ставки в процентах годовых в виде фиксированной величины, с применением ставки в процентах годовых, величина которой может изменяться в зависимости от предусмотренных договором условий, в том числе в зависимости от изменения переменной величины, либо иным путем, позволяющим определить надлежащий размер процентов на момент их уплаты.

3. При отсутствии иного соглашения проценты за пользование займом выплачиваются ежемесячно до дня возврата займа включительно...».

В соответствии со ст.363 ГК РФ «1. При неисполнении или ненадлежащем исполнении должником обеспеченного поручительством обязательства поручитель и должник отвечают перед кредитором солидарно, если законом или договором поручительства не предусмотрена субсидиарная ответственность поручителя.

2. Поручитель отвечает перед кредитором в том же объеме, как и должник, включая уплату процентов, возмещение судебных издержек по взысканию долга и других убытков кредитора, вызванных неисполнением или ненадлежащим исполнением обязательства должником, если иное не предусмотрено договором поручительства.

3. Лица, совместно давшие поручительство (сопоручители), отвечают перед кредитором солидарно, если иное не предусмотрено договором поручительства. Если из соглашения между сопоручителями и кредитором не следует иное, сопоручители, ограничившие свою ответственность перед кредитором, считаются обеспечившими основное обязательство каждый в своей части. Сопоручитель, исполнивший обязательство, имеет право потребовать от других лиц, предоставивших обеспечение основного обязательства совместно с ним, возмещения уплаченного пропорционально их участию в обеспечении основного обязательства...».

В соответствии со ст. 384 ГК РФ «Если иное не предусмотрено законом или договором, право первоначального кредитора переходит к новому кредитору в том объеме и на тех условиях, которые существовали к моменту перехода права. В частности, к новому кредитору переходят права, обеспечивающие исполнение обязательства, а также другие связанные с требованием права, в том числе право на проценты...».

Таким образом, у Ответчиков есть солидарная задолженность на общую сумму 1804017,81 долл. США из которых:

1022000 долларов США – сумма основного долга.

1874,53 долл. США - сумма процентов за период с 21.04.2010г. по 21.04.2012г.

780143,28 долл. США за период с 21.04.2012г. по 12.12.2020г.

В соответствии с Федеральным Законом Российской Федерации «О Третейских судах в Российской Федерации» ст.16.

В соответствии с Арбитражным регламентом ЮНСИТРАЛ (регламент, принятый Комиссией ООН по праву международной торговли в 1976 г. и рекомендованный к использованию Генеральной Ассамблеей ООН 15 декабря 1976 г. с изменениями).

31 августа 2021г. третейский суд, образованный сторонами для разрешения конкретного спора в составе единоличного третейского судьи, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича, рассмотрев исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) ( истец) к Голден Спиритс Лимитед (Golden Spirits Limited) (Ответчик 1), ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (Ответчик 2), Голден Сфинкс Лимитед (Golden Sphinx Limited) (Ответчик 3), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям

## РЕШИЛ:

1. Удовлетворить исковые требования по иску Давилла Инвестинг Лимитед (Davilla Investing Limited) к Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.

2. Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов.

3. Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы в размере 278000 (Двести семьдесят восемь тысяч) рублей.

4. В соответствии с арбитражным соглашением, решение третейского суда окончательно. Вступает в законную силу немедленно с даты принятия, подлежит немедленному исполнению. В соответствии с ч. 4 ст. 238 АПК РФ, обстоятельства, установленные третейским судом, не подлежат переоценке либо пересмотру, по существу.

Арбитражный суд

в рамках арбитражной процедуры AD HOC

ских судах в

, принятый
ользованию

онкретного
;ранного и
заявление
: Лимитед
One.Inc.)
Холдингс
лашении

Davilla
н, Инк
митед
ии об

ited),
ed) в
олга
ние
ров

d),
d),
в
в

да
а
IM

для разрешения конкретного спора

единый арбитр (судья),

выбранный и согласованный сторонами

Князев Дмитрий Валерьевич

Российская Федерация. Город Москва

Тридцатое апреля две тысячи двадцать шестого года

Я, Глухов Сергей Иванович, нотариус города Москвы, свидетельствую верность копии с предоставленного мне документа.

Зарегистрировано в реестре: N 77/749-н/77-2026- 1-1083

Уплачено за совершение нотариального действия: 3300 р

С.И. Глухов

АРБИТРАЖНЫЙ СУД
В РАМКАХ АРБИТРАЖНОЙ ПРОЦЕДУРЫ

ЕДИНЫЙ АРБИТР (СУДЬЯ)

Дмитрий ВАЛ.У.

Всего прошнуровано,
пронумеровано и скреплено
печатью 11
листов.

Нотариус

*Перевод с русского языка на английский*
*Russian to English Translation*

# COPY

Agreed.

Chairman of the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation in Moscow (ICAC)

– signature – A. Kostin,

No. 1800-4/301

September 06, 2021

*Seal: Chamber of Commerce and Industry of the Russian Federation, Department of Accounts and Certificates*

**Ad hoc tribunal for specific dispute resolution**
**Sole judge, selected and stipulated to by the parties: Knyazev Dmitry Valerievich Address: 4 Ilinka Street, Office 102–103, Moscow, Russia 109012**

## ORDER

On August 31, 2021, in the city of Moscow, Ad hoc tribunal for specific dispute resolution (hereinafter also referred to as the "Tribunal"), composed of the sole judge, selected and stipulated to by the parties — Dmitry Valerievich Knyazev (hereinafter also referred to as the "Judge" or "Arbitrator"), reviewed the statement of claim filed by Davilla Investing Limited (hereinafter also referred to as the "Plaintiff") against Golden Spirits Limited (hereinafter "Defendant 1"), AFB Trading One, Inc. (hereinafter "Defendant 2"), Golden Sphinx Limited (hereinafter "Defendant 3"), and Agragorn Holdings Limited (hereinafter "Third Party") seeking the recovery of debt under a loan agreement, debt modification and deferral agreement, and corporate guarantees.

The arbitration was held in accordance with the Russian Federation Federal Arbitration Law No. 382-FZ of December 29, 2015" (hereinafter the "Arbitration Law," FZ-382), in the presence of the parties:

Irina Borisovna Selezneva, counsel for the plaintiff: Davilla Investing Limited. Copy of the power of attorney from Davilla Investing Limited submitted as part of the case file.

Defendant 1: Golden Spirits Limited

Defendant 2: AFB Trading One, Inc. — Tatyana Padalko, financial administrator for Sabadash A.V.; a copy of the decision of the Moscow Region Arbitration Court in case No. A41-100887/19 dated November 10, 2020, was submitted as evidence of authorization.

Defendant 3: Golden Sphinx Limited

Third Party: Agragorn Holdings Limited

On August 24, 2021, the Tribunal received a response to the claim filed by Davilla Investing Limited from Larisa Sabadash, in her capacity as Director of AFB Trading One, Inc. and as Director of Golden Sphinx Limited.

On the same date, the Tribunal received a separate response to the claim from Tatyana Alekseevna Padalko, in her capacity as Financial Administrator of Sabadash A.V., as owner of AFB Trading One, Inc. Exercising the powers granted under Article 16.I of the Arbitration Law, the Arbitrator, in determining

jurisdiction, additionally reviews the case materials for compliance with Article 239 of the Commercial Procedure Code of the Russian Federation (RF CPC) to rule out any grounds that may cause a competent court to deny issuance of a writ of execution for the enforcement of the arbitral award.

Jurisdiction of the Arbitrator:

Pursuant to Article 2 of Russian Federation Federal Arbitration Law No. 382-FZ of December 29, 2015 (hereinafter the "Arbitration Law," FZ-382):

2. Arbitration (arbitral proceedings) a process of dispute resolution by an arbitral tribunal and rendering of an arbitral award by the tribunal;

3. Arbitral tribunal — a sole arbitrator or a panel of arbitrators;

4. Arbitrator (arbitral judge) — a natural person selected by the parties or appointed in accordance with the procedure agreed upon by the parties or established by federal law for the purpose of resolving a dispute through arbitration;

5. Administration of arbitration — carrying out organizational functions related to arbitration, including procedures for the selection, appointment, or challenge of arbitrators, maintenance of case files, and management of arbitration fees, excluding the functions of the tribunal related directly to dispute resolution.

An arbitration Paragraph that forms part of a contract is considered an agreement independent of the other terms of the contract. A ruling that the contract is invalid does not, by itself, render the arbitration agreement invalid.

A statement challenging the jurisdiction of the arbitral tribunal must be filed by the relevant party to the arbitration no later than the submission of its first statement on the merits of the dispute.

Prior to the commencement of the proceedings on the merits of the claim, no objections were raised pertaining to the Arbitral Judge's jurisdiction to adjudicate the matter at hand.

Pursuant to Articles 7, 19, and 52 of the Arbitration Law, the Arbitrator ruled that he has jurisdiction to consider the dispute submitted to him for resolution.

Exercising the powers granted under Article 16.1 of the Arbitration Law, the Arbitrator, in affirming his jurisdiction, additionally reviewed the case materials for compliance with the provisions of Article 239 of the Commercial Procedure Code of the Russian Federation (RF CPC) to eliminate grounds for a competent court to refuse the issuance of a writ of execution for the enforcement of the arbitral award:

I. In accordance with Article 239.3 of the RF CPC:

Paragraph 1: "A competent court may deny the issuance of a writ of execution only if a party to the arbitral proceedings provides evidence that one of the parties to the arbitration agreement under which the dispute was resolved lacked full legal capacity."

No such claims have been submitted by the parties.

Paragraph 2: "A competent court may deny the issuance of a writ of execution only if a party to the arbitral proceedings provides evidence that the arbitration agreement under which the dispute was resolved is invalid under the law to which the parties have subjected it, or in the absence of such indication, under the law of the Russian Federation."

Under Article 7 of Federal Law No. 382-FZ, "an arbitration agreement is an agreement between the parties to submit to arbitration all or certain disputes which have arisen or may arise between them in connection with a defined legal relationship, whether contractual or not. The arbitration agreement may be made in the form of an arbitration Paragraph in a contract or in the form of a separate agreement.

When interpreting an arbitration agreement, any doubt shall be interpreted in favor of its validity and enforceability."

The parties were duly notified of the formation of the tribunal, as well as the date, location, and time of the hearing. Pursuant to Article 3 of the Arbitration Law, the parties are deemed to have been properly notified,

in accordance with the analogy to Article 123 of the RF CPC.

This conclusion is also supported by the position of the Judicial Panel of the Supreme Court of the Russian Federation dated December 30, 2015 No. 302-EC15-11092:

Paragraph 5: "A competent court may deny the issuance of a writ of execution only if a party to the arbitral proceedings provides evidence that the composition of the arbitral tribunal or the arbitration procedure was not in accordance with the agreement of the parties or with federal law."

A) Composition of the Arbitral Tribunal: Pursuant to Part 2 of Article 11 of Federal Law No. 382-FZ, the parties to arbitration may agree on the procedure for the selection (appointment) of an arbitrator or arbitrators, provided that the requirements of Parts 4–11 of this Article are observed.

On the basis of the assignment agreement under the Loan Agreement dated September 7, 2020, entered into between the Plaintiff and the Third Party, and on the basis of the Agreement on the Selection of the Arbitrator and Applicable Rules dated August 23, 2012, entered into between the Third Party, Defendant 1, Defendant 2, and Defendant 3, which is currently in force and has been approved by the parties pursuant to the UNCITRAL Arbitration Rules, the parties agreed that any disputes, disagreements, differences of opinion, or claims that may arise from or in connection with the aforementioned agreements and contracts—including but not limited to those related to their entry into force, performance, amendment, breach, termination, or validity—shall be resolved and finally settled through ad hoc arbitration.

Any such dispute shall be heard by a sole arbitrator agreed upon by the parties. Accordingly, this specific dispute was submitted for consideration by this duly constituted tribunal, with the sole arbitrator being Master of Laws Dmitry Valerievich Knyazev, a citizen of the Russian Federation.

The identity of the Arbitrator has been verified based on the Passport of a citizen of the Russian Federation issued in the name of Dmitry Valerievich Knyazev, as confirmed by a copy included in the arbitration case file. The possession of a higher legal education by the appointed Arbitrator, Dmitry Valerievich Knyazev, is confirmed by a diploma issued in the Russian Federation, Moscow, by the Specialized Institute of Jurisprudence, Diploma No. ABC 0715029, a copy of which is included in the case file.

The absence of a criminal record is confirmed by a Certificate issued by the Main Directorate of the Ministry of Internal Affairs of Russia for the city of Moscow dated July 11, 2021, No. 13/5-099/264646-E, also included in the arbitration case file.

According to the clarification provided by the Ministry of Justice of Russia dated September 2, 2021, No. 12-103924/2021, the provisions of Federal Law No. 382-FZ do not authorize an arbitral tribunal formed by the parties for the resolution of a specific dispute to perform the functions of a permanent arbitral institution or to engage in arbitration administration. Accordingly, the applicable legislation does not require the arbitrator to hold any additional licenses or permits.

Thus, the formation of the Arbitral Tribunal has been carried out in compliance with the provisions of the Arbitration Law.

B) Arbitration Procedure: Pursuant to paragraphs 1 and 2 of Article 19 of the Arbitration Law: "Subject to the provisions of this Federal Law, the parties may agree at their discretion on the procedure to be followed in the arbitration. In the absence of such agreement, the arbitral tribunal may, subject to the provisions of this Federal Law, conduct the arbitration in such manner as it considers appropriate, including the determination of the admissibility, relevance, and weight of any evidence."

According to Article 2.2 of the Arbitration Law: "Administration of arbitration means performing organizational functions related to the arbitration, including the selection, appointment, or challenge of arbitrators, case file maintenance, and the collection and allocation of arbitration fees, excluding the functions of the arbitral tribunal directly related to dispute resolution."

In accordance with this provision, the Sole Arbitrator adjudicated the dispute personally, as confirmed by the arbitration case materials:

- was personally selected by the parties in the arbitration agreement,
- personally received the statement of claim and accepted it for proceedings,
- personally selected and secured a venue for the hearing,
- received the arbitration fee into his personal bank account,
- personally paid expenses associated with the adjudication of the dispute (postal charges, office supplies, equipment, venue, etc.),
- personally mailed court notices and other documents to the parties,
- personally scheduled and conducted the hearing,
- personally issued procedural rulings and the arbitral award,
- no objections were raised by the parties regarding any violation of arbitration procedures,
- no motions for recusal or self-recusal were submitted.

Pursuant to Part 1 of Article 11 of the Civil Code of the Russian Federation, the protection of violated or disputed civil rights shall be carried out, in accordance with the jurisdiction established by procedural legislation, by a court, arbitration court, or arbitral tribunal.

According to Part 1 of Article 33 of the Commercial Procedure Code of the Russian Federation (RF CPC), disputes arising from civil law relations, as well as individual labor disputes involving professional athletes and coaches in elite sports, may be submitted by the parties to an arbitral tribunal, provided that a valid arbitration agreement exists between the parties and unless otherwise stipulated by federal law.

Under Part 3 of Article 1 of the Arbitration Law, disputes between parties to civil law relations may be submitted to arbitration by agreement of the parties, unless otherwise provided by federal law.

Current legislation does not prohibit referring disputes under loan agreements or assignments entered into between legal entities to arbitration.

Loan and assignment agreements are not contracts concluded within the framework of public procurement for state or municipal needs, nor are they contracts made under the procedure prescribed by Federal Law No. 223-FZ.

No submissions were made by the parties claiming that the present dispute is not arbitrable or that it contravenes the public policy of the Russian Federation, nor were any such issues identified by the Arbitrator.

The Sole Arbitrator, while maintaining the record of the hearing, reviewed the statement of claim and the evidence submitted by the parties, making the following

## FINDINGS:

The Plaintiff filed a claim against Defendant 1, Defendant 2, Defendant 3, and the Third Party, and on May 18, 2021, sent by registered mail to all parties a notice of arbitration with the statement of claim and annexes, stating:

that the Plaintiff was informing the parties about the referral of the claim for recovery of debt under the Loan Agreement to arbitration;

that the dispute arose from the Loan Agreement dated April 20, 2010, concluded between Agragorn Holdings Limited and Golden Spirits Limited; the Agreement on Modification and Deferral of Debt dated August 23, 2012, concluded between Agragorn Holdings Limited and Golden Spirits Limited; the Corporate Guarantee dated August 23, 2012, concluded between Agragorn Holdings Limited and AFB Trading One, Inc.; the Corporate Guarantee dated August 23, 2012, concluded between Agragorn Holdings Limited and Golden Sphinx Limited; and the Assignment Agreement dated September 7, 2020, concluded between Agragorn Holdings Limited and Davilla Investing Limited;

that on April 20, 2010, Agragorn Holdings Limited and Golden Spirits Limited entered into a loan

agreement. Pursuant to this agreement, the Third Party extended a loan in the amount of 1,022,000 (one million twenty-two thousand) US dollars to the borrower. Under clause 4.1 of the loan agreement, Defendant 1 was to repay the loan no later than two years from the date of disbursement, and under clause 4.2 of the loan agreement, to pay 1.1% annual interest on the loan amount. On April 21, 2010, the Third Party transferred 1,022,000 (one million twenty-two thousand) US dollars to Defendant 1 and paid a transfer fee of 268.36 (two hundred sixty-eight) US dollars. Thus, the Third Party fully performed its obligations under the loan agreement. Defendant 1 failed to fully perform its obligations to repay the loan principal and interest. On August 23, 2012, the Third Party and Defendant 1 entered into an agreement on modification and deferral of the debt. Under this agreement, the parties extended the deadline for repayment by Defendant 1 to January 1, 2020. The interest rate stipulated in clause 4.2 of the loan agreement was increased under clause 4 of the modification and deferral agreement to 6.5% per annum, with monthly compounding interest from the date of amendment until full repayment.

The parties also agreed to the following guarantors: AFB Trading One, Inc., registered in the State of California, USA, with registered offices at 8501 Wilshire Boulevard, Suite 330, Beverly Hills, California, USA ("Guarantor 1"), and Golden Sphinx Limited, a company registered in the State of California, USA, with registered offices at 43 La Motte Street, St. Helier, Jersey, JE4 8SD, Channel Islands ("Guarantor 2").

On August 23, 2012, the Third Party and AFB Trading One, Inc. entered into a corporate guarantee whereby Defendant 2 assumed responsibility before the Plaintiff for the performance of Defendant 1's obligations, and in case of default, guaranteed repayment of the debt within 10 days of a demand.

On August 23, 2012, the Third Party and Golden Sphinx Limited entered into a corporate guarantee whereby Defendant 3 assumed responsibility before the Plaintiff for the performance of Defendant 1's obligations, and in case of default, guaranteed repayment of the debt within 10 days of a demand.

On August 23, 2012, the Third Party, Defendant 1, Defendant 2, and Defendant 3 entered into an AGREEMENT ON THE SELECTION OF THE ARBITRATOR AND APPLICABLE RULES.

On September 7, 2020, the Third Party and Davilla Investing Limited entered into an agreement on the assignment of rights under the Loan Agreement, under which all rights under the loan agreement dated April 20, 2010, as amended on August 23, 2012, between the Third Party and Defendant 1, were transferred to the Plaintiff, including the security in the form of corporate guarantees concluded between the Third Party and Defendants 2 and 3.

On December 21, 2020, the Plaintiff sent a demand to Defendant 2 for payment of Defendant 1's debt. On December 21, 2020, the Plaintiff sent a demand to Defendant 3 for payment of Defendant 1's debt. As of this date, none of the Defendants has repaid the debt under the existing obligations.

Therefore, the Defendants have joint and several liability for a total amount of 1,804,017.81 US dollars, consisting of: 1,022,000 US dollars as the principal debt; 1,874.53 US dollars in interest for the period from April 21, 2010, to April 21, 2012; and 780,143.28 US dollars for the period from April 21, 2012, to December 12, 2020.

The Plaintiff seeks joint and several recoveries from Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited in favor of Davilla Investing Limited in the amount of 1,022,000 (one million twenty-two thousand) US dollars as the principal debt, and 782,017.80 (seven hundred eighty-two thousand seventeen US dollars and eighty cents) as interest. The Plaintiff also seeks joint and several recoveries of court costs from the same companies in favor of Davilla Investing Limited.

According to the certified copies of the above-mentioned agreements and contracts submitted to the Tribunal, and based on the arbitration agreements included therein, namely:

under the arbitration agreement of the parties incorporated in the Agreement on Modification and Deferral of Debt concluded between the Third Party and Defendant 1 under clause 12.F;

under the arbitration agreement of the parties incorporated in the Corporate Guarantee concluded between the Plaintiff and Defendant 2 under clause 5.7;

under the arbitration agreement of the parties incorporated in the Corporate Guarantee concluded between

the Plaintiff and Defendant 3 under clause 5.7;

under the Assignment Agreement dated September 7, 2020, concluded between the Plaintiff and the Third Party;

under the Agreement on the Selection of the Arbitrator and Applicable Rules dated August 23, 2012, concluded between the Third Party, Defendant 1, Defendant 2, and Defendant 3, and approved by the parties pursuant to the currently applicable UNCITRAL Arbitration Rules,

the parties agreed that any disputes, disagreements, differences of opinion, or claims arising out of or in connection with the aforementioned agreements and contracts, including but not limited to those relating to their validity, performance, amendment, breach, termination, or enforceability, shall be resolved and finally settled through AD HOC arbitration. Any such dispute shall be adjudicated by a sole arbitrator agreed upon by the parties.

Accordingly, the present dispute was submitted to this duly formed tribunal, with Doctor of Law Dmitry Valerievich Knyazev, a citizen of the Russian Federation, appointed as the sole arbitrator.

The parties agreed that the dispute would be resolved solely based on the written materials submitted by the parties, without the mandatory holding of an oral hearing or summoning of the parties, while allowing participation of the parties and the arbitrator via electronic video conferencing, such as Skype. The parties further agreed that the arbitration would be conducted in Moscow, Russian Federation, in the Russian language and in accordance with the legislation of the Russian Federation. They also agreed that the Arbitrator would determine the existence and scope of the agreement to arbitrate and would be authorized to issue enforceable awards—monetary or otherwise—to the fullest extent possible.

On May 20, 2021, the Arbitral Tribunal, constituted under an AD HOC arbitration procedure for the resolution of a specific dispute and composed of the sole arbitrator selected and agreed upon by the parties, Dmitry Valerievich Knyazev, issued a Ruling to Schedule the Hearing. By this ruling, the Tribunal was established under the AD HOC arbitration procedure for resolution of a specific dispute, confirmed Dmitry Valerievich Knyazev as the sole arbitrator selected and agreed upon by the parties, admitted the above-mentioned claim for consideration by this Tribunal, and set a 25-day period to prepare the case for arbitration. The parties were invited to submit all documents required for adjudication of the dispute, including their responses to the claim, by June 14, 2021.

Pursuant to Article 11 of the Civil Code of the Russian Federation, "The protection of violated or disputed civil rights shall be carried out by a court, magistrate court, or arbitral tribunal (hereinafter referred to as the court) in accordance with their jurisdiction."

Pursuant to the Federal Law of the Russian Federation "On Arbitral Tribunals in the Russian Federation," Article 1 states: "1. This Federal Law regulates the procedure for the establishment and operation of arbitral tribunals located within the territory of the Russian Federation. 2. By agreement of the parties to arbitral proceedings (hereinafter also – the parties), any dispute arising from civil law relationships may be submitted to an arbitral tribunal unless otherwise provided by federal law. 3. The effect of this Federal Law does not extend to international commercial arbitration. 4. If an international treaty of the Russian Federation establishes a different procedure for the formation and operation of arbitral tribunals than that provided by this Federal Law, the rules of the international treaty shall apply."

According to Article 4 of the European Convention on International Commercial Arbitration dated April 21, 1961, "1. The parties to an arbitration agreement may, at their discretion: ... b) provide for the referral of disputes to arbitration in a particular case (ad hoc arbitration) and, in particular: i) appoint arbitrators or establish methods for their appointment in the event of a dispute; ii) determine the seat of the arbitral tribunal; iii) establish the rules of procedure to be followed by the arbitrators..."

The case was duly prepared for consideration by the Arbitrator. By Ruling dated August 2, 2021, the Arbitral Tribunal established under the AD HOC arbitration procedure for resolution of a specific dispute, acting through the sole arbitrator selected and agreed upon by the parties—Dmitry Valerievich Knyazev—scheduled

the arbitral hearing in the case of Davilla Investing Limited vs. Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited for recovery of debt under a loan agreement, agreement on modification and deferral of debt, and corporate guarantees for August 31, 2021, at 12:00 PM Moscow time, at: 4 Ilinka Street, Office 102–103, Moscow, Russia 109012.

The Plaintiff was requested to submit original documents supporting the claims; Defendants and the Third Party were given until August 25, 2021, to submit documented responses to the claim and to present originals substantiating their objections at the hearing.

On August 5, 2021, the Arbitrator sent a court request to witness Garry Itkin.

Witness Garry Itkin duly submitted sworn testimony significant for proper resolution of the dispute, in which he stated:

1. Yes, on April 20, 2010, I was the Director of Golden Spirits Limited.

2. Yes, I signed the loan agreement between Agragorn Holdings Limited and Golden Spirits Limited dated April 20, 2010, for the amount of USD 1,022,000.

3. Yes, I confirm my signature on the loan agreement dated April 20, 2010, for USD 1,022,000.

4. Yes, I was authorized to sign the loan agreement dated April 20, 2010, for USD 1,022,000.

5. Yes, the amount of USD 1,022,000 was transferred to the account of Golden Spirits Limited by Agragorn Holdings Limited on April 21, 2010, as per the loan agreement.

6. Yes, the amount of USD 1,022,000 was credited to the account of Golden Spirits Limited by the bank specified in the loan agreement dated April 20, 2010.

7. No, Golden Spirits Limited did not repay the debt to Agragorn Holdings Limited in accordance with the loan agreement dated April 20, 2010.

8. Yes, on August 23, 2012, I was the Director of Golden Spirits Limited.

9. Yes, I signed the agreement on modification and deferral of debt dated August 23, 2012, between Agragorn Holdings Limited and Golden Spirits Limited on behalf of Golden Spirits Limited.

10.Yes, I confirm my signature on the agreement on modification and deferral of debt dated August 23, 2012, on behalf of Golden Spirits Limited.

11.Yes, I was authorized to sign the agreement on modification and deferral of debt dated August 23, 2012, on behalf of Golden Spirits Limited.

12.Yes, the agreement on modification and deferral of debt dated August 23, 2012, was unequivocally in the interests of Golden Spirits Limited and was signed in its interest.

13.Yes, the agreement on modification and deferral of debt dated August 23, 2012, was unequivocally beneficial for Golden Spirits Limited.

14.Yes, the consideration in the agreement on modification and deferral of debt dated August 23, 2012, was undoubtedly sufficient for Golden Spirits Limited.

15.On August 23, 2012, I was also the Director of Golden Sphinx Limited.

16.Yes, I signed the agreement on modification and deferral of debt dated August 23, 2012, between Agragorn Holdings Limited and Golden Spirits Limited on behalf of Golden Sphinx Limited.

17.Yes, I confirm my signature on the agreement on modification and deferral of debt between Agragorn Holdings Limited and Golden Spirits Limited dated August 23, 2012, on behalf of Golden Sphinx Limited.

18.Yes, I was authorized to sign the agreement on modification and deferral of debt between Agragorn Holdings Limited and Golden Spirits Limited dated August 23, 2012, on behalf of Golden Sphinx Limited.

19.Yes, Golden Sphinx Limited had a material interest in the financial success of Golden Spirits Limited.

20.Yes, the agreement on modification and deferral of debt dated August 23, 2012, between Agragorn Holdings Limited and Golden Spirits Limited was unequivocally in the interest of Golden Sphinx Limited

and was signed in its interest.

21. Yes, the agreement on modification and deferral of debt dated August 23, 2012, was unequivocally beneficial for Golden Sphinx Limited.

22. Yes, the consideration in the agreement on modification and deferral of debt dated August 23, 2012, was undoubtedly sufficient for Golden Sphinx Limited.

23. On August 23, 2012, I was the President, Chief Financial and Executive Officer, and Treasurer of AFB Trading One Inc.

24. Yes, I signed the agreement on modification and deferral of debt between Agragorn Holdings Limited and Golden Spirits Limited dated August 23, 2012, on behalf of AFB Trading One Inc.

25. Yes, I confirm my signature on the agreement on modification and deferral of debt dated August 23, 2012, on behalf of AFB Trading One Inc.

26. Yes, I was authorized to sign the agreement on modification and deferral of debt dated August 23, 2012, on behalf of AFB Trading One Inc.

27. Yes, AFB Trading One Inc. had a material interest in the financial success of Golden Spirits Limited.

28. Yes, the agreement on modification and deferral of debt dated August 23, 2012, was unequivocally in the interest of AFB Trading One Inc. and was signed in its interest.

29. Yes, the agreement on modification and deferral of debt dated August 23, 2012, was unequivocally beneficial for AFB Trading One Inc.

30. Yes, the consideration in the agreement on modification and deferral of debt dated August 23, 2012, was undoubtedly sufficient for AFB Trading One Inc.

31. Yes, I signed the corporate guarantee on behalf of Golden Sphinx Limited in favor of Agragorn Holdings Limited dated August 23, 2012, irrevocably and unconditionally guaranteeing Agragorn Holdings Limited the timely and proper performance, observance, and fulfillment of obligations by Golden Spirits Limited.

32. Yes, I confirm my signature on the corporate guarantee on behalf of Golden Sphinx Limited in favor of Agragorn Holdings Limited dated August 23, 2012.

33. Yes, I was authorized to sign the corporate guarantee on behalf of Golden Sphinx Limited in favor of Agragorn Holdings Limited dated August 23, 2012.

34. Yes, Golden Sphinx Limited had a material interest in the financial success of Golden Spirits Limited.

35. Yes, the irrevocable and unconditional guarantee dated August 23, 2012, of the timely and proper performance, observance, and fulfillment of obligations by Golden Spirits Limited to Agragorn Holdings Limited was unequivocally in the interest of Golden Sphinx Limited and was signed in its interest.

36. Yes, the issuance of the irrevocable and unconditional guarantee dated August 23, 2012, was unequivocally beneficial for Golden Sphinx Limited.

37. Yes, the consideration in the corporate guarantee of Golden Sphinx Limited in favor of Agragorn Holdings Limited dated August 23, 2012, guaranteeing the timely and proper performance, observance, and fulfillment of obligations by Golden Spirits Limited, was undoubtedly sufficient for Golden Sphinx Limited.

38. Yes, I signed the corporate guarantee on behalf of AFB Trading One Inc. in favor of Agragorn Holdings Limited dated August 23, 2012, irrevocably and unconditionally guaranteeing Agragorn Holdings Limited the timely and proper performance, observance, and fulfillment of obligations by Golden Spirits Limited.

39. Yes, I confirm my signature on the corporate guarantee on behalf of AFB Trading One Inc. in favor of Agragorn Holdings Limited dated August 23, 2012.

40. Yes, I was authorized to sign the corporate guarantee on behalf of AFB Trading One Inc. in favor of Agragorn Holdings Limited dated August 23, 2012.

41. Yes, AFB Trading One Inc. had a material interest in the financial success of Golden Spirits Limited.

42. Yes, the irrevocable and unconditional guarantee dated August 23, 2012, of the timely and proper performance, observance, and fulfillment of obligations by Golden Spirits Limited to Agragorn Holdings Limited was unequivocally in the interest of AFB Trading One Inc. and was signed in its interest.

43. Yes, the issuance of the irrevocable and unconditional guarantee dated August 23, 2012, was unequivocally beneficial for AFB Trading One Inc.

44. Yes, the consideration in the corporate guarantee of Golden Sphinx Limited in favor of Agragorn Holdings

Limited dated August 23, 2012, guaranteeing timely and proper performance, observance, and fulfillment of obligations by Golden Spirits Limited, was undoubtedly sufficient for AFB Trading One Inc.

45. Yes, I signed the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of Golden Spirits Limited.

46. Yes, I confirm my signature on the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of Golden Spirits Limited.

47. Yes, I was authorized to sign the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of Golden Spirits Limited.

48. Yes, the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was unequivocally in the interest of Golden Spirits Limited and was signed in its interest.

49. Yes, the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was unequivocally beneficial for Golden Spirits Limited.

50. Yes, the consideration in the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was undoubtedly sufficient for Golden Spirits Limited.

51. Yes, I signed the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of Golden Sphinx Limited.

52. Yes, I confirm my signature on the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of Golden Sphinx Limited.

53. Yes, I was authorized to sign the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of Golden Sphinx Limited.

54. Yes, the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was unequivocally in the interest of Golden Sphinx Limited and was signed in its interest.

55. Yes, the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was unequivocally beneficial for Golden Sphinx Limited.

56. Yes, the consideration in the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was undoubtedly sufficient for Golden Sphinx Limited.

57. Yes, I signed the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of AFB Trading One Inc.

58. Yes, I confirm my signature on the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of AFB Trading One Inc.

59. Yes, I was authorized to sign the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of AFB Trading One Inc.

60. Yes, the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was unequivocally in the interest of AFB Trading One Inc. and was signed in its interest.

61. Yes, the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was unequivocally beneficial for AFB Trading One Inc.

62. Yes, the consideration in the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was undoubtedly sufficient for AFB Trading One Inc.

On July 19, 2021, during the consideration of the present case, Tatiana Padalko, identifying herself as the financial administrator of Sabadash A.V., submitted a statement to the Tribunal, with a copy of the ruling by the Moscow Region Arbitration Court in case No. A41-100887/19 dated November 10, 2020, appended to the case file confirming her authority to act on behalf of the Defendants. In correspondence to the Tribunal, she stated: "Good afternoon, I am the financial administrator of Sabadash A.V.. The Defendant companies belong to Sabadash A.V. The documents in this dispute were falsified. Please provide your contact details for follow-up." (quoted from Tatiana Padalko's message arbitrpadalko@gmail.com). The Arbitrator evaluated this statement along with the other evidence in the case.

On August 19, 2021, the Tribunal received a petition from AFB Trading One, Inc. and Golden Sphinx Limited raising the issue of the Tribunal's jurisdiction in light of the liquidation of Golden Spirits Limited on October 31,

2013—one of the parties to the dispute and a signatory to the Agreement on the Selection of the Arbitrator and Applicable Rules dated August 23, 2012.

On August 24, 2021, the Tribunal received a response to the claim by Davilla Investing Limited signed by Tatiana Alekseevna Padalko in her capacity as the financial administrator of Sabadash A.V., as owner of AFB Trading One, Inc. The response does not contest the arbitration agreement under the AD HOC procedure, but states that the company ceased operations upon liquidation on October 31, 2013.

Golden Spirits Limited, whose obligations are guaranteed by Golden Sphinx Limited and AFB Trading One, Inc., was claimed by the representative to have lost legal capacity from October 1, 2013. Therefore, they requested the claim be dismissed.

On August 25, 2021, the Tribunal received an email from Managing Attorney Michael Zorkin: "Knyazev, Attached is the response to the claim by Larisa Sabadash on behalf of AFB Trading One, Inc. and Golden Sphinx Limited." In the response, dated August 24, 2021, submitted by Larisa Sabadash as Director of AFB Trading One, Inc. and Golden Sphinx Limited, she confirmed proper notice of the hearing scheduled for August 25, 2021, at 12:00 PM Moscow time, confirmed the conclusion of the agreement dated December 23, 2012, between the parties, did not dispute the Arbitrator's jurisdiction, stated she has been Director of AFB Trading One, Inc. since October 3, 2016, and Director of Golden Sphinx Limited since September 17, 2019, and asserted that since the primary borrower, Golden Spirits Limited, lost legal capacity on October 1, 2013, the associated guarantee obligations should be deemed terminated, requesting dismissal of the claim.

The Tribunal reviewed Larisa Sabadash' response and the position of her representative Michael Zorkin, finding an acknowledgment of the debt obligations of Golden Sphinx Limited and AFB Trading One, Inc.

According to Article 309 of the Russian Federation Civil Code, obligations must be performed properly in accordance with the terms of the obligation and legal requirements.

The Arbitrator deemed the arguments of the Defendants regarding the expiration of the statute of limitations unsubstantiated, noting that the guarantee obligations under the loan issued by Golden Spirits Limited were undertaken before October 1, 2013, and thus remain valid.

The Tribunal reviewed the statement by financial administrator Tatiana Padalko that the Defendant companies belong to Sabadash A.V.. To verify these claims, the Tribunal examined case No. A40-165165/18 in the Moscow Arbitration Court regarding a claim by individual entrepreneur Gofman E. against the General Partnership "Itkin and Sabadash" seeking recognition of the existence and validity of an agreement. On October 10, 2019, the Moscow Arbitration Court issued a ruling in response to Sabadash A.V.'s appeal against the September 14, 2018, decision contesting the existence of the partnership and its ownership of specific assets, including:

1. Russian Diesel, OJSC   (address: Leningrad Region, Vsevolozhsky District, Kirpichny Zavod station, industrial zone); contributed to the charter capital of Diesel Limited on Jersey Island, UK.

2. Vyborg Cellulose, OJSC (address: Leningrad Region, Vyborg District, Sovetsky village, Zavodskaya St. 2); contributed to the charter capital of Vyborg Limited on Jersey Island, UK.

3. LIVIZ, CJSC (address: 56–58 Sinopskaya Embankment, St. Petersburg,).

4. LIVIZ, CJSC (address: 5 Nagornaya Str., Krasnoye Selo, St. Petersburg,).

5. Agricultural land shares in Lenin's Ray state farm (Moscow Region, Krasnogorsky District) – 987 ha; Petrovsky – 197 ha; Ilyinsky – 430 ha; Dmitrovsky – 360 ha.

6. Real estate purchased in Beverly Hills, California, USA, Beverly Park Street, No. 58.

7. Purchase of Gulfstream G500 aircraft.

Excluding customer-owned assets located outside of the Russian Federation, including real estate in Cap Ferrat, France, General de Gaulle Blvd., No. 17, and a Falcon 200 aircraft, tail number NV VNG.

This was reviewed and confirmed by the Ninth Arbitration Appellate Court of Moscow in its ruling dated September 12, 2019, which, having considered the evidence and arguments in Sabadash' appeal, confirmed the

existence of the General Partnership "Itkin and Sabadash."

Thus, after examining the materials in case No. A40-165165/18, and taking into account the preclusive effect of final judicial acts subject to mandatory enforcement, and the responses of parties, third parties, and witnesses to court inquiries, the Tribunal established that contrary to the statement by Sabadash A.V. via his financial administrator Tatiana Padalko, the Defendant companies and the assets they hold in fact belong to the General Partnership "Itkin and Sabadash," although they are nominally registered under the name of Sabadash A.V. and the Amber Trust, which is managed by Sabadash A.V.

In the course of reviewing the evidence in this case, the Tribunal established the following:

Defendant 1, Golden Spirits Limited, while nominally owned by Sabadash A.V., is in fact owned by the General Partnership "Itkin and Sabadash";

Defendant 2, AFB Trading One, Inc., while nominally owned by the Amber Trust, managed by Sabadash A.V., is in fact owned by the General Partnership "Itkin and Sabadash";

Defendant 3, Golden Sphinx Limited, while nominally owned by the Amber Trust, managed by Sabadash A.V., is in fact owned by the General Partnership "Itkin and Sabadash";

Russian Diesel, OJSC (address: Leningrad Region, Vsevolozhsky District, Kirpichny Zavod Station, industrial zone) and Diesel Limited on Jersey Island, United Kingdom, while nominally owned by Defendant 2, are in fact owned by the General Partnership "Itkin and Sabadash";

Vyborg Cellulose, OJSC (address: 2 Zavodskaya St, Sovetsky village, Vyborgsky District, Leningrad Region) and Vyborg Limited on Jersey Island, United Kingdom, while nominally owned by Defendant 2, are in fact owned by the General Partnership "Itkin and Sabadash";

Real estate located at 58 Beverly Park Street, Beverly Hills, California, USA, is in fact owned by the General Partnership "Itkin and Sabadash";

The Gulfstream G500 aircraft is in fact owned by the General Partnership "Itkin and Sabadash";

Real estate located at 17 General de Gaulle Boulevard, Cap Ferrat, France, is in fact owned by the General Partnership "Itkin and Sabadash".

According to the evidence submitted to the Arbitrator, on April 21, 2010, the Third Party transferred USD 1,022,000 to Defendant 1 and paid a transfer fee of USD 268.36. Thus, the Third Party fully fulfilled its obligations under the loan agreement. Defendant 1 failed to fulfill its obligations to repay the loan principal and interest.

On August 23, 2012, the Third Party and Defendant 1 entered into an agreement on modification and deferral of debt. Under this agreement, the parties extended the repayment deadline to January 1, 2020. The interest rate stipulated in Clause 4.2 of the loan agreement was increased to 6.5% per annum, with monthly compound interest starting from the date of amendment until full repayment.

The parties also agreed on the following guarantors: AFB Trading One, Inc., registered in the State of California, USA, with offices at 8501 Wilshire Boulevard, Suite 330, Beverly Hills, California, USA ("Guarantor 1"), and Golden Sphinx Limited, with offices at 43 La Motte Street, St. Helier, Jersey, JE4 8SD, Channel Islands ("Guarantor 2").

On August 23, 2012, the Third Party and AFB Trading One, Inc. (Defendant 2) entered into a corporate guarantee under which Defendant 2 is liable to the Plaintiff for the performance of Defendant 1's obligations, and in case of non-performance, guarantees repayment of the debt within 10 days of receiving a demand.

On August 23, 2012, the Third Party and Golden Sphinx Limited (Defendant 3) entered into a corporate guarantee under which Defendant 3 is liable to the Plaintiff for the performance of Defendant 1's obligations, and in case of non-performance, guarantees repayment of the debt within 10 days of receiving a demand.

On August 23, 2012, the Third Party, Defendant 1, Defendant 2, and Defendant 3 entered into the AGREEMENT ON THE SELECTION OF THE ARBITRATOR AND APPLICABLE RULES.

On September 7, 2020, the Third Party and Davilla Investing Limited (Plaintiff) entered into an agreement assigning all rights under the loan agreement dated April 20, 2010, as amended on August 23, 2012, from the

Third Party to the Plaintiff, including the security in the form of corporate guarantees issued by Defendant 2 and Defendant 3.

On December 21, 2020, the Plaintiff sent a demand to Defendant 2 for payment of Defendant 1's debt. On December 21, 2020, the Plaintiff sent a demand to Defendant 3 for payment of Defendant 1's debt.

To date, none of the Defendants has repaid the debt under the existing obligations.

The above circumstances are confirmed by the following evidence:

1. Loan Agreement dated April 20, 2010, between the Third Party and Defendant 1;

2. Bank statement dated April 21, 2010, confirming the transfer of USD 1,022,000 from the Third Party to Defendant 1;

3. Agreement on Modification and Deferral of Debt dated August 23, 2012, between the Third Party and Defendant 1;

4. Corporate Guarantee dated August 23, 2012, issued by Defendant 2 to the Third Party;

5. Corporate Guarantee dated August 23, 2012, issued by Defendant 3 to the Third Party;

6. Assignment Agreement of Loan Rights dated September 7, 2020, between the Third Party and the Plaintiff;

7. Demands for payment of the debt.

According to Article 810 of the Civil Code of the Russian Federation:
"…The borrower is obligated to return to the lender the amount of the loan received within the time frame and in the manner stipulated by the loan agreement."

According to Article 809 of the Civil Code of the Russian Federation:
"1. Unless otherwise provided by law or the loan agreement, the lender has the right to receive interest from the borrower for use of the loan in the amount and manner defined in the agreement. If the agreement does not specify the interest rate, it is determined by the key rate of the Bank of Russia effective during the relevant periods.

2. The interest rate for use of the loan may be set in the agreement as a fixed annual percentage, as a variable annual percentage dependent on conditions defined in the agreement, including changes in a variable value, or in another way that enables determination of the correct interest amount at the time of payment.

3. Unless otherwise agreed, interest for use of the loan is paid monthly up to and including the date the loan is repaid…"

According to Article 363 of the Civil Code of the Russian Federation:
"1. In the event of non-performance or improper performance of an obligation secured by a guarantee, the guarantor and the debtor are jointly liable to the creditor, unless the law or the guarantee agreement provides for subsidiary liability.

2. The guarantor is liable to the creditor to the same extent as the debtor, including the payment of interest, reimbursement of legal costs related to debt collection, and other creditor losses resulting from non-performance or improper performance by the debtor, unless otherwise stipulated in the guarantee agreement.

3. Persons who jointly provide a guarantee (co-guarantors) are jointly liable to the creditor, unless the guarantee agreement provides otherwise. Unless agreed otherwise between the co-guarantors and the creditor, co-guarantors who have limited their liability are deemed to have secured the principal obligation each for their respective share. A co-guarantor who has fulfilled the obligation has the right to seek reimbursement from other co-guarantors proportional to their share in the security of the principal obligation…"

According to Article 384 of the Civil Code of the Russian Federation:
"Unless otherwise provided by law or agreement, the rights of the original creditor are transferred to the new creditor to the same extent and under the same conditions that existed at the time of the transfer. In

particular, the new creditor acquires the rights securing the fulfillment of the obligation, as well as other rights associated with the claim, including the right to interest…"

Thus, the Defendants are jointly and severally liable for a total amount of USD 1,804,017.81, which includes:
USD 1,022,000 – principal loan amount;
USD 1,874.53 – interest for the period from April 21, 2010, to April 21, 2012;
USD 780,143.28 – interest for the period from April 21, 2012, to December 12, 2020.

Pursuant to Article 16 of the Russian Federation Federal Arbitration Law and in accordance with the UNCITRAL Arbitration Rules (as adopted by the United Nations Commission on International Trade Law in 1976 and recommended for use by the UN General Assembly on December 15, 1976, as amended),

On August 31, 2021, the tribunal, composed of the parties to the resolution of a specific dispute and presided over by the sole arbitrator mutually stipulated to by the parties — Dmitry Valerievich Knyazev — having reviewed the statement of claim submitted by Davilla Investing Limited (Plaintiff) against Golden Spirits Limited (Defendant 1), AFB Trading One, Inc. (Defendant 2), Golden Sphinx Limited (Defendant 3), and Agragorn Holdings Limited, seeking recovery of debt under a loan agreement, an agreement for modification and deferral of debt, and corporate guarantees,

## IT IS HEREBY ORDERED:

1. The claims brought by Davilla Investing Limited against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited for recovery of debt under the loan agreement, the agreement on modification and deferral of debt, and corporate guarantees are hereby GRANTED.

2. IT IS HEREBY ORDERED that Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited shall be jointly and severally liable to pay Davilla Investing Limited the principal debt in the amount of USD 1,022,000 (one million twenty-two thousand U.S. dollars), plus accrued interest in the amount of USD 782,017.80 (seven hundred eighty-two thousand seventeen U.S. dollars and eighty cents).

3. IT IS HEREBY ORDERED that Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited shall be jointly and severally liable to reimburse Davilla Investing Limited legal expenses in the amount of 278,000 (two hundred seventy-eight thousand) Russian rubles.

4. Pursuant to the arbitration agreement, the award of the arbitral tribunal is final, effective immediately upon issuance, and subject to immediate enforcement. In accordance with Article 238.4 of the Commercial Procedure Code of the Russian Federation, the findings of fact established by the arbitral tribunal shall not be subject to reassessment or substantive review.

Sole arbitrator (judge),
Knyazev Dmitry Valeryevich Arbitration Court,
AD HOC arbitration procedure for the resolution
of a specific dispute appointed
and agreed upon by the parties                           - signature-

Stamp:
Arbitration Court, AD HOC arbitration procedure
Sole arbitrator (judge)
Knyazev Dmitry Valeryevich

*Seal:*
*Russian Federation Ministry of Justice*
*Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator*
*City of Moscow*

*Seal:*
*Russian Federation Ministry of Justice Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator,  city of Moscow*

*Seal: Notary Public S. I. Glukhov, Notarial District: the city of Moscow*

*Russian Federation Ministry of Justice Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator, ciy of Moscow*

**The Russian Federation**
**City of Moscow**
**April thirty in the year two thousand and twenty-six**

I, Glukhov Sergei Ivanovich, a Notary Public for the city of Moscow, certify that this is a true and correct copy of the original document.
Recorded in the Register: No 77/749-n/77-2026-1-1083
Paid for notarial services: 3300 Roubles 00 kopecks.

*- signature-* S. I. Glukhov

*Seal: Notary Public S. I. Glukhov, Notarial District: city of Moscow*

*Stamp:*
*The document contains 11 pages,*
*bound, numbered and sealed*
*Notary Public - signature-*

*Перевод данного текста с русского языка на английский язык сделан мной, переводчиком Сулеймановой Элиной Вахидовной.*

_____

*The translation of this text was performed by me, the translator Suleymanova Elina Vakhidovna.*
_____ /signature/_____



### Российская Федерация

Город Москва

*Второго мая две тысячи двадцать шестого года*
Я, Бурейникова Леонора Леонидовна, нотариус города Москвы,
свидетельствую подлинность подписи переводчика
Сулеймановой Элины Вахидовны.
Подпись сделана в моем присутствии.
Личность подписавшего документ установлена.

Зарегистрировано в реестре: №40/87-н/77-2026-*ΙΖ-2841*
Уплачено за совершение нотариального действия: 400 руб. 00
коп

_____ Л.Л. Бурейникова

Всего прошнуровано, пронумеровано и скреплено
печатью(2?) лист(ов)

Нотариус

### The Russian Federation

The city of Moscow
02.05.2026

I, Bureynikova Leonora Leonidovna, Notary of the city of
Moscow, certify the authenticity of signature, made by the
translator Suleymanova Elina Vakhidovna.
The signature was made in my presence.
Her identity is established.

It is registered in the register under № 40/87-н/77-2026-
Paid for the performance of a notarial act. 400 rubles 00 kop.

_____ /signature_____ L.L. Bureynikova

| Seal: Notary Bureynikova L.L. |
| Notarial district of c. Moscow |

Stitched up, numbered and sealed ( ) pages
Notary /signature/

| Seal: Notary Bureynikova L.L. |
| Notarial district of c. Moscow |

# APOSTILLE
### (Convention de La Haye du 5 octobre 1961)

| | |
|---|---|
| **1. Страна:**<br>Country / Pays: | Российская Федерация |

**Настоящий официальный документ**
This public document / Le présent acte public

| | |
|---|---|
| **2. был подписан**<br>has been signed by<br>a été signé par | Глухов С.И., Бурейникова Л.Л. |
| **3. выступающим в качестве**<br>acting in the capacity of<br>agissant en qualité de | нотариус, нотариус |
| **4. скреплен печатью / штампом**<br>bears the seal / stamp of<br>est revêtu du sceau / timbre de | нотариус г. Москвы Глухов Сергей Иванович, нотариус г. Москвы Бурейникова Леонора Леонидовна |

### Удостоверено
Certified / Attesté

| | | | |
|---|---|---|---|
| **5. В**<br>at / à | г. Москва | **6. Дата**<br>the / le | 07.05.2026 |

| | |
|---|---|
| **7. учреждение**<br>by / par | Крымшокалова А.З.<br>Заместитель начальника отдела международной правовой помощи и проставления апостиля Главного управления Министерства юстиции Российской Федерации по Москве |
| **8. №**<br>N° / sous n° | 77/17836-26 |
| **9. Печать /<br>штамп:**<br>Seal / stamp:<br>Sceau / timbre: | **10. Подпись**<br>Signature:<br>Signature: |



Данный апостиль удостоверяет лишь подлинность подписи и должность лица, подписавшего официальный документ, и при необходимости подлинность печати или штампа, которым скреплен этот документ.

Апостиль не заверяет достоверность самого документа, для которого он был оформлен.

Информацию по проверке апостиля можно найти, отсканировав QR-код, либо перейдя по ссылке: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=62bfbe1d-3c5b-4e43-a387-68fa13efd651**

This apostille certifies only the authenticity of the signature and the position of the official who signed the official document, and, if necessary, the authenticity of the seal or stamp affixed to the said document.

The apostille does not certify the authenticity of the document for which it was issued.

Information on apostille verification can be found by scanning a QR code or by referring to the following link: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=62bfbe1d-3c5b-4e43-a387-68fa13efd651**

Cette apostille ne certifie que l'authenticité de la signature et le poste du fonctionnaire qui a signé le document officiel et, le cas échéant, l'authenticité du sceau ou du cachet apposé sur ledit document.

L'apostille n'assure pas la véracité du document lui-même pour lequel il a été délivré.

Les informations de vérification de l'apostille peuvent être trouvées en scannant le code QR ou en consultant le lien suivant: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=62bfbe1d-3c5b-4e43-a387-68fa13efd651**



Прошито, пронумеровано и скреплено печатью
26 ( _двадцать шесть_ ) лист _06_

Заместитель начальника отдела
Главного управления Министерства юстиции
Российской Федерации по Москве

_____ А.З. Крымшокалова

# EXHIBIT 2

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**



Арбитражный суд в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

Единый арбитр (судья), выбранный и согласованный сторонами,

Князев Дмитрий Валерьевич

Адрес: 109012, РФ, город Москва, улица Ильинка, д.4, оф. 102-103/

## РЕШЕНИЕ

15 августа 2025года в г. Москва Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора (далее также – Суд), в лице единого арбитра (Судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича (далее также – Судья или Арбитр), рассмотрев исковое заявление гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) на основании Договора уступки требования (цессии) от 15.05.2023 года (далее также – истец) к ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 1), Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее также – Ответчик 2) о взыскании задолженности по обязательствам, предусмотренных Решением Суда от 30 августа 2021 года, вытекающим из договора займа, соглашений об изменении и отсрочке долга, корпоративных гарантий в размере 1 807 503 (Один миллион восемьсот семь тысяч пятьсот три) Доллара США 80 центов (эквивалент: 144 144 510,00 рублей), процентов за пользование денежными средствами за период с 31 августа 2021г. по 15 августа 2025г. в размере 76 787 557,58 рублей (эквивалент: 962853 Долларов США)

Третейское разбирательство проведено в соответствии с положениями Федерального закона № 382-ФЗ от 29.12.2015 г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382), в присутствии сторон:

от истца: Грант Александр Александрович, как преемник Давилла Инвестинг Лимитед (Davilla Investing Limited), в подтверждение полномочий к материалам дела приобщена удостоверенная копия Договора уступки требования (цессии) от 15.05.2023 года.

от ответчика 1: ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) нет представителя

от ответчика 2: Голден Сфинкс Лимитед (Golden Sphinx Limited) нет представителя

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие нормам статей 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда.

Компетенция Третейского судьи:

В соответствии со ст. 2 Федерального закона № 382-ФЗ от 29.12.2015г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382):

2) арбитраж (третейское разбирательство) - процесс разрешения спора третейским судом и принятия решения третейским судом (арбитражного решения);

16) третейский суд - единоличный арбитр или коллегия арбитров

1) арбитр (третейский судья) - физическое лицо, избранное сторонами или избранное (назначенное) в согласованном сторонами или установленном федеральным законом порядке для разрешения спора третейским судом.

3) администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора;

Арбитражная оговорка, являющаяся частью договора, признается соглашением, не зависящим от других условий договора. Принятие арбитражного решения о том, что договор недействителен, само по себе не влечет недействительность арбитражного соглашения.

Заявление об отсутствии у третейского суда компетенции может быть сделано соответствующей стороной арбитража не позднее представления ею первого заявления по существу спора».

**До начала третейского разбирательства по существу настоящего спора, заявлений об отсутствии компетенции у Третейского судьи рассматривать данный спор, не ноступило.**

Руководствуясь статьями 7, 19, 52 Закона об арбитраже, Третейский судья принял решение о наличии у него компетенции рассматривать переданный на его разрешение спор.

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие нормам статей 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда:

I. В соответствии с ч. 3 ст. 239 АПК РФ:

П.1 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: одна из сторон

третейского соглашения, на основании которого спор был разрешен третейским судом, не обладала полной дееспособностью».

От сторон заявления по данному пункту не поступали.

П.2 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: «Третейское соглашение, на основании которого спор был разрешен третейским судом, недействительно по праву, которому стороны его подчинили, а при отсутствии такого указания - по праву Российской Федерации».

В силу ст. 7 ФЗ-382, «арбитражное соглашение является соглашением сторон о передаче в арбитраж всех или определенных споров, которые возникли или могут возникнуть между ними в связи с каким-либо конкретным правоотношением, независимо от того, носило такое правоотношение договорный характер или нет. Арбитражное соглашение может быть заключено в виде арбитражной оговорки в договоре или в виде отдельного соглашения.

При толковании арбитражного соглашения любые сомнения должны толковаться в пользу его действительности и исполнимости».

**Стороны извещены надлежащим образом о формировании состава суда, дате, месте и времени судебного разбирательства.**

В силу статьи 3 Закона об арбитраже, стороны считаются извещенными надлежащим образом, по аналогии со ст. 123 АПК РФ.

Аналогичный вывод подтвержден позицией Судебной коллегии Верховного Суда Российской Федерации от 30 декабря 2015 года N 302-ЭС15-11092:

П.5) «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства представит доказательство того, что: Состав третейского суда или процедура арбитража не соответствовали соглашению сторон или федеральному закону».

А) Состав третейского суда: В соответствии с ч. 2 ст. 11 ФЗ-382, Стороны арбитража могут согласовать по своему усмотрению процедуру избрания (назначения) арбитра или арбитров при условии соблюдения положений частей 4 - 11 настоящей статьи.

На основании соглашения о передаче прав по Договору займа от 07.09.2020, заключенного между истцом и третьим лицом; на основании Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г., заключенного между Третьим лицом, Ответчиком 1, Ответчиком 2, Ответчиком 3, утвержденного сторонами действующим в настоящее время Арбитражным регламентом ЮНСИТРАЛ стороны согласились о том, что любые споры, разногласия, расхождения во мнениях или претензии, которые могут возникнуть из или в связи с перечисленными выше соглашениями и договорами, включая, но, не ограничиваясь, теми, которые связаны с его вступлением в силу, исполнением, изменением, нарушением, прекращением или действительностью, подлежат разрешению и окончательному урегулированию посредством арбитражного разбирательства AD HOC. Любой спор будет рассмотрен единолично

согласованным сторонами Арбитром. Таким образом, данный конкретный спор передается на рассмотрение данного сформированного суда, единым арбитром назначается магистр юриспруденции Дмитрий Валерьевич Князев, Гражданин Российской Федерации.

**Личность Арбитра установлена** на основании Паспорта гражданина Российской Федерации на имя Князева Дмитрия Валерьевича, подтверждается имеющейся копией в материалах третейского дела. Наличие у избранного Третейского судьи, Князева Дмитрия Валерьевича, высшего юридического образования, подтверждается Дипломом РФ г. Москва Специализированным институтом юриспруденции № АВС 0715029, имеющейся копией в материалах третейского дела.

Отсутствие судимости подтверждается Справкой ГУ МВД России по г. Москве от 11.07.2021 г. № 13/5-099/264646-Е, имеющейся в материалах третейского дела.

Согласно разъяснениям Минюста России от 02.09.2021 г. № 12-103924/2021, Положения Федерального закона № 382-ФЗ не предусматривают возможности предоставления третейскому суду, образованному сторонами для разрешения конкретного спора, права на осуществлении функций постоянно действующего арбитражного учреждения и выполнение им функций по администрированию арбитража. Таким образом, каких-либо дополнительных лицензий или разрешений для третейского судьи, действующим законодательством не предусмотрено.

**Таким образом, формирование состава Третейского суда нроизведено с соблюдением положений Закона об арбитраже.**

Б) Процедура арбитража: В соответствии с п.п. 1, 2 ст. 19 Закона об арбитраже: «При условии соблюдения положений настоящего Федерального закона стороны могут по своем усмотрению договориться о процедуре арбитража. При отсутствии договоренности третейский суд может с соблюдением положений настоящего Федерального закон осуществлять арбитраж таким образом, какой он посчитает надлежащим, в том числе отношении определения допустимости, относимости и значения любого доказательства».

В соответствии с ч. 2 ст. 2 Закона об арбитраже: «Администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора».

Во исполнение данной нормы, Единый Арбитр рассмотрел спор самолично, что подтверждается материалами третейского дела:

- лично избран сторонами в арбитражном соглашении,

- лично получил исковое заявление и принял к производству,

- лично выбрал и получил в пользование помещение для проведения судебного разбирательства,

- на личный банковский счет получил арбитражный сбор,

- лично оплатил расходы, связанные с рассмотрением спора (почтовые расходы, канцелярские принадлежности, оргтехника, помещение и т.п.),

- лично направил сторонам почтой судебные извещения и иные документы,

- лично назначил и провел судебное заседание,

- лично вынес постановления и арбитражное решение,

- Возражений о нарушении процедуры арбитража от сторон не поступало.

- Заявлений о самоотводах и об отводах, не поступило.

В соответствии с ч. 1 ст. 11 ГК РФ, защиту нарушенных или оспоренных гражданских прав осуществляет в соответствии с подведомственностью дел, установленной процессуальным законодательством, суд, арбитражный суд или третейский суд.

В соответствии с ч. 1 ст. 33 АПК РФ, споры, возникающие из гражданско-правовых отношений, а также индивидуальные трудовые споры спортсменов, тренеров в профессиональном спорте и спорте высших достижений могут быть переданы сторонами на рассмотрение третейского суда при наличии между сторонами спора действующего арбитражного соглашения, если иное не предусмотрено федеральным законом.

В соответствии с ч. 3 ст. 1 Закона об арбитраже, в арбитраж (третейское разбирательство) по соглашению сторон могут передаваться споры между сторонами гражданско-правовых отношений, если иное не предусмотрено федеральным законом.

Действующее законодательство не содержит запрета на передачу споров по договорам займа, цессии, заключенными между юридическими лицами, на рассмотрение в третейский суд.

Договоры займа, цессии, не являются контрактом, заключенным в сфере закупок для государственных и муниципальных нужд, а также не является договором, заключенным в порядке, предусмотренном Федеральным законом N 223-ФЗ.

**Каких-либо заявлений от Сторон о том, что рассматриваемый снор пе может быть предметом третейского разбирательства, или о наличии противоречий публичному порядку Российской Федерации, не ноступало, а Третейским судьей не установлено.**

Единолично Арбитр (третейский Судья), при ведении протокола судебного заседания, рассмотрел исковое заявление, представленные сторонами доказательства

## УСТАНОВИЛ:

Истец обратился в суд с иском к Ответчику 1, Ответчику 2, направив заказной почтой всем сторонам по делу уведомление об арбитраже с исковым заявлением с приложениями, указав:

что Истец информирует стороны о передаче требования по взысканию задолженности по обязательствам установленным Решением Суда от 30 августа 2021г. на арбитражное разбирательство, которым Суд постановил:

Удовлетворить исковые требования по иску Давилла Инвестинг Лимитед (Davilla Investing Limited) к Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.

Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB Trading One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов.

Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB Trading One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы в размере 278000 (Двести семьдесят восемь тысяч) рублей.

В соответствии с арбитражным соглашением, решение третейского суда окончательно. Вступает в законную силу немедленно с даты принятия, подлежит немедленному исполнению. В соответствии с ч. 4 ст. 238 АПК РФ, обстоятельства, установленные третейским судом, не подлежат переоценке либо пересмотру, по существу.

Решение Суда от 30 августа 2021 года до настоящего времени не исполнялось со стороны ответчиков. На момент рассмотрения настоящего спора сумма солидарного долга ответчиков, включая НДС: 144 144 510,00 рублей

Период начисления процентов: с 31.08.2021 по 15.08.2025 (1446 дней)

| период | дн. | дней в году | ставка, % | проценты, ₽ |
|---|---|---|---|---|
| 31.08.2021 – 12.09.2021 | 13 | 365 | 6,5 | 333 704,41 |
| 13.09.2021 – 24.10.2021 | 42 | 365 | 6,75 | 1 119 588,18 |
| 25.10.2021 – 19.12.2021 | 56 | 365 | 7,5 | 1 658 649,16 |
| 20.12.2021 – 13.02.2022 | 56 | 365 | 8,5 | 1 879 802,38 |
| 14.02.2022 – 27.02.2022 | 14 | 365 | 9,5 | 525 238,90 |
| 28.02.2022 – 10.04.2022 | 42 | 365 | 20 | 3 317 298,31 |
| 11.04.2022 – 03.05.2022 | 23 | 365 | 17 | 1 544 123,38 |
| 04.05.2022 – 26.05.2022 | 23 | 365 | 14 | 1 271 631,02 |
| 27.05.2022 – 13.06.2022 | 18 | 365 | 11 | 781 934,60 |

| | | | | |
|---|---|---|---|---|
| 14.06.2022 – 24.07.2022 | 41 | 365 | 9,5 | 1 538 199,63 |
| 25.07.2022 – 18.09.2022 | 56 | 365 | 8 | 1 769 225,77 |
| 19.09.2022 – 23.07.2023 | 308 | 365 | 7,5 | 9 122 570,36 |
| 24.07.2023 – 14.08.2023 | 22 | 365 | 8,5 | 738 493,79 |
| 15.08.2023 – 17.09.2023 | 34 | 365 | 12 | 1 611 259,18 |
| 18.09.2023 – 29.10.2023 | 42 | 365 | 13 | 2 156 243,90 |
| 30.10.2023 – 17.12.2023 | 49 | 365 | 15 | 2 902 636,02 |
| 18.12.2023 – 31.12.2023 | 14 | 365 | 16 | 884 612,88 |
| 01.01.2024 – 28.07.2024 | 210 | 366 | 16 | 13 232 938,62 |
| 29.07.2024 – 15.09.2024 | 49 | 366 | 18 | 3 473 646,39 |
| 16.09.2024 – 27.10.2024 | 42 | 366 | 19 | 3 142 822,92 |
| 28.10.2024 – 31.12.2024 | 65 | 366 | 21 | 5 375 881,32 |
| 01.01.2025 – 08.06.2025 | 159 | 365 | 21 | 13 186 260,79 |
| 09.06.2025 – 27.07.2025 | 49 | 365 | 20 | 3 870 181,36 |
| 28.07.2025 – 15.08.2025 | 19 | 365 | 18 | 1 350 614,31 |

Сумма процентов: 76 787 557,58 ₽

Порядок расчёта: сумма долга × ставка Банка России (действующая в период просрочки) / количество дней в году × количество дней просрочки

**Суд в ходе рассмотрения доказательств но данному делу установил следующее:**

20 мая 2023г. Истец направил Ответчику 1 и Ответчику 2 уведомление о правопреемстве на основании Договора уступки требования (цессии) от 15.05.2023 года, а также требования об оплате солидарной задолженности.

21 декабря 2024г. Истец направил Ответчику 1 и Ответчику 2 повторное требование об оплате задолженности.

До настоящего времени ни один из ответчиков не произвел погашение задолженности по существующим обязательствам.

Договор уступки требования (цессии) от 15.05.2023 года между Давилла Инвестинг Лимитед (Davilla Investing Limited) и Грантом А.А. о передаче прав Судом принимается в качестве надлежащего доказательства прав на предъявление иска в качестве правопреемника кредитора по основному обязательству.

**Изложенные выше обстоятельства подтверждаются следующимн доказательствами:**

1.       Договором уступки требования (цессии) от 15.05.2023 года между Давилла Инвестинг Лимитед (Davilla Investing Limited) и Грантом А.А. о передаче прав;

2.       Решением от 30 августа 2021г. Арбитражного суда в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, в лице единого арбитра Князева Д.В.

3.    Требованиями об оплате задолженности от 20 мая 2023г., требованиями об оплате задолженности от 21 декабря 2024 г.

4.    Расчетом процентов на сумму неисполненных обязательств, проверенных Судом.

В соответствии со ст.810 ГК РФ «… Заемщик обязан возвратить займодавцу полученную сумму займа в срок и в порядке, которые предусмотрены договором займа».

В соответствии со ст.809 ГК РФ «1. Если иное не предусмотрено законом или договором займа, займодавец имеет право на получение с заемщика процентов за пользование займом в размерах и в порядке, определенных договором. При отсутствии в договоре условия о размере процентов за пользование займом их размер определяется ключевой ставкой Банка России, действовавшей в соответствующие периоды.

2. Размер процентов за пользование займом может быть установлен в договоре с применением ставки в процентах годовых в виде фиксированной величины, с применением ставки в процентах годовых, величина которой может изменяться в зависимости от предусмотренных договором условий, в том числе в зависимости от изменения переменной величины, либо иным путем, позволяющим определить надлежащий размер процентов на момент их уплаты.

3. При отсутствии иного соглашения проценты за пользование займом выплачиваются ежемесячно до дня возврата займа включительно…».

В соответствии со ст.363 ГК РФ «1. При неисполнении или ненадлежащем исполнении должником обеспеченного поручительством обязательства поручитель и должник отвечают перед кредитором солидарно, если законом или договором поручительства не предусмотрена субсидиарная ответственность поручителя.

2. Поручитель отвечает перед кредитором в том же объеме, как и должник, включая уплату процентов, возмещение судебных издержек по взысканию долга и других убытков кредитора, вызванных неисполнением или ненадлежащим исполнением обязательства должником, если иное не предусмотрено договором поручительства.

3. Лица, совместно давшие поручительство (сопоручители), отвечают перед кредитором солидарно, если иное не предусмотрено договором поручительства. Если из соглашения между сопоручителями и кредитором не следует иное, сопоручители, ограничившие свою ответственность перед кредитором, считаются обеспечившими основное обязательство каждый в своей части. Сопоручитель, исполнивший обязательство, имеет право потребовать от других лиц, предоставивших обеспечение основного обязательства совместно с ним, возмещения уплаченного пропорционально их участию в обеспечении основного обязательства…».

В соответствии со ст. 384 ГК РФ «Если иное не предусмотрено законом или договором, право первоначального кредитора переходит к новому кредитору в том объеме и на тех условиях, которые существовали к моменту перехода права. В частности, к новому кредитору переходят права, обеспечивающие исполнение обязательства, а также другие связанные с требованием права, в том числе право на проценты…».

Таким образом, у Ответчиков есть солидарная задолженность на общую сумму 1807503 долларов США 80 центов, где сумма основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов, судебные расходы в размере 278000 (Двести семьдесят восемь тысяч) рублей.

В соответствии с Федеральным Законом Российской Федерации «О Третейских судах в Российской Федерации» ст.16.

В соответствии с Арбитражным регламентом ЮНСИТРАЛ (регламент, принятый Комиссией ООН по праву международной торговли в 1976 г. и рекомендованный к использованию Генеральной Ассамблеей ООН 15 декабря 1976 г. с изменениями).

15 августа 2025г. третейский суд, образованный сторонами для разрешения конкретного спора в составе единоличного третейского судьи, в лице единого арбитра (судьи), выбранного и согласованного сторонами  - Князева Дмитрия Валерьевича, рассмотрев исковое заявление гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) на основании Договора уступки требования (цессии) от 15.05.2023 года (далее также – истец) к ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 1), Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее также – Ответчик 2) о взыскании задолженности по обязательствам, предусмотренных Решением Суда от 30 августа 2021 года вытекающим из договора займа, соглашений об изменении и отсрочке долга, корпоративных гарантий.

## РЕШИЛ:

1. Удовлетворить исковые требования по иску гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) на основании Договора уступки требования (цессии) от 15.05.2023 года (далее также – истец) к ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 1), Голден Сфинкс Лимнтед (Golden Sphinx Limited) (далее также – Ответчик 2) о взыскании задолженности по обязательствам, предусмотренных Решением Суда от 30 августа 2021 года, вытекающим из договора займа, соглашений об изменении и отсрочке долга, корпоративных гарантий.

2. Солидарно взыскать с компаний ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One. Inc.) и Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере на общую сумму 1 807 503 (Один миллион восемьсот семь тысяч пятьсот три) Доллара США 80 центов (эквивалент: 144 144 510,00 рублей), проценты за пользование денежными средствами в период с 30 августа 2021г. по 15 августа 2025г. в размере 962853 Долларов США (эквивалент: 76 787 557,58 рублей)

3. Солидарно взыскать с компаний Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы в размере 300000 (Триста тысяч) рублей.

4. В соответствии с арбитражным соглашением, решение третейского суда окончательно. Вступает в законную силу немедленно с даты принятия, подлежит немедленному исполнению. В соответствии с ч. 4 ст. 238 АПК РФ, обстоятельства, установленные третейским судом, не подлежат переоценке либо пересмотру, по существу.

Арбитражный суд

в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

единый арбитр (судья),

выбранный и согласованный сторонами

Князев Дмитрий Валерьевич



# INTENTIONALLY LEFT BLANK





Арбитражный суд в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

Единый арбитр (судья), выбранный и согласованный сторонами,

Князев Дмитрий Валерьевич

Адрес: 109012, РФ, город Москва, улица Ильинка, д.4, оф. 102-103/

## РЕШЕНИЕ

15 августа 2025года в г. Москва Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора (далее также – Суд), в лице единого арбитра (Судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича (далее также – Судья или Арбитр), рассмотрев исковое заявление гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) на основании Договора уступки требования (цессии) от 15.05.2023 года (далее также – истец) к ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 1), Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее также – Ответчик 2) о взыскании задолженности по обязательствам, предусмотренных Решением Суда от 30 августа 2021 года, вытекающим из договора займа, соглашений об изменении и отсрочке долга, корпоративных гарантий в размере 1 807 503 (Один миллион восемьсот семь тысяч пятьсот три) Доллара США 80 центов (эквивалент: 144 144 510,00 рублей), процентов за пользование денежными средствами за период с 31 августа 2021г. по 15 августа 2025г. в размере 76 787 557,58 рублей (эквивалент: 962853 Долларов США)

Третейское разбирательство проведено в соответствии с положениями Федерального закона № 382-ФЗ от 29.12.2015 г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382), в присутствии сторон:

от истца: Грант Александр Александрович, как преемник Давилла Инвестинг Лимитед (Davilla Investing Limited), в подтверждение полномочий к материалам дела приобщена удостоверенная копия Договора уступки требования (цессии) от 15.05.2023 года.

от ответчика 1: ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) нет представителя

от ответчика 2: Голден Сфинкс Лимитед (Golden Sphinx Limited) нет представителя

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие нормам статей 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда.

Компетенция Третейского судьи:

В соответствии со ст. 2 Федерального закона № 382-ФЗ от 29.12.2015г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382):

2) арбитраж (третейское разбирательство) - процесс разрешения спора третейским судом и принятия решения третейским судом (арбитражного решения);

16) третейский суд - единоличный арбитр или коллегия арбитров

1) арбитр (третейский судья) - физическое лицо, избранное сторонами или избранное (назначенное) в согласованном сторонами или установленном федеральным законом порядке для разрешения спора третейским судом.

3) администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора;

Арбитражная оговорка, являющаяся частью договора, признается соглашением, не зависящим от других условий договора. Принятие арбитражного решения о том, что договор недействителен, само по себе не влечет недействительность арбитражного соглашения.

Заявление об отсутствии у третейского суда компетенции может быть сделано соответствующей стороной арбитража не позднее представления ею первого заявления по существу спора».

**До начала третейского разбирательства по существу настоящего спора, заявлений об отсутствии компетенции у Третейского судьи рассматривать данный спор, не поступило.**

Руководствуясь статьями 7, 19, 52 Закона об арбитраже, Третейский судья принял решение о наличии у него компетенции рассматривать переданный на его разрешение спор.

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие нормам статей 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда:

I. В соответствии с ч. 3 ст. 239 АПК РФ:

П.1 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: одна из сторон

третейского соглашения, на основании которого спор был разрешен третейским судом, не обладала полной дееспособностью».

От сторон заявления по данному пункту не поступали.

П.2 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: «Третейское соглашение, на основании которого спор был разрешен третейским судом, недействительно по праву, которому стороны его подчинили, а при отсутствии такого указания - по праву Российской Федерации».

В силу ст. 7 ФЗ-382, «арбитражное соглашение является соглашением сторон о передаче в арбитраж всех или определенных споров, которые возникли или могут возникнуть между ними в связи с каким-либо конкретным правоотношением, независимо от того, носило такое правоотношение договорный характер или нет. Арбитражное соглашение может быть заключено в виде арбитражной оговорки в договоре или в виде отдельного соглашения.

При толковании арбитражного соглашения любые сомнения должны толковаться в пользу его действительности и исполнимости».

**Стороны извещены надлежащим образом о формировании состава суда, дате, месте и времени судебного разбирательства.**

В силу статьи 3 Закона об арбитраже, стороны считаются извещенными надлежащим образом, по аналогии со ст. 123 АПК РФ.

Аналогичный вывод подтвержден позицией Судебной коллегии Верховного Суда Российской Федерации от 30 декабря 2015 года N 302-ЭС15-11092:

П.5) «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства представит доказательство того, что: Состав третейского суда или процедура арбитража не соответствовали соглашению сторон или федеральному закону».

А) Состав третейского суда: В соответствии с ч. 2 ст. 11 ФЗ-382, Стороны арбитража могут согласовать по своему усмотрению процедуру избрания (назначения) арбитра или арбитров при условии соблюдения положений частей 4 - 11 настоящей статьи.

На основании соглашения о передаче прав по Договору займа от 07.09.2020, заключенного между истцом и третьим лицом; на основании Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г., заключенного между Третьим лицом, Ответчиком 1, Ответчиком 2, Ответчиком 3, утвержденного сторонами действующим в настоящее время Арбитражным регламентом ЮНСИТРАЛ стороны согласились о том, что любые споры, разногласия, расхождения во мнениях или претензии, которые могут возникнуть из или в связи с перечисленными выше соглашениями и договорами, включая, но, не ограничиваясь, теми, которые связаны с его вступлением в силу, исполнением, изменением, нарушением, прекращением или действительностью, подлежат разрешению и окончательному урегулированию посредством арбитражного разбирательства AD HOC. Любой спор будет рассмотрен единолично

согласованным сторонами Арбитром. Таким образом, данный конкретный спор передается на рассмотрение данного сформированного суда, единым арбитром назначается магистр юриспруденции Дмитрий Валерьевич Князев, Гражданин Российской Федерации.

**Личность Арбитра установлена** на основании Паспорта гражданина Российской Федерации на имя Князева Дмитрия Валерьевича, подтверждается имеющейся копией в материалах третейского дела. Наличие у избранного Третейского судьи, Князева Дмитрия Валерьевича, высшего юридического образования, подтверждается Дипломом РФ г. Москва Специализированным институтом юриспруденции № АВС 0715029, имеющейся копией в материалах третейского дела.

Отсутствие судимости подтверждается Справкой ГУ МВД России по г. Москве от 11.07.2021 г. № 13/5-099/264646-Е, имеющейся в материалах третейского дела.

Согласно разъяснениям Минюста России от 02.09.2021 г. № 12-103924/2021, Положения Федерального закона № 382-ФЗ не предусматривают возможности предоставления третейскому суду, образованному сторонами для разрешения конкретного спора, права на осуществлении функций постоянно действующего арбитражного учреждения и выполнение им функций по администрированию арбитража. Таким образом, каких-либо дополнительных лицензий или разрешений для третейского судьи, действующим законодательством не предусмотрено.

**Таким образом, формирование состава Третейского суда произведено с соблюдением положений Закона об арбитраже.**

Б) Процедура арбитража: В соответствии с п.п. 1, 2 ст. 19 Закона об арбитраже: «При условии соблюдения положений настоящего Федерального закона стороны могут по своем усмотрению договориться о процедуре арбитража. При отсутствии договоренности третейский суд может с соблюдением положений настоящего Федерального закон осуществлять арбитраж таким образом, какой он посчитает надлежащим, в том числе отношении определения допустимости, относимости и значения любого доказательства».

В соответствии с ч. 2 ст. 2 Закона об арбитраже: «Администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора».

Во исполнение данной нормы, Единый Арбитр рассмотрел спор самолично, что подтверждается материалами третейского дела:

- лично избран сторонами в арбитражном соглашении,
- лично получил исковое заявление и принял к производству,
- лично выбрал и получил в пользование помещение для проведения судебного разбирательства,

- на личный банковский счет получил арбитражный сбор,

- лично оплатил расходы, связанные с рассмотрением спора (почтовые расходы, канцелярские принадлежности, оргтехника, помещение и т.п.),

- лично направил сторонам почтой судебные извещения и иные документы,

- лично назначил и провел судебное заседание,

- лично вынес постановления и арбитражное решение,

- Возражений о нарушении процедуры арбитража от сторон не поступало.

- Заявлений о самоотводах и об отводах, не поступило.

В соответствии с ч. 1 ст. 11 ГК РФ, защиту нарушенных или оспоренных гражданских прав осуществляет в соответствии с подведомственностью дел, установленной процессуальным законодательством, суд, арбитражный суд или третейский суд.

В соответствии с ч. 1 ст. 33 АПК РФ, споры, возникающие из гражданско-правовых отношений, а также индивидуальные трудовые споры спортсменов, тренеров в профессиональном спорте и спорте высших достижений могут быть переданы сторонами на рассмотрение третейского суда при наличии между сторонами спора действующего арбитражного соглашения, если иное не предусмотрено федеральным законом.

В соответствии с ч. 3 ст. 1 Закона об арбитраже, в арбитраж (третейское разбирательство) по соглашению сторон могут передаваться споры между сторонами гражданско-правовых отношений, если иное не предусмотрено федеральным законом.

Действующее законодательство не содержит запрета на передачу споров по договорам займа, цессии, заключенными между юридическими лицами, на рассмотрение в третейский суд.

Договоры займа, цессии, не являются контрактом, заключенным в сфере закупок для государственных и муниципальных нужд, а также не является договором, заключенным в порядке, предусмотренном Федеральным законом N 223-ФЗ.

**Каких-либо заявлений от Сторон о том, что рассматриваемый спор не может быть предметом третейского разбирательства, или о наличии противоречий публичному порядку Российской Федерации, не поступало, а Третейским судьей не установлено.**

Единолично Арбитр (третейский Судья), при ведении протокола судебного заседания, рассмотрел исковое заявление, представленные сторонами доказательства

## УСТАНОВИЛ:

Истец обратился в суд с иском к Ответчику 1, Ответчику 2, направив заказной почтой всем сторонам по делу уведомление об арбитраже с исковым заявлением с приложениями, указав:

что Истец информирует стороны о передаче требования по взысканию задолженности по обязательствам установленным Решением Суда от 30 августа 2021г. на арбитражное разбирательство, которым Суд постановил:

Удовлетворить исковые требования по иску Давилла Инвестинг Лимитед (Davilla Investing Limited) к Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.

Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB Trading One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов.

Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB Trading One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы в размере 278000 (Двести семьдесят восемь тысяч) рублей.

В соответствии с арбитражным соглашением, решение третейского суда окончательно. Вступает в законную силу немедленно с даты принятия, подлежит немедленному исполнению. В соответствии с ч. 4 ст. 238 АПК РФ, обстоятельства, установленные третейским судом, не подлежат переоценке либо пересмотру, по существу.

Решение Суда от 30 августа 2021 года до настоящего времени не исполнялось со стороны ответчиков. На момент рассмотрения настоящего спора сумма солидарного долга ответчиков, включая НДС: 144 144 510,00 рублей

Период начисления процентов: с 31.08.2021 по 15.08.2025 (1446 дней)

| период | дн. | дней в году | ставка, % | проценты, ₽ |
|---|---|---|---|---|
| 31.08.2021 – 12.09.2021 | 13 | 365 | 6,5 | 333 704,41 |
| 13.09.2021 – 24.10.2021 | 42 | 365 | 6,75 | 1 119 588,18 |
| 25.10.2021 – 19.12.2021 | 56 | 365 | 7,5 | 1 658 649,16 |
| 20.12.2021 – 13.02.2022 | 56 | 365 | 8,5 | 1 879 802,38 |
| 14.02.2022 – 27.02.2022 | 14 | 365 | 9,5 | 525 238,90 |
| 28.02.2022 – 10.04.2022 | 42 | 365 | 20 | 3 317 298,31 |
| 11.04.2022 – 03.05.2022 | 23 | 365 | 17 | 1 544 123,38 |
| 04.05.2022 – 26.05.2022 | 23 | 365 | 14 | 1 271 631,02 |
| 27.05.2022 – 13.06.2022 | 18 | 365 | 11 | 781 934,60 |

| | | | | |
|---|---|---|---|---|
| 14.06.2022 – 24.07.2022 | 41 | 365 | 9,5 | 1 538 199,63 |
| 25.07.2022 – 18.09.2022 | 56 | 365 | 8 | 1 769 225,77 |
| 19.09.2022 – 23.07.2023 | 308 | 365 | 7,5 | 9 122 570,36 |
| 24.07.2023 – 14.08.2023 | 22 | 365 | 8,5 | 738 493,79 |
| 15.08.2023 – 17.09.2023 | 34 | 365 | 12 | 1 611 259,18 |
| 18.09.2023 – 29.10.2023 | 42 | 365 | 13 | 2 156 243,90 |
| 30.10.2023 – 17.12.2023 | 49 | 365 | 15 | 2 902 636,02 |
| 18.12.2023 – 31.12.2023 | 14 | 365 | 16 | 884 612,88 |
| 01.01.2024 – 28.07.2024 | 210 | 366 | 16 | 13 232 938,62 |
| 29.07.2024 – 15.09.2024 | 49 | 366 | 18 | 3 473 646,39 |
| 16.09.2024 – 27.10.2024 | 42 | 366 | 19 | 3 142 822,92 |
| 28.10.2024 – 31.12.2024 | 65 | 366 | 21 | 5 375 881,32 |
| 01.01.2025 – 08.06.2025 | 159 | 365 | 21 | 13 186 260,79 |
| 09.06.2025 – 27.07.2025 | 49 | 365 | 20 | 3 870 181,36 |
| 28.07.2025 – 15.08.2025 | 19 | 365 | 18 | 1 350 614,31 |

Сумма процентов: 76 787 557,58 ₽

Порядок расчёта: сумма долга × ставка Банка России (действующая в период просрочки) / количество дней в году × количество дней просрочки

**Суд в ходе рассмотрения доказательств по данному делу установил следующее:**

20 мая 2023г. Истец направил Ответчику 1 и Ответчику 2 уведомление о правопреемстве на основании Договора уступки требования (цессии) от 15.05.2023 года, а также требования об оплате солидарной задолженности.

21 декабря 2024г. Истец направил Ответчику 1 и Ответчику 2 повторное требование об оплате задолженности.

До настоящего времени ни один из ответчиков не произвел погашение задолженности по существующим обязательствам.

Договор уступки требования (цессии) от 15.05.2023 года между Давилла Инвестинг Лимитед (Davilla Investing Limited) и Грантом А.А. о передаче прав Судом принимается в качестве надлежащего доказательства прав на предъявление иска в качестве правопреемника кредитора по основному обязательству.

**Изложенные выше обстоятельства подтверждаются следующими доказательствами:**

1. Договором уступки требования (цессии) от 15.05.2023 года между Давилла Инвестинг Лимитед (Davilla Investing Limited) и Грантом А.А. о передаче прав;

2. Решением от 30 августа 2021г. Арбитражного суда в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, в лице единого арбитра Князева Д.В.

3.      Требованиями об оплате задолженности от 20 мая 2023г., требованиями об оплате задолженности от 21 декабря 2024 г.

4.      Расчетом процентов на сумму неисполненных обязательств, проверенных Судом.

В соответствии со ст.810 ГК РФ «… Заемщик обязан возвратить займодавцу полученную сумму займа в срок и в порядке, которые предусмотрены договором займа».

В соответствии со ст.809 ГК РФ «1. Если иное не предусмотрено законом или договором займа, займодавец имеет право на получение с заемщика процентов за пользование займом в размерах и в порядке, определенных договором. При отсутствии в договоре условия о размере процентов за пользование займом их размер определяется ключевой ставкой Банка России, действовавшей в соответствующие периоды.

2. Размер процентов за пользование займом может быть установлен в договоре с применением ставки в процентах годовых в виде фиксированной величины, с применением ставки в процентах годовых, величина которой может изменяться в зависимости от предусмотренных договором условий, в том числе в зависимости от изменения переменной величины, либо иным путем, позволяющим определить надлежащий размер процентов на момент их уплаты.

3. При отсутствии иного соглашения проценты за пользование займом выплачиваются ежемесячно до дня возврата займа включительно…».

В соответствии со ст.363 ГК РФ «1. При неисполнении или ненадлежащем исполнении должником обеспеченного поручительством обязательства поручитель и должник отвечают перед кредитором солидарно, если законом или договором поручительства не предусмотрена субсидиарная ответственность поручителя.

2. Поручитель отвечает перед кредитором в том же объеме, как и должник, включая уплату процентов, возмещение судебных издержек по взысканию долга и других убытков кредитора, вызванных неисполнением или ненадлежащим исполнением обязательства должником, если иное не предусмотрено договором поручительства.

3. Лица, совместно давшие поручительство (сопоручители), отвечают перед кредитором солидарно, если иное не предусмотрено договором поручительства. Если из соглашения между сопоручителями и кредитором не следует иное, сопоручители, ограничившие свою ответственность перед кредитором, считаются обеспечившими основное обязательство каждый в своей части. Сопоручитель, исполнивший обязательство, имеет право потребовать от других лиц, предоставивших обеспечение основного обязательства совместно с ним, возмещения уплаченного пропорционально их участию в обеспечении основного обязательства…».

В соответствии со ст. 384 ГК РФ «Если иное не предусмотрено законом или договором, право первоначального кредитора переходит к новому кредитору в том объеме и на тех условиях, которые существовали к моменту перехода права. В частности, к новому кредитору переходят права, обеспечивающие исполнение обязательства, а также другие связанные с требованием права, в том числе право на проценты…».

Таким образом, у Ответчиков есть солидарная задолженность на общую сумму 1807503 долларов США 80 центов, где сумма основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов, судебные расходы в размере 278000 (Двести семьдесят восемь тысяч) рублей.

В соответствии с Федеральным Законом Российской Федерации «О Третейских судах в Российской Федерации» ст.16.

В соответствии с Арбитражным регламентом ЮНСИТРАЛ (регламент, принятый Комиссией ООН по праву международной торговли в 1976 г. и рекомендованный к использованию Генеральной Ассамблеей ООН 15 декабря 1976 г. с изменениями).

15 августа 2025г. третейский суд, образованный сторонами для разрешения конкретного спора в составе единоличного третейского судьи, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича, рассмотрев исковое заявление гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) на основании Договора уступки требования (цессии) от 15.05.2023 года (далее также – истец) к ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 1), Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее также – Ответчик 2) о взыскании задолженности по обязательствам, предусмотренных Решением Суда от 30 августа 2021 года вытекающим из договора займа, соглашений об изменении и отсрочке долга, корпоративных гарантий.

## РЕШИЛ:

1. Удовлетворить исковые требования по иску гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) на основании Договора уступки требования (цессии) от 15.05.2023 года (далее также – истец) к ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 1), Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее также – Ответчик 2) о взыскании задолженности по обязательствам, предусмотренных Решением Суда от 30 августа 2021 года, вытекающим из договора займа, соглашений об изменении и отсрочке долга, корпоративных гарантий.

2. Солидарно взыскать с компаний ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One. Inc.) и Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере на общую сумму 1 807 503 (Один миллион восемьсот семь тысяч пятьсот три) Доллара США 80 центов (эквивалент: 144 144 510,00 рублей), проценты за пользование денежными средствами в период с 30 августа 2021г. по 15 августа 2025г. в размере 962853 Долларов США (эквивалент: 76 787 557,58 рублей)

3. Солидарно взыскать с компаний Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы в размере 300000 (Триста тысяч) рублей.

4. В соответствии с арбитражным соглашением, решение третейского суда окончательно. Вступает в законную силу немедленно с даты принятия, подлежит немедленному исполнению. В соответствии с ч. 4 ст. 238 АПК РФ, обстоятельства, установленные третейским судом, не подлежат переоценке либо пересмотру, по существу.

Арбитражный суд

в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

единый арбитр (судья),

выбранный и согласованный сторонами

в Князев Дмитрий Валерьевич



Российская Федерация. Город Москва

Тридцатое апреля две тысячи двадцать шестого года

Я, Глухов Сергей Иванович, нотариус города Москвы, свидетельствую верность копии с представленного мне документа.

Зарегистрировано в реестре: N 77/749-к/77-2026- 1- 1084

Уплачено за совершение нотариального действия: 1500 р

С.И. Глухов

Всего прошнуровано, пронумеровано и скреплено печатью _____ 3 _____

_____ листов.

Нотариус

*Перевод с русского языка на английский*
*Russian to English Translation*

# COPY

## ARBITRATION COURT

under the AD HOC arbitration procedure for the resolution of a specific dispute
Sole Arbitrator (Judge), Knyazev Dmitry Valeryevich,

appeared and agreed upon by the parties,

4 Ilyinka Street, Office 102-103, Moscow, Russia, 109012

## COURT ORDER

On August 15, 2025, in Moscow, the Arbitration Court under the AD HOC arbitration procedure for the resolution of a specific dispute (hereinafter also referred to as the Court), presided over by the sole arbitrator (Judge) appointed and agreed upon by the parties — Knyazev Dmitry Valeryevich (hereinafter also referred to as the Judge or Arbitrator), reviewed the claim filed by Grant Aleksandr Aleksandrovich, the successor of Davilla Investing Limited pursuant to the Assignment Agreement dated May 15, 2023 (hereinafter also referred to as the Claimant), against AFB Trading One, Inc. (hereinafter also referred to as Respondent 1), and Golden Sphinx Limited (hereinafter also referred to as Respondent 2), seeking recovery of debt obligations under the Court's decision dated August 30, 2021, arising from the loan agreement, agreements on debt restructuring and deferral, and corporate guarantees in the amount of 1,807,503.80 USD (One million eight hundred seven thousand five hundred three US dollars and eighty cents) (equivalent: 144,144,510.00 rubles), and interest for the use of funds for the period from August 31, 2021, to August 15, 2025, in the amount of 76,787,557.58 rubles (equivalent: 962,853 USD).

The arbitration was conducted in accordance with the provisions of the Russian Federation Arbitration Law No. 382-FZ of December 29, 2015, (hereinafter — Arbitration Law, FZ-382), in the presence of the parties:

On behalf of the Claimant: Grant Aleksandr Aleksandrovich, as successor to Davilla Investing Limited, with a certified copy of the Assignment Agreement dated May 15, 2023, submitted into the casefile as proof of authority.

On behalf of Respondent 1: AFB Trading One, Inc. — no representative
On behalf of Respondent 2: Golden Sphinx Limited — no representative
In exercising the authority granted under Part 1 of Art. 16 of the Arbitration Law, the Arbitrator, in establishing jurisdiction, additionally reviewed the casefile for compliance with the provisions of Art. 239 of the Russian Federation Commercial Procedure Code in order to eliminate potential grounds for the competent court to deny the issuance of a writ of execution for enforcement of the arbitration award.

Jurisdiction of the Arbitrator:

Pursuant to Art. 2 of Federal Law No. 382-FZ of December 29, 2015, "On Arbitration (Arbitration Proceedings) in the Russian Federation" (hereinafter — Arbitration Law, FZ-382):

2) arbitration (arbitration proceedings) — the process of dispute resolution by an arbitration tribunal and the rendering of an arbitration award;

16) arbitration tribunal — a sole arbitrator or a panel of arbitrators;

1. arbitrator (arbitration judge) — an individual selected by the parties or appointed pursuant to a procedure agreed upon by the parties or established by federal law for the resolution of a dispute by an arbitration tribunal;

2. arbitration administration — the performance of organizational functions for supporting the arbitration, including facilitating the procedures for selecting, appointing, or removing arbitrators, maintaining case management, organizing the collection and distribution of arbitration fees, excluding the actual functions of the arbitration tribunal in resolving the dispute.

An arbitration clause that forms part of a contract is recognized as an agreement independent of the other terms of the contract. A ruling by the arbitration tribunal that the contract is invalid does not automatically invalidate the arbitration agreement.

A statement challenging the jurisdiction of the arbitration tribunal may be submitted by the respective party to the arbitration no later than the submission of its first statement on the merits of the dispute.

**Prior to the commencement of arbitration proceedings on the merits of this dispute, no statements were received challenging the jurisdiction of the Arbitrator to hear this case.**

Relying on Articles 7, 19, and 52 of the Arbitration Law, the Arbitrator ruled that he has jurisdiction to consider the dispute submitted to him.

In exercising the authority granted under Part 1 of Art. 16 of the Arbitration Law, the Arbitrator, in establishing jurisdiction, additionally reviewed the casefile for compliance with the provisions of Art. 239 of the Russian Federation Commercial Procedure Code in order to eliminate potential grounds for the competent court to deny the issuance of a writ of execution for enforcement of the arbitration award.

I. Pursuant to Part 3 of Art. 239 of the Russian Federation Commercial Procedure Code:

P. 1: "The competent court may deny the issuance of a writ of execution only if the party to the arbitration proceedings provides evidence that one of the parties to the arbitration agreement under which the dispute was resolved lacked full legal capacity."

No submissions have been received from the parties under this paragraph.

P. 2: "The competent court may deny the issuance of a writ of execution only if the party to the arbitration proceedings provides evidence that the arbitration agreement under which the dispute was resolved is invalid under the law to which the parties subjected it, or, in the absence of such indication, under the law of the Russian Federation."

Pursuant to Art. 7 of the FZ-382 Law, "an arbitration agreement is an agreement between the parties to submit to arbitration all or certain disputes which have arisen or may arise between them in connection with a specific legal relationship, whether contractual or not.

An arbitration agreement may be made in the form of an arbitration clause in a contract or as a separate agreement.

Any doubt in the interpretation of an arbitration agreement shall be interpreted in favor of its validity and enforceability."

**The parties were duly notified of the composition of the tribunal, as well as the date, place, and time of the arbitration proceedings.**

Pursuant to Art. 3 of the Arbitration Law, the parties are considered duly notified by analogy with Art. 123 of the Russian Federation Commercial Procedure Code.

This conclusion is supported by the position of the Judicial Chamber of the Russian Federation Supreme Court dated December 30, 2015, No. 302-ES15-11092:

P. 5: "The competent court may deny the issuance of a writ of execution only if the party to the arbitration proceedings provides evidence that the composition of the arbitration tribunal or the arbitration procedure did not comply with the parties' agreement or federal law."

A) Composition of the arbitration tribunal: Pursuant to Part 2 of Art. 11 of Law FZ-382, the parties to the arbitration may, at their discretion, agree on the procedure for selecting (appointing) the arbitrator or arbitrators, provided that the provisions of Parts 4 through 11 of this article are observed.

Based on the Assignment Agreement under the Loan Agreement dated September 7, 2020, entered into between the Claimant and a third party; and based on the Agreement on the Selection (Identity) of the Arbitrator and Applicable Rules dated August 23, 2012, executed between the Third Party, Respondent 1, Respondent 2, and Respondent 3, and approved by the parties under the currently applicable UNCITRAL Arbitration Rules, the parties agreed that any disputes, controversies, disagreements, or claims arising out of or in connection with the aforementioned agreements and contracts, including, but not limited to, those concerning their entry into force, performance, amendment, breach, termination, or validity, shall be resolved and finally settled through AD HOC arbitration. Any such dispute shall be heard by a sole arbitrator agreed upon by the parties.

Accordingly, the present specific dispute is submitted to the duly constituted tribunal, and the sole arbitrator appointed is Master of Laws Knyazev, Dmitry Valeryevich , a citizen of the Russian Federation.

The identity of the Arbitrator was verified based on the Passport of the Russian Federation issued in the name of Knyazev, Dmitry Valeryevich , as confirmed by a copy included in the arbitration casefile.

The possession of a higher legal education by the appointed Arbitrator, Knyazev, Dmitry Valeryevich , is confirmed by Diploma No. ABC 0715029 issued in Moscow by the Specialized Institute of Jurisprudence of the Russian Federation, a copy of which is available in the arbitration casefile.

The absence of a criminal record is confirmed by Certificate No. 13/5-099/264646-E issued by the Main Directorate of the Ministry of Internal Affairs of Russia for the city

of Moscow, dated July 11, 2021, and included in the arbitration casefile.

According to clarifications from the Russian Ministry of Justice dated September 2, 2021, No. 12-103924/2021, the provisions of Federal Law No. 382-FZ do not provide for the possibility of an arbitration tribunal, formed by the parties for the resolution of a specific dispute, to perform the functions of a permanent arbitration institution or to administer arbitration proceedings.

Accordingly, the current legislation does not require any additional licenses or permits for the arbitrator.

Thus, the composition of the Arbitration Tribunal was formed in compliance with the provisions of the Arbitration Law.

B) Arbitration procedure: Pursuant to subparagraphs 1 and 2 of Art. 19 of the Arbitration Law:

"Subject to the provisions of this Federal Law, the parties may agree on the arbitration procedure at their discretion. In the absence of such agreement, the arbitration tribunal may, subject to the provisions of this Federal Law, conduct the arbitration in the manner it deems appropriate, including with respect to the admissibility, relevance, and weight of any evidence."

In accordance with Art. 2.2 of the Arbitration Law:

"Arbitration administration means the performance of organizational functions to support arbitration, including the procedures for selecting, appointing, or removing arbitrators, maintaining records, organizing the collection and distribution of arbitration fees, excluding the direct functions of the arbitration tribunal in resolving the dispute."

In accordance with this provision, the Sole Arbitrator personally reviewed the dispute, as confirmed by the arbitration casefile:
• was personally appointed by the parties in the arbitration agreement,
• personally received the statement of claim and accepted it for proceedings,
• personally selected and obtained the premises for the hearing,
• arbitration fees were received into his personal bank account,
• personally covered all expenses related to the dispute resolution (postal expenses, stationery, office equipment, venue, etc.),
• personally sent court notices and other documents to the parties by mail,
• personally scheduled and conducted the hearing,
• personally issued procedural rulings and the arbitration award,
• no objections were received from the parties regarding procedural violations in the arbitration,
• no motions for recusal or self-recusal were submitted.

Pursuant to Part 1 of Art. 11 of the Russian Federation Civil Code, the protection of violated or contested civil rights is carried out by a court, arbitration court, or arbitration tribunal, within the jurisdiction established by procedural law.

According to Part 1 of Art. 33 of the Russian Federation Commercial Procedure Code, disputes arising from civil-law relationships, as well as individual labor disputes involving professional athletes and coaches in professional and elite sports, may be submitted by the

parties to an arbitration tribunal for consideration, provided there is a valid arbitration agreement between the parties, unless otherwise provided by federal law.

Pursuant to Part 3 of Art. 1 of the Arbitration Law, disputes between parties to civil-law relationships may be submitted to arbitration (arbitration proceedings) by agreement of the parties, unless otherwise provided by federal law.

Current legislation does not prohibit the submission of disputes under loan and assignment agreements concluded between legal entities to arbitration.

The loan and assignment agreements in question are not contracts entered into within the framework of public procurement for state or municipal needs, nor are they contracts concluded under the procedure established by Federal Law No. 223-FZ.

**No statements were received from the parties asserting that the dispute under consideration is not subject to arbitration or that it contradicts the public policy of the Russian Federation, nor were any such grounds identified by the Arbitrator.**

The Sole Arbitrator (arbitration judge), maintaining the minutes of the hearing, reviewed the statement of claim and the evidence submitted by the parties, has made the following

## FINDINGS

The Claimant filed a claim against Respondent 1 and Respondent 2, sending each party in the case a notice of arbitration with the statement of claim and supporting documents by registered mail, stating:

that the Claimant informs the parties of the referral of the claim for recovery of debt obligations established by the Court's decision dated August 30, 2021, to arbitration, by which the Court ruled as follows:

To grant the claim filed by Davilla Investing Limited against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited for recovery of debt under a loan agreement, debt restructuring and deferral agreement, and corporate guarantees.

To hold Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited jointly liable to pay Davilla Investing Limited the principal debt amounting to 1,022,000 (One million twenty-two thousand) US dollars, and interest for the use of funds in the amount of 782,017 (Seven hundred eighty-two thousand seventeen) US dollars and eighty cents.

To hold Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited jointly liable to pay Davilla Investing Limited legal costs in the amount of 278,000 (Two hundred seventy-eight thousand) rubles.

Pursuant to the arbitration agreement, the arbitration tribunal's decision is final. It takes legal effect immediately upon issuance and is subject to immediate enforcement. Under Part 4 of Art. 238 of the Russian Federation Commercial Procedure Code, the findings established by the arbitration tribunal are not subject to re-evaluation or reconsideration on the merits.

The Court's decision of August 30, 2021, has not been enforced by the Respondents to

date. As of the time of review of the present dispute, the total amount of joint debt owed by the Respondents, including VAT, is 144,144,510.00 rubles.

**Interest accrual period: from August 31, 2021, to August 15, 2025 (1,446 days)**

| Period | Days | Days in a year | Rate, % | %, ₽ |
|---|---|---|---|---|
| 08/31/2021 – 09/12/2021 | 13 | 365 | 6,5 | 333 704,41 |
| 09/13/2021 – 10/24/2021 | 42 | 365 | 6,75 | 1 119 588,18 |
| 10/25/2021 – 12/19/2021 | 56 | 365 | 7,5 | 1 658 649,16 |
| 12/20/2021 – 02/13/2022 | 56 | 365 | 8,5 | 1 879 802,38 |
| 02/14/2022 – 02/27/2022 | 14 | 365 | 9,5 | 525 238,90 |
| 02/28/2022 – 04/10/2022 | 42 | 365 | 20 | 3 317 298,31 |
| 04/11/2022 – 05/03/2022 | 23 | 365 | 17 | 1 544 123,38 |
| 05/04/2022 – 05/26/2022 | 23 | 365 | 14 | 1 271 631,02 |
| 05/27/2022 – 06/13/2022 | 18 | 365 | 11 | 781 934,60 |
| 06/14/2022 – 07/24/2022 | 41 | 365 | 9,5 | 1 538 199,63 |
| 07/25/2022 – 09/18/2022 | 56 | 365 | 8 | 1 769 225,77 |
| 09/19/2022 – 07/23/2023 | 308 | 365 | 7,5 | 9 122 570,36 |
| 07/24/2023 – 08/14/2023 | 22 | 365 | 8,5 | 738 493,79 |
| 08/15/2023 – 09/17/2023 | 34 | 365 | 12 | 1 611 259,18 |
| 09/18/2023 – 10/29/2023 | 42 | 365 | 13 | 2 156 243,90 |
| 10/30/2023 – 12/17/2023 | 49 | 365 | 15 | 2 902 636,02 |
| 12/18/2023 – 12/31/2023 | 14 | 365 | 16 | 884 612,88 |
| 01/01/2024 – 07/28/2024 | 210 | 366 | 16 | 13 232 938,62 |
| 07/29/2024 – 09/15/2024 | 49 | 366 | 18 | 3 473 646,39 |
| 09/16/2024 – 10/27/2024 | 42 | 366 | 19 | 3 142 822,92 |
| 10/28/2024 – 12/31/2024 | 65 | 366 | 21 | 5 375 881,32 |
| 01/01/2025 – 06/08/2025 | 159 | 365 | 21 | 13 186 260,79 |
| 06/09/2025 – 07/27/2025 | 49 | 365 | 20 | 3 870 181,36 |
| 07/28/2025 – 08/15/2025 | 19 | 365 | 18 | 1 350 614,31 |

Interest amount: ₽76,787,557.58

Calculation method: principal debt × Bank of Russia key rate (applicable during the delay period) ÷ number of days in the year × number of days of delay

**During the examination of the evidence in this case, the Court has made the following findings:**

On May 20, 2023, the Claimant sent Respondent 1 and Respondent 2 a notice of succession based on the Assignment Agreement dated May 15, 2023, along with a demand for payment of the joint debt.

On December 21, 2024, the Claimant sent a repeated demand for payment of the debt to Respondent 1 and Respondent 2.

To date, neither of the Respondents has repaid the debt under the existing obligations.

The Assignment Agreement dated May 15, 2023, between Davilla Investing Limited and Grant A.A. for the transfer of rights is accepted by the Court as proper evidence of the Claimant's right to file the claim as the legal successor of the creditor under the primary obligation.

The above circumstances are supported by the following evidence:

1. The Assignment Agreement dated May 15, 2023, between Davilla Investing Limited and Grant A.A. concerning the transfer of rights;
2. The decision of August 30, 2021, by the Arbitration Court under the AD HOC arbitration procedure for the resolution of a specific dispute, presided over by the Sole Arbitrator Knyazev D.V.;
3. The demands for payment of the debt dated May 20, 2023, and December 21, 2024;
4. The interest calculation on the unpaid obligations, verified by the Court.

Pursuant to Art. 810 of the Russian Federation Civil Code: "… The borrower shall return to the lender the loan amount received within the period and in the manner stipulated by the loan agreement."

According to Art. 809 of the Russian Federation Civil Code:

1. Unless otherwise provided by law or the loan agreement, the lender has the right to receive interest from the borrower for the use of the loan at the rate and under the procedure defined in the agreement. In the absence of such provision, the interest rate shall be determined by the Bank of Russia's key rate in effect during the relevant periods.
2. The interest rate may be established in the contract as a fixed annual percentage or may vary depending on the terms provided in the agreement, including fluctuations in a variable index, or otherwise, provided the rate can be properly determined at the time of payment.
3. Unless otherwise agreed, interest shall be paid monthly up to and including the date of repayment.

Under Art. 363 of the Russian Federation Civil Code:

1. In case of non-performance or improper performance by the debtor of an obligation secured by a guarantee, the guarantor and the debtor shall be jointly liable to the

creditor, unless the law or the guarantee agreement provides for the guarantor's subsidiary liability.

2. The guarantor shall be liable to the creditor to the same extent as the debtor, including interest, reimbursement of legal costs for debt collection, and any other losses suffered by the creditor due to the debtor's non-performance or improper performance, unless otherwise specified in the guarantee agreement.

3. Persons who have jointly provided a guarantee (co-guarantors) shall be jointly liable to the creditor unless otherwise provided by the guarantee agreement. If not otherwise agreed between the co-guarantors and the creditor, co-guarantors who have limited their liability to the creditor shall be deemed to have secured the principal obligation in part, each for their respective share. A co-guarantor who has fulfilled the obligation has the right to claim reimbursement from the other parties who jointly provided the security, in proportion to their participation in securing the principal obligation.

Pursuant to Art. 384 of the Russian Federation Civil Code: Unless otherwise provided by law or contract, the rights of the original creditor transfer to the new creditor to the same extent and under the same conditions as existed at the time of the transfer. In particular, the new creditor acquires rights securing the performance of the obligation and other rights associated with the claim, including the right to interest.

Thus, the Respondents jointly owe a total of 1,807,503.80 USD, comprising the principal debt of 1,022,000 (One million twenty-two thousand) US dollars, interest for the use of funds in the amount of 782,017 (Seven hundred eighty-two thousand seventeen) US dollars and eighty cents, and legal expenses of 278,000 (Two hundred seventy-eight thousand) rubles.

Pursuant to Federal Law of the Russian Federation "On Arbitration Tribunals in the Russian Federation," Art. 16.

In accordance with the UNCITRAL Arbitration Rules (as adopted by the United Nations Commission on International Trade Law in 1976 and recommended for use by the UN General Assembly on December 15, 1976, with amendments).

On August 15, 2025, the arbitration tribunal, formed by the parties for the resolution of a specific dispute and composed of a sole arbitrator, represented by the sole arbitrator (judge) appointed and agreed upon by the parties — Knyazev, Dmitry Valeryevich — reviewed the statement of claim filed by Aleksandr Aleksandrovich Grant, the successor of Davilla Investing Limited under the Assignment Agreement dated May 15, 2023 (hereinafter also referred to as the Claimant), against AFB Trading One, Inc. (hereinafter also referred to as Respondent 1) and Golden Sphinx Limited (hereinafter also referred to as Respondent 2), seeking recovery of debt obligations provided for in the Court's Decision of August 30, 2021, arising from the loan agreement, debt modification and deferral agreements, and corporate guarantees.

**IT IS HEREBY ORDERED**

1. To grant the claims filed by Aleksandr Aleksandrovich Grant, the successor of Davilla Investing Limited under the Assignment Agreement dated May 15, 2023 (hereinafter also referred to as the Claimant), against AFB Trading One, Inc. (hereinafter also referred to as Respondent 1) and Golden Sphinx Limited (hereinafter also referred to as Respondent 2), for recovery of debt obligations arising from the

Court's Decision of August 30, 2021, stemming from a loan agreement, debt modification and deferral agreements, and corporate guarantees.

2. To hold AFB Trading One, Inc. and Golden Sphinx Limited jointly liable to pay Aleksandr Aleksandrovich Grant, the successor of Davilla Investing Limited, the principal debt in the total amount of 1,807,503.80 USD (One million eight hundred seven thousand five hundred three US dollars and eighty cents) (equivalent: ₽144,144,510.00), and interest for the use of funds for the period from August 30, 2021, to August 15, 2025, in the amount of 962,853 USD (equivalent: ₽76,787,557.58).

3. To hold Golden Sphinx Limited jointly liable to reimburse Aleksandr Aleksandrovich Grant, the successor of Davilla Investing Limited, legal expenses in the amount of ₽300,000 (Three hundred thousand rubles).

4. Pursuant to the arbitration agreement, the decision of the arbitration tribunal is final. It takes legal effect immediately upon issuance and is subject to immediate enforcement. Under Part 4 of Art. 238 of the Russian Federation Commercial Procedure Code, the facts established by the arbitration tribunal are not subject to re-evaluation or reconsideration on the merits.

Sole arbitrator (judge), Knyazev Dmitry Valeryevich Arbitration Court, AD HOC arbitration procedure for the resolution of a specific dispute appointed and agreed upon by the parties

Stamp:
Arbitration Court, AD HOC arbitration procedure
Sole arbitrator (judge)
Knyazev Dmitry Valeryevich

Stamp:
Arbitration Court, AD HOC arbitration procedure
Sole arbitrator (judge)
Knyazev Dmitry Valeryevich

*Seal:*
*Russian Federation Ministry of Justice*
*Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator*
*City of Moscow*

*-signature-*

*Seal:*
*Russian Federation Ministry of Justice Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator, city of Moscow*

*Seal: Notary Public S. I. Glukhov, Notarial District: the city of Moscow*

*Russian Federation Ministry of Justice Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator, ciy of Moscow*

**The Russian Federation**
**City of Moscow**
**April thirty in the year two thousand and twenty-six**

I, Glukhov Sergei Ivanovich, a Notary Public for the city of Moscow, certify that this is a true and correct copy of the original document.
Recorded in the Register: No 77/749-n/77-2026-1-1084
Paid for notarial services: 1500 Roubles 00 kopecks.

*- signature-* S. I. Glukhov

*Seal: Notary Public S. I. Glukhov, Notarial District: city of Moscow*


*Stamp:*
*The document contains 5 pages,*
*bound, numbered and sealed.*
*Notary Public - signature-*

*Перевод данного текста с русского языка на английский язык сделан мной, переводчиком Сулеймановой Элиной Вахидовной.*

_____

**The translation of this text was performed by me, the translator Suleymanova Elina Vakhidovna.**

_____ /signature/_____

Российская Федерация

Город Москва

Второго мая две тысячи двадцать шестого года

Я, Бурейникова Леонора Леонидовна, нотариус города Москвы, свидетельствую подлинность подписи переводчика Сулеймановой Элины Вахидовны.

Подпись сделана в моем присутствии.

Личность подписавшего документ установлена.

Зарегистрировано в реестре: № 40/87-н/77-2026-12-2840

Уплачено за совершение нотариального действия: 400 руб. 00 коп

_____ Л.Л. Бурейникова

Всего прошнуровано, пронумеровано и скреплено печатью ( ) лист(ов)

Нотариус

*The Russian Federation*

*The city of Moscow*

*02.05.2026*

*I, Bureynikova Leonora Leonidovna, Notary of the city of Moscow, certify the authenticity of signature, made by the translator Suleymanova Elina Vakhidovna.*

*The signature was made in my presence.*

*Her identity is established.*

*It is registered in the register under № 40/87-н/77-2026-*

*Paid for the performance of a notarial act. 400 rubles 00 kop.*

_____ /signature_____ L.L. Bureynikova

| Seal: Notary  Bureynikova L.L. |
| Notarial  district of c. Moscow |

Stitched up, numbered and sealed (   ) pages
Notary /signature/

| Seal: Notary  Bureynikova L.L. |
| Notarial  district of c. Moscow |

| APOSTILLE | |
|---|---|
| (Convention de La Haye du 5 octobre 1961) | |
| **1. Страна:**<br>Country / Pays: | Российская Федерация |
| **Настоящий официальный документ**<br>This public document / Le présent acte public | |
| **2. был подписан**<br>has been signed by<br>a été signé par | Глухов С.И., Бурейникова Л.Л. |
| **3. выступающим в качестве**<br>acting in the capacity of<br>agissant en qualité de | нотариус, нотариус |
| **4. скреплен печатью / штампом**<br>bears the seal / stamp of<br>est revêtu du sceau / timbre de | нотариус г. Москвы Глухов Сергей Иванович, нотариус г. Москвы Бурейникова Леонора Леонидовна |
| **Удостоверено**<br>Certified / Attesté | |

| **5. В**<br>at / à | г. Москва | **6. Дата**<br>the / le | 07.05.2026 |
|---|---|---|---|

| **7. учреждение**<br>by / par | Крымшокалова А.З.<br>Заместитель начальника отдела международной правовой помощи и проставления апостиля Главного управления Министерства юстиции Российской Федерации по Москве |
|---|---|
| **8. №**<br>N° / sous n° | 77/17835-26 |

| **9. Печать /**<br>**штамп:**<br>Seal / stamp:<br>Sceau / timbre: | | **10. Подпись**<br>Signature:<br>Signature: | |
|---|---|---|---|

Данный апостиль удостоверяет лишь подлинность подписи и должность лица, подписавшего официальный документ, и при необходимости подлинность печати или штампа, которым скреплен этот документ.

Апостиль не заверяет достоверность самого документа, для которого он был оформлен.

Информацию по проверке апостиля можно найти, отсканировав QR-код, либо перейдя по ссылке: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=2ffa33e7-df0b-4c4a-99ad-99de23aab0b7**



This apostille certifies only the authenticity of the signature and the position of the official who signed the official document, and, if necessary, the authenticity of the seal or stamp affixed to the said document.

The apostille does not certify the authenticity of the document for which it was issued.

Information on apostille verification can be found by scanning a QR code or by referring to the following link: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=2ffa33e7-df0b-4c4a-99ad-99de23aab0b7**

Cette apostille ne certifie que l'authenticité de la signature et le poste du fonctionnaire qui a signé le document officiel et, le cas échéant, l'authenticité du sceau ou du cachet apposé sur ledit document.

L'apostille n'assure pas la véracité du document lui-même pour lequel il a été délivré.

Les informations de vérification de l'apostille peuvent être trouvées en scannant le code QR ou en consultant le lien suivant: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=2ffa33e7-df0b-4c4a-99ad-99de23aab0b7**



Прошито, пронумеровано и скреплено печатью
16 ( *шестнадцать* ) лист *ов*

Заместитель начальника отдела
Главного управления Министерства юстиции
Российской Федерации по Москве

_____ А.З. Крымшокалова

# EXHIBIT 3

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

# MIKHAIL BOGOMOLNY

## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

From: "Michael Zorkin" mz@thezorkinfirm.com
To: "ag99@list.ru" ag99@list.ru
CC: "LV" lv2020@hotmail.com
Date: Wednesday, August 25, 2021, 3:50 AM +03:00
Subject: AFB Trading One, Inc. and Golden Sphinx Limited


Dear Mr. Knyazev,

Attached is the Response to the Complaint filed by Larisa Sabadash on behalf of AFB Trading One, Inc. and Golden Sphinx Limited.


Michael Zorkin
Managing Attorney
Phone: (323) 493-8075
Email: mz@thezorkinfirm.com
Web: www.thezorkinfirm.com
Address: 6320 Canoga Ave., 15th Floor, Woodland Hills, CA 91367


This e-mail transmission, and any documents, files, or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient of this message, or a person responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is strictly prohibited. If you have received this transmission in error, please immediately notify the sender by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

---

## Attachments Table:

| File Name | Size |
| --- | --- |
| Dismiss GS liquidate.pdf | 471 KB |
| 2016-10-03 Certificate of Action of sole shareholder of AFB.pdf | 26.9 KB |
| 2019-10-25 Minutes of Meeting of Board of Directors of Golden Sphinx.pdf | 17.2 KB |
| Excerpt - JFSC Companies Register.pdf | 89.6 KB |
| 2013.06.30_Registrar - Dissolution summon.pdf | 24.4 KB |
| 2016-10-03 Certificate Action of Board of Directors of AFB.pdf | 27.8 KB |
| 2019-09-17 US consent to act as Director of Golden Sphinx.pdf | 51.1 KB |
| AFB Trading One, Inc..pdf | 112 KB |
| 2013.10.31_Dissolution notice - page 8 RC65289.pdf | 579 KB |

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# MIKHAIL BOGOMOLNY
## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

# CERTIFICATE OF TRANSLATION

*Translation from Russian into English*

I, MIKHAIL BOGOMOLNY, A **CERTIFIED COURT INTERPRETER (ID: 313218),** DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; THE TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**DOCUMENT DESCRIPTION**

*Email message from "Michael Zorkin" mz@thezorkinfirm.com*

*To: "ag99@list.ru" ag99@list.ru*



Member ID: 3826



X _____

Mikhail Bogomolny

Translator

**Interpreter information:**
**Address: 16001 Ventura Blvd., Ste. 120,**
**Encino, CA 91436**
**Ph. 818-284-1884**
**Email: michael@translatorpro.org**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

От кого: "Michael Zorkin" <mz@thezorkinfirm.com>
Кому: "ag99@list.ru" <ag99@list.ru>
Копия: "L V" <l2020@hotmail.com>
Дата: Среда, 25 августа 2021, 3:50 +03:00
Тема: AFB Trading One, Inc. и Golden Sphinx Limited

Господин Князев,

Прилагаю Отзыв На Исковое Заявление Ларисы Сабадаш от имени AFB Trading One, Inc. и Golden Sphinx Limited.

**Michael Zorkin**

**Managing Attorney**

(323) 493-8075

mz@thezorkinfirm.com

www.thezorkinfirm.com

6320 Canoga Ave., 15th Floor, Woodland Hills, CA
91367

This e-mail transmission, and any documents, files, or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient of this message, or a person responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is strictly prohibited. If you have received this transmission in error, please immediately notify the sender by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

9 attachments  1.4 MB                                                                 Save All

| | | |
|---|---|---|
| Dismiss GS liquidate.pdf | 471 KB | 2016-10-03 Certificate Action of Board of Directors of AFB.pdf — 27.8 KB |
| 2016-10-03 Certificate of Action of sole shareholder of AFB.pdf | 26.9 KB | 2019-09-17 LS consent to act as Director of Golden Sphinx.pdf — 51.1 KB |
| 2019-10-25 Minutes of Meeting of Board of Directors of Golden Sphinx.pdf | 17.2 KB | AFB Trading One, Inc..pdf — 112 KB |
| Excerpt - JFSC Companies Register.pdf | 89.6 KB | 2013.10.31_Dissolution notice - page 8 RC65269.pdf — 579 KB |
| 2013.06.30_Registrar - Dissolution summon.pdf | 24.4 KB | |

# EXHIBIT 4

14

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

# MIKHAIL BOGOMOLNY
## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

Joseph Kar <jkar@civillegal.com>

**Fwd[2]: Re: Re[2]: Arbitration ad hoc**

4 messages

Dmitry Knyazev <ag99@list.ru> Fri, Mar 6, 2026 at 9:47 AM
Reply-To: Dmitry Knyazev <ag99@list.ru>
To: jkar@civillegal.com

From: Tatyana Padalko arbitrpadalko@gmail.com
To: Dmitry Knyazev ag99@list.ru
Date: Tuesday, August 24, 2021, 18:48 +03:00
Subject: Re: Re[2]: Ad Hoc Arbitration Procedure

Also attaching certified translations.

Tue, Aug. 24, 2021 at 14:03, Tatyana Padalko arbitrpadalko@gmail.com wrote:
Good afternoon, Dmitry,
Please find attached the response for the upcoming court hearing.

Mon, Aug. 9, 2021 at 14:38, Dmitry Knyazev ag99@list.ru wrote:
Good afternoon!

I have reviewed your request and am forwarding the Order setting the matter for hearing (dated August 2, 2021), as well as the Court Request (dated August 5, 2021).

Respectfully,
Sole Arbitrator (Judge), selected and agreed upon by the Parties,
Knyazev D.V.

Monday, July 19, 2021, 12:09 +03:00 from Tatyana Padalko arbitrpadalko@gmail.com:
Please contact me promptly using the following contact information: tel. +79219150765, email: tpadalko@mail.ru.

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**MIKHAIL BOGOMOLNY**

**TRANSLATION, NOTARY AND APOSTILLE SERVICES**

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

Mon, Jul. 19, 2021 at 10:48, Tatyana Padalko arbitrpadalko@gmail.com wrote:

Good afternoon, I am the financial administrator for Sabadash A.V. The respondent companies belong to Sabadash A.V., and the documents related to this dispute were falsified. Please provide your contact information for further communication.

Dmitry Knyazev

Sent from Mail service

[Attached 3 pdf files]

1.pdf

2.pdf

3.pdf

Dmitry Knyazev <ag99@list.ru> Fri, Mar 6, 2026 at 9:48 AM

Reply-To: Dmitry Knyazev <ag99@list.ru>

To: jkar@civillegal.com

-------- Forwarded message --------

From: Tatyana Padalko arbitrpadalko@gmail.com
To: Dmitry Knyazev ag99@list.ru
Date: Tuesday, August 24, 2021, 14:03 +03:00
Subject: Re: Re[2]: Ad Hoc Arbitration Procedure

Good afternoon, Dmitry,

Please find attached the response for the upcoming court hearing.

> Mon, Aug. 9, 2021 at 14:38, Dmitry Knyazev ag99@list.ru wrote:
>
> Good afternoon!
>
> I have reviewed your request and am forwarding the Order setting the matter for hearing (dated August 2, 2021), as well as the Court Request (dated August 5, 2021).
>
> Respectfully,
> Sole Arbitrator (Judge), selected and agreed upon by the Parties,
> Knyazev D.V.

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**MIKHAIL BOGOMOLNY**

**TRANSLATION, NOTARY AND APOSTILLE SERVICES**

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

Monday, July 19, 2021, 12:09 +03:00 from Tatyana Padalko arbitrpadalko@gmail.com:

Please contact me promptly using the following contact information: tel. +79219150765, email: tpadalko@mail.ru.

Mon, Jul. 19, 2021 at 10:48, Tatyana Padalko arbitrpadalko@gmail.com wrote:

Good afternoon, I am the financial administrator for Sabadash A.V. The respondent companies belong to Sabadash A.V., and the documents related to this dispute were falsified. Please provide your contact information for further communication.

Dmitry Knyazev

Sent from Mail service

[Attached 8 pdf files]

2003-05-31_AFB-COA_appointing_Itkin_officer.pdf

2016-10-03_appoint_LS+Reynolds+PS_director.pdf

2015-01-23_AFB_Itkin+Szymanski_Director.pdf

Registrar's Response.pdf

Extract Regarding Golden Spirits.pdf

Response.pdf.sgn

Response.pdf

Certificate Regarding Dissolved Companies.pdf

---

Dmitry Knyazev ag99@list.ru Fri, Mar. 6, 2026 at 9:49 AM
Reply-To: Dmitry Knyazev ag99@list.ru
To: jkar@civillegal.com

-------- Forwarded message --------

From: Tatyana Padalko arbitrpadalko@gmail.com
To: Dmitry Knyazev ag99@list.ru
Date: Friday, August 20, 2021, 15:36 +03:00
Subject: Re: Re[2]: Ad Hoc Arbitration Procedure

Also attaching written explanations.

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

CERTIFIED COURT INTERPRETER

Fri, Aug. 20, 2021 at 15:03, Tatyana Padalko arbitrpadalko@gmail.com wrote:

Good afternoon!

Forwarding documents related to the present proceeding.

> Mon, Aug. 9, 2021 at 14:38, Dmitry Knyazev ag99@list.ru wrote:
>
> Good afternoon!
>
> I have reviewed your request and am forwarding the Order setting the matter for hearing (dated August 2, 2021), as well as the Court Request (dated August 5, 2021).
>
> Respectfully,
> Sole Arbitrator (Judge), selected and agreed upon by the Parties,
> Knyazev D.V.

Monday, July 19, 2021, 12:09 +03:00 from Tatyana Padalko arbitrpadalko@gmail.com:

Please contact me promptly using the following contact information: tel. +79219150765, email: tpadalko@mail.ru.

Mon, Jul. 19, 2021 at 10:48, Tatyana Padalko arbitrpadalko@gmail.com wrote:

Good afternoon, I am the financial administrator for Sabadash A.V. The respondent companies belong to Sabadash A.V., and the documents related to this dispute were falsified. Please provide your contact information for further communication.

--

Dmitry Knyazev

--

Dmitry Knyazev

Sent from Mail.ru Mail

[Quoted text hidden]

[Attached 2 pdf files]

Written Explanations.pdf

Written Explanations.pdf.sgn

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# M I K H A I L   B O G O M O L N Y

## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

Dmitry Knyazev ag99@list.ru Fri, Mar. 6, 2026 at 9:49 AM
Reply-To: Dmitry Knyazev ag99@list.ru
To: jkar@civillegal.com

-------- Forwarded message --------

From: Tatyana Padalko arbitrpadalko@gmail.com
To: Dmitry Knyazev ag99@list.ru
Date: Friday, August 20, 2021, 15:04 +03:00
Subject: Re: Re[2]: Ad Hoc Arbitration Procedure

Good afternoon!

Forwarding documents related to the present proceeding.

Mon, Aug. 9, 2021 at 14:38, Dmitry Knyazev ag99@list.ru wrote:

Good afternoon!

I have reviewed your request and am forwarding the Order setting the matter for hearing (dated August 2, 2021), as well as the Court Request (dated August 5, 2021).

Respectfully,

Sole Arbitrator (Judge), selected and agreed upon by the Parties,

Knyazev D.V.

Monday, July 19, 2021, 12:09 +03:00 from Tatyana Padalko arbitrpadalko@gmail.com:

Please contact me promptly using the following contact information: tel. +79219150765, email: tpadalko@mail.ru

Mon, Jul. 19, 2021 at 10:48, Tatyana Padalko arbitrpadalko@gmail.com wrote:

Good afternoon, I am the financial administrator for Sabadash A.V. The respondent companies belong to Sabadash A.V., and the documents related to this dispute were falsified. Please provide your contact information for further communication.

--

Dmitry Knyazev

--

Dmitry Knyazev

Sent from Mail.ru Mail

[attached 15 files]

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**M I K H A I L   B O G O M O L N Y**

TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

2003-05-31_AFB-COA_appointing_Itkin_officer.pdf

2016-10-03_appoint_LS+Reynolds+PS_director.pdf

2015-01-23_AFB_Itkin+Szymanski_Director.pdf

2016-10-03_appoint_LS_officer.pdf

2009.11.23_Minutes_Garry_sole_GSL_Director_091123.pdf

2000.08.11_Additonal_director_Garry.pdf

Statement Regarding Expiration of Statute of Limitations.pdf.sgn

Statement Regarding Falsification.pdf.sgn

Statement Regarding Expiration of Statute of Limitations.pdf

Statement Regarding Falsification.pdf

Response to Court Request.pdf

Response to Court Request.pdf.sgn

Repeated Request for Documents.pdf

KUSP Receipt.pdf

Repeated Request for Documents.pdf.sgn


**Source: https://mail.google.com/mail/u/0/?ik=58347b9d24&view=pt&search=all&permthid=thread-f:1858935740520554519&simpl=msg-f:18589357405205545%E2%80%A6**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# MIKHAIL BOGOMOLNY

## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

# CERTIFICATE OF TRANSLATION

*Translation from Russian into English*

I, MIKHAIL BOGOMOLNY, A **CERTIFIED COURT INTERPRETER (ID: 313218)**, DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION, I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; THE TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**DOCUMENT DESCRIPTION**

*EMAIL MESSAGE EXCHANGE BETWEEN*

*TATYANA PADALKO ARBITRPADALKO@GMAIL.COM*
*AND*
*DMITRY KNYAZEV AG99@LIST.RU*




X _____

Mikhail Bogomolny

Translator

**Interpreter information:**
**Address: 16001 Ventura Blvd., Ste. 120,**
**Encino, CA 91436**
**Ph. 818-284-1884**
**Email: michael@translatorpro.org**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.



Joseph Kar <jkar@civillegal.com>

## Fwd[2]: Re: Re[2]: Арбитражная процедура ad hoc

4 messages

**Дмитрий Князев** <ag99@list.ru>                                      Fri, Mar 6, 2026 at 9:47 AM
Reply-To: Дмитрий Князев <ag99@list.ru>
To: jkar@civillegal.com

-------- Пересылаемое сообщение --------
От кого: Татьяна Падалко <arbitrpadalko@gmail.com>
Кому: Дмитрий Князев <ag99@list.ru>
Дата: Вторник, 24 августа 2021, 18:48 +03:00
Тема: Re: Re[2]: Арбитражная процедура ad hoc

И прикладываю заверенные переводы.

вт, 24 авг. 2021 г. в 14:03, Татьяна Падалко <arbitrpadalko@gmail.com>:
> Добрый день, Дмитрий,
> направляю отзыв к предстоящему судебному заседанию.

> пн, 9 авг. 2021 г. в 14:38, Дмитрий Князев <ag99@list.ru>:
>> Добрый день!
>>
>> Рассмотрел Ваше обращение, направляю Вам Определение о назначении спора к рассмотрению (от 02.08.2021), а так же Судебный запрос (от 05.08.2021).
>>
>> С уважением,
>> Единый арбитр (Судья), выбранный и согласованный Сторонами,
>> Князев Д.В.
>>
>>> Понедельник, 19 июля 2021, 12:09 +03:00 от Татьяна Падалко <arbitrpadalko@gmail.com>:
>>>
>>> Прошу оперативно связаться со мной по следующим контактам: тел.: +79219150765, эл. почта tpadalko@mail.ru.
>>>
>>> пн, 19 июл. 2021 г. в 10:48, Татьяна Падалко <arbitrpadalko@gmail.com>:
>>>> Добрый день, я являюсь финансовым управляющим Сабадаша А.В. Организации - ответчики принадлежат Сабадашу А.В., документы по данному спору были сфальсифицированы. Прошу предоставить ваши контактные данные для связи.

--
Дмитрий Князев

--
Дмитрий Князев
Отправлено из Почты Mail

Case 2:25-bk-13635-NB Doc 140 Filed 06/23/26 Entered 06/23/26 17:12:45 Desc
Main Document Page 126 of 168

--
Дмитрий Князев
Отправлено из Почты Mail

---

### 3 attachments

**2.pdf**
797K

**1.pdf**
1536K

**3.pdf**
6861K

---

**Дмитрий Князев** <ag99@list.ru>            Fri, Mar 6, 2026 at 9:48 AM
Reply-To: Дмитрий Князев <ag99@list.ru>
To: jkar@civillegal.com

-------- Пересылаемое сообщение --------
От кого: Татьяна Падалко <arbitrpadalko@gmail.com>
Кому: Дмитрий Князев <ag99@list.ru>
Дата: Вторник, 24 августа 2021, 14:03 +03:00
Тема: Re: Re[2]: Арбитражная процедура ad hoc

Добрый день, Дмитрий,
направляю отзыв к предстоящему судебному заседанию.

пн, 9 авг. 2021 г. в 14:38, Дмитрий Князев <ag99@list.ru>:
> Добрый день!
>
> Рассмотрел Ваше обращение, направляю Вам Определение о назначении спора к рассмотрению (от
> 02.08.2021), а так же Судебный запрос (от 05.08.2021).
>
> С уважением,
> Единый арбитр (Судья), выбранный и согласованный Сторонами,
> Князев Д.В.
>
>> Понедельник, 19 июля 2021, 12:09 +03:00 от Татьяна Падалко <arbitrpadalko@gmail.com>:
>>
>> Прошу оперативно связаться со мной по следующим контактам: тел.: +79219150765, эл. почта
>> tpadalko@mail.ru.
>>
>> пн, 19 июл. 2021 г. в 10:48, Татьяна Падалко <arbitrpadalko@gmail.com>:
>>> Добрый день, я являюсь финансовым управляющим Сабадаша А.В. Организации - ответчики
>>> принадлежат Сабадашу А.В., документы по данному спору были сфальсифицированы. Прошу
>>> предоставить ваши контактные данные для связи.

--
Дмитрий Князев

---

--

Дмитрий Князев
Отправлено из Почты Mail

[Quoted text hidden]

---

**8 attachments**

📄 **2003-05-31_AFB-COA_appointing_Itkin_officer.pdf**
38K

📄 **2016-10-03_apoint_LS+Reynolds+PS_director.pdf**
27K

📄 **2015-01-23_AFB_Itkin+Szymanski_Director.pdf**
275K

📄 **Ответ регистратора.pdf**
25K

📄 **Выписка в отношении Голден Спиритс.pdf**
90K

📄 **Отзыв.pdf.sgn**
4K

📄 **Отзыв.pdf**
444K

📄 **Справка по ликвидированным компаниям.pdf**
580K

---

**Дмитрий Князев** <ag99@list.ru>                                    Fri, Mar 6, 2026 at 9:49 AM
Reply-To: Дмитрий Князев <ag99@list.ru>
To: jkar@civillegal.com

-------- Пересылаемое сообщение --------
От кого: Татьяна Падалко <arbitrpadalko@gmail.com>
Кому: Дмитрий Князев <ag99@list.ru>
Дата: Пятница, 20 августа 2021, 15:36 +03:00
Тема: Re: Re[2]: Арбитражная процедура ad hoc

Также прилагаю письменные пояснения.

пт, 20 авг. 2021 г. в 15:03, Татьяна Падалко <arbitrpadalko@gmail.com>:
> Добрый день!
> Пересылаю документы по настоящему разбирательству.
>
>> пн, 9 авг. 2021 г. в 14:38, Дмитрий Князев <ag99@list.ru>:
>> Добрый день!
>>
>> Рассмотрел Ваше обращение, направляю Вам Определение о назначении спора к рассмотрению (от 02.08.2021), а так же Судебный запрос (от 05.08.2021).
>>
>> С уважением,
>> Единый арбитр (Судья), выбранный и согласованный Сторонами,
>> Князев Д.В.

3/6/26, 12:33 Case 2:25-bk-13635-NB New Model of telecommunication...

Case 2:25-bk-13635-NB  Doc 140  Filed 06/23/26  Entered 06/23/26 17:12:45  Desc
Main Document  Page 128 of 168

Понедельник, 19 июля 2021, 12:09 +03:00 от Татьяна Падалко <arbitrpadalko@gmail.com>:

Прошу оперативно связаться со мной по следующим контактам: тел.: +79219150765, эл. почта tpadalko@mail.ru.

пн, 19 июл. 2021 г. в 10:48, Татьяна Падалко <arbitrpadalko@gmail.com>:

Добрый день, я являюсь финансовым управляющим Сабадаша А.В. Организации - ответчики принадлежат Сабадашу А.В., документы по данному спору были сфальсифицированы. Прошу предоставить ваши контактные данные для связи.

--
Дмитрий Князев

--
Дмитрий Князев
Отправлено из Почты Mail

[Quoted text hidden]

**2 attachments**

**Письменные пояснения.pdf**
423K

**Письменные пояснения.pdf.sgn**
4K

**Дмитрий Князев** <ag99@list.ru>                                          Fri, Mar 6, 2026 at 9:49 AM
Reply-To: Дмитрий Князев <ag99@list.ru>
To: jkar@civillegal.com

-------- Пересылаемое сообщение --------
От кого: Татьяна Падалко <arbitrpadalko@gmail.com>
Кому: Дмитрий Князев <ag99@list.ru>
Дата: Пятница, 20 августа 2021, 15:04 +03:00
Тема: Re: Re[2]: Арбитражная процедура ad hoc

Добрый день!
Пересылаю документы по настоящему разбирательству.

пн, 9 авг. 2021 г. в 14:38, Дмитрий Князев <ag99@list.ru>:
Добрый день!

Рассмотрел Ваше обращение, направляю Вам Определение о назначении спора к рассмотрению (от 02.08.2021), а так же Судебный запрос (от 05.08.2021).

С уважением,
Единый арбитр (Судья), выбранный и согласованный Сторонами,
Князев Д.В.

Понедельник, 19 июля 2021, 12:09 +03:00 от Татьяна Падалко <arbitrpadalko@gmail.com>:

Прошу оперативно связаться со мной по следующим контактам: тел.: +79219150765, эл. почта tpadalko@mail.ru.

пн, 19 июл. 2021 г. в 10:48, Татьяна Падалко <arbitrpadalko@gmail.com>:

Добрый день, я являюсь финансовым управляющим Сабадаша А.В. Организации - ответчики принадлежат Сабадашу А.В., документы по данному спору были сфальсифицированы. Прошу предоставить ваши контактные данные для связи.

--
Дмитрий Князев

--
Дмитрий Князев
Отправлено из Почты Mail

[Quoted text hidden]

**15 attachments**

**2003-05-31_AFB-COA_appointing_Itkin_officer.pdf**
38K

**2016-10-03_apoint_LS+Reynolds+PS_director.pdf**
27K

**2015-01-23_AFB_Itkin+Szymanski_Director.pdf**
275K

**2016-10-03_appoint_LS_officer.pdf**
28K

**2009.11.23_Minutes_Garry_sole_GSL_Director_091123.pdf**
203K

**2000.08.11_Additonal_director_Garry.pdf**
15K

**Заявление о пропуске срока исковой давности.pdf.sgn**
4K

**Заявление о фальсификации.pdf.sgn**
4K

**Заявление о пропуске срока исковой давности.pdf**
188K

**Заявление о фальсификации.pdf**
199K

**Ответ на судебный запрос.pdf**
377K

**Ответ на судебный запрос.pdf.sgn**
4K

**Повторный запрос документов.pdf**
441K

**Талон КУСП.pdf**
344K

**Повторный запрос документов.pdf.sgn**
4K

# EXHIBIT 5

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

# M I K H A I L   B O G O M O L N Y

## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

Joseph Kar <jkar@civillegal.com>

**Fwd[2]: Missed deadline statement and Falsification of EV.**

1 message

Dmitry Knyazev <ag99@list.ru> Fri, Mar 6, 2026 at 9:49 AM

Reply-To: Dmitry Knyazev <ag99@list.ru>

To: jkar@civillegal.com


-------- Forwarded message --------

From: L V l2020@hotmail.com
To: ag99@list.ru ag99@list.ru
Cc: Michael Zorkin mz@thezorkinfirm.com
Date: Monday, August 23, 2021, 23:07 +03:00
Subject: Missed Deadline Statement and Falsification of Evidence


Mr. Knyazev,

Attached please find the Statement Regarding Falsification of Evidence in the case and the Statement Regarding Expiration of the Statute of Limitations.

Respectfully,

Larisa Sabadash

--

Dmitry Knyazev

Sent from Mail.ru Mail


[Attached 2 pdf files]

Falsification of Evidence.pdf

Missed Deadline Statement.pdf

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# МIКНAIL BOGOMOLNY

### TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG

E. MICHAEL@TRANSLATORPRO.ORG

P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

# CERTIFICATE OF TRANSLATION

*Translation from Russian into English*

I, MIKHAIL BOGOMOLNY, A **CERTIFIED COURT INTERPRETER (ID: 313218)**, DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION, I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; THE TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**DOCUMENT DESCRIPTION**

*EMAIL MESSAGE*
*From: L V l2020@hotmail.com*
*To: ag99@list.ru ag99@list.ru*
*Cc: Michael Zorkin mz@thezorkinfirm.com*



X _____

Mikhail Bogomolny

Translator

**Interpreter information:**

**Address: 16001 Ventura Blvd., Ste. 120,**

**Encino, CA 91436**

**Ph. 818-284-1884**

**Email: michael@translatorpro.org**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

Case 2:25-bk-11635-NB-MBK c 1.40    Filed 03/23/26 Filed 05/07/26 23:17:18:45 Desc ID

 Gmail

Joseph Kar <jkar@civillegal.com>

## Fwd[2]: Missed deadline statement and Falsification of EV.
1 message

**Дмитрий Князев** <ag99@list.ru>                                     Fri, Mar 6, 2026 at 9:49 AM
Reply-To: Дмитрий Князев <ag99@list.ru>
To: jkar@civillegal.com

-------- Пересылаемое сообщение --------
От кого: L V <l2020@hotmail.com>
Кому: ag99@list.ru <ag99@list.ru>
Копия: Michael Zorkin <mz@thezorkinfirm.com>
Дата: Понедельник, 23 августа 2021, 23:07 +03:00
Тема: Missed deadline statement and Falsification of EV.

 Господин Князев,


Прилагаю Заявление о фальсификации доказательств по делу и Заявление о пропуске срока исковой давности
.


С уважением,

Лариса Сабадаш

--
Дмитрий Князев
Отправлено из Почты Mail

--
Дмитрий Князев
Отправлено из Почты Mail

**2 attachments**

Case 2:25-bk-11635-NB-MBK Doc 140 Filed 03/23/26 Filed 05/07/06/23/26 17:51:45 Desc
Main Document Page 134 of 168

**Falsefication of evidence .pdf**
239K

**Missed deadline Statement.pdf**
236K

# EXHIBIT 6

AGREEMENT ON IDENTITY OF THE ARBITRATOR AND APPLICABLE REGULATIONS
"23" August 2012

This Agreement on Identity of the Arbiter and Applicable Regulations, hereinafter referred to as "Agreement", is entered into and becomes effective immediately upon execution by and among:

- **Agragorn Holdings Limited**, a limited liability company organized and registered under the laws of the British Virgin Islands, whose registered office is at Trident Chambers, Wickhams Cay, Road Town, Tortola, British Virgin Islands, hereinafter referred to as "Agragorn",
- **Golden Spirits Limited**, a limited liability company organized and registered under the laws of the Isle of Jersey, Channel Island, whose registered office is at 43 La Motte Street, St. Helier, Isle of Jersey JE4 8SD, Channel Island hereinafter referred to as "Golden Spirits",
- **AFB Trading One, Inc.**, a company organized, registered, and incorporated under the laws of the State of California, USA, whose registered office is at 8501 Wilshire Blvd., Suite 330, Beverly Hills, California, 90211 USA hereinafter referred to as "AFB",
- **Golden Sphinx Limited**, a limited liability company organized and registered under the laws of the Isle of Jersey, Channel Island, whose registered office is at 43 La Motte Street, St. Helier, Isle of Jersey JE4 8SD, Channel Island hereinafter referred to as "Golden Sphinx"

collectively hereinafter referred to as "Parties"

RECITALS:

I. Golden Spirits is indebted to Agragorn under a Loan Agreement dated April 20 2010 hereinafter referred to as "Loan Agreement".

II. On August 23 2012 loan modification and forbearance agreement was executed and entered into by Parties, hereinafter referred to as "Loan Modification and Forbearance Agreement".

III. On August 23 2012 corporate guarantee was executed and entered into by AFB, irrevocably and unconditionally guarantying to Agragorn punctual and faithful performance by Golden Spirits of all its obligations stipulated and agreed upon in Loan Modification and Forbearance Agreement, hereinafter referred to as "AFB Corporate Guarantee".

IV. On August 23 2012 corporate guarantee was executed and entered into by Golden Sphinx, irrevocably and unconditionally guarantying to Agragorn punctual and faithful performance by Golden Spirits of all its obligations stipulated and agreed upon in Loan Modification and Forbearance Agreement, hereinafter referred to as "Golden Sphinx Corporate Guarantee".

NOW, THEREFORE, in consideration of the foregoing and Agragorn entering into the Loan Modification and Forbearance Agreement, Parties hereby do unconditionally and irrevocably agree as follows:

1. Based upon arbitration agreement contained in
    a. paragraph 12(f) of Loan Modification and Forbearance Agreement,
    b. paragraph 5.7 of AFB Corporate Guarantee, and
    c. paragraph 5.7 of Golden Sphinx Corporate Guarantee
all containing agreements that any and all disputes, disagreements, controversy, or claim which may arise out of or in connection with agreements I – IV above, shall be resolved and finally settled by sole arbiter, whose identity is hereby agreed upon in paragraph 2 of this Agreement, by ad hoc arbitration procedure.

2. Juris Doctor Dmitry Valerievich Knyazev, hereinafter referred to as "Arbitrator" or "Judge", is hereby appointed to serve as sole arbiter pursuant this agreement and arbitration agreement contained in paragraphs 1(a). – 1(c) above. Mr. Knyazev was born on May 19, 1981, he is a qualified lawyer, graduated from the Specialized Institute of Jurisprudence of Moscow, works as the chief legal adviser of the State Educational Institution of Higher Professional Education, Kosygin Moscow State Textile University, mailing address: Russian Federation 119071, Moscow, 1 Malaya Kaluzhskaya street, Citizen of the Russian Federation, email address - ag99@list.ru, telephone +79262226184.

3. any and all disputes, disagreements, controversy or claim which may arise out of, in connection with, or relating to the above agreements I – IV, including but not limited to their entering into force, execution, alteration, violation, breach, termination or validity thereof, shall be resolved and finally settled by ad hoc arbitration conducted by Arbitrator in accordance with UNCITRAL Arbitration Rules and Principles, under authority of the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation, hereinafter referred to as "ICAC". Upon request of any Party or Arbitrator, ICAC will provide organizational assistance services to the arbitration, in accordance with its administrative ad hoc arbitration rules and procedures under the UNCITRAL Arbitration Rules, including performance of the following functions:
    a. effecting service of documents to the Parties and the Arbitrator;
    b. assisting the arbitral tribunal in determining the date, time and place of the hearing of the case and effecting service of advance notice to the parties of the hearing;
    c. providing premises for the hearing of the case and meetings of the arbitral tribunal;
    d. performing legal secretarial duties, court reporter's and translator services;
    e. witnessing, certifying, and authenticating signatures on any documents, including but not limited to Arbitrator signature on the award, with the seal of the ICAC and the signature of its executive secretary;
    f. providing any other assistance services, to the extent possible.

4. an arbitral award rendered by Arbitrator shall be final. Parties hereby do waive any right to appeal or otherwise challenge the award of the arbitrator.

5. no Party shall submit a complaint or motion to a state court to adjudicate lack of jurisdiction of an arbitral tribunal in connection with the issuance by the arbitral tribunal of a separate order on existence of jurisdiction as a matter of preliminary nature.

6. no consideration by any state court of issues on challenges of arbitrators or termination of their powers on any grounds shall not be allowed.

7. dispute resolution, at the option of the plaintiff, can take place solely on the basis of written materials provided by the parties, without necessarily holding an oral hearing and calling the parties. Participation of the parties and the Arbitrator in meetings is allowed via electronic video conference, for instance SKYPE.

8. the proceedings will be conducted in Moscow, Russian Federation, in Russian language and in accordance with laws and regulations of Russian Federation.

9. Arbitrator shall determine the existence and scope of the agreement to arbitrate, and shall be authorized to issue any award, monetary or non-monetary, to effectuate their decision, to the maximum extent possible.

10. any award from the arbitrator may be entered in any jurisdiction where any of the parties are located, where they may have assets, or where entry of the award as a judgment may assist a party in enforcing the award or judgment thereon.

11. the writ of execution is to be issued at the place of arbitration or any jurisdiction where any of the parties are located, where they may have assets, or where entry of the award as a judgment may assist a party in enforcing the award or judgment thereon.

12. any Party may immediately demand arbitration, without any conditions precedent, which demand may be served by electronic means (such as email) on defendant and/or their counsel.

13. the cost of the arbitration will be split 50/50.

14. the arbitrator shall award costs and attorney's fees to the prevailing party.

15. should defendant fail or refuse to submit to or participate in an arbitration once that arbitration is initiated, the arbitrator may move forward to a hearing on the merits without the participation of the non-participating party, without the participating party first-moving to compel arbitration, so long as the party demanding arbitration pays the costs of that arbitration and gives notice of all proceedings to the non-participating party and/or the non-participating party's counsel.

16. to the fullest extent permitted by applicable law, Parties hereby waive their respective rights to a trial by jury of any claim or cause of action based upon or arising out of or related agreements I – IV above, the documents executed in connection herewith, or the transactions contemplated hereby or thereby, in any action, proceeding or other litigation of any type brought by any of the parties against any other party, whether with respect to contract claims, tort claims, or otherwise.

17. it is allowed to exchange copies of this agreement, annexes and addendums, signed by each party, scanned and sent to the other party at the email addresses specified in section 18 of this agreement, thereby recognizing these documents as in-force and legally binding. Additionally, parties also recognize all other documents, including but not limited to notifications and claims as duly served when sent to each other in electronic form to the e-mail addresses specified in section 18 of this agreement. The persons authorized to conduct correspondence on behalf of Parties are indicated in section 18 of this agreement. Each party bears the risk of failing to notify other parties of changes of their address, both physical and email. If a party avoids receiving a notification sent by the other party, the notification is considered received after 6 calendar days from the moment it was sent.

18. any and all notices, requests, demands or other communications to the respective parties hereto shall be in writing and shall be delivered by hand, by internationally recognized overnight courier (e.g., FedEx or DHL), by facsimile or by email at their respective addresses set forth herein. The addresses of the parties hereto (until notice of a change thereof is served as provided in this Section 5.2) shall be as follows:

- **Agragorn Holdings Limited**
  Trident Chambers, Wickhams Cay,
  Road Town, Tortola,
  British Virgin Islands

- **AFB Trading One, Inc.**,
  C/O Garry Itkin
  Email: itkin1@aol.com
  Phone: (310) 657-7711
  8501 Wilshire Blvd., Suite 330,
  Beverly Hills, California, 90211
  USA

- **Golden Spirits Limited**
  43 La Motte Street,
  St. Helier,
  Isle of Jersey JE4 8SD, Channel
  Island

- **Golden Sphinx Limited**
  43 La Motte Street,
  St. Helier,
  Isle of Jersey JE4 8SD, Channel
  Island

19. if any provision of this Agreement is for any reason held to be invalid, illegal or unenforceable in any respect, that provision shall not affect the validity, legality or enforceability of any other provision of this Guaranty.
20. this Agreement shall bind the heirs, administrators, executors, representatives, successors and assigns of Parties, and shall inure to the benefit of the successors and assigns of the Parties.
21. this agreement becomes effective and in full force and effect immediately upon its execution.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

_____
Agragorn Holdings Limited
By: Imperial Nominees Limited
Title: Sole Director

Golden Spirits Limited
By: Garry Itkin
Title: Sole director and officer

AFB Trading One, Inc
By: Garry Itkin
Title: President, Chief Executive Officer,
Secretary

Golden Sphinx Limited
By: Garry Itkin
Title: Sole director and officer

# EXHIBIT 2

Case 2:25-cv-11869-JFW-MBK Doc 140 Document Filed 06/23/26 Entered 05/06/23/2017 12:45:12 Page Desc
Main Document ID#:16 Page 141 of 168

Joseph M. Kar (SBN 207414)
jkar@civillegal.com
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite PH-1220
Sherman Oaks, CA 91403
Telephone: (818) 501-6930
Facsimile: (818) 501-6935

**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH,
GRANT, ASSIGNEE AND SUCCESSOR OF
DAVILLA INVESTING LIMITED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual<br><br>Petitioner,<br><br>v.<br><br>AFB TRADING ONE, INC., a California Corporation;<br><br>Respondents. | Case No.: 2:25-cv-11869-JFW (MBKx)<br><br>**DECLARATION OF DMITRY VALERYEVICH KNYAZEV RE: RESPONSE TO DOCKET NOS. 49 AND 50 AND EXHIBITS A TO C HERETO**<br><br>Judge: Honorable John F. Walter<br>Ctrm: 7A<br><br>[9 U.S.C. § 207]<br><br>**Trial: Not set** |

1

DECLARATION OF DMITRY VALERYEVICH KNYAZEV RE: RSP TO DKT#49 AND 50

I, Dmitry Valeryevich Knyazev, declare as follows:

I am duly authorized to practice law in the Russian Federation and am authorized and practice as an arbitrator in the Russian Federation. I have personal knowledge of the facts stated herein, except where I expressly indicate that a statement is based upon my review of public records or information in the arbitration file. If called as a witness, I could and would testify competently to the facts stated in this declaration.

This declaration is made in response to submissions made on 23 March 2026 by and on behalf of Respondent AFB Trading One, Inc. This signed declaration and its attachments/exhibits are provided with my original signature and authenticates its attachments and exhibits.

International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation (ICAC at the RF CCI; Russian abbreviation: MKAS) is an independent permanent arbitration institution located in Moscow, Russia. ICAC is the leading arbitration institution in Russia and in East European countries which deals with resolving disputes of international nature. It is the successor to Foreign Trade Arbitration Commission which was created in 1932. Thus, in 2022 ICAC is celebrating its 90th anniversary. (https://mkas.tpprf.ru/en/)

The US court has recognized and enforced three arbitral awards issued by the ICAC at the RF CCI against a US company. As recent as January 2026 The US District Court for the District of Columbia granted a petition to recognize and enforce three awards issued by the International Commercial Arbitration Court (ICAC) at the Russian Chamber of Commerce and Industry of the Russian Federation (RF CCI) against a US company, reaffirming the application of the 1958 UN Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention). Satoriagricultural Consultancy and Projects Management LLC vs T&R Productions LLC (https://mkas.tpprf.ru/en/news/the-us-court-has-recognized-and-enforced-three-arbitral-awards-issued-by-the-icac-at-the-rf-cci-agai-i595490/).

The ICAC administers international commercial arbitrations. Pursuant to an agreement of the parties, the following disputes may be referred to the ICAC: disputes resulting from contractual and other civil law relationships arising in the course of foreign trade and other forms of international economic relations, including  disputes involving individuals, provided that the place of business of at least one of the parties is situated abroad or any place where the significant part of obligations arising out of relationships between the parties is to be performed, or the place with which the subject matter of the dispute is most closely connected is located abroad, and also disputes relating to foreign investments in the territory of the Russian Federation or Russian investments abroad.

The ICAC may also administer arbitrations of internal, corporate and sports disputes.

Apart from that, the ICAC performs certain functions on administering *ad hoc* arbitration. An arbitration agreement is a prerequisite for application to the ICAC. It may be included in a contract as one of its clauses or concluded, also subsequently, in the form of a separate agreement to resolve a dispute which has already arisen. The ICAC also administers disputes subject to its jurisdiction by virtue of international treaties or federal laws of the Russian Federation. (https://mkas.tpprf.ru/en/kompetentsiya/).

The Presidium of the ICAC consists of the President of the ICAC, his Vice Presidents for relevant types of disputes, six persons from the Lists of Arbitrators elected at the General Meeting of Arbitrators for a six-year period, as well as three persons appointed by the President of the Chamber of Commerce and Industry of the Russian Federation. The ICAC President shall act as the Chairman of the Presidium. The ICAC Presidium analyses and reviews arbitration practice, reviews issues related to dissemination of information about the activities of the

ICAC, joinder and consolidation of arbitral proceedings, prolongation of their terms, determines the ICAC international policy and considers other matters of the ICAC activity. (https://mkas.tpprf.ru/en/presidium/)

I now turn to the letter purportedly signed by the secretary of ICAC (Exhibit A):

1.  The letter is neither produced to this Court in original nor as duly certified copy thereof, confirmed by Apostille. Therefore, authenticity and genuineness are in question
2.  The letter is produced by ICAC department of Internal, sports disputes, as evident from the letterhead. This department is **not** involved with contractual and other civil law relationships arising in the course of foreign trade and other forms of international economic relations. The ICAC department of Internal, sports disputes would not be correct department to provided administrative or logistical support to the ad hoc arbitration involving 2021 or 2025 awards. The case number 1800-4/1301 should not be registered in ICAC department of Internal, sports disputes.
3.  In fact on 31 May 2021 I have applied to the Presidium of the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation (ICAC) within the framework of *ad hoc* arbitration proceedings for the resolution of a specific international commercial dispute with Request for Assistance in the Administration of an International Commercial Arbitration (Exhibit B).
4.  I have paid required fees and duties, including payment of VAT (Exhibit C).
5.  ICAC Chairman A.A. Kostin has approved and had every right to approve my Arbitration Award dated August 31, 2021, in his capacity of President of the ICAC. Secretary's signature to approve awards is not at all required.
6.  My Arbitration Award dated August 31, 2021, bears seal of the Chamber of Commerce and Industry of the Russian Federation (CCI RF), and true signature of ICAC Chairman A.A. Kostin, as evidenced by submitted apostilled documents.

I declare the foregoing is true and correct under the laws for penalty of perjury in the State of California and United States. Executed this 30 day of April, 2026

Dmitry Valeryevich Knyazev

# Exhibit A

Tatiana Hay Interpreting Services
Cherry Hill, NJ 08034
tatianahay.com

DOCUMENT TRANSLATION FROM RUSSIAN INTO ENGLISH

## THE INTERNATIONAL COMMERCIAL ARBITRATION COURT AT THE CHAMBER OF COMMERCE AND INDUSTRY OF THE RUSSIAN FEDERATION



Founded in 1932
Member of the International
Federation of Commercial
Arbitration Institutions (IFCAI)

№____1800-M-____/914

*March 23, 2026*

***Return Receipt Requested***

**Trubina D. B., Esq.**
Kutuzovskaya Bar Association
tel. 8-965-764-13-60
daryatrubina@yandex.ru

Response to legal inquiry № 94 dated March 17, 2026

In connection with your inquiry regarding the ad hoc arbitration proceedings involving AFB Trading One, Inc., Golden Spirits Limited, Golden Sphinx Limited, Davilla Investing Limited, as well as the decisions rendered by arbitrator Dmitry Valeryevich Knyazev in 2021 and 2025, we hereby advise as follows:

The International Commercial Arbitration Court (ICAC) at the Chamber of Commerce and Industry of the Russian Federation (CCI RF) is a permanent arbitration institution.

Pursuant to the Law of the Russian Federation No. 5338-1, dated July 7, 1993, "On International Commercial Arbitration" and Federal Law No. 382-FZ, dated December 29, 2015, "On Arbitration (Arbitral Tribunals) in the Russian Federation", ICAC is authorized to act as a competent (appointing) authority and to provide administrative, organizational, and logistical support to arbitration proceedings in accordance with the Rules governing ICAC's performance of certain functions related to administration of arbitration proceedings conducted by arbitral tribunals formed by the parties to resolve specific disputes (ad hoc Arbitration), as set forth in Appendix No. 8 to Order No. 6 of the CCI RF, dated January 10, 2017.

ICAC has never, at any time, including in 2021 or 2025, provided administrative or logistical support to the ad hoc arbitration involving the parties and arbitrator D.V. Knyazev, referenced in your request.

We also inform you that the case number 1800-4/1301 referenced in your inquiry does not correspond to the numbering or abbreviation system used by ICAC, including for ad hoc arbitrations, and is not found in ICAC case registry.

D.V. Knyazev has never been listed in the ICAC arbitrator registry approved by the CCI RF, nor has he participated in ICAC arbitration proceedings as an appointed external (non-listed) arbitrator, including in cases where ICAC acted as a competent authority and provided support to ad hoc arbitrations.

Mailing address. Bldg. 1, 6/1, Ilyinka Street
Moscow, 109012, Russia
**International, corporate disputes:**
Tel. (495) 620-00-07, 620-01-71, 620-04-60
E-mail imkac_arbitration@tpprf.ru

**Internal, sports disputes:**
Tel: (495) 620-01-49, 620-00-89
E-mail sts@tpprf.ru
Website mkas.tpprf.ru

1

Tatiana Hay Interpreting Services
Cherry Hill, NJ 08034
tatianahay.com

### DOCUMENT TRANSLATION FROM RUSSIAN INTO ENGLISH

We further inform you that ICAC Chairman A.A. Kostin has never approved, and could not have approved, the decision you submitted dated August 31, 2021, because, under the ICAC Rules for Administering ad hoc Arbitrations, the ICAC Chairman is not authorized to approve decisions issued by an arbitral tribunal.

Under these Rules, the only action permitted is the authentication of arbitrators' signatures on an arbitration award, which is carried out by the ICAC seal and the signature of the executive secretary.

In light of the foregoing, we inform you that the copy of the decision you submitted dated August 31, 2021, bears a forged seal of the Chamber of Commerce and Industry of the Russian Federation (CCI RF), a falsified signature of ICAC Chairman A.A. Kostin, and a non-existent ICAC case number under the CCI RF system.

Respectfully,
ICAC Executive Secretary          [Signature] V.A. Frolochkin
*Prepared by O.V. Golovina, tel. 7(495)620-01-91, golovina.ov@tpprf.ru*

ROUND SEAL:      INTERNATIONAL COURT OF COMMERCIAL ARBITRATION AT THE CHAMBER OF COMMERCE AND INDUSTRY OF THE RUSSIAN FEDERATION

### END OF DOCUMENT

2

Одновременно сообщаем, что Председатель МКАС А.А. Костин никогда не согласовывал и не мог согласовать представленное Вами Решение от 31.08.2021 г., так как согласно Правилам по оказанию МКАС отдельных функций по администрированию арбитража AD HOC Председатель МКАС не наделен полномочием по согласованию выносимых третейским судом решений.

В соответствии с данными Правилами возможно лишь удостоверение подписей арбитров на арбитражном решении, которое производится печатью МКАС и подписью его Ответственного секретаря.

Учитывая вышеизложенное, информируем, что на представленной Вами копии Решения от 31.08.2021 содержится подложная печать Торгово-промышленной палаты Российской Федерации, поддельная подпись Председателя МКАС А.А. Костина, с несуществующей нумерацией дел МКАС при ТПП РФ.

С уважением,
Ответственный секретарь МКАС
Исп. О.В. Головина, тел. 7(495)620-01-91, golovina.ov@tpprf.ru

В.А. Фролочкин

**МЕЖДУНАРОДНЫЙ КОММЕРЧЕСКИЙ АРБИТРАЖНЫЙ СУД
ПРИ ТОРГОВО-ПРОМЫШЛЕННОЙ ПАЛАТЕ РОССИЙСКОЙ ФЕДЕРАЦИИ**

**THE INTERNATIONAL COMMERCIAL ARBITRATION COURT AT THE CHAMBER
OF COMMERCE AND INDUSTRY OF THE RUSSIAN FEDERATION**

| | | |
|---|---|---|
| Основан в 1932 году<br>Член Международной федерации<br>коммерческих арбитражных институтов<br>(МФКАИ) |  | Founded in 1932<br>Member of the International Federation<br>of Commercial Arbitration Institutions<br>(IFCAI) |

№ _____ 1800-М-_*1914*_                           «*23*»  _____*03*_____  20*26*г.

*С уведомлением о вручении*

> **Адвокату Трубиной Д.Б.**
> Коллегия адвокатов «Кутузовская»
> тел. 8-965-764-13-60
> daryatrubina@yandex.ru

Ответ на адвокатский запрос  № 94 от 17.03.2026

В связи с Вашим запросом относительно арбитражных разбирательств AD HOC с участием компаний ЭйЭфБи Трейдинг Уан, Инк. (AFB Trading One, Inc.), Голден Спиритс Лимитед (Golden Spirits Limited), Голден Сфинкс Лимитед (Golden Sphinx Limited), Давилла Инвестинг Лимитед (Davilla Investing Limited), а также судебных актов, вынесенных арбитром Князевым Дмитрием Валерьевичем в 2021 и в 2025 годах, сообщаем следующее.

Международный коммерческий арбитражный суд (МКАС) при Торгово-промышленной палате Российской Федерации (ТПП РФ) является постоянно действующим арбитражным учреждением.

В соответствии с Законом Российской Федерации от 7 июля 1993 года № 5338-1 «О международном коммерческом арбитраже» и Федеральным законом от 29 декабря 2015 года № 382-ФЗ «Об арбитраже (третейском разбирательстве) в Российской Федерации» МКАС вправе действовать в качестве компетентного (назначающего органа) и оказывать организационное и материально-техническое содействие арбитражным разбирательствам на основании Правил по оказанию МКАС отдельных функций по администрированию арбитража, осуществляемого третейским судом, образуемым сторонами для разрешения конкретного спора (Арбитраж AD HOC) (Приложение 8 к Приказу  ТПП РФ № 6 от 10.01.2017 г.).

При этом МКАС никогда (в том числе ни в 2021 году, ни в 2025 году) не оказывал организационного и материально-технического содействия арбитражу AD HOC с участием названных в Вашем запросе сторон и арбитра Д.В. Князева.

Также сообщаем, что указанный в Вашем запросе номер дела 1800-4/1301 не соответствует нумерации и аббревиатуре, присваиваемым делам МКАС, в том числе при арбитраже AD HOC, и отсутствует в картотеке дел МКАС.

Гражданин Князев Д.В. никогда не включался в утверждаемые ТПП РФ списки арбитров МКАС, а также не участвовал в арбитражных разбирательствах МКАС в качестве назначенного стороннего (несписочного) арбитра, в том числе при выступлении МКАС в качестве компетентного органа и оказании содействия арбитражу AD HOC.

Почтовый адрес: 109012, г. Москва, ул. Ильинка, д. 6/1, стр. 1
**Международные, корпоративные споры:**
Телефоны: +7 (495) 620-00-07, 620-01-71, 620-04-60
Эл. почта: mkac_arbitration@tpprf.ru
**Внутренние, спортивные споры:**
Телефоны: +7 (495) 620-01-49, 620-00-89
Эл. почта: sts@tpprf.ru
Интернет-сайт: mkas.tpprf.ru

Post address: bld. 1, 6/1, Ilyinka street, Moscow, 109012, Russia
**International, corporate disputes:**
Telephones: +7 (495) 620-00-07, 620-01-71, 620-04-60
E-mail: mkac_arbitration@tpprf.ru
**Internal, sports disputes:**
Telephones: +7 (495) 620-01-49, 620-00-89
E-mail: sts@tpprf.ru
Web-site: mkas.tpprf.ru

# Exhibit B

В Президиум Международного коммерческого арбитражного суда при Торгово-промышленной палате Российской Федерации (МКАС)

в рамках арбитражной процедуры AD HOC для разрешения конкретного международного коммерческого спора

от Князева Дмитрия Валерьевича, единый арбитр (судья), выбранный и согласованный сторонами

**МКАС при ТПП РФ**
ПОЛУЧЕНО С НАРОЧНЫМ в 1 экз.
Юлашенко С.В.
«31» 05 2021 г.

### Обращение об оказании содействия

по администрированию арбитража международного коммерческого спора

Правилами по оказанию Международным Коммерческим Арбитражным Судом при Торгово-промышленной палате РФ отдельных функций по администрированию арбитража, осуществляемого Третейским судом, образуемым сторонами для разрешения конкретного спора (АРБИТРАЖ AD HOC) прошу оказать организационное содействие арбитражному разбирательству, по иску ДавиллаИнвестинг Лимитед (DavillaInvestingLimited) (далее также – истец) к Голден СпирнтсЛиитед (GoldenSpiritsLimited) (далее также – Ответчик 1), ЭйЭфБиТрейдингУан, Инк (AFB TradigOne.Inc.) (далее также – Ответчик 2), Голден Сфинкс Лимитед (GoldenSphinxLimited) (далее также – Ответчик 3), АграгорнХолдингс Лимитед (AgragornHoldingsLimited) (далее также – Третье лицо) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.Данный спор возник из Договора займа от 20 апреля 2010г. заключенного между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Компанией Голден СпиритсЛиитед (GoldenSpiritsLimited), Соглашения об изменении и отсрочке долга от 23 августа 2012г. заключенного между Компанией АграгорнХолдиигс Лимитед (AgragornHoldingsLimited) и Компанией Голден СпиритсЛиитед (GoldenSpiritsLimited), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и ЭйЭфБиТрейдингУан, Инк.(AFB TradigOne.Inc.), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Голден Сфинкс Лимитед (GoldenSphinxLimited), Соглашения по передаче прав по Договору займа от 07 сентября 2020г., заключенного между Компаиией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Компанией ДавиллаИнвестинг Лимитед (DavillaInvestingLimited); 20 апреля 2010г. Компания АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Компания Голден СпиритеЛиитед (GoldenSpiritsLimited) заключили договор займа. В соответствии с условиями данного договора Третье лицо предоставило заемщику в долг денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США. В соответствии с п.4.1. договора займа Ответчик 1 должен был вернуть заем не позднее двух лет с момента предоставления займа и в соответствии с п.4.2 договора займа уплатить 1,1% годовых с суммы займа. 21.04.2010г. Третье лицо перевел Ответчику 1 денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США и уплатил комиссию за перевод в размере 268,36 (Двести шестьдесят восемь) долларов США. Таким образом, в полном объеме выполнил обязательства по договору займа. Обязанность по возврату суммы займа и процентов по займу Ответчиком 1 выполнены не были в полном объеме. 23 августа 2012г. Третье лицо и Ответчик 1 заключили соглашение об изменении и отсрочке долга. В соответствии с данным соглашением стороны продлили срок исполнения

# Exhibit C

Case 2:25-bk-16235-FMB Doc 140 Filed 06/23/26 Entered 06/23/26 17:12:45 Desc
Main Document Page 151 of 168

26.05.2021

Поступ. в банк плат.  Списано со сч. плат.

0401060

**ПЛАТЕЖНОЕ ПОРУЧЕНИЕ №  518**

26.05.2021
Дата

электронно
Вид платежа

| | |
|---|---|
| **Сумма прописью** | Семьдесят три тысячи пятьсот рублей  00 копеек |

| | | | |
|---|---|---|---|
| ИНН    0 | КПП | **Сумма** | 73 500-00 |

Селезнева И. Б. л/сч. 40817810906034044076 в ВТБ-Онлайн //141160 РОССИЯ 50 обл Московская п Звездный городок 62, 132//

**Плательщик**

| | |
|---|---|
| **Сч.N** | 40817810906034044076 |

Филиал № 7701 Банка ВТБ (публичное акционерное общество) в г. Москве

**Банк плательщика**

| | |
|---|---|
| **БИК** | 044525745 |
| **Сч.N** | 30101810345250000745 |

БАНК ВТБ (ПАО) г. Москва

**Банк получателя**

| | |
|---|---|
| **БИК** | 044525187 |
| **Сч.N** | 30101810700000000187 |

| | | | |
|---|---|---|---|
| ИНН    7710026920 | КПП | **Сч.N** | 40703810400000000229 |

ТПП России

| | | | | |
|---|---|---|---|---|
| **Вид оп.** | 1 | **Срок. плат.** | | |
| **Назн. пл.** | | **Очер. плат.** | 5 | |
| **Код** | | **Рез. поле** | | |

**Получатель**

Перевод от клиента ВТБ: Ирина С.: Госпошлина, в том числе НДС

**Назначение платежа**

Подписи                    Отметки банка

Банк ВТБ (ПАО) г. Москва
БИК 044525745
К/С 30101810345250000745

**ИСПОЛНЕНО**
**26.05.2021**

# Exhibit A

Tatiana Hay Interpreting Services
Cherry Hill, NJ 08034
tatianahay.com

DOCUMENT TRANSLATION FROM RUSSIAN INTO ENGLISH

## THE INTERNATIONAL COMMERCIAL ARBITRATION COURT AT THE CHAMBER OF COMMERCE AND INDUSTRY OF THE RUSSIAN FEDERATION



Founded in 1932
Member of the International
Federation of Commercial
Arbitration Institutions (IFCAI)

№____1800-M-____/914

*March 23, 2026*

*Return Receipt Requested*

**Trubina D. B., Esq.**
Kutuzovskaya Bar Association
tel. 8-965-764-13-60
daryatrubina@yandex.ru

Response to legal inquiry № 94 dated March 17, 2026

In connection with your inquiry regarding the ad hoc arbitration proceedings involving AFB Trading One, Inc., Golden Spirits Limited, Golden Sphinx Limited, Davilla Investing Limited, as well as the decisions rendered by arbitrator Dmitry Valeryevich Knyazev in 2021 and 2025, we hereby advise as follows:

The International Commercial Arbitration Court (ICAC) at the Chamber of Commerce and Industry of the Russian Federation (CCI RF) is a permanent arbitration institution.

Pursuant to the Law of the Russian Federation No. 5338-1, dated July 7, 1993, "On International Commercial Arbitration" and Federal Law No. 382-FZ, dated December 29, 2015, "On Arbitration (Arbitral Tribunals) in the Russian Federation", ICAC is authorized to act as a competent (appointing) authority and to provide administrative, organizational, and logistical support to arbitration proceedings in accordance with the Rules governing ICAC's performance of certain functions related to administration of arbitration proceedings conducted by arbitral tribunals formed by the parties to resolve specific disputes (ad hoc Arbitration), as set forth in Appendix No. 8 to Order No. 6 of the CCI RF, dated January 10, 2017.

ICAC has never, at any time, including in 2021 or 2025, provided administrative or logistical support to the ad hoc arbitration involving the parties and arbitrator D.V. Knyazev, referenced in your request.

We also inform you that the case number 1800-4/1301 referenced in your inquiry does not correspond to the numbering or abbreviation system used by ICAC, including for ad hoc arbitrations, and is not found in ICAC case registry.

D.V. Knyazev has never been listed in the ICAC arbitrator registry approved by the CCI RF, nor has he participated in ICAC arbitration proceedings as an appointed external (non-listed) arbitrator, including in cases where ICAC acted as a competent authority and provided support to ad hoc arbitrations.

Mailing address: Bldg. 1, 6/1, Ilyinka Street
Moscow, 109012, Russia
**International, corporate disputes:**
Tel.: (495) 620-00-07, 620-01-71, 620-04-60
E-mail: mkac_arbitration@tpprf.ru

**Internal, sports disputes:**
Tel: (495) 620-01-49, 620-00-89
E-mail: sts@tpprf.ru
Website: mkas.tpprf.ru

1

Tatiana Hay Interpreting Services
Cherry Hill, NJ 08034
tatianahay.com

DOCUMENT TRANSLATION FROM RUSSIAN INTO ENGLISH

We further inform you that ICAC Chairman A.A. Kostin has never approved, and could not have approved, the decision you submitted dated August 31, 2021, because, under the ICAC Rules for Administering ad hoc Arbitrations, the ICAC Chairman is not authorized to approve decisions issued by an arbitral tribunal.

Under these Rules, the only action permitted is the authentication of arbitrators' signatures on an arbitration award, which is carried out by the ICAC seal and the signature of the executive secretary.

In light of the foregoing, we inform you that the copy of the decision you submitted dated August 31, 2021, bears a forged seal of the Chamber of Commerce and Industry of the Russian Federation (CCI RF), a falsified signature of ICAC Chairman A.A. Kostin, and a non-existent ICAC case number under the CCI RF system.

Respectfully,
ICAC Executive Secretary                              [Signature] V.A. Frolochkin
*Prepared by O.V. Golovina, tel. 7(495)620-01-91, golovina.ov@tpprf.ru*

ROUND SEAL:          INTERNATIONAL COURT OF COMMERCIAL ARBITRATION AT THE
                     CHAMBER OF COMMERCE AND INDUSTRY OF THE RUSSIAN
                     FEDERATION

---

END OF DOCUMENT

2

Одновременно сообщаем, что Председатель МКАС А.А. Костин никогда не согласовывал и не мог согласовать представленное Вами Решение от 31.08.2021 г., так как согласно Правилам по оказанию МКАС отдельных функций по администрированию арбитража AD HOC Председатель МКАС не наделен полномочием по согласованию выносимых третейским судом решений.

В соответствии с данными Правилами возможно лишь удостоверение подписей арбитров на арбитражном решении, которое производится печатью МКАС и подписью его Ответственного секретаря.

Учитывая вышеизложенное, информируем, что на представленной Вами копии Решения от 31.08.2021 содержится подложная печать Торгово-промышленной палаты Российской Федерации, поддельная подпись Председателя МКАС А.А. Костина, с несуществующей нумерацией дел МКАС при ТПП РФ.

С уважением,
Ответственный секретарь МКАС
*Исп. О.В. Головина, тел. 7(495)620-01-91, golovina.ov@tpprf.ru*

В.А. Фролочкин

МЕЖДУНАРОДНЫЙ КОММЕРЧЕСКИЙ АРБИТРАЖНЫЙ СУД
ПРИ ТОРГОВО-ПРОМЫШЛЕННОЙ ПАЛАТЕ РОССИЙСКОЙ ФЕДЕРАЦИИ

THE INTERNATIONAL COMMERCIAL ARBITRATION COURT AT THE CHAMBER
OF COMMERCE AND INDUSTRY OF THE RUSSIAN FEDERATION



| Основан в 1932 году | Founded in 1932 |
| Член Международной федерации коммерческих арбитражных институтов (МФКАИ) | Member of the International Federation of Commercial Arbitration Institutions (IFCAI) |

№ _1800-M-_*1914*                          «23»   03   2026 г.

С уведомлением о вручении

**Адвокату Трубиной Д.Б.**
Коллегия адвокатов «Кутузовская»
тел. 8-965-764-13-60
daryatrubina@yandex.ru

Ответ на адвокатский запрос № 94 от 17.03.2026

В связи с Вашим запросом относительно арбитражных разбирательств AD HOC с участием компаний ЭйЭфБи Трейдинг Уан, Инк. (AFB Trading One, Inc.), Голден Спиритс Лимитед (Golden Spirits Limited), Голден Сфинкс Лимитед (Golden Sphinx Limited), Давилла Инвестинг Лимитед (Davilla Investing Limited), а также судебных актов, вынесенных арбитром Князевым Дмитрием Валерьевичем в 2021 и в 2025 годах, сообщаем следующее.

Международный коммерческий арбитражный суд (МКАС) при Торгово-промышленной палате Российской Федерации (ТПП РФ) является постоянно действующим арбитражным учреждением.

В соответствии с Законом Российской Федерации от 7 июля 1993 года № 5338-1 «О международном коммерческом арбитраже» и Федеральным законом от 29 декабря 2015 года № 382-ФЗ «Об арбитраже (третейском разбирательстве) в Российской Федерации» МКАС вправе действовать в качестве компетентного (назначающего органа) и оказывать организационное и материально-техническое содействие арбитражным разбирательствам на основании Правил по оказанию МКАС отдельных функций по администрированию арбитража, осуществляемого третейским судом, образуемым сторонами для разрешения конкретного спора (Арбитраж AD HOC) (Приложение 8 к Приказу ТПП РФ № 6 от 10.01.2017 г.).

При этом МКАС никогда (в том числе ни в 2021 году, ни в 2025 году) не оказывал организационного и материально-технического содействия арбитражу AD HOC с участием названных в Вашем запросе сторон и арбитра Д.В. Князева.

Также сообщаем, что указанный в Вашем запросе номер дела 1800-4/1301 не соответствует нумерации и аббревиатуре, присваиваемым делам МКАС, в том числе при арбитраже AD HOC, и отсутствует в картотеке дел МКАС.

Гражданин Князев Д.В. никогда не включался в утверждаемые ТПП РФ списки арбитров МКАС, а также не участвовал в арбитражных разбирательствах МКАС в качестве назначенного стороннего (несписочного) арбитра, в том числе при выступлении МКАС в качестве компетентного органа и оказании содействия арбитражу AD HOC.

Почтовый адрес: 109012, г. Москва, ул. Ильинка, д. 6/1, стр. 1
**Международные, корпоративные споры:**
Телефоны: +7 (495) 620-00-07, 620-01-71, 620-04-60
Эл. почта: mkac_arbitration@tpprf.ru
**Внутренние, спортивные споры:**
Телефоны: +7 (495) 620-01-49, 620-00-89
Эл. почта: sts@tpprf.ru
Интернет-сайт: mkas.tpprf.ru

Post address: bld. 1, 6/1, Ilyinka street, Moscow, 109012, Russia
**International, corporate disputes:**
Telephones: +7 (495) 620-00-07, 620-01-71, 620-04-60
E-mail: mkac_arbitration@tpprf.ru
**Internal, sports disputes:**
Telephones: +7 (495) 620-01-49, 620-00-89
E-mail: sts@tpprf.ru
Web-site: mkas.tpprf.ru

# Exhibit B

В Президиум Международного коммерческого арбитражного суда при Торгово-промышленной палате Российской Федерации (МКАС)

в рамках арбитражной процедуры AD HOC для разрешения конкретного международного коммерческого спора

от Князева Дмитрия Валерьевича, единый арбитр (судья), выбранный и согласованный сторонами

МКАС при ТПП РФ
ПОЛУЧЕНО С НАРОЧНЫМ в 1 экз
Юманешо С.В.
«31» 05 2021 г.

## Обращение об оказании содействия

по администрированию арбитража международного коммерческого спора

Правилами по оказанию Международным Коммерческим Арбитражным Судом при Торгово-промышленной палате РФ отдельных функций по администрированию арбитража, осуществляемого Третейским судом, образуемым сторонами для разрешения конкретного спора (АРБИТРАЖ AD HOC) прошу оказать организационное содействие арбитражному разбирательству, по иску ДавиллаИнвестинг Лимитед (DavillaInvestingLimited) (далее также – истец) к Голден СпиртсЛимитед (GoldenSpiritsLimited) (далее также – Ответчик 1), ЭйЭфБиТрейдингУан, Инк (AFB TradigOne.Inc.) (далее также – Ответчик 2), Голден Сфинкс Лимитед (GoldenSphinxLimited) (далее также – Ответчик 3), АграгорнХолдингс Лимитед (AgragornHoldingsLimited) (далее также – Третье лицо) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.Данный спор возник из Договора займа от 20 апреля 2010г. заключенного между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Компанией Голден СпиритсЛиитед (GoldenSpiritsLimited), Соглашения об изменении и отсрочке долга от 23 августа 2012г. заключенного между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Компанией Голден СпиритсЛиитед (GoldenSpiritsLimited), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и ЭйЭфБиТрейдингУан, Инк.(AFB TradigOne.Inc.), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Голден Сфинкс Лимитед (GoldenSphinxLimited), Соглашения по передаче прав по Договору займа от 07 сентября 2020г., заключенного между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Компанией ДавиллаИнвестинг Лимитед (DavillaInvestingLimited); 20 апреля 2010г. Компания АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Компания Голден СпиритсЛиитед (GoldenSpiritsLimited) заключили договор займа. В соответствии с условиями данного договора Третье лицо предоставило заемщику в долг денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США. В соответствии с п.4.1. договора займа Ответчик 1 должен был вернуть заем не позднее двух лет с момента предоставления займа и в соответствии с п.4.2 договора займа уплатить 1,1% годовых с суммы займа. 21.04.2010г. Третье лицо перевел Ответчику 1 денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США и уплатил комиссию за перевод вразмере 268,36 (Двести шестьдесят восемь) долларов США. Таким образом, в полном объеме выполнил обязательства по договору займа. Обязанности по возврату суммы займа и процентов по займу Ответчиком 1 выполнены не были в полном объеме. 23 августа 2012г. Третье лицо и Ответчик 1 заключили соглашение об изменении и отсрочке долга. В соответствии с данным соглашением стороны продлили срок исполнен

# M I K H A I L  B O G O M O L N Y
**TRANSLATION, NOTARY AND APOSTILLE SERVICES**

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

To the Presidium of the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation (ICAC)

In the arbitration proceedings of JSC NOC for resolution of a specific international commercial dispute

From Dmitry Valeryevich Knyazev, sole arbitrator (judge) selected and approved by the parties

ICAC at the CCI RF
RECEIVED WITH FEE PAID in the amount of
Romanenko S.V.
May 31, 2021

## Request for Assistance
### in administering the arbitration of an international commercial dispute

Under the Rules for the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation to perform certain functions in administering arbitration conducted by an arbitral tribunal formed by the parties to resolve a specific dispute (AD HOC ARBITRATION), regarding the organization of arbitration proceedings in the claim filed by DavillaInvesting Limited (DavillaInvestingLimited) (also referred to as the Claimant) against Golden Spirits Limited (GoldenSpiritsLimited) (also referred to as Respondent 1), AFB Trading Co. Inc. (AFB TradigOne.Inc.) (also referred to as Respondent 2), Golden Sphinx Limited (GoldenSphinxLimited) (also referred to as Respondent 3), Agragorn Holdings Limited (AgragornHoldingsLimited) (also referred to as Third Party), for recovery of debt under a loan agreement, agreements amending and deferring the debt, and corporate guarantees. This dispute arose from the Loan Agreement dated April 20, 2010, entered into by Agragorn Holdings Limited (AgragornHoldingsLimited) and Golden Spirits Limited (GoldenSpiritsLimited), the Agreement Amending and Deferring the Debt dated August 23, 2012, entered into by Agragorn Holdings Limited (AgragornHoldingsLimited) and Golden Spirits Limited (GoldenSpiritsLimited), the Corporate Guarantee dated August 23, 2012, entered into by Agragorn Holdings Limited (AgragornHoldingsLimited) and AFB Trading Co. Inc. (AFB TradigOne.Inc.), the Corporate Guarantee dated August 23, 2012, entered into by Agragorn Holdings Limited (AgragornHoldingsLimited) and Golden Sphinx Limited (GoldenSphinxLimited), the Assignment Agreement under the Loan Agreement dated September 7, 2020, entered into by Agragorn Holdings Limited (AgragornHoldingsLimited) and DavillaInvesting Limited (DavillaInvestingLimited). On April 20, 2010, Agragorn Holdings Limited (AgragornHoldingsLimited) and Golden Spirits Limited (GoldenSpiritsLimited) entered into a loan agreement. The Claimant provided the borrower with funds in the amount of 1,022,000 (one million twenty-two thousand) U.S. dollars as a loan. Under cl. 4.1 of the loan agreement, Respondent 1 was required to repay the loan no later than two years from the date the loan was provided and, under cl. 4.[illegible] of the loan agreement, pay

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**MIKHAIL BOGOMOLNY**
**TRANSLATION, NOTARY AND APOSTILLE SERVICES**

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

1.1% per annum on the loan amount. On April 21, 2010, the Claimant transferred funds to Respondent 1 in the amount of 1,022,000 (one million twenty-two thousand) U.S. dollars and paid a transfer fee in the amount of 268.36 (two hundred sixty-eight) U.S. dollars. Thus, the Claimant fully performed its obligations under the loan agreement. Respondent 1 failed to perform its obligation to repay the loan amount and interest on the loan in full. On August 23, 2012, the Claimant and Respondent 1 entered into an agreement amending and deferring the debt. Under that agreement, the parties extended the deadline for performing *[truncated]*

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# MIKHAIL BOGOMOLNY
## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG

E. MICHAEL@TRANSLATORPRO.ORG

P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

## CERTIFICATE OF TRANSLATION

*Translation from Russian into English*

I, MIKHAIL BOGOMOLNY, A **CERTIFIED COURT INTERPRETER (ID: 313218),** DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION, I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; THE TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**DOCUMENT DESCRIPTION**

*REQUEST FOR ASSISTANCE*
*IN ADMINISTERING THE ARBITRATION OF AN INTERNATIONAL*
*COMMERCIAL DISPUTE TO THE ICAC*



X _____

Mikhail Bogomolny

Translator

**Interpreter information:**

**Address: 16001 Ventura Blvd., Ste. 120,**

**Encino, CA 91436**

**Ph. 818-284-1884**

**Email: michael@translatorpro.org**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# Exhibit C

26.05.2021

_____     _____

Поступ. в банк плат.          Списано со сч. плат.

0401060

**ПЛАТЕЖНОЕ ПОРУЧЕНИЕ №** 518      _26.05.2021_      _электронно_      ☐

                                                    Дата                        Вид платежа

**Сумма прописью** | Семьдесят три тысячи пятьсот рублей  00 копеек

| ИНН | 0 | КПП | | **Сумма** | 73 500-00 |
|-----|---|-----|---|-----------|-----------|

Селезнева И. Б. л/сч. 40817810906034044076 в ВТБ-Онлайн //141160 РОССИЯ 50 обл Московская п Звездный городок 62, 132//

**Сч.N** 40817810906034044076

**Плательщик**

Филиал № 7701 Банка ВТБ (публичное акционерное общество) в г. Москве

**БИК** 044525745

**Банк плательщика**

**Сч.N** 30101810345250000745

БАНК ВТБ (ПАО) г. Москва

**БИК** 044525187

**Банк получателя**

**Сч.N** 30101810700000000187

| ИНН | 7710026920 | КПП | | **Сч.N** | 40703810400000000229 |
|-----|------------|-----|---|----------|------------------------|

ТПП России

| Вид оп. | 1 | Срок. плат. | |
|---------|---|-------------|---|
| Назн. пл. | | Очер. плат. | 5 |
| Код | | Рез. поле | |

**Получатель**

Перевод от клиента ВТБ: Ирина С.: Госпошлина, в том числе НДС

**Назначение платежа**

_____           _____

                  Подписи                        Отметки банка

Банк ВТБ (ПАО) г. Москва
БИК 044525745
К/С 30101810345250000745

**ИСПОЛНЕНО**
**26.05.2021**

# M I K H A I L   B O G O M O L N Y

### TRANSLATION, NOTARY AND APOSTILLE SERVICES

CERTIFIED COURT INTERPRETER

W. WWW.TRANSLATORPRO.ORG
E.  MICHAEL@TRANSLATORPRO.ORG
P.  1.818.284.1884

**0401060**

**05.26.2021**

_____

Date received by bank          Written off from payer's acct.

**PAYMENT ORDER No. 518**     **05/26/2021**     **electronic**

Date          Type of payment

| Amount in words | |
|---|---|
| Seventy-three thousand five hundred rubles 00 kopecks | |

**TIN** 0

| Payer | Amount |
|---|---|
| Selezneva I. B. personal acct. 40817810906034044076 with VTB Online 114 160 Russia, Moscow Region, Zvyozdny Gorodok, Bldg. 62, Apt. 132 | 73,500-00 |

**Acct. No.**

40817810906034044076

| Payer's Bank | BIC |
|---|---|
| VTB Bank Branch No. 7701 (Public Joint-Stock Company), Moscow | 044525745 |

**Correspondent Acct. No.**

30101810345250000745

| Recipient's Bank | BIC |
|---|---|
| VTB BANK (PJSC), Moscow | 044525187 |

**Correspondent Acct. No.**

30101810700000000187

**TIN** 7710026920

**Recipient Acct. No.**

40703810400000000229

**Recipient**

Chamber of Commerce and Industry of Russia

**Type of operation** 1

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# MIKHAIL BOGOMOLNY
## TRANSLATION, NOTARY AND APOSTILLE SERVICES

**W. WWW.TRANSLATORPRO.ORG**
**E. MICHAEL@TRANSLATORPRO.ORG**
**P. 1.818.284.1884**

*CERTIFIED COURT INTERPRETER*

| **Payment priority** | **5** |
|---|---|

| **Payment purpose** |
|---|
| Transfer from VTB client: Irina S. Gospolina, including VAT |

*Signature*        *Bank marks*

> **VTB Bank (PJSC), Moscow**
> **BIC 044525745**
> **Corr. acct. 30101810345250000745**
> **EXECUTED**
> **05/26/2021**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# MIKHAIL BOGOMOLNY

## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

# CERTIFICATE OF TRANSLATION

*Translation from Russian into English*

I, MIKHAIL BOGOMOLNY, A **CERTIFIED COURT INTERPRETER (ID: 313218)**, DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION, I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; THE TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**DOCUMENT DESCRIPTION**

*PAYMENT ORDER NO. 518*



X _____

Mikhail Bogomolny

Translator

**Interpreter information:**
**Address: 16001 Ventura Blvd., Ste. 120,**
**Encino, CA 91436**
**Ph. 818-284-1884**
**Email: michael@translatorpro.org**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 515 South Flower Street, 7th Floor, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*):**DECLARATIONS OF RUSSIAN ARBITRATOR DMITRY VALERYEVICH KYNAZEV IN OPPOSITION TO (1) PUTATIVE PARTNER ALEXANDER SABADASH'S MOTION FOR FEES AND DAMAGES, UNDER 11 U.S.C. § 303(I) (DOCKET NO. 90), AND (2) PUTATIVE PARTNER ALEXANDER SABADASH'S MOTION FOR FEES AND DAMAGES, UNDER 11 U.S.C. § 303(I) AND SANCTIONS UNDER FRBP 9011 AND THE COURT'S INHERENT AUTHORITY; (DOCKET NO. 91)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date* June 23, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Joseph E Caceres jec@locs.com, generalbox@locs.com
Daniel J McCarthy dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;dflowers@hfbllp.com
Kurt Ramlo Adam RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email
Charles Shamash cs@locs.com, generalbox@locs.com
Oleg Stolyar astolyar@loeb.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Michael Zorkin mz@thezorkinfirm.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 23, 2026 | Sonia Padilla | /s/ Sonia Padilla |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071