HILL, FARRER & BURRILL LLP
Daniel J. McCarthy (SBN 101081)
dmccarthy@hillfarrer.com
515 South Flower Street, 7th Fl.
Los Angeles, CA  90071-3147
Telephone: (213) 621-0802
Fax: (213)624-4840

Attorneys for Petitioning General Partner
Garry Y. Itkin and Daniel J. McCarthy, in pro per

CACERES & SHAMASH, LLP
Charles Shamash (SBN 178110)
cs@locs.com
Joseph E. Caceres (SBN 169164)
jec@locs.com
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212
Tel: (310) 205-3400
Fax: (310) 878-8308

Attorneys for Creditors and Joseph E. Caceres, in pro per

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:25-bk-11235-NB |
| ITKIN & SABADASH, | Chapter 7 |
| Involuntary Debtor. | **RESPONDING PARTIES' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO (1) PUTATIVE PARTNER ALEXANDER SABADASH'S MOTION FOR FEES AND DAMAGES, UNDER 11 U.S.C. § 303(I) (DOCKET NO. 90), AND (2) PUTATIVE PARTNER ALEXANDER SABADASH'S MOTION FOR FEES AND DAMAGES, UNDER 11 U.S.C. § 303(I) AND SANCTIONS UNDER FRBP 9011 AND THE COURT'S INHERENT AUTHORITY; (DOCKET NO. 91)**<br><br>Date: July 14, 2026<br>Time: 2:00 p.m.<br>Place: Courtroom 1545 |

-1-

**TO:    THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE, AND TO ALL PARTIES IN INTEREST AND THEIR ATTORNEYS OF RECORD:**

In response to the Supplemental Brief in Support of Motion for Sanctions under FRBP 9011 and the Court's Inherent Power" (docket 137) that was filed on June 16, 2026, and in opposition to (1) Putative Partner Alexander Sabadash's Motion for Fees and Damages, Under 11 U.S.C. § 303(I) (Docket No. 90), and (2) Putative Partner Alexander Sabadash's Motion for Fees and Damages, Under 11 U.S.C. § 303(i) and Sanctions Under FRBP 9011 and the Court's Inherent Authority, which are scheduled for continue hearing on July 14, 2026, responding parties Garry Y. Itkin, Daniel J. McCarthy and Joseph E. Caceres ("Responding Parties") respectfully request that the Court take judicial notice of the following documents from case no. 25-cv-11869-JFW (MBKx) before the United States District Court for the Central District of California (the "District Court action"), entitled *Aleksandr Aleksandrovich Grant, Assignee and Successor of Davilla Investing Limited v. AFB Trading One, Inc.*:

1.    The Case Docket in the District Court action.

2.    Minute Order dated April 21, 2026, docket no. 54.

3.    Petitioner's Amended Petition to Confirm Foreign Arbitral Awards and all attached documents, docket no. 58, filed May 27, 2026.

4.    Petitioner's Reply to Opposition to Amended Petition to Confirm Foreign Arbitral Awards; Memorandum of Points and Authorities (docket no. 71) and the Declaration of Joseph M. Kar attached thereto (docket no. 71-1), filed June 19, 2026.  This Request does not have attached Mr. Grant's response to Respondent's objections to evidence (docket no. 71-2) or his objections to nine declarations filed by Respondent AFB Trading One, Inc. (docket nos. 71-3 to 71-11).

/ /

/ /

/ /

/ /

/ /

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

DATED: June 23, 2026

HILL, FARRER & BURRILL LLP

By:  _/s/ Daniel J. McCarthy_
    Daniel J. McCarthy
Attorneys for Petitioning General Partner
GARRY Y. ITKIN, and Daniel J. McCarthy,
in pro per

CACERES & SHAMASH, LLP

By: _____
    Charles Shamash
Attorneys for Creditors and Joseph E. Caceres, in
pro per

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071

-3-

# EXHIBIT 1

ACCO,(MBKx),DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:25-cv-11869-JFW-MBK

| | |
|---|---|
| Aleksandr Aleksandrovich Grant v. AFB Trading One, Inc. | Date Filed: 12/16/2025 |
| Assigned to: Judge John F. Walter | Jury Demand: None |
| Referred to: Magistrate Judge Michael B. Kaufman | Nature of Suit: 896 Other Statutes: Arbitration |
| Demand: $2,774,000 | Jurisdiction: Federal Question |
| Cause: 09:0009 Petition to Confirm Arbitration Award | |

**Petitioner**

**Aleksandr Aleksandrovich Grant**
*Assignee and Successor of Davilla Investing*
*Limited, an individual*

represented by **Joseph M Kar**
Law Office of Joseph M Kar PC
15250 Ventura Boulevard, Suite PH-1220
Sherman Oaks, CA 91403
818-501-6930
Fax: 818-501-6935
Email: jkar@civillegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**AFB Trading One, Inc.**
*a California Corporation*

represented by **Michael Zorkin**
The Zorkin Firm
6320 Canoga Avenue Suite 1500
Woodland Hills, CA 91367
323-493-8075
Fax: 323-872-5251
Email: mz@thezorkinfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/16/2025 | 1 | PETITION *TO CONFIRM FOREIGN ARBITRAL AWARD* Receipt No: ACACDC-41109421 - Fee: $405, filed by Petitioner ALEKSANDR ALEKSANDROVICH GRANT. (Attachments: # 1 Declaration Declaration of Joseph M. Kar Esq in support and Exhibits 1 to 9 thereto, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Declaration Declaration of Aleksandr Grant) (Attorney Joseph M Kar added to party ALEKSANDR ALEKSANDROVICH GRANT(pty:pet))(Kar, Joseph) (Entered: 12/16/2025) |

| 12/16/2025 | 2 | CIVIL COVER SHEET filed by Petitioner ALEKSANDR ALEKSANDROVICH GRANT. (Kar, Joseph) (Entered: 12/16/2025) |
|---|---|---|
| 12/16/2025 | 3 | MEMORANDUM of Points and Authorities in Support filed by Petitioner ALEKSANDR ALEKSANDROVICH GRANT. *re: Petition to Confirm Foreign Aribitral Award* Re: Petition (Attorney Civil Case Opening),, 1 (Kar, Joseph) (Entered: 12/16/2025) |
| 12/16/2025 | 4 | CERTIFICATE of Interested Parties filed by Petitioner ALEKSANDR ALEKSANDROVICH GRANT, (Kar, Joseph) (Entered: 12/16/2025) |
| 12/16/2025 | 5 | REQUEST FOR JUDICIAL NOTICE *in support of Petition to Confirm Foreign Arbitral Award* filed by Petitioner ALEKSANDR ALEKSANDROVICH GRANT. (Kar, Joseph) (Entered: 12/16/2025) |
| 12/16/2025 | 6 | Request for Clerk to Issue Summons on Petition (Attorney Civil Case Opening),, 1 filed by Petitioner ALEKSANDR ALEKSANDROVICH GRANT. (Attachments: # 1 Summons)(Kar, Joseph) (Entered: 12/16/2025) |
| 12/26/2025 | 7 | NOTICE OF ASSIGNMENT to District Judge John F. Walter and Magistrate Judge Michael B. Kaufman. (mza) (Entered: 12/26/2025) |
| 12/26/2025 | 8 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (mza) (Entered: 12/26/2025) |
| 12/26/2025 | 9 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (mza) (Entered: 12/26/2025) |
| 12/26/2025 | 10 | 21 DAY Summons Issued re Petition (Attorney Civil Case Opening) 1 as to Defendant AFB Trading One, Inc.. (mza) (Entered: 12/26/2025) |
| 12/29/2025 | 11 | STANDING ORDER by Judge John F. Walter. READ THIS ORDER CAREFULLY. IT CONTROLS THE CASE AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES. This action has been assigned to the calendar of Judge John F. Walter. (iv) (Entered: 12/29/2025) |
| 12/29/2025 | 12 | DECLARATION of Joseph Kar, Esq. *re: lead counsel per Standing Order of December 29, 2025* filed by Petitioner Aleksandr Aleksandrovich Grant. (Kar, Joseph) (Entered: 12/29/2025) |
| 01/20/2026 | 13 | PROOF OF SERVICE Executed by Petitioner Aleksandr Aleksandrovich Grant, upon Respondent AFB Trading One, Inc. served on 1/14/2026, answer due 2/4/2026. Service of the Summons and Complaint were executed upon David Lopez, Security Guard in compliance with Federal Rules of Civil Procedure by substituted service on a domestic corporation, unincorporated association, or public entity and by also mailing a copy (Attachments: # 1 Summons with Proof of Serice (Executed))(Kar, Joseph) (Entered: 01/20/2026) |
| 01/27/2026 | 14 | STIPULATION for Hearing re Petition (Attorney Civil Case Opening),, 1 filed by Petitioner Aleksandr Aleksandrovich Grant. (Attachments: # 1 Proposed Order)(Kar, Joseph) (Entered: 01/27/2026) |
| 01/28/2026 | 15 | NOTICE of Appearance filed by attorney Michael Zorkin on behalf of Respondent AFB Trading One, Inc. (Attorney Michael Zorkin added to party AFB Trading One, Inc.(pty:res))(Zorkin, Michael) (Entered: 01/28/2026) |

| 01/28/2026 | 16 | DECLARATION of Michael Zorkin *of Lead Trial Counsel* filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 01/28/2026) |
|---|---|---|
| 02/17/2026 | 17 | ORDER ON STIPULATION RE: SERV ICE AND SETTING HEARING ON PETITION TO CONFIRM Foreign Arbitral Award 14 by Judge John F. Walter. IT IS FURTHER ORDERED that the date, time and place, for the petition hearing shall be on is March 30, 2026 at 1:30 pm in Dept. 7A of the above entitled courthouse; and, IT IS FURTHER ORDERED that the brief schedule shall be as follows: 1. All opposing papers shall be filed and served in conformity with all rules and procedures by March 2, 2026 no later than 4 pm; and 2. All reply papers shall be filed, if any, by March 9, 2026 no later than 4 pm. (es) (Entered: 02/17/2026) |
| 03/02/2026 | 18 | *Stricken* OPPOSITION filed by Respondent AFB Trading One, Inc.. (Attachments: # 1 Declaration of Michael Zorkin, # 2 Declaration of Larisa Sabadash, # 3 Declaration of Darya Trubina, # 4 Declaration of Andrew Wood)(Zorkin, Michael) Modified on 3/3/2026 (sr). (Entered: 03/02/2026) |
| 03/02/2026 | 19 | REQUEST FOR JUDICIAL NOTICE filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 03/02/2026) |
| 03/02/2026 | 20 | OBJECTIONS *to Evidence Submitted in Support of Petition to Confirm Arbitration Award* filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 03/02/2026) |
| 03/02/2026 | 21 | NOTICE of Interested Parties filed by Respondent AFB Trading One, Inc., (Zorkin, Michael) (Entered: 03/02/2026) |
| 03/03/2026 | 22 | Text Entry Order: Respondent AFB Trading One, Inc.s Opposition to Petition to Confirm Arbitration Award, filed on March 2, 2026 (Docket No. 18 ), is STRICKEN for failure to comply with paragraph 3(b) of the Court's Standing Order, which requires that "each PDF file shall contain no more than one document or exhibit, see Local Rule 5-4.3.1, and each document or exhibit shall be meaningfully described on the docket such that the document or exhibit can be easily identified. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sr) TEXT ONLY ENTRY (Entered: 03/03/2026) |
| 03/03/2026 | 23 | OPPOSITION filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 03/03/2026) |
| 03/03/2026 | 24 | DECLARATION of Michael Zorkin re Response in Opposition to Motion 23 filed by Respondent AFB Trading One, Inc.. (Attachments: # 1 Exhibit 10 Letter from Arbitrator to Zorkin, # 2 Exhibit 11 AFB Objection to arbitration 1, # 3 Exhibit 12 AFB objection to arbitration 2, # 4 Exhibit 13 AFB objection to arbitration 3, # 5 Exhibit 14 Arbitrator's order dismissing the case dated 8-25-2021, # 6 Exhibit 15 Email from arbitrator attaching the order of dismissal dated 8-25-2021, # 7 Exhibit 16 Proof of claim filed by Grant dated 6-2-2025, # 8 Exhibit 17 Motion for sanctions filed in the bankruptcy court dated 7-1-2025, # 9 Exhibit 18 Creditors opposition to sanctions dated 8-5-2025, # 10 Exhibit 19 Zorkin letter to the arbitrator dated 1-22-2026, # 11 Exhibit 20 Notice of Dissolution of Golden Spirits Limited dated 10-1-2013)(Zorkin, Michael) (Entered: 03/03/2026) |
| 03/03/2026 | 25 | DECLARATION of Larisa Sabadash re Response in Opposition to Motion 23 filed by Respondent AFB Trading One, Inc.. (Attachments: # 1 Exhibit 21 Appointment of Itkin as officer of AFB dated 5-31-2003, # 2 Exhibit 22 Appointment of Itkin as director of AFB dated 1-23-2015, # 3 Exhibit 23 Removal of Itkin from all positions dated 10-3-2016, # 4 Exhibit 24 Bylaws of AFB)(Zorkin, Michael) (Entered: 03/03/2026) |

| 03/03/2026 | 26 | DECLARATION of Darya Trubina re Response in Opposition to Motion 23 filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 03/03/2026) |
|---|---|---|
| 03/03/2026 | 27 | DECLARATION of Andrew Wood re Response in Opposition to Motion 23 filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 03/03/2026) |
| 03/03/2026 | 28 | NOTICE OF ERRATA filed by Petitioner Aleksandr Aleksandrovich Grant. correcting Petition (Attorney Civil Case Opening),, 1 re: Correcting Exhibit 1-2 thereto (Attachments: # 1 Exhibit 1)(Kar, Joseph) (Entered: 03/03/2026) |
| 03/03/2026 | 29 | OBJECTIONS to Declaration,,, 24 AND EXHIBITS A THROUGH C THERETO, filed by Petitioner Aleksandr Aleksandrovich Grant. (Attachments: # 1 Exhibit A - Zorkin's Email 8/25/2021, # 2 Exhibit B - BK Court Order, # 3 Exhibit C - BK Status Conf Report_2_25_2026)(Kar, Joseph) (Entered: 03/03/2026) |
| 03/03/2026 | 30 | OBJECTIONS to Declaration 26 of Darya Trubina filed by Petitioner Aleksandr Aleksandrovich Grant. (Kar, Joseph) (Entered: 03/03/2026) |
| 03/06/2026 | 31 | REPLY Reply in support of Petition to Confirm Foreign Arbitral Award, etc. filed by Petitioner Aleksandr Aleksandrovich Grant. (Attachments: # 1 Exhibit 10, # 2 Declaration Declaration of Arbitrator, Dmitry Knyanev and Exhibits 1 to 3 thereto, # 3 Exhibit Exhibit 1 to Declaration of Arbitrator, # 4 Exhibit Exhibit 2 to Declaration of Arbitrator, # 5 Exhibit Exhibit 3 to Declaration of Arbitrator, # 6 Declaration Supplemental Declaration of Joseph M. Kar, Esq.)(Kar, Joseph) (Entered: 03/06/2026) |
| 03/06/2026 | 32 | OBJECTIONS to Declaration 27 of Andrew Wood filed by Petitioner Aleksandr Aleksandrovich Grant. (Kar, Joseph) (Entered: 03/06/2026) |
| 03/06/2026 | 33 | OBJECTIONS to Declaration, 25 Larissa Sabadash and Exhibits thereto filed by Petitioner Aleksandr Aleksandrovich Grant. (Kar, Joseph) (Entered: 03/06/2026) |
| 03/10/2026 | 34 | *Stricken* DECLARATION of RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV re Reply (Motion related), 31 (Supplemental) filed by Petitioner Aleksandr Aleksandrovich Grant. (Attachments: # 1 Exhibit 4, # 2 Exhibit 5, # 3 Exhibit 6, # 4 Exhibit 7, # 5 Exhibit 8, # 6 Exhibit 9)(Kar, Joseph) Modified on 3/11/2026 (sr). (Entered: 03/10/2026) |
| 03/11/2026 | 35 | Text Entry Order: Petitioners Declaration of Russian Arbitrator, Dmitry Valeryevich Knyazev and Exhibits 4 to 9 Hereto in Reply, filed on March 10, 2026 (Docket No. 34 ), is STRICKEN for failure to comply with paragraph 3(b) of the Court's Standing Order, which requires that "each PDF file shall contain no more than one document or exhibit, see Local Rule 5-4.3.1, and each document or exhibit shall be meaningfully described on the docket such that the document or exhibit can be easily identified. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sr) TEXT ONLY ENTRY (Entered: 03/11/2026) |
| 03/11/2026 | 36 | *Stricken* DECLARATION of Russian Arbitrator, Dmitry Valeryevich Knyanev re Reply (Motion related), 31 filed by Petitioner Aleksandr Aleksandrovich Grant. (Attachments: # 1 Declaration Declaration of Dmitry Valeryevich Knyanev (in Russian), # 2 Exhibit Exhibit 4, # 3 Exhibit Exhibit 5, # 4 Exhibit Exhibit 6, # 5 Exhibit Exhibit 7, # 6 Exhibit Exhibit 8, # 7 Exhibit Exhibit 9, # 8 Certificate of Service)(Kar, Joseph) Modified on 3/13/2026 (sr). (Entered: 03/11/2026) |
| 03/11/2026 | 37 | NOTICE OF LODGING filed re Response in Opposition to Motion 23 (Attachments: # 1 Proposed Statement of Decision)(Zorkin, Michael) (Entered: 03/11/2026) |

6/22/26, 8:43 PM

Case 2:25-bk-11235-NB    Doc 141    Filed 06/23/26    Entered 06/23/26 17:19:48    Desc
CMECF - California Central District
Main Document    Page 9 of 415

| 03/11/2026 | 38 | REQUEST to for leave to file a sur-reply filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 03/11/2026) |
|---|---|---|
| 03/11/2026 | 39 | Request for Oral Argument filed by Respondent AFB Trading One, Inc. re: Response in Opposition to Motion 23 (Zorkin, Michael) (Entered: 03/11/2026) |
| 03/12/2026 | 40 | OBJECTIONS to Miscellaneous Document 39 , Notice of Lodging 37 , REQUEST to for leave to file a sur-reply 38 *(DKT#37-39)* filed by Petitioner Aleksandr Aleksandrovich Grant. (Kar, Joseph) (Entered: 03/12/2026) |
| 03/13/2026 | 41 | Text Entry Order: Respondents Request for Leave to File a Sur-Reply to Respond to New Evidence Submitted by Petitioner in His Reply Brief or, in the Alternative, Motion to Strike New Evidence, filed March 11, 2026 (Docket No. 38 ), is GRANTED. Respondent shall file its Sur-Reply on or before March 24, 2026, at 12:00 p.m. Respondents Request for Oral Argument, filed March 11, 2026 (Docket No. 39 ), is DENIED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sr) TEXT ONLY ENTRY (Entered: 03/13/2026) |
| 03/13/2026 | 42 | Text Entry Order: Petitioners Declaration of Russian Arbitrator, Dmitry Valeryevich Knyazev and Exhibits 4 to 9 Hereto inReply, filed on March 11, 2026 (Docket No. 36 ), is again STRICKEN for failure to comply with paragraph 3(b) of the Court's Standing Order, which requires that "each PDF file shall contain no more than one document or exhibit, see Local Rule 5-4.3.1, and each document or exhibit shall be meaningfully described on the docket such that the document or exhibit can be easily identified. In addition, Petitioner has failed to file a proposed Statement of Decision as required by paragraph 5(f) of the Courts Standing Order. In light of Petitioners continued violations of the Courts Standing Order, Petitioner is ordered to show cause in writing by March 16, 2026, why Petitioner should not be sanctioned in the amount of $1,500 for repeatedly violating the Courts Standing Order. No oral argument on this matter will be heard unless otherwise ordered by the Court. See Fed. R. Civ. P. 78; Local Rule 7-15. The Order will stand submitted upon the filing of the response to the Order to Show Cause. Failure to respond to the Order to Show Cause will result in the imposition of sanctions. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sr) TEXT ONLY ENTRY (Entered: 03/13/2026) |
| 03/13/2026 | 43 | DECLARATION of RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV re Reply (Motion related), 31 filed by Petitioner Aleksandr Aleksandrovich Grant. (Attachments: # 1 Exhibit Ex. 1 - AFB Trading Rep_to_from Arbitrator dtd 8_24_21, etc (in English and Russian), # 2 Exhibit Ex. 2 - Emails from AFB Trading Representative to Arbitrator dtd 8_23_21 (in English and Russian), # 3 Exhibit Ex. 3 - Emails from Zorkin to Arbitrator dtd 8_23_21 and 8_25_21 (in English and Russian), # 4 Exhibit Ex. 4 - Emails from AFB Trading Reprsenative to Arbitrtator dtd 8_25_21 (in English and Russian), # 5 Exhibit Ex. 5 - Email from Arbitrator dtd 8_9_21 (in English and Russian), # 6 Exhibit Ex. 6 - Email from Arbitrator to AFB Trading Representative dtd 8_9_21 (in English and Russian))(Kar, Joseph) (Entered: 03/13/2026) |
| 03/13/2026 | 44 | NOTICE OF LODGING filed *re: Petitioner's Proposed Statement of Decision Granting Petition to Confirm Foreign Arbitral Award(s)* re Petition (Attorney Civil Case Opening),, 1 (Attachments: # 1 Proposed Order Petitioner's Proposed Statement of Decision Granting Petition to Confirm Foreign Arbitral Award(s))(Kar, Joseph) (Entered: 03/13/2026) |
| 03/16/2026 | 45 | DECLARATION of Joseph M. Kar re Generic Text Only Entry,,,,, 42 *in response to Court's Order to Show Cause (Dkt. #42)* filed by Petitioner Aleksandr Aleksandrovich Grant. (Kar, Joseph) (Entered: 03/16/2026) |

| 03/24/2026 | 46 | REPLY *Sur-Reply* filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 03/24/2026) |
| 03/24/2026 | 47 | DECLARATION of Larisa Sabadash re Reply (Motion related) 46 filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 03/24/2026) |
| 03/24/2026 | 48 | DECLARATION of Alexander Sabadash re Reply (Motion related) 46 filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 03/24/2026) |
| 03/24/2026 | 49 | DECLARATION of Michael Zorkin re Reply (Motion related) 46 filed by Respondent AFB Trading One, Inc.. (Attachments: # 1 Exhibit Exhibit 21: Letter from ICAC to Trubina dated March 23, 2026, # 2 Exhibit Exhibit 22: Email from Zorkin to Knyazev dated August 24, 2021) (Zorkin, Michael) (Entered: 03/24/2026) |
| 03/24/2026 | 50 | DECLARATION of Darya Trubina re Reply (Motion related) 46 filed by Respondent AFB Trading One, Inc.. (Attachments: # 1 Exhibit 1: Email from ICAC to Trubina dated March 23, 2026, # 2 Exhibit 2: Letter from ICAC to Trubina dated March 23, 2026)(Zorkin, Michael) (Entered: 03/24/2026) |
| 03/24/2026 | 51 | DECLARATION of Tatiana Hay re Reply (Motion related) 46 filed by Respondent AFB Trading One, Inc.. (Attachments: # 1 Exhibit 1: Resume of Tatiana Hay, # 2 Exhibit 2: Award dated August 31, 2021, # 3 Exhibit 3: Award dated August 15, 2025)(Zorkin, Michael) (Entered: 03/24/2026) |
| 03/24/2026 | 52 | OBJECTIONS to Declaration 48 , Declaration 47 , Declaration, 49 , Reply (Motion related) 46 , Declaration, 51 , Declaration, 50 filed by Petitioner Aleksandr Aleksandrovich Grant. (Kar, Joseph) (Entered: 03/24/2026) |
| 03/26/2026 | 53 | MINUTE (IN CHAMBERS) ORDER TAKING UNDER SUBMISSION PETITIONER'S PETITION TO CONFIRM FOREIGN ARBITRAL AWARD [filed 12/16/25; Docket No. 1 ] by Judge John F. Walter. The Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for March 30, 2026, is hereby vacated and the matter is taken off calendar. The matter will be deemed submitted on the vacated hearing date and the clerk will notify the parties when the Court has reached a decision. (iv) (Entered: 03/26/2026) |
| 04/21/2026 | 54 | MINUTE (IN CHAMBERS) ORDER DENYING PETITION TO CONFIRM FOREIGN ARBITRAL AWARD [filed 12/16/25; Docket No. 1 ] by Judge John F. Walter. Petitioner's Petition is DENIED with leave to amend. Petitioner shall filed an amended Petition on or before May 11, 2026. Respondent shall file its Opposition on or before May 22, 2026. Petitioner shall file his Reply on or before June 1, 2026. The hearing on Petitioner's amended Petition is set for June 15, 2026, at 1:30 p.m. (iv) (Entered: 04/21/2026) |
| 05/05/2026 | 55 | First EX PARTE APPLICATION for Extension of Time to File THE AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARDS AND LODGE APOSTILLED ORIGINAL DECLARATION(S) AND CERTIFIED ENGLISH TRANSLATIONS AND EXHIBITS THERETO IN SUPPORT OF AMENDED PETITION filed by Petitioner Aleksandr Aleksandrovich Grant. (Attachments: # 1 Declaration) (Kar, Joseph) (Entered: 05/05/2026) |
| 05/05/2026 | 56 | Opposition re: First EX PARTE APPLICATION for Extension of Time to File THE AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARDS AND LODGE APOSTILLED ORIGINAL DECLARATION(S) AND CERTIFIED ENGLISH TRANSLATIONS AND EXHIBITS THERETO IN SUPPORT OF AMENDED PETITION 55 filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 05/05/2026) |

| | | |
|---|---|---|
| 05/06/2026 | 57 | ORDER GRANTING PETITIONER'S EX PARTE APPLICATION TO EXTEND TIME TO FILE THE AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARDS AND LODGE APOSTILLED ORIGINAL DECLARATION(S) AND CERTIFIED ENGLISH TRANSLATIONS AND EXHIBITS THERETO IN SUPPORT OF AMENDED PETITION 55 by Judge John F. Walter. The deadline by which Petitioner shall file and lodge the amended petition and support documents as ordered on April 21, 2026, DKT# 54, is extended, is extended to and including June 1, 2026 at 4 pm. SEE ORDER FOR DETAILS. (iv) (Entered: 05/06/2026) |
| 05/27/2026 | 58 | First AMENDED PETITION against Petitioner Aleksandr Aleksandrovich Grant amending Petition (Attorney Civil Case Opening),, 1 , filed by Petitioner Aleksandr Aleksandrovich Grant (Attachments: # 1 Memorandum PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARDS, # 2 NOTICE OF LODGING OF APOSTILLE ORIGINAL AND APOSTILLE CERTIFIED COPY OF EXHIBITS 1, 2, 14 and 15, # 3 Declaration DECLARATION OF ALEXSANDR ALEKSANDROVICH GRANT, IN SUPPORT OF AMENDED PETITION TO CONFIRM FOREIGN ARBITRA AWARD, # 4 Declaration DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV AND EXHIBITS 1 TO 6 HERETO IN SUPPORT OF AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARD, # 5 Exhibit 1 - First Original and Apostille Award, # 6 Exhibit 2 - Second Original and Apostille Award, # 7 Exhibit 3 - Email to_from Zorkin and Knyazev Decl_8_25_2021, # 8 Exhibit 4 - Emails Aug 24 and July 19 to from Padalko and Arb, # 9 Exhibit 5 - email Aug 23, 2021 Missed deadline statement to from Zorkin to Arb, # 10 Exhibit 6 - Arb Agreement, # 11 Declaration DECLARATION OF RUSSIAN ARBITRATOR,DMITRY V ALERYEVICH KNYAZEV RE: RESPONSE TO DOCKET NOS. 49 AND 50, # 12 Exhibit A - DKT#50-2 (alleged email from ICAC dtd March 23, 2026), # 13 Exhibit B - Russian Arbitrator's application dtd May 31, 2021 re: Case No. 1800-4/1301 (arbitration in this action), # 14 Exhibit C - Receipt of Payment of ICAC fees dtd May 16, 2021, # 15 Declaration DECLARATION OF JOSEPH M. KAR, ESQ. IN SUPPORT OF AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARDS, # 16 Exhibit 7 - 2023 assignment agreement (EN), # 17 Exhibit 8 - Loan Agreement 2010 04, # 18 Exhibit 9 - Loan Modification and Forebearance Agreement_8_23_2012, # 19 Exhibit 10 - AFB Guaranty_8_23_2012, # 20 Exhibit 11 - Golden Sphinx Guaranty_8_23_2012, # 21 Exhibit 12 - Assignment of Rights Agreement_9_20_2022, # 22 Exhibit 13 - 382-FZ - Federal Law of Russian Federation, # 23 Exhibit 14 - Knyavez Decl_3_6_2026 (Apostille Original and Copy with no exhibits), # 24 Exhibit 15 -Knyazev Decl_3_10_2026 (Apostille Original and Copy with no exhibits), # 25 Request for Judicial Notice, # 26 Certificate of Service)(Kar, Joseph) (Entered: 05/27/2026) |
| 06/15/2026 | 59 | OPPOSITION filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 06/15/2026) |
| 06/15/2026 | 60 | DECLARATION of Michael Zorkin filed by Respondent AFB Trading One, Inc.. (Attachments: # 1 Exhibit 10: Letter from Arbitrator to Zorkin, # 2 Exhibit 11: AFB objection to arbitration 1, # 3 Exhibit 12: AFB Objection to arbitration 2, # 4 Exhibit 13: AFB Objection to arbitration 3, # 5 Exhibit 14: Arbitrator's order dismissing the case dated 8-15-2021, # 6 Exhibit 15: Email from arbitrator attaching order of dismissal dated 8-25-2021, # 7 Exhibit 16: Proof of claim filed by Grant dated 6-2-2025, # 8 Exhibit 17: Motion for sanctions filed in the bankruptcy court dated 7-1-2025, # 9 Exhibit 18: Creditors' opposition to sanctions motion dated 8-5-2025, # 10 Exhibit 19: Zorkin letter to arbitrator dated 1-22-2026, # 11 Exhibit 20: Notice of dissolution of |

6/22/26, 8:43 PM

Case 2:25-bk-11235-NB    Doc 141    Filed 06/23/26    Entered 06/23/26 17:19:48    Desc
CM/ECF - California Central District
Main Document    Page 12 of 415

| | | |
|---|---|---|
| | | Golden Spirits Limited dated 10-1-2013, # [12](#) Exhibit 25: ICAC letter English translation) (Zorkin, Michael) (Entered: 06/15/2026) |
| 06/15/2026 | [61](#) | DECLARATION of Larisa Sabadash filed by Respondent AFB Trading One, Inc.. (Attachments: # [1](#) Exhibit 21 Appointment of Itkin as officer of AFB dated 5-31-2003, # [2](#) Exhibit 22 Appointment of Itkin as director of AFB dated 1-23-2015, # [3](#) Exhibit 23 Removal of Itkin from all positions dated 10-3-2016, # [4](#) Exhibit 24 Bylaws of AFB)(Zorkin, Michael) (Entered: 06/15/2026) |
| 06/15/2026 | [62](#) | DECLARATION of Larisa Sabadash filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 06/15/2026) |
| 06/15/2026 | [63](#) | DECLARATION of Darya Trubina filed by Respondent AFB Trading One, Inc.. (Attachments: # [1](#) Exhibit 1: ICAC email and letter in Russian, # [2](#) Exhibit 2: Ministry of Justice Letter)(Zorkin, Michael) (Entered: 06/15/2026) |
| 06/15/2026 | [64](#) | DECLARATION of Nadezhda Yurasova filed by Respondent AFB Trading One, Inc.. (Attachments: # [1](#) Exhibit 1: ICAC letter apostilled packet)(Zorkin, Michael) (Entered: 06/15/2026) |
| 06/15/2026 | [65](#) | DECLARATION of Alexander Sabadash filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 06/15/2026) |
| 06/15/2026 | [66](#) | DECLARATION of Tatiana Padalko filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 06/15/2026) |
| 06/15/2026 | [67](#) | DECLARATION of Andrew Wood filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 06/15/2026) |
| 06/15/2026 | [68](#) | DECLARATION of Tatiana Hay filed by Respondent AFB Trading One, Inc.. (Attachments: # [1](#) Exhibit 1: Resume of Tatiana Hay, # [2](#) Exhibit 2: Award dated August 31, 2021, # [3](#) Exhibit 3: Award dated August 15, 2025)(Zorkin, Michael) (Entered: 06/15/2026) |
| 06/15/2026 | [69](#) | OBJECTIONS *to Evidence Submitted in Support of Petition to Confirm Arbitration Award* filed by Respondent AFB Trading One, Inc.. (Zorkin, Michael) (Entered: 06/15/2026) |
| 06/15/2026 | [70](#) | NOTICE OF LODGING filed re Response in Opposition to Motion [59](#) (Zorkin, Michael) (Entered: 06/15/2026) |
| 06/19/2026 | [71](#) | REPLY filed by Petitioner Aleksandr Aleksandrovich Grant to Declaration [62](#) , Declaration [65](#) , Objection [69](#) , Declaration, [61](#) , Amended Complaint/Petition,,,,,,,,,,, [58](#) , Declaration [67](#) , Declaration [64](#) , Declaration [68](#) , Declaration [66](#) , Response in Opposition to Motion [59](#) , Declaration [63](#) , Declaration,,, [60](#) (Attachments: # [1](#) Declaration DECLARATION OF JOSEPH M. KAR, ESQ. IN REPLY, # [2](#) RESPONSE TO RESPONDENTS OBJECTIONS TO EVIDENCE IN OPPOSITION, # [3](#) OBJECTIONS TO DECLARATION OF ALEXANDER SABADASH, # [4](#) OBJECTIONS TO DECLARATION OF LARISA SABADASH, # [5](#) OBJECTIONS TO DECLARATION OF TATIANA HAY, # [6](#) OBJECTIONS TO DECLARATION OF TATIANA PADALKO, # [7](#) OBJECTIONS TO DECLARATION OF DARYA TRUBINA, # [8](#) OBJECTIONS TO DECLARATION OF ANDREW WOOD, # [9](#) OBJECTIONS TO DECLARATION OF NADEZHDA YURASOVA, # [10](#) OBJECTIONS TO DECLARATION OF MICHAEL ZORKIN, # [11](#) OBJECTIONS TO SECOND DECLARATION OF LARISA SABADASH)(Kar, Joseph) (Entered: 06/19/2026) |

**PACER Service Center**

**Transaction Receipt**

06/22/2026 20:43:06

| PACER Login: | dmccarthy | Client Code: | i8458-002 |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 2:25-cv-11869-JFW-MBK End date: 6/22/2026 |
| Billable Pages: | 8 | Cost: | 0.80 |

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

<u>**CIVIL MINUTES -- GENERAL**</u>

Case No.    **CV 25-11869-JFW(MBKx)**                    Date:  April 21, 2026

Title:        Aleksandr Aleksandrovich Grant *-v-* AFB Trading One, Inc.

**PRESENT:**
        **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

   **Shannon Reilly**                                    **None Present**
   **Courtroom Deputy**                                **Court Reporter**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**        **ATTORNEYS PRESENT FOR DEFENDANTS:**
              None                                              None

**PROCEEDINGS (IN CHAMBERS):**        **ORDER DENYING PETITION TO CONFIRM FOREIGN**
                                       **ARBITRAL AWARD [filed 12/16/25; Docket No. 1]**

        On December 16, 2025, Petitioner Aleksandr Aleksandrovich Grant ("Petitioner") filed a Petition to Confirm Foreign Arbitral Award ("Petition").  On March 3, 2026, Respondent AFB Trading One, Inc. ("AFB") filed its Opposition.  On March 6, 2026, Petitioner filed a Reply.  On March 24, 2026, AFB filed a Sur-Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.        Factual and Procedural Background**

        Petitioner is a Russian citizen and attorney.  AFB is a California corporation with its principal place of business in Beverly Hills, California.  Petitioner, as the successor and assignee of original claimant Davilla Investing Limited ("Davilla"), seeks to confirm the foreign arbitral award entered in favor of Davilla and against AFB on August 31, 2021, and the amended award entered against AFB on August 15, 2025.  According to Petitioner, the arbitration arose out of dispute over a loan between Agragorn Holdings Limited and Golden Spirts Limited, and guaranteed by AFB and Golden Spinx Limited.  On August 31, 2021, after conducting a multiple-day arbitration in Moscow, the Arbitrator Knyazev Dmitry Valerievich (the "Arbitrator") issued an award in favor of Davilla in the amount of $1,804,017.81 (the "August 31, 2021 Award").  On August 15, 2025, the Arbitrator issued an amended award in favor of Petitioner, as Davilla's successor and assignee, in the amount of $1,804,017.81, plus $962,853 in interest for the period of August 31, 2021, to August 15, 2025 (the "August 15, 2025 Award").

## II.     Legal Standard

Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (ratified by Congress and codified at 9 U.S.C. §§ 201 *et seq.*) (the "New York Convention"), a party may petition a district court to confirm a foreign arbitral award. 9 U.S.C. § 207.  Both the United States and the Russian Federation have ratified the Convention.  *See Yukos Capital Limited v. Russian Federation,* 792 F.Supp. 3d 83 (D.D.C. 2025).

Under the New York Convention, a district court's review of a foreign arbitral award "is strictly limited."  *Pacer Construction Holdings Corp. v. Pelletier*, 2020 WL 977871, at *2 (S.D. Cal. Feb. 28, 2020) (citation omitted).  Article V of the New York Convention "sets out five grounds for refusal that may be raised by parties and two grounds that may be granted by the court *sua sponte.*"  *Changzhou AMEC Eastern Tools and Equipment Co., Ltd v. Eastern Tools & Equipment, Inc.*, 2012 WL 3106620, at *8 (C.D. Cal. Jul. 30, 2012) (citation omitted).  "Respondent has the burden of establishing a defense against enforcement under the Convention because there is a strong presumption in favor of confirmation of arbitral awards."  *Id.* (*citing Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010)).  "The presumption in favor of confirmation is based on the goal of the Convention, which is to encourage the recognition of international arbitral agreements."  *Id.* (*citing Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520, n.15 (1974)).  As a result, "courts have adopted a narrow view of the defenses enumerated in the Convention."  *Id.* (citation omitted).  "Absent a convincing showing that one of [the] narrow exceptions applies, the arbitral award will be confirmed."  *Id.* (citations omitted).  In addition, "[c]ourts are bound to defer to the conclusions of the arbitrator unless the arbitrator has manifestly disregarded the law."  *Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv.*, 682 F.2d 1280, 1284 (9th Cir. 1982).

## III.     Discussion

Petitioner seeks confirmation of the August 31, 2021 Award and the August 15, 2025 Award pursuant to the New York Convention.  AFB opposes the confirmation of the arbitration awards on the grounds that August 31, 2021 Award is a "fake," "[a] phony," and "[a] forgery."  Opposition, 1:3. According to AFB, the arbitration between Davilla and AFB was dismissed for lack of jurisdiction by the Arbitrator on August 25, 2021, and, as a result, the purported August 31, 2021 Award is fraudulent.  In response, Petitioner argues that the purported "order of dismissal," dated August 25, 2021 that AFB relies on is a fabricated document.  Petitioner also argues that both the August 31, 2021 Award and the August 15, 2025 Award have been properly authenticated by the Arbitrator in his two declarations, filed March 6, 2026 (Docket No. 31-2) and March 13, 2026 (Docket No. 43).

Article IV of the New York Convention requires an original or duly certified copy of an arbitration award to be filed with a petition to confirm a foreign arbitral award for the purpose of "requir[ing] the petitioner to prove that the relevant documents exist."  *Wong To Yick Wood Lock Ointment Ltd. v. Madison One Acme Inc.*, 2015 WL 13919442, at *6 (C.D. Cal. Apr. 21, 2015). Specifically, Article IV of the New York Convention provides:

> To obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement shall, at the time of the application, supply: (a) The duly authenticated original award or a duly certified copy thereof; (b) The original agreement referred to in article II or a duly certified copy thereof.

Initials of Deputy Clerk __sr__

Courts have determined that "[c]opies of the award and the agreement which have been certified by a member of the arbitration panel provide a sufficient basis upon which to enforce the award." *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 934 (2d 1983). In addition, courts have concluded that the award can be certified by a public notary or petitioner's counsel in some situations. *Jing Yuan v. Shuogang Chen*, 2025 WL 4649354 (C.D. Cal. May 5, 2025) (discussing that courts have found an attorney's declaration certifying an award sufficient where the respondent challenges only the enforceability and not the existence or genuineness of an arbitration agreement or award).

In this case, AFB challenges the genuineness of the August 31, 2021 Award. As a result, the Court concludes that the declaration of Joseph M. Kar ("Kar"), Petitioner's counsel, stating that the copy of the August 31, 2021 Award attached as Exhibit 1 to his declaration is "[a] certified true and correct copy" is insufficient to satisfy Article IV of the New York Convention. *See, e.g., Jing Yuan*, 2025 WL 4649354 (finding that the petitioner's counsel's declaration stating the copy of the arbitration award was "[a] duly certified true and accurate copy" was insufficient to satisfy Article IV of the New York Convention where the respondent questioned the authenticity of the arbitration award and the petitioner's counsel did "not back this legal conclusion with personal knowledge of the arbitration award"). The Court also concludes that the Arbitrator's declarations are insufficient to satisfy Article IV. In both of his declarations, the Arbitrator stated that "[t]his signed declaration and its attachments/exhibits will also later be provided with an apostille in the future; but which requires approximately 2-4 weeks to obtain such apostille in the Russian Federation." *See* Docket No. 31-2, ¶ 1 and Docket No. 43, ¶ 1. However, neither declaration has been refiled with the promised apostille, despite the fact that it has been six weeks since the Arbitrator's first declaration was filed and five weeks since his second declaration was filed. Because Petitioner and AFB each claim that the other has submitted fraudulent documents to the Court, the lack of an apostille certifying the authenticity of the Arbitrator's signature on his declarations where he attests to the authenticity of the arbitration awards is not a mere technicality, but, instead, makes it impossible for the Court to determine if it can rely on the evidence presented.

In addition, the Court finds that there are other issues with the parties' briefing that make it impossible for the Court to rule on Petitioner's Petition. For example, in his Reply, Petitioner states that paragraph 4 of the Arbitrator's declaration (Docket No. 31-2) establishes that "[t]he August 25, 2021 communication was an interlocutory ruling on jurisdictional objections – not a final dismissal order." Reply (Docket No. 31), 4:3-4. However, paragraph 4 of the Arbitrator's declaration (Docket No. 31-2) discusses the August 15, 2025 Award, not a August 25, 2021 interlocutory ruling on jurisdictional objections. Moreover, the Arbitrator states multiple times that, with respect to the arbitration that resulted in the August 31, 2021 Award "[n]o objection was raised to my jurisdiction to adjudicate the dispute under the parties' written arbitration agreement." *See* Docket No. 31-2, ¶¶ 15-18. In his proposed Statement of Decision Granting Petition to Confirm Foreign Arbitral Award (Docket No. 44-1), Petitioner acknowledges this contradiction, but attempts to blame it on AFB, which raises significant concerns regarding Petitioner's credibility. *See* Docket No. 44-1, 7:11-18.

Accordingly, based on the current record and wholly inadequate briefing by the parties, the Court cannot determine if the August 31, 2021 Award and August 15, 2025 Award are authentic or fraudulent and, as a result, the Court cannot grant Petitioner's Petition.

## IV.    Conclusion

Initials of Deputy Clerk __sr__

For all the foregoing reasons, Petitioner's Petition is **DENIED with leave to amend**. *See Haas v. Winebow, Inc.*, 2025 WL 2994553 (C.D. Cal. Mar. 20, 2025) ("Respondent fails to provide – and the Court is not aware of – any authority interpreting the New York Convention so as to prevent a party from amending its petition to confirm an arbitration award"); *see also Jing Yuan*, 2025 WL 4649354 (dismissing the petitioner's petition to confirm a foreign arbitral award with leave to amend). Petitioner shall filed an amended Petition on or before May 11, 2026. The amended Petition shall include: (1) an original or duly certified copy of the August 31, 2021 Award and the August 15, 2025 Award that fully complies with the requirements of Article IV of the New York Convention; (2) certified translations of all documents in Russian; (3) a declaration from the Arbitrator that includes an apostille and that clearly sets forth the factual background regarding the two underlying arbitrations and confirming the authenticity and genuineness of the August 31, 2021 Award and the August 15, 2025 Award; and (4) any other evidence that Petitioner concludes is necessary to demonstrate that the August 31, 2021 Award and the August 15, 2025 Award are genuine and should be confirmed. Respondent shall file its Opposition on or before May 22, 2026. Petitioner shall file his Reply on or before June 1, 2026. The hearing on Petitioner's amended Petition is set for June 15, 2026, at 1:30 p.m.

IT IS SO ORDERED.

Initials of Deputy Clerk __sr__

# EXHIBIT 3

Joseph M. Kar (SBN 207414)
jkar@civillegal.com
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite PH-1220
Sherman Oaks, CA 91403
Telephone:  (818) 501-6930
Facsimile:   (818) 501-6935

**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH,
GRANT, ASSIGNEE AND SUCCESSOR OF
DAVILLA INVESTING LIMITED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual<br><br>Petitioner,<br><br>v.<br><br>AFB TRADING ONE, INC., a California Corporation;<br><br>Respondents. | **Case No.: 2:25-cv-11869-JFW (MBKx)**<br><br>**PETITIONER'S AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARDS**<br><br>**DATE: JULY 13, 2026**<br>**TIME:  1:30 PM**<br>**CTRM:7A**<br><br>**Judge: Honorable John F. Walter**<br>**Ctrm:  7A**<br><br>**[9 U.S.C. § 207]**<br><br>**Trial: Not set** |

**TO THE HONORABLE JOHN F. WALTER, ALL INTERESTED**

1

**PARTIES AND THEIR ATTORNEYS OF RECORDS:**

**COMES NOW**, **PETITIONER**, ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual, ("Petitioner"), by and through his attorneys, and hereby respectfully submits and files this Amended Petition to Confirm Foreign Arbitral Awards entered August 31, 2021 (the "First Award" or "Moscow Award") and August 15, 2025 (the "Second Award" or "Second Moscow Award"), under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, available at 1970 WL 104417 (the "New York Convention"), as ratified by Congress and codified at 9 U.S.C. §§ 201 et seq.

The original Petition was filed on December 16, 2025 (Dkt. No. 1). This Amended Petition is filed pursuant to the Court's Order of April 21, 2026 (Dkt. No. 54) granting leave to amend, and the Court's Order of May 6, 2026 (Dkt. No. 57) extending the time to file the amended petition and supporting documents to June 1, 2026 and setting the hearing on the Amended Petition for July 13, 2026 at 1:30 p.m.

## PARTIES

1.      Petitioner Aleksandr Aleksandrovich Grant is an individual, Russian citizen, and an attorney duly licensed to practice in the Russian Federation, residing in Moscow, Russian Federation. Petitioner is the successor and assignee of the original claimant Davilla Investing Limited under the Assignment Agreement dated May 15, 2023, with respect to the underlying arbitration proceedings before the sole arbitrator selected by the parties — Knyazev Dmitry Valeryevich (Master of Law) — conducted under the UNCITRAL Arbitration Rules and the Civil Code of the Russian Federation (the "Arbitration").

2

2.       Respondent AFB Trading One, Inc. is a California corporation, with a principal place of business in Beverly Hills, California, and one of the respondents in the underlying Arbitration that is the subject of this Amended Petition.

## JURISDICTION AND VENUE

3.       The United States of America and the Russian Federation are signatories to the New York Convention.

4.       This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 9 U.S.C. § 203, regardless of the amount in controversy.

5.       This Court has personal jurisdiction over Respondent AFB Trading One, Inc., as it is a California corporation that conducts business in California.

6.       Venue is proper in the Central District of California because Respondent conducts business in Beverly Hills, California, which is in Los Angeles County. Pursuant to 9 U.S.C. § 204, in the absence of an agreement to the contrary, venue is proper in any federal court that has subject matter jurisdiction.

## FACTUAL BACKGROUND

A.       *The August 31, 2021 First Award.*

7.       On August 31, 2021, the sole arbitrator selected and stipulated to by the parties, Knyazev Dmitry Valeryevich (Master of Law), an arbitrator duly authorized under the laws of the Russian Federation and acting pursuant to the Civil Code of the Russian Federation and the UNCITRAL Arbitration Rules, issued the First Award in *Davilla Investing Limited, Claimant, v. Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited*, Arbitration Case No. 1800-4/1301. The Arbitration was conducted in Moscow, Russian Federation, on multiple dates including July 19, 2021, August 2, 5, 19, 24, 25, and 31, 2021. The First Award is a foreign arbitral award covered by the New York Convention because the place of arbitration and place of award is Moscow, Russian Federation. A duly authenticated First Award, certified by the arbitrator

PETITIONER'S AMENDED PETITION TO CONFIRM

with apostille is attached to the Declaration of Dmitry Valeryevich Knyazev as **Exhibit 1** thereto. **Knyazev Decl. dtd 4/30/2026, ¶ 3; Knyazev Decl. dtd 3/6/2026, ¶ 3**.

8.       Respondents AFB Trading One, Inc. and Golden Sphinx Limited appeared in the underlying Arbitration through their counsel of record, Michael Zorkin, Esq.; through Larisa Sabadash in her capacity as corporate director of AFB Trading One, Inc. and corporate officer of Golden Sphinx Limited; and through Tatyana Alekseevna Padalko in her capacity as Financial Administrator of A.V. Sabadash. **Knyazev Decl. dtd 4/30/2026, ¶ 6-9; Ex. 14, Knyazev Decl. dtd 3/6/2026, ¶ 6-9**; **Ex. 1**, pgs. 10-11. No respondent objected to the jurisdiction of the arbitrator to adjudicate the dispute under the parties' written arbitration agreement. **Knyazev Decl. dtd 4/30/2026, ¶ 13-14; Ex. 14, Knyazev Decl. dtd 3/6/2026, ¶ 10-16**.

9.       After taking evidence and hearing argument, the Arbitration Tribunal found that the parties had agreed in writing to binding arbitration of their disputes; that the claims raised in the Arbitration were within the scope of the arbitration agreement and were properly referred to arbitration; and that the Arbitration Tribunal had jurisdiction to decide the claims and issue an award. **Ex. 1**, pgs. 1-7; **Knyazev Decl. dtd 4/30/2026, ¶¶ 8, 13-14; Ex. 14, Knyazev Decl. dtd 3/6/2026, ¶¶ 17-19**. The arbitration agreement, dated August 23, 2012, by which the parties stipulated to the arbitrator and applicable rules, is attached to the Declaration of Dmitry Valeryevich Knyazev as **Exhibit 6** thereto. **Knyazev Decl. dtd 4/30/2026, ¶ 2**.

> ### B.   *No August 25, 2021 Dismissal Order Was Ever Issued; Respondent's Forgery Allegations Are Refuted by the Apostilled Originals.*

10.      In its Opposition to the Original Petition filed in this proceeding (Dkt. No. 18), Respondent AFB Trading One, Inc. alleged and asserted that the First

**PETITIONER'S AMENDED PETITION TO CONFIRM**

Award was a "fake," "a phony," and "a forgery." Opposition (Dkt. No. 18), 1:3; see also April 21, 2026 Order (Dkt. No. 54), at p. 2. Those accusations are conclusively refuted by the duly authenticated First Award and Second Award now lodged with this Court certified by the Arbitrator and authenticated by apostille issued under the Hague Convention. **Knyazev Decl. dtd 4/30/2026, ¶¶ 1, 3-4; Ex. 14, Knyazev Decl. dtd 3/6/2026, ¶¶ 2-4, 17-19, 35-37** and **Exs. 1-2**; **Kar Decl. ¶¶ 4-6**.

11. Arbitrator Knyazev did not issue any dismissal order, ruling, or communication on or about August 25, 2021 that dismissed the Arbitration for lack of jurisdiction or otherwise terminating the proceedings. **Knyazev Decl. dtd 4/30/2026, ¶¶ 11-12, 14-15**. The document submitted to this Court as Exhibit 14 to the Declaration of Michael Zorkin (Dkt. No. 18-1, Ex. 14), dated August 25, 2021 and purporting to be an order of dismissal from Arbitrator Knyazev, was not issued by that Arbitrator and was not signed by the Arbitrator and that document is not authentic or genuine. **Knyazev Decl. dtd 4/30/2026, ¶¶ 11-12, 15; Ex. 14, Knyazev Decl. dtd 3/6/2026, ¶¶ 21-23**.

12. On August 25, 2021, no party representative for Respondents appeared at the scheduled 12:00 noon Moscow time hearing. After waiting 30 minutes, Tatyana Padalko arrived more than two and one-half hours after the scheduled start time. The arbitrator informed Ms. Padalko that he had received Respondents' late submissions and had elected to consider them notwithstanding their untimeliness; that he therefore would not proceed on the merits that day; and that the hearing was continued to August 31, 2021. Ms. Padalko acknowledged her understanding and confirmed she would notify Mr. Zorkin and Larisa Sabadash of the continued hearing date. **Knyazev Decl. dtd 4/30/2026, ¶ 10; Ex. 14, Knyazev Decl. dtd 3/6/2026, ¶ 16-17, 20, 26**.

C. *The Underlying Loan, Modification, and Guarantees.*

PETITIONER'S AMENDED PETITION TO CONFIRM

13. The Arbitration arose out of the dispute under the Loan Agreement dated April 20, 2010, between Agragorn Holdings Limited and Golden Spirits Limited; the Agreement on Modification and Deferral of Debt dated August 23, 2012, between Agragorn Holdings Limited and Golden Spirits Limited; the Corporate Guarantee dated August 23, 2012, between Agragorn Holdings Limited and AFB Trading One, Inc.; the Corporate Guarantee dated August 23, 2012, between Agragorn Holdings Limited and Golden Sphinx Limited; and the Assignment Agreement dated September 7, 2020, between Agragorn Holdings Limited and Davilla Investing Limited. **Ex. 1**, pg. 4 (bottom); **Kar Decl. ¶¶ 8-12**; **Exs. 8-12**.

14. Under the Loan Agreement, Agragorn Holdings Limited extended a loan of US $1,022,000 to Golden Spirits Limited, which Golden Spirits Limited was to repay no later than two years from the date of disbursement, with 1.1% annual interest. The loan was disbursed on April 21, 2010. Golden Spirits Limited failed to fully perform its repayment obligations. On August 23, 2012, the parties entered into the Modification and Deferral Agreement, extending the deadline to January 1, 2020, and increasing the interest rate to 6.5% per annum, compounded monthly, from the date of amendment until full repayment. **Ex. 1**, pgs. 4-5.

15. On August 23, 2012, AFB Trading One, Inc. and Golden Sphinx Limited each executed Corporate Guarantees in favor of Agragorn Holdings Limited, under which each guarantor assumed responsibility for performance of Golden Spirits Limited's obligations and, in case of default, guaranteed repayment of the debt within ten (10) days of demand. **Ex. 1**, pg. 5.

16. On September 7, 2020, Agragorn Holdings Limited and Davilla Investing Limited entered into an Assignment of Rights, transferring to Davilla Investing Limited all rights under the Loan Agreement of April 20, 2010 (as amended on August 23, 2012), together with the security in the form of the Corporate

6

PETITIONER'S AMENDED PETITION TO CONFIRM

Guarantees executed by AFB Trading One, Inc. and Golden Sphinx Limited. **Ex. 1**, pg. 5.

17. On December 21, 2020, Davilla Investing Limited demanded payment from AFB Trading One, Inc. and Golden Sphinx Limited under the guarantees. None of the obligors paid. **Ex. 1**, pg. 5.

D. *The First Award's Damages Findings*.

18. In the First Award, the Arbitration Tribunal found Respondents jointly and severally liable in the total amount of US $1,804,017.81, consisting of: (a) US $1,022,000 in principal; (b) US $1,874.53 in interest from April 21, 2010 to April 21, 2012 at 1.1% compounded monthly; and (c) US $780,143.28 in interest from April 21, 2012 to December 12, 2020 at 6.5% per annum. **Ex. 1**, pg. 13.

E. *The Assignment to Petitioner and the August 15, 2025 Second Award.*

19. On May 15, 2023, Davilla Investing Limited entered into a written Assignment Agreement with Petitioner Aleksandr Aleksandrovich Grant, assigning to him all rights and interest under the Moscow Award, the underlying loan and modification agreements, the Corporate Guarantees, and the September 7, 2020 Assignment of Rights. A true and correct copy of the May 15, 2023 Assignment Agreement is attached to the Declaration of Joseph M. Kar as **Exhibit 7 thereto**. **Kar Decl. ¶ 7**.

20. On August 15, 2025, in Moscow, Russian Federation, the same arbitrator, Knyazev Dmitry Valeryevich, reviewed the further claim filed by Aleksandr Aleksandrovich Grant, as successor of Davilla Investing Limited, against AFB Trading One, Inc. and Golden Sphinx Limited, seeking recovery of debt obligations under the prior award arising from the loan agreement, debt restructuring and deferral agreements, and corporate guarantees, in the principal amount of US $1,807,503.80, plus interest for the period from August 31, 2021 to August 15, 2025. After due notice to all parties, including Respondents, and hearing of the matter in

PETITIONER'S AMENDED PETITION TO CONFIRM

absentia as to Respondents (who failed to respond), the arbitrator issued the Second Award. A duly authenticated original of the Second Award, certified by the arbitrator with apostille, is attached to the Declaration of Dmitry Valeryevich Knyazev as **Exhibit 2** thereto. **Knyazev Decl. dtd 4/30/2026 ¶¶ 4, 16-17**.

21. In the Second Award, the Arbitration Tribunal found in favor of Petitioner and against AFB Trading One, Inc. and Golden Sphinx Limited, jointly and severally, as follows: (a) US $1,804,017.81 in debt recovery as of August 30, 2021; (b) US $962,853 in interest for the period from August 30, 2021 to August 15, 2025 at 6.5% per annum; (c) (Rubles) ₽300,000 in legal expenses (against Golden Sphinx Limited); and (d) interest from August 15, 2025 until paid. **Ex. 2**, pg. 9.

*F. Finality, Enforceability, and Interest Through July 13, 2026.*

22. Each Award states that the arbitration was held in accordance with Russian Federation Federal Arbitration Law No. 382-FZ of December 29, 2015 ("Arbitration Law," FZ-382). Under Article 38 of the Arbitration Law, "[b]y executing an arbitration agreement, the parties undertake to voluntarily perform the arbitral award." Under Article 41, "[t]he arbitral award is final and shall be immediately executed by the parties, unless it sets forth a different term of execution." **Ex. 1**, pg. 1; **Ex. 2**, pg. 1; **Kar Decl. ¶ 13** and **Ex. 13**.

23. Each Award also expressly provides that, pursuant to the parties' arbitration agreement, the award of the arbitral tribunal is final, takes legal effect immediately upon issuance, and is subject to immediate enforcement. **Ex. 1**, pg. 14; **Ex. 2**, pg. 9.

24. The total amount due and owing under the Awards as of August 15, 2025 is US $2,774,253.20. Applying the post-award interest expressly continued by the Second Award (6.5% per annum on the US $1,804,017.81 debt recovery amount), interest accrues at US $321.26 per day. From August 16, 2025 through July 13, 2026 (the date of the hearing on this Amended Petition) is a period of 332

8

**PETITIONER'S AMENDED PETITION TO CONFIRM**

days, generating additional accrued interest of US $106,659.46. The total principal judgment amount due as of July 13, 2026 is therefore *US $2,880,912.66, with continuing post-award interest accruing thereafter at US $321.26 per day until paid in full.* **Kar Decl. ¶¶ 20-23**.

25. The First Award and Second Award fall under the New York Convention because they arise out of legal and contractual relationships that are commercial and are not entirely between citizens of the United States. The relationships from which the dispute arose involved property located abroad, envisaged performance or enforcement abroad, and had reasonable relationships with one or more foreign states. 9 U.S.C. § 202.

26. This Amended Petition is authorized by Russian Federation governing law, the UNCITRAL Rules, and 9 U.S.C. § 207.

27. The New York Convention governs the enforcement and confirmation of foreign arbitral awards, including the First Award and Second Award, which were issued in the Russian Federation — a New York Convention nation. 9 U.S.C. §§ 201, 202; *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1121 (9th Cir. 2002).

28. This Court has authority to confirm the First Award and Second Award under 9 U.S.C. § 207, as each is a final award falling under the New York Convention, "made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." New York Convention, Art. I, Sec. 1.

29. No grounds for refusal or deferral of recognition or enforcement of either Award exist under Articles V or VI of the New York Convention. 9 U.S.C. § 207.

**PETITIONER'S AMENDED PETITION TO CONFIRM**

30.  Accordingly, this Amended Petition is timely because it is filed within three years after each of the First Award and Second Award was made. 9 U.S.C. § 207.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully prays that:

A.  This Court enter an order confirming the First Award and Second Award rendered by the sole arbitrator Knyazev Dmitry Valeryevich (Master of Law), pursuant to the Civil Code of the Russian Federation and UNCITRAL Arbitration Rules, as authorized by 9 U.S.C. § 207;

B.  This Court enter judgment consistent with and conforming to the First Award and Second Award, as set forth in the accompanying Proposed Judgment with the judgment in favor of Petitioner Aleksandr Aleksandrovich Grant and against Respondent AFB Trading One, Inc. in the principal amount of US $2,880,912.66 (comprising US $2,774,253.20 due through August 15, 2025 under the Awards, plus US $106,659.46 in post-award interest accrued from August 16, 2025 through July 13, 2026 at 6.5% per annum on the US $1,804,017.81 debt recovery amount), with continuing post-award interest accruing at US $321.26 per day from July 14, 2026 until paid in full;

C.  This Court award prejudgment and post-judgment interest at the legal rate, as provided by law;

D.  This Court award Petitioner attorneys' fees, costs, and disbursements incurred in this confirmation proceeding, in an amount to be determined upon separately filed motion supported by time records and documentary evidence; and

E.  This Court grant such other and further relief as the Court deems just and proper.

10

**PETITIONER'S AMENDED PETITION TO CONFIRM**

Dated: May 26, 2026

Respectfully Submitted,

**LAW OFFICE OF JOSEPH M. KAR, PC**

By: _____

Joseph M. Kar

**ATTORNEYS FOR PETITIONER,** Aleksandr Aleksandrovich Grant, Assignee And Successor Of Davilla Investing Limited

11

**PETITIONER'S AMENDED PETITION TO CONFIRM**

Joseph M. Kar (SBN 207414)
jkar@civillegal.com
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite PH-1220
Sherman Oaks, CA 91403
Telephone:  (818) 501-6930
Facsimile:   (818) 501-6935

**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH,
GRANT, ASSIGNEE AND SUCCESSOR OF
DAVILLA INVESTING LIMITED

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual<br><br>Petitioner,<br><br>v.<br><br>AFB TRADING ONE, INC., a California Corporation;<br><br>Respondents. | **Case No.: 2:25-cv-11869-JFW (MBKx)**<br><br>**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARDS**<br><br>**DATE: JULY 13, 2026**<br>**TIME:  1:30 PM**<br>**CTRM:7A**<br><br>**Judge: Honorable John F. Walter**<br>**Ctrm:  7A**<br><br>**[9 U.S.C. § 207]**<br><br>**Trial: Not set** |

**TO THE HONORABLE JOHN F. WALTER, ALL INTERESTED**

1

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM**

**PARTIES AND THEIR ATTORNEYS OF RECORDS:**

**COMES NOW**, **PETITIONER**, ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual, ("Petitioner"), by and through his attorneys, and hereby respectfully submits the following Memorandum of Points and Authorities in support of his Amended Petition to Confirm Foreign Arbitral Awards, and accompanying petition, and supporting documents,

2

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM**

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES **5**

I.    INTRODUCTION **5**

II.   FACTUAL BACKGROUND **7**

III.  THE FIRST AWARD AND SECOND AWARD MUST BE CONFIRMED UNDER THE NEW YORK CONVENTION **9**

    A.    The New York Convention Governs and Establishes a Strong Presumption in Favor of Confirmation **9**

    B.    Article IV Is Satisfied Because The Awards Are Authenticated by the Arbitrator with Apostilles **10**

    C.    Respondent's Prior Allegations of Forgery Are Fully Refuted by the Apostilled Awards and Declarations **11**

    D.    No Article V Ground for Refusal Applies **12**

IV.  PETITIONER IS ENTITLED TO ATTORNEYS' FEES, COSTS, AND CONTINUING POST-AWARD INTEREST **13**

    A.    Attorneys' Fees and Costs **13**

    B.    Continuing Post-Award Interest **15**

V.   CONCLUSION **15**

3

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM**

# TABLE OF AUTHORITIES

## Laws and Statutes

9 U.S.C. §§ 201 *et seq.*      ***Passim***

9 U.S.C. §§ 201-202      **9**

9 U.S.C. § 202      **9**


## Case Law

*Yukos Capital Limited v. Russian Federation*,
792 F. Supp. 3d 83 (D.D.C. 2025)      **9**

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
284 F.3d 1114 (9th Cir. 2002)      **9**

*Ministry of Def. of Islamic Republic v. Gould, Inc.*,
969 F.2d 764 (9th Cir. 1992)      **9**

*Changzhou AMEC Eastern Tools and Equipment Co., Ltd v. Eastern Tools & Equipment, Inc.*, 2012 WL 3106620
(C.D. Cal. July 30, 2012)      ***Passim***

*Pacer Construction Holdings Corp. v. Pelletier*, 2020 WL 977871 (S.D. Cal. Feb. 28, 2020)      **10**

*Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv.*, 682 F.2d 1280 (9th Cir. 1982)      **10**

*Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832
(9th Cir. 2010)      **10**

*Wong To Yick Wood Lock Ointment Ltd. v. Madison One Acme Inc.*, 2015 WL 13919442 (C.D. Cal. Apr. 21, 2015)      **10**

*Bergesen v. Joseph Muller Corp.*, 710 F.2d 928
(2d Cir. 1983)      **11**

*Jing Yuan v. Shuogang Chen*, 2025 WL 4649354
(C.D. Cal. May 5, 2025)      **11**

*Fertilizer Corp. of India v. IDI Mgmt., Inc.*,
517 F. Supp. 948 (S.D. Ohio 1981)      **13**

*Cont'l Transfert Tech., Ltd. v. Fed. Gov't of Nigeria*,
932 F. Supp. 2d 153 (D.D.C. 2013)      **14**

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM**

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I. INTRODUCTION.

This Court previously denied Petitioner's original Petition to confirm two foreign arbitral awards with leave to amend, and instructed that Petitioner had to overcome the Respondent's objections to authenticity with apostilled copies of the Awards, among other things. In abundance of caution, and in light of the objections Respondent, its representatives, and its counsel raised previously, Petitioner has filed and submitted multiple of the supporting documents, including originally signed declarations from the Russian Arbitrator and copies that were apostilled, as well as original and copies of the First and Second Awards which have been apostilled as well.[1] Hence the Court has more than adequate evidence to grant the petition.

Throughout the underlying arbitrations and in opposing the original Petition, Respondent and its counsel and representatives made strong objections and repeatedly insisted that the Awards were "fake," "forged," and "phony," and represented that they could never be notarized or apostilled. However, the evidence is overwhelming that Respondent, its counsel and representatives mislead and falsely argued that the awards were not genuine to delay and prevent judgment.

This amended filing and **Exhibits 1 and 2** clearly eliminate any doubt about any prior accusations conclusively since each Award is submitted with an apostille and the declarations of the arbitrator who presided over the proceedings and issued them, now also bear apostilles issued under the Hague Convention by the competent authority of the Russian Federation. Having staked their opposition on the assertion that no such authentication was possible, Respondent and its counsel

---

[1] The originally signed declarations of Aleksandr Aleksanroovich Grant and Dmitry Valeryevich Knyazev dated April 30, 2026 are being filed and submitted concurrently, although the apostilled copies thereof are still in transit and are expected to be delivered on or about June 8, 2026. Kar Decl., ¶ 2. The second declaration of Dmitry Valeryevich Knyazev dated April 30, 2026 is also originally signed but the apostilled signed copy is likewise delayed in transit until on or about June 8, 2026.

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM

and representatives have lost all credibility on the central question before the Court, and offer no ground under Article V of the New York Convention to resist confirmation of the instant Awards.

Petitioner Aleksandr Aleksandrovich Grant ("Grant") seeks confirmation of two final foreign arbitral awards under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958 (the "New York Convention"), as ratified and codified at 9 U.S.C. §§ 201 *et seq.* The First Award, entered August 31, 2021, finds Respondent AFB Trading One, Inc. and Golden Sphinx Limited jointly and severally liable in the amount of US $1,804,017.81 plus future interest, fees, and costs. **Exhibit 1.**

The Second Award, entered August 15, 2025, awards Petitioner an additional US $962,853 in interest for the period from August 30, 2021 to August 15, 2025, (Rubles) ₽300,000 in legal expenses (against Golden Sphinx Limited), and continuing interest from August 15, 2025 until paid. **Exhibit 2**. As of the July 13, 2026 hearing date set by the Court, the principal judgment amount due is US $2,880,912.66, with continuing post-award interest accruing at US $321.26 per day until paid in full. **Kar Decl. ¶¶ 20-23.**

The original Petition was filed on December 16, 2025 (Dkt. No. 1). On April 21, 2026, the Court issued its Order Denying Petition to Confirm Foreign Arbitral Award *with leave to amend* (Dkt. No. 54) (the "April 21, 2026 Order").

On May 6, 2026, the Court granted Petitioner's ex parte application to extend the time to file the amended petition and supporting documents over opposition, and set the deadline to June 1, 2026 with the hearing on the Amended Petition reset to July 13, 2026 (Dkt. No. 57). This Amended Petition cures the authentication concerns since (i) both arbitral awards are certified by the arbitrator and accompanied by an apostille issued under the Hague Convention; (ii) certified English translations of all documents originally in Russian; and (iii) a sworn declaration of the arbitrator, with apostille, setting forth the factual background of

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM**

the two underlying arbitrations and confirming the authenticity and genuineness of both Awards.

Because the Awards meet every requirement for confirmation under the New York Convention; because Article IV authentication is now satisfied through the arbitrator's apostilled declaration; because Respondent's prior accusations that the First Award is a "fake," "phony," and "forgery" are conclusively debunked and shown to be frivolous; and, because no Article V ground for refusal applies, the Amended Petition should be granted and judgment entered in favor of Petitioner with attorneys' fees and costs with such other relief and remedy as this Court finds appropriate.

## II.    FACTUAL BACKGROUND.

Grant received an award before the Arbitration Court under the *ad hoc* arbitration procedure for the resolution of a specific dispute, presided over by the sole arbitrator selected by the parties — Knyazev Dmitry Valeryevich (Master of Law) — duly constituted under the Civil Code of the Russian Federation and the UNCITRAL Arbitration Rules, in *Aleksandr Aleksandrovich Grant, Claimant, v. AFB Trading One, Inc. and Golden Sphinx Limited* (the Second Award), pursuant to a full assignment of the prior Moscow Award and the underlying agreements, in *Davilla Investing Limited, Claimant, v. Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited* (the First Award). **Knyazev Decl. ¶¶ 3-4[2]; Exs. 1-2; Grant Decl. ¶¶ 2-3[3].**

The First Award was rendered after evidentiary hearings on multiple dates in July and August 2021, at which AFB Trading One, Inc. and Golden Sphinx Limited appeared by counsel of record (Michael Zorkin, Esq.), and through Larisa Sabadash (corporate director of AFB Trading One, Inc. and corporate officer of

---

[2]     "Knyazev Decl." refers to the Declaration of the Russian Arbitrator, Knyazev Dmitry Valeryevich, executed on April 30, 2026, which is filed herewith with the apostilled copy to be lodged by on or about June 8, 2026.

[3]     "Grant Decl." refers to the Declaration of Alexsandr Aleksanrovich Grant executed on April 30, 2026, which is filed herewith with the apostilled to be lodged by on or about June 8, 2026.

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM**

Golden Sphinx Limited), and Tatyana Alekseevna Padalko (Financial Administrator of A.V. Sabadash). **Knyazev Decl. ¶¶ 3, 6-10; Grant Decl. ¶¶ 9-10.**

The First Award found Respondents jointly and severally liable in the principal amount of US $1,022,000 plus interest, totaling US $1,804,017.81 as of August 31, 2021. **Knyazev Decl. Ex. 1, pg. 13; Grant Decl. ¶ 15.**

Then, Claimant, Davilla Investing Limited subsequently assigned all of its rights and interests in the First Award and the underlying agreements to Petitioner (Grant) pursuant to the May 15, 2023 Assignment Agreement. **Kar Decl. ¶ 7 and Ex. 7; Grant Decl. ¶¶ 6, 16.** After the debtor respondents' continued non-payment, Petitioner returned to the same arbitrator, who issued the Second Award on August 15, 2025 upon due notice of the hearing to Respondents and thereafter awarding Petitioner an additional US $962,853 for interest on the unpaid amounts for the period from August 30, 2021 to August 15, 2025, (Rubles) ₽300,000 in legal expenses (against Golden Sphinx Limited), plus interest from August 15, 2025 until paid. **Knyazev Decl. ¶¶ 4, 16-17 and Ex. 2, pg. 9; Grant Decl. ¶¶ 17-19.**

Importantly, Respondent had inaccurately stated in its prior opposition to the original petition that the arbitrator dismissed the arbitration and did not issue the First Award of August 31, 2021 because it was dismissed for lack of jurisdiction or otherwise the proceedings were terminated, (Dkt. No. 18-1, Ex. 14). But there was no dismissal and the documents submitted by Respondent by their counsel (Zorkin) was neither issued nor signed by the arbitrator and is not authentic. **Knyazev Decl. ¶¶ 11-12, 14-15.** Indeed, the arbitrator confirms under penalty of perjury with apostille authentication that both the First Award and Second Award are genuine; that the seal appearing on each Award is the arbitrator's seal; and that the signature on each Award is the arbitrator's signature. **Knyazev Decl. ¶¶ 1, 3-4.**

8

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM**

Too, Respondent AFB Trading One, Inc. is a California entity, and its assets and the assets of its principals or authorized agents within the State are subject to levy or order of the Court upon entry of judgment confirming the Awards. **Kar Decl. ¶¶ 16-17.**

## III. THE FIRST AWARD AND SECOND AWARD MUST BE CONFIRMED UNDER THE NEW YORK CONVENTION.

### A. The New York Convention Governs and Establishes a Strong Presumption in Favor of Confirmation.

The New York Convention governs confirmation of the Awards because both were issued in the Russian Federation, which is a signatory to the Convention as is the United States of America. *See* 9 U.S.C. §§ 201-02; *Yukos Capital Limited v. Russian Federation*, 792 F. Supp. 3d 83 (D.D.C. 2025); *see also Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1121 (9th Cir. 2002) (New York Convention governs confirmation if nation where award was entered is party to the Convention).

The arbitration agreements and the Awards squarely fall under the Convention because they arise out of commercial legal relationships that are not entirely between citizens of the United States, the dispute involved property located abroad, and the relationships had reasonable connections with one or more foreign states. *See* 9 U.S.C. § 202.

The Convention manifests " 'a general pro-enforcement bias' " for foreign arbitral awards. *Ministry of Def. of Islamic Republic v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992) (*quoting Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 973 (2d Cir. 1974)). The presumption "is based on the goal of the Convention, which is to encourage the recognition of international arbitral agreements." *Changzhou AMEC Eastern Tools and Equipment Co., Ltd v. Eastern Tools & Equipment, Inc.*, 2012 WL

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM**

3106620, at \*8 (C.D. Cal. July 30, 2012) (*citing Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)).

As a result, "[t]he district court's . . . review of a foreign arbitration award is quite circumscribed," and "'the court *shall* confirm the award unless it finds one of the [seven] grounds for refusal . . . specified in the [New York] Convention.'" *Gould*, 969 F.2d at 770 (*emphasis* in original) (*quoting* 9 U.S.C. § 207); *see also Pacer Construction Holdings Corp. v. Pelletier*, 2020 WL 977871, at \*2 (S.D. Cal. Feb. 28, 2020) (review "is strictly limited"). Held, "Courts are bound to defer to the conclusions of the arbitrator unless the arbitrator has manifestly disregarded the law." *Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv.*, 682 F.2d 1280, 1284 (9th Cir. 1982).

As always, Respondent bears the burden of establishing a defense against enforcement under the Convention because there is a strong presumption in favor of confirmation. *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 836 (9th Cir. 2010); *Changzhou AMEC*, 2012 WL 3106620, at \*8. Pointedly, "[a]bsent a convincing showing that one of [the] narrow exceptions applies, the arbitral award will be confirmed." *Changzhou AMEC*, 2012 WL 3106620, at \*8.

**B.**     **Article IV Is Satisfied Because The Awards Are Authenticated by the Arbitrator with Apostilles.**

Originally, this Court denied the petition because the Awards were submitted without an apostille and leave to amend was granted after the objections raised by Respondent. Article IV of the New York Convention requires that "[t]he duly authenticated original award or a duly certified copy thereof" and "[t]he original [arbitration] agreement . . . or a duly certified copy thereof" be supplied to the Court. New York Convention, Art. IV; *see Wong To Yick Wood Lock Ointment Ltd. v. Madison One Acme Inc.*, 2015 WL 13919442, at \*6 (C.D. Cal. Apr. 21, 2015).

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM

Without dispute, authentication by the arbitrator who rendered the award satisfies Article IV and the apostilled copies make it irrefutable, here. "Copies of the award and the agreement which have been certified by a member of the arbitration panel provide a sufficient basis upon which to enforce the award." *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 934 (2d Cir. 1983); *see also Jing Yuan v. Shuogang Chen*, 2025 WL 4649354 (C.D. Cal. May 5, 2025) (discussing authentication standards under Article IV).

Petitioner's amended petition satisfies Article IV entirely in this case. The apostilled Declaration of Dmitry Valeryevich Knyazev, the sole arbitrator who presided over both arbitrations, includes **Exhibits 1 and 2** the original First Award and Second Award that are also apostilled and which have the Arbitrator's seals and signatures, and are confirmed by him under penalty of perjury that each Award is genuine. **Knyazev Decl. ¶¶ 3-4 and Exs. 1-2.** The Declaration is itself authenticated by an apostille issued under the Hague Convention of October 5, 1961, eliminating any question as to the genuineness of the Arbitrator's signatures attesting to the Awards. **Knyazev Decl. ¶ 1; Kar Decl. ¶¶ 4-5.** The arbitration agreement of August 23, 2012, by which the parties stipulated to Knyazev as the sole arbitrator and to the applicable rules, is attached to the Knyazev Declaration as **Exhibit 6**. **Knyazev Decl. ¶ 2 and Ex. 6.**

Petitioner has also submitted certified English translations of the First Award, the Second Award, and all other documents originally in Russian, in compliance with the April 21, 2026 Order (Dkt. No. 54). **Kar Decl. ¶ 18.** Accordingly, the Court has good cause to grant the amended petition and enter judgment as requested.

    **C.    Respondent's Prior Allegations of Forgery Are Fully Refuted by the Apostilled Awards and Declarations.**

Originally, Respondent AFB Trading One, Inc. asserted that the First Award is a "fake," "a phony," and "a forgery." **Opposition (Dkt. No. 18), 1:3;** *see also*

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM**

**April 21, 2026 Order (Dkt. No. 54), at p. 2** (quoting same). Those accusations are conclusively refuted and are shown to be frivolous calculated on misleading the Court and delaying entry of judgment pursuant to the Awards. The duly authenticated First Award and Second Award submitted concurrently with this Amended Petition (Exs. 1 and 2 hereto) are certified by the Arbitrator and are each authenticated by an apostille. **Knyazev Decl. ¶¶ 1, 3-4 and Exs. 1-2; Kar Decl. ¶¶ 4-6.** The Arbitrator confirms, under oath and with apostille authentication, that the First Award and Second Award are genuine; that the seal appearing on each Award is the arbitrator's own seal; and that the signature on each Award is the arbitrator's own signature. **Knyazev Decl. ¶¶ 3-4.**

The Arbitrator further confirms under oath and with apostille authentication that he did not issue any dismissal order on or about August 25, 2021 dismissing the Arbitration for lack of jurisdiction or otherwise terminating the proceedings, and that the document Respondent submitted to this Court as Exhibit 14 to the Zorkin Declaration (Dkt. No. 18-1, Ex. 14) was not issued by the Arbitrator, nor was it signed by the Arbitrator and it is not authentic. **Knyazev Decl. ¶¶ 11-12, 14-15.**

With the apostilled Awards properly before this Court in proper form and submitted for review, the Court may grant this amended petition and enter judgment against Respondent AFB Trading One, Inc. (CA), as a matter of law.

**D.    No Article V Ground for Refusal Applies.**

Article V of the New York Convention enumerates the exclusive grounds upon which a court may refuse recognition of a foreign arbitral award. *See* 9 U.S.C. § 201, note (Article V); *Changzhou AMEC*, 2012 WL 3106620, at *8. None applies here.

*First*, the parties had capacity and the arbitration agreement is valid as the Arbitrator and the Awards held. There is no dispute over the existence, validity and enforceability of the arbitration agreement. Indeed, the evidence at the hearing

12

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM**

was that the August 23, 2012 written Agreement on the Selection of Arbitrator and Applicable Rules was signed on behalf of Agragorn Holdings Limited, Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited, and the signatory for AFB Trading One, Inc. (Garry Itkin) confirmed his execution under sworn testimony in the underlying arbitration. **Knyazev Decl. ¶¶ 2, 8 and Ex. 6.**

*Second*, Respondent received proper notice of the appointment of the arbitrator and of the arbitration proceedings, appeared through counsel and corporate representatives, and presented its case. **Knyazev Decl. ¶¶ 5-10.**

*Third*, the Awards address only matters within the scope of the parties' submission to arbitration: the loan agreement, debt modification and forbearance agreement, corporate guarantees, and assignment of rights, all of which contain or are subject to the parties' written arbitration agreement. **Knyazev Decl. ¶¶ 8, 13-14.**

*Fourth*, the composition of the arbitral authority and the arbitral procedure conformed to the parties' agreement: a sole arbitrator, Knyazev Dmitry Valeryevich, was appointed by the parties under their written Agreement, applying the Civil Code of the Russian Federation and the UNCITRAL Arbitration Rules. **Knyazev Decl. ¶¶ 1-2 and Ex. 6.**

*Fifth*, each Award is final and binding on the parties under the Russian Federation's Federal Arbitration Law No. 382-FZ of December 29, 2015 and under the parties' own arbitration agreement. **Knyazev Decl. Ex. 1, pgs. 1, 14 and Ex. 2, pgs. 1, 9; Kar Decl. ¶ 13 and Ex. 13.** "The award will be considered 'binding' for the purposes of the Convention if no further recourse may be had to another arbitral tribunal . . . . The fact that recourse may be had to a court of law does not prevent the award from being 'binding.'" *Fertilizer Corp. of India v. IDI Mgmt., Inc.*, 517 F. Supp. 948, 956-58 (S.D. Ohio 1981).

13

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM**

*Sixth*, neither the subject matter of the dispute (a commercial loan, modification, and corporate guarantees) nor recognition of the Awards is contrary to the public policy of the United States.

Therefore, the Court can and should confirm the Awards. *See, e.g.*, *Cont'l Transfert Tech., Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 157 (D.D.C. 2013) (confirming foreign arbitral award under New York Convention).

## IV. PETITIONER IS ENTITLED TO ATTORNEYS' FEES, COSTS, AND CONTINUING POST-AWARD INTEREST.

### A. Attorneys' Fees and Costs.

Petitioner is entitled to recover attorneys' fees and costs incurred in this confirmation proceeding for at least three independent reasons.

*One*, the Awards themselves entitle Petitioner to legal fees and expenses. The Second Award holds Golden Sphinx Limited jointly liable to reimburse Petitioner (Rubles) ₽300,000 in legal expenses. **Knyazev Decl. Ex. 2, pg. 9 (sub-3); Kar Decl. ¶ 24.** Too, the First Award likewise allocates legal fees and expenses incurred in connection with the underlying arbitration. **Knyazev Decl. Ex. 1, pg. 13.**

*Two*, the parties' governing arbitration agreement, the August 23, 2012 Agreement on Selection of Arbitrator and Applicable Rules executed by AFB Trading One, Inc., provides for the recovery of legal fees and costs incurred in connection with the arbitration. **Knyazev Decl. ¶ 2 and Ex. 6; Kar Decl. ¶ 25.** Also, the Russian Federation Federal Arbitration Law No. 382-FZ likewise authorizes recovery of legal fees and expenses. **Kar Decl. ¶ 24 and Ex. 13.**

*Three*, Petitioner has been forced to incur substantial additional fees and costs in this confirmation proceeding because Respondent has refused to honor the Awards and has actively obstructed confirmation through accusations that the First Award is a "fake," "phony," or "forgery" — accusations that have now been

14

definitively refuted by the apostilled Knyazev Declaration and the duly authenticated originals of the Awards. **Kar Decl. ¶ 26.**

Accordingly, Petitioner requests recovery of attorneys' fees and costs in this proceeding, in an amount to be established by separately filed motion supported by time records and documentary evidence following entry of judgment.

### B. Continuing Post-Award Interest.

The First Award contemplating ongoing interest after that Award was issued and so does the Second Award which expressly continues post-award interest from August 15, 2025 "until paid." **Knyazev Decl. Ex. 2, pg. 9.** Applying the 6.5% per annum rate established by the Second Award to the US $1,804,017.81 debt recovery amount, post-award interest accrues at US $321.26 per day. **Kar Decl. ¶¶ 21-22.** From August 16, 2025 through July 13, 2026 (a period of 332 days), the post-award interest accrued is US $106,659.46. **Kar Decl. ¶ 22.** As such, the total principal judgment amount due as of the July 13, 2026 hearing is therefore **US $2,880,912.66**, with continuing post-award interest accruing thereafter at US $321.26 per day until paid in full. **Kar Decl. ¶ 23.**

## V. CONCLUSION.

**WHEREFORE**, the Court has good cause to grant the Amended Petition without further delay, with the Court confirming the First Award and Second Award and entering judgment as set forth in the within accompanying Proposed Judgment, in the principal amount of US $2,880,912.66 as of July 13, 2026 with continuing post-award interest at US $321.26 per day thereafter, together with an award of attorneys' fees and costs and such other and further relief as the Court deems just and proper.

///

///

///

///

15

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM**

Dated: May 26, 2026

Respectfully Submitted,

**LAW OFFICE OF JOSEPH M. KAR, PC**

By: _____

Joseph M. Kar

**ATTORNEYS FOR PETITIONER,** Aleksandr Aleksandrovich Grant, Assignee And Successor Of Davilla Investing Limited

16

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES ISO AMENDED PETITION TO CONFIRM**

Joseph M. Kar (SBN 207414)
jkar@civillegal.com
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite PH-1220
Sherman Oaks, CA 91403
Telephone:  (818) 501-6930
Facsimile:   (818) 501-6935

**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH,
GRANT, ASSIGNEE AND SUCCESSOR OF
DAVILLA INVESTING LIMITED

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual<br><br>Petitioner,<br><br>v.<br><br>AFB TRADING ONE, INC., a California Corporation;<br><br>Respondents.<br>_____ | **Case No.: 2:25-cv-11869-JFW (MBKx)**<br><br>**NOTICE OF LODGING OF APOSTILLE ORIGINAL AND APOSTILLE CERTIFIED COPY OF EXHIBITS 1, 2, 14 and 15**<br><br>**Judge: Honorable John F. Walter**<br>**Ctrm:  7A**<br><br>**[9 U.S.C. § 207]**<br><br>**Trial: Not set** |

**TO THE HONORABLE JOHN F. WALTER, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORDS:**

1

**COMES NOW**, **PETITIONER**, ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual, ("Petitioner"), by and through his attorneys, and hereby respectfully lodges the apostille original and apostille certified copy of **Exhibit 1 to the Knyazev Decl.,** the August 31, 2021 (the "First Award"); **Exhibit 2 to the Knyazev Decl.**, August 15, 2025 (the "Second Award"); **Exhibit 14 to the Kar Declaration**, the Declaration of Dmitry Valeryevich Knyazev dated March 6, 2026 (without exhibits) and; and **Exhibit 15 to the Kar Declaration**, the Declaration of Dmitry Valeryevich Knyazev dated March 10, 2026 (without exhibits).

Dated: May 26, 2026                    Respectfully Submitted,

**LAW OFFICE OF JOSEPH M. KAR, PC**

By: _____

Joseph M. Kar

**ATTORNEYS FOR PETITIONER,** Aleksandr Aleksandrovich Grant, Assignee And Successor Of Davilla Investing Limited

---

2

**NOTICE OF LODGING APOSTILLE EXHIBITS 1, 2, 14 AND 15**

# EXHIBIT 1 TO KNYAZEV DECLARATION

NOTICE OF LODGING APOSTILLE EXHIBITS 1, 2, 14 AND 15

# EXHIBIT 2 TO KNYAZEV DECLARATION

# EXHIBIT 14 TO KAR DECLARATION

NOTICE OF LODGING APOSTILLE EXHIBITS 1, 2, 14 AND 15

# EXHIBIT 15 TO KAR DECLARATION

6

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA            )
                              ) ss
COUNTY OF LOS ANGELES          )

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 15250 Ventura Blvd., Ste. 1220, Sherman Oaks, Ca 91403.

On May 27, 2026, I served the foregoing document described as **NOTICE OF LODGING OF APOSTILLE ORIGINAL AND APOSTILLE CERTIFIED COPY OF EXHIBITS 1, 2, 14 and 15** on the interested parties as follows:

MICHAEL ZORKIN (Bar No. CA 313308)

Email: mz@thezorkinfirm.com

THE ZORKIN FIRM

6320 Canoga Ave., 15th Floor

Woodland Hills, California 91367

Telephone: 323.493.8075

Attorneys for RESPONDENT(S)

X   BY EMAIL SERVICE.      I served the foregoing documents on the interested parties in this action by placing a true and correct copy thereof via electronic mail attachment to the email address for the above identified person, and I sent such electronic mail to said persons personally without any transmission error.

_   BY US MAIL        By placing the above described true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona.  I caused such envelope to be deposited in the Sherman Oaks, CA box, which is regularly maintained by US Postal Service, with delivery fees pre-paid and provided for, addressed to the person on whom said document is to be served.

NOTICE OF LODGING APOSTILLE EXHIBITS 1, 2, 14 AND 15

Executed on May 27, 2026, at Los Angeles, California.

X    (Federal) I declare that I am employed in the offices of a member of this court at whose direction the service was made.

_____

Joseph M. Kar

**NOTICE OF LODGING APOSTILLE EXHIBITS 1, 2, 14 AND 15**

Joseph M. Kar (SBN 207414)
jkar@civillegal.com
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite PH-1220
Sherman Oaks, CA 91403
Telephone: (818) 501-6930
Facsimile: (818) 501-6935

**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH,
GRANT ASSIGNEE AND SUCCESSOR OF
DAVILLA INVESTING LIMITED

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual;<br><br>Petitioner,<br><br>v.<br><br>AFB TRADING ONE, INC., a California Corporation;<br><br>Respondents. | Case No.: 2:25-cv-11869-JFW (MBKx)<br><br>**DECLARATION OF ALEXSANDR ALEKSANDROVICH GRANT, IN SUPPORT OF AMENDED PETITION TO CONFIRM <u>FOREIGN ARBITRAL AWARD</u>**<br><br>[9 U.S.C. § 207]<br><br>**Trial: Not set** |

**TO THE HONORABLE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORDS:**

**COME NOW**, PETITIONER, ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual, by and through his attorneys, and hereby files and submits the following declaration of

1

Alexsandr Aleksandrovich Grant in support of then amended petition to confirm the foreign arbitral award, as follows:

**DECLARATION ALEXSANDR ALEKSANDROVICH GRANT IN SUPPORT**

I, Alexsandr Aleksandrovich Grant, say, and declare as follows:

1. I am the petitioner in this action and I am an attorney at law duly licensed to practice in the Russian Federation. I make this declaration in support of the present Petition to Confirm the Foreign Arbitral Award pursuant to 9 U.S.C. § 207. Unless otherwise indicated, I make this declaration of my own personal knowledge, and, if called as a witness, I could and would testify competently thereto.

2. This Petition to Confirm Foreign Arbitral Award is based on a final arbitration award issued in Moscow, Russian Federation on August 31, 2021 ("Moscow Award"), in arbitration proceedings before the Arbitration Court under the ad hoc arbitration procedure for the resolution of a specific dispute, presided over by the sole arbitrator appointed and agreed upon by the parties — Knyazev Dmitry Valeryevich (Master of Law), an arbitration duly constituted under the Civil Code of the Russian Federation and pursuant to the UNCITRAL Arbitration Rules, rendered its final award in *Davilla Investing Limited, Claimant, v. Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited*. A certified true and correct copy of the Moscow Award is attached to the Declaration of Dmitry Valeryevich Knyazev, filed herewith as **Exhibit 1**.

3. The further arbitration award issued in Moscow, Russian Federation on August 15, 2025 ("Second Moscow Award), in arbitration proceedings before the Arbitration Court under the ad hoc arbitration procedure for the resolution of a specific dispute, presided over by the sole arbitrator appointed and agreed upon by the parties — Knyazev Dmitry Valeryevich (Master of Law), an arbitration duly constituted under the Civil Code of the Russian Federation and pursuant to the UNCITRAL Arbitration Rules, rendered its final award in *Aleksandr Aleksandrovich Grant, Claimant, v. AFB Trading One, Inc. and Golden Sphinx Limited*. A certified true and correct copy of the Second

DECLARATION OF ALEKSANDR GRANT IN SUPPORT OF AMENDED PET TO CONFIRM FOREIGN ARB. AWARD

Moscow Award is attached to the Declaration of Dmitry Valeryevich Knyazev, filed herewith as **Exhibit 2**.

4.   According to the Moscow Award, the Arbitration arose out of the "dispute [] from the Loan Agreement dated April 20, 2010, concluded between Agragorn Holdings Limited and Golden Spirits Limited; the Agreement on Modification and Deferral of Debt dated August 23, 2012, concluded between Agragorn Holdings Limited and Golden Spirits Limited; the Corporate Guarantee dated August 23, 2012, concluded between Agragorn Holdings Limited and AFB Trading One, Inc.; the Corporate Guarantee dated August 23, 2012, concluded between Agragorn Holdings Limited and Golden Sphinx Limited; and the Assignment Agreement dated September 7, 2020, concluded between Agragorn Holdings Limited and Davilla Investing Limited." **Exhibit 1**, pg. 4 (bottom); Petition ¶ 10.

5.   According to the Moscow Award, the Arbitration was conducted in Moscow, in the Russian Federation, during the period July 19, 2021, August 2, 5, 19, 24, 25, and 31, 2021.  Petition ¶ 7.

6.   According to the Second Moscow Award, the Arbitration rose out of an "recovery of debt obligations under the Court's decision dated August 30, 2021, arising from the loan agreement, agreements on debt restructuring and deferral, and corporate guarantees in the amount of 1,807,503.80 USD (One million eight hundred seven thousand five hundred three US dollars and eighty cents) (equivalent: 144,144,510.00 rubles), and interest for the use of funds for the period from August 31, 2021, to August 15, 2025, in the amount of 76,787,557.58 rubles (equivalent: 962,853 USD)[,]" and the assignment of rights to me.  **Exhibit 2**, pg. 1; a true and correct copy of the Assignment Agreement between Davilla Investing Limited and me, dated, May 15, 2023, is attached to the Declaration of Joseph M. Kar, Esq. as **Exhibit 7**; Petition ¶ 22.

7.   According to the Second Moscow Award, the Arbitration was conducted in Moscow, in the Russian Federation, during the period August 15, 2025. **Ex. 2**.

3

DECLARATION OF ALEKSANDR GRANT IN SUPPORT OF AMENDED PET TO CONFIRM FOREIGN ARB. AWARD

8. According to the Moscow Award and the Second Moscow Award, in connection with the above referenced business loans and agreements, the parties executed several written agreements, which contained arbitration clauses providing that any controversies between the parties arising under the Agreements would be settled by binding arbitration in accordance with the Civil Code of the Russian Federation and pursuant to UNCITRAL Arbitration rules. True and correct copies of the relevant agreements containing the arbitration clauses on which the panel based its decision are attached to the Declaration of Joseph M. Kar, Esq. filed herewith as **Exhibits 8 through 12**, consisting of (8) the original loan agreement of April 20, 2010 between Agragorn Holdings Limited and Golden Spirits Limited; **(9)** the loan modification and forbearance agreement of August 23, 2012 between Agragorn Holdings Limited and Golden Spirits Limited; **(10)** the corporate guarantee agreement of August 23, 2012 between Agragorn Holdings Limited and AFB Trading One Inc.; (11) the corporate guarantee agreement of August 23, 2012 between Agragorn Holdings Limited and Golden Sphinx Limited; and (12) the assignment of rights, etc. of September 7, 2020 between Agragorn Holdings Limited and Davilla Investing Limited. Petition ¶ 11-16.

9. According to the Moscow Award, after duly noticed and appearing before the Arbitration Tribunal by counsel (Michael Zorkin, Esq.), respondents, AFB Trading One, Inc. and Golden Sphinx Limited, raised a limited objection to the Arbitration Tribunal's jurisdiction, in that Golden Spirits Limited was in liquidation and thereafter disputed all the claims on behalf of AFB Trading One, Inc. and Golden Sphinx Limited. No respondent otherwise objected to the jurisdiction of the arbitrator to adjudicate the matter. In the Moscow Award, after taking evidence and hearing argument, the Arbitration Tribunal found that by binding written agreements the parties had agreed to binding arbitration of their disputes, that the claims raised in the arbitration were within the scope of the arbitration agreements and were properly referred to arbitration, and that the Arbitration Tribunal thus had jurisdiction to decide the claims and issue an award. **Exhibit 1**, pgs. 1-7; Petition ¶ 8.

4

DECLARATION OF ALEKSANDR GRANT IN SUPPORT OF AMENDED PET TO CONFIRM FOREIGN ARB. AWARD

10. According to the Moscow Award, represented by counsel Michael Zorkin, Esq., and appearing by Larisa Sabadash in her capacity of corporate director of AFB Trading One, Inc. and in her capacity of corporate officer of Golden Sphinx Limited, and Tatyana Alekseevna Padalko, in her capacity as Financial Administrator of Sabadash A.V. and as owner of AFB Trading One, Inc. (US equivalent of court appointed bankruptcy trustee pursuant to the decision of the Moscow Region Arbitration Court in case No. A41-100887/19 dated November 10, 2020), respondents defended the arbitration claims on their merits and asserted that the statute of limitations had expired and the invalidity of certain of the agreements. After taking evidence and hearing argument on the matters, the Arbitration Tribunal determined respondents' arguments to be unsubstantiated and that the agreements were valid. **Exhibit 1**, pgs. 11 (top). The Arbitration Tribunal, thereafter, took evidence and heard of argument on the merits of the claim on the issue of liability and amount of damages, including live testimony of the respondents' owners, principals, managers, and partners, as well as reviewed relevant documents and agreements. Petition ¶ 9.

11. According to the Moscow Award, represented by counsel Michael Zorkin, Esq., and appearing by Larisa Sabadash in her capacity of corporate director of AFB Trading One, Inc. and in her capacity of corporate officer of Golden Sphinx Limited, and Tatyana Alekseevna Padalko, in her capacity as Financial Administrator of Sabadash A.V. and as owner of AFB Trading One, Inc. (US equivalent of court appointed bankruptcy trustee pursuant to the decision of the Moscow Region Arbitration Court in case No. A41-100887/19 dated November 10, 2020), respondents defended the arbitration claims on their merits and asserted that the statute of limitations had expired and the invalidity of certain of the agreements and argued against damages. After taking evidence and hearing arguments on the matters, the Arbitration Tribunal determined respondents' arguments to be unsubstantiated and that the agreements were valid. **Exhibit 1**, pgs. 11 (top). The Arbitration Tribunal, thereafter, took evidence and heard of argument on the merits of the claim on the issue of amount of damages, including live

DECLARATION OF ALEKSANDR GRANT IN SUPPORT OF AMENDED PET TO CONFIRM FOREIGN ARB. AWARD

testimony of the respondents' owners, principals, managers, and partners, as well as reviewed relevant documents and agreements; and determined that respondents breached the loan agreements, loan modification and forbearance agreements, and the corporate guarantee agreements at issue; and, that as a result of the breaches were jointly and severally liable for losses suffered by the Claimant. **Exhibit 1**, pg. 14; Petition ¶ 9.

12. Pursuant to the Moscow Award, "[t]he arbitration was held in accordance with the Russian Federation Federal Arbitration Law No. 382-FZ of December 29, 2015" (hereinafter the "Arbitration Law," FZ-382)[,]" which under Article 38, provides: "Article 38. Binding force of the arbitral award....By executing an arbitration agreement, the parties undertake to voluntarily perform the arbitral award. The parties and the arbitral tribunal shall make all efforts to ensure that the arbitral award is legally enforceable." **Exhibit 1**, pg. 1; Petition ¶ 26.

13. Pursuant to the Moscow Award, under the Arbitration Law, FZ-382, under Article 41, in pertinent part, provides: "[t]he arbitral award is final and shall be immediately executed by the parties, unless it sets forth a different term of execution." **Exhibit 1**, pg. 1; Petition ¶ 27.

14. Pursuant to the arbitration agreement, the award of the arbitral tribunal is final, effective immediately upon issuance, and subject to immediate enforcement. In accordance with Article 238.4 of the Commercial Procedure Code of the Russian Federation, the findings of fact established by the arbitral tribunal shall not be subject to reassessment or substantive review." **Exhibit 1**, pg. 14; Petition ¶ 24 (4).

15. In the Moscow Award, the Arbitration Tribunal award damages in favor of Claimant, and against Respondents, joint and severally, in the total amount of US$1,804,017.81 (with interest at the annual of 1.1%, compounded monthly, on the amount of $1,022,000.00 from April 20, 2010 to August 31, 2021 plus legal fees and expenses[1]) as follows:

---

[1] The Moscow Award awarded legal fees and expenses in Rubles. Petitioner does not seek to recover the amounts in legal fees awarded in Rubles to avoid complications that may arise from exchange rates, but does seek to confirm the entitlement to legal fees and expenses under both awards.

6

DECLARATION OF ALEKSANDR GRANT IN SUPPORT OF AMENDED PET TO CONFIRM FOREIGN ARB. AWARD

(a) US$ 1,022,000 – principal loan amount;

(b) US$ 1,874.53, interest for the period from April 21, 2010 to April 21, 2012 at 1.1% compounded monthly;

(c) US$ 780,143.28 – interest for the period from April 21, 2012, to December 12, 2020 at 6.5% per annum.

**Exhibit 1**, pg. 13; Petition ¶ 20.

16. On May 15, 2023, claimant, Davilla Investing Limited entered into a written assignment agreement with me, assigning all rights and interest and agreements, including the Moscow Award; the Loan Agreement dated April 20, 2010, concluded between Agragorn Holdings Limited and Golden Spirits Limited; the Agreement on Modification and Deferral of Debt dated August 23, 2012, concluded between Agragorn Holdings Limited and Golden Spirits Limited; the Corporate Guarantee dated August 23, 2012, concluded between Agragorn Holdings Limited and AFB Trading One, Inc.; the Corporate Guarantee dated August 23, 2012, concluded between Agragorn Holdings Limited and Golden Sphinx Limited; and the Assignment Agreement dated September 7, 2020, concluded between Agragorn Holdings Limited and Davilla Investing Limited," to Aleksandr Aleksandrovich Grant. **Exhibit 3**; Petition ¶ 21.

17. Thereafter, I made demand for arbitration, "[o]n August 15, 2025, in Moscow, the Arbitration Court under the AD HOC arbitration procedure for the resolution of a specific dispute (hereinafter also referred to as the Court), presided over by the sole arbitrator (Judge) appointed and agreed upon by the parties — Knyazev Dmitry Valeryevich (hereinafter also referred to as the Judge or Arbitrator), reviewed the claim filed by Grant Aleksandr Aleksandrovich, the successor of Davilla Investing Limited pursuant to the Assignment Agreement dated May 15, 2023 (hereinafter also referred to as the Claimant), against AFB Trading One, Inc. (hereinafter also referred to as Respondent 1), and Golden Sphinx Limited (hereinafter also referred to as Respondent 2), seeking recovery of debt obligations under the Court's decision dated August 30, 2021, arising from the loan agreement, agreements on debt restructuring and deferral, and

7

corporate guarantees in the amount of 1,807,503.80 USD (One million eight hundred seven thousand five hundred three US dollars and eighty cents) (equivalent: 144,144,510.00 rubles), and interest for the use of funds for the period from August 31, 2021, to August 15, 2025, in the amount of 76,787,557.58 rubles (equivalent: 962,853 USD)." (Hereinafter referred to as "Second Arbitration"). **Exhibit 2**, pg. 1; Petition ¶ 22.

18.      After due notice and service of the Second Arbitration, of the composition of the Arbitration Tribunal, its date, time and place, respondents, AFB Trading One, Inc. and Golden Sphinx Limited, did not respond. After taking of evidence and hearing of argument, the Arbitration Tribunal determined that the "decision of August 30, 2021 has not been enforced by the respondents." **Exhibit 2**, pg. 5 (bottom) to pg. 6 (top); Petition ¶ 23.

19.      After due notice and service of the Second Arbitration, of the composition of the Arbitration Tribunal, its date, time and place, and after taking of evidence and hearing of argument, the Arbitration Tribunal found in favor of me, Claimant, Aleksandr Aleksandrovich Grant, the successor of Davilla Investing Limited under the Assignment Agreement dated May 15, 2023, against AFB Trading One, Inc. and Golden Sphinx Limited, joint and severally, in the total amount of US$1,804,017.81 (with interest at the annual of 6.5% compounded annually on the amount of US$1,804,017.81 from August 30, 2021 to August 15, 2025, plus legal fees and expenses[2]) as follows:

   (a) US$1,804,017.81 debt recovery amount due as of August 30, 2021; and

   (b) US$962,853 in interest for the period from August 30, 2021 to August 15, 2025 at 6.5% per annum

   (c) Plus interest from August 15, 2025 until paid.

   **TOTALING: $2,774,253.20** plus interest and legal fees and expenses on and after August 15, 2025.

---

[2]      The Second Moscow Award also awarded legal fees and expenses in Rubles. Petitioner does not seek to recover the amounts in legal fees awarded in Rubles to avoid complications that may arise from exchange rates but does seek to confirm the entitlement to legal fees and expenses under both awards.

8

**Exhibit 2**, pg. 9; Petition ¶ 24.

20. Pursuant to the Moscow Award and the Second Moscow Award, "[t]he arbitration was held in accordance with the Russian Federation Federal Arbitration Law No. 382-FZ of December 29, 2015" (hereinafter the "Arbitration Law," FZ-382)[,]" which under Article 38, provides: "Article 38. Binding force of the arbitral award….By executing an arbitration agreement, the parties undertake to voluntarily perform the arbitral award. The parties and the arbitral tribunal shall make all efforts to ensure that the arbitral award is legally enforceable." **Exhibit 1**, pg. 1; **Exhibit 2**, pg. 1; Petition ¶ 26.

21. Pursuant to the Moscow Award and the Second Moscow Award, under the Arbitration Law, FZ-382, under Article 41, in pertinent part, provides: "[t]he arbitral award is final and shall be immediately executed by the parties, unless it sets forth a different term of execution." **Exhibit 1**, pg. 1; **Exhibit 2**, pg. 2; Petition ¶ 27.

22. Pursuant to the arbitration agreement, the award of the arbitral tribunal is final, effective immediately upon issuance, and subject to immediate enforcement. In accordance with Article 238.4 of the Commercial Procedure Code of the Russian Federation, the findings of fact established by the arbitral tribunal shall not be subject to reassessment or substantive review." **Exhibit 1**, pg. 14(4); **Exhibit 2**, pg. 9(4); Petition ¶¶ 14(4) and 24 (4).

23. Therefore, the Moscow Award and Second Moscow Award are final and immediately enforceable, due and payable to me without delay. Petition ¶ 28.

24. Attached to the declaration of Joseph M. Kar, Esq. as **Exhibit 9** is a true and correct copy of the Russian Federation Federal Arbitration Law No. 382-FZ of December 29, 2015, upon information and belief.

I declare the foregoing is true and correct under the laws for penalty of perjury in the state of California and United States. Executed this 30 day of April, 2026.

Aleksandr Aleksandrovich Grant

9

Joseph M. Kar (SBN 207414)
jkar@civillegal.com
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite PH-1220
Sherman Oaks, CA 91403
Telephone: (818) 501-6930
Facsimile: (818) 501-6935

**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH,
GRANT, ASSIGNEE AND SUCCESSOR OF
DAVILLA INVESTING LIMITED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual<br><br>Petitioner,<br><br>v.<br><br>AFB TRADING ONE, INC., a California Corporation;<br><br>Respondents. | **Case No.: 2:25-cv-11869-JFW (MBKx)**<br><br>**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV AND EXHIBITS 1 TO 6 HERETO IN SUPPORT OF AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**<br><br>**Judge: Honorable John F. Walter**<br>**Ctrm: 7A**<br><br>**DATE: JULY 13, 2026**<br>**TIME: 1:30 PM**<br>**CTRM: 7A**<br><br>**[9 U.S.C. § 207]**<br><br>**Trial: Not set** |

**TO THE HONORABLE COURT, ALL INTERESTED PARTIES AND**

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

**THEIR ATTORNEYS OF RECORDS:**

COMES NOW, PETITIONER, ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual, by and through his attorneys, and hereby respectfully submits the following declaration in reply to the opposition to the petition to confirm the foreign arbitral awards:

## DECLARATION OF DMITRY VALERYEVICH KNYAZEV, RUSSIAN ARBITRATOR

I, Dmitry Valeryevich Knyazev, declare as follows:

1. I am duly authorized to practice law in the Russian Federation and am authorized and practice as an arbitrator in the Russian Federation. I have personal knowledge of the facts stated herein, except where I expressly indicate that a statement is based upon my review of public records or information in the arbitration file. If called as a witness, I could and would testify competently to the facts stated in this declaration. This declaration was made in connection with the _amended_ petition to confirm foreign arbitral awards pending with this Court. This signed declaration and its attachments/exhibits are provided with an apostille to certify and authenticate this declaration and its attachments and exhibits.

2. I am a citizen of the Russian Federation, hold a higher legal education (Diploma No. ABC 0715029, Specialized Institute of Jurisprudence of Moscow), and have no criminal record. I was duly appointed by the parties pursuant to their written Agreement on Identity of the Arbitrator and Applicable Regulations dated August 23, 2012 (the "Arbitration Agreement"), a true and correct copy of which is attached hereto as **Exhibit 6** and incorporated herein as if fully set forth. That Arbitration Agreement was received and admitted by me as evidence in the arbitration. That agreement also identifies me by name — "Juris Doctor Dmitry Valerievich Knyazev" — as the sole arbitrator appointed to serve pursuant to the parties' agreement, and reflects signatures on behalf of Agragorn Holdings

2

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

Limited, Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited. The signatory lines of the Arbitration Agreement identify Garry Itkin as the signing officer for Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited; and, as set forth in paragraph 8 below, witness Itkin testified at the underlying arbitration and confirmed under oath that he signed the Arbitration Agreement on behalf of those three entities in his respective authorized capacities, at the time of the hearing.

3.  I served as the sole arbitrator in the ad hoc arbitration concerning the debt dispute in the arbitration matter of Davilla Investing Limited against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited, Arbitration Case No. 1800-4/1301, the subject of which was decided by way of the final written arbitration award I issued on August 31, 2021. A true and correct copy of the final First Arbitration Award I issued on August 31, 2021 in the arbitration of Davilla Investing Limited against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited, Arbitration Case No. 1800-4/1301, is attached hereto as **Exhibit 1** and incorporated herein as if fully set forth. (Hereinafter "First Award").  The within First Award is genuine, contains a seal appearing on the First Award is my arbitral seal. The signature on the First Award is my signature.  In addition, the parties and their counsel made general appearances in the arbitration, including, Mr. Michael Zorkin making a general appearance for AFB Trading One, Inc. with Larissa Sabadash and Tatiana Padalko as its authorized representatives at the hearing, at the first arbitration hearing.

4.  Thereafter, a further arbitration hearing was held following an assignment of the creditor's rights under that award to Aleksandr Alksandrovich Grant by Davilla Investing Limited and concerning the non-payment of debt and the award.  After due notice to all parties of the hearing, I issued an August 15, 2025 Award and

3

---

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

made additional findings ("Second Award").  A true and correct copy of the final arbitration award I issued on August 15, 2025 in the arbitration of *Grant Aleksandr Aleksandrovich, the successor of Davilla Investing Limited against AFB Trading One, Inc. and Golden Sphinx Limited, under the Arbitration Award issued August 31, 2021 in*  Arbitration Case No. 1800-4/1301, which is attached hereto as **Exhibit 2** and incorporated herein as if fully set forth.  (Hereinafter "Second Award").  The within Second Award is genuine, contains a seal appearing on the Second Award is my arbitral seal. The signature on the Second Award is my signature.

5.  The first arbitration proceeding was commenced by Davilla Investing Limited against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited for recovery of debt arising from the loan, debt modification/ forbearance agreement, and guarantees, which Defendants failed to pay.  The arbitration file reflects that, on May 18, 2021, notice of arbitration with the statement of claim and annexes was sent by registered mail to all parties including Defendants. The file further reflected subsequent written and electronic participation by persons acting on behalf of the Respondents or aligned with their interests.

6.  During the pendency of the first arbitration, I received communications and submissions from persons identifying themselves as representatives of the Respondents, including Tatiana Padalko, Larissa Sabadash, and Michael Zorkin (including from the email address mz@thezorkinfirm.com).  These communications and submissions clearly demonstrated that the Respondents received actual notice and appeared in the underlying arbitration proceedings.  For example, I received an email from Mr. Zorkin on August 25, 2021 at or about 3:50 am entitled, "Subject: AFB Trading One, Inc. and Golden Sphinx Limited" with several attachments and writing in the body to me in Russian,

"**Mr. Knyazev,**

4

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

Please find attached the Response to the Claim of Larisa Sabadash on behalf of AFB Trading One, Inc. and Golden Sphinx Limited.

**Michael Zorkin**

Managing Partner"

A true and correct copy of Michael Zorkin's email of August 25, 2021 at 3:50 am is attached hereto as **Exhibit 3** and incorporated herein as if fully set forth.

7.  On July 19, 2021, Tatiana Padalko also wrote to the tribunal identifying herself as the financial administrator of Alexander V. Sabadash, and submitted a statement to the Tribunal with a copy of the ruling by the Moscow Region Arbitration Court in case No. A41-100887/19 dated November 10, 2020, which was appended to the case file confirming her authority to act on behalf of the Respondents.  Attached hereto as **Exhibit 4** is a true and correct copy of Ms. Padalko's email of July 19, 2021 and my reply on August 9, 2021, and incorporated herein as if fully set forth.  Her statement in substance was that the respondent organizations belonged to Sabadash and she had made accusations that the documents submitted to me in the dispute were falsified and that the claim expired under the statute of limitations. I considered those accusations and defenses in the due course of the proceedings. I reviewed the original documents presented in the arbitration, the submissions from the parties, and the additional information submitted to the tribunal. Based on that review, I found no falsification of the operative documents, and I found that the claim was not barred by the statute of limitations.

8.  As part of the first arbitration proceedings, on August 5, 2021, I sent a written request for information to Garry Itkin, which responded shortly after.  In his sworn testimony, Itkin stated, among other things, that he signed the Arbitration Agreement (**Exhibit 6**) on behalf of Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited in his respective authorized capacities, and was authorized to do so. I considered his testimony together with all

5

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

documentary evidence and party submissions in the arbitration. In the course of the arbitration, I also reviewed, among other things: (a) the April 20, 2010 Loan Agreement; (b) proof of transfer of approximately USD 1,022,000; (c) the August 23, 2012 Agreement on Modification and Deferral of Debt; (d) the related guarantees; (e) the parties' written arbitrator-selection agreement; and (f) the later assignment materials. Based on the evidence before me, I concluded that the relevant agreements were validly executed and enforceable.

9. On and about August 19, 23, 24, and 25, 2021, I received written various submissions from representatives of the Respondents, including Tatiana Padalko (in her capacity as court-appointed financial administrator for Sabadash A.V.), Larisa Sabadash (as Director of AFB Trading One, Inc. and Golden Sphinx Limited), and Attorney Michael Zorkin. I considered all of them in the arbitration. Importantly, the Respondents, by and through Mr. Zorkin and Ms. Sabadash, "confirmed proper notice of the hearing scheduled for August 25, 2021, at 12:00 PM Moscow time." **Ex. 1**, pg. 10 (bottom paragraph). Attached hereto as **Exhibit 5** is a true and correct copy of emails to/from Michael Zorkin, Esq., Larissa Sabadash and myself on July 19, 2021 and August 9, 23-25, 2021 re: AFB Trading One, Inc. and Golden Sphinx Limited, collectively, entitled "Missed deadline statement and Falsification of EV", and "Ad hoc arbitration procedure," and incorporated herein as if fully set forth.

10. On August 25, 2021, no party representative for Respondents appeared at the scheduled hearing time of 12:00 noon. I waited 30 minutes but instead Tatiana Padalko arrived more than two and one-half hours after the scheduled start time. I informed her that I had received the Respondents' late submissions and had elected to consider them despite the submissions being late; that as a result I would not proceed on the merits that day; and that the hearing was continued to August 31, 2021. Ms. Padalko acknowledged her understanding and expressed her gratitude to me that I was not proceeding without consideration of the Respondents' late

6

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

submissions.  Ms. Padalko also confirmed notice of the next hearing and that she would notify Michael Zorkin and Larisa Sabadash.

11.   At no time did I issue any order dismissing the arbitration for lack of jurisdiction at any time. No such order exists in my records and I have searched my email records and have found no communication matching the document submitted as Exhibit 14 to the Zorkin declaration filed with this Court on March 2, 2026, Dkt#18-1, Ex. 14 thereto, purportedly an order of dismissal of the underlying arbitration from me transmitted at approximately 2:12 AM on August 25, 2021. That document was not issued by me and was not signed by me.

12.   To be more precise, Respondents, by Michael Zorkin, Esq., attempted to make late submissions asserting issues such as liquidation, legal incapacity, and related defenses. However, those submissions did not invalidate the parties' arbitration agreement, did not constitute a proper and timely challenge to my appointment as the parties' selected arbitrator, and did not negate my jurisdiction under the parties' written agreement and the applicable arbitration law.  See, **Ex. 5**, above.  I want to be clear that the document attached to the declaration of Mr. Michael Zorkin in this case as Exhibit 14, Dkt# 18-1, is not authentic or genuine and is a false or fake order dismissing the underlying arbitration for lack of jurisdiction on August 25, 2021.  At no time did I issue any order at any time, dismissing the arbitration for lack of jurisdiction or terminating the proceedings. To the extent that document purports to bear my ruling or signature, it is false.

13.   But, the First Award, **Exhibit 1**, specifically finds and reflects that:

(a) Tatiana Padalko's response did not contest the arbitration agreement under the ad hoc procedure; and

(b) Larisa Sabadash's response likewise did not dispute my jurisdiction as Arbitrator, while instead only raising substantive defenses tied to liquidation and the alleged termination of guarantee obligations.

See, **Ex. 1**, pgs. 10-11.

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

14.  Thus, at no time was there any motion to dismiss or objections raised contesting my jurisdiction by the respondents, or their representatives, Tatiana Padalko, Larissa Sabadash, Michael Zorkin, or anyone on behalf of the Respondents in the First Award.

15.  I have attempted to locate the email and order Mr. Zorkin claims to have received from me on August 25, 2021 at or about 2:12 am, but after a diligent and reasonable search of my email records, I have not been able to find any such communication or transmission matching those reflected in Exhibits 14 and 15 to Mr. Zorkin's declaration, Dkt#18-1. I therefore cannot authenticate those exhibits; and again, the order purporting to dismiss the arbitration dated August 25, 2021 was NOT issued or signed by me (Exhibit 14 to Zorkin Declaration), ibid.

16.  After the First Award was issued, an application to modify and renew the award was later submitted to me because there was a continued nonpayment of the debt reflected in the First Award of August 31, 2021.  The application did not ask to re-evaluate or reconsider the merits of the First Award, but instead the relief requested included award additional relief arising from the non-payment of the debt with any accrued interest and costs, and in connection with the enforcement of an assignment of rights.

17.  After commencement of further proceedings, and proper and due notice to all parties, I reviewed the Assignment Agreement dated May 15, 2023 between Davilla Investing Limited and Grant A.A. and admitted as sufficient evidence of Mr. Grant's standing to proceed as legal successor to the creditor and with respect to his rights to the unpaid indebtedness under the First Award.  That proceeding was held in absentia since respondents did not appear or respond to the application. Therefore, on August 15, 2025, I issued a written Second Award (**Exhibit 2**) and made additional findings.

18.  After learning of the opposition and objections to the original petition in this federal action, in or about March 2026, I conducted a brief search of public

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

records and files of the courts of the Russian Federation and related public records. After said review, it is my understanding that:

· Alexander Sabadash is a felon, who has been convicted three times of fraud and bank-fraud-related offenses in the Russian Federation. He is continuously incarcerated in various Russian penitentiary facilities, serving his sentences, since approximately 2014. Currently he is in midst of two additional pending criminal fraud trials in Moscow, Russian Federation, alongside his accomplice Tatiana Padalko, formerly his attorney.

· Tatiana Padalko (Alexander Sabadash former attorney) is charged with being Alexander Sabadash's co-conspirator in one of his criminal charges for fraud. She is currently held without bail in one of Moscow jails and is being prosecuted as a co-defendant with Alexander Sabadash.

· Darya Trubina is a Russian attorney acting in defense of Alexander Sabadash and Tatiana Padalko in currently ongoing criminal fraud proceedings noted above.

· Michael Zorkin is Alexander Sabadash's attorney in the United States. He also acts as attorney for AFB Trading One, Inc. and for Larisa Sabadash, the wife of Alexander Sabadash.

19.  I include these facts not for sensational effect, but because they are directly relevant to my assessment of credibility and Respondents current or future statements they might make or any new surprise accusations of falsification of documents in this action. Indeed, the current claims of falsification and fraud were similarly being advanced Respondents or their representatives during the first arbitration itself and were rejected.

20.  As an arbitrator, I invoke and reserve all immunities, privileges, rights and entitlements permitted me under law and treaty or convention with no communication or submission hereto to be considered a waiver.

I declare under penalty of perjury that the foregoing is true and correct under

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

the laws for penalty of perjury in the United States.  Executed this $\overset{K}{30}$ day of April, 2026, in Moscow, Russian Federation.

_____

Dmitry Valeryevich Knyazev

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

# EXHIBIT 1

11

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**



«Согласовано»
Председатель МКАС при
Торгово-промышленной
палата РФ (Москва)
А.А.Костин
№ 1800-4
«06» сентябрь 20

**06 СЕН 2021**

Арбитражный суд в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

Единый арбитр (судья), выбранный и согласованный сторонами,

Князев Дмитрий Валерьевич

Адрес: 109012, РФ, город Москва, улица Ильинка, д.4, оф. 102-103/

## РЕШЕНИЕ

31 августа 2021г. в г. Москва Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора (далее также – суд), в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича (далее также – судья или арбитр), рассмотрев исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) (далее также – истец) к Голден Спиритс Лимитед (Golden Spirits Limited) (далее также – Ответчик 1), ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 2), Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее также – Ответчик 3), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) (далее также – Третье лицо) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.

Третейское разбирательство проведено в соответствии с положениями Федерального закона № 382-ФЗ от 29.12.2015 г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382), в присутствии сторон:

от истца: Давилла Инвестинг Лимитед (Davilla Investing Limited) – адвокат Селезнева Ирина Борисовна, в подтверждение полномочий к материалам дела приобщена копия доверенности Davilla Investing Limited.

от ответчика 1: Голден Спиритс Лимитед (Golden Spirits Limited)

от ответчика 2: ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) - Татьяна Падалко, финансовый управляющий Сабадаша А.В., в подтверждение полномочий к материалам дела приобщена копия Арбитражного суда Московской области по делу №А41-100887/19 от 10.11.2020г.

от ответчика 3: Голден Сфинкс Лимитед (Golden Sphinx Limited)

от третьего лица: Аграгорн Холдингс Лимитед (Agragorn Holdings Limited)

24 августа 2021г. Суд получил Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) от гр. Сабадаш Ларисы, как от директора ЭйЭфБи Трейдинг Уан, Инк (AFB One, Inc.), как от директора Голден Сфинкс Лимитед (Golden Sphinx Limited).

24 августа 2021г. Суд получил Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) от гр. Падалко Татьяны Алексеевны, как от финансового управляющего Сабадаша А.В., как от собственника ЭйЭфБи Трейдинг Уан, Инк (AFB One, Inc.).

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие нормам статей 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда.

Компетенция Третейского судьи:

В соответствии со ст. 2 Федерального закона № 382-ФЗ от 29.12.2015г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382):

2) арбитраж (третейское разбирательство) - процесс разрешения спора третейским судом и принятия решения третейским судом (арбитражного решения):

16) третейский суд - единоличный арбитр или коллегия арбитров

1) арбитр (третейский судья) - физическое лицо, избранное сторонами или избранное (назначенное) в согласованном сторонами или установленном федеральным законом порядке для разрешения спора третейским судом.

3) администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора;

Арбитражная оговорка, являющаяся частью договора, признается соглашением, не зависящим от других условий договора. Принятие арбитражного решения о том, что договор недействителен, само по себе не влечет недействительность арбитражного соглашения.

Заявление об отсутствии у третейского суда компетенции может быть сделано соответствующей стороной арбитража не позднее представления ею первого заявления по существу спора».

**До начала третейского разбирательства по существу настоящего спора, заявлений об отсутствии компетенции у Третейского судьи рассматривать данный спор, не поступило.**

Руководствуясь статьями 7, 19, 52 Закона об арбитраже, Третейский судья принял решение о наличии у него компетенции рассматривать переданный на его разрешение спор.

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие

нормам статьи 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда:

I. В соответствии с ч. 3 ст. 239 АПК РФ:

П.1 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: одна из сторон третейского соглашения, на основании которого спор был разрешен третейским судом, не обладала полной дееспособностью».

От сторон заявления по данному пункту не поступали.

П.2 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: «Третейское соглашение, на основании которого спор был разрешен третейским судом, недействительно по праву, которому стороны его подчинили, а при отсутствии такого указания - по праву Российской Федерации».

В силу ст. 7 ФЗ-382, «арбитражное соглашение является соглашением сторон о передаче в арбитраж всех или определенных споров, которые возникли или могут возникнуть между ними в связи с каким-либо конкретным правоотношением, независимо от того, носило такое правоотношение договорный характер или нет. Арбитражное соглашение может быть заключено в виде арбитражной оговорки в договоре или в виде отдельного соглашения.

При толковании арбитражного соглашения любые сомнения должны толковаться в пользу его действительности и исполнимости».

**Стороны извещены надлежащим образом о формировании состава суда, дате, месте и времени судебного разбирательства.**

В силу статьи 3 Закона об арбитраже, стороны считаются извещенными надлежащим образом, по аналогии со ст. 123 АПК РФ.

Аналогичный вывод подтвержден позицией Судебной коллегии Верховного Суда Российской Федерации от 30 декабря 2015 года N 302-ЭС15-11092:

П.5) «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства представит доказательство того, что: Состав третейского суда или процедура арбитража не соответствовали соглашению сторон или федеральному закону».

А) Состав третейского суда: В соответствии с ч. 2 ст. 11 ФЗ-382, Стороны арбитража могут согласовать по своему усмотрению процедуру избрания (назначения) арбитра или арбитров при условии соблюдения положений частей 4 - 11 настоящей статьи.

На основании соглашения о передаче прав по Договору займа от 07.09.2020, заключенного между истцом и третьим лицом;на основании Договора  о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г., заключенного между Третьим лицом, Ответчиком 1, Ответчиком 2, Ответчиком 3, утвержденного сторонами действующим в настоящее время Арбитражным регламентом ЮНСИТРАЛ стороны согласились о том, что любые споры,

разногласия, расхождения во мнениях или претензии, которые могут возникнуть из или в связи с перечисленными выше соглашениями и договорами, включая, но, не ограничиваясь, теми, которые связаны с его вступлением в силу, исполнением, изменением, нарушением, прекращением или действительностью, подлежат разрешению и окончательному урегулированию посредством арбитражного разбирательства AD HOC. Любой спор будет рассмотрен единолично согласованным сторонами Арбитром. Таким образом, данный конкретный спор передается на рассмотрение данного сформированного суда, единым арбитром назначается магистр юриспруденции Дмитрий Валерьевич Князев, Гражданин Российской Федерации.

**Личность Арбитра установлена** на основании Паспорта гражданина Российской Федерации на имя Князева Дмитрия Валерьевича, подтверждается имеющейся копией в материалах третейского дела. Наличие у избранного Третейского судьи, Князева Дмитрия Валерьевича, высшего юридического образования, подтверждается Дипломом РФ г. Москва Специализированным институтом юриспруденции № ABC 0715029, имеющейся копией в материалах третейского дела.

Отсутствие судимости подтверждается Справкой ГУ МВД России по г. Москве от 11.07.2021 г. № 13/5-099/264646-Е, имеющейся в материалах третейского дела.

Согласно разъяснениям Минюста России от 02.09.2021 г. № 12-103924/2021, Положения Федерального закона № 382-ФЗ не предусматривают возможности предоставления третейскому суду, образованному сторонами для разрешения конкретного спора, права на осуществлении функций постоянно действующего арбитражного учреждения и выполнение им функций по администрированию арбитража. Таким образом, каких-либо дополнительных лицензий или разрешений для третейского судьи, действующим законодательством не предусмотрено.

**Таким образом, формирование состава Третейского суда произведено с соблюдением положений Закона об арбитраже.**

Б) Процедура арбитража: В соответствии с п.п. 1, 2 ст. 19 Закона об арбитраже: «При условии соблюдения положений настоящего Федерального закона стороны могут по своем усмотрению договориться о процедуре арбитража. При отсутствии договоренности третейский суд может с соблюдением положений настоящего Федерального закон осуществлять арбитраж таким образом, какой он посчитает надлежащим, в том числе отношении определения допустимости, относимости и значения любого доказательства».

В соответствии с ч. 2 ст. 2 Закона об арбитраже: «Администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора».

Во исполнение данной нормы, Единый Арбитр рассмотрел спор самолично, что подтверждается материалами третейского дела:

- лично избран сторонами в арбитражном соглашении,
- лично получил исковое заявление и принял к производству,
- лично выбрал и получил в пользование помещение для проведения судебного разбирательства,
- на личный банковский счет получил арбитражный сбор,
- лично оплатил расходы, связанные с рассмотрением спора (почтовые расходы, канцелярские принадлежности, оргтехника, помещение и т.п.),
- лично направил сторонам почтой судебные извещения и иные документы,
- лично назначил и провел судебное заседание,
- лично вынес постановления и арбитражное решение,
- Возражений о нарушении процедуры арбитража от сторон не поступало.
- Заявлений о самоотводах и об отводах, не поступило.

В соответствии с ч. 1 ст. 11 ГК РФ, защиту нарушенных или оспоренных гражданских прав осуществляет в соответствии с подведомственностью дел, установленной процессуальным законодательством, суд, арбитражный суд или третейский суд.

В соответствии с ч. 1 ст. 33 АПК РФ, споры, возникающие из гражданско-правовых отношений, а также индивидуальные трудовые споры спортсменов, тренеров в профессиональном спорте и спорте высших достижений могут быть переданы сторонами на рассмотрение третейского суда при наличии между сторонами спора действующего арбитражного соглашения, если иное не предусмотрено федеральным законом.

В соответствии с ч. 3 ст. 1 Закона об арбитраже, в арбитраж (третейское разбирательство) по соглашению сторон могут передаваться споры между сторонами гражданско-правовых отношений, если иное не предусмотрено федеральным законом.

Действующее законодательство не содержит запрета на передачу споров по договорам займа, цессии, заключенными между юридическими лицами, на рассмотрение в третейский суд.

Договоры займа, цессии, не являются контрактом, заключенным в сфере закупок для государственных и муниципальных нужд, а также не является договором, заключенным в порядке, предусмотренном Федеральным законом N 223-ФЗ.

**Каких-либо заявлений от Сторон о том, что рассматриваемый спор не может быть предметом третейского разбирательства, или о наличии противоречий публичному порядку Российской Федерации, не поступало, а Третейским судьей не установлено.**

Единолично Арбитр (третейский судья), при ведении протокола судебного заседания, рассмотрел исковое заявление, представленные сторонами доказательства

## УСТАНОВИЛ:

Истец обратился в суд с иском к Ответчику 1, Ответчику 2, Ответчику 3, Третьему лицу, направив 18 мая 2021г. заказной почтой всем сторонам по делу уведомление об арбитраже с исковым заявлением с приложениями, указав:

что Истец информирует стороны о передаче требования по взысканию задолженности по Договору займа на арбитражное разбирательство;

что спор возник из Договора займа от 20 апреля 2010г. заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Голден Спиритс Лимитед (Golden Spirits Limited), Соглашения об изменении и отсрочке долга от 23 августа 2012г. заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Голден Спиритс Лимитед (Golden Spirits Limited), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и ЭйЭфБи Трейдинг Уан, Инк. (AFB Trading One. Inc.), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Голден Сфинкс Лимитед (Golden Sphinx Limited), Соглашения по передаче прав по Договору займа от 07 сентября 2020г., заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Давилла Инвестинг Лимитед (Davilla Investing Limited);

что 20 апреля 2010г. Компания Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компания Голден Спиритс Лимитед (Golden Spirits Limited) заключили договор займа. В соответствии с условиями данного договора Третье лицо предоставило заемщику в долг денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США. В соответствии с п.4.1. договора займа Ответчик 1 должен был вернуть заем не позднее двух лет с момента предоставления займа и в соответствии с п.4.2. договора займа уплатить 1,1% годовых с суммы займа. 21.04.2010г. Третье лицо перевело Ответчику 1 денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США и уплатил комиссию за перевод в размере 268,36 (Двести шестьдесят восемь) долларов США. Таким образом, в полном объеме выполнил обязательства по договору займа. Обязанности по возврату суммы займа и процентов по займу Ответчиком 1 выполнены не были в полном объеме. 23 августа 2012г. Третье лицо и Ответчик 1 заключили соглашение об изменении и отсрочке долга. В соответствии с данным соглашением стороны продлили срок исполнения обязательства по возврату долга Ответчиком 1 до «01» января 2020г. При этом процентная ставка, указанная в пункте 4.2 Договора займа, в соответствии с п.4 соглашения об изменении и отсрочке долга повышается до 6,5% годовых (в год), с ежемесячным начислением сложных процентов, начиная с даты изменения, до полной выплаты. А также

стороны согласовали следующих гарантов: ЭйЭфБи Трейдинг Уан, Инк., зарегистрированная в Штате Калифорния, США, зарегистрированные офисы которой расположены по адресу: 8501 Вилшир Бульвар, Суит 330, Беверли-Хиллз, Калифорния, США («Гарант 1»), и Голден Сфинкс Лимитед, компания, зарегистрированной в Штате Калифорния, США, зарегистрированные офисы которой расположены по адресу: 43 Ла Мотт Стрит, Сент-Хелиер, остров Джерси, JE4 8SD, Нормандские Острова («Гарант 2»). 23 августа 2012г. Третье лицо и ЭйЭфБи Трейдинг Уан, Инк.(AFB One. Inc.) заключили корпоративную гарантию в соответствии с которой Ответчик 2 отвечает перед Истцом за исполнение обязательств Ответчиком 1 в том числе в случае неисполнения Ответчиком 1 своих обязательств гарантирует погашение задолженности в течение 10 дней с момента предъявления требования. 23 августа 2012г. Третье лицо и Голден Сфинкс Лимитед (Golden Sphinx Limited) заключили корпоративную гарантию в соответствии с которой Ответчик 3 отвечает перед Истцом за исполнение обязательств Ответчиком 1 в том числе в случае неисполнения Ответчиком 1 своих обязательств гарантирует погашение задолженности в течение 10 дней с момента предъявления требования. 23 августа 2012г. Третье лицо, Ответчик 1, Ответчик 2, Ответчик 3 заключили ДОГОВОР О ВЫБОРЕ (ЛИЧНОСТИ) АРБИТРА И ПРИМЕНЯМЫХ ПРАВИЛАХ. 07 сентября 2020г. Третье лицо и компания Давилла Инвестинг Лимитед (Davilla Investing Limited), заключили соглашение по передаче прав по договору займа, в соответствии с которым, все права по договору займа от 20 апреля 2010г. с изменениями от 23 августа 2012г., заключенному между Третьим лицом и Ответчиком 1, перешли к Истцу, включая обеспечение в виде корпоративных гарантий, заключенных Третьим лицом с Ответчиком 2 и Ответчиком 3. 21 декабря 2020г. Истец направил Ответчику 2 требование об оплате задолженности Ответчика 1. 21 декабря 2020г. Истец направил Ответчику 3 требование об оплате задолженности Ответчика 1. До настоящего времени ни один из ответчиков не произвел погашение задолженности по существующим обязательствам. Таким образом, у Ответчиков есть солидарная задолженность на общую сумму 1804017,81 долл. США из которых: 1022000 долларов США – сумма основного долга. 1874,53 долл. США - сумма процентов за период с 21.04.2010г. по 21.04.2012г. 780143,28 долл. США за период с 21.04.2012г. по 12.12.2020г.;

что Истец просит солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов. Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы.

Согласно представленным суду заверенным копиям перечисленных выше договоров и соглашений, а именно: на основании арбитражного соглашения сторон, которое включено в

соглашение об изменении и отсрочке долга, заключенного между Третьим лицом и Ответчиком 1 под пунктом 12.F;на основании арбитражного соглашения сторон, которое включено в Корпоративную гарантию, заключенную между Истцом и Ответчиком 2 под пунктом 5.7;на основании арбитражного соглашения сторон, которое включено в Корпоративную гарантию, заключенную между Истцом и Ответчиком 3 под пунктом 5.7;на основании соглашения о передаче прав по Договору займа от 07.09.2020, заключенного между истцом и третьим лицом;на основании Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г., заключенного между Третьим лицом, Ответчиком 1, Ответчиком 2, Ответчиком 3, утвержденного сторонами действующим в настоящее время Арбитражным регламентом ЮНСИТРАЛ стороны согласились о том, что любые споры, разногласия, расхождения во мнениях или претензии, которые могут возникнуть из или в связи с перечисленными выше соглашениями и договорами, включая, но, не ограничиваясь, теми, которые связаны с его вступлением в силу, исполнением, изменением, нарушением, прекращением или действительностью, подлежат разрешению и окончательному урегулированию посредством арбитражного разбирательства AD HOC. Любой спор будет рассмотрен единолично согласованным сторонами Арбитром. Таким образом, данный конкретный спор передается на рассмотрение данного сформированного суда, единым арбитром назначается доктор юриспруденции Дмитрий Валерьевич Князев, Гражданин Российской Федерации.

Стороны согласились, что разрешение спора может происходить только на основе письменных материалов, предоставленных сторонами, без обязательного проведения устного слушания и вызова сторон, при этом допускается участие сторон и арбитра во встречах посредством электронной видеоконференции, например Skype. Стороны договорились, что разбирательство будет проводиться в Москве, Российская Федерация, на русском языке и в соответствии с законодательством Российской Федерации. Стороны договорились, что Арбитр определяет наличие и масштаб соглашения, подлежащего осуществлению арбитражного разбирательства, и уполномочен выносить решение, денежное или не денежное, приводить в исполнение решение, в максимально возможной степени.

20 мая 2021г. Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича вынес Определение о назначении спора к слушанию, которым был создан данный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, утвержден единым арбитром (судьей), выбранного и согласованного сторонами Князев Дмитрий Валерьевич, принято указанное выше исковое заявление к рассмотрению данным судом, назначен 25-дневный срок для подготовки дела к третейскому разбирательству с предложением сторонам представить все документы, необходимые для рассмотрения спора, включая отзывы на иск до 14 июня 2021г.

В соответствии со ст.11 Гражданского кодекса Российской Федерации «Защиту нарушенных или оспоренных гражданских прав осуществляет суд, арбитражный суд или третейский суд (далее - суд) в соответствии с их компетенцией».

В соответствии с Федеральным Законом Российской Федерации «О Третейских судах в Российской Федерации» ст.1 «1. Настоящий Федеральный закон регулирует порядок образования и деятельности третейских судов, находящихся на территории Российской Федерации. 2. В третейский суд может по соглашению сторон третейского разбирательства (далее также - стороны) передаваться любой спор, вытекающий из гражданских правоотношений, если иное не установлено федеральным законом. 3. Действие настоящего Федерального закона не распространяется на международный коммерческий арбитраж. 4. Если международным договором Российской Федерации установлен иной порядок образования и деятельности третейских судов, чем предусмотренный настоящим Федеральным законом, то применяются правила международного договора».

В соответствии с Европейской конвенцией о внешнеторговом арбитраже от 21 апреля 1961 года ст.4 Осуществление арбитражного процесса «1. Стороны арбитражного соглашения могут по своему усмотрению: «…b) предусматривать передачу споров на разрешение арбитража по данному делу (арбитраж adhoc) и в этом случае, в частности: i) назначать арбитров или устанавливать в случае возникновения какого-либо спора методы их назначения; ii) устанавливать местонахождение арбитражного суда; iii) устанавливать правила процедуры, которых должны придерживаться арбитры…».

Подготовка дела к рассмотрению проведена Арбитром надлежащим образом, а именно: Определением от 02 Августа 2021 года Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича назначил третейское разбирательство по иску Давилла Инвестинг Лимитед (Davilla Investing Limited) к Голден Спиритс Лиитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк (AFB Tradig One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям к рассмотрению на 31 августа 2021г. в 12 часов 00 минут по г. Москве по адресу: 109012, РФ, город Москва, улица Ильинка, д.4, оф. 102-103; истцу предложено представить подлинные документы в обоснование заявленных требований; ответчикам и третьему лицу в срок до 25 августа 2021г. предложено представить в суд отзывы на иск, подтвержденные документально, в судебное заседание подлинные документы в обоснование возражений. 05 августа 2021 года Арбитром направлен судебный запрос свидетелю по делу в лице Гарри Иткин (Garry Itkin).

Свидетель Гарри Иткин (Garry Itkin) на запрос суда представил надлежащим образом оформленные свидетельские показания, имеющие значения для правильного разрешения спора, а именно показал:

1.    Да, 20 апреля 2010-го года я являлся Директором компании Golden Spirits Limited

2.     Да, я подписывал договор займа между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 20 апреля 2010-го года на сумму USD 1,022,000

3.     Да, я подтверждаю мою подпись на договоре займа между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 20 апреля 2010-го года на сумму USD 1,022,000

4.     Да, я был уполномочен подписывать договор займа между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 20 апреля 2010-го года на сумму USD 1,022,000

5.     Да, сумма USD 1,022,000 была ли перечислена на счёт компании Golden Spirits Limited компанией Agragorn Holdings Limited 21 апреля 2010-го года в соответствии с договором займа от 20 апреля 2010-го года

6.     Да, сумма USD 1,022,000 была ли зачислена на счёт компании Golden Spirits Limited банком указанном в договоре займа от 20 апреля 2010-го года

7.     Нет, компания Golden Spirits Limited не возвратила компании Agragorn Holdings Limited долг в соответствии с договором займа от 20 апреля 2010-го года

8.     Да, 23 августа 2012-го года я являлся Директором компании Golden Spirits Limited?

9.     Да, я подписывал соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Spirits Limited

10.     Да, я подтверждаю мою подпись на соглашении об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Spirits Limited

11.     Да, я был уполномочен подписывать соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Spirits Limited

12.     Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года безусловно отвечало интересам компании Golden Spirits Limited и было подписано в интересах компании Golden Spirits Limited

13.     Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно выгодным для компании Golden Spirits Limited

14.     Да, встречное удовлетворение в соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно являлось достаточным для компании Golden Spirits Limited

15.     23 августа 2012-го года я являлся Директором компании Golden Sphinx Limited

16. Да, я подписывал соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Sphinx Limited

17. Да, я подтверждаю мою подпись на соглашении об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Sphinx Limited

18. Да, я был уполномочен подписывать соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Sphinx Limited

19. Да, компания Golden Sphinx Limited была материально заинтересована в финансовом успехе компании Golden Spirits Limited

20. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года безусловно отвечало интересам компании Golden Sphinx Limited и было подписано в интересах компании Golden Sphinx Limited

21. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно выгодным для компании Golden Sphinx Limited

22. Да, встречное удовлетворение в соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно являлось достаточным для компании Golden Sphinx Limited

23. 23 августа 2012-го года я являлся Президентом, Финансовым и Исполнительным Директором и Казначеем, компании AFB Trading One Inc

24. Да, я подписывал соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании AFB Trading One Inc

25. Да, я подтверждаю мою подпись на соглашении об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании AFB Trading One Inc

26. Да, я был уполномочен подписывать соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании AFB Trading One Inc

27. Да, компания AFB Trading One Inc была материально заинтересована в финансовом успехе компании Golden Spirits Limited

28. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года безусловно отвечало интересам компании AFB Trading One Inc и было подписано в интересах компании AFB Trading One Inc

29.      Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно выгодным для компании AFB Trading One Inc

30.      Да, встречное удовлетворение в соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно являлось достаточным для компании AFB Trading One Inc

31.      Да, я подписывал корпоративную гарантию от лица компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, безотзывно и безоговорочно гарантируя компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited

32.      Да, я подтверждаю мою подпись на корпоративной гарантии от лица компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

33.      Да, я был уполномочен подписывать корпоративную гарантию от лица компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

34.      Да, компания Golden Sphinx Limited была материально заинтересована в финансовом успехе компании Golden Spirits Limited

35.      Да, безотзывная и безоговорочная гарантия своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компанией Agragorn Holdings Limited от 23 августа 2012-го года безусловно отвечала интересам компании Golden Sphinx Limited и была подписана в интересах компании Golden Sphinx Limited

36.      Да, выпуск безотзывной и безоговорочной гарантии своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компанией Agragorn Holdings Limited от 23 августа 2012-го года был безусловно выгодным для компании Golden Sphinx Limited

37.      Да, встречное удовлетворение в корпоративной гарантии компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, гарантирующее компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited, безусловно являлось достаточным для компании Golden Sphinx Limited

38.      Да, я подписывал корпоративную гарантию от лица компании AFB Trading One Inc в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, безотзывно и безоговорочно гарантируя компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited

39.      Да, я подтверждаю мою подпись на корпоративной гарантии от лица компании AFB Trading One Inc в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

40.      Да, я был уполномочен подписывать корпоративную гарантию от лица компании AFB Trading One Inc в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

41. Да, компания AFB Trading One Inc была материально заинтересована в финансовом успехе компании Golden Spirits Limited

42. Да, безотзывная и безоговорочная гарантия своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компанией Agragorn Holdings Limited от 23 августа 2012-го года безусловно отвечала интересам компании AFB Trading One Inc и была подписана в интересах компании AFB Trading One Inc

43. Да, выпуск безотзывной и безоговорочной гарантии своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компании Agragorn Holdings Limited от 23 августа 2012-го года был безусловно выгодным для компании AFB Trading One Inc

44. Да, встречное удовлетворение в корпоративной гарантии компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, гарантирующее компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited, безусловно являлось достаточным для компании AFB Trading One Inc

45. Да, я подписывал соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Spirits Limited

46. Да, я подтверждаю свою подпись на соглашении о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Spirits Limited

47. Да, я был уполномочен подписывать соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Spirits Limited

48. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно отвечало интересам компании Golden Spirits Limited и было подписано в интересах компании Golden Spirits Limited

49. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года был безусловно выгодным для компании Golden Spirits Limited

50. Да, встречное удовлетворение в соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно являлось достаточным для компании Golden Spirits Limited

51. Да, я подписывал соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Sphinx Limited

52. Да, я подтверждаю свою подпись на соглашении о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Sphinx Limited

53. Да, я был уполномочен подписывать соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Sphinx Limited

54. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно отвечало интересам компании Golden Sphinx Limited и было подписано в интересах компании Golden Sphinx Limited

55. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года был безусловно выгодным для компании Golden Sphinx Limited

56. Да, встречное удовлетворение в соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно являлось достаточным для компании Golden Sphinx Limited

57. Да, я подписывал соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании AFB Trading One Inc

58. Да, я подтверждаю свою подпись на соглашении о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании AFB Trading One Inc

59. Да, я был уполномочен подписывать соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании AFB Trading One Inc

60. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно отвечало интересам компании AFB Trading One Inc и было подписано в интересах компании AFB Trading One Inc

61. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года был безусловно выгодным для компании AFB Trading One Inc

62. Да, встречное удовлетворение в соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно являлось достаточным для компании AFB Trading One Inc

19.07.2021 года в рамках рассмотрения настоящего дела от Татьяна Падалко, представившаяся финансовым управляющим Сабадаша А.В., в подтверждение полномочий к материалам дела приобщена копия Арбитражного суда Московской области по делу №А41-100887/19 от 10.11.2020г., позволяющих действовать от имени ответчиков, заявила в переписке, направленной суду: «Добрый день, я являюсь финансовым управляющим Сабадаша А.В. Организации – ответчики принадлежат Сабадашу А.В. Документы по данному спору были сфальсифицированы прошу представить ваши контактные данные для связи» (цитата из письма Татьяна Падалко <arbitrpadalko@gmail.com>). Данные заявления Татьяны Падалко оценены Арбитром в качестве доказательств наравне с иными доказательствами по делу.

19 августа 2021г. Суд получил от ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) ходатайство, где указанные Ответчики ставят вопрос о компетенции данного Суда в связи с ликвидацией 31.10.2013г. Ответчика Компании Голден Спиритс Лимитед (Golden Spirits Limited), участника данного спора и подписанта Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г.

24 августа 2021г. Суд получил Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) подписанный гр. Падалко Татьяны Алексеевны, как от финансового управляющего Сабадаша А.В., как от собственника ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), где не оспаривается соглашение о назначении арбитра в рамках арбитражной процедуры AD HOC, где также заявляется о прекращении деятельности в связи с ликвидацией 31.10.2013г. Ответчика -

Компании Голден Спиритс Лимитед (Golden Spirits Limited), поручителями по обязательствам которой являются Голден Сфинкс Лимитед (Golden Sphinx Limited), а также обязательства ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.). Представитель Ответчика просит отказать в удовлетворении иска в связи с утратой правоспособности заемщика Компании Голден Спиритс Лимитед (Golden Spirits Limited) с 01.10.2013г.

25 августа 2021г. Суд получил электронное сообщение от Managing Attorney Michael Zorkin: "Господин Князев, Прилагаю Отзыв На Исковое Заявление Ларисы Сабадаш от имени AFB Trading One, Inc. и Golden Sphinx Limited". Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) от гр. Сабадаш Ларисы (датированное 24.08.2021г., как от директора ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), как от директора Голден Сфинкс Лимитед (Golden Sphinx Limited), в которым подтверждает надлежащее уведомление о судебном рассмотрении 25 августа 2021г. в 12-00 по мск времени спора Арбитром, подтверждает заключение соглашения от 23.12.2012г. между сторонами и не оспаривает компетенцию Арбитра, указывает на то, что с 03.10.2016г. является директором ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), с 17.09.2019г. является директором Голден Сфинкс Лимитед (Golden Sphinx Limited), просит учесть, что Голден Спиритс Лимитед (Golden Spirits Limited) не существует с 31.10.2013г., заявляет, что поскольку основной заемщик Голден Спиритс Лимитед (Golden Spirits Limited)с 01.10.2013г. утратил правоспособность, соответственно полагает, что и обеспечивающие его обязательства по договорам поручительства следует считать прекратившимися, на основании чего просит отказать истцу в иске.

Суд рассмотрел отзыв гр. Сабадаш Ларисы и позицию ее представителя Михаила Зорькина, усмотрев признание и наличие долговых обязательств Голден Сфинкс Лимитед (Golden Sphinx Limited), а также обязательства ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.).

В соответствии со ст. 309 Гражданского кодекса Российской Федерации обязательства должны исполняться надлежащим образом в соответствии с условиями обязательства и требованиями закона.

Доводы представителей Ответчиков о пропуске срока исковой давности Арбитр усматривает несостоятельными постольку, поскольку гарантийные обязательства по займу Компании Голден Спиритс Лимитед (Golden Spirits Limited) были выданы до 01.10.2013г., а соответственно являются действующими.

Суд, рассмотрев в судебном заседании заявление финансового управляющего Сабадаша А.В., Падалко Т.А. о том, что организации – ответчики принадлежат Сабадашу А.В., с целью проверки указанных доводов по ходатайству истца изучил дело № А40-165165/18 по иску в Арбитражный суд г. Москвы Индивидуального предпринимателя Гофман Е. к Простому товариществу "Иткин и Сабадаш" с требованием об установлении факта заключения и действия договора. 10 октября 2019г. Решение Арбитражного суда города Москвы от 14.09.2018 г. по апелляционной жалобе гр. Сабадаша А.В., оспаривавшего факт создания Простого Товарищества «Иткин и Сабадаш» и принадлежность последнему имущества и активов, а именно: 1. ОАО

"Русский Дизель" (адрес: Ленинградская область, Всеволожский район, станция Кирпичный завод, промзона); взнос активов ОАО "Русский Дизель" в качестве уставного капитала в компанию "Дизель Лимитед" (Diesel Limited) находящуюся на острове Джерси, Великобритания; 2.ОАО "Выборгская целлюлоза" (адрес: Ленинградская область, Выборгский район, пос. Советский ул. Заводская д.2); взнос активов ОАО "Выборгская целлюлоза" в качестве уставного капитала в компанию "Выборг Лимитед" (Vyborg Limited) находящуюся на острове Джерси, Великобритания; 3.ЗАО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Синопская наб, д.56-58); 4.ООО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Красное село, ул. Нагорная д.5); 5.Земельные паи в совхоз "Ленинский луч" (Московская область, Красногорский район) 987 га, совхоз "Петровский" (Московская область, Красногорский район) 197 га, совхоз "Ильинский" (Московская область, Красногорский район) 430 га, совхоз "Дмитровский" (Московская область, Красногорский район) 360 га; 6.Покупка недвижимого имущества находящегося по адресу: США, штат Калифорния, город Беверли Хиллс, улица Беверли Парк, д.58; 7. покупка самолета Гольфстрим G500; исключая имущество Заказчика: недвижимое имущество, расположенное по адресу: Франция, Кап Феррат, бульвар имени Генерала де Голя, д. 17; самолет Фалькон 200, бортовой номер HB VNG, в связи с нахождением имущества за пределами РФ., что было проверено и удостоверено Девятым Арбитражный Апелляционный Суд города Москвы в Определении от 12.09.2019 г., который рассмотрев в судебном заседании, дал оценку представленным доказательством и доводам господина Сабадаша, изложенных в его апелляционной жалобе, установил и подтвердил существование Простого Товарищества «Иткин и Сабадаш».

Таким образом изучив материалы дела № А40-165165/18, учитывая преюдициальность судебных актов, вступивших в законную силу и подлежащих обязательному исполнению, ответы сторон, третьих лиц и свидетелей на судебные запросы, Суд установил, что вопреки заявлению финансового управляющего Сабадаша А.В., гр. Падалко Т.А., организации – ответчики и активы, которыми они владеют, фактически принадлежат Простому Товариществу «Иткин и Сабадаш», хотя номинально зарегистрированы на имя Сабадаша А.В. и Амбер Траст (Amber Trust), управляемый Сабадашем А.В.

**Суд в ходе рассмотрения доказательств по данному делу установил следующее:**

- Ответчик 1, Голден Спиритс Лимитед (Golden Spirits Limited), находясь в номинальном владении Сабадаша А.В, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Ответчик 2, ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.), находясь в номинальном владении траста Амбер Траст (Amber Trust), управляемым Сабадашем А.В, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Ответчик 3, Голден Сфинкс Лимитед (Golden Sphinx Limited), находясь в номинальном владении траста Амбер Траст (Amber Trust), управляемым Сабадашем А.В, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- ОАО "Русский Дизель" (адрес: Ленинградская область, Всеволожский район, станция Кирпичный завод, промзона), и компания "Дизель Лимитед" (Diesel Limited) находящаяся на острове Джерси, Великобритания, находясь в номинальном владении Ответчика 2, фактически принадлежат Простому Товариществу «Иткин и Сабадаш»;

- ОАО "Выборгская целлюлоза" (адрес: Ленинградская область, Выборгский район, пос. Советский ул. Заводская д.2) и компания "Выборг Лимитед" (Vyborg Limited), находящаяся на острове Джерси, Великобритания, находясь в номинальном владении Ответчика 2, фактически принадлежат Простому Товариществу «Иткин и Сабадаш»;

- Недвижимое имущество, находящееся по адресу: США, штат Калифорния, город Беверли Хиллс, улица Беверли Парк, д.58, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Самолет Гольфстрим G500 фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Недвижимое имущество, расположенное по адресу: Франция, Кап Феррат, бульвар имени Генерала де Голя, д. 17 фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

Согласно представленным Арбитру доказательствам, 21.04.2010г. Третье лицо перевело Ответчику 1 денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США и уплатил комиссию за перевод в размере 268,36 (Двести шестьдесят восемь) долларов США. Таким образом, в полном объеме выполнил обязательства по договору займа. Обязанности по возврату суммы займа и процентов по займу Ответчиком 1 выполнены не были.

23 августа 2012г. Третье лицо и Ответчик 1 заключили соглашение об изменении и отсрочке долга. В соответствии с данным соглашением стороны продлили срок исполнения обязательства по возврату долга Ответчиком 1 до «01» января 2020г. При этом процентная ставка, указанная в пункте 4.2 Договора займа, в соответствии с п.4 соглашения об изменении и отсрочке долга повышается до 6,5% годовых (в год), с ежемесячным начислением сложных процентов, начиная с Даты изменения, до полной выплаты. А также стороны согласовали следующих гарантов: ЭйЭфБи Трейдинг Уан, Инк., зарегистрированная в Штате Калифорния, США, зарегистрированные офисы которой расположены по адресу: 8501 Вилшир Бульвар, Суит 330, Беверли-Хиллз, Калифорния, США («Гарант 1»), и Голден Сфинкс Лимитед, зарегистрированные офисы которой расположены по адресу: 43 Ла Мотт Стрит, Сент-Хелиер, остров Джерси, JE4 8SD, Нормандские Острова («Гарант 2»).

23 августа 2012г. Третье лицо и ЭйЭфБи Трейдинг Уан, Инк.(AFB Tradig One.Inc.) (далее – Ответчик 2) заключили корпоративную гарантию в соответствии с которой Ответчик 2 отвечает перед Истцов за исполнение обязательств Ответчиком 1 в том числе в случае неисполнения Ответчиком1 своих обязательств гарантирует погашение задолженности в течение 10 дней с момента предъявления требования.

23 августа 2012г. Третье лицо и Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее – Ответчик 3) заключили корпоративную гарантию в соответствии с которой Ответчик 3 отвечает

перед Истцов за исполнение обязательств Ответчиком 1 в том числе в случае неисполнен Ответчиком1 своих обязательств гарантирует погашение задолженности в течение 10 дней момента предъявления требования.

23 августа 2012г. Третье лицо, Ответчик 1, Ответчик 2, Ответчик 3 заключили ДОГОВОР ВЫБОРЕ (ЛИЧНОСТИ) АРБИТРА И ПРИМЕНЯМЫХ ПРАВИЛАХ

07 сентября 2020г. Третье лицо и компания Давилла Инвестинг Лимитед (Davilla Investin Limited) (далее Истец), заключили соглашение по передаче прав по договору займа, в соответстви с которым, все права по договору займа от 20 апреля 2010г. с изменениями от 23 августа 2012г. заключенному между Третьим лицом и Ответчиком 1, перешли к Истцу, включая обеспечение виде корпоративных гарантий, заключенных Третьим лицом с Ответчиком 2 и Ответчиком 3.

21 декабря 2020г. Истец направил Ответчику 2 требование об оплате задолженности Ответчика 1.

21 декабря 2020г. Истец направил Ответчику 3 требование об оплате задолженности Ответчика 1.

До настоящего времени ни один из ответчиков не произвел погашение задолженности по существующим обязательствам.

**Изложенные выше обстоятельства подтверждаются следующими доказательствами:**

1. Договор займа от 20 апреля 2010г. между Третьим лицом и Ответчиком 1;

2. Банковская выписка от 21 апреля 2010г. подтверждающая перевод 1022000 долларов США от Третьего лица Ответчику 1;

3. Соглашение об изменении и отерочке долга от 23 августа 2012г. между Третьим лицом и Ответчиком 1;

4. Корпоративная гарантия от 23 августа 2012г. выданная Ответчиком 2 Третьему лицу;

5. Корпоративная гарантия от 23 августа 2012г. выданная Ответчиком 3 Третьему лицу;

6. Соглашение по передаче прав по договору займа от 07 сентября 2020г. между Третьим лицом и Истцом.

7. Требованиями об оплате задолженности.

В соответствии со ст.810 ГК РФ «... Заемщик обязан возвратить займодавцу полученную сумму займа в срок и в порядке, которые предусмотрены договором займа».

В соответствии со ст.809 ГК РФ «1. Если иное не предусмотрено законом или договором займа, займодавец имеет право на получение с заемщика процентов за пользование займом в размерах и в порядке, определенных договором. При отсутствии в договоре условия о размере процентов за пользование займом их размер определяется ключевой ставкой Банка России, действовавшей в соответствующие периоды.

2. Размер процентов за пользование займом может быть установлен в договоре с применением ставки в процентах годовых в виде фиксированной величины, с применением ставки в процентах годовых, величина которой может изменяться в зависимости от предусмотренных договором условий, в том числе в зависимости от изменения переменной величины, либо иным путем, позволяющим определить надлежащий размер процентов на момент их уплаты.

3. При отсутствии иного соглашения проценты за пользование займом выплачиваются ежемесячно до дня возврата займа включительно...».

В соответствии со ст.363 ГК РФ «1. При неисполнении или ненадлежащем исполнении должником обеспеченного поручительством обязательства поручитель и должник отвечают перед кредитором солидарно, если законом или договором поручительства не предусмотрена субсидиарная ответственность поручителя.

2. Поручитель отвечает перед кредитором в том же объеме, как и должник, включая уплату процентов, возмещение судебных издержек по взысканию долга и других убытков кредитора, вызванных неисполнением или ненадлежащим исполнением обязательства должником, если иное не предусмотрено договором поручительства.

3. Лица, совместно давшие поручительство (сопоручители), отвечают перед кредитором солидарно, если иное не предусмотрено договором поручительства. Если из соглашения между сопоручителями и кредитором не следует иное, сопоручители, ограничившие свою ответственность перед кредитором, считаются обеспечившими основное обязательство каждый в своей части. Сопоручитель, исполнивший обязательство, имеет право потребовать от других лиц, предоставивших обеспечение основного обязательства совместно с ним, возмещения уплаченного пропорционально их участию в обеспечении основного обязательства...».

В соответствии со ст. 384 ГК РФ «Если иное не предусмотрено законом или договором, право первоначального кредитора переходит к новому кредитору в том объеме и на тех условиях, которые существовали к моменту перехода права. В частности, к новому кредитору переходят права, обеспечивающие исполнение обязательства, а также другие связанные с требованием права, в том числе право на проценты...».

Таким образом, у Ответчиков есть солидарная задолженность на общую сумму 1804017,81 долл. США из которых:

1022000 долларов США – сумма основного долга.

1874,53 долл. США - сумма процентов за период с 21.04.2010г. по 21.04.2012г.

780143,28 долл. США за период с 21.04.2012г. по 12.12.2020г.

В соответствии с Федеральным Законом Российской Федерации «О Трстейских судах в Российской Федерации» ст.16.

В соответствии с Арбитражным регламентом ЮНСИТРАЛ (регламент, принятый Комиссией ООН по праву международной торговли в 1976 г. и рекомендованный к использованию Генеральной Ассамблеей ООН 15 декабря 1976 г. с изменениями).

31 августа 2021г. третейский суд, образованный сторонами для разрешения конкретного спора в составе единоличного третейского судьи, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича, рассмотрев исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) ( истец) к Голден Спиритс Лимитед (Golden Spirits Limited) (Ответчик 1), ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (Ответчик 2), Голден Сфинкс Лимитед (Golden Sphinx Limited) (Ответчик 3), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям

## РЕШИЛ:

1. Удовлетворить исковые требования по иску Давилла Инвестинг Лимитед (Davilla Investing Limited) к Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.

2. Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов.

3. Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы в размере 278000 (Двести семьдесят восемь тысяч) рублей.

4. В соответствии с арбитражным соглашением, решение третейского суда окончательно. Вступает в законную силу немедленно с даты принятия, подлежит немедленному исполнению. В соответствии с ч. 4 ст. 238 АПК РФ, обстоятельства, установленные третейским судом, не подлежат переоценке либо пересмотру, по существу.

Арбитражный суд

в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

единый арбитр (судья),

выбранный и согласованный сторонами

Князев Дмитрий Валерьевич

АРБИТРАЖНЫЙ СУД
В РАМКАХ АРБИТРАЖНОЙ ПРОЦЕ
AD.

ЕДИНЫЙ АРБИТР

КНЯЗЕВ
ДМИТРИЙ ВАЛЕРЬЕВИЧ

# INTENTIONALLY LEFT BLANK



**КОПИЯ**



«Согласовано»
Председатель МКАС при
Торгово-промышленной
палате РФ (Москва)
А. Костин
№ 1800-4
«06» ...... 20..

**0 6 СЕН 2021**

Арбитражный суд в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

Единый арбитр (судья), выбранный и согласованный сторонами,

Князев Дмитрий Валерьевич

Адрес: 109012, РФ, город Москва, улица Ильинка, д.4, оф. 102-103/

## РЕШЕНИЕ

31 августа 2021г. в г. Москва Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора (далее также – суд), в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича (далее также – судья или арбитр), рассмотрев исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) (далее также – истец) к Голден Спиритс Лимитед (Golden Spirits Limited) (далее также – Ответчик 1), ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 2), Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее также – Ответчик 3), Аграгорн Холдингс Лимитед (Agragorn Holdings.Limited) (далее также – Третье лицо) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.

Третейское разбирательство проведено в соответствии с положениями Федерального закона № 382-ФЗ от 29.12.2015 г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382), в присутствии сторон:

от истца: Давилла Инвестинг Лимитед (Davilla Investing Limited) – адвокат Селезнева Ирина Борисовна, в подтверждение полномочий к материалам дела приобщена копия доверенности Davilla Investing Limited.

от ответчика 1: Голден Спиритс Лимитед (Golden Spirits Limited)

от ответчика 2: ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) - Татьяна Падалко, финансовый управляющий Сабадаша А.В., в подтверждение полномочий к материалам дела приобщена копия Арбитражного суда Московской области по делу №А41-100887/19 от 10.11.2020г.

от ответчика 3: Голден Сфинкс Лимитед (Golden Sphinx Limited)

от третьего лица: Аграгорн Холдингс Лимитед (Agragorn Holdings Limited)

24 августа 2021г. Суд получил Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) от гр. Сабадаш Ларисы, как от директора ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), как от директора Голден Сфинкс Лимитед (Golden Sphinx Limited).

24 августа 2021г. Суд получил Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) от гр. Падалко Татьяны Алексеевны, как от финансового управляющего Сабадаша А.В., как от собственника ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.).

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие нормам статей 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда.

Компетенция Третейского судьи:

В соответствии со ст. 2 Федерального закона № 382-ФЗ от 29.12.2015г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382):

2) арбитраж (третейское разбирательство) - процесс разрешения спора третейским судом и принятия решения третейским судом (арбитражного решения):

16) третейский суд - единоличный арбитр или коллегия арбитров

1) арбитр (третейский судья) - физическое лицо, избранное сторонами или избранное (назначенное) в согласованном сторонами или установленном федеральным законом порядке для разрешения спора третейским судом.

3) администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора;

Арбитражная оговорка, являющаяся частью договора, признается соглашением, не зависящим от других условий договора. Принятие арбитражного решения о том, что договор недействителен, само по себе не влечет недействительность арбитражного соглашения.

Заявление об отсутствии у третейского суда компетенции может быть сделано соответствующей стороной арбитража не позднее представления ею первого заявления по существу спора».

**До начала третейского разбирательства по существу настоящего спора, заявлений об отсутствии компетенции у Третейского судьи рассматривать данный спор, не поступило.**

Руководствуясь статьями 7, 19, 52 Закона об арбитраже, Третейский судья принял решение о наличии у него компетенции рассматривать переданный на его разрешение спор.

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие

нормам статей 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда:

I. В соответствии с ч. 3 ст. 239 АПК РФ:

П.1 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: одна из сторон третейского соглашения, на основании которого спор был разрешен третейским судом, не обладала полной дееспособностью».

От сторон заявления по данному пункту не поступали.

П.2 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: «Третейское соглашение, на основании которого спор был разрешен третейским судом, недействительно по праву, которому стороны его подчинили, а при отсутствии такого указания - по праву Российской Федерации».

В силу ст. 7 ФЗ-382, «арбитражное соглашение является соглашением сторон о передаче в арбитраж всех или определенных споров, которые возникли или могут возникнуть между ними в связи с каким-либо конкретным правоотношением, независимо от того, носило такое правоотношение договорный характер или нет. Арбитражное соглашение может быть заключено в виде арбитражной оговорки в договоре или в виде отдельного соглашения.

При толковании арбитражного соглашения любые сомнения должны толковаться в пользу его действительности и исполнимости».

**Стороны извещены надлежащим образом о формировании состава суда, дате, месте и времени судебного разбирательства.**

В силу статьи 3 Закона об арбитраже, стороны считаются извещенными надлежащим образом, по аналогии со ст. 123 АПК РФ.

Аналогичный вывод подтвержден позицией Судебной коллегии Верховного Суда Российской Федерации от 30 декабря 2015 года N 302-ЭС15-11092:

П.5) «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства представит доказательство того, что: Состав третейского суда или процедура арбитража не соответствовали соглашению сторон или федеральному закону».

А) Состав третейского суда: В соответствии с ч. 2 ст. 11 ФЗ-382, Стороны арбитража могут согласовать по своему усмотрению процедуру избрания (назначения) арбитра или арбитров при условии соблюдения положений частей 4 - 11 настоящей статьи.

На основании соглашения о передаче прав по Договору займа от 07.09.2020, заключенного между истцом и третьим лицом;на основании Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г., заключенного между Третьим лицом, Ответчиком 1, Ответчиком 2, Ответчиком 3, утвержденного сторонами действующим в настоящее время Арбитражным регламентом ЮНСИТРАЛ стороны согласились о том, что любые споры,

разногласия, расхождения во мнениях или претензии, которые могут возникнуть из или в связи с перечисленными выше соглашениями и договорами, включая, но, не ограничиваясь, теми, которые связаны с его вступлением в силу, исполнением, изменением, нарушением, прекращением или действительностью, подлежат разрешению и окончательному урегулированию посредством арбитражного разбирательства AD HOC. Любой спор будет рассмотрен единолично согласованным сторонами Арбитром. Таким образом, данный конкретный спор передается на рассмотрение данного сформированного суда, единым арбитром назначается магистр юриспруденции Дмитрий Валерьевич Князев, Гражданин Российской Федерации.

**Личность Арбитра установлена** на основании Паспорта гражданина Российской Федерации на имя Князева Дмитрия Валерьевича, подтверждается имеющейся копией в материалах третейского дела. Наличие у избранного Третейского судьи, Князева Дмитрия Валерьевича, высшего юридического образования, подтверждается Дипломом РФ г. Москва Специализированным институтом юриспруденции № АВС 0715029, имеющейся копией в материалах третейского дела.

Отсутствие судимости подтверждается Справкой ГУ МВД России по г. Москве от 11.07.2021 г. № 13/5-099/264646-Е, имеющейся в материалах третейского дела.

Согласно разъяснениям Минюста России от 02.09.2021 г. № 12-103924/2021, Положения Федерального закона № 382-ФЗ не предусматривают возможности предоставления третейскому суду, образованному сторонами для разрешения конкретного спора, права на осуществлении функций постоянно действующего арбитражного учреждения и выполнение им функций по администрированию арбитража. Таким образом, каких-либо дополнительных лицензий или разрешений для третейского судьи, действующим законодательством не предусмотрено.

**Таким образом, формирование состава Третейского суда произведено с соблюдением положений Закона об арбитраже.**

Б) Процедура арбитража: В соответствии с п.п. 1, 2 ст. 19 Закона об арбитраже: «При условии соблюдения положений настоящего Федерального закона стороны могут по своем усмотрению договориться о процедуре арбитража. При отсутствии договоренности третейский суд может с соблюдением положений настоящего Федерального закон осуществлять арбитраж таким образом, какой он посчитает надлежащим, в том числе отношении определения допустимости, относимости и значения любого доказательства».

В соответствии с ч. 2 ст. 2 Закона об арбитраже: «Администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора».

Во исполнение данной нормы, Единый Арбитр рассмотрел спор самолично, что подтверждается материалами третейского дела:

- личио избран сторонами в арбитражном соглашении,
- лично получил исковое заявление и принял к производству,
- лично выбрал и получил в пользование помещение для проведения судебного разбирательства,
- на личный банковский счет получил арбитражный сбор,
- лично оплатил расходы, связанные с рассмотрением спора (почтовые расходы, канцелярские принадлежности, оргтехника, помещение и т.п.),
- лично направил сторонам почтой судебные извещения и иные документы,
- лично назначил и провел судебное заседание,
- лично вынес постановления и арбитражное решение,
- Возражений о нарушении процедуры арбитража от сторон не поступало.
- Заявлений о самоотводах и об отводах, не поступило.

В соответствии с ч. 1 ст. 11 ГК РФ, защиту нарушенных или оспоренных гражданских прав осуществляет в соответствии с подведомственностью дел, установленной процессуальным законодательством, суд, арбитражный суд или третейский суд.

В соответствии с ч. 1 ст. 33 АПК РФ, споры, возникающие из гражданско-правовых отношений, а также индивидуальные трудовые споры спортсменов, тренеров в профессиональном спорте и спорте высших достижений могут быть переданы сторонами на рассмотрение третейского суда при наличии между сторонами спора действующего арбитражного соглашения, если иное не предусмотрено федеральным законом.

В соответствии с ч. 3 ст. 1 Закона об арбитраже, в арбитраж (третейское разбирательство) по соглашению сторон могут передаваться споры между сторонами гражданско-правовых отношений, если иное не предусмотрено федеральным законом.

Действующее законодательство не содержит запрета на передачу споров по договорам займа, цессии, заключенными между юридическими лицами, на рассмотрение в третейский суд.

Договоры займа, цессии, не являются контрактом, заключенным в сфере закупок для государственных и муниципальных нужд, а также не является договором, заключенным в порядке, предусмотренном Федеральным законом N 223-ФЗ.

**Каких-либо заявлений от Сторон о том, что рассматриваемый спор не может быть предметом третейского разбирательства, или о наличии противоречий публичному порядку Российской Федерации, не поступало, а Третейским судьей не установлено.**

Единолично Арбитр (третейский судья), при ведении протокола судебного заседания, рассмотрел исковое заявление, представленные сторонами доказательства

## УСТАНОВИЛ:

Истец обратился в суд с иском к Ответчику 1, Ответчику 2, Ответчику 3, Третьему лицу, направив 18 мая 2021г. заказной почтой всем сторонам по делу уведомление об арбитраже с исковым заявлением с приложениями, указав:

что Истец информирует стороны о передаче требования по взысканию задолженности по Договору займа на арбитражное разбирательство;

что спор возник из Договора займа от 20 апреля 2010г. заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Голден Спиритс Лимитед (Golden Spirits Limited), Соглашения об изменении и отсрочке долга от 23 августа 2012г. заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Голден Спиритс Лимитед (Golden Spirits Limited), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и ЭйЭфБи Трейдинг Уан, Инк. (AFB Trading One. Inc.), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Голден Сфинкс Лимитед (Golden Sphinx Limited), Соглашения по передаче прав по Договору займа от 07 сентября 2020г., заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Давилла Инвестинг Лимитед (Davilla Investing Limited);

что 20 апреля 2010г. Компания Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компания Голден Спиритс Лимитед (Golden Spirits Limited) заключили договор займа. В соответствии с условиями данного договора Третье лицо предоставило заемщику в долг денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США. В соответствии с п.4.1. договора займа Ответчик 1 должен был вернуть заем не позднее двух лет с момента предоставления займа и в соответствии с п.4.2. договора займа уплатить 1,1% годовых с суммы займа. 21.04.2010г. Третье лицо перевело Ответчику 1 денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США и уплатил комиссию за перевод в размере 268,36 (Двести шестьдесят восемь) долларов США. Таким образом, в полном объеме выполнил обязательства по договору займа. Обязанности по возврату суммы займа и процентов по займу Ответчиком 1 выполнены не были в полном объеме. 23 августа 2012г. Третье лицо и Ответчик 1 заключили соглашение об изменении и отсрочке долга. В соответствии с данным соглашением стороны продлили срок исполнения обязательства по возврату долга Ответчиком 1 до «01» января 2020г. При этом процентная ставка, указанная в пункте 4.2 Договора займа, в соответствии с п.4 соглашения об изменении и отсрочке долга повышается до 6,5% годовых (в год), с ежемесячным начислением сложных процентов, начиная с даты изменения, до полной выплаты. А также

стороны согласовали следующих гарантов: ЭйЭфБи Трейдинг Уан, Инк., зарегистрированная в Штате Калифорния, США, зарегистрированные офисы которой расположены по адресу: 8501 Вилшир Бульвар, Суит 330, Беверли-Хиллз, Калифорния, США («Гарант 1»), и Голден Сфинкс Лимитед, компания, зарегистрированной в Штате Калифорния, США, зарегистрированные офисы которой расположены по адресу: 43 Ла Мотт Стрит, Сент-Хелиер, остров Джерси, JE4 8SD, Нормандские Острова («Гарант 2»). 23 августа 2012г. Третье лицо и ЭйЭфБи Трейдинг Уан, Инк.(AFB One. Inc.) заключили корпоративную гарантию в соответствии с которой Ответчик 2 отвечает перед Истцом за исполнение обязательств Ответчиком 1 в том числе в случае неисполнения Ответчиком 1 своих обязательств гарантирует погашение задолженности в течение 10 дней с момента предъявления требования. 23 августа 2012г. Третье лицо и Голден Сфинкс Лимитед (Golden Sphinx Limited) заключили корпоративную гарантию в соответствии с которой Ответчик 3 отвечает перед Истцом за исполнение обязательств Ответчиком 1 в том числе в случае неисполнения Ответчиком 1 своих обязательств гарантирует погашение задолженности в течение 10 дней с момента предъявления требования. 23 августа 2012г. Третье лицо, Ответчик 1, Ответчик 2, Ответчик 3 заключили ДОГОВОР О ВЫБОРЕ (ЛИЧНОСТИ) АРБИТРА И ПРИМЕНЯМЫХ ПРАВИЛАХ. 07 сентября 2020г. Третье лицо и компания Давилла Инвестинг Лимитед (Davilla Investing Limited), заключили соглашение по передаче прав по договору займа, в соответствии с которым, все права по договору займа от 20 апреля 2010г. с изменениями от 23 августа 2012г., заключенному между Третьим лицом и Ответчиком 1, перешли к Истцу, включая обеспечение в виде корпоративных гарантий, заключенных Третьим лицом с Ответчиком 2 и Ответчиком 3. 21 декабря 2020г. Истец направил Ответчику 2 требование об оплате задолженности Ответчика 1. 21 декабря 2020г. Истец направил Ответчику 3 требование об оплате задолженности Ответчика 1. До настоящего времени ни один из ответчиков не произвел погашение задолженности по существующим обязательствам. Таким образом, у Ответчиков есть солидарная задолженность на общую сумму 1804017,81 долл. США из которых: 1022000 долларов США – сумма основного долга. 1874,53 долл. США - сумма процентов за период с 21.04.2010г. по 21.04.2012г. 780143,28 долл. США за период с 21.04.2012г. по 12.12.2020г.;

что Истец просит солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов. Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы.

Согласно представленным суду заверенным копиям перечисленных выше договоров и соглашений, а именно: на основании арбитражного соглашения сторон, которое включено в

соглашение об изменении и отсрочке долга, заключенного между Третьим лицом и Ответчиком 1 под пунктом 12.F;на основании арбитражного соглашения сторон, которое включено в Корпоративную гарантию, заключенную между Истцом и Ответчиком 2 под пунктом 5.7;на основании арбитражного соглашения сторон, которое включено в Корпоративную гарантию, заключенную между Истцом и Ответчиком 3 под пунктом 5.7;на основании соглашения о передаче прав по Договору займа от 07.09.2020, заключенного между истцом и третьим лицом;на основании Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г., заключенного между Третьим лицом, Ответчиком 1, Ответчиком 2, Ответчиком 3, утвержденного сторонами действующим в настоящее время Арбитражным регламентом ЮНСИТРАЛ стороны согласились о том, что любые споры, разногласия, расхождения во мнениях или претензии, которые могут возникнуть из или в связи с перечисленными выше соглашениями и договорами, включая, но, не ограничиваясь, теми, которые связаны с его вступлением в силу, исполнением, изменением, нарушением, прекращением или действительностью, подлежат разрешению и окончательному урегулированию посредством арбитражного разбирательства AD HOC. Любой спор будет рассмотрен единолично согласованным сторонами Арбитром. Таким образом, данный конкретный спор передается на рассмотрение данного сформированного суда, единым арбитром назначается доктор юриспруденции Дмитрий Валерьевич Князев, Гражданин Российской Федерации.

Стороны согласились, что разрешение спора может происходить только на основе письменных материалов, предоставленных сторонами, без обязательного проведения устного слушания и вызова сторон, при этом допускается участие сторон и арбитра во встречах посредством электронной видеоконференции, например Skype. Стороны договорились, что разбирательство будет проводиться в Москве, Российская Федерация, на русском языке и в соответствии с законодательством Российской Федерации. Стороны договорились, что Арбитр определяет наличие и масштаб соглашения, подлежащего осуществлению арбитражного разбирательства, и уполномочен выносить решение, денежное или не денежное, приводить в исполнение решение, в максимально возможной степени.

20 мая 2021г. Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича вынес Определение о назначении спора к слушанию, которым был создан данный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, утвержден единым арбитром (судьей), выбранного и согласованного сторонами Князев Дмитрий Валерьевич, принято указанное выше исковое заявление к рассмотрению данным судом, назначен 25-дневный срок для подготовки дела к третейскому разбирательству с предложением сторонам представить все документы, необходимые для рассмотрения спора, включая отзывы на иск до 14 июня 2021г.

В соответствии со ст.11 Гражданского кодекса Российской Федерации «Защиту нарушенных или оспоренных гражданских прав осуществляет суд, арбитражный суд или третейский суд (далее - суд) в соответствии с их компетенцией».

В соответствии с Федеральным Законом Российской Федерации «О Третейских судах в Российской Федерации» ст.1 «1. Настоящий Федеральный закон регулирует порядок образования и деятельности третейских судов, находящихся на территории Российской Федерации. 2. В третейский суд может по соглашению сторон третейского разбирательства (далее также - стороны) передаваться любой спор, вытекающий из гражданских правоотношений, если иное не установлено федеральным законом. 3. Действие настоящего Федерального закона не распространяется на международный коммерческий арбитраж. 4. Если международным договором Российской Федерации установлен иной порядок образования и деятельности третейских судов, чем предусмотренный настоящим Федеральным законом, то применяются правила международного договора».

В соответствии с Европейской конвенцией о внешнеторговом арбитраже от 21 апреля 1961 года ст.4 Осуществление арбитражного процесса «1. Стороны арбитражного соглашения могут по своему усмотрению: «...b) предусматривать передачу споров на разрешение арбитража по данному делу (арбитраж adhoc) и в этом случае, в частности: i) назначать арбитров или устанавливать в случае возникновения какого-либо спора методы их назначения; ii) устанавливать местонахождение арбитражного суда; iii) устанавливать правила процедуры, которых должны придерживаться арбитры...».

Подготовка дела к рассмотрению проведена Арбитром надлежащим образом, а именно: Определением от 02 Августа 2021 года Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича назначил третейское разбирательство по иску Давилла Инвестинг Лимитед (Davilla Investing Limited) к Голден Спиритс Лиитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк (AFB Tradig One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям к рассмотрению на 31 августа 2021г. в 12 часов 00 минут по г. Москве по адресу: 109012, РФ, город Москва, улица Ильинка, д.4, оф. 102-103; истцу предложено представить подлинные документы в обоснование заявленных требований; ответчикам и третьему лицу в срок до 25 августа 2021г. предложено представить в суд отзывы на иск, подтвержденные документально, в судебное заседание подлинные документы в обоснование возражений. 05 августа 2021 года Арбитром направлен судебный запрос свидетелю по делу в лице Гарри Иткин (Garry Itkin).

Свидетель Гарри Иткин (Garry Itkin) на запрос суда представил надлежащим образом оформленные свидетельские показания, имеющие значения для правильного разрешения спора, а именно показал:

1.      Да, 20 апреля 2010-го года я являлся Директором компании Golden Spirits Limited

2. Да, я подписывал договор займа между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 20 апреля 2010-го года на сумму USD 1,022,000

3. Да, я подтверждаю мою подпись на договоре займа между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 20 апреля 2010-го года на сумму USD 1,022,000

4. Да, я был уполномочен подписывать договор займа между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 20 апреля 2010-го года на сумму USD 1,022,000

5. Да, сумма USD 1,022,000 была ли перечислена на счёт компании Golden Spirits Limited компанией Agragorn Holdings Limited 21 апреля 2010-го года в соответствии с договором займа от 20 апреля 2010-го года

6. Да, сумма USD 1,022,000 была ли зачислена на счёт компании Golden Spirits Limited банком указанном в договоре займа от 20 апреля 2010-го года

7. Нет, компания Golden Spirits Limited не возвратила компании Agragorn Holdings Limited долг в соответствии с договором займа от 20 апреля 2010-го года

8. Да, 23 августа 2012-го года я являлся Директором компании Golden Spirits Limited?

9. Да, я подписывал соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Spirits Limited

10. Да, я подтверждаю мою подпись на соглашении об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Spirits Limited

11. Да, я был уполномочен подписывать соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Spirits Limited

12. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года безусловно отвечало интересам компании Golden Spirits Limited и было подписано в интересах компании Golden Spirits Limited

13. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно выгодным для компании Golden Spirits Limited

14. Да, встречное удовлетворение в соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно являлось достаточным для компании Golden Spirits Limited

15. 23 августа 2012-го года я являлся Директором компании Golden Sphinx Limited

16.    Да, я подписывал соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Sphinx Limited

17.    Да, я подтверждаю мою подпись на соглашении об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Sphinx Limited

18.    Да, я был уполномочен подписывать соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании Golden Sphinx Limited

19.    Да, компания Golden Sphinx Limited была материально заинтересована в финансовом успехе компании Golden Spirits Limited

20.    Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года безусловно отвечало интересам компании Golden Sphinx Limited н было подписано в интересах компании Golden Sphinx Limited

21.    Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно выгодным для компании Golden Sphinx Limited

22.    Да, встречное удовлетворение в соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно являлось достаточным для компании Golden Sphinx Limited

23.    23 августа 2012-го года я являлся Президентом, Финансовым и Исполнительным Директором и Казначеем, компании AFB Trading One Inc

24.    Да, я подписывал соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании AFB Trading One Inc

25.    Да, я подтверждаю мою подпись на соглашении об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании AFB Trading One Inc

26.    Да, я был уполномочен подписывать соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года от лица компании AFB Trading One Inc

27.    Да, компания AFB Trading One Inc была материально заинтересована в финансовом успехе компании Golden Spirits Limited

28.    Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года безусловно отвечало интересам компании AFB Trading One Inc и было подписано в интересах компании AFB Trading One Inc

29. Да, соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно выгодным для компании AFB Trading One Inc

30. Да, встречное удовлетворение в соглашение об изменении и отсрочке долга между компанией Agragorn Holdings Limited и компанией Golden Spirits Limited от 23 августа 2012-го года было безусловно являлось достаточным для компании AFB Trading One Inc

31. Да, я подписывал корпоративную гарантию от лица компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, безотзывно и безоговорочно гарантируя компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited

32. Да, я подтверждаю мою подпись на корпоративной гарантии от лица компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

33. Да, я был уполномочен подписывать корпоративную гарантию от лица компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

34. Да, компания Golden Sphinx Limited была материально заинтересована в финансовом успехе компании Golden Spirits Limited

35. Да, безотзывная и безоговорочная гарантия своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компанией Agragorn Holdings Limited от 23 августа 2012-го года безусловно отвечала интересам компании Golden Sphinx Limited и была подписана в интересах компании Golden Sphinx Limited

36. Да, выпуск безотзывной и безоговорочной гарантии своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компанией Agragorn Holdings Limited от 23 августа 2012-го года был безусловно выгодным для компании Golden Sphinx Limited

37. Да, встречное удовлетворение в корпоративной гарантии компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, гарантирующее компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited, безусловно являлось достаточным для компании Golden Sphinx Limited

38. Да, я подписывал корпоративную гарантию от лица компании AFB Trading One Inc в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, безотзывно и безоговорочно гарантируя компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited

39. Да, я подтверждаю мою подпись на корпоративной гарантии от лица компании AFB Trading One Inc в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

40. Да, я был уполномочен подписывать корпоративную гарантию от лица компании AFB Trading One Inc в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года

41. Да, компания AFB Trading One Inc была материально заинтересована в финансовом успехе компании Golden Spirits Limited

42. Да, безотзывная и безоговорочная гарантия своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компанией Agragorn Holdings Limited от 23 августа 2012-го года безусловно отвечала интересам компании AFB Trading One Inc и была подписана в интересах компании AFB Trading One Inc

43. Да, выпуск безотзывной и безоговорочной гарантии своевременного и добросовестного исполнения, соблюдения и выполнения обязательств компанией Golden Spirits Limited перед компании Agragorn Holdings Limited от 23 августа 2012-го года был безусловно выгодным для компании AFB Trading One Inc

44. Да, встречное удовлетворение в корпоративной гарантии компании Golden Sphinx Limited в пользу компании Agragorn Holdings Limited от 23 августа 2012-го года, гарантирующее компании Agragorn Holdings Limited своевременное и добросовестное исполнение, соблюдение и выполнение обязательств компанией Golden Spirits Limited, безусловно являлось достаточным для компании AFB Trading One Inc

45. Да, я подписывал соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Spirits Limited

46. Да, я подтверждаю свою подпись на соглашении о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Spirits Limited

47. Да, я был уполномочен подписывать соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Spirits Limited

48. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно отвечало интересам компании Golden Spirits Limited и было подписано в интересах компании Golden Spirits Limited

49. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года был безусловно выгодным для компании Golden Spirits Limited

50. Да, встречное удовлетворение в соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно являлось достаточным для компании Golden Spirits Limited

51. Да, я подписывал соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Sphinx Limited

52. Да, я подтверждаю свою подпись на соглашении о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Sphinx Limited

53. Да, я был уполномочен подписывать соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании Golden Sphinx Limited

54. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно отвечало интересам компании Golden Sphinx Limited и было подписано в интересах компании Golden Sphinx Limited

55. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года был безусловно выгодным для компании Golden Sphinx Limited

56. Да, встречное удовлетворение в соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно являлось достаточным для компании Golden Sphinx Limited

57. Да, я подписывал соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании AFB Trading One Inc

58. Да, я подтверждаю свою подпись на соглашении о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании AFB Trading One Inc

59. Да, я был уполномочен подписывать соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года от лица компании AFB Trading One Inc

60. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно отвечало интересам компании AFB Trading One Inc и было подписано в интересах компании AFB Trading One Inc

61. Да, соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года был безусловно выгодным для компании AFB Trading One Inc

62. Да, встречное удовлетворение в соглашение о фигуре арбитра и применимом регламенте от 23 августа 2012-го года безусловно являлось достаточным для компании AFB Trading One Inc

19.07.2021 года в рамках рассмотрения настоящего дела от Татьяна Падалко, представившаяся финансовым управляющим Сабадаша А.В., в подтверждение полномочий к материалам дела приобщена копия Арбитражного суда Московской области по делу №А41-100887/19 от 10.11.2020г., позволяющих действовать от имени ответчиков, заявила в переписке, направленной суду: «Добрый день, я являюсь финансовым управляющим Сабадаша А.В. Организации – ответчики принадлежат Сабадашу А.В. Документы по данному спору были сфальсифицированы прошу представить ваши контактные данные для связи» (цитата из письма Татьяна Падалко <arbitrpadalko@gmail.com>). Данные заявления Татьяны Падалко оценены Арбитром в качестве доказательств наравне с иными доказательствами по делу.

19 августа 2021г. Суд получил от ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) ходатайство, где указанные Ответчики ставят вопрос о компетенции данного Суда в связи с ликвидацией 31.10.2013г. Ответчика Компании Голден Спиритс Лимитед (Golden Spirits Limited), участника данного спора и подписанта Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г.

24 августа 2021г. Суд получил Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) подписанный гр. Падалко Татьяны Алексеевны, как от финансового управляющего Сабадаша А.В., как от собственника ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), где не оспаривается соглашение о назначении арбитра в рамках арбитражной процедуры AD HOC, где также заявляется о прекращении деятельности в связи с ликвидацией 31.10.2013г. Ответчика -

Компании Голден Спиритс Лимитед (Golden Spirits Limited), поручителями по обязательствам которой являются Голден Сфинкс Лимитед (Golden Sphinx Limited), а также обязательства ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.). Представитель Ответчика просит отказать в удовлетворении иска в связи с утратой правоспособности заемщика Компании Голден Спиритс Лимитед (Golden Spirits Limited) с 01.10.2013г.

25 августа 2021г. Суд получил электронное сообщение от Managing Attorney Michael Zorkin: "Господин Князев, Прилагаю Отзыв На Исковое Заявление Ларисы Сабадаш от имени AFB Trading One, Inc. и Golden Sphinx Limited". Отзыв на исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) от гр. Сабадаш Ларисы (датированное 24.08.2021г., как от директора ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), как от директора Голден Сфинкс Лимитед (Golden Sphinx Limited), в которым подтверждает надлежащее уведомление о судебном рассмотрении 25 августа 2021г. в 12-00 по мск времени спора Арбитром, подтверждает заключение соглашения от 23.12.2012г. между сторонами и не оспаривает компетенцию Арбитра, указывает на то, что с 03.10.2016г. является директором ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), с 17.09.2019г. является директором Голден Сфинкс Лимитед (Golden Sphinx Limited), просит учесть, что Голден Спиритс Лимитед (Golden Spirits Limited) не существует с 31.10.2013г., заявляет, что поскольку основной заемщик Голден Спиритс Лимитед (Golden Spirits Limited)с 01.10.2013г. утратил правоспособность, соответственно полагает, что и обеспечивающие его обязательства по договорам поручительства следует считать прекратившимися, на основании чего просит отказать истцу в иске.

Суд рассмотрел отзыв гр. Сабадаш Ларисы и позицию ее представителя Михаила Зорькина, усмотрев признание и наличие долговых обязательств Голден Сфинкс Лимитед (Golden Sphinx Limited), а также обязательства ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.).

В соответствии со ст. 309 Гражданского кодекса Российской Федерации обязательства должны исполняться надлежащим образом в соответствии с условиями обязательства и требованиями закона.

Доводы представителей Ответчиков о пропуске срока исковой давности Арбитр усматривает несостоятельными постольку, поскольку гарантийные обязательства по займу Компании Голден Спиритс Лимитед (Golden Spirits Limited) были выданы до 01.10.2013г., а соответственно являются действующими.

Суд, рассмотрев в судебном заседании заявление финансового управляющего Сабадаша А.В., Падалко Т.А. о том, что организации – ответчики принадлежат Сабадашу А.В., с целью проверки указанных доводов по ходатайству истца изучил дело № А40-165165/18 по иску в Арбитражный суд г. Москвы Индивидуального предпринимателя Гофман Е. к Простому товариществу "Иткин и Сабадаш" с требованием об установлении факта заключения и действия договора. 10 октября 2019г. Решение Арбитражного суда города Москвы от 14.09.2018 г. по апелляционной жалобе гр. Сабадаша А.В., оспаривавшего факт создания Простого Товарищества «Иткин и Сабадаш» и принадлежность последнему имущества и активов, а именно: 1. ОАО

"Русский Дизель" (адрес: Ленинградская область, Всеволожский район, станция Кирпичный завод, промзона); взнос активов ОАО "Русский Дизель"в качестве уставного капитала в компанию "Дизель Лимитед" (Diesel Limited) находящуюся на острове Джерси, Великобритания; 2.ОАО "Выборгская целлюлоза" (адрес: Ленинградская область, Выборгский район, пос. Советский ул. Заводская д.2); взнос активов ОАО "Выборгская целлюлоза" в качестве уставного капитала в компанию "Выборг Лимитед" (Vyborg Limited) находящуюся на острове Джерси, Великобритания; 3.ЗАО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Синопская наб, д.56-58); 4.ООО "ЛИВИЗ" (адрес: г. Санкт-Петербург, Красное село, ул. Нагорная д.5); 5.Земельные паи в совхоз "Ленинский луч" (Московская область, Красногорский район) 987 га, совхоз "Петровский" (Московская область, Красногорский район) 197 га, совхоз "Ильинский" (Московская область, Красногорский район) 430 га, совхоз "Дмитровский" (Московская область, Красногорский район) 360 га; 6.Покупка недвижимого имущества находящегося по адресу: США, штат Калифорния, город Беверли Хиллс, улица Беверли Парк, д.58; 7. покупка самолета Гольфстрим G500; исключая имущество Заказчика: недвижимое имущество, расположенное по адресу: Франция, Кап Феррат, бульвар имени Генерала де Голя, д. 17; самолет Фалькон 200, бортовой номер HB VNG, в связи с нахождением имущества за пределами РФ., что было проверено и удостоверено Девятым Арбитражный Апелляционный Суд города Москвы в Определении от 12.09.2019 г., который рассмотрев в судебном заседании, дал оценку представленным доказательством и доводам господина Сабадаша, изложенных в его апелляционной жалобе, установил и подтвердил существование Простого Товарищества «Иткин и Сабадаш».

Таким образом изучив материалы дела № А40-165165/18, учитывая преюдициальность судебных актов, вступивших в законную силу и подлежащих обязательному исполнению, ответы сторон, третьих лиц и свидетелей на судебные запросы, Суд установил, что вопреки заявлению финансового управляющего Сабадаша А.В., гр. Падалко Т.А., организации – ответчики и активы, которыми они владеют, фактически принадлежат Простому Товариществу «Иткин и Сабадаш», хотя номинально зарегистрированы на имя Сабадаша А.В. и Амбер Траст (Amber Trust), управляемый Сабадашем А.В.

**Суд в ходе рассмотрения доказательств по данному делу установил следующее:**

- Ответчик 1, Голден Спиритс Лимитед (Golden Spirits Limited), находясь в номинальном владении Сабадаша А.В, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Ответчик 2, ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.), находясь в номинальном владении траста Амбер Траст (Amber Trust), управляемым Сабадашем А.В, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Ответчик 3, Голден Сфинкс Лимитед (Golden Sphinx Limited), находясь в номинальном владении траста Амбер Траст (Amber Trust), управляемым Сабадашем А.В, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- ОАО "Русский Дизель" (адрес: Ленинградская область, Всеволожский район, станция Кирпичный завод, промзона), и компания "Дизель Лимитед" (Diesel Limited) находящаяся на острове Джерси, Великобритания, находясь в номинальном владении Ответчика 2, фактически принадлежат Простому Товариществу «Иткин и Сабадаш»;

- ОАО "Выборгская целлюлоза" (адрес: Ленинградская область, Выборгский район, пос. Советский ул. Заводская д.2) и компания "Выборг Лимитед" (Vyborg Limited), находящаяся на острове Джерси, Великобритания, находясь в номинальном владении Ответчика 2, фактически принадлежат Простому Товариществу «Иткин и Сабадаш»;

- Недвижимое имущество, находящееся по адресу: США, штат Калифорния, город Беверли Хиллс, улица Беверли Парк, д.58, фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Самолет Гольфстрим G500 фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

- Недвижимое имущество, расположенное по адресу: Франция, Кап Феррат, бульвар имени Генерала де Голя, д. 17 фактически принадлежит Простому Товариществу «Иткин и Сабадаш»;

Согласно представленным Арбитру доказательствам, 21.04.2010г. Третье лицо перевело Ответчику 1 денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США и уплатил комиссию за перевод в размере 268,36 (Двести шестьдесят восемь) долларов США. Таким образом, в полном объеме выполнил обязательства по договору займа. Обязанности по возврату суммы займа и процентов по займу Ответчиком 1 выполнены не были.

23 августа 2012г. Третье лицо и Ответчик 1 заключили соглашение об изменении и отсрочке долга. В соответствии с данным соглашением стороны продлили срок исполнения обязательства по возврату долга Ответчиком 1 до «01» января 2020г. При этом процентная ставка, указанная в пункте 4.2 Договора займа, в соответствии с п.4 соглашения об изменении и отсрочке долга повышается до 6,5% годовых (в год), с ежемесячным начислением сложных процентов, начиная с Даты изменения, до полной выплаты. А также стороны согласовали следующих гарантов: ЭйЭфБи Трейдинг Уап, Инк., зарегистрированная в Штате Калифорния, США, зарегистрированные офисы которой расположены по адресу: 8501 Вилшир Бульвар, Суит 330, Беверли-Хиллз, Калифорния, США («Гарант 1»), и Голден Сфинкс Лимитед, зарегистрированные офисы которой расположены по адресу: 43 Ла Мотт Стрит, Сент-Хелиер, остров Джерси, JE4 8SD, Нормандские Острова («Гарант 2»).

23 августа 2012г. Третье лицо и ЭйЭфБи Трейдинг Уан, Инк.(AFB Tradig One.Inc.) (далее – Ответчик 2) заключили корпоративную гарантию в соответствии с которой Ответчик 2 отвечает перед Истцов за исполнение обязательств Ответчиком 1 в том числе в случае неисполнения Ответчиком1 своих обязательств гарантирует погашение задолженности в течение 10 дней с момента предъявления требования.

23 августа 2012г. Третье лицо и Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее – Ответчик 3) заключили корпоративную гарантию в соответствии с которой Ответчик 3 отвечает

перед Истцов за исполнение обязательств Ответчиком 1 в том числе в случае неисполнен
Ответчиком1 своих обязательств гарантирует погашение задолженности в течение 10 дней
момента предъявления требования.

23 августа 2012г. Третье лицо, Ответчик 1, Ответчик 2, Ответчик 3 заключили ДОГОВОР
ВЫБОРЕ (ЛИЧНОСТИ) АРБИТРА И ПРИМЕНЯМЫХ ПРАВИЛАХ

07 сентября 2020г. Третье лицо и компания Давилла Инвестинг  Лимитед (Davilla Investi
Limited) (далее Истец), заключили соглашение по передаче прав по договору займа, в соответстви
с которым, все права по договору займа от 20 апреля 2010г. с изменениями от 23 августа 2012г
заключенному между Третьим лицом и Ответчиком 1, перешли к Истцу, включая обеспечение
виде корпоративных гарантий, заключенных Третьим лицом с Ответчиком 2 и Ответчиком 3.

21 декабря 2020г. Истец направил Ответчику 2 требование об оплате задолженности
Ответчика 1.

21 декабря 2020г. Истец направил Ответчику 3 требование об оплате задолженност
Ответчика 1.

До настоящего времени ни один из ответчиков не произвел погашение задолженности по
существующим обязательствам.

**Изложенные выше обстоятельства подтверждаются следующими доказательствами:**

1.      Договор займа от 20 апреля 2010г. между Третьим лицом и Ответчиком 1;

2.      Банковская выписка от 21 апреля 2010г. подтверждающая перевод 1022000
долларов США от Третьего лица Ответчику 1;

3.      Соглашение об изменении и отсрочке долга от 23 августа 2012г. между Третьим
лицом и Ответчиком 1;

4.      Корпоративная гарантия от 23 августа 2012г. выданная Ответчиком 2 Третьему
лицу;

5.      Корпоративная гарантия от 23 августа 2012г. выданная Ответчиком 3 Третьему
лицу;

6.      Соглашение по передаче прав по договору займа от 07 сентября 2020г. между
Третьим лицом и Истцом.

7.      Требованиями об оплате задолженности.

В соответствии со ст.810 ГК РФ «... Заемщик обязан возвратить займодавцу полученную
сумму займа в срок и в порядке, которые предусмотрены договором займа».

В соответствии со ст.809 ГК РФ «1. Если иное не предусмотрено законом или договором
займа, займодавец имеет право на получение с заемщика процентов за пользование займом в
размерах и в порядке, определенных договором. При отсутствии в договоре условия о размере
процентов за пользование займом их размер определяется ключевой ставкой Банка России,
действовавшей в соответствующие периоды.

2. Размер процентов за пользование займом может быть установлен в договоре с применением ставки в процентах годовых в виде фиксированной величины, с применением ставки в процентах годовых, величина которой может изменяться в зависимости от предусмотренных договором условий, в том числе в зависимости от изменения переменной величины, либо иным путем, позволяющим определить надлежащий размер процентов на момент их уплаты.

3. При отсутствии иного соглашения проценты за пользование займом выплачиваются ежемесячно до дня возврата займа включительно...».

В соответствии со ст.363 ГК РФ «1. При неисполнении или ненадлежащем исполнении должником обеспеченного поручительством обязательства поручитель и должник отвечают перед кредитором солидарно, если законом или договором поручительства не предусмотрена субсидиарная ответственность поручителя.

2. Поручитель отвечает перед кредитором в том же объеме, как и должник, включая уплату процентов, возмещение судебных издержек по взысканию долга и других убытков кредитора, вызванных неисполнением или ненадлежащим исполнением обязательства должником, если иное не предусмотрено договором поручительства.

3. Лица, совместно давшие поручительство (сопоручители), отвечают перед кредитором солидарно, если иное не предусмотрено договором поручительства. Если из соглашения между сопоручителями и кредитором не следует иное, сопоручители, ограничившие свою ответственность перед кредитором, считаются обеспечившими основное обязательство каждый в своей части. Сопоручитель, исполнивший обязательство, имеет право потребовать от других лиц, предоставивших обеспечение основного обязательства совместно с ним, возмещения уплаченного пропорционально их участию в обеспечении основного обязательства...».

В соответствии со ст. 384 ГК РФ «Если иное не предусмотрено законом или договором, право первоначального кредитора переходит к новому кредитору в том объеме и на тех условиях, которые существовали к моменту перехода права. В частности, к новому кредитору переходят права, обеспечивающие исполнение обязательства, а также другие связанные с требованием права, в том числе право на проценты...».

Таким образом, у Ответчиков есть солидарная задолженность на общую сумму 1804017,81 долл. США из которых:

1022000 долларов США – сумма основного долга.

1874,53 долл. США - сумма процентов за период с 21.04.2010г. по 21.04.2012г.

780143,28 долл. США за период с 21.04.2012г. по 12.12.2020г.

В соответствии с Федеральным Законом Российской Федерации «О Третейских судах в Российской Федерации» ст.16.

В соответствии с Арбитражным регламентом ЮНСИТРАЛ (регламент, принятый Комиссией ООН по праву международной торговли в 1976 г. и рекомендованный к использованию Генеральной Ассамблеей ООН 15 декабря 1976 г. с изменениями).

31 августа 2021г. третейский суд, образованный сторонами для разрешения конкретного спора в составе единоличного третейского судьи, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича, рассмотрев исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) ( истец) к Голден Спиритс Лимитед (Golden Spirits Limited) (Ответчик 1), ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (Ответчик 2), Голден Сфинкс Лимитед (Golden Sphinx Limited) (Ответчик 3), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям

## РЕШИЛ:

1. Удовлетворить исковые требования по иску Давилла Инвестинг Лимитед (Davilla Investing Limited) к Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.

2. Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов.

3. Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы в размере 278000 (Двести семьдесят восемь тысяч) рублей.

4. В соответствии с арбитражным соглашением, решение третейского суда окончательно. Вступает в законную силу немедленно с даты принятия, подлежит немедленному исполнению. В соответствии с ч. 4 ст. 238 АПК РФ, обстоятельства, установленные третейским судом, не подлежат переоценке либо пересмотру, по существу.

Арбитражный суд

в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

единый арбитр (судья),

выбранный и согласованный сторонами

Князев Дмитрий Валерьевич

Российская Федерация. Город Москва

Тридцатое апреля две тысячи двадцать шестого года

Я, Глухов Сергей Иванович, нотариус города Москвы, свидетельствую верность копии с предоставленного мне документа.

Зарегистрировано в реестре: N 77/749-н/77-2026- 1-1083

Уплачено за совершение нотариального действия: 3300 р

С.И. Глухов

Всего прошнуровано, пронумеровано и скреплено печатью ___11___

_____ листов.

Нотариус

*Перевод с русского языка на английский*
*Russian to English Translation*

# COPY

Agreed.

Chairman of the International Commercial
Arbitration Court at the Chamber of Commerce
and Industry of the Russian Federation in Moscow
(ICAC)
– signature – A. Kostin,

No. 1800-4/301

September 06, 2021
*Seal: Chamber of Commerce and Industry of the
Russian Federation, Department of Accounts and
Certificates*

**Ad hoc tribunal for specific dispute resolution**
**Sole judge, selected and stipulated to by the parties: Knyazev Dmitry Valerievich Address: 4 Ilinka
Street, Office 102–103, Moscow, Russia 109012**

## ORDER

On August 31, 2021, in the city of Moscow, Ad hoc tribunal for specific dispute resolution (hereinafter also referred to as the "Tribunal"), composed of the sole judge, selected and stipulated to by the parties — Dmitry Valerievich Knyazev (hereinafter also referred to as the "Judge" or "Arbitrator"), reviewed the statement of claim filed by Davilla Investing Limited (hereinafter also referred to as the "Plaintiff") against Golden Spirits Limited (hereinafter "Defendant 1"), AFB Trading One, Inc. (hereinafter "Defendant 2"), Golden Sphinx Limited (hereinafter "Defendant 3"), and Agragorn Holdings Limited (hereinafter "Third Party") seeking the recovery of debt under a loan agreement, debt modification and deferral agreement, and corporate guarantees.

The arbitration was held in accordance with the Russian Federation Federal Arbitration Law No. 382-FZ of December 29, 2015" (hereinafter the "Arbitration Law," FZ-382), in the presence of the parties:

Irina Borisovna Selezneva, counsel for the plaintiff: Davilla Investing Limited. Copy of the power of attorney from Davilla Investing Limited submitted as part of the case file.

Defendant 1: Golden Spirits Limited

Defendant 2: AFB Trading One, Inc. — Tatyana Padalko, financial administrator for Sabadash A.V.; a copy of the decision of the Moscow Region Arbitration Court in case No. A41-100887/19 dated November 10, 2020, was submitted as evidence of authorization.

Defendant 3: Golden Sphinx Limited

Third Party: Agragorn Holdings Limited

On August 24, 2021, the Tribunal received a response to the claim filed by Davilla Investing Limited from Larisa Sabadash, in her capacity as Director of AFB Trading One, Inc. and as Director of Golden Sphinx Limited.
On the same date, the Tribunal received a separate response to the claim from Tatyana Alekseevna Padalko, in her capacity as Financial Administrator of Sabadash A.V., as owner of AFB Trading One, Inc. Exercising the powers granted under Article 16.1 of the Arbitration Law, the Arbitrator, in determining

jurisdiction, additionally reviews the case materials for compliance with Article 239 of the Commercial Procedure Code of the Russian Federation (RF CPC) to rule out any grounds that may cause a competent court to deny issuance of a writ of execution for the enforcement of the arbitral award.

Jurisdiction of the Arbitrator:

Pursuant to Article 2 of Russian Federation Federal Arbitration Law No. 382-FZ of December 29, 2015 (hereinafter the "Arbitration Law," FZ-382):

2.  Arbitration (arbitral proceedings) a process of dispute resolution by an arbitral tribunal and rendering of an arbitral award by the tribunal;

3.  Arbitral tribunal — a sole arbitrator or a panel of arbitrators;

4.  Arbitrator (arbitral judge) — a natural person selected by the parties or appointed in accordance with the procedure agreed upon by the parties or established by federal law for the purpose of resolving a dispute through arbitration;

5. Administration of arbitration — carrying out organizational functions related to arbitration, including procedures for the selection, appointment, or challenge of arbitrators, maintenance of case files, and management of arbitration fees, excluding the functions of the tribunal related directly to dispute resolution.

An arbitration Paragraph that forms part of a contract is considered an agreement independent of the other terms of the contract. A ruling that the contract is invalid does not, by itself, render the arbitration agreement invalid.

A statement challenging the jurisdiction of the arbitral tribunal must be filed by the relevant party to the arbitration no later than the submission of its first statement on the merits of the dispute.

Prior to the commencement of the proceedings on the merits of the claim, no objections were raised pertaining to the Arbitral Judge's jurisdiction to adjudicate the matter at hand.

Pursuant to Articles 7, 19, and 52 of the Arbitration Law, the Arbitrator ruled that he has jurisdiction to consider the dispute submitted to him for resolution.

Exercising the powers granted under Article 16.1 of the Arbitration Law, the Arbitrator, in affirming his jurisdiction, additionally reviewed the case materials for compliance with the provisions of Article 239 of the Commercial Procedure Code of the Russian Federation (RF CPC) to eliminate grounds for a competent court to refuse the issuance of a writ of execution for the enforcement of the arbitral award:

I. In accordance with Article 239.3 of the RF CPC:

Paragraph 1: "A competent court may deny the issuance of a writ of execution only if a party to the arbitral proceedings provides evidence that one of the parties to the arbitration agreement under which the dispute was resolved lacked full legal capacity."

No such claims have been submitted by the parties.

Paragraph 2: "A competent court may deny the issuance of a writ of execution only if a party to the arbitral proceedings provides evidence that the arbitration agreement under which the dispute was resolved is invalid under the law to which the parties have subjected it, or in the absence of such indication, under the law of the Russian Federation."

Under Article 7 of Federal Law No. 382-FZ, "an arbitration agreement is an agreement between the parties to submit to arbitration all or certain disputes which have arisen or may arise between them in connection with a defined legal relationship, whether contractual or not. The arbitration agreement may be made in the form of an arbitration Paragraph in a contract or in the form of a separate agreement.

When interpreting an arbitration agreement, any doubt shall be interpreted in favor of its validity and enforceability."

The parties were duly notified of the formation of the tribunal, as well as the date, location, and time of the hearing. Pursuant to Article 3 of the Arbitration Law, the parties are deemed to have been properly notified,

in accordance with the analogy to Article 123 of the RF CPC.

This conclusion is also supported by the position of the Judicial Panel of the Supreme Court of the Russian Federation dated December 30, 2015 No. 302-EC15-11092:

Paragraph 5: "A competent court may deny the issuance of a writ of execution only if a party to the arbitral proceedings provides evidence that the composition of the arbitral tribunal or the arbitration procedure was not in accordance with the agreement of the parties or with federal law."

A) Composition of the Arbitral Tribunal: Pursuant to Part 2 of Article 11 of Federal Law No. 382-FZ, the parties to arbitration may agree on the procedure for the selection (appointment) of an arbitrator or arbitrators, provided that the requirements of Parts 4–11 of this Article are observed.

On the basis of the assignment agreement under the Loan Agreement dated September 7, 2020, entered into between the Plaintiff and the Third Party, and on the basis of the Agreement on the Selection of the Arbitrator and Applicable Rules dated August 23, 2012, entered into between the Third Party, Defendant 1, Defendant 2, and Defendant 3, which is currently in force and has been approved by the parties pursuant to the UNCITRAL Arbitration Rules, the parties agreed that any disputes, disagreements, differences of opinion, or claims that may arise from or in connection with the aforementioned agreements and contracts—including but not limited to those related to their entry into force, performance, amendment, breach, termination, or validity—shall be resolved and finally settled through ad hoc arbitration.

Any such dispute shall be heard by a sole arbitrator agreed upon by the parties. Accordingly, this specific dispute was submitted for consideration by this duly constituted tribunal, with the sole arbitrator being Master of Laws Dmitry Valerievich Knyazev, a citizen of the Russian Federation.

The identity of the Arbitrator has been verified based on the Passport of a citizen of the Russian Federation issued in the name of Dmitry Valerievich Knyazev, as confirmed by a copy included in the arbitration case file. The possession of a higher legal education by the appointed Arbitrator, Dmitry Valerievich Knyazev, is confirmed by a diploma issued in the Russian Federation, Moscow, by the Specialized Institute of Jurisprudence, Diploma No. ABC 0715029, a copy of which is included in the case file.

The absence of a criminal record is confirmed by a Certificate issued by the Main Directorate of the Ministry of Internal Affairs of Russia for the city of Moscow dated July 11, 2021, No. 13/5-099/264646-E, also included in the arbitration case file.

According to the clarification provided by the Ministry of Justice of Russia dated September 2, 2021, No. 12-103924/2021, the provisions of Federal Law No. 382-FZ do not authorize an arbitral tribunal formed by the parties for the resolution of a specific dispute to perform the functions of a permanent arbitral institution or to engage in arbitration administration. Accordingly, the applicable legislation does not require the arbitrator to hold any additional licenses or permits.

Thus, the formation of the Arbitral Tribunal has been carried out in compliance with the provisions of the Arbitration Law.

B) Arbitration Procedure: Pursuant to paragraphs 1 and 2 of Article 19 of the Arbitration Law: "Subject to the provisions of this Federal Law, the parties may agree at their discretion on the procedure to be followed in the arbitration. In the absence of such agreement, the arbitral tribunal may, subject to the provisions of this Federal Law, conduct the arbitration in such manner as it considers appropriate, including the determination of the admissibility, relevance, and weight of any evidence."

According to Article 2.2 of the Arbitration Law: "Administration of arbitration means performing organizational functions related to the arbitration, including the selection, appointment, or challenge of arbitrators, case file maintenance, and the collection and allocation of arbitration fees, excluding the functions of the arbitral tribunal directly related to dispute resolution."

In accordance with this provision, the Sole Arbitrator adjudicated the dispute personally, as confirmed by the arbitration case materials:
- was personally selected by the parties in the arbitration agreement,
- personally received the statement of claim and accepted it for proceedings,
- personally selected and secured a venue for the hearing,
- received the arbitration fee into his personal bank account,
- personally paid expenses associated with the adjudication of the dispute (postal charges, office supplies, equipment, venue, etc.),
- personally mailed court notices and other documents to the parties,
- personally scheduled and conducted the hearing,
- personally issued procedural rulings and the arbitral award,
- no objections were raised by the parties regarding any violation of arbitration procedures,
- no motions for recusal or self-recusal were submitted.

Pursuant to Part 1 of Article 11 of the Civil Code of the Russian Federation, the protection of violated or disputed civil rights shall be carried out, in accordance with the jurisdiction established by procedural legislation, by a court, arbitration court, or arbitral tribunal.

According to Part 1 of Article 33 of the Commercial Procedure Code of the Russian Federation (RF CPC), disputes arising from civil law relations, as well as individual labor disputes involving professional athletes and coaches in elite sports, may be submitted by the parties to an arbitral tribunal, provided that a valid arbitration agreement exists between the parties and unless otherwise stipulated by federal law.

Under Part 3 of Article 1 of the Arbitration Law, disputes between parties to civil law relations may be submitted to arbitration by agreement of the parties, unless otherwise provided by federal law.

Current legislation does not prohibit referring disputes under loan agreements or assignments entered into between legal entities to arbitration.

Loan and assignment agreements are not contracts concluded within the framework of public procurement for state or municipal needs, nor are they contracts made under the procedure prescribed by Federal Law No. 223-FZ.

No submissions were made by the parties claiming that the present dispute is not arbitrable or that it contravenes the public policy of the Russian Federation, nor were any such issues identified by the Arbitrator.

The Sole Arbitrator, while maintaining the record of the hearing, reviewed the statement of claim and the evidence submitted by the parties, making the following

## FINDINGS:

The Plaintiff filed a claim against Defendant 1, Defendant 2, Defendant 3, and the Third Party, and on May 18, 2021, sent by registered mail to all parties a notice of arbitration with the statement of claim and annexes, stating:

that the Plaintiff was informing the parties about the referral of the claim for recovery of debt under the Loan Agreement to arbitration;

that the dispute arose from the Loan Agreement dated April 20, 2010, concluded between Agragorn Holdings Limited and Golden Spirits Limited; the Agreement on Modification and Deferral of Debt dated August 23, 2012, concluded between Agragorn Holdings Limited and Golden Spirits Limited; the Corporate Guarantee dated August 23, 2012, concluded between Agragorn Holdings Limited and AFB Trading One, Inc.; the Corporate Guarantee dated August 23, 2012, concluded between Agragorn Holdings Limited and Golden Sphinx Limited; and the Assignment Agreement dated September 7, 2020, concluded between Agragorn Holdings Limited and Davilla Investing Limited;

that on April 20, 2010, Agragorn Holdings Limited and Golden Spirits Limited entered into a loan

agreement. Pursuant to this agreement, the Third Party extended a loan in the amount of 1,022,000 (one million twenty-two thousand) US dollars to the borrower. Under clause 4.1 of the loan agreement, Defendant 1 was to repay the loan no later than two years from the date of disbursement, and under clause 4.2 of the loan agreement, to pay 1.1% annual interest on the loan amount. On April 21, 2010, the Third Party transferred 1,022,000 (one million twenty-two thousand) US dollars to Defendant 1 and paid a transfer fee of 268.36 (two hundred sixty-eight) US dollars. Thus, the Third Party fully performed its obligations under the loan agreement. Defendant 1 failed to fully perform its obligations to repay the loan principal and interest. On August 23, 2012, the Third Party and Defendant 1 entered into an agreement on modification and deferral of the debt. Under this agreement, the parties extended the deadline for repayment by Defendant 1 to January 1, 2020. The interest rate stipulated in clause 4.2 of the loan agreement was increased under clause 4 of the modification and deferral agreement to 6.5% per annum, with monthly compounding interest from the date of amendment until full repayment.

The parties also agreed to the following guarantors: AFB Trading One, Inc., registered in the State of California, USA, with registered offices at 8501 Wilshire Boulevard, Suite 330, Beverly Hills, California, USA ("Guarantor 1"), and Golden Sphinx Limited, a company registered in the State of California, USA, with registered offices at 43 La Motte Street, St. Helier, Jersey, JE4 8SD, Channel Islands ("Guarantor 2").

On August 23, 2012, the Third Party and AFB Trading One, Inc. entered into a corporate guarantee whereby Defendant 2 assumed responsibility before the Plaintiff for the performance of Defendant 1's obligations, and in case of default, guaranteed repayment of the debt within 10 days of a demand.

On August 23, 2012, the Third Party and Golden Sphinx Limited entered into a corporate guarantee whereby Defendant 3 assumed responsibility before the Plaintiff for the performance of Defendant 1's obligations, and in case of default, guaranteed repayment of the debt within 10 days of a demand.

On August 23, 2012, the Third Party, Defendant 1, Defendant 2, and Defendant 3 entered into an AGREEMENT ON THE SELECTION OF THE ARBITRATOR AND APPLICABLE RULES.

On September 7, 2020, the Third Party and Davilla Investing Limited entered into an agreement on the assignment of rights under the Loan Agreement, under which all rights under the loan agreement dated April 20, 2010, as amended on August 23, 2012, between the Third Party and Defendant 1, were transferred to the Plaintiff, including the security in the form of corporate guarantees concluded between the Third Party and Defendants 2 and 3.

On December 21, 2020, the Plaintiff sent a demand to Defendant 2 for payment of Defendant 1's debt. On December 21, 2020, the Plaintiff sent a demand to Defendant 3 for payment of Defendant 1's debt. As of this date, none of the Defendants has repaid the debt under the existing obligations.

Therefore, the Defendants have joint and several liability for a total amount of 1,804,017.81 US dollars, consisting of: 1,022,000 US dollars as the principal debt; 1,874.53 US dollars in interest for the period from April 21, 2010, to April 21, 2012; and 780,143.28 US dollars for the period from April 21, 2012, to December 12, 2020.

The Plaintiff seeks joint and several recoveries from Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited in favor of Davilla Investing Limited in the amount of 1,022,000 (one million twenty-two thousand) US dollars as the principal debt, and 782,017.80 (seven hundred eighty-two thousand seventeen US dollars and eighty cents) as interest. The Plaintiff also seeks joint and several recoveries of court costs from the same companies in favor of Davilla Investing Limited.

According to the certified copies of the above-mentioned agreements and contracts submitted to the Tribunal, and based on the arbitration agreements included therein, namely:

under the arbitration agreement of the parties incorporated in the Agreement on Modification and Deferral of Debt concluded between the Third Party and Defendant 1 under clause 12.F;

under the arbitration agreement of the parties incorporated in the Corporate Guarantee concluded between the Plaintiff and Defendant 2 under clause 5.7;

under the arbitration agreement of the parties incorporated in the Corporate Guarantee concluded between

the Plaintiff and Defendant 3 under clause 5.7;

under the Assignment Agreement dated September 7, 2020, concluded between the Plaintiff and the Third Party;

under the Agreement on the Selection of the Arbitrator and Applicable Rules dated August 23, 2012, concluded between the Third Party, Defendant 1, Defendant 2, and Defendant 3, and approved by the parties pursuant to the currently applicable UNCITRAL Arbitration Rules,

the parties agreed that any disputes, disagreements, differences of opinion, or claims arising out of or in connection with the aforementioned agreements and contracts, including but not limited to those relating to their validity, performance, amendment, breach, termination, or enforceability, shall be resolved and finally settled through AD HOC arbitration. Any such dispute shall be adjudicated by a sole arbitrator agreed upon by the parties.

Accordingly, the present dispute was submitted to this duly formed tribunal, with Doctor of Law Dmitry Valerievich Knyazev, a citizen of the Russian Federation, appointed as the sole arbitrator.

The parties agreed that the dispute would be resolved solely based on the written materials submitted by the parties, without the mandatory holding of an oral hearing or summoning of the parties, while allowing participation of the parties and the arbitrator via electronic video conferencing, such as Skype. The parties further agreed that the arbitration would be conducted in Moscow, Russian Federation, in the Russian language and in accordance with the legislation of the Russian Federation. They also agreed that the Arbitrator would determine the existence and scope of the agreement to arbitrate and would be authorized to issue enforceable awards—monetary or otherwise—to the fullest extent possible.

On May 20, 2021, the Arbitral Tribunal, constituted under an AD HOC arbitration procedure for the resolution of a specific dispute and composed of the sole arbitrator selected and agreed upon by the parties, Dmitry Valerievich Knyazev, issued a Ruling to Schedule the Hearing. By this ruling, the Tribunal was established under the AD HOC arbitration procedure for resolution of a specific dispute, confirmed Dmitry Valerievich Knyazev as the sole arbitrator selected and agreed upon by the parties, admitted the above-mentioned claim for consideration by this Tribunal, and set a 25-day period to prepare the case for arbitration. The parties were invited to submit all documents required for adjudication of the dispute, including their responses to the claim, by June 14, 2021.

Pursuant to Article 11 of the Civil Code of the Russian Federation, "The protection of violated or disputed civil rights shall be carried out by a court, magistrate court, or arbitral tribunal (hereinafter referred to as the court) in accordance with their jurisdiction."

Pursuant to the Federal Law of the Russian Federation "On Arbitral Tribunals in the Russian Federation," Article 1 states: "1. This Federal Law regulates the procedure for the establishment and operation of arbitral tribunals located within the territory of the Russian Federation. 2. By agreement of the parties to arbitral proceedings (hereinafter also – the parties), any dispute arising from civil law relationships may be submitted to an arbitral tribunal unless otherwise provided by federal law. 3. The effect of this Federal Law does not extend to international commercial arbitration. 4. If an international treaty of the Russian Federation establishes a different procedure for the formation and operation of arbitral tribunals than that provided by this Federal Law, the rules of the international treaty shall apply."

According to Article 4 of the European Convention on International Commercial Arbitration dated April 21, 1961, "1. The parties to an arbitration agreement may, at their discretion: ... b) provide for the referral of disputes to arbitration in a particular case (ad hoc arbitration) and, in particular: i) appoint arbitrators or establish methods for their appointment in the event of a dispute; ii) determine the seat of the arbitral tribunal; iii) establish the rules of procedure to be followed by the arbitrators..."

The case was duly prepared for consideration by the Arbitrator. By Ruling dated August 2, 2021, the Arbitral Tribunal established under the AD HOC arbitration procedure for resolution of a specific dispute, acting through the sole arbitrator selected and agreed upon by the parties—Dmitry Valerievich Knyazev—scheduled

the arbitral hearing in the case of Davilla Investing Limited vs. Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited for recovery of debt under a loan agreement, agreement on modification and deferral of debt, and corporate guarantees for August 31, 2021, at 12:00 PM Moscow time, at: 4 Ilinka Street, Office 102–103, Moscow, Russia 109012.

The Plaintiff was requested to submit original documents supporting the claims; Defendants and the Third Party were given until August 25, 2021, to submit documented responses to the claim and to present originals substantiating their objections at the hearing.

On August 5, 2021, the Arbitrator sent a court request to witness Garry Itkin.

Witness Garry Itkin duly submitted sworn testimony significant for proper resolution of the dispute, in which he stated:

1. Yes, on April 20, 2010, I was the Director of Golden Spirits Limited.

2. Yes, I signed the loan agreement between Agragorn Holdings Limited and Golden Spirits Limited dated April 20, 2010, for the amount of USD 1,022,000.

3. Yes, I confirm my signature on the loan agreement dated April 20, 2010, for USD 1,022,000.

4. Yes, I was authorized to sign the loan agreement dated April 20, 2010, for USD 1,022,000.

5. Yes, the amount of USD 1,022,000 was transferred to the account of Golden Spirits Limited by Agragorn Holdings Limited on April 21, 2010, as per the loan agreement.

6. Yes, the amount of USD 1,022,000 was credited to the account of Golden Spirits Limited by the bank specified in the loan agreement dated April 20, 2010.

7. No, Golden Spirits Limited did not repay the debt to Agragorn Holdings Limited in accordance with the loan agreement dated April 20, 2010.

8. Yes, on August 23, 2012, I was the Director of Golden Spirits Limited.

9. Yes, I signed the agreement on modification and deferral of debt dated August 23, 2012, between Agragorn Holdings Limited and Golden Spirits Limited on behalf of Golden Spirits Limited.

10. Yes, I confirm my signature on the agreement on modification and deferral of debt dated August 23, 2012, on behalf of Golden Spirits Limited.

11. Yes, I was authorized to sign the agreement on modification and deferral of debt dated August 23, 2012, on behalf of Golden Spirits Limited.

12. Yes, the agreement on modification and deferral of debt dated August 23, 2012, was unequivocally in the interests of Golden Spirits Limited and was signed in its interest.

13. Yes, the agreement on modification and deferral of debt dated August 23, 2012, was unequivocally beneficial for Golden Spirits Limited.

14. Yes, the consideration in the agreement on modification and deferral of debt dated August 23, 2012, was undoubtedly sufficient for Golden Spirits Limited.

15. On August 23, 2012, I was also the Director of Golden Sphinx Limited.

16. Yes, I signed the agreement on modification and deferral of debt dated August 23, 2012, between Agragorn Holdings Limited and Golden Spirits Limited on behalf of Golden Sphinx Limited.

17. Yes, I confirm my signature on the agreement on modification and deferral of debt between Agragorn Holdings Limited and Golden Spirits Limited dated August 23, 2012, on behalf of Golden Sphinx Limited.

18. Yes, I was authorized to sign the agreement on modification and deferral of debt between Agragorn Holdings Limited and Golden Spirits Limited dated August 23, 2012, on behalf of Golden Sphinx Limited.

19. Yes, Golden Sphinx Limited had a material interest in the financial success of Golden Spirits Limited.

20. Yes, the agreement on modification and deferral of debt dated August 23, 2012, between Agragorn Holdings Limited and Golden Spirits Limited was unequivocally in the interest of Golden Sphinx Limited

and was signed in its interest.

21. Yes, the agreement on modification and deferral of debt dated August 23, 2012, was unequivocally beneficial for Golden Sphinx Limited.

22. Yes, the consideration in the agreement on modification and deferral of debt dated August 23, 2012, was undoubtedly sufficient for Golden Sphinx Limited.

23. On August 23, 2012, I was the President, Chief Financial and Executive Officer, and Treasurer of AFB Trading One Inc.

24. Yes, I signed the agreement on modification and deferral of debt between Agragorn Holdings Limited and Golden Spirits Limited dated August 23, 2012, on behalf of AFB Trading One Inc.

25. Yes, I confirm my signature on the agreement on modification and deferral of debt dated August 23, 2012, on behalf of AFB Trading One Inc.

26. Yes, I was authorized to sign the agreement on modification and deferral of debt dated August 23, 2012, on behalf of AFB Trading One Inc.

27. Yes, AFB Trading One Inc. had a material interest in the financial success of Golden Spirits Limited.

28. Yes, the agreement on modification and deferral of debt dated August 23, 2012, was unequivocally in the interest of AFB Trading One Inc. and was signed in its interest.

29. Yes, the agreement on modification and deferral of debt dated August 23, 2012, was unequivocally beneficial for AFB Trading One Inc.

30. Yes, the consideration in the agreement on modification and deferral of debt dated August 23, 2012, was undoubtedly sufficient for AFB Trading One Inc.

31. Yes, I signed the corporate guarantee on behalf of Golden Sphinx Limited in favor of Agragorn Holdings Limited dated August 23, 2012, irrevocably and unconditionally guaranteeing Agragorn Holdings Limited the timely and proper performance, observance, and fulfillment of obligations by Golden Spirits Limited.

32. Yes, I confirm my signature on the corporate guarantee on behalf of Golden Sphinx Limited in favor of Agragorn Holdings Limited dated August 23, 2012.

33. Yes, I was authorized to sign the corporate guarantee on behalf of Golden Sphinx Limited in favor of Agragorn Holdings Limited dated August 23, 2012.

34. Yes, Golden Sphinx Limited had a material interest in the financial success of Golden Spirits Limited.

35. Yes, the irrevocable and unconditional guarantee dated August 23, 2012, of the timely and proper performance, observance, and fulfillment of obligations by Golden Spirits Limited to Agragorn Holdings Limited was unequivocally in the interest of Golden Sphinx Limited and was signed in its interest.

36. Yes, the issuance of the irrevocable and unconditional guarantee dated August 23, 2012, was unequivocally beneficial for Golden Sphinx Limited.

37. Yes, the consideration in the corporate guarantee of Golden Sphinx Limited in favor of Agragorn Holdings Limited dated August 23, 2012, guaranteeing the timely and proper performance, observance, and fulfillment of obligations by Golden Spirits Limited, was undoubtedly sufficient for Golden Sphinx Limited.

38. Yes, I signed the corporate guarantee on behalf of AFB Trading One Inc. in favor of Agragorn Holdings Limited dated August 23, 2012, irrevocably and unconditionally guaranteeing Agragorn Holdings Limited the timely and proper performance, observance, and fulfillment of obligations by Golden Spirits Limited.

39. Yes, I confirm my signature on the corporate guarantee on behalf of AFB Trading One Inc. in favor of Agragorn Holdings Limited dated August 23, 2012.

40. Yes, I was authorized to sign the corporate guarantee on behalf of AFB Trading One Inc. in favor of Agragorn Holdings Limited dated August 23, 2012.

41. Yes, AFB Trading One Inc. had a material interest in the financial success of Golden Spirits Limited.

42. Yes, the irrevocable and unconditional guarantee dated August 23, 2012, of the timely and proper performance, observance, and fulfillment of obligations by Golden Spirits Limited to Agragorn Holdings Limited was unequivocally in the interest of AFB Trading One Inc. and was signed in its interest.

43. Yes, the issuance of the irrevocable and unconditional guarantee dated August 23, 2012, was unequivocally beneficial for AFB Trading One Inc.

44. Yes, the consideration in the corporate guarantee of Golden Sphinx Limited in favor of Agragorn Holdings

Limited dated August 23, 2012, guaranteeing timely and proper performance, observance, and fulfillment of obligations by Golden Spirits Limited, was undoubtedly sufficient for AFB Trading One Inc.

45. Yes, I signed the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of Golden Spirits Limited.

46. Yes, I confirm my signature on the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of Golden Spirits Limited.

47. Yes, I was authorized to sign the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of Golden Spirits Limited.

48. Yes, the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was unequivocally in the interest of Golden Spirits Limited and was signed in its interest.

49. Yes, the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was unequivocally beneficial for Golden Spirits Limited.

50. Yes, the consideration in the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was undoubtedly sufficient for Golden Spirits Limited.

51. Yes, I signed the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of Golden Sphinx Limited.

52. Yes, I confirm my signature on the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of Golden Sphinx Limited.

53. Yes, I was authorized to sign the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of Golden Sphinx Limited.

54. Yes, the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was unequivocally in the interest of Golden Sphinx Limited and was signed in its interest.

55. Yes, the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was unequivocally beneficial for Golden Sphinx Limited.

56. Yes, the consideration in the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was undoubtedly sufficient for Golden Sphinx Limited.

57. Yes, I signed the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of AFB Trading One Inc.

58. Yes, I confirm my signature on the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of AFB Trading One Inc.

59. Yes, I was authorized to sign the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, on behalf of AFB Trading One Inc.

60. Yes, the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was unequivocally in the interest of AFB Trading One Inc. and was signed in its interest.

61. Yes, the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was unequivocally beneficial for AFB Trading One Inc.

62. Yes, the consideration in the agreement on the figure of the arbitrator and applicable rules dated August 23, 2012, was undoubtedly sufficient for AFB Trading One Inc.

On July 19, 2021, during the consideration of the present case, Tatiana Padalko, identifying herself as the financial administrator of Sabadash A.V., submitted a statement to the Tribunal, with a copy of the ruling by the Moscow Region Arbitration Court in case No. A41-100887/19 dated November 10, 2020, appended to the case file confirming her authority to act on behalf of the Defendants. In correspondence to the Tribunal, she stated: "Good afternoon, I am the financial administrator of Sabadash A.V.. The Defendant companies belong to Sabadash A.V. The documents in this dispute were falsified. Please provide your contact details for follow-up." (quoted from Tatiana Padalko's message arbitrpadalko@gmail.com). The Arbitrator evaluated this statement along with the other evidence in the case.

On August 19, 2021, the Tribunal received a petition from AFB Trading One, Inc. and Golden Sphinx Limited raising the issue of the Tribunal's jurisdiction in light of the liquidation of Golden Spirits Limited on October 31,

2013—one of the parties to the dispute and a signatory to the Agreement on the Selection of the Arbitrator and Applicable Rules dated August 23, 2012.

On August 24, 2021, the Tribunal received a response to the claim by Davilla Investing Limited signed by Tatiana Alekseevna Padalko in her capacity as the financial administrator of Sabadash A.V., as owner of AFB Trading One, Inc. The response does not contest the arbitration agreement under the AD HOC procedure, but states that the company ceased operations upon liquidation on October 31, 2013.

Golden Spirits Limited, whose obligations are guaranteed by Golden Sphinx Limited and AFB Trading One, Inc., was claimed by the representative to have lost legal capacity from October 1, 2013. Therefore, they requested the claim be dismissed.

On August 25, 2021, the Tribunal received an email from Managing Attorney Michael Zorkin: "Knyazev, Attached is the response to the claim by Larisa Sabadash on behalf of AFB Trading One, Inc. and Golden Sphinx Limited." In the response, dated August 24, 2021, submitted by Larisa Sabadash as Director of AFB Trading One, Inc. and Golden Sphinx Limited, she confirmed proper notice of the hearing scheduled for August 25, 2021, at 12:00 PM Moscow time, confirmed the conclusion of the agreement dated December 23, 2012, between the parties, did not dispute the Arbitrator's jurisdiction, stated she has been Director of AFB Trading One, Inc. since October 3, 2016, and Director of Golden Sphinx Limited since September 17, 2019, and asserted that since the primary borrower, Golden Spirits Limited, lost legal capacity on October 1, 2013, the associated guarantee obligations should be deemed terminated, requesting dismissal of the claim.

The Tribunal reviewed Larisa Sabadash' response and the position of her representative Michael Zorkin, finding an acknowledgment of the debt obligations of Golden Sphinx Limited and AFB Trading One, Inc.

According to Article 309 of the Russian Federation Civil Code, obligations must be performed properly in accordance with the terms of the obligation and legal requirements.

The Arbitrator deemed the arguments of the Defendants regarding the expiration of the statute of limitations unsubstantiated, noting that the guarantee obligations under the loan issued by Golden Spirits Limited were undertaken before October 1, 2013, and thus remain valid.

The Tribunal reviewed the statement by financial administrator Tatiana Padalko that the Defendant companies belong to Sabadash A.V.. To verify these claims, the Tribunal examined case No. A40-165165/18 in the Moscow Arbitration Court regarding a claim by individual entrepreneur Gofman E. against the General Partnership "Itkin and Sabadash" seeking recognition of the existence and validity of an agreement. On October 10, 2019, the Moscow Arbitration Court issued a ruling in response to Sabadash A.V.'s appeal against the September 14, 2018, decision contesting the existence of the partnership and its ownership of specific assets, including:

1. Russian Diesel, OJSC   (address: Leningrad Region, Vsevolozhsky District, Kirpichny Zavod station, industrial zone); contributed to the charter capital of Diesel Limited on Jersey Island, UK.

2. Vyborg Cellulose, OJSC (address: Leningrad Region, Vyborg District, Sovetsky village, Zavodskaya St. 2); contributed to the charter capital of Vyborg Limited on Jersey Island, UK.

3. LIVIZ, CJSC (address: 56–58 Sinopskaya Embankment, St. Petersburg,).

4. LIVIZ, CJSC (address: 5 Nagornaya Str., Krasnoye Selo, St. Petersburg,).

5. Agricultural land shares in Lenin's Ray state farm (Moscow Region, Krasnogorsky District) – 987 ha; Petrovsky – 197 ha; Ilyinsky – 430 ha; Dmitrovsky – 360 ha.

6. Real estate purchased in Beverly Hills, California, USA, Beverly Park Street, No. 58.

7. Purchase of Gulfstream G500 aircraft.

Excluding customer-owned assets located outside of the Russian Federation, including real estate in Cap Ferrat, France, General de Gaulle Blvd., No. 17, and a Falcon 200 aircraft, tail number NV VNG.

This was reviewed and confirmed by the Ninth Arbitration Appellate Court of Moscow in its ruling dated September 12, 2019, which, having considered the evidence and arguments in Sabadash' appeal, confirmed the

existence of the General Partnership "Itkin and Sabadash."

Thus, after examining the materials in case No. A40-165165/18, and taking into account the preclusive effect of final judicial acts subject to mandatory enforcement, and the responses of parties, third parties, and witnesses to court inquiries, the Tribunal established that contrary to the statement by Sabadash A.V. via his financial administrator Tatiana Padalko, the Defendant companies and the assets they hold in fact belong to the General Partnership "Itkin and Sabadash," although they are nominally registered under the name of Sabadash A.V. and the Amber Trust, which is managed by Sabadash A.V.

In the course of reviewing the evidence in this case, the Tribunal established the following:

Defendant 1, Golden Spirits Limited, while nominally owned by Sabadash A.V., is in fact owned by the General Partnership "Itkin and Sabadash";

Defendant 2, AFB Trading One, Inc., while nominally owned by the Amber Trust, managed by Sabadash A.V., is in fact owned by the General Partnership "Itkin and Sabadash";

Defendant 3, Golden Sphinx Limited, while nominally owned by the Amber Trust, managed by Sabadash A.V., is in fact owned by the General Partnership "Itkin and Sabadash";

Russian Diesel, OJSC (address: Leningrad Region, Vsevolozhsky District, Kirpichny Zavod Station, industrial zone) and Diesel Limited on Jersey Island, United Kingdom, while nominally owned by Defendant 2, are in fact owned by the General Partnership "Itkin and Sabadash";

Vyborg Cellulose, OJSC (address: 2 Zavodskaya St, Sovetsky village, Vyborgsky District, Leningrad Region) and Vyborg Limited on Jersey Island, United Kingdom, while nominally owned by Defendant 2, are in fact owned by the General Partnership "Itkin and Sabadash";

Real estate located at 58 Beverly Park Street, Beverly Hills, California, USA, is in fact owned by the General Partnership "Itkin and Sabadash";

The Gulfstream G500 aircraft is in fact owned by the General Partnership "Itkin and Sabadash";

Real estate located at 17 General de Gaulle Boulevard, Cap Ferrat, France, is in fact owned by the General Partnership "Itkin and Sabadash".

According to the evidence submitted to the Arbitrator, on April 21, 2010, the Third Party transferred USD 1,022,000 to Defendant 1 and paid a transfer fee of USD 268.36. Thus, the Third Party fully fulfilled its obligations under the loan agreement. Defendant 1 failed to fulfill its obligations to repay the loan principal and interest.

On August 23, 2012, the Third Party and Defendant 1 entered into an agreement on modification and deferral of debt. Under this agreement, the parties extended the repayment deadline to January 1, 2020. The interest rate stipulated in Clause 4.2 of the loan agreement was increased to 6.5% per annum, with monthly compound interest starting from the date of amendment until full repayment.

The parties also agreed on the following guarantors: AFB Trading One, Inc., registered in the State of California, USA, with offices at 8501 Wilshire Boulevard, Suite 330, Beverly Hills, California, USA ("Guarantor 1"), and Golden Sphinx Limited, with offices at 43 La Motte Street, St. Helier, Jersey, JE4 8SD, Channel Islands ("Guarantor 2").

On August 23, 2012, the Third Party and AFB Trading One, Inc. (Defendant 2) entered into a corporate guarantee under which Defendant 2 is liable to the Plaintiff for the performance of Defendant 1's obligations, and in case of non-performance, guarantees repayment of the debt within 10 days of receiving a demand.

On August 23, 2012, the Third Party and Golden Sphinx Limited (Defendant 3) entered into a corporate guarantee under which Defendant 3 is liable to the Plaintiff for the performance of Defendant 1's obligations, and in case of non-performance, guarantees repayment of the debt within 10 days of receiving a demand.

On August 23, 2012, the Third Party, Defendant 1, Defendant 2, and Defendant 3 entered into the AGREEMENT ON THE SELECTION OF THE ARBITRATOR AND APPLICABLE RULES.

On September 7, 2020, the Third Party and Davilla Investing Limited (Plaintiff) entered into an agreement assigning all rights under the loan agreement dated April 20, 2010, as amended on August 23, 2012, from the

Third Party to the Plaintiff, including the security in the form of corporate guarantees issued by Defendant 2 and Defendant 3.

On December 21, 2020, the Plaintiff sent a demand to Defendant 2 for payment of Defendant 1's debt. On December 21, 2020, the Plaintiff sent a demand to Defendant 3 for payment of Defendant 1's debt.

To date, none of the Defendants has repaid the debt under the existing obligations.

The above circumstances are confirmed by the following evidence:

1. Loan Agreement dated April 20, 2010, between the Third Party and Defendant 1;

2. Bank statement dated April 21, 2010, confirming the transfer of USD 1,022,000 from the Third Party to Defendant 1;

3. Agreement on Modification and Deferral of Debt dated August 23, 2012, between the Third Party and Defendant 1;

4. Corporate Guarantee dated August 23, 2012, issued by Defendant 2 to the Third Party;

5. Corporate Guarantee dated August 23, 2012, issued by Defendant 3 to the Third Party;

6. Assignment Agreement of Loan Rights dated September 7, 2020, between the Third Party and the Plaintiff;

7. Demands for payment of the debt.

According to Article 810 of the Civil Code of the Russian Federation:
"…The borrower is obligated to return to the lender the amount of the loan received within the time frame and in the manner stipulated by the loan agreement."

According to Article 809 of the Civil Code of the Russian Federation:
"1. Unless otherwise provided by law or the loan agreement, the lender has the right to receive interest from the borrower for use of the loan in the amount and manner defined in the agreement. If the agreement does not specify the interest rate, it is determined by the key rate of the Bank of Russia effective during the relevant periods.

2. The interest rate for use of the loan may be set in the agreement as a fixed annual percentage, as a variable annual percentage dependent on conditions defined in the agreement, including changes in a variable value, or in another way that enables determination of the correct interest amount at the time of payment.

3. Unless otherwise agreed, interest for use of the loan is paid monthly up to and including the date the loan is repaid…"

According to Article 363 of the Civil Code of the Russian Federation:
"1. In the event of non-performance or improper performance of an obligation secured by a guarantee, the guarantor and the debtor are jointly liable to the creditor, unless the law or the guarantee agreement provides for subsidiary liability.

2. The guarantor is liable to the creditor to the same extent as the debtor, including the payment of interest, reimbursement of legal costs related to debt collection, and other creditor losses resulting from non-performance or improper performance by the debtor, unless otherwise stipulated in the guarantee agreement.

3. Persons who jointly provide a guarantee (co-guarantors) are jointly liable to the creditor, unless the guarantee agreement provides otherwise. Unless agreed otherwise between the co-guarantors and the creditor, co-guarantors who have limited their liability are deemed to have secured the principal obligation each for their respective share. A co-guarantor who has fulfilled the obligation has the right to seek reimbursement from other co-guarantors proportional to their share in the security of the principal obligation…"

According to Article 384 of the Civil Code of the Russian Federation:
"Unless otherwise provided by law or agreement, the rights of the original creditor are transferred to the new creditor to the same extent and under the same conditions that existed at the time of the transfer. In

particular, the new creditor acquires the rights securing the fulfillment of the obligation, as well as other rights associated with the claim, including the right to interest..."

Thus, the Defendants are jointly and severally liable for a total amount of USD 1,804,017.81, which includes:
USD 1,022,000 – principal loan amount;
USD 1,874.53 – interest for the period from April 21, 2010, to April 21, 2012;
USD 780,143.28 – interest for the period from April 21, 2012, to December 12, 2020.

Pursuant to Article 16 of the Russian Federation Federal Arbitration Law and in accordance with the UNCITRAL Arbitration Rules (as adopted by the United Nations Commission on International Trade Law in 1976 and recommended for use by the UN General Assembly on December 15, 1976, as amended),

On August 31, 2021, the tribunal, composed of the parties to the resolution of a specific dispute and presided over by the sole arbitrator mutually stipulated to by the parties — Dmitry Valerievich Knyazev — having reviewed the statement of claim submitted by Davilla Investing Limited (Plaintiff) against Golden Spirits Limited (Defendant 1), AFB Trading One, Inc. (Defendant 2), Golden Sphinx Limited (Defendant 3), and Agragorn Holdings Limited, seeking recovery of debt under a loan agreement, an agreement for modification and deferral of debt, and corporate guarantees,

## IT IS HEREBY ORDERED:

1. The claims brought by Davilla Investing Limited against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited for recovery of debt under the loan agreement, the agreement on modification and deferral of debt, and corporate guarantees are hereby GRANTED.

2. IT IS HEREBY ORDERED that Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited shall be jointly and severally liable to pay Davilla Investing Limited the principal debt in the amount of USD 1,022,000 (one million twenty-two thousand U.S. dollars), plus accrued interest in the amount of USD 782,017.80 (seven hundred eighty-two thousand seventeen U.S. dollars and eighty cents).

3. IT IS HEREBY ORDERED that Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited shall be jointly and severally liable to reimburse Davilla Investing Limited legal expenses in the amount of 278,000 (two hundred seventy-eight thousand) Russian rubles.

4. Pursuant to the arbitration agreement, the award of the arbitral tribunal is final, effective immediately upon issuance, and subject to immediate enforcement. In accordance with Article 238.4 of the Commercial Procedure Code of the Russian Federation, the findings of fact established by the arbitral tribunal shall not be subject to reassessment or substantive review.

Sole arbitrator (judge),
Knyazev Dmitry Valeryevich Arbitration Court,
AD HOC arbitration procedure for the resolution
of a specific dispute appointed
and agreed upon by the parties                                   - *signature-*

Stamp:
Arbitration Court, AD HOC arbitration
procedure
Sole arbitrator (judge)
Knyazev Dmitry Valeryevich

*Seal:*
*Russian Federation Ministry of Justice*
*Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator*
*City of Moscow*

*Seal:*
*Russian Federation Ministry of Justice Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator, city of Moscow*

*Seal: Notary Public S. I. Glukhov, Notarial District: the city of Moscow*

*Russian Federation Ministry of Justice Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator, ciy of Moscow*

**The Russian Federation**
**City of Moscow**
**April thirty in the year two thousand and twenty-six**

I, Glukhov Sergei Ivanovich, a Notary Public for the city of Moscow, certify that this is a true and correct copy of the original document.
Recorded in the Register: No 77/749-n/77-2026-1-1083
Paid for notarial services: 3300 Roubles 00 kopecks.

*- signature-* S. I. Glukhov

*Seal: Notary Public S. I. Glukhov, Notarial District: city of Moscow*

*Stamp:*
*The document contains 11 pages,*
*bound, numbered and sealed*
*Notary Public - signature-*

*Перевод данного текста с русского языка на английский язык сделан мной, переводчиком Сулеймано...*
*Элиной Вахидовной.*

_____

**The translation of this text was performed by me, the translator Suleymanova Elina Vakhidovna.**
_____ /signature/_____

| | |
|---|---|
| **Российская Федерация** | **The Russian Fe...ation** |

*Город Москва*
*Второго мая две тысячи двадцать шестого года*
Я, Бурейникова Леонора Леонидовна, нотариус города Москвы,
свидетельствую подлинность подписи переводчика
Сулеймановой Элины Вахидовны.
Подпись сделана в моем присутствии.
Личность подписавшего документ установлена.

*Зарегистрировано в реестре:* №40/87-н/77-2026-*12-2841*
*Уплачено за совершение нотариального действия:* 400 руб. 00
коп

_____ Л.Л. Бурейникова

Всего прошнуровано, пронумеровано и скреплено
печатью(2) лист(ов)

Нотариус

*The city of Moscow*
*02.05.2026*
I, Bureynikova Leonora Leonidovna, Notary of the city of
Moscow, certify the authenticity of signature, made by the
translator Suleymanova Elina Vakhidovna.
The signature was made in my presence.
Her identity is established.

It is registered in the register under № 40/87-н/77-2026-
Paid for the performance of a notarial act. 400 rubles 00 kop.

_____/signature_____     L.L. Bureynikova

| Seal: Notary  Bureynikova L.L. |
| Notarial  district of c. Moscow |

Stitched up, numbered and sealed (   ) pages
Notary /signature/

| Seal: Notary  Bureynikova L.L. |
| Notarial  district of c. Moscow |

## APOSTILLE
(Convention de La Haye du 5 octobre 1961)

| | | |
|---|---|---|
| **1.** **Страна:**<br>Country / Pays: | Российская Федерация | |

**Настоящий официальный документ**
This public document / Le présent acte public

| | | |
|---|---|---|
| **2.** **был подписан**<br>has been signed by<br>a été signé par | Глухов С.И., Бурейникова Л.Л. | |
| **3.** **выступающим в качестве**<br>acting in the capacity of<br>agissant en qualité de | нотариус, нотариус | |
| **4.** **скреплен печатью / штампом**<br>bears the seal / stamp of<br>est revêtu du sceau / timbre de | нотариус г. Москвы Глухов Сергей Иванович, нотариус г. Москвы Бурейникова Леонора Леонидовна | |

**Удостоверено**
Certified / Attesté

| | | | | |
|---|---|---|---|---|
| **5.** **В**<br>at / à | г. Москва | **6.** **Дата**<br>the / le | 07.05.2026 | |
| **7.** **учреждение**<br>by / par | Крымшокалова А.З.<br>Заместитель начальника отдела международной правовой помощи и проставления апостиля Главного управления Министерства юстиции Российской Федерации по Москве | | | |
| **8.** **№**<br>N° / sous n° | 77/17836-26 | | | |
| **9.** **Печать /**<br>**штамп:**<br>Seal / stamp:<br>Sceau / timbre: | | **10. Подпись**<br>Signature:<br>Signature: | | |



Данный апостиль удостоверяет лишь подлинность подписи и должность лица, подписавшего официальный документ, и при необходимости подлинность печати или штампа, которым скреплен этот документ.

Апостиль не заверяет достоверность самого документа, для которого он был оформлен.

Информацию по проверке апостиля можно найти, отсканировав QR-код, либо перейдя по ссылке: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=62bfbe1d-3c5b-4e43-a387-68fa13efd651**

This apostille certifies only the authenticity of the signature and the position of the official who signed the official document, and, if necessary, the authenticity of the seal or stamp affixed to the said document.

The apostille does not certify the authenticity of the document for which it was issued.

Information on apostille verification can be found by scanning a QR code or by referring to the following link: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=62bfbe1d-3c5b-a387-68fa13efd651**

Cette apostille ne certifie que l'authenticité de la signature et le poste du fonctionnaire qui a signé le document officiel et, le cas échéant, l'authenticité du sceau ou du cachet apposé sur ledit document.

L'apostille n'assure pas la véracité du document lui-même pour lequel il a été délivré.

Les informations de vérification de l'apostille peuvent être trouvées en scannant le code QR ou en consultant le lien suivant: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=62bfbe1d-3c5b-4e43-a387-68fa13efd651**



Прошито, пронумеровано и скреплено печатью
26 ( _двадцать шесть_ ) лист _об_

Заместитель начальника отдела
Главного управления Министерства юстиции
Российской Федерации по Москве

_____ А.З. Крымшокалова

# EXHIBIT 2

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**



Арбитражный суд в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

Единый арбитр (судья), выбранный и согласованный сторонами,

Князев Дмитрий Валерьевич

Адрес: 109012, РФ, город Москва, улица Ильинка, д.4, оф. 102-103/

## РЕШЕНИЕ

15 августа 2025года в г. Москва Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора (далее также – Суд), в лице единого арбитра (Судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича (далее также – Судья или Арбитр), рассмотрев исковое заявление гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) на основании Договора уступки требования (цессии) от 15.05.2023 года (далее также – истец) к ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 1), Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее также – Ответчик 2) о взыскании задолженности по обязательствам, предусмотренных Решением Суда от 30 августа 2021 года, вытекающим из договора займа, соглашений об изменении и отсрочке долга, корпоративных гарантий в размере 1 807 503 (Один миллион восемьсот семь тысяч пятьсот три) Доллара США 80 центов (эквивалент: 144 144 510,00 рублей), процентов за пользование денежными средствами за период с 31 августа 2021г. по 15 августа 2025г. в размере 76 787 557,58 рублей (эквивалент: 962853 Долларов США)

Третейское разбирательство проведено в соответствии с положениями Федерального закона № 382-ФЗ от 29.12.2015 г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382), в присутствии сторон:

от истца: Грант Александр Александрович, как преемник Давилла Инвестинг Лимитед (Davilla Investing Limited), в подтверждение полномочий к материалам дела приобщена удостоверенная копия Договора уступки требования (цессии) от 15.05.2023 года.

от ответчика 1: ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) нет представителя

от ответчика 2: Голден Сфинкс Лимитед (Golden Sphinx Limited) нет представителя

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие нормам статей 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда.

Компетенция Третейского судьи:

В соответствии со ст. 2 Федерального закона № 382-ФЗ от 29.12.2015г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382):

2) арбитраж (третейское разбирательство) - процесс разрешения спора третейским судом и принятия решения третейским судом (арбитражного решения);

16) третейский суд - единоличный арбитр или коллегия арбитров

1) арбитр (третейский судья) - физическое лицо, избранное сторонами или избранное (назначенное) в согласованном сторонами или установленном федеральным законом порядке для разрешения спора третейским судом.

3) администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора;

Арбитражная оговорка, являющаяся частью договора, признается соглашением, не зависящим от других условий договора. Принятие арбитражного решения о том, что договор недействителен, само по себе не влечет недействительность арбитражного соглашения.

Заявление об отсутствии у третейского суда компетенции может быть сделано соответствующей стороной арбитража не позднее представления ею первого заявления по существу спора».

**До начала третейского разбирательства по существу настоящего спора, заявлений об отсутствии компетенции у Третейского судьи рассматривать данный спор, не поступило.**

Руководствуясь статьями 7, 19, 52 Закона об арбитраже, Третейский судья принял решение о наличии у него компетенции рассматривать переданный на его разрешение спор.

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие нормам статей 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда:

I. В соответствии с ч. 3 ст. 239 АПК РФ:

П.1 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: одна из сторон

третейского соглашения, на основании которого спор был разрешен третейским судом, не обладала полной дееспособностью».

От сторон заявления по данному пункту не поступали.

П.2 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: «Третейское соглашение, на основании которого спор был разрешен третейским судом, недействительно по праву, которому стороны его подчинили, а при отсутствии такого указания - по праву Российской Федерации».

В силу ст. 7 ФЗ-382, «арбитражное соглашение является соглашением сторон о передаче в арбитраж всех или определенных споров, которые возникли или могут возникнуть между ними в связи с каким-либо конкретным правоотношением, независимо от того, носило такое правоотношение договорный характер или нет. Арбитражное соглашение может быть заключено в виде арбитражной оговорки в договоре или в виде отдельного соглашения.

При толковании арбитражного соглашения любые сомнения должны толковаться в пользу его действительности и исполнимости».

**Стороны извещены надлежащим образом о формировании состава суда, дате, месте и времени судебного разбирательства.**

В силу статьи 3 Закона об арбитраже, стороны считаются извещенными надлежащим образом, по аналогии со ст. 123 АПК РФ.

Аналогичный вывод подтвержден позицией Судебной коллегии Верховного Суда Российской Федерации от 30 декабря 2015 года N 302-ЭС15-11092:

П.5) «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства представит доказательство того, что: Состав третейского суда или процедура арбитража не соответствовали соглашению сторон или федеральному закону».

А) Состав третейского суда: В соответствии с ч. 2 ст. 11 ФЗ-382, Стороны арбитража могут согласовать по своему усмотрению процедуру избрания (назначения) арбитра или арбитров при условии соблюдения положений частей 4 - 11 настоящей статьи.

На основании соглашения о передаче прав по Договору займа от 07.09.2020, заключенного между истцом и третьим лицом; на основании Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г., заключенного между Третьим лицом, Ответчиком 1, Ответчиком 2, Ответчиком 3, утвержденного сторонами действующим в настоящее время Арбитражным регламентом ЮНСИТРАЛ стороны согласились о том, что любые споры, разногласия, расхождения во мнениях или претензии, которые могут возникнуть из или в связи с перечисленными выше соглашениями и договорами, включая, но, не ограничиваясь, теми, которые связаны с его вступлением в силу, исполнением, изменением, нарушением, прекращением или действительностью, подлежат разрешению и окончательному урегулированию посредством арбитражного разбирательства AD HOC. Любой спор будет рассмотрен единолично

согласованным сторонами Арбитром. Таким образом, данный конкретный спор передается на рассмотрение данного сформированного суда, единым арбитром назначается магистр юриспруденции Дмитрий Валерьевич Князев, Гражданин Российской Федерации.

**Личность Арбитра установлена** на основании Паспорта гражданина Российской Федерации на имя Князева Дмитрия Валерьевича, подтверждается имеющейся копией в материалах третейского дела. Наличие у избранного Третейского судьи, Князева Дмитрия Валерьевича, высшего юридического образования, подтверждается Дипломом РФ г. Москва Специализированным институтом юриспруденции № АВС 0715029, имеющейся копией в материалах третейского дела.

Отсутствие судимости подтверждается Справкой ГУ МВД России по г. Москве от 11.07.2021 г. № 13/5-099/264646-Е, имеющейся в материалах третейского дела.

Согласно разъяснениям Минюста России от 02.09.2021 г. № 12-103924/2021, Положения Федерального закона № 382-ФЗ не предусматривают возможности предоставления третейскому суду, образованному сторонами для разрешения конкретного спора, права на осуществлении функций постоянно действующего арбитражного учреждения и выполнение им функций по администрированию арбитража. Таким образом, каких-либо дополнительных лицензий или разрешений для третейского судьи, действующим законодательством не предусмотрено.

**Таким образом, формирование состава Третейского суда нроизведено с соблюдением положений Закона об арбитраже.**

Б) Процедура арбитража: В соответствии с п.п. 1, 2 ст. 19 Закона об арбитраже: «При условии соблюдения положений настоящего Федерального закона стороны могут по своем усмотрению договориться о процедуре арбитража. При отсутствии договоренности третейский суд может с соблюдением положений настоящего Федерального закон осуществлять арбитраж таким образом, какой он посчитает надлежащим, в том числе отношении определения допустимости, относимости и значения любого доказательства».

В соответствии с ч. 2 ст. 2 Закона об арбитраже: «Администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора».

Во исполнение данной нормы, Единый Арбитр рассмотрел спор самолично, что подтверждается материалами третейского дела:

- лично избран сторонами в арбитражном соглашении,
- лично получил исковое заявление и принял к производству,
- лично выбрал и получил в пользование помещение для проведения судебного разбирательства,

- на личный банковский счет получил арбитражный сбор,

- лично оплатил расходы, связанные с рассмотрением спора (почтовые расходы, канцелярские принадлежности, оргтехника, помещение и т.п.),

- лично направил сторонам почтой судебные извещения и иные документы,

- лично назначил и провел судебное заседание,

- лично вынес постановления и арбитражное решение,

- Возражений о нарушении процедуры арбитража от сторон не поступало.

- Заявлений о самоотводах и об отводах, не поступило.

В соответствии с ч. 1 ст. 11 ГК РФ, защиту нарушенных или оспоренных гражданских прав осуществляет в соответствии с подведомственностью дел, установленной процессуальным законодательством, суд, арбитражный суд или третейский суд.

В соответствии с ч. 1 ст. 33 АПК РФ, споры, возникающие из гражданско-правовых отношений, а также индивидуальные трудовые споры спортсменов, тренеров в профессиональном спорте и спорте высших достижений могут быть переданы сторонами на рассмотрение третейского суда при наличии между сторонами спора действующего арбитражного соглашения, если иное не предусмотрено федеральным законом.

В соответствии с ч. 3 ст. 1 Закона об арбитраже, в арбитраж (третейское разбирательство) по соглашению сторон могут передаваться споры между сторонами гражданско-правовых отношений, если иное не предусмотрено федеральным законом.

Действующее законодательство не содержит запрета на передачу споров по договорам займа, цессии, заключенными между юридическими лицами, на рассмотрение в третейский суд.

Договоры займа, цессии, не являются контрактом, заключенным в сфере закупок для государственных и муниципальных нужд, а также не является договором, заключенным в порядке, предусмотренном Федеральным законом N 223-ФЗ.

**Каких-либо заявлений от Сторон о том, что рассматриваемый снор пе может быть предметом третейского разбирательства, или о наличии противоречий публичному порядку Российской Федерации, не ноступало, а Третейским судьей не установлено.**

Единолично Арбитр (третейский Судья), при ведении протокола судебного заседания, рассмотрел исковое заявление, представленные сторонами доказательства

## УСТАНОВИЛ:

Истец обратился в суд с иском к Ответчику 1, Ответчику 2, направив заказной почтой всем сторонам по делу уведомление об арбитраже с исковым заявлением с приложениями, указав:

что Истец информирует стороны о передаче требования по взысканию задолженности по обязательствам установленным Решением Суда от 30 августа 2021г. на арбитражное разбирательство, которым Суд постановил:

Удовлетворить исковые требования по иску Давилла Инвестинг Лимитед (Davilla Investing Limited) к Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.

Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB Trading One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов.

Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB Trading One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы в размере 278000 (Двести семьдесят восемь тысяч) рублей.

В соответствии с арбитражным соглашением, решение третейского суда окончательно. Вступает в законную силу немедленно с даты принятия, подлежит немедленному исполнению. В соответствии с ч. 4 ст. 238 АПК РФ, обстоятельства, установленные третейским судом, не подлежат переоценке либо пересмотру, по существу.

Решение Суда от 30 августа 2021 года до настоящего времени не исполнялось со стороны ответчиков. На момент рассмотрения настоящего спора сумма солидарного долга ответчиков, включая НДС: 144 144 510,00 рублей

Период начисления процентов: с 31.08.2021 по 15.08.2025 (1446 дней)

| период | дн. | дней в году | ставка, % | проценты, ₽ |
| --- | --- | --- | --- | --- |
| 31.08.2021 – 12.09.2021 | 13 | 365 | 6,5 | 333 704,41 |
| 13.09.2021 – 24.10.2021 | 42 | 365 | 6,75 | 1 119 588,18 |
| 25.10.2021 – 19.12.2021 | 56 | 365 | 7,5 | 1 658 649,16 |
| 20.12.2021 – 13.02.2022 | 56 | 365 | 8,5 | 1 879 802,38 |
| 14.02.2022 – 27.02.2022 | 14 | 365 | 9,5 | 525 238,90 |
| 28.02.2022 – 10.04.2022 | 42 | 365 | 20 | 3 317 298,31 |
| 11.04.2022 – 03.05.2022 | 23 | 365 | 17 | 1 544 123,38 |
| 04.05.2022 – 26.05.2022 | 23 | 365 | 14 | 1 271 631,02 |
| 27.05.2022 – 13.06.2022 | 18 | 365 | 11 | 781 934,60 |

| | | | | |
|---|---|---|---|---|
| 14.06.2022 – 24.07.2022 | 41 | 365 | 9,5 | 1 538 199,63 |
| 25.07.2022 – 18.09.2022 | 56 | 365 | 8 | 1 769 225,77 |
| 19.09.2022 – 23.07.2023 | 308 | 365 | 7,5 | 9 122 570,36 |
| 24.07.2023 – 14.08.2023 | 22 | 365 | 8,5 | 738 493,79 |
| 15.08.2023 – 17.09.2023 | 34 | 365 | 12 | 1 611 259,18 |
| 18.09.2023 – 29.10.2023 | 42 | 365 | 13 | 2 156 243,90 |
| 30.10.2023 – 17.12.2023 | 49 | 365 | 15 | 2 902 636,02 |
| 18.12.2023 – 31.12.2023 | 14 | 365 | 16 | 884 612,88 |
| 01.01.2024 – 28.07.2024 | 210 | 366 | 16 | 13 232 938,62 |
| 29.07.2024 – 15.09.2024 | 49 | 366 | 18 | 3 473 646,39 |
| 16.09.2024 – 27.10.2024 | 42 | 366 | 19 | 3 142 822,92 |
| 28.10.2024 – 31.12.2024 | 65 | 366 | 21 | 5 375 881,32 |
| 01.01.2025 – 08.06.2025 | 159 | 365 | 21 | 13 186 260,79 |
| 09.06.2025 – 27.07.2025 | 49 | 365 | 20 | 3 870 181,36 |
| 28.07.2025 – 15.08.2025 | 19 | 365 | 18 | 1 350 614,31 |

Сумма процентов: 76 787 557,58 ₽

Порядок расчёта: сумма долга × ставка Банка России (действующая в период просрочки) / количество дней в году × количество дней просрочки

**Суд в ходе рассмотрения доказательств но данному делу установил следующее:**

20 мая 2023г. Истец направил Ответчику 1 и Ответчику 2 уведомление о правопреемстве на основании Договора уступки требования (цессии) от 15.05.2023 года, а также требования об оплате солидарной задолженности.

21 декабря 2024г. Истец направил Ответчику 1 и Ответчику 2 повторное требование об оплате задолженности.

До настоящего времени ни один из ответчиков не произвел погашение задолженности по существующим обязательствам.

Договор уступки требования (цессии) от 15.05.2023 года между Давилла Инвестинг Лимитед (Davilla Investing Limited) и Грантом А.А. о передаче прав Судом принимается в качестве надлежащего доказательства прав на предъявление иска в качестве правопреемника кредитора по основному обязательству.

**Изложенные выше обстоятельства подтверждаются следующимн доказательствами:**

1. Договором уступки требования (цессии) от 15.05.2023 года между Давилла Инвестинг Лимитед (Davilla Investing Limited) и Грантом А.А. о передаче прав;

2. Решением от 30 августа 2021г. Арбитражного суда в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, в лице единого арбитра Князева Д.В.

3.      Требованиями об оплате задолженности от 20 мая 2023г., требованиями об оплате задолженности от 21 декабря 2024 г.

4.      Расчетом процентов на сумму неисполненных обязательств, проверенных Судом.

В соответствии со ст.810 ГК РФ «… Заемщик обязан возвратить займодавцу полученную сумму займа в срок и в порядке, которые предусмотрены договором займа».

В соответствии со ст.809 ГК РФ «1. Если иное не предусмотрено законом или договором займа, займодавец имеет право на получение с заемщика процентов за пользование займом в размерах и в порядке, определенных договором. При отсутствии в договоре условия о размере процентов за пользование займом их размер определяется ключевой ставкой Банка России, действовавшей в соответствующие периоды.

2. Размер процентов за пользование займом может быть установлен в договоре с применением ставки в процентах годовых в виде фиксированной величины, с применением ставки в процентах годовых, величина которой может изменяться в зависимости от предусмотренных договором условий, в том числе в зависимости от изменения переменной величины, либо иным путем, позволяющим определить надлежащий размер процентов на момент их уплаты.

3. При отсутствии иного соглашения проценты за пользование займом выплачиваются ежемесячно до дня возврата займа включительно…».

В соответствии со ст.363 ГК РФ «1. При неисполнении или ненадлежащем исполнении должником обеспеченного поручительством обязательства поручитель и должник отвечают перед кредитором солидарно, если законом или договором поручительства не предусмотрена субсидиарная ответственность поручителя.

2. Поручитель отвечает перед кредитором в том же объеме, как и должник, включая уплату процентов, возмещение судебных издержек по взысканию долга и других убытков кредитора, вызванных неисполнением или ненадлежащим исполнением обязательства должником, если иное не предусмотрено договором поручительства.

3. Лица, совместно давшие поручительство (сопоручители), отвечают перед кредитором солидарно, если иное не предусмотрено договором поручительства. Если из соглашения между сопоручителями и кредитором не следует иное, сопоручители, ограничившие свою ответственность перед кредитором, считаются обеспечившими основное обязательство каждый в своей части. Сопоручитель, исполнивший обязательство, имеет право потребовать от других лиц, предоставивших обеспечение основного обязательства совместно с ним, возмещения уплаченного пропорционально их участию в обеспечении основного обязательства…».

В соответствии со ст. 384 ГК РФ «Если иное не предусмотрено законом или договором, право первоначального кредитора переходит к новому кредитору в том объеме и на тех условиях, которые существовали к моменту перехода права. В частности, к новому кредитору переходят права, обеспечивающие исполнение обязательства, а также другие связанные с требованием права, в том числе право на проценты…».

Таким образом, у Ответчиков есть солидарная задолженность на общую сумму 1807503 долларов США 80 центов, где сумма основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов, судебные расходы в размере 278000 (Двести семьдесят восемь тысяч) рублей.

В соответствии с Федеральным Законом Российской Федерации «О Третейских судах в Российской Федерации» ст.16.

В соответствии с Арбитражным регламентом ЮНСИТРАЛ (регламент, принятый Комиссией ООН по праву международной торговли в 1976 г. и рекомендованный к использованию Генеральной Ассамблеей ООН 15 декабря 1976 г. с изменениями).

15 августа 2025г. третейский суд, образованный сторонами для разрешения конкретного спора в составе единоличного третейского судьи, в лице единого арбитра (судьи), выбранного и согласованного сторонами  - Князева Дмитрия Валерьевича, рассмотрев исковое заявление гражданина Гранта Александра Александровича, являющегося  преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) на основании Договора уступки требования (цессии) от 15.05.2023 года (далее также – истец) к ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 1), Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее также – Ответчик 2) о взыскании задолженности по обязательствам, предусмотренных Решением Суда от 30 августа 2021 года вытекающим из договора займа, соглашений об изменении и отсрочке долга, корпоративных гарантий.

## РЕШИЛ:

1. Удовлетворить исковые требования по иску гражданина Гранта Александра Александровича, являющегося  преемником Давилла Инвестинг  Лимитед (Davilla Investing Limited) на основании Договора уступки требования (цессии) от 15.05.2023 года (далее также – истец) к ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 1), Голден Сфинкс Лимнтед (Golden Sphinx Limited) (далее также – Ответчик 2) о взыскании задолженности по обязательствам, предусмотренных Решением Суда от 30 августа 2021 года, вытекающим из договора займа, соглашений об изменении и отсрочке долга, корпоративных гарантий.

2. Солидарно взыскать с компаний ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One. Inc.) и Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу гражданина Гранта Александра Александровича, являющегося  преемником Давилла Инвестинг  Лимитед (Davilla Investing Limited) сумму основного долга в размере на общую сумму 1 807 503 (Один миллион восемьсот семь тысяч пятьсот три) Доллара США 80 центов (эквивалент: 144 144 510,00 рублей), проценты за пользование денежными средствами в период с 30 августа 2021г. по 15 августа 2025г. в размере 962853 Долларов США (эквивалент: 76 787 557,58 рублей)

3. Солидарно взыскать с компаний Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы в размере 300000 (Триста тысяч) рублей.

4. В соответствии с арбитражным соглашением, решение третейского суда окончательно. Вступает в законную силу немедленно с даты принятия, подлежит немедленному исполнению. В соответствии с ч. 4 ст. 238 АПК РФ, обстоятельства, установленные третейским судом, не подлежат переоценке либо пересмотру, по существу.

Арбитражный суд

в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

единый арбитр (судья),

выбранный и согласованный сторонами

Князев Дмитрий Валерьевич



# INTENTIONALLY LEFT BLANK





**КОПИЯ**

Арбитражный суд в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

Единый арбитр (судья), выбранный и согласованный сторонами,

Князев Дмитрий Валерьевич

Адрес: 109012, РФ, город Москва, улица Ильинка, д.4, оф. 102-103/

## РЕШЕНИЕ

15 августа 2025года в г. Москва Арбитражный суд в рамках арбитражной процедуры AD HOC для разрешения конкретного спора (далее также – Суд), в лице единого арбитра (Судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича (далее также – Судья или Арбитр), рассмотрев исковое заявление гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) на основании Договора уступки требования (цессии) от 15.05.2023 года (далее также – истец) к ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 1), Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее также – Ответчик 2) о взыскании задолженности по обязательствам, предусмотренных Решением Суда от 30 августа 2021 года, вытекающим из договора займа, соглашений об изменении и отсрочке долга, корпоративных гарантий в размере 1 807 503 (Один миллион восемьсот семь тысяч пятьсот три) Доллара США 80 центов (эквивалент: 144 144 510,00 рублей), процентов за пользование денежными средствами за период с 31 августа 2021г. по 15 августа 2025г. в размере 76 787 557,58 рублей (эквивалент: 962853 Долларов США)

Третейское разбирательство проведено в соответствии с положениями Федерального закона № 382-ФЗ от 29.12.2015 г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382), в присутствии сторон:

от истца: Грант Александр Александрович, как преемник Давилла Инвестинг Лимитед (Davilla Investing Limited), в подтверждение полномочий к материалам дела приобщена удостоверенная копия Договора уступки требования (цессии) от 15.05.2023 года.

от ответчика 1: ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) нет представителя

от ответчика 2: Голден Сфинкс Лимитед (Golden Sphinx Limited) нет представителя

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие нормам статей 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда.

Компетенция Третейского судьи:

В соответствии со ст. 2 Федерального закона № 382-ФЗ от 29.12.2015г. «Об арбитраже (третейском разбирательстве) в Российской Федерации» (далее-Закон об арбитраже, ФЗ-382):

2) арбитраж (третейское разбирательство) - процесс разрешения спора третейским судом и принятия решения третейским судом (арбитражного решения);

16) третейский суд - единоличный арбитр или коллегия арбитров

1) арбитр (третейский судья) - физическое лицо, избранное сторонами или избранное (назначенное) в согласованном сторонами или установленном федеральным законом порядке для разрешения спора третейским судом.

3) администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора;

Арбитражная оговорка, являющаяся частью договора, признается соглашением, не зависящим от других условий договора. Принятие арбитражного решения о том, что договор недействителен, само по себе не влечет недействительность арбитражного соглашения.

Заявление об отсутствии у третейского суда компетенции может быть сделано соответствующей стороной арбитража не позднее представления ею первого заявления по существу спора».

**До начала третейского разбирательства по существу настоящего спора, заявлений об отсутствии компетенции у Третейского судьи рассматривать данный спор, не поступило.**

Руководствуясь статьями 7, 19, 52 Закона об арбитраже, Третейский судья принял решение о наличии у него компетенции рассматривать переданный на его разрешение спор.

Реализуя полномочия, предоставленные ч. 1 ст. 16 Закона об арбитраже, Третейский судья, при установлении своей компетенции, дополнительно проверяет материалы дела на соответствие нормам статей 239 АПК РФ в целях исключения оснований компетентного суда для отказа в выдаче исполнительного листа на принудительное исполнение решения третейского суда:

I. В соответствии с ч. 3 ст. 239 АПК РФ:

П.1 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: одна из сторон

третейского соглашения, на основании которого спор был разрешен третейским судом, не обладала полной дееспособностью».

От сторон заявления по данному пункту не поступали.

П.2 «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства, представит доказательство того, что: «Третейское соглашение, на основании которого спор был разрешен третейским судом, недействительно по праву, которому стороны его подчинили, а при отсутствии такого указания - по праву Российской Федерации».

В силу ст. 7 ФЗ-382, «арбитражное соглашение является соглашением сторон о передаче в арбитраж всех или определенных споров, которые возникли или могут возникнуть между ними в связи с каким-либо конкретным правоотношением, независимо от того, носило такое правоотношение договорный характер или нет. Арбитражное соглашение может быть заключено в виде арбитражной оговорки в договоре или в виде отдельного соглашения.

При толковании арбитражного соглашения любые сомнения должны толковаться в пользу его действительности и исполнимости».

**Стороны извещены надлежащим образом о формировании состава суда, дате, месте и времени судебного разбирательства.**

В силу статьи 3 Закона об арбитраже, стороны считаются извещенными надлежащим образом, по аналогии со ст. 123 АПК РФ.

Аналогичный вывод подтвержден позицией Судебной коллегии Верховного Суда Российской Федерации от 30 декабря 2015 года N 302-ЭС15-11092:

П.5) «Компетентный суд может отказать в выдаче исполнительного листа только в случаях, если сторона третейского разбирательства представит доказательство того, что: Состав третейского суда или процедура арбитража не соответствовали соглашению сторон или федеральному закону».

А) Состав третейского суда: В соответствии с ч. 2 ст. 11 ФЗ-382, Стороны арбитража могут согласовать по своему усмотрению процедуру избрания (назначения) арбитра или арбитров при условии соблюдения положений частей 4 - 11 настоящей статьи.

На основании соглашения о передаче прав по Договору займа от 07.09.2020, заключенного между истцом и третьим лицом; на основании Договора о выборе (личности) Арбитра и применяемых правилах от «23» августа 2012г., заключенного между Третьим лицом, Ответчиком 1, Ответчиком 2, Ответчиком 3, утвержденного сторонами действующим в настоящее время Арбитражным регламентом ЮНСИТРАЛ стороны согласились о том, что любые споры, разногласия, расхождения во мнениях или претензии, которые могут возникнуть из или в связи с перечисленными выше соглашениями и договорами, включая, но, не ограничиваясь, теми, которые связаны с его вступлением в силу, исполнением, изменением, нарушением, прекращением или действительностью, подлежат разрешению и окончательному урегулированию посредством арбитражного разбирательства AD HOC. Любой спор будет рассмотрен единолично

согласованным сторонами Арбитром. Таким образом, данный конкретный спор передается на рассмотрение данного сформированного суда, единым арбитром назначается магистр юриспруденции Дмитрий Валерьевич Князев, Гражданин Российской Федерации.

**Личность Арбитра установлена** на основании Паспорта гражданина Российской Федерации на имя Князева Дмитрия Валерьевича, подтверждается имеющейся копией в материалах третейского дела. Наличие у избранного Третейского судьи, Князева Дмитрия Валерьевича, высшего юридического образования, подтверждается Дипломом РФ г. Москва Специализированным институтом юриспруденции № АВС 0715029, имеющейся копией в материалах третейского дела.

Отсутствие судимости подтверждается Справкой ГУ МВД России по г. Москве от 11.07.2021 г. № 13/5-099/264646-Е, имеющейся в материалах третейского дела.

Согласно разъяснениям Минюста России от 02.09.2021 г. № 12-103924/2021, Положения Федерального закона № 382-ФЗ не предусматривают возможности предоставления третейскому суду, образованному сторонами для разрешения конкретного спора, права на осуществлении функций постоянно действующего арбитражного учреждения и выполнение им функций по администрированию арбитража. Таким образом, каких-либо дополнительных лицензий или разрешений для третейского судьи, действующим законодательством не предусмотрено.

**Таким образом, формирование состава Третейского суда произведено с соблюдением положений Закона об арбитраже.**

Б) Процедура арбитража: В соответствии с п.п. 1, 2 ст. 19 Закона об арбитраже: «При условии соблюдения положений настоящего Федерального закона стороны могут по своем усмотрению договориться о процедуре арбитража. При отсутствии договоренности третейский суд может с соблюдением положений настоящего Федерального закон осуществлять арбитраж таким образом, какой он посчитает надлежащим, в том числе отношении определения допустимости, относимости и значения любого доказательства».

В соответствии с ч. 2 ст. 2 Закона об арбитраже: «Администрирование арбитража - выполнение функций по организационному обеспечению арбитража, в том числе по обеспечению процедур выбора, назначения или отвода арбитров, ведению делопроизводства, организации сбора и распределения арбитражных сборов, за исключением непосредственно функций третейского суда по разрешению спора».

Во исполнение данной нормы, Единый Арбитр рассмотрел спор самолично, что подтверждается материалами третейского дела:

• лично избран сторонами в арбитражном соглашении,

• лично получил исковое заявление и принял к производству,

• лично выбрал и получил в пользование помещение для проведения судебного разбирательства,

- на личный банковский счет получил арбитражный сбор,

- лично оплатил расходы, связанные с рассмотрением спора (почтовые расходы, канцелярские принадлежности, оргтехника, помещение и т.п.),

- лично направил сторонам почтой судебные извещения и иные документы,

- лично назначил и провел судебное заседание,

- лично вынес постановления и арбитражное решение,

- Возражений о нарушении процедуры арбитража от сторон не поступало.

- Заявлений о самоотводах и об отводах, не поступило.

В соответствии с ч. 1 ст. 11 ГК РФ, защиту нарушенных или оспоренных гражданских прав осуществляет в соответствии с подведомственностью дел, установленной процессуальным законодательством, суд, арбитражный суд или третейский суд.

В соответствии с ч. 1 ст. 33 АПК РФ, споры, возникающие из гражданско-правовых отношений, а также индивидуальные трудовые споры спортсменов, тренеров в профессиональном спорте и спорте высших достижений могут быть переданы сторонами на рассмотрение третейского суда при наличии между сторонами спора действующего арбитражного соглашения, если иное не предусмотрено федеральным законом.

В соответствии с ч. 3 ст. 1 Закона об арбитраже, в арбитраж (третейское разбирательство) по соглашению сторон могут передаваться споры между сторонами гражданско-правовых отношений, если иное не предусмотрено федеральным законом.

Действующее законодательство не содержит запрета на передачу споров по договорам займа, цессии, заключенными между юридическими лицами, на рассмотрение в третейский суд.

Договоры займа, цессии, не являются контрактом, заключенным в сфере закупок для государственных и муниципальных нужд, а также не является договором, заключенным в порядке, предусмотренном Федеральным законом N 223-ФЗ.

**Каких-либо заявлений от Сторон о том, что рассматриваемый спор не может быть предметом третейского разбирательства, или о наличии противоречий публичному порядку Российской Федерации, не поступало, а Третейским судьей не установлено.**

Единолично Арбитр (третейский Судья), при ведении протокола судебного заседания, рассмотрел исковое заявление, представленные сторонами доказательства

## УСТАНОВИЛ:

Истец обратился в суд с иском к Ответчику 1, Ответчику 2, направив заказной почтой всем сторонам по делу уведомление об арбитраже с исковым заявлением с приложениями, указав:

что Истец информирует стороны о передаче требования по взысканию задолженности по обязательствам установленным Решением Суда от 30 августа 2021г. на арбитражное разбирательство, которым Суд постановил:

Удовлетворить исковые требования по иску Давилла Инвестинг Лимитед (Davilla Investing Limited) к Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.

Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB Trading One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов.

Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB Trading One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы в размере 278000 (Двести семьдесят восемь тысяч) рублей.

В соответствии с арбитражным соглашением, решение третейского суда окончательно. Вступает в законную силу немедленно с даты принятия, подлежит немедленному исполнению. В соответствии с ч. 4 ст. 238 АПК РФ, обстоятельства, установленные третейским судом, не подлежат переоценке либо пересмотру, по существу.

Решение Суда от 30 августа 2021 года до настоящего времени не исполнялось со стороны ответчиков. На момент рассмотрения настоящего спора сумма солидарного долга ответчиков, включая НДС: 144 144 510,00 рублей

Период начисления процентов: с 31.08.2021 по 15.08.2025 (1446 дней)

| период | дн. | дней в году | ставка, % | проценты, ₽ |
|---|---|---|---|---|
| 31.08.2021 – 12.09.2021 | 13 | 365 | 6,5 | 333 704,41 |
| 13.09.2021 – 24.10.2021 | 42 | 365 | 6,75 | 1 119 588,18 |
| 25.10.2021 – 19.12.2021 | 56 | 365 | 7,5 | 1 658 649,16 |
| 20.12.2021 – 13.02.2022 | 56 | 365 | 8,5 | 1 879 802,38 |
| 14.02.2022 – 27.02.2022 | 14 | 365 | 9,5 | 525 238,90 |
| 28.02.2022 – 10.04.2022 | 42 | 365 | 20 | 3 317 298,31 |
| 11.04.2022 – 03.05.2022 | 23 | 365 | 17 | 1 544 123,38 |
| 04.05.2022 – 26.05.2022 | 23 | 365 | 14 | 1 271 631,02 |
| 27.05.2022 – 13.06.2022 | 18 | 365 | 11 | 781 934,60 |

| | | | | |
|---|---|---|---|---|
| 14.06.2022 – 24.07.2022 | 41 | 365 | 9,5 | 1 538 199,63 |
| 25.07.2022 – 18.09.2022 | 56 | 365 | 8 | 1 769 225,77 |
| 19.09.2022 – 23.07.2023 | 308 | 365 | 7,5 | 9 122 570,36 |
| 24.07.2023 – 14.08.2023 | 22 | 365 | 8,5 | 738 493,79 |
| 15.08.2023 – 17.09.2023 | 34 | 365 | 12 | 1 611 259,18 |
| 18.09.2023 – 29.10.2023 | 42 | 365 | 13 | 2 156 243,90 |
| 30.10.2023 – 17.12.2023 | 49 | 365 | 15 | 2 902 636,02 |
| 18.12.2023 – 31.12.2023 | 14 | 365 | 16 | 884 612,88 |
| 01.01.2024 – 28.07.2024 | 210 | 366 | 16 | 13 232 938,62 |
| 29.07.2024 – 15.09.2024 | 49 | 366 | 18 | 3 473 646,39 |
| 16.09.2024 – 27.10.2024 | 42 | 366 | 19 | 3 142 822,92 |
| 28.10.2024 – 31.12.2024 | 65 | 366 | 21 | 5 375 881,32 |
| 01.01.2025 – 08.06.2025 | 159 | 365 | 21 | 13 186 260,79 |
| 09.06.2025 – 27.07.2025 | 49 | 365 | 20 | 3 870 181,36 |
| 28.07.2025 – 15.08.2025 | 19 | 365 | 18 | 1 350 614,31 |

Сумма процентов: 76 787 557,58 ₽

Порядок расчёта: сумма долга × ставка Банка России (действующая в период просрочки) / количество дней в году × количество дней просрочки

**Суд в ходе рассмотрения доказательств по данному делу установил следующее:**

20 мая 2023г. Истец направил Ответчику 1 и Ответчику 2 уведомление о правопреемстве на основании Договора уступки требования (цессии) от 15.05.2023 года, а также требования об оплате солидарной задолженности.

21 декабря 2024г. Истец направил Ответчику 1 и Ответчику 2 повторное требование об оплате задолженности.

До настоящего времени ни один из ответчиков не произвел погашение задолженности по существующим обязательствам.

Договор уступки требования (цессии) от 15.05.2023 года между Давилла Инвестинг Лимитед (Davilla Investing Limited) и Грантом А.А. о передаче прав Судом принимается в качестве надлежащего доказательства прав на предъявление иска в качестве правопреемника кредитора по основному обязательству.

**Изложенные выше обстоятельства подтверждаются следующими доказательствами:**

1. Договором уступки требования (цессии) от 15.05.2023 года между Давилла Инвестинг Лимитед (Davilla Investing Limited) и Грантом А.А. о передаче прав;

2. Решением от 30 августа 2021г. Арбитражного суда в рамках арбитражной процедуры AD HOC для разрешения конкретного спора, в лице единого арбитра Князева Д.В.

3. Требованиями об оплате задолженности от 20 мая 2023г., требованиями об оплате задолженности от 21 декабря 2024 г.

4. Расчетом процентов на сумму неисполненных обязательств, проверенных Судом.

В соответствии со ст.810 ГК РФ «... Заемщик обязан возвратить займодавцу полученную сумму займа в срок и в порядке, которые предусмотрены договором займа».

В соответствии со ст.809 ГК РФ «1. Если иное не предусмотрено законом или договором займа, займодавец имеет право на получение с заемщика процентов за пользование займом в размерах и в порядке, определенных договором. При отсутствии в договоре условия о размере процентов за пользование займом их размер определяется ключевой ставкой Банка России, действовавшей в соответствующие периоды.

2. Размер процентов за пользование займом может быть установлен в договоре с применением ставки в процентах годовых в виде фиксированной величины, с применением ставки в процентах годовых, величина которой может изменяться в зависимости от предусмотренных договором условий, в том числе в зависимости от изменения переменной величины, либо иным путем, позволяющим определить надлежащий размер процентов на момент их уплаты.

3. При отсутствии иного соглашения проценты за пользование займом выплачиваются ежемесячно до дня возврата займа включительно...».

В соответствии со ст.363 ГК РФ «1. При неисполнении или ненадлежащем исполнении должником обеспеченного поручительством обязательства поручитель и должник отвечают перед кредитором солидарно, если законом или договором поручительства не предусмотрена субсидиарная ответственность поручителя.

2. Поручитель отвечает перед кредитором в том же объеме, как и должник, включая уплату процентов, возмещение судебных издержек по взысканию долга и других убытков кредитора, вызванных неисполнением или ненадлежащим исполнением обязательства должником, если иное не предусмотрено договором поручительства.

3. Лица, совместно давшие поручительство (сопоручители), отвечают перед кредитором солидарно, если иное не предусмотрено договором поручительства. Если из соглашения между сопоручителями и кредитором не следует иное, сопоручители, ограничившие свою ответственность перед кредитором, считаются обеспечившими основное обязательство каждый в своей части. Сопоручитель, исполнивший обязательство, имеет право потребовать от других лиц, предоставивших обеспечение основного обязательства совместно с ним, возмещения уплаченного пропорционально их участию в обеспечении основного обязательства...».

В соответствии со ст. 384 ГК РФ «Если иное не предусмотрено законом или договором, право первоначального кредитора переходит к новому кредитору в том объеме и на тех условиях, которые существовали к моменту перехода права. В частности, к новому кредитору переходят права, обеспечивающие исполнение обязательства, а также другие связанные с требованием права, в том числе право на проценты...».

Таким образом, у Ответчиков есть солидарная задолженность на общую сумму 1807503 долларов США 80 центов, где сумма основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов, судебные расходы в размере 278000 (Двести семьдесят восемь тысяч) рублей.

В соответствии с Федеральным Законом Российской Федерации «О Третейских судах в Российской Федерации» ст.16.

В соответствии с Арбитражным регламентом ЮНСИТРАЛ (регламент, принятый Комиссией ООН по праву международной торговли в 1976 г. и рекомендованный к использованию Генеральной Ассамблеей ООН 15 декабря 1976 г. с изменениями).

15 августа 2025г. третейский суд, образованный сторонами для разрешения конкретного спора в составе единоличного третейского судьи, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича, рассмотрев исковое заявление гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) на основании Договора уступки требования (цессии) от 15.05.2023 года (далее также – истец) к ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 1), Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее также – Ответчик 2) о взыскании задолженности по обязательствам, предусмотренных Решением Суда от 30 августа 2021 года вытекающим из договора займа, соглашений об изменении и отсрочке долга, корпоративных гарантий.

### РЕШИЛ:

1. Удовлетворить исковые требования по иску гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) на основании Договора уступки требования (цессии) от 15.05.2023 года (далее также – истец) к ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (далее также – Ответчик 1), Голден Сфинкс Лимитед (Golden Sphinx Limited) (далее также – Ответчик 2) о взыскании задолженности по обязательствам, предусмотренных Решением Суда от 30 августа 2021 года, вытекающим из договора займа, соглашений об изменении и отсрочке долга, корпоративных гарантий.

2. Солидарно взыскать с компаний ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One. Inc.) и Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере на общую сумму 1 807 503 (Один миллион восемьсот семь тысяч пятьсот три) Доллара США 80 центов (эквивалент: 144 144 510,00 рублей), проценты за пользование денежными средствами в период с 30 августа 2021г. по 15 августа 2025г. в размере 962853 Долларов США (эквивалент: 76 787 557,58 рублей)

3. Солидарно взыскать с компаний Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу гражданина Гранта Александра Александровича, являющегося преемником Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы в размере 300000 (Триста тысяч) рублей.

4. В соответствии с арбитражным соглашением, решение третейского суда окончательно. Вступает в законную силу немедленно с даты принятия, подлежит немедленному исполнению. В соответствии с ч. 4 ст. 238 АПК РФ, обстоятельства, установлены третейским судом, не подлежат переоценке либо пересмотру, по существу.

Арбитражный суд

в рамках арбитражной процедуры AD HOC

для разрешения конкретного спора

единый арбитр (судья),

выбранный и согласованный сторонами

в Князев Дмитрий Валерьевич



Российская Федерация. Город Москва

Тридцатое апреля две тысячи двадцать шестого года

Я, Глухов Сергей Иванович, нотариус города Москвы, свидетельствую верность копии с представленного мне документа.

Зарегистрировано в реестре: N 77/749-к/77-2026- 1-1084

Уплачено за совершение нотариального действия: 1500 р

С.И. Глухов

Всего прошнуровано, пронумеровано и скреплено печатью _____3_____

_____ листов.

Нотариус

*Перевод с русского языка на английский*
*Russian to English Translation*

# COPY

## ARBITRATION COURT

under the AD HOC arbitration procedure for the resolution of a specific dispute
Sole Arbitrator (Judge), Knyazev Dmitry Valeryevich,

appointed and agreed upon by the parties,

4 Ilyinka Street, Office 102-103, Moscow, Russia, 109012

## COURT ORDER

On August 15, 2025, in Moscow, the Arbitration Court under the AD HOC arbitration procedure for the resolution of a specific dispute (hereinafter also referred to as the Court), presided over by the sole arbitrator (Judge) appointed and agreed upon by the parties — Knyazev Dmitry Valeryevich (hereinafter also referred to as the Judge or Arbitrator), reviewed the claim filed by Grant Aleksandr Aleksandrovich, the successor of Davilla Investing Limited pursuant to the Assignment Agreement dated May 15, 2023 (hereinafter also referred to as the Claimant), against AFB Trading One, Inc. (hereinafter also referred to as Respondent 1), and Golden Sphinx Limited (hereinafter also referred to as Respondent 2), seeking recovery of debt obligations under the Court's decision dated August 30, 2021, arising from the loan agreement, agreements on debt restructuring and deferral, and corporate guarantees in the amount of 1,807,503.80 USD (One million eight hundred seven thousand five hundred three US dollars and eighty cents) (equivalent: 144,144,510.00 rubles), and interest for the use of funds for the period from August 31, 2021, to August 15, 2025, in the amount of 76,787,557.58 rubles (equivalent: 962,853 USD).

The arbitration was conducted in accordance with the provisions of the Russian Federation Arbitration Law No. 382-FZ of December 29, 2015, (hereinafter — Arbitration Law, FZ-382), in the presence of the parties:

On behalf of the Claimant: Grant Aleksandr Aleksandrovich, as successor to Davilla Investing Limited, with a certified copy of the Assignment Agreement dated May 15, 2023, submitted into the casefile as proof of authority.

On behalf of Respondent 1: AFB Trading One, Inc. — no representative
On behalf of Respondent 2: Golden Sphinx Limited — no representative
In exercising the authority granted under Part 1 of Art. 16 of the Arbitration Law, the Arbitrator, in establishing jurisdiction, additionally reviewed the casefile for compliance with the provisions of Art. 239 of the Russian Federation Commercial Procedure Code in order to eliminate potential grounds for the competent court to deny the issuance of a writ of execution for enforcement of the arbitration award.

Jurisdiction of the Arbitrator:

Pursuant to Art. 2 of Federal Law No. 382-FZ of December 29, 2015, "On Arbitration (Arbitration Proceedings) in the Russian Federation" (hereinafter — Arbitration Law, FZ-382):

2) arbitration (arbitration proceedings) — the process of dispute resolution by an arbitration tribunal and the rendering of an arbitration award;

16) arbitration tribunal — a sole arbitrator or a panel of arbitrators;

1. arbitrator (arbitration judge) — an individual selected by the parties or appointed pursuant to a procedure agreed upon by the parties or established by federal law for the resolution of a dispute by an arbitration tribunal;

2. arbitration administration — the performance of organizational functions for supporting the arbitration, including facilitating the procedures for selecting, appointing, or removing arbitrators, maintaining case management, organizing the collection and distribution of arbitration fees, excluding the actual functions of the arbitration tribunal in resolving the dispute.

An arbitration clause that forms part of a contract is recognized as an agreement independent of the other terms of the contract. A ruling by the arbitration tribunal that the contract is invalid does not automatically invalidate the arbitration agreement.

A statement challenging the jurisdiction of the arbitration tribunal may be submitted by the respective party to the arbitration no later than the submission of its first statement on the merits of the dispute.

**Prior to the commencement of arbitration proceedings on the merits of this dispute, no statements were received challenging the jurisdiction of the Arbitrator to hear this case.**

Relying on Articles 7, 19, and 52 of the Arbitration Law, the Arbitrator ruled that he has jurisdiction to consider the dispute submitted to him.

In exercising the authority granted under Part 1 of Art. 16 of the Arbitration Law, the Arbitrator, in establishing jurisdiction, additionally reviewed the casefile for compliance with the provisions of Art. 239 of the Russian Federation Commercial Procedure Code in order to eliminate potential grounds for the competent court to deny the issuance of a writ of execution for enforcement of the arbitration award.

I. Pursuant to Part 3 of Art. 239 of the Russian Federation Commercial Procedure Code:

P. 1: "The competent court may deny the issuance of a writ of execution only if the party to the arbitration proceedings provides evidence that one of the parties to the arbitration agreement under which the dispute was resolved lacked full legal capacity."

No submissions have been received from the parties under this paragraph.

P. 2: "The competent court may deny the issuance of a writ of execution only if the party to the arbitration proceedings provides evidence that the arbitration agreement under which the dispute was resolved is invalid under the law to which the parties subjected it, or, in the absence of such indication, under the law of the Russian Federation."

Pursuant to Art. 7 of the FZ-382 Law, "an arbitration agreement is an agreement between the parties to submit to arbitration all or certain disputes which have arisen or may arise between them in connection with a specific legal relationship, whether contractual or not.

An arbitration agreement may be made in the form of an arbitration clause in a contract or as a separate agreement.

Any doubt in the interpretation of an arbitration agreement shall be interpreted in favor of its validity and enforceability."

**The parties were duly notified of the composition of the tribunal, as well as the date, place, and time of the arbitration proceedings.**

Pursuant to Art. 3 of the Arbitration Law, the parties are considered duly notified by analogy with Art. 123 of the Russian Federation Commercial Procedure Code.

This conclusion is supported by the position of the Judicial Chamber of the Russian Federation Supreme Court dated December 30, 2015, No. 302-ES15-11092:

P. 5: "The competent court may deny the issuance of a writ of execution only if the party to the arbitration proceedings provides evidence that the composition of the arbitration tribunal or the arbitration procedure did not comply with the parties' agreement or federal law."

A) Composition of the arbitration tribunal: Pursuant to Part 2 of Art. 11 of Law FZ-382, the parties to the arbitration may, at their discretion, agree on the procedure for selecting (appointing) the arbitrator or arbitrators, provided that the provisions of Parts 4 through 11 of this article are observed.

Based on the Assignment Agreement under the Loan Agreement dated September 7, 2020, entered into between the Claimant and a third party; and based on the Agreement on the Selection (Identity) of the Arbitrator and Applicable Rules dated August 23, 2012, executed between the Third Party, Respondent 1, Respondent 2, and Respondent 3, and approved by the parties under the currently applicable UNCITRAL Arbitration Rules, the parties agreed that any disputes, controversies, disagreements, or claims arising out of or in connection with the aforementioned agreements and contracts, including, but not limited to, those concerning their entry into force, performance, amendment, breach, termination, or validity, shall be resolved and finally settled through AD HOC arbitration. Any such dispute shall be heard by a sole arbitrator agreed upon by the parties.

Accordingly, the present specific dispute is submitted to the duly constituted tribunal, and the sole arbitrator appointed is Master of Laws Knyazev, Dmitry Valeryevich , a citizen of the Russian Federation.

The identity of the Arbitrator was verified based on the Passport of the Russian Federation issued in the name of Knyazev, Dmitry Valeryevich , as confirmed by a copy included in the arbitration casefile.

The possession of a higher legal education by the appointed Arbitrator, Knyazev, Dmitry Valeryevich , is confirmed by Diploma No. ABC 0715029 issued in Moscow by the Specialized Institute of Jurisprudence of the Russian Federation, a copy of which is available in the arbitration casefile.

The absence of a criminal record is confirmed by Certificate No. 13/5-099/264646-E issued by the Main Directorate of the Ministry of Internal Affairs of Russia for the city

of Moscow, dated July 11, 2021, and included in the arbitration casefile.

According to clarifications from the Russian Ministry of Justice dated September 2, 2021, No. 12-103924/2021, the provisions of Federal Law No. 382-FZ do not provide for the possibility of an arbitration tribunal, formed by the parties for the resolution of a specific dispute, to perform the functions of a permanent arbitration institution or to administer arbitration                                                                                                  proceedings.

Accordingly, the current legislation does not require any additional licenses or permits for the arbitrator.

Thus, the composition of the Arbitration Tribunal was formed in compliance with the provisions of the Arbitration Law.

B) Arbitration procedure: Pursuant to subparagraphs 1 and 2 of Art. 19 of the Arbitration Law:

"Subject to the provisions of this Federal Law, the parties may agree on the arbitration procedure at their discretion. In the absence of such agreement, the arbitration tribunal may, subject to the provisions of this Federal Law, conduct the arbitration in the manner it deems appropriate, including with respect to the admissibility, relevance, and weight of any evidence."

In accordance with Art. 2.2 of the Arbitration Law:

"Arbitration administration means the performance of organizational functions to support arbitration, including the procedures for selecting, appointing, or removing arbitrators, maintaining records, organizing the collection and distribution of arbitration fees, excluding the direct functions of the arbitration tribunal in resolving the dispute."

In accordance with this provision, the Sole Arbitrator personally reviewed the dispute, as confirmed by the arbitration casefile:
- was personally appointed by the parties in the arbitration agreement,
- personally received the statement of claim and accepted it for proceedings,
- personally selected and obtained the premises for the hearing,
- arbitration fees were received into his personal bank account,
- personally covered all expenses related to the dispute resolution (postal expenses, stationery, office equipment, venue, etc.),
- personally sent court notices and other documents to the parties by mail,
- personally scheduled and conducted the hearing,
- personally issued procedural rulings and the arbitration award,
- no objections were received from the parties regarding procedural violations in the arbitration,
- no motions for recusal or self-recusal were submitted.

Pursuant to Part 1 of Art. 11 of the Russian Federation Civil Code, the protection of violated or contested civil rights is carried out by a court, arbitration court, or arbitration tribunal, within the jurisdiction established by procedural law.

According to Part 1 of Art. 33 of the Russian Federation Commercial Procedure Code, disputes arising from civil-law relationships, as well as individual labor disputes involving professional athletes and coaches in professional and elite sports, may be submitted by the

parties to an arbitration tribunal for consideration, provided there is a valid arbitration agreement between the parties, unless otherwise provided by federal law.

Pursuant to Part 3 of Art. 1 of the Arbitration Law, disputes between parties to civil-law relationships may be submitted to arbitration (arbitration proceedings) by agreement of the parties, unless otherwise provided by federal law.

Current legislation does not prohibit the submission of disputes under loan and assignment agreements concluded between legal entities to arbitration.

The loan and assignment agreements in question are not contracts entered into within the framework of public procurement for state or municipal needs, nor are they contracts concluded under the procedure established by Federal Law No. 223-FZ.

**No statements were received from the parties asserting that the dispute under consideration is not subject to arbitration or that it contradicts the public policy of the Russian Federation, nor were any such grounds identified by the Arbitrator.**

The Sole Arbitrator (arbitration judge), maintaining the minutes of the hearing, reviewed the statement of claim and the evidence submitted by the parties, has made the following

## FINDINGS

The Claimant filed a claim against Respondent 1 and Respondent 2, sending each party in the case a notice of arbitration with the statement of claim and supporting documents by registered mail, stating:

that the Claimant informs the parties of the referral of the claim for recovery of debt obligations established by the Court's decision dated August 30, 2021, to arbitration, by which the Court ruled as follows:

To grant the claim filed by Davilla Investing Limited against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited for recovery of debt under a loan agreement, debt restructuring and deferral agreement, and corporate guarantees.

To hold Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited jointly liable to pay Davilla Investing Limited the principal debt amounting to 1,022,000 (One million twenty-two thousand) US dollars, and interest for the use of funds in the amount of 782,017 (Seven hundred eighty-two thousand seventeen) US dollars and eighty cents.

To hold Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited jointly liable to pay Davilla Investing Limited legal costs in the amount of 278,000 (Two hundred seventy-eight thousand) rubles.

Pursuant to the arbitration agreement, the arbitration tribunal's decision is final. It takes legal effect immediately upon issuance and is subject to immediate enforcement. Under Part 4 of Art. 238 of the Russian Federation Commercial Procedure Code, the findings established by the arbitration tribunal are not subject to re-evaluation or reconsideration on the merits.

The Court's decision of August 30, 2021, has not been enforced by the Respondents to

date. As of the time of review of the present dispute, the total amount of joint debt owed by the Respondents, including VAT, is 144,144,510.00 rubles.

**Interest accrual period: from August 31, 2021, to August 15, 2025 (1,446 days)**

| Period | Days | Days in a year | Rate, % | %, ₽ |
|---|---|---|---|---|
| 08/31/2021 – 09/12/2021 | 13 | 365 | 6,5 | 333 704,41 |
| 09/13/2021 – 10/24/2021 | 42 | 365 | 6,75 | 1 119 588,18 |
| 10/25/2021 – 12/19/2021 | 56 | 365 | 7,5 | 1 658 649,16 |
| 12/20/2021 – 02/13/2022 | 56 | 365 | 8,5 | 1 879 802,38 |
| 02/14/2022 – 02/27/2022 | 14 | 365 | 9,5 | 525 238,90 |
| 02/28/2022 – 04/10/2022 | 42 | 365 | 20 | 3 317 298,31 |
| 04/11/2022 – 05/03/2022 | 23 | 365 | 17 | 1 544 123,38 |
| 05/04/2022 – 05/26/2022 | 23 | 365 | 14 | 1 271 631,02 |
| 05/27/2022 – 06/13/2022 | 18 | 365 | 11 | 781 934,60 |
| 06/14/2022 – 07/24/2022 | 41 | 365 | 9,5 | 1 538 199,63 |
| 07/25/2022 – 09/18/2022 | 56 | 365 | 8 | 1 769 225,77 |
| 09/19/2022 – 07/23/2023 | 308 | 365 | 7,5 | 9 122 570,36 |
| 07/24/2023 – 08/14/2023 | 22 | 365 | 8,5 | 738 493,79 |
| 08/15/2023 – 09/17/2023 | 34 | 365 | 12 | 1 611 259,18 |
| 09/18/2023 – 10/29/2023 | 42 | 365 | 13 | 2 156 243,90 |
| 10/30/2023 – 12/17/2023 | 49 | 365 | 15 | 2 902 636,02 |
| 12/18/2023 – 12/31/2023 | 14 | 365 | 16 | 884 612,88 |
| 01/01/2024 – 07/28/2024 | 210 | 366 | 16 | 13 232 938,62 |
| 07/29/2024 – 09/15/2024 | 49 | 366 | 18 | 3 473 646,39 |
| 09/16/2024 – 10/27/2024 | 42 | 366 | 19 | 3 142 822,92 |
| 10/28/2024 – 12/31/2024 | 65 | 366 | 21 | 5 375 881,32 |
| 01/01/2025 – 06/08/2025 | 159 | 365 | 21 | 13 186 260,79 |
| 06/09/2025 – 07/27/2025 | 49 | 365 | 20 | 3 870 181,36 |
| 07/28/2025 – 08/15/2025 | 19 | 365 | 18 | 1 350 614,31 |

Interest amount: ₽76,787,557.58

Calculation method: principal debt × Bank of Russia key rate (applicable during the delay period) ÷ number of days in the year × number of days of delay

**During the examination of the evidence in this case, the Court has made the following findings:**

On May 20, 2023, the Claimant sent Respondent 1 and Respondent 2 a notice of succession based on the Assignment Agreement dated May 15, 2023, along with a demand for payment of the joint debt.

On December 21, 2024, the Claimant sent a repeated demand for payment of the debt to Respondent 1 and Respondent 2.

To date, neither of the Respondents has repaid the debt under the existing obligations.

The Assignment Agreement dated May 15, 2023, between Davilla Investing Limited and Grant A.A. for the transfer of rights is accepted by the Court as proper evidence of the Claimant's right to file the claim as the legal successor of the creditor under the primary obligation.

The above circumstances are supported by the following evidence:

1. The Assignment Agreement dated May 15, 2023, between Davilla Investing Limited and Grant A.A. concerning the transfer of rights;
2. The decision of August 30, 2021, by the Arbitration Court under the AD HOC arbitration procedure for the resolution of a specific dispute, presided over by the Sole Arbitrator Knyazev D.V.;
3. The demands for payment of the debt dated May 20, 2023, and December 21, 2024;
4. The interest calculation on the unpaid obligations, verified by the Court.

Pursuant to Art. 810 of the Russian Federation Civil Code: "… The borrower shall return to the lender the loan amount received within the period and in the manner stipulated by the loan agreement."

According to Art. 809 of the Russian Federation Civil Code:

1. Unless otherwise provided by law or the loan agreement, the lender has the right to receive interest from the borrower for the use of the loan at the rate and under the procedure defined in the agreement. In the absence of such provision, the interest rate shall be determined by the Bank of Russia's key rate in effect during the relevant periods.
2. The interest rate may be established in the contract as a fixed annual percentage or may vary depending on the terms provided in the agreement, including fluctuations in a variable index, or otherwise, provided the rate can be properly determined at the time of payment.
3. Unless otherwise agreed, interest shall be paid monthly up to and including the date of repayment.

Under Art. 363 of the Russian Federation Civil Code:

1. In case of non-performance or improper performance by the debtor of an obligation secured by a guarantee, the guarantor and the debtor shall be jointly liable to the

creditor, unless the law or the guarantee agreement provides for the guarantor's subsidiary liability.

2. The guarantor shall be liable to the creditor to the same extent as the debtor, including interest, reimbursement of legal costs for debt collection, and any other losses suffered by the creditor due to the debtor's non-performance or improper performance, unless otherwise specified in the guarantee agreement.

3. Persons who have jointly provided a guarantee (co-guarantors) shall be jointly liable to the creditor unless otherwise provided by the guarantee agreement. If not otherwise agreed between the co-guarantors and the creditor, co-guarantors who have limited their liability to the creditor shall be deemed to have secured the principal obligation in part, each for their respective share. A co-guarantor who has fulfilled the obligation has the right to claim reimbursement from the other parties who jointly provided the security, in proportion to their participation in securing the principal obligation.

Pursuant to Art. 384 of the Russian Federation Civil Code: Unless otherwise provided by law or contract, the rights of the original creditor transfer to the new creditor to the same extent and under the same conditions as existed at the time of the transfer. In particular, the new creditor acquires rights securing the performance of the obligation and other rights associated with the claim, including the right to interest.

Thus, the Respondents jointly owe a total of 1,807,503.80 USD, comprising the principal debt of 1,022,000 (One million twenty-two thousand) US dollars, interest for the use of funds in the amount of 782,017 (Seven hundred eighty-two thousand seventeen) US dollars and eighty cents, and legal expenses of 278,000 (Two hundred seventy-eight thousand) rubles.

Pursuant to Federal Law of the Russian Federation "On Arbitration Tribunals in the Russian Federation," Art. 16.

In accordance with the UNCITRAL Arbitration Rules (as adopted by the United Nations Commission on International Trade Law in 1976 and recommended for use by the UN General Assembly on December 15, 1976, with amendments).

On August 15, 2025, the arbitration tribunal, formed by the parties for the resolution of a specific dispute and composed of a sole arbitrator, represented by the sole arbitrator (judge) appointed and agreed upon by the parties — Knyazev, Dmitry Valeryevich — reviewed the statement of claim filed by Aleksandr Aleksandrovich Grant, the successor of Davilla Investing Limited under the Assignment Agreement dated May 15, 2023 (hereinafter also referred to as the Claimant), against AFB Trading One, Inc. (hereinafter also referred to as Respondent 1) and Golden Sphinx Limited (hereinafter also referred to as Respondent 2), seeking recovery of debt obligations provided for in the Court's Decision of August 30, 2021, arising from the loan agreement, debt modification and deferral agreements, and corporate guarantees.

### IT IS HEREBY ORDERED

1. To grant the claims filed by Aleksandr Aleksandrovich Grant, the successor of Davilla Investing Limited under the Assignment Agreement dated May 15, 2023 (hereinafter also referred to as the Claimant), against AFB Trading One, Inc. (hereinafter also referred to as Respondent 1) and Golden Sphinx Limited (hereinafter also referred to as Respondent 2), for recovery of debt obligations arising from the

Court's Decision of August 30, 2021, stemming from a loan agreement, debt modification and deferral agreements, and corporate guarantees.

2. To hold AFB Trading One, Inc. and Golden Sphinx Limited jointly liable to pay Aleksandr Aleksandrovich Grant, the successor of Davilla Investing Limited, the principal debt in the total amount of 1,807,503.80 USD (One million eight hundred seven thousand five hundred three US dollars and eighty cents) (equivalent: ₽144,144,510.00), and interest for the use of funds for the period from August 30, 2021, to August 15, 2025, in the amount of 962,853 USD (equivalent: ₽76,787,557.58).

3. To hold Golden Sphinx Limited jointly liable to reimburse Aleksandr Aleksandrovich Grant, the successor of Davilla Investing Limited, legal expenses in the amount of ₽300,000 (Three hundred thousand rubles).

4. Pursuant to the arbitration agreement, the decision of the arbitration tribunal is final. It takes legal effect immediately upon issuance and is subject to immediate enforcement. Under Part 4 of Art. 238 of the Russian Federation Commercial Procedure Code, the facts established by the arbitration tribunal are not subject to re-evaluation or reconsideration on the merits.

Sole arbitrator (judge), Knyazev Dmitry Valeryevich Arbitration Court, AD HOC arbitration procedure for the resolution of a specific dispute appointed and agreed upon by the parties

Stamp:
Arbitration Court, AD HOC arbitration procedure
Sole arbitrator (judge)
Knyazev Dmitry Valeryevich

Stamp:
Arbitration Court, AD HOC arbitration procedure
Sole arbitrator (judge)
Knyazev Dmitry Valeryevich

*Seal:*
*Russian Federation Ministry of Justice*
*Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator*
*City of Moscow*

*-signature-*

*Seal:*
*Russian Federation Ministry of Justice Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator,  city of Moscow*

*Seal: Notary Public S. I. Glukhov, Notarial District: the city of Moscow*

*Russian Federation Ministry of Justice Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator, ciy of Moscow*

**The Russian Federation**
**City of Moscow**
**April thirty in the year two thousand and twenty-six**

I, Glukhov Sergei Ivanovich, a Notary Public for the city of Moscow, certify that this is a true and correct copy of the original document.
Recorded in the Register: No 77/749-n/77-2026-1-1084
Paid for notarial services: 1500 Roubles 00 kopecks.

*- signature-* S. I. Glukhov

*Seal: Notary Public S. I. Glukhov, Notarial District: city of Moscow*


*Stamp:*
*The document contains 5 pages,*
*bound, numbered and sealed.*
*Notary Public - signature-*

*Перевод данного текста с русского языка на английский язык сделан мной, переводчиком Сулейман⟨⟩ Элиной Вахидовной.*

_____

*The translation of this text was performed by me, the translator Suleymanova Elina Vakhidovna.*
___ /signature/_____

*Российская Федерация*

*Город Москва*

*Второго мая две тысячи двадцать шестого года*

Я, Бурейникова Леонора Леонидовна, нотариус города Москвы, свидетельствую подлинность подписи переводчика Сулеймановой Элины Вахидовны.

Подпись сделана в моем присутствии.

Личность подписавшего документ установлена.

Зарегистрировано в реестре: № 40/87-н/77-2026-*12-2840*

Уплачено за совершение нотариального действия: 400 руб. 00 коп

_____ *Л.Л. Бурейникова*

Всего прошнуровано, пронумеровано и скреплено печатью( ) лист(ов)

*Нотариус*

*The Russian ⟨Fed⟩ration*

*The city of Moscow*

*02.05.2026*

*I, Bureynikova Leonora Leonidovna, Notary of the city of Moscow, certify the authenticity of signature, made by the translator Suleymanova Elina Vakhidovna.*

*The signature was made in my presence.*

*Her identity is established.*

*It is registered in the register under № 40/87-н/77-2026-*

*Paid for the performance of a notarial act. 400 rubles 00 kop.*

_____/signature_____   L.L. Bureynikova

| Seal: Notary  Bureynikova L.L. |
| Notarial  district of c. Moscow |

*Stitched up, numbered and sealed (   ) pages*
*Notary  /signature/*

| Seal: Notary  Bureynikova L.L. |
| Notarial  district of c. Moscow |

# APOSTILLE
(Convention de La Haye du 5 octobre 1961)

| | | |
|---|---|---|
| 1. **Страна:**<br>Country / Pays: | Российская Федерация | |
| **Настоящий официальный документ**<br>This public document / Le présent acte public | | |
| 2. **был подписан**<br>has been signed by<br>a été signé par | Глухов С.И., Бурейникова Л.Л. | |
| 3. **выступающим в качестве**<br>acting in the capacity of<br>agissant en qualité de | нотариус, нотариус | |
| 4. **скреплен печатью / штампом**<br>bears the seal / stamp of<br>est revêtu du sceau / timbre de | нотариус г. Москвы Глухов Сергей Иванович, нотариус г. Москвы Бурейникова Леонора Леонидовна | |

**Удостоверено**
Certified / Attesté

| | | | | |
|---|---|---|---|---|
| 5. **В**<br>at / à | г. Москва | 6. **Дата**<br>the / le | 07.05.2026 | |
| 7. **учреждение**<br>by / par | Крымшокалова А.З.<br>Заместитель начальника отдела международной правовой помощи и проставления апостиля Главного управления Министерства юстиции Российской Федерации по Москве | | | |
| 8. **№**<br>N° / sous n° | 77/17835-26 | | | |
| 9. **Печать /**<br>**штамп:**<br>Seal / stamp:<br>Sceau / timbre: | | 10. **Подпись**<br>Signature:<br>Signature: | | |

Данный апостиль удостоверяет лишь подлинность подписи и должность лица, подписавшего официальный документ, и при необходимости подлинность печати или штампа, которым скреплен этот документ.

Апостиль не заверяет достоверность самого документа, для которого он был оформлен.

Информацию по проверке апостиля можно найти, отсканировав QR-код, либо перейдя по ссылке: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=2ffa33e7-df0b-4c4a-99ad-99de23aab0b7**



This apostille certifies only the authenticity of the signature and the position of the official who signed the official document, and, if necessary, the authenticity of the seal or stamp affixed to the said document.

The apostille does not certify the authenticity of the document for which it was issued.

Information on apostille verification can be found by scanning a QR code or by referring to the following link: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=2ffa33e7-df0b-4c4a-99ad-99de23aab0b7**

Cette apostille ne certifie que l'authenticité de la signature et le poste du fonctionnaire qui a signé le document officiel et, le cas échéant, l'authenticité du sceau ou du cachet apposé sur ledit document.

L'apostille n'assure pas la véracité du document lui-même pour lequel il a été délivré.

Les informations de vérification de l'apostille peuvent être trouvées en scannant le code QR ou en consultant le lien suivant: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=2ffa33e7-df0b-4c4a-99ad-99de23aab0b7**



Прошито, пронумеровано и скреплено печатью

16 ( *шестнадцать* ) лист *ов*

Заместитель начальника отдела
Главного управления Министерства юстиции
Российской Федерации по Москве

_____ А.З. Крымшокалова

# EXHIBIT 3

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

# MIKHAIL BOGOMOLNY
## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E.  MICHAEL@TRANSLATORPRO.ORG
P.  1.818.284.1884

*CERTIFIED COURT INTERPRETER*

From: "Michael Zorkin" mz@thezorkinfirm.com
To: "ag99@list.ru" ag99@list.ru
CC: "LV" lv2020@hotmail.com
Date: Wednesday, August 25, 2021, 3:50 AM +03:00
Subject: AFB Trading One, Inc. and Golden Sphinx Limited

Dear Mr. Knyazev,

Attached is the Response to the Complaint filed by Larisa Sabadash on behalf of AFB Trading One, Inc. and Golden Sphinx Limited.

Michael Zorkin
Managing Attorney
Phone: (323) 493-8075
Email: mz@thezorkinfirm.com
Web: www.thezorkinfirm.com
Address: 6320 Canoga Ave., 15th Floor, Woodland Hills, CA 91367

This e-mail transmission, and any documents, files, or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient of this message, or a person responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is strictly prohibited. If you have received this transmission in error, please immediately notify the sender by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

---

## Attachments Table:

| File Name | Size |
| --- | --- |
| Dismiss GS liquidate.pdf | 471 KB |
| 2016-10-03 Certificate of Action of sole shareholder of AFB.pdf | 26.9 KB |
| 2019-10-25 Minutes of Meeting of Board of Directors of Golden Sphinx.pdf | 17.2 KB |
| Excerpt - JFSC Companies Register.pdf | 89.6 KB |
| 2013.06.30_Registrar - Dissolution summon.pdf | 24.4 KB |
| 2016-10-03 Certificate Action of Board of Directors of AFB.pdf | 27.8 KB |
| 2019-09-17 US consent to act as Director of Golden Sphinx.pdf | 51.1 KB |
| AFB Trading One, Inc..pdf | 112 KB |
| 2013.10.31_Dissolution notice - page 8 RC65289.pdf | 579 KB |

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# MIKHAIL BOGOMOLNY
## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E.  MICHAEL@TRANSLATORPRO.ORG
P.  1.818.284.1884

*CERTIFIED COURT INTERPRETER*

# CERTIFICATE OF TRANSLATION

*Translation from Russian into English*

**I, MIKHAIL BOGOMOLNY, A <u>CERTIFIED COURT INTERPRETER (ID: 313218)</u>, DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; THE TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.**

**DOCUMENT DESCRIPTION**

*Email message from "Michael Zorkin" mz@thezorkinfirm.com*

*To: "ag99@list.ru" ag99@list.ru*





X _____

Mikhail Bogomolny

Translator

Member ID: 3826

**Interpreter information:**
**Address: 16001 Ventura Blvd., Ste. 120,**
**Encino, CA 91436**
**Ph. 818-284-1884**
**Email: michael@translatorpro.org**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

От кого: "Michael Zorkin" <mz@thezorkinfirm.com>
Кому: "ag99@list.ru" <ag99@list.ru>
Копия: "L V" <l2020@hotmail.com>
Дата: Среда, 25 августа 2021, 3:50 +03:00
Тема: AFB Trading One, Inc. и Golden Sphinx Limited

Господин Князев,

Прилагаю Отзыв На Исковое Заявление Ларисы Сабадаш от имени AFB Trading One, Inc. и Golden Sphinx Limited.

**Michael Zorkin**

**Managing Attorney**

(323) 493-8075

mz@thezorkinfirm.com

www.thezorkinfirm.com

6320 Canoga Ave., 15th Floor, Woodland Hills, CA
91367

This e-mail transmission, and any documents, files, or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are
not the intended recipient of this message, or a person responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure,
copying, distribution or use of any of the information contained in or attached to this message is strictly prohibited. If you have received this transmission in error,
please immediately notify the sender by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

⌄ 📎 9 attachments  1.4 MB                                                                                                ⭳ Save All ⌄

| | | | |
|---|---|---|---|
| 📄 Dismiss GS liquidate.pdf | 471 KB | 📄 2016-10-03 Certificate Action of Board of Directors of AFB.pdf | 27.8 KB |
| 📄 2016-10-03 Certificate of Action of sole shareholder of AFB.pdf | 26.9 KB | 📄 2019-09-17 LS consent to act as Director of Golden Sphinx.pdf | 51.1 KB |
| 📄 2019-10-25 Minutes of Meeting of Board of Directors of Golden Sphinx.pdf | 17.2 KB | 📄 AFB Trading One, Inc..pdf | 112 KB |
| 📄 Excerpt - JFSC Companies Register.pdf | 89.6 KB | 📄 2013.10.31_Dissolution notice - page 8 RC65269.pdf | 579 KB |
| 📄 2013.06.30_Registrar - Dissolution summon.pdf | 24.4 KB | | |

# EXHIBIT 4

14

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

# MIKHAIL BOGOMOLNY
## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

Joseph Kar <jkar@civillegal.com>

**Fwd[2]: Re: Re[2]: Arbitration ad hoc**

4 messages

Dmitry Knyazev <ag99@list.ru> Fri, Mar 6, 2026 at 9:47 AM
Reply-To: Dmitry Knyazev <ag99@list.ru>
To: jkar@civillegal.com

From: Tatyana Padalko arbitrpadalko@gmail.com
To: Dmitry Knyazev ag99@list.ru
Date: Tuesday, August 24, 2021, 18:48 +03:00
Subject: Re: Re[2]: Ad Hoc Arbitration Procedure

Also attaching certified translations.

Tue, Aug. 24, 2021 at 14:03, Tatyana Padalko arbitrpadalko@gmail.com wrote:
Good afternoon, Dmitry,
Please find attached the response for the upcoming court hearing.

Mon, Aug. 9, 2021 at 14:38, Dmitry Knyazev ag99@list.ru wrote:
Good afternoon!

I have reviewed your request and am forwarding the Order setting the matter for hearing (dated August 2, 2021), as well as the Court Request (dated August 5, 2021).

Respectfully,
Sole Arbitrator (Judge), selected and agreed upon by the Parties,
Knyazev D.V.

Monday, July 19, 2021, 12:09 +03:00 from Tatyana Padalko arbitrpadalko@gmail.com:
Please contact me promptly using the following contact information: tel. +79219150765, email: tpadalko@mail.ru.

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**MIKHAIL BOGOMOLNY**

**TRANSLATION, NOTARY AND APOSTILLE SERVICES**

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

---

Mon, Jul. 19, 2021 at 10:48, Tatyana Padalko arbitrpadalko@gmail.com wrote:

Good afternoon, I am the financial administrator for Sabadash A.V. The respondent companies belong to Sabadash A.V., and the documents related to this dispute were falsified. Please provide your contact information for further communication.

Dmitry Knyazev
Sent from Mail service

[Attached 3 pdf files]
1.pdf
2.pdf
3.pdf

---

Dmitry Knyazev <ag99@list.ru> Fri, Mar 6, 2026 at 9:48 AM
Reply-To: Dmitry Knyazev <ag99@list.ru>
To: jkar@civillegal.com

-------- Forwarded message --------
From: Tatyana Padalko arbitrpadalko@gmail.com
To: Dmitry Knyazev ag99@list.ru
Date: Tuesday, August 24, 2021, 14:03 +03:00
Subject: Re: Re[2]: Ad Hoc Arbitration Procedure

Good afternoon, Dmitry,
Please find attached the response for the upcoming court hearing.

> Mon, Aug. 9, 2021 at 14:38, Dmitry Knyazev ag99@list.ru wrote:
> Good afternoon!
>
> I have reviewed your request and am forwarding the Order setting the matter for hearing (dated August 2, 2021), as well as the Court Request (dated August 5, 2021).
>
> Respectfully,
> Sole Arbitrator (Judge), selected and agreed upon by the Parties,
> Knyazev D.V.

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**M I K H A I L   B O G O M O L N Y**
**TRANSLATION, NOTARY AND APOSTILLE SERVICES**

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

Monday, July 19, 2021, 12:09 +03:00 from Tatyana Padalko arbitrpadalko@gmail.com:

Please contact me promptly using the following contact information: tel. +79219150765, email: tpadalko@mail.ru.

Mon, Jul. 19, 2021 at 10:48, Tatyana Padalko arbitrpadalko@gmail.com wrote:

Good afternoon, I am the financial administrator for Sabadash A.V. The respondent companies belong to Sabadash A.V., and the documents related to this dispute were falsified. Please provide your contact information for further communication.

Dmitry Knyazev

Sent from Mail service

[Attached 8 pdf files]

2003-05-31_AFB-COA_appointing_Itkin_officer.pdf

2016-10-03_appoint_LS+Reynolds+PS_director.pdf

2015-01-23_AFB_Itkin+Szymanski_Director.pdf

Registrar's Response.pdf

Extract Regarding Golden Spirits.pdf

Response.pdf.sgn

Response.pdf

Certificate Regarding Dissolved Companies.pdf

Dmitry Knyazev ag99@list.ru Fri, Mar. 6, 2026 at 9:49 AM
Reply-To: Dmitry Knyazev ag99@list.ru
To: jkar@civillegal.com
-------- Forwarded message --------

From: Tatyana Padalko arbitrpadalko@gmail.com
To: Dmitry Knyazev ag99@list.ru
Date: Friday, August 20, 2021, 15:36 +03:00
Subject: Re: Re[2]: Ad Hoc Arbitration Procedure

Also attaching written explanations.

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**M I K H A I L   B O G O M O L N Y**

**TRANSLATION, NOTARY AND APOSTILLE SERVICES**

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

Fri, Aug. 20, 2021 at 15:03, Tatyana Padalko arbitrpadalko@gmail.com wrote:

Good afternoon!

Forwarding documents related to the present proceeding.

Mon, Aug. 9, 2021 at 14:38, Dmitry Knyazev ag99@list.ru wrote:

Good afternoon!

I have reviewed your request and am forwarding the Order setting the matter for hearing (dated August 2, 2021), as well as the Court Request (dated August 5, 2021).

Respectfully,

Sole Arbitrator (Judge), selected and agreed upon by the Parties,

Knyazev D.V.

Monday, July 19, 2021, 12:09 +03:00 from Tatyana Padalko arbitrpadalko@gmail.com:

Please contact me promptly using the following contact information: tel. +79219150765, email: tpadalko@mail.ru.

Mon, Jul. 19, 2021 at 10:48, Tatyana Padalko arbitrpadalko@gmail.com wrote:

Good afternoon, I am the financial administrator for Sabadash A.V. The respondent companies belong to Sabadash A.V., and the documents related to this dispute were falsified. Please provide your contact information for further communication.

--

Dmitry Knyazev

--

Dmitry Knyazev

Sent from Mail.ru Mail

[Quoted text hidden]

[Attached 2 pdf files]

Written Explanations.pdf

Written Explanations.pdf.sgn

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**M I K H A I L   B O G O M O L N Y**

**TRANSLATION, NOTARY AND APOSTILLE SERVICES**

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

Dmitry Knyazev ag99@list.ru Fri, Mar. 6, 2026 at 9:49 AM
Reply-To: Dmitry Knyazev ag99@list.ru
To: jkar@civillegal.com

-------- Forwarded message --------

From: Tatyana Padalko arbitrpadalko@gmail.com
To: Dmitry Knyazev ag99@list.ru
Date: Friday, August 20, 2021, 15:04 +03:00
Subject: Re: Re[2]: Ad Hoc Arbitration Procedure

Good afternoon!

Forwarding documents related to the present proceeding.

Mon, Aug. 9, 2021 at 14:38, Dmitry Knyazev ag99@list.ru wrote:

Good afternoon!

I have reviewed your request and am forwarding the Order setting the matter for hearing (dated August 2, 2021), as well as the Court Request (dated August 5, 2021).

Respectfully,

Sole Arbitrator (Judge), selected and agreed upon by the Parties,

Knyazev D.V.

Monday, July 19, 2021, 12:09 +03:00 from Tatyana Padalko arbitrpadalko@gmail.com:

Please contact me promptly using the following contact information: tel. +79219150765, email: tpadalko@mail.ru

Mon, Jul. 19, 2021 at 10:48, Tatyana Padalko arbitrpadalko@gmail.com wrote:

Good afternoon, I am the financial administrator for Sabadash A.V. The respondent companies belong to Sabadash A.V., and the documents related to this dispute were falsified. Please provide your contact information for further communication.

--

Dmitry Knyazev

--

Dmitry Knyazev

Sent from Mail.ru Mail

[attached 15 files]

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# M I K H A I L   B O G O M O L N Y
## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

2003-05-31_AFB-COA_appointing_Itkin_officer.pdf

2016-10-03_appoint_LS+Reynolds+PS_director.pdf

2015-01-23_AFB_Itkin+Szymanski_Director.pdf

2016-10-03_appoint_LS_officer.pdf

2009.11.23_Minutes_Garry_sole_GSL_Director_091123.pdf

2000.08.11_Additonal_director_Garry.pdf

Statement Regarding Expiration of Statute of Limitations.pdf.sgn

Statement Regarding Falsification.pdf.sgn

Statement Regarding Expiration of Statute of Limitations.pdf

Statement Regarding Falsification.pdf

Response to Court Request.pdf

Response to Court Request.pdf.sgn

Repeated Request for Documents.pdf

KUSP Receipt.pdf

Repeated Request for Documents.pdf.sgn


**Source: https://mail.google.com/mail/u/0/?ik=58347b9d24&view=pt&search=all&permthid=thread-f:1858935740520554519&simpl=msg-f:18589357405205545%E2%80%A6**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**M I K H A I L   B O G O M O L N Y**

**TRANSLATION, NOTARY AND APOSTILLE SERVICES**

W. WWW.TRANSLATORPRO.ORG

E. MICHAEL@TRANSLATORPRO.ORG

P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

# CERTIFICATE OF TRANSLATION

*\*Translation from Russian into English\**

I, MIKHAIL BOGOMOLNY, A **CERTIFIED COURT INTERPRETER (ID: 313218)**, DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION, I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; THE TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**DOCUMENT DESCRIPTION**

> *EMAIL MESSAGE EXCHANGE BETWEEN*
>
> *TATYANA PADALKO ARBITRPADALKO@GMAIL.COM*
> *AND*
> *DMITRY KNYAZEV AG99@LIST.RU*





X _____

Mikhail Bogomolny

Translator

**Interpreter information:**

**Address: 16001 Ventura Blvd., Ste. 120,**

**Encino, CA 91436**

**Ph. 818-284-1884**

**Email: michael@translatorpro.org**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

 Gmail

**Joseph Kar <jkar@civillegal.com>**

## Fwd[2]: Re: Re[2]: Арбитражная процедура ad hoc
4 messages

**Дмитрий Князев** <ag99@list.ru>                                  Fri, Mar 6, 2026 at 9:47 AM
Reply-To: Дмитрий Князев <ag99@list.ru>
To: jkar@civillegal.com

-------- Пересылаемое сообщение --------
От кого: Татьяна Падалко <arbitrpadalko@gmail.com>
Кому: Дмитрий Князев <ag99@list.ru>
Дата: Вторник, 24 августа 2021, 18:48 +03:00
Тема: Re: Re[2]: Арбитражная процедура ad hoc

И прикладываю заверенные переводы.

вт, 24 авг. 2021 г. в 14:03, Татьяна Падалко <arbitrpadalko@gmail.com>:
> Добрый день, Дмитрий,
> направляю отзыв к предстоящему судебному заседанию.

> пн, 9 авг. 2021 г. в 14:38, Дмитрий Князев <ag99@list.ru>:
>> Добрый день!
>>
>> Рассмотрел Ваше обращение, направляю Вам Определение о назначении спора к рассмотрению (от 02.08.2021), а так же Судебный запрос (от 05.08.2021).
>>
>> С уважением,
>> Единый арбитр (Судья), выбранный и согласованный Сторонами,
>> Князев Д.В.
>>
>>> Понедельник, 19 июля 2021, 12:09 +03:00 от Татьяна Падалко <arbitrpadalko@gmail.com>:
>>>
>>> Прошу оперативно связаться со мной по следующим контактам: тел.: +79219150765, эл. почта tpadalko@mail.ru.
>>>
>>> пн, 19 июл. 2021 г. в 10:48, Татьяна Падалко <arbitrpadalko@gmail.com>:
>>>> Добрый день, я являюсь финансовым управляющим Сабадаша А.В. Организации - ответчики принадлежат Сабадашу А.В., документы по данному спору были сфальсифицированы. Прошу предоставить ваши контактные данные для связи.

>>
>> --
>> Дмитрий Князев

--
Дмитрий Князев
Отправлено из Почты Mail

--
Дмитрий Князев
Отправлено из Почты Mail

---

### 3 attachments

📄 **2.pdf**
797K

📄 **1.pdf**
1536K

📄 **3.pdf**
6861K

---

**Дмитрий Князев** <ag99@list.ru>                    Fri, Mar 6, 2026 at 9:48 AM
Reply-To: Дмитрий Князев <ag99@list.ru>
To: jkar@civillegal.com

-------- Пересылаемое сообщение --------
От кого: Татьяна Падалко <arbitrpadalko@gmail.com>
Кому: Дмитрий Князев <ag99@list.ru>
Дата: Вторник, 24 августа 2021, 14:03 +03:00
Тема: Re: Re[2]: Арбитражная процедура ad hoc

Добрый день, Дмитрий,
направляю отзыв к предстоящему судебному заседанию.

> пн, 9 авг. 2021 г. в 14:38, Дмитрий Князев <ag99@list.ru>:
>> Добрый день!
>>
>> Рассмотрел Ваше обращение, направляю Вам Определение о назначении спора к рассмотрению (от 02.08.2021), а так же Судебный запрос (от 05.08.2021).
>>
>> С уважением,
>> Единый арбитр (Судья), выбранный и согласованный Сторонами,
>> Князев Д.В.
>>
>>> Понедельник, 19 июля 2021, 12:09 +03:00 от Татьяна Падалко <arbitrpadalko@gmail.com>:
>>>
>>> Прошу оперативно связаться со мной по следующим контактам: тел.: +79219150765, эл. почта tpadalko@mail.ru.
>>>
>>> пн, 19 июл. 2021 г. в 10:48, Татьяна Падалко <arbitrpadalko@gmail.com>:
>>>> Добрый день, я являюсь финансовым управляющим Сабадаша А.В. Организации - ответчики принадлежат Сабадашу А.В., документы по данному спору были сфальсифицированы. Прошу предоставить ваши контактные данные для связи.

--
Дмитрий Князев

---

--
Дмитрий Князев
Отправлено из Почты Mail

[Quoted text hidden]

---

**8 attachments**

2003-05-31_AFB-COA_appointing_Itkin_officer.pdf
38K

2016-10-03_apoint_LS+Reynolds+PS_director.pdf
27K

2015-01-23_AFB_Itkin+Szymanski_Director.pdf
275K

Ответ регистратора.pdf
25K

Выписка в отношении Голден Спиритс.pdf
90K

Отзыв.pdf.sgn
4K

Отзыв.pdf
444K

Справка по ликвидированным компаниям.pdf
580K

---

**Дмитрий Князев** <ag99@list.ru>                          Fri, Mar 6, 2026 at 9:49 AM
Reply-To: Дмитрий Князев <ag99@list.ru>
To: jkar@civillegal.com

-------- Пересылаемое сообщение --------
От кого: Татьяна Падалко <arbitrpadalko@gmail.com>
Кому: Дмитрий Князев <ag99@list.ru>
Дата: Пятница, 20 августа 2021, 15:36 +03:00
Тема: Re: Re[2]: Арбитражная процедура ad hoc

Также прилагаю письменные пояснения.

пт, 20 авг. 2021 г. в 15:03, Татьяна Падалко <arbitrpadalko@gmail.com>:
Добрый день!
Пересылаю документы по настоящему разбирательству.

пн, 9 авг. 2021 г. в 14:38, Дмитрий Князев <ag99@list.ru>:
Добрый день!

Рассмотрел Ваше обращение, направляю Вам Определение о назначении спора к рассмотрению (от 02.08.2021), а так же Судебный запрос (от 05.08.2021).

С уважением,
Единый арбитр (Судья), выбранный и согласованный Сторонами,
Князев Д.В.

Понедельник, 19 июля 2021, 12:09 +03:00 от Татьяна Падалко <arbitrpadalko@gmail.com>:

Прошу оперативно связаться со мной по следующим контактам: тел.: +79219150765, эл. почта tpadalko@mail.ru.

пн, 19 июл. 2021 г. в 10:48, Татьяна Падалко <arbitrpadalko@gmail.com>:

Добрый день, я являюсь финансовым управляющим Сабадаша А.В. Организации - ответчики принадлежат Сабадашу А.В., документы по данному спору были сфальсифицированы. Прошу предоставить ваши контактные данные для связи.

--
Дмитрий Князев

---

--
Дмитрий Князев
Отправлено из Почты Mail

[Quoted text hidden]

---

**2 attachments**

📄 **Письменные пояснения.pdf**
423K

📄 **Письменные пояснения.pdf.sgn**
4K

---

**Дмитрий Князев** <ag99@list.ru>                                    Fri, Mar 6, 2026 at 9:49 AM
Reply-To: Дмитрий Князев <ag99@list.ru>
To: jkar@civillegal.com

-------- Пересылаемое сообщение --------
От кого: Татьяна Падалко <arbitrpadalko@gmail.com>
Кому: Дмитрий Князев <ag99@list.ru>
Дата: Пятница, 20 августа 2021, 15:04 +03:00
Тема: Re: Re[2]: Арбитражная процедура ad hoc

Добрый день!
Пересылаю документы по настоящему разбирательству.

пн, 9 авг. 2021 г. в 14:38, Дмитрий Князев <ag99@list.ru>:

Добрый день!

Рассмотрел Ваше обращение, направляю Вам Определение о назначении спора к рассмотрению (от 02.08.2021), а так же Судебный запрос (от 05.08.2021).

С уважением,
Единый арбитр (Судья), выбранный и согласованный Сторонами,
Князев Д.В.

Понедельник, 19 июля 2021, 12:09 +03:00 от Татьяна Падалко <arbitrpadalko@gmail.com>:

Прошу оперативно связаться со мной по следующим контактам: тел.: +79219150765, эл. почта tpadalko@mail.ru.

пн, 19 июл. 2021 г. в 10:48, Татьяна Падалко <arbitrpadalko@gmail.com>:

> Добрый день, я являюсь финансовым управляющим Сабадаша А.В. Организации - ответчики принадлежат Сабадашу А.В., документы по данному спору были сфальсифицированы. Прошу предоставить ваши контактные данные для связи.

--
Дмитрий Князев

---

--
Дмитрий Князев
Отправлено из Почты Mail

[Quoted text hidden]

---

**15 attachments**

📄 **2003-05-31_AFB-COA_appointing_Itkin_officer.pdf**
38K

📄 **2016-10-03_apoint_LS+Reynolds+PS_director.pdf**
27K

📄 **2015-01-23_AFB_Itkin+Szymanski_Director.pdf**
275K

📄 **2016-10-03_appoint_LS_officer.pdf**
28K

📄 **2009.11.23_Minutes_Garry_sole_GSL_Director_091123.pdf**
203K

📄 **2000.08.11_Additonal_director_Garry.pdf**
15K

📄 **Заявление о пропуске срока исковой давности.pdf.sgn**
4K

📄 **Заявление о фальсификации.pdf.sgn**
4K

📄 **Заявление о пропуске срока исковой давности.pdf**
188K

📄 **Заявление о фальсификации.pdf**
199K

📄 **Ответ на судебный запрос.pdf**
377K

📄 **Ответ на судебный запрос.pdf.sgn**
4K

📄 **Повторный запрос документов.pdf**
441K

📄 **Талон КУСП.pdf**
344K

📄 **Повторный запрос документов.pdf.sgn**
4K

# EXHIBIT 5

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

**M I K H A I L   B O G O M O L N Y**

**TRANSLATION, NOTARY AND APOSTILLE SERVICES**

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

**Joseph Kar <jkar@civillegal.com>**

**Fwd[2]: Missed deadline statement and Falsification of EV.**

1 message

Dmitry Knyazev <ag99@list.ru> Fri, Mar 6, 2026 at 9:49 AM

Reply-To: Dmitry Knyazev <ag99@list.ru>

To: jkar@civillegal.com

-------- Forwarded message --------

From: L V l2020@hotmail.com

To: ag99@list.ru ag99@list.ru

Cc: Michael Zorkin mz@thezorkinfirm.com

Date: Monday, August 23, 2021, 23:07 +03:00

Subject: Missed Deadline Statement and Falsification of Evidence

Mr. Knyazev,

Attached please find the Statement Regarding Falsification of Evidence in the case and the Statement Regarding Expiration of the Statute of Limitations.

Respectfully,

Larisa Sabadash

--

Dmitry Knyazev

Sent from Mail.ru Mail

[Attached 2 pdf files]

Falsification of Evidence.pdf

Missed Deadline Statement.pdf

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# MIKHAIL BOGOMOLNY
## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

# CERTIFICATE OF TRANSLATION

*Translation from Russian into English*

I, MIKHAIL BOGOMOLNY, A **CERTIFIED COURT INTERPRETER (ID: 313218)**, DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION, I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; THE TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**DOCUMENT DESCRIPTION**

*EMAIL MESSAGE*
*From: L V l2020@hotmail.com*
*To: ag99@list.ru ag99@list.ru*
*Cc: Michael Zorkin mz@thezorkinfirm.com*



X _____

Mikhail Bogomolny

Translator

**Interpreter information:**
**Address: 16001 Ventura Blvd., Ste. 120,**
**Encino, CA 91436**
**Ph. 818-284-1884**
**Email: michael@translatorpro.org**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

Case 2:25-bk-11635-NB-MBKc 1-D1c Filed 03/23/26 Entered 05/27/26 17:41:58 Desc



Joseph Kar <jkar@civillegal.com>

## Fwd[2]: Missed deadline statement and Falsification of EV.

1 message

**Дмитрий Князев** <ag99@list.ru>
Reply-To: Дмитрий Князев <ag99@list.ru>
To: jkar@civillegal.com

Fri, Mar 6, 2026 at 9:49 AM

-------- Пересылаемое сообщение --------
От кого: L V <l2020@hotmail.com>
Кому: ag99@list.ru <ag99@list.ru>
Копия: Michael Zorkin <mz@thezorkinfirm.com>
Дата: Понедельник, 23 августа 2021, 23:07 +03:00
Тема: Missed deadline statement and Falsification of EV.

 Господин Князев,


Прилагаю Заявление о фальсификации доказательств по делу и Заявление о пропуске срока исковой давности
.


С уважением,

Лариса Сабадаш

--
Дмитрий Князев
Отправлено из Почты Mail

--
Дмитрий Князев
Отправлено из Почты Mail

**2 attachments**

**Falsefication of evidence .pdf**
239K

**Missed deadline Statement.pdf**
236K

# EXHIBIT 6

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

AGREEMENT ON IDENTITY OF THE ARBITRATOR AND APPLICABLE REGULATIONS
"23" August 2012

This Agreement on Identity of the Arbiter and Applicable Regulations, hereinafter referred to as "Agreement", is entered into and becomes effective immediately upon execution by and among:

- **Agragorn Holdings Limited**, a limited liability company organized and registered under the laws of the British Virgin Islands, whose registered office is at Trident Chambers, Wickhams Cay, Road Town, Tortola, British Virgin Islands, hereinafter referred to as "Agragorn",
- **Golden Spirits Limited**, a limited liability company organized and registered under the laws of the Isle of Jersey, Channel Island, whose registered office is at 43 La Motte Street, St. Helier, Isle of Jersey JE4 8SD, Channel Island hereinafter referred to as "Golden Spirits",
- **AFB Trading One, Inc.**, a company organized, registered, and incorporated under the laws of the State of California, USA, whose registered office is at 8501 Wilshire Blvd., Suite 330, Beverly Hills, California, 90211 USA hereinafter referred to as "AFB",
- **Golden Sphinx Limited**, a limited liability company organized and registered under the laws of the Isle of Jersey, Channel Island, whose registered office is at 43 La Motte Street, St. Helier, Isle of Jersey JE4 8SD, Channel Island hereinafter referred to as "Golden Sphinx"

collectively hereinafter referred to as "Parties"

RECITALS:

I. Golden Spirits is indebted to Agragorn under a Loan Agreement dated April 20 2010 hereinafter referred to as "Loan Agreement".

II. On August 23 2012 loan modification and forbearance agreement was executed and entered into by Parties, hereinafter referred to as "Loan Modification and Forbearance Agreement".

III. On August 23 2012 corporate guarantee was executed and entered into by AFB, irrevocably and unconditionally guarantying to Agragorn punctual and faithful performance by Golden Spirits of all its obligations stipulated and agreed upon in Loan Modification and Forbearance Agreement, hereinafter referred to as "AFB Corporate Guarantee".

IV. On August 23 2012 corporate guarantee was executed and entered into by Golden Sphinx, irrevocably and unconditionally guarantying to Agragorn punctual and faithful performance by Golden Spirits of all its obligations stipulated and agreed upon in Loan Modification and Forbearance Agreement, hereinafter referred to as "Golden Sphinx Corporate Guarantee".

NOW, THEREFORE, in consideration of the foregoing and Agragorn entering into the Loan Modification and Forbearance Agreement, Parties hereby do unconditionally and irrevocably agree as follows:

1. Based upon arbitration agreement contained in
   a. paragraph 12(f) of Loan Modification and Forbearance Agreement,
   b. paragraph 5.7 of AFB Corporate Guarantee, and
   c. paragraph 5.7 of Golden Sphinx Corporate Guarantee

   all containing agreements that any and all disputes, disagreements, controversy, or claim which may arise out of or in connection with agreements I – IV above, shall be resolved and finally settled by sole arbiter, whose identity is hereby agreed upon in paragraph 2 of this Agreement, by ad hoc arbitration procedure.

2. Juris Doctor Dmitry Valerievich Knyazev, hereinafter referred to as "Arbitrator" or "Judge", is hereby appointed to serve as sole arbiter pursuant this agreement and arbitration agreement contained in paragraphs 1(a). – 1(c) above. Mr. Knyazev was born on May 19, 1981, he is a qualified lawyer, graduated from the Specialized Institute of Jurisprudence of Moscow, works as the chief legal adviser of the State Educational Institution of Higher Professional Education, Kosygin Moscow State Textile University, mailing address: Russian Federation 119071, Moscow, 1 Malaya Kaluzhskaya street, Citizen of the Russian Federation, email address - ag99@list.ru, telephone +79262226184.

3. any and all disputes, disagreements, controversy or claim which may arise out of, in connection with, or relating to the above agreements I – IV, including but not limited to their entering into force, execution, alteration, violation, breach, termination or validity thereof, shall be resolved and finally settled by ad hoc arbitration conducted by Arbitrator in accordance with UNCITRAL Arbitration Rules and Principles, under authority of the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation, hereinafter referred to as "ICAC". Upon request of any Party or Arbitrator, ICAC will  provide organizational assistance services to the arbitration, in accordance with its administrative ad hoc arbitration rules and procedures under the UNCITRAL Arbitration Rules, including performance of the following functions:
   a. effecting service of documents to the Parties and the Arbitrator;
   b. assisting the arbitral tribunal in determining the date, time and place of the hearing of the case and effecting service of advance notice to the parties of the hearing;
   c. providing premises for the hearing of the case and meetings of the arbitral tribunal;
   d. performing legal secretarial duties, court reporter's and translator services;
   e. witnessing, certifying, and authenticating signatures on any documents, including but not limited to Arbitrator signature on the award, with the seal of the ICAC and the signature of its executive secretary;
   f. providing any other assistance services, to the extent possible.

4. an arbitral award rendered by Arbitrator shall be final. Parties hereby do waive any right to appeal or otherwise challenge the award of the arbitrator.

5. no Party shall submit a complaint or motion to a state court to adjudicate lack of jurisdiction of an arbitral tribunal in connection with the issuance by the arbitral tribunal of a separate order on existence of jurisdiction as a matter of preliminary nature.

6. no consideration by any state court of issues on challenges of arbitrators or termination of their powers on any grounds shall not be allowed.

7. dispute resolution, at the option of the plaintiff, can take place solely on the basis of written materials provided by the parties, without necessarily holding an oral hearing and calling the parties. Participation of the parties and the Arbitrator in meetings is allowed via electronic video conference, for instance SKYPE.

8. the proceedings will be conducted in Moscow, Russian Federation, in Russian language and in accordance with laws and regulations of Russian Federation.

9. Arbitrator shall determine the existence and scope of the agreement to arbitrate, and shall be authorized to issue any award, monetary or non-monetary, to effectuate their decision, to the maximum extent possible.

10. any award from the arbitrator may be entered in any jurisdiction where any of the parties are located, where they may have assets, or where entry of the award as a judgment may assist a party in enforcing the award or judgment thereon.

11. the writ of execution is to be issued at the place of arbitration or any jurisdiction where any of the parties are located, where they may have assets, or where entry of the award as a judgment may assist a party in enforcing the award or judgment thereon.

12. any Party may immediately demand arbitration, without any conditions precedent, which demand may be served by electronic means (such as email) on defendant and/or their counsel.

13. the cost of the arbitration will be split 50/50.

14. the arbitrator shall award costs and attorney's fees to the prevailing party.

15. should defendant fail or refuse to submit to or participate in an arbitration once that arbitration is initiated, the arbitrator may move forward to a hearing on the merits without the participation of the non-participating party, without the participating party first-moving to compel arbitration, so long as the party demanding arbitration pays the costs of that arbitration and gives notice of all proceedings to the non-participating party and/or the non-participating party's counsel.

16. to the fullest extent permitted by applicable law, Parties hereby waive their respective rights to a trial by jury of any claim or cause of action based upon or arising out of or related agreements I – IV above, the documents executed in connection herewith, or the transactions contemplated hereby or thereby, in any action, proceeding or other litigation of any type brought by any of the parties against any other party, whether with respect to contract claims, tort claims, or otherwise.

17. it is allowed to exchange copies of this agreement, annexes and addendums, signed by each party, scanned and sent to the other party at the email addresses specified in section 18 of this agreement, thereby recognizing these documents as in-force and legally binding. Additionally, parties also recognize all other documents, including but not limited to notifications and claims as duly served when sent to each other in electronic form to the e-mail addresses specified in section 18 of this agreement. The persons authorized to conduct correspondence on behalf of Parties are indicated in section 18 of this agreement. Each party bears the risk of failing to notify other parties of changes of their address, both physical and email. If a party avoids receiving a notification sent by the other party, the notification is considered received after 6 calendar days from the moment it was sent.

18. any and all notices, requests, demands or other communications to the respective parties hereto shall be in writing and shall be delivered by hand, by internationally recognized overnight courier (e.g., FedEx or DHL), by facsimile or by email at their respective addresses set forth herein. The addresses of the parties hereto (until notice of a change thereof is served as provided in this Section 5.2) shall be as follows:

- **Agragorn Holdings Limited**
  Trident Chambers, Wickhams Cay,
  Road Town, Tortola,
  British Virgin Islands

- **AFB Trading One, Inc.**,
  C/O Garry Itkin
  Email: itkin1@aol.com
  Phone: (310) 657-7711
  8501 Wilshire Blvd., Suite 330,
  Beverly Hills, California, 90211
  USA

- **Golden Spirits Limited**
  43 La Motte Street,
  St. Helier,
  Isle of Jersey JE4 8SD, Channel
  Island

- **Golden Sphinx Limited**
  43 La Motte Street,
  St. Helier,
  Isle of Jersey JE4 8SD, Channel
  Island

19. if any provision of this Agreement is for any reason held to be invalid, illegal or unenforceable in any respect, that provision shall not affect the validity, legality or enforceability of any other provision of this Guaranty.

20. this Agreement shall bind the heirs, administrators, executors, representatives, successors and assigns of Parties, and shall inure to the benefit of the successors and assigns of the Parties.

21. this agreement becomes effective and in full force and effect immediately upon its execution.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

_____
Agragorn Holdings Limited
By: Imperial Nominees Limited
Title: Sole Director

Golden Spirits Limited
By: Garry Itkin
Title: Sole director and officer

AFB Trading One, Inc
By: Garry Itkin
Title: President, Chief Executive Officer,
Secretary

Golden Sphinx Limited
By: Garry Itkin
Title: Sole director and officer

Joseph M. Kar (SBN 207414)
jkar@civillegal.com
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite PH-1220
Sherman Oaks, CA 91403
Telephone: (818) 501-6930
Facsimile: (818) 501-6935

**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH,
GRANT, ASSIGNEE AND SUCCESSOR OF
DAVILLA INVESTING LIMITED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual | **Case No.: 2:25-cv-11869-JFW (MBKx)** |
| Petitioner, | **DECLARATION OF DMITRY VALERYEVICH KNYAZEV RE: RESPONSE TO DOCKET NOS. 49 AND 50 AND EXHIBITS A TO C HERETO** |
| v. | **Judge: Honorable John F. Walter Ctrm: 7A** |
| AFB TRADING ONE, INC., a California Corporation; | **[9 U.S.C. § 207]** |
| Respondents. | **Trial: Not set** |

1

I, Dmitry Valeryevich Knyazev, declare as follows:

I am duly authorized to practice law in the Russian Federation and am authorized and practice as an arbitrator in the Russian Federation. I have personal knowledge of the facts stated herein, except where I expressly indicate that a statement is based upon my review of public records or information in the arbitration file. If called as a witness, I could and would testify competently to the facts stated in this declaration.

This declaration is made in response to submissions made on 23 March 2026 by and on behalf of Respondent AFB Trading One, Inc. This signed declaration and its attachments/exhibits are provided with my original signature and authenticates its attachments and exhibits.

International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation (ICAC at the RF CCI; Russian abbreviation: MKAS) is an independent permanent arbitration institution located in Moscow, Russia. ICAC is the leading arbitration institution in Russia and in East European countries which deals with resolving disputes of international nature. It is the successor to Foreign Trade Arbitration Commission which was created in 1932. Thus, in 2022 ICAC is celebrating its 90th anniversary. (https://mkas.tpprf.ru/en/)

The US court has recognized and enforced three arbitral awards issued by the ICAC at the RF CCI against a US company. As recent as January 2026 The US District Court for the District of Columbia granted a petition to recognize and enforce three awards issued by the International Commercial Arbitration Court (ICAC) at the Russian Chamber of Commerce and Industry of the Russian Federation (RF CCI) against a US company, reaffirming the application of the 1958 UN Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention). Satoriagricultural Consultancy and Projects Management LLC vs T&R Productions LLC (https://mkas.tpprf.ru/en/news/the-us-court-has-recognized-and-enforced-three-arbitral-awards-issued-by-the-icac-at-the-rf-cci-agai-i595490/).

The ICAC administers international commercial arbitrations. Pursuant to an agreement of the parties, the following disputes may be referred to the ICAC: disputes resulting from contractual and other civil law relationships arising in the course of foreign trade and other forms of international economic relations, including  disputes involving individuals, provided that the place of business of at least one of the parties is situated abroad or any place where the significant part of obligations arising out of relationships between the parties is to be performed, or the place with which the subject matter of the dispute is most closely connected is located abroad, and also disputes relating to foreign investments in the territory of the Russian Federation or Russian investments abroad.

The ICAC may also administer arbitrations of internal, corporate and sports disputes.

Apart from that, the ICAC performs certain functions on administering *ad hoc* arbitration. An arbitration agreement is a prerequisite for application to the ICAC. It may be included in a contract as one of its clauses or concluded, also subsequently, in the form of a separate agreement to resolve a dispute which has already arisen. The ICAC also administers disputes subject to its jurisdiction by virtue of international treaties or federal laws of the Russian Federation. (https://mkas.tpprf.ru/en/kompetentsiya/).

The Presidium of the ICAC consists of the President of the ICAC, his Vice Presidents for relevant types of disputes, six persons from the Lists of Arbitrators elected at the General Meeting of Arbitrators for a six-year period, as well as three persons appointed by the President of the Chamber of Commerce and Industry of the Russian Federation. The ICAC President shall act as the Chairman of the Presidium. The ICAC Presidium analyses and reviews arbitration practice, reviews issues related to dissemination of information about the activities of the

ICAC, joinder and consolidation of arbitral proceedings, prolongation of their terms, determines the ICAC international policy and considers other matters of the ICAC activity. (https://mkas.tpprf.ru/en/presidium/)

I now turn to the letter purportedly signed by the secretary of ICAC (Exhibit A):

1. The letter is neither produced to this Court in original nor as duly certified copy thereof, confirmed by Apostille. Therefore, authenticity and genuineness are in question

2. The letter is produced by ICAC department of Internal, sports disputes, as evident from the letterhead. This department is **not** involved with contractual and other civil law relationships arising in the course of foreign trade and other forms of international economic relations. The ICAC department of Internal, sports disputes would not be correct department to provided administrative or logistical support to the ad hoc arbitration involving 2021 or 2025 awards. The case number 1800-4/1301 should not be registered in ICAC department of Internal, sports disputes.

3. In fact on 31 May 2021 I have applied to the Presidium of the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation (ICAC) within the framework of *ad hoc* arbitration proceedings for the resolution of a specific international commercial dispute with Request for Assistance in the Administration of an International Commercial Arbitration (Exhibit B).

4. I have paid required fees and duties, including payment of VAT (Exhibit C).

5. ICAC Chairman A.A. Kostin has approved and had every right to approve my Arbitration Award dated August 31, 2021, in his capacity of President of the ICAC. Secretary's signature to approve awards is not at all required.

6. My Arbitration Award dated August 31, 2021, bears seal of the Chamber of Commerce and Industry of the Russian Federation (CCI RF), and true signature of ICAC Chairman A.A. Kostin, as evidenced by submitted apostilled documents.

I declare the foregoing is true and correct under the laws for penalty of perjury in the State of California and United States. Executed this 30 day of April, 2026

Dmitry Valeryevich Knyazev

# Exhibit A

Tatiana Hay Interpreting Services
Cherry Hill, NJ 08034
tatianahay.com

### DOCUMENT TRANSLATION FROM RUSSIAN INTO ENGLISH

## THE INTERNATIONAL COMMERCIAL ARBITRATION COURT AT THE CHAMBER OF COMMERCE AND INDUSTRY OF THE RUSSIAN FEDERATION



Founded in 1932
Member of the International
Federation of Commercial
Arbitration Institutions (IFCAI)

№____1800-M-____/914                                   *March 23, 2026*

**Return Receipt Requested**

**Trubina D. B., Esq.**
Kutuzovskaya Bar Association
tel. 8-965-764-13-60
daryatrubina@yandex.ru

Response to legal inquiry № 94 dated March 17, 2026

In connection with your inquiry regarding the ad hoc arbitration proceedings involving AFB Trading One, Inc., Golden Spirits Limited, Golden Sphinx Limited, Davilla Investing Limited, as well as the decisions rendered by arbitrator Dmitry Valeryevich Knyazev in 2021 and 2025, we hereby advise as follows:

The International Commercial Arbitration Court (ICAC) at the Chamber of Commerce and Industry of the Russian Federation (CCI RF) is a permanent arbitration institution.

Pursuant to the Law of the Russian Federation No. 5338-1, dated July 7, 1993, "On International Commercial Arbitration" and Federal Law No. 382-FZ, dated December 29, 2015, "On Arbitration (Arbitral Tribunals) in the Russian Federation", ICAC is authorized to act as a competent (appointing) authority and to provide administrative, organizational, and logistical support to arbitration proceedings in accordance with the Rules governing ICAC's performance of certain functions related to administration of arbitration proceedings conducted by arbitral tribunals formed by the parties to resolve specific disputes (ad hoc Arbitration), as set forth in Appendix No. 8 to Order No. 6 of the CCI RF, dated January 10, 2017.

ICAC has never, at any time, including in 2021 or 2025, provided administrative or logistical support to the ad hoc arbitration involving the parties and arbitrator D.V. Knyazev, referenced in your request.

We also inform you that the case number 1800-4/1301 referenced in your inquiry does not correspond to the numbering or abbreviation system used by ICAC, including for ad hoc arbitrations, and is not found in ICAC case registry.

D.V. Knyazev has never been listed in the ICAC arbitrator registry approved by the CCI RF, nor has he participated in ICAC arbitration proceedings as an appointed external (non-listed) arbitrator, including in cases where ICAC acted as a competent authority and provided support to ad hoc arbitrations.

Mailing address: Bldg. 1, 6/1, Ilyinka Street
Moscow, 109012, Russia
**International, corporate disputes:**
Tel: (495) 620-00-07, 620-01-71, 620-04-60
E-mail: mkac_arbitration@tpprf.ru

**Internal, sports disputes:**
Tel: (495) 620-01-49, 620-00-89
E-mail: sts@tpprf.ru
Website: mkas.tpprf.ru

1

Tatiana Hay Interpreting Services
Cherry Hill, NJ 08034
tatianahay.com

## DOCUMENT TRANSLATION FROM RUSSIAN INTO ENGLISH

We further inform you that ICAC Chairman A.A. Kostin has never approved, and could not have approved, the decision you submitted dated August 31, 2021, because, under the ICAC Rules for Administering ad hoc Arbitrations, the ICAC Chairman is not authorized to approve decisions issued by an arbitral tribunal.

Under these Rules, the only action permitted is the authentication of arbitrators' signatures on an arbitration award, which is carried out by the ICAC seal and the signature of the executive secretary.

In light of the foregoing, we inform you that the copy of the decision you submitted dated August 31, 2021, bears a forged seal of the Chamber of Commerce and Industry of the Russian Federation (CCI RF), a falsified signature of ICAC Chairman A.A. Kostin, and a non-existent ICAC case number under the CCI RF system.

Respectfully,
ICAC Executive Secretary                            [Signature] V.A. Frolochkin
*Prepared by O.V. Golovina, tel. 7(495)620-01-91, golovina.ov@tpprf.ru*

ROUND SEAL:         INTERNATIONAL COURT OF COMMERCIAL ARBITRATION AT THE CHAMBER OF COMMERCE AND INDUSTRY OF THE RUSSIAN FEDERATION

END OF DOCUMENT

2

Одновременно сообщаем, что Председатель МКАС А.А. Костин никогда не согласовывал и не мог согласовать представленное Вами Решение от 31.08.2021 г., так как согласно Правилам по оказанию МКАС отдельных функций по администрированию арбитража AD HOC Председатель МКАС не наделен полномочием по согласованию выносимых третейским судом решений.

В соответствии с данными Правилами возможно лишь удостоверение подписей арбитров на арбитражном решении, которое производится печатью МКАС и подписью его Ответственного секретаря.

Учитывая вышеизложенное, информируем, что на представленной Вами копии Решения от 31.08.2021 содержится подложная печать Торгово-промышленной палаты Российской Федерации, поддельная подпись Председателя МКАС А.А. Костина, с несуществующей нумерацией дел МКАС при ТПП РФ.

С уважением,
Ответственный секретарь МКАС
*Исп. О.В. Головина, тел. 7(495)620-01-91, golovina.ov@tpprf.ru*

В.А. Фролочкин



# МЕЖДУНАРОДНЫЙ КОММЕРЧЕСКИЙ АРБИТРАЖНЫЙ СУД
## ПРИ ТОРГОВО-ПРОМЫШЛЕННОЙ ПАЛАТЕ РОССИЙСКОЙ ФЕДЕРАЦИИ

## THE INTERNATIONAL COMMERCIAL ARBITRATION COURT AT THE CHAMBER
## OF COMMERCE AND INDUSTRY OF THE RUSSIAN FEDERATION

Основан в 1932 году
Член Международной федерации
коммерческих арбитражных институтов
(МФКАИ)

Founded in 1932
Member of the International Federation
of Commercial Arbitration Institutions
(IFCAI)

№ 1800-М- *1914*                 «23»    03    2026 г.

*С уведомлением о вручении*

**Адвокату Трубиной Д.Б.**
Коллегия адвокатов «Кутузовская»
тел. 8-965-764-13-60
daryatrubina@yandex.ru

Ответ на адвокатский запрос № 94 от 17.03.2026

В связи с Вашим запросом относительно арбитражных разбирательств AD НОС с участием компаний ЭйЭфБи Трейдинг Уан, Инк. (AFB Trading One, Inc.), Голден Спиритс Лимитед (Golden Spirits Limited), Голден Сфинкс Лимитед (Golden Sphinx Limited), Давилла Инвестинг Лимитед (Davilla Investing Limited), а также судебных актов, вынесенных арбитром Князевым Дмитрием Валерьевичем в 2021 и в 2025 годах, сообщаем следующее.

Международный коммерческий арбитражный суд (МКАС) при Торгово-промышленной палате Российской Федерации (ТПП РФ) является постоянно действующим арбитражным учреждением.

В соответствии с Законом Российской Федерации от 7 июля 1993 года № 5338-1 «О международном коммерческом арбитраже» и Федеральным законом от 29 декабря 2015 года № 382-ФЗ «Об арбитраже (третейском разбирательстве) в Российской Федерации» МКАС вправе действовать в качестве компетентного (назначающего органа) и оказывать организационное и материально-техническое содействие арбитражным разбирательствам на основании Правил по оказанию МКАС отдельных функций по администрированию арбитража, осуществляемого третейским судом, образуемым сторонами для разрешения конкретного спора (Арбитраж AD НОС) (Приложение 8 к Приказу ТПП РФ № 6 от 10.01.2017 г.).

При этом МКАС никогда (в том числе ни в 2021 году, ни в 2025 году) не оказывал организационного и материально-технического содействия арбитражу AD НОС с участием названных в Вашем запросе сторон и арбитра Д.В. Князева.

Также сообщаем, что указанный в Вашем запросе номер дела 1800-4/1301 не соответствует нумерации и аббревиатуре, присваиваемым делам МКАС, в том числе при арбитраже AD НОС, и отсутствует в картотеке дел МКАС.

Гражданин Князев Д.В. никогда не включался в утверждаемые ТПП РФ списки арбитров МКАС, а также не участвовал в арбитражных разбирательствах МКАС в качестве назначенного стороннего (несписочного) арбитра, в том числе при выступлении МКАС в качестве компетентного органа и оказании содействия арбитражу AD НОС.

Почтовый адрес: 109012, г. Москва, ул. Ильинка, д. 6/1, стр. 1    Post address: bld. 1, 6/1, Ilyinka street, Moscow, 109012, Russia
**Международные, корпоративные споры:**    **International, corporate disputes:**
Телефоны: +7 (495) 620-00-07, 620-01-71, 620-04-60    Telephones: +7 (495) 620-00-07, 620-01-71, 620-04-60
Эл. почта: mkac_arbitration@tpprf.ru    E-mail: mkac_arbitration@tpprf.ru
**Внутренние, спортивные споры:**    **Internal, sports disputes:**
Телефоны: +7 (495) 620-01-49, 620-00-89    Telephones: +7 (495) 620-01-49, 620-00-89
Эл. почта: sts@tpprf.ru    E-mail: sts@tpprf.ru
Интернет-сайт: mkas.tpprf.ru    Web-site: mkas.tpprf.ru

# Exhibit B

В Президиум Международного коммерческого арбитражного суда при Торгово-промышленной палате Российской Федерации (МКАС)

в рамках арбитражной процедуры AD HOC для разрешения конкретного международного коммерческого спора

от Князева Дмитрия Валерьевича, единый арбитр (судья), выбранный и согласованный сторонами

**МКАС при ТПП РФ**
**ПОЛУЧЕНО С НАРОЧНЫМ в 1 экз.**
*Юманешо С.В.*
«31» 05 2021 г.

### Обращение об оказании содействия

### по администрированию арбитража международного коммерческого спора

Правилами по оказанию Международным Коммерческим Арбитражным Судом при Торгово-промышленной палате РФ отдельных функций по администрированию арбитража, осуществляемого Третейским судом, образуемым сторонами для разрешения конкретного спора (АРБИТРАЖ AD HOC) прошу оказать организационное содействие арбитражному разбирательству, по иску ДавиллаИнвестинг Лимитед (DavillaInvestingLimited) (далее также – истец) к Голден СпирнтсЛиитед (GoldenSpiritsLimited) (далее также – Ответчик 1), ЭйЭфБиТрейдингУан, Инк (AFB TradigOne.Inc.) (далее также – Ответчик 2), Голден Сфинкс Лимитед (GoldenSphinxLimited) (далее также – Ответчик 3), АграгорнХолдингс Лимитед (AgragornHoldingsLimited) (далее также – Третье лицо) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.Данный спор возник из Договора займа от 20 апреля 2010г. заключенного между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Компанией Голден СпиритсЛиитед (GoldenSpiritsLimited), Соглашения об изменении и отсрочке долга от 23 августа 2012г. заключенного между Компанией АграгорнХолдиигс Лимитед (AgragornHoldingsLimited) и Компанией Голден СпиритсЛиитед (GoldenSpiritsLimited), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и ЭйЭфБиТрейдингУан, Инк.(AFB TradigOne.Inc.), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Голден Сфинкс Лимитед (GoldenSphinxLimited), Соглашения по передаче прав по Договору займа от 07 сентября 2020г., заключенного между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Компанией ДавиллаИнвестинг Лимитед (DavillaInvestingLimited); 20 апреля 2010г. Компания АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Компания Голден СпиритеЛиитед (GoldenSpiritsLimited) заключили договор займа. В соответствии с условиями данного договора Третье лицо предоставило заемщику в долг денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США. В соответствии с п.4.1. договора займа Ответчик 1 должен был вернуть заем не позднее двух лет с момента предоставления займа и в соответствии с п.4.2 договора займа уплатить 1,1% годовых с суммы займа. 21.04.2010г. Третье лицо перевел Ответчику 1 денежные средства в размере 1022000 (Один миллион двадцать две тысячи) доллар США и уплатил комиссию за перевод вразмере 268,36 (Двести шестьдесят восемь) доллар США. Таким образом, в полном объеме выполнил обязательства по договору займа. Обязанност по возврату суммы займа и процентов по займу Ответчиком 1 выполнены не были в полно объеме. 23 августа 2012г. Третье лицо и Ответчик 1 заключили соглашение об изменении отсрочке долга. В соответствии с данным соглашением стороны продлили срок исполнен

# Exhibit C

26.05.2021

Поступ. в банк плат.    Списано со сч. плат.    0401060

## ПЛАТЕЖНОЕ ПОРУЧЕНИЕ № 518    26.05.2021    электронно

Дата    Вид платежа

| Сумма прописью | Семьдесят три тысячи пятьсот рублей  00 копеек | | | |
|---|---|---|---|---|

| ИНН  0 | КПП | **Сумма** | 73 500-00 |
|---|---|---|---|

| Селезнева И. Б. л/сч. 40817810906034044076 в ВТБ-Онлайн //141160 РОССИЯ 50 обл Московская п Звездный городок 62, 132// | **Сч.N** | 40817810906034044076 |
|---|---|---|
| **Плательщик** | | |

| Филиал № 7701 Банка ВТБ (публичное акционерное общество) в г. Москве | **БИК** | 044525745 |
|---|---|---|
| | **Сч.N** | 30101810345250000745 |
| **Банк плательщика** | | |

| БАНК ВТБ (ПАО) г. Москва | **БИК** | 044525187 |
|---|---|---|
| | **Сч.N** | 30101810700000000187 |
| **Банк получателя** | | |

| ИНН  7710026920 | КПП | **Сч.N** | 40703810400000000229 |
|---|---|---|---|

ТПП России

| | Вид оп. | 1 | Срок. плат. | |
|---|---|---|---|---|
| | Назн. пл. | | Очер. плат. | 5 |
| **Получатель** | Код | | Рез. поле | |

Перевод от клиента ВТБ: Ирина С.: Госпошлина, в том числе НДС

**Назначение платежа**

Подписи    Отметки банка

Банк ВТБ (ПАО) г. Москва
БИК 044525745
К/С 30101810345250000745

**ИСПОЛНЕНО**
**26.05.2021**

# Exhibit A

Tatiana Hay Interpreting Services
Cherry Hill, NJ 08034
tatianahay.com

DOCUMENT TRANSLATION FROM RUSSIAN INTO ENGLISH

# THE INTERNATIONAL COMMERCIAL ARBITRATION COURT AT THE CHAMBER OF COMMERCE AND INDUSTRY OF THE RUSSIAN FEDERATION



Founded in 1932
Member of the International
Federation of Commercial
Arbitration Institutions (IFCAI)

№____ 1800-M-____/914

*March 23, 2026*

***Return Receipt Requested***

**Trubina D. B., Esq.**
Kutuzovskaya Bar Association
tel. 8-965-764-13-60
daryatrubina@yandex.ru

Response to legal inquiry № 94 dated March 17, 2026

In connection with your inquiry regarding the ad hoc arbitration proceedings involving AFB Trading One, Inc., Golden Spirits Limited, Golden Sphinx Limited, Davilla Investing Limited, as well as the decisions rendered by arbitrator Dmitry Valeryevich Knyazev in 2021 and 2025, we hereby advise as follows:

The International Commercial Arbitration Court (ICAC) at the Chamber of Commerce and Industry of the Russian Federation (CCI RF) is a permanent arbitration institution.

Pursuant to the Law of the Russian Federation No. 5338-1, dated July 7, 1993, "On International Commercial Arbitration" and Federal Law No. 382-FZ, dated December 29, 2015, "On Arbitration (Arbitral Tribunals) in the Russian Federation", ICAC is authorized to act as a competent (appointing) authority and to provide administrative, organizational, and logistical support to arbitration proceedings in accordance with the Rules governing ICAC's performance of certain functions related to administration of arbitration proceedings conducted by arbitral tribunals formed by the parties to resolve specific disputes (ad hoc Arbitration), as set forth in Appendix No. 8 to Order No. 6 of the CCI RF, dated January 10, 2017.

ICAC has never, at any time, including in 2021 or 2025, provided administrative or logistical support to the ad hoc arbitration involving the parties and arbitrator D.V. Knyazev, referenced in your request.

We also inform you that the case number 1800-4/1301 referenced in your inquiry does not correspond to the numbering or abbreviation system used by ICAC, including for ad hoc arbitrations, and is not found in ICAC case registry.

D.V. Knyazev has never been listed in the ICAC arbitrator registry approved by the CCI RF, nor has he participated in ICAC arbitration proceedings as an appointed external (non-listed) arbitrator, including in cases where ICAC acted as a competent authority and provided support to ad hoc arbitrations.

Mailing address: Bldg. 1, 6/1, Ilyinka Street
Moscow, 109012, Russia
**International, corporate disputes:**
Tel.  (495) 620-00-07, 620-01-71, 620-04-60
E-mail: mkac_arbitration@tpprf.ru

**Internal, sports disputes:**
Tel: ·  (495) 620-01-49, 620-00-89
E-mail: sts@tpprf.ru
Website: mkas.tpprf.ru

1

Tatiana Hay Interpreting Services
Cherry Hill, NJ 08034
tatianahay.com

## DOCUMENT TRANSLATION FROM RUSSIAN INTO ENGLISH

We further inform you that ICAC Chairman A.A. Kostin has never approved, and could not have approved, the decision you submitted dated August 31, 2021, because, under the ICAC Rules for Administering ad hoc Arbitrations, the ICAC Chairman is not authorized to approve decisions issued by an arbitral tribunal.

Under these Rules, the only action permitted is the authentication of arbitrators' signatures on an arbitration award, which is carried out by the ICAC seal and the signature of the executive secretary.

In light of the foregoing, we inform you that the copy of the decision you submitted dated August 31, 2021, bears a forged seal of the Chamber of Commerce and Industry of the Russian Federation (CCI RF), a falsified signature of ICAC Chairman A.A. Kostin, and a non-existent ICAC case number under the CCI RF system.

Respectfully,
ICAC Executive Secretary                                   [Signature] V.A. Frolochkin
*Prepared by O.V. Golovina, tel. 7(495)620-01-91, golovina.ov@tpprf.ru*

ROUND SEAL:        INTERNATIONAL COURT OF COMMERCIAL ARBITRATION AT THE
                   CHAMBER OF COMMERCE AND INDUSTRY OF THE RUSSIAN
                   FEDERATION

---

## END OF DOCUMENT

2

Одновременно сообщаем, что Председатель МКАС А.А. Костин никогда не согласовывал и не мог согласовать представленное Вами Решение от 31.08.2021 г., так как согласно Правилам по оказанию МКАС отдельных функций по администрированию арбитража AD HOC Председатель МКАС не наделен полномочием по согласованию выносимых третейским судом решений.

В соответствии с данными Правилами возможно лишь удостоверение подписей арбитров на арбитражном решении, которое производится печатью МКАС и подписью его Ответственного секретаря.

Учитывая вышеизложенное, информируем, что на представленной Вами копии Решения от 31.08.2021 содержится подложная печать Торгово-промышленной палаты Российской Федерации, поддельная подпись Председателя МКАС А.А. Костина, с несуществующей нумерацией дел МКАС при ТПП РФ.

С уважением,
Ответственный секретарь МКАС

В.А. Фролочкин

*Исп. О.В. Головина, тел. 7(495)620-01-91, golovina.ov@tpprf.ru*

МЕЖДУНАРОДНЫЙ КОММЕРЧЕСКИЙ АРБИТРАЖНЫЙ СУД
ПРИ ТОРГОВО-ПРОМЫШЛЕННОЙ ПАЛАТЕ РОССИЙСКОЙ ФЕДЕРАЦИИ

THE INTERNATIONAL COMMERCIAL ARBITRATION COURT AT THE CHAMBER
OF COMMERCE AND INDUSTRY OF THE RUSSIAN FEDERATION



| | |
|---|---|
| Основан в 1932 году<br>Член Международной федерации<br>коммерческих арбитражных институтов<br>(МФКАИ) | Founded in 1932<br>Member of the International Federation<br>of Commercial Arbitration Institutions<br>(IFCAI) |

№ 1800-М-_1914_       «23»    03    2026 г.

*С уведомлением о вручении*

**Адвокату Трубиной Д.Б.**
Коллегия адвокатов «Кутузовская»
тел. 8-965-764-13-60
daryatrubina@yandex.ru

Ответ на адвокатский запрос  № 94 от 17.03.2026

В связи с Вашим запросом относительно арбитражных разбирательств AD HOC с участием компаний ЭйЭфБи Трейдинг Уан, Инк. (AFB Trading One, Inc.), Голден Спиритс Лимитед (Golden Spirits Limited), Голден Сфинкс Лимитед (Golden Sphinx Limited), Давилла Инвестинг Лимитед (Davilla Investing Limited), а также судебных актов, вынесенных арбитром Князевым Дмитрием Валерьевичем в 2021 и в 2025 годах, сообщаем следующее.

Международный коммерческий арбитражный суд (МКАС) при Торгово-промышленной палате Российской Федерации (ТПП РФ) является постоянно действующим арбитражным учреждением.

В соответствии с Законом Российской Федерации от 7 июля 1993 года № 5338-1 «О международном коммерческом арбитраже» и Федеральным законом от 29 декабря 2015 года № 382-ФЗ «Об арбитраже (третейском разбирательстве) в Российской Федерации» МКАС вправе действовать в качестве компетентного (назначающего органа) и оказывать организационное и материально-техническое содействие арбитражным разбирательствам на основании Правил по оказанию МКАС отдельных функций по администрированию арбитража, осуществляемого третейским судом, образуемым сторонами для разрешения конкретного спора (Арбитраж AD HOC) (Приложение 8 к Приказу  ТПП РФ № 6 от 10.01.2017 г.).

При этом МКАС никогда (в том числе ни в 2021 году, ни в 2025 году) не оказывал организационного и материально-технического содействия арбитражу AD HOC с участием названных в Вашем запросе сторон и арбитра Д.В. Князева.

Также сообщаем, что указанный в Вашем запросе номер дела 1800-4/1301 не соответствует нумерации и аббревиатуре, присваиваемым делам МКАС, в том числе при арбитраже AD HOC, и отсутствует в картотеке дел МКАС.

Гражданин Князев Д.В. никогда не включался в утверждаемые ТПП РФ списки арбитров МКАС, а также не участвовал в арбитражных разбирательствах МКАС в качестве назначенного стороннего (несписочного) арбитра, в том числе при выступлении МКАС в качестве компетентного органа и оказании содействия арбитражу AD HOC.

Почтовый адрес: 109012, г. Москва, ул. Ильинка, д. 6/1, стр. 1    Post address: bld. 1, 6/1, Ilyinka street, Moscow, 109012, Russia
Международные, корпоративные споры:                              International, corporate disputes:
Телефоны: +7 (495) 620-00-07, 620-01-71, 620-04-60              Telephones: +7 (495) 620-00-07, 620-01-71, 620-04-60
Эл. почта: mkac_arbitration@tpprf.ru                            E-mail: mkac_arbitration@tpprf.ru
Внутренние, спортивные споры:                                   Internal, sports disputes:
Телефоны: +7 (495) 620-01-49, 620-00-89                         Telephones: +7 (495) 620-01-49, 620-00-89
Эл. почта: sts@tpprf.ru                                         E-mail: sts@tpprf.ru
Интернет-сайт: mkas.tpprf.ru                                    Web-site: mkas.tpprf.ru

# Exhibit B

МКАС при ТПП РФ
ПОЛУЧЕНО С НАРОЧНЫМ в 1 экз
Юманенко С.В. Д
«31» 05 2021 г.

В Президиум Международного коммерческого арбитражного суда при Торгово-промышленной палате Российской Федерации (МКАС)

в рамках арбитражной процедуры AD HOC для разрешения конкретного международного коммерческого спора

от Князева Дмитрия Валерьевича, единый арбитр (судья), выбранный и согласованный сторонами

### Обращение об оказании содействия

по администрированию арбитража международного коммерческого спора

Правилами по оказанию Международным Коммерческим Арбитражным Судом при Торгово-промышленной палате РФ отдельных функций по администрированию арбитража, осуществляемого Третейскнм судом, образуемым сторонами для разрешения конкретного спора (АРБИТРАЖ AD HOC) прошу оказать организационное содействие арбитражному разбирательству, по иску ДавиллаИнвестинг Лимитед (DavillaInvestingLimited) (далее также – истец) к Голден СпиртсЛиитед (GoldenSpiritsLimited) (далее также – Ответчик 1), ЭйЭфБиТрейдингУан, Инк (AFB TradigOne.Inc.) (далее также – Ответчик 2), Голден Сфинкс Лимитед (GoldenSphinxLimited) (далее также – Ответчик 3), АграгорнХолдингс Лимитед (AgragornHoldingsLimited) (далее также – Третье лицо) о взыскани задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям.Данный спор возник из Договора займа от 20 апреля 2010г. заключенного между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Компанией Голден СпиритсЛиитед (GoldenSpiritsLimited), Соглашения об изменении и отсрочке долга от 23 августа 2012г. заключенного между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Компанией Голден СпиритсЛиитед (GoldenSpiritsLimited), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и ЭйЭфБиТрейдингУан, Инк.(AFB TradigOne.Inc.), Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Голден Сфинкс Лимитед (GoldenSphinxLimited), Соглашения по передаче прав по Договору займа от 07 сентября 2020г., заключенного между Компаиией АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Компанией ДавиллаИнвестинг Лимитед (DavillaInvestingLimited); 20 апреля 2010г. Компания АграгорнХолдингс Лимитед (AgragornHoldingsLimited) и Компания Голден СпиритсЛиитед (GoldenSpiritsLimited) заключили договор займа. В соответствии с условиями данного договора Третье лицо предоставило заемщику в долг денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США. В соответствии с п.4.1. договора займа Ответчик 1 должен был вернуть заем не позднее двух лет с момента предоставления займа и в соответствии с п.4.2 договора займа уплатить 1,1% годовых с суммы займа. 21.04.2010г. Третье лицо перевел Ответчику 1 денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США и уплатил комиссию за перевод вразмере 268,36 (Двести шестьдесят восемь) доллароа США. Таким образом, в полном объеме выполнил обязательства по договору займа. Обязанность по возврату суммы займа и процентов по займу Ответчиком 1 выполнены не были в полном объеме. 23 августа 2012г. Третье лицо и Ответчик 1 заключили соглашение об изменении отсрочке долга. В соответствии с данным соглашением стороны продлили срок исполнен

**M I K H A I L   B O G O M O L N Y**

**TRANSLATION, NOTARY AND APOSTILLE SERVICES**

W. WWW.TRANSLATORPRO.ORG
E.  MICHAEL@TRANSLATORPRO.ORG
P.  1.818.284.1884

*CERTIFIED COURT INTERPRETER*

**To the Presidium of the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation (ICAC)**

**In the arbitration proceedings of JSC NOC for resolution of a specific international commercial dispute**

**From Dmitry Valeryevich Knyazev, sole arbitrator (judge) selected and approved by the parties**

ICAC at the CCI RF
RECEIVED WITH FEE PAID in the amount of
Romanenko S.V.
May 31, 2021

**Request for Assistance
in administering the arbitration of an international commercial dispute**

Under the Rules for the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation to perform certain functions in administering arbitration conducted by an arbitral tribunal formed by the parties to resolve a specific dispute (AD HOC ARBITRATION), regarding the organization of arbitration proceedings in the claim filed by DavillaInvesting Limited (DavillaInvestingLimited) (also referred to as the Claimant) against Golden Spirits Limited (GoldenSpiritsLimited) (also referred to as Respondent 1), AFB Trading Co. Inc. (AFB TradigOne.Inc.) (also referred to as Respondent 2), Golden Sphinx Limited (GoldenSphinxLimited) (also referred to as Respondent 3), Agragorn Holdings Limited (AgragornHoldingsLimited) (also referred to as Third Party), for recovery of debt under a loan agreement, agreements amending and deferring the debt, and corporate guarantees. This dispute arose from the Loan Agreement dated April 20, 2010, entered into by Agragorn Holdings Limited (AgragornHoldingsLimited) and Golden Spirits Limited (GoldenSpiritsLimited), the Agreement Amending and Deferring the Debt dated August 23, 2012, entered into by Agragorn Holdings Limited (AgragornHoldingsLimited) and Golden Spirits Limited (GoldenSpiritsLimited), the Corporate Guarantee dated August 23, 2012, entered into by Agragorn Holdings Limited (AgragornHoldingsLimited) and AFB Trading Co. Inc. (AFB TradigOne.Inc.), the Corporate Guarantee dated August 23, 2012, entered into by Agragorn Holdings Limited (AgragornHoldingsLimited) and Golden Sphinx Limited (GoldenSphinxLimited), the Assignment Agreement under the Loan Agreement dated September 7, 2020, entered into by Agragorn Holdings Limited (AgragornHoldingsLimited) and DavillaInvesting Limited (DavillaInvestingLimited). On April 20, 2010, Agragorn Holdings Limited (AgragornHoldingsLimited) and Golden Spirits Limited (GoldenSpiritsLimited) entered into a loan agreement. The Claimant provided the borrower with funds in the amount of 1,022,000 (one million twenty-two thousand) U.S. dollars as a loan. Under cl. 4.1 of the loan agreement, Respondent 1 was required to repay the loan no later than two years from the date the loan was provided and, under cl. 4.[illegible] of the loan agreement, pay

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**MIKHAIL BOGOMOLNY**

**TRANSLATION, NOTARY AND APOSTILLE SERVICES**

W. WWW.TRANSLATORPRO.ORG

E. MICHAEL@TRANSLATORPRO.ORG

P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

1.1% per annum on the loan amount. On April 21, 2010, the Claimant transferred funds to Respondent 1 in the amount of 1,022,000 (one million twenty-two thousand) U.S. dollars and paid a transfer fee in the amount of 268.36 (two hundred sixty-eight) U.S. dollars. Thus, the Claimant fully performed its obligations under the loan agreement. Respondent 1 failed to perform its obligation to repay the loan amount and interest on the loan in full. On August 23, 2012, the Claimant and Respondent 1 entered into an agreement amending and deferring the debt. Under that agreement, the parties extended the deadline for performing *[truncated]*

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# MIKHAIL BOGOMOLNY
## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

## CERTIFICATE OF TRANSLATION

*Translation from Russian into English*

I, MIKHAIL BOGOMOLNY, A **CERTIFIED COURT INTERPRETER (ID: 313218)**, DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION, I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; THE TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**DOCUMENT DESCRIPTION**

*REQUEST FOR ASSISTANCE*
*IN ADMINISTERING THE ARBITRATION OF AN INTERNATIONAL*
*COMMERCIAL DISPUTE TO THE ICAC*



X _____

Mikhail Bogomolny

Translator

**Interpreter information:**
**Address: 16001 Ventura Blvd., Ste. 120,**
**Encino, CA 91436**
**Ph. 818-284-1884**
**Email: michael@translatorpro.org**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# Exhibit C

26.05.2021

Поступ. в банк плат. | Списано со сч. плат.

0401060

## ПЛАТЕЖНОЕ ПОРУЧЕНИЕ № 518

26.05.2021 — **Дата** | электронно — **Вид платежа**

| | |
|---|---|
| **Сумма прописью** | Семьдесят три тысячи пятьсот рублей 00 копеек |

| ИНН 0 | КПП | **Сумма** | 73 500-00 |
|---|---|---|---|

Селезнева И. Б. л/сч. 40817810906034044076 в ВТБ-Онлайн //141160 РОССИЯ 50 обл Московская п Звездный городок 62, 132//

**Сч.N** 40817810906034044076

**Плательщик**

Филиал № 7701 Банка ВТБ (публичное акционерное общество) в г. Москве

**БИК** 044525745

**Банк плательщика**

**Сч.N** 30101810345250000745

БАНК ВТБ (ПАО) г. Москва

**БИК** 044525187

**Банк получателя**

**Сч.N** 30101810700000000187

| ИНН 7710026920 | КПП | **Сч.N** | 40703810400000000229 |
|---|---|---|---|

ТПП России

| | | |
|---|---|---|
| Вид оп. | 1 | Срок. плат. |
| Назн. пл. | | Очер. плат. 5 |
| Код | | Рез. поле |

**Получатель**

Перевод от клиента ВТБ: Ирина С.: Госпошлина, в том числе НДС

**Назначение платежа**

Подписи | Отметки банка

Банк ВТБ (ПАО) г. Москва
БИК 044525745
К/С 30101810345250000745

**ИСПОЛНЕНО**
**26.05.2021**

**M I K H A I L   B O G O M O L N Y**

TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E.  MICHAEL@TRANSLATORPRO.ORG
P.  1.818.284.1884

*CERTIFIED COURT INTERPRETER*

**0401060**

**05.26.2021**

_____

Date received by bank

Written off from payer's acct.

### PAYMENT ORDER No. 518      **05/26/2021**      **electronic**

Date            Type of payment

| Amount in words | |
|---|---|
| Seventy-three thousand five hundred rubles 00 kopecks | |

**TIN** 0

| Payer | Amount |
|---|---|
| Selezneva I. B. personal acct. 40817810906034044076 with VTB Online 114 160 Russia, Moscow Region, Zvyozdny Gorodok, Bldg. 62, Apt. 132 | 73,500-00 |

**Acct. No.**

40817810906034044076

| Payer's Bank | BIC |
|---|---|
| VTB Bank Branch No. 7701 (Public Joint-Stock Company), Moscow | 044525745 |

**Correspondent Acct. No.**

30101810345250000745

| Recipient's Bank | BIC |
|---|---|
| VTB BANK (PJSC), Moscow | 044525187 |

**Correspondent Acct. No.**

30101810700000000187

**TIN** 7710026920

**Recipient Acct. No.**

40703810400000000229

**Recipient**

Chamber of Commerce and Industry of Russia

**Type of operation** 1

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# MIKHAIL BOGOMOLNY

## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

| **Payment priority** | 5 |
|---|---|

| **Payment purpose** |
|---|
| Transfer from VTB client: Irina S. Gospolina, including VAT |

*Signature        Bank marks*

**VTB Bank (PJSC), Moscow**
**BIC 044525745**
**Corr. acct. 30101810345250000745**
**EXECUTED**
**05/26/2021**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# M I K H A I L  B O G O M O L N Y
## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG

E.  MICHAEL@TRANSLATORPRO.ORG

P.  1.818.284.1884

*CERTIFIED COURT INTERPRETER*

# CERTIFICATE OF TRANSLATION

*Translation from Russian into English*

I, MIKHAIL BOGOMOLNY, A **CERTIFIED COURT INTERPRETER (ID: 313218),** DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION, I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; THE TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**DOCUMENT DESCRIPTION**

*PAYMENT ORDER NO. 518*



X _____

Mikhail Bogomolny

Translator

**Interpreter information:**

**Address: 16001 Ventura Blvd., Ste. 120,**

**Encino, CA 91436**

**Ph. 818-284-1884**

**Email: michael@translatorpro.org**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

Joseph M. Kar (SBN 207414)
jkar@civillegal.com
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite PH-1220
Sherman Oaks, CA 91403
Telephone: (818) 501-6930
Facsimile: (818) 501-6935

**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH,
GRANT, ASSIGNEE AND SUCCESSOR OF
DAVILLA INVESTING LIMITED

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual<br><br>Petitioner,<br><br>v.<br><br>AFB TRADING ONE, INC., a California Corporation;<br><br>Respondents. | **Case No.: 2:25-cv-11869-JFW (MBKx)**<br><br>**DECLARATION OF JOSEPH M. KAR, ESQ. IN SUPPORT OF AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARDS AND EXHIBITS 7 TO 15 HERETO.**<br><br>**DATE: JULY 13, 2026**<br>**TIME: 1:30 PM**<br>**CTRM:7A**<br><br>**Judge: Honorable John F. Walter**<br>**Ctrm: 7A**<br><br>**[9 U.S.C. § 207]**<br><br>**Trial: Not set** |

**TO THE HONORABLE JOHN F. WALTER, ALL INTERESTED**

1

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

**PARTIES AND THEIR ATTORNEYS OF RECORDS:**

      **COMES NOW**, **PETITIONER**, ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual, ("Petitioner"), by and through his attorneys, and hereby respectfully submits the following Declaration of Joseph M. Kar, Esq. in support of the Amended Petition and accompanying and supporting documents,

**<u>DECLARATION OF JOSEPH M. KAR, ESQ.</u>**

I, Joseph Kar, say and declare:

      1.    I am an attorney at law duly licensed to practice before all courts of the State of California, the United States District Court for the Central District of California, and the United States Supreme Court. I am lead counsel of record for Petitioner Aleksandr Aleksandrovich Grant, Assignee and Successor of Davilla Investing Limited, in this matter.

      2.    I make this declaration in support of the Amended Petition to Confirm Foreign Arbitral Awards pursuant to 9 U.S.C. § 207.  Unless otherwise indicated, I make this declaration of my own personal knowledge, and, if called as a witness, I could and would testify competently to the matters stated herein.  I am concurrently filing the originally signed declarations of Aleksandr Aleksandrovich Grant and the Russian Arbitrator Knyazev Dmitry Valeryevich dated April 30, 2026.  Those declarations arrived at my office from Moscow, Rossia, undated but I contacted the parties and was informed and believe that the declarations were both signed April 30, 2026 and I inserted "30th" in the signature blocks along with my initials signifying I made that insertion.  In addition, because of the international nature and transmit delays I have not yet received the apostilled signed declarations, which I am informed and believe will be arriving on or after June 8, 2026, which I will submit to this Court immediately after my receipt thereof and which such delay is beyond my control due to the international transportation of those legal documents.  I do not believe there is any prejudice to Respondent or its

2

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

counsel in opposing since I am filing those originally signed declarations and the apostilled original and apostilled copies of the First and Second Arbitration Awards as well as the two apostilled Declarations of the Russian Arbitrator dated March 6 and 10, 2026 which are being submitted in-chambers as well as filed in the action (exclusive of exhibits thereto).  I was also requested to have filed another declaration of the Russian Arbitrator, Knyazev Dmitry Valeryevich also dated April 30, 2026 containing exhibits A through C thereto, which is made in response to Respondent's declaration filed March 23, 2026 (DKT#49 and 50).

3. The original Petition to Confirm Foreign Arbitral Award was filed in this action on December 16, 2025 (Dkt. No. 1). On April 21, 2026, the Court issued its Order Denying Petition to Confirm Foreign Arbitral Award *with leave to amend* (Dkt. No. 54) (the "April 21, 2026 Order").  On May 6, 2026, over objections, the Court granted Petitioner's Ex Parte Application to extend the time to file the amended petition and supporting documents (Dkt. No. 57), setting June 1, 2026 as the operative filing deadline and July 13, 2026 as the hearing date. This Declaration is filed in support of the Amended Petition pursuant to those Orders.

4. The First Award entered August 31, 2021 (the "First Award") and the Second Award entered August 15, 2025 (the "Second Award") are authenticated by the arbitrator, Knyazev Dmitry Valeryevich, Master of Law, in the Declaration of Dmitry Valeryevich Knyazev filed concurrently herewith.  The duly authenticated apostilled *original* and apostilled *copy* of the First Award is attached as **Exhibit 1** to the Knyazev Declaration, and the duly authenticated apostilled original and apostilled *copy* of the of the Second Award is attached as **Exhibit 2** to the Knyazev Declaration. **Knyazev Decl. ¶¶ 3-4 and Exs. 1-2.** *The originals of Exhibit 1 and 2 are submitted to the Court in-chambers directly.*  The Knyazev Declaration and the concurrently filed Declaration of Petitioner Aleksandr Aleksandrovich Grant are each authenticated by an apostille issued under the Hague Convention of October 5, 1961 (the "Hague Convention"), and each Award

3

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

itself bears an apostille. But, *I must explain that due to the transit time in getting the hard copies of those recently apostilled declarations of Grant and Knyazev from Moscow, that I will be first submitting the electronic copies and later lodging the hard copies of those declarations immediately upon receipt which I hope to receive those hard copies before the June 1, 2026.* But, for completeness of the record, and in abundance of caution, I am also immediately submitting to this Court the Arbitrator's apostilled original and apostilled copy of Declarations dated March 6, 2026 and his supplemental Declaration dated March 10, 2026 without exhibits in support of the original petition (that was denied with leave to amend) as **Exhibits 14 and 15**, hereto, respectively (exclusive of exhibits thereto). **Knyazev Decl. ¶ 1.** *Exhibits 14 and 15 have certified English translations attached after the Russian versions with the originals submitted to this Court in-chambers.*

5. It is my understanding and experience as a practicing attorney and after conducting several years of international business in Russian and around the world that an apostille is the international standard for authentication of foreign public documents under the Hague Convention, to which both the United States and the Russian Federation are parties. The apostille issued in connection with the Knyazev Declarations directly verifies the authenticity of his signatures, the capacity in which he signed, and the identity of any seal or stamp affixed thereto. The apostilled declarations attaching or referring to the duly authenticated original First Award and Second Award, definitively establishes that each Award is genuine and true copies. I personally requested my contact in Moscow to coordinate obtaining the apostille for the declarations of the Arbitrator, Petitioner, and Awards.

6. Respondent has previously asserted in its Opposition filed in this proceeding on March 3, 2026 that the First Award is a "fake," "a phony," and "a forgery." **Opposition (Dkt. No. 18), 1:3;** *see also* **April 21, 2026 Order (Dkt.**

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

**No. 54), at p. 2** (quoting same). Each of those accusations are false and unsupported and the apostilled Knyazev Declarations filed concurrently herewith, in which the arbitrator confirms under oath that the First Award and Second Award are each genuine; that the seal appearing on each Award is the Arbitrator's seal; and that the signature on each Award is the Arbitrator's signature. **Knyazev Decl. ¶¶ 1, 3-4 and Exs. 1-2.** The Arbitrator further confirmed under oath that the document Respondent has submitted to this Court as Exhibit 14 to the Declaration of Michael Zorkin (Dkt. No. 18-1, Ex. 14), dated August 25, 2021 was not issued by the Arbitrator and was not signed by the arbitrator and is not authentic. **Knyazev Decl. ¶¶ 11-12, 14-15.**

7. Attached hereto as **Exhibit 7** is a true and correct copy of the Assignment Agreement dated May 15, 2023, between Davilla Investing Limited and Aleksandr Aleksandrovich Grant, by which Davilla Investing Limited assigned all of its rights and interests in and to the First Award and the underlying Loan Agreement, Modification and Deferral Agreement, Corporate Guarantees, and prior Assignment of Rights, to Petitioner.

8. Attached hereto as **Exhibit 8** is a true and correct copy of the Loan Agreement dated April 20, 2010, between Agragorn Holdings Limited and Golden Spirits Limited, which is one of the underlying agreements at issue in the First Award.

9. Attached hereto as **Exhibit 9** is a true and correct copy of the Agreement on Modification and Deferral of Debt dated August 23, 2012, between Agragorn Holdings Limited and Golden Spirits Limited, which is one of the underlying agreements at issue in the First Award.

10. Attached hereto as **Exhibit 10** is a true and correct copy of the Corporate Guarantee dated August 23, 2012, between Agragorn Holdings Limited and AFB Trading One, Inc., by which AFB Trading One, Inc. guaranteed performance of Golden Spirits Limited's obligations.

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

11.     Attached hereto as **Exhibit 11** is a true and correct copy of the Corporate Guarantee dated August 23, 2012, between Agragorn Holdings Limited and Golden Sphinx Limited, by which Golden Sphinx Limited guaranteed performance of Golden Spirits Limited's obligations.

12.     Attached hereto as **Exhibit 12** is a true and correct copy of the Assignment Agreement dated September 7, 2020, between Agragorn Holdings Limited and Davilla Investing Limited, by which all rights under the Loan Agreement (as amended) and the Corporate Guarantees were transferred from Agragorn Holdings Limited to Davilla Investing Limited.

13.     Attached hereto as **Exhibit 13** is a true and correct copy of the Russian Federation Federal Arbitration Law No. 382-FZ of December 29, 2015 (the "Arbitration Law," FZ-382), upon information and belief. The First Award and Second Award each state that the arbitration was held in accordance with this Arbitration Law. **Knyazev Decl. Ex. 1, pg. 1; Ex. 2, pg. 1.**

14.     I am informed and believe that the documents attached as Exhibits 7 through 12 are the underlying instruments described in and relied upon by the arbitrator in the First Award and the Second Award.

15.     I am informed and believe that Golden Sphinx Limited is in insolvency proceedings in the Royal Court of Jersey (United Kingdom), Court Ref. No. 2021/149 Samedi Division, with related Chapter 15 recognition pending in the United States Bankruptcy Court for the Central District of California, In re Golden Sphinx Limited, Case No. 2:22-bk-14320-NB. To my knowledge, no stay of proceedings is in place that would affect Respondent AFB Trading One, Inc.

16.     I am informed and believe that Respondent AFB Trading One, Inc. is a California corporation. To my knowledge, AFB Trading One, Inc. is not in any bankruptcy or insolvency proceeding in any jurisdiction, and no stay of proceedings is in place that would affect this confirmation action against AFB Trading One, Inc.

6

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

17.     I am informed and believe that AFB Trading One, Inc., its principals, and/or its authorized agents have assets within the State of California subject to levy and execution upon entry of judgment confirming the Awards, including, without limitation bank accounts, documents of title, and personal or commercial property.

18.     Pursuant to the April 21, 2026 Order (Dkt. No. 54), certified English translations of all documents originally in Russian, including the First Award (**Ex. 1**), the Second Award (**Ex. 2**), the August 23, 2012 Agreement on Selection of Arbitrator and Applicable Rules (**Ex. 6**), the underlying loan and modification agreements (**Ex. 8-9**), the Corporate Guarantees (**Ex. 10-11**), and the September 7, 2020 Assignment of Rights (**Ex. 12**), are submitted concurrently herewith, accompanied by the certifying translator's declaration.

19.     As an additional note, and as a matter of completeness of the record as explained in ¶ 4 above, Petitioner has also caused to be lodged with this Court the original Arbitrator's declarations of March 6 and 10, 2026 excluding exhibits previously filed in support of the original Petition (Dkt. No. 1) and with the Reply (Dkt. No. 31), now bearing apostille certifications obtained from the Russian Federation in the original languages and with certified English translations.

20.     Pursuant to the First Award and the Second Award, Petitioner is owed by Respondent AFB Trading One, Inc. (jointly and severally with Golden Sphinx Limited) the sum of US $2,774,253.20 through August 15, 2025, comprising: (a) US $1,804,017.81 in debt recovery as of August 30, 2021, as set forth in the First Award (**Knyazev Decl. Ex. 1**, pg. 13); (b) US $962,853 in interest for the period from August 30, 2021 to August 15, 2025 at 6.5% per annum (**Knyazev Decl. Ex. 2**, pg. 9); and (c) the U.S. dollar equivalent of (Rubles) ₽300,000 in legal expenses awarded in the Second Award (**Knyazev Decl. Ex. 2**, pg. 9).

21.     The Second Award expressly continues post-award interest from August 15, 2025 "until paid." **Knyazev Decl. Ex. 2**, pg. 9.  Applying the 6.5% per

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

annum rate established by the Second Award to the US $1,804,017.81 debt recovery amount, post-award interest accrues at the rate of US $321.26 per day (US $1,804,017.81 × 0.065 ÷ 365 = US $321.26).

22. From August 16, 2025 through July 13, 2026 (the date of the hearing on the Amended Petition) is a period of 332 days. The post-award interest accrued through July 13, 2026 is therefore US $321.26 × 332 = US $106,659.46 (computed: US $1,804,017.81 × 0.065 × 332 ÷ 365 = US $106,659.46).

23. Adding the post-award interest accrued through July 13, 2026 to the August 15, 2025 total, the principal judgment amount due as of the July 13, 2026 hearing date is **US $2,880,912.66** (US $2,774,253.20 + US $106,659.46 = US $2,880,912.66), with continuing post-award interest accruing thereafter at US $321.26 per day until paid in full.

24. The First Award and the Second Award each entitle Petitioner to legal fees and expenses. **Knyazev Decl. Ex. 1, pg. 13; Ex. 2, pg. 9.** Specifically, the Second Award holds Golden Sphinx Limited jointly liable to reimburse Petitioner (Rubles) ₽300,000 in legal expenses. **Knyazev Decl. Ex. 2, pg. 9 (sub-3).** The Russian Federation Federal Arbitration Law No. 382-FZ also provides for the recovery of legal fees and expenses incurred in connection with the arbitration. **Kar Decl. Ex. 13.**

25. The August 23, 2012 Agreement on Selection of Arbitrator and Applicable Rules, which is the parties' governing arbitration agreement, was executed by AFB Trading One, Inc. (among others) and provides for the recovery of legal fees and costs incurred in the arbitration. **Knyazev Decl. ¶ 2 and Ex. 6.**

26. Petitioner has been required to incur substantial additional legal fees, costs, and expenses in this confirmation proceeding because Respondent AFB Trading One, Inc. has refused to honor the Awards and has actively obstructed confirmation through, inter alia, accusations that the First Award is a "fake," "phony," or "forgery" accusations that have been definitively refuted by the

8

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

apostilled Knyazev Declaration and the duly authenticated originals of the Awards. The fees, costs, and expenses incurred include but are not limited to attorney time spent preparing the original Petition, the Reply, the Amended Petition, supporting declarations and exhibits, and translations and apostille processing arising directly from Respondent's contested allegations, in addition to foreign country charges.

27. Petitioner therefore requests this Court to find that Petitioner is the prevailing party and entitled to recovery of all his reasonable attorneys' fees and costs incurred in this confirmation proceeding. Petitioner reserves the right to file a separate, fully briefed motion for attorneys' fees and costs, with supporting time records and documentary evidence, following entry of judgment confirming the Awards, in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

28. The concurrently filed Declaration of Aleksandr Aleksandrovich Grant refers to the May 15, 2023 Assignment Agreement at ¶ 6 as Exhibit 7 and at ¶ 16 as "Exhibit 3," and refers to the Russian Federation Federal Arbitration Law No. 382-FZ at ¶ 24 as "Exhibit 9." Those are typographical errors and I note that the operative copies are those attached to this Declaration as **Exhibit 7** not Ex. 3 (the May 15, 2023 Assignment Agreement) and **Exhibit 13** not Ex. 9 (Federal Arbitration Law No. 382-FZ).

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed this 26th day of May, 2026, at Sherman Oaks, California.

_____

Joseph Kar

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

# EXHIBIT 7

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

**MIKHAIL BOGOMOLNY**

**TRANSLATION, NOTARY AND APOSTILLE SERVICES**

W.  WWW.TRANSLATORPRO.ORG
E.  MICHAEL@TRANSLATORPRO.ORG
P.  1.818.284.1884

*CERTIFIED COURT INTERPRETER*

## ASSIGNMENT (CESSION) AGREEMENT

Moscow                                                                                          May 15, 2023

DAVILLA INVESTING LIMITED (hereinafter referred to as the Assignor), represented by its authorized attorney-in-fact, attorney Selezneva, Irina Borisovna,

AND

GRANT, ALEKSANDR ALEKSANDROVICH (hereinafter referred to as the Assignee),

hereby entered into this agreement as follows:

### SCOPE

Golden Spirits Limited, a limited liability company, incorporated and registered under the laws of the Island of Jersey, Channel Islands, with its legal address at 43 La Motte Street, St. Helier, Jersey JE4 8SD, Channel Islands (the "Borrower").

Agragorn Holdings Limited and the Borrower entered into a Loan Agreement on April 20, 2010 (the "Loan Agreement") and an Amendment and Forbearance Agreement on August 23, 2012 (the "Amendment and Forbearance Agreement"), which, together with all annexes and amendments thereto, including, without limitation, the right to claim payments for which the Borrower is liable to Agragorn Holdings Limited under guarantees provided by (a) AFB Trading One, Inc., a corporation established under the laws of the State of California, USA, with a registered address at 8501 Wilshire Boulevard, Suite 330, Beverly Hills, California, USA ("Guarantor 1"), and (b) Golden Sphinx Limited, a limited liability company incorporated and registered under the laws of the Island of Jersey, Channel Islands, with its registered address at 43 La Motte Street, St. Helier, Jersey JE4 8SD, Channel Islands ("Guarantor 2"), are hereinafter collectively referred to as the "Loan Agreement."

Guarantor 1 and Guarantor 2 provided Agragorn Holdings Limited with guarantees, jointly and severally, unconditionally and irrevocably guaranteeing Agragorn Holdings Limited and its successors the timely and proper performance, maintenance, observance, fulfillment, and payment of the Borrower's indebtedness as stipulated in the Loan Agreement and the Amendment and Forbearance Agreement, hereinafter referred to as the "Security Documents," and, together with the Loan Agreement, the "Loan Documents."

Pursuant to the Loan Agreement and its terms, the Borrower has an outstanding principal debt to Agragorn Holdings Limited in the amount of USD 1,022,000. In addition to the outstanding principal debt of USD 1,022,000 owed to Agragorn Holdings Limited, unpaid interest continues to accrue pursuant to the terms of the Amendment and Forbearance Agreement. Furthermore, the Borrower is obligated to reimburse the

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# MIKHAIL BOGOMOLNY

## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

Assignor for other costs, charges, and expenses in accordance with the provisions of the Loan Agreement and the Amendment and Forbearance Agreement (collectively, the "Debt").

Agragorn Holdings Limited has the right, under the terms of the Loan Documents, to assign and transfer to a third party all of its rights and obligations under the Loan Documents, including all rights and obligations of the Assignor related to the Debt and arising from the provisions of the Loan Documents and relating to any collateral, security interest, guarantees, encumbrances, or liens granted to the Assignor in connection with the Loan Documents, which, together with all such interests and rights, are hereinafter collectively referred to as the "Assignor's Rights and Obligations."

Agragorn Holdings Limited sold and assigned to Davilla Investing Limited (the "Assignor") all rights and obligations of Agragorn Holdings Limited, and the Assignor acquired and accepted from Agragorn Holdings Limited all such rights and obligations, and by virtue of this transaction, Agragorn Holdings Limited was released from any further rights and obligations in connection therewith.

In consideration of the mutual promises and conditions set forth herein, the Parties hereby agree as follows:

1. The Assignor hereby irrevocably and fully assigns and transfers, and the Assignee accepts, all of the Assignor's rights and obligations arising from the following agreements and documents:

1.1. The Loan Agreement dated April 20, 2010, entered into between Agragorn Holdings Limited and Golden Spirits Limited;

1.2. The Amendment and Forbearance Agreement dated August 23, 2012, entered into between Agragorn Holdings Limited and Golden Spirits Limited;

1.3. The Corporate Guarantee dated August 23, 2012, entered into between Agragorn Holdings Limited and AFB Trading One, Inc.;

1.4. The Corporate Guarantee dated August 23, 2012, entered into between Agragorn Holdings Limited and Golden Sphinx Limited;

1.5. The Assignment Agreement dated September 7, 2020, entered into between Agragorn Holdings Limited and Davilla Investing Limited.

2. The assigned rights include:
    2.1. The principal debt in the amount of USD 1,022,000;
    2.2. Accrued and accruing interest;
    2.3. Legal costs;
    2.4. Security rights, including all valid corporate guarantees and other security instruments;
    2.5. The right to pursue collection from all joint debtors and guarantors.

3. The transfer of rights and obligations is made in full compliance with the provisions of the Assignment Agreement dated September 7, 2020, under which Agragorn Holdings Limited unconditionally assigned the relevant rights to Davilla Investing Limited.

4. The assignment is made in full, without any limitations, with the Assignor being simultaneously released from any further rights and obligations in relation to the assigned claims.

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# M I K H A I L   B O G O M O L N Y
## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

5. Upon execution of this Agreement, the Assignee shall assume all rights, interests, and obligations formerly held by the Assignor, as the exclusive and lawful successor of the creditor.

6. The Assignor agrees to transfer to the Assignee all documents relating to the assigned rights, including but not limited to:
   6.1. Originals of the loan agreements, annexes, amendments, and security documents;
   6.2. Copies of account and payment documents;
   6.3. Arbitral awards;
   6.4. The legal file on the borrower and guarantors.

7. The Assignor represents and warrants that:
   7.1. It holds the exclusive right to the assigned claim;
   7.2. There are no other assignments, restrictions, or disputes concerning the assigned right;
   7.3. As of the date of assignment, the obligations of the borrower and guarantors remain outstanding;
   7.4. The corporate guarantees are valid and remain in force in relation to the Assignee;
   7.5. If necessary, the Assignor shall assist the Assignee in securing collection, including preparing additional documents, notices, and confirmations for authorities and counterparties.

8. On April 20, 2010, Agragorn Holdings Limited and Golden Spirits Limited entered into a Loan Agreement. Under the terms of this agreement, a third party provided the Borrower with a loan in the amount of USD 1,022,000 (One million twenty-two thousand U.S. dollars). Pursuant to Paragraph 4.1 of the Loan Agreement, Respondent 1 was required to repay the loan no later than two years from the date the loan was issued, and under Paragraph 4.2, to pay 1.1% annual interest on the loan amount.

On April 21, 2010, the third party transferred USD 1,022,000 (One million twenty-two thousand U.S. dollars) to Respondent 1 and paid a wire transfer fee of USD 268.36 (Two hundred sixty-eight U.S. dollars). Thus, Agragorn Holdings Limited fully fulfilled its obligations under the Loan Agreement.

Respondent 1 did not fully fulfil his obligations to repay the principal and the interest under the Loan Agreement.

On August 23, 2012, the third party and Respondent 1 entered into an Amendment and Forbearance Agreement. Under this agreement, the parties extended the deadline for Respondent 1's repayment obligation to January 1, 2020. Furthermore, the interest rate specified in Paragraph 4.2 of the Loan Agreement was increased under Paragraph 4 of the Amendment and Forbearance Agreement to 6.5% per annum, with monthly compounding interest beginning from the date of the amendment until full repayment.

The parties also agreed on the following guarantors: AFB Trading One, Inc., a company registered in the State of California, USA ("Guarantor 1"), and Golden Sphinx Limited, registered in Jersey, Channel Islands ("Guarantor 2").

On August 23, 2012, the third party and AFB Trading One, Inc. entered into a Corporate Guarantee under which Guarantor 1 is liable to the Plaintiff for the fulfillment of Respondent 1's obligations, including in the event of Respondent 1's failure to perform, and guarantees repayment of the debt within 10 days from the date of the demand.

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

MIKHAIL BOGOMOLNY

**TRANSLATION, NOTARY AND APOSTILLE SERVICES**

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

On August 23, 2012, the third party and Golden Sphinx Limited entered into a Corporate Guarantee under which Guarantor 2 is liable to the Plaintiff for the fulfillment of Respondent 1's obligations, including in the event of Respondent 1's failure to perform, and guarantees repayment of the debt within 10 days from the date of the demand.

On August 23, 2012, the third party, Respondent 1, Guarantor 1, and Guarantor 2 entered into an AGREEMENT ON THE SELECTION OF AN ARBITRATOR AND APPLICABLE RULES.

On September 7, 2020, the third party and Davilla Investing Limited entered into an assignment agreement under which all rights under the Loan Agreement dated April 20, 2010, as amended on August 23, 2012, entered into between the third party and Respondent 1, were transferred to Davilla Investing Limited, including the collateral in the form of corporate guarantees concluded between the third party, Respondent 1, Guarantor 1, and Guarantor 2.

On December 21, 2020, the Plaintiff sent a demand for payment of Respondent 1's debt to Respondent 2. On the same day, the Plaintiff sent identical demands to Guarantor 1 and Guarantor 2. To date, none of the Respondents have satisfied the debt obligations.

Thus, Respondent 1, Guarantor 1, and Guarantor 2 are jointly and severally liable for the total debt of
USD 1,804,017.81, including:
USD 1,022,000 – principal amount;
USD 1,874.53 – interest accrued for the period from April 21, 2010, to April 21, 2012;
USD 780,143.28 – interest accrued from April 21, 2012, to December 12, 2020.

9. Pursuant to Article 16 of the Federal Law of the Russian Federation "On Arbitral Tribunals in the Russian Federation" and the UNCITRAL Arbitration Rules (adopted by the United Nations Commission on International Trade Law in 1976 and recommended for use by the UN General Assembly on December 15, 1976, as amended), on August 25, 2021, an arbitral tribunal established by the parties for resolution of a specific dispute, consisting of a sole arbitrator agreed upon and selected by the parties — Dmitry Valeryevich Knyazev — reviewed the claim filed by Davilla Investing Limited (Plaintiff) against Golden Spirits Limited (Respondent 1), AFB Trading One, Inc. (Guarantor 1), Golden Sphinx Limited (Guarantor 2), and Agragorn Holdings Limited for recovery of the debt under the Loan Agreement, Amendment and Forbearance Agreement, and corporate guarantees, and issued a lawful award granting the claims of Davilla Investing Limited against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited for debt recovery under the Loan Agreement, Amendment and Forbearance Agreement, and corporate guarantees:

9.1. To recover jointly and severally from Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited in favor of Davilla Investing Limited the principal amount of USD 1,022,000 and interest in the amount of USD 782,017.80.

9.2. To recover jointly and severally from Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited in favor of Davilla Investing Limited legal costs in the amount of RUB 278,000.

This decision entered into legal force on the date of issuance and is subject to immediate enforcement. In accordance with Part 4 of Article 238 of the Russian Federation Commercial Procedure Code, the facts

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# MIKHAIL BOGOMOLNY
## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

established by the arbitral tribunal are not subject to re-evaluation or reconsideration on the merits.

As of the date of execution of this Assignment Agreement, the above-mentioned obligations to Davilla Investing Limited remain unfulfilled.

The loan and assignment agreements are not contracts entered into in the sphere of procurement for state or municipal needs, nor are they agreements concluded pursuant to Federal Law No. 223-FZ.

10. The Assignor shall transfer to the Assignee all documents necessary to confirm the assigned claims, namely:

10.1. The original loan agreements listed in paragraph 1 of this Agreement, along with all annexes, amendments, and other documents that form an integral part of said agreements;

10.2. The original pledge agreements associated with the aforementioned loan agreements or substitute documents;

10.3. Copies of borrower account (loan) statements under the loan agreements listed in Paragraph 1 of this Agreement;

10.4. Copies of payment documents evidencing the obligations;

10.5. The legal file of the Borrower (including registration and founding documents, as well as documents confirming the authority of the Borrower's representatives);

10.6. The arbitral award dated August 25, 2021, issued by the arbitral tribunal established by the parties to resolve the specific dispute, consisting of a sole arbitrator—Dmitry Valeryevich Knyazev—who, after reviewing the claim of Davilla Investing Limited (Plaintiff) against Golden Spirits Limited (Respondent 1), AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited, rendered a decision on debt recovery under the loan agreement, the amendment and forbearance agreement, and the corporate guarantees for the obligations specified therein;

10.7. The Assignor shall also disclose to the Assignee all other information relevant to the Assignee's exercise of creditor rights under the assigned claims.

The Assignor is liable for the accuracy of the documents transferred under this Agreement and warrants the existence and proper transfer (assignment) of all claims assigned to the Assignee.

11. The total amount of the claim assigned pursuant to Paragraph 1 of this Agreement is USD 1,804,017.81, including:
   USD 1,022,000 — principal amount;
   USD 1,874.53 — interest for the period from April 21, 2010, to April 21, 2012;
   USD 780,143.28 — interest for the period from April 21, 2012, to December 12, 2020;
   RUB 278,000 — court costs.

12. In the event the Debtor fails to fulfill its obligations to repay the loans and pay interest on time under the assigned claims, the Assignor agrees to provide the Assignee with necessary assistance in collecting the respective sums from the Debtor, including facilitating the undisputed recovery of the owed funds from the bank account of Golden Spirits Limited and ensuring that the funds are transferred to the Assignee's account.

13. This Agreement enters into force upon signature by both the Assignor and the Assignee and remains effective until the Borrower (Debtor) fully performs its obligations under the loan agreements

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# MIKHAIL BOGOMOLNY
## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E. MICHAEL@TRANSLATORPRO.ORG
P. 1.818.284.1884

*CERTIFIED COURT INTERPRETER*

Case 2:25-bk-13285-NB Doc 14 Filed 06/23/26 Entered 06/23/26 17:19:48 Desc
Main Document Page 241 of 415

specified in Paragraphs 1 and 3 of this Agreement, or until the debt is settled by the Assignor.

14. The Assignor undertakes to notify the debtors (Golden Spirits Limited, AFB Trading One, Inc., and Golden Sphinx Limited) of the assignment of rights within 7 business days from the date of this Agreement.

15. Upon execution of this Agreement, all prior agreements entered into by the Assignor within the scope of the assigned rights shall be deemed null and void, except for provisions expressly preserved for the benefit of the Assignee.

16. This Agreement is executed in three counterparts, each of which shall have equal legal force.

17. This Agreement shall become effective upon signature by both Parties.

18. All disputes, disagreements, and claims arising out of this Agreement shall be resolved in accordance with the UNCITRAL Arbitration Rules and the relevant agreement between the parties regarding the selection of an arbitrator.

19. This Agreement constitutes the binding and final agreement between the parties and supersedes any prior oral or written understandings concerning the subject matter of the assignment.

Addresses and Other Information About the Parties:

| **Assignor:** | **Assignee:** |
|---|---|
| Davilla Investing Limited | Grant, Aleksandr Aleksandrovich |
| c/o Attorney Selezneva, Irina Borisovna, attorney-in-fact under power of attorney, | Passport No. 4521 257214 issued by the Main office of the Internal Affairs in Moscow |
| Registration No. 50/2553, | TIN 505202547582 |
| Attorney Bar card No. 2750, dated December 23, 2002 | |
| *[Signature]* | *[Signature]* |

*Seal: Grant, Aleksandr Aleksandrovich, individual entrepreneur Grant. A.A., Primary State Registration Number for Individual Entrepreneur (OGRNIP): 322774600403895; TIN 505202547582 City of Moscow*

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

# MIKHAIL BOGOMOLNY

## TRANSLATION, NOTARY AND APOSTILLE SERVICES

W. WWW.TRANSLATORPRO.ORG
E.  MICHAEL@TRANSLATORPRO.ORG
P.  1.818.284.1884

*CERTIFIED COURT INTERPRETER*

# CERTIFICATE OF TRANSLATION

*Translation from Russian into English*

I, MIKHAIL BOGOMOLNY, A **CERTIFIED COURT INTERPRETER (ID: 313218),** DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; THE TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

**DOCUMENT DESCRIPTION**

*ASSIGNMENT (CESSION) AGREEMENT BETWEEN DAVILLA INVESTING LIMITED AND GRANT, ALEKSANDR ALEKSANDROVICH*



Member ID: 3826

X _____

Mikhail Bogomolny

Translator

**Interpreter information:**
**Address: 16001 Ventura Blvd., Ste. 120,**
**Encino, CA 91436**
**Ph. 818-284-1884**
**Email: michael@translatorpro.org**

I, MIKHAIL BOGOMOLNY, A CERTIFIED COURT INTERPRETER (ID: 313218), DO SOLEMNLY DECLARE UNDER THE PENALTY OF PERJURY, THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ENGLISH TRANSLATION OF THE ATTACHED DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE IS TRUE, ACCURATE AND COMPLETE. I FURTHER DECLARE THAT I AM FLUENT IN ENGLISH AND RUSSIAN AND COMPETENT TO TRANSLATE TO AND FROM SAID LANGUAGES; BY ATTESTING TO THE ACCURACY OF THE ABOVE TRANSLATION I NEITHER VERIFY NOR DISPUTE THE ORIGIN OR FACTUAL CONTENT[S] OF THE SOURCE DOCUMENT; AND THAT THIS TRANSLATION FULLY CONFORMS TO THE SOURCE DOCUMENT EXECUTED IN THE RUSSIAN LANGUAGE ATTACHED HERETO.

ДОГОВОР УСТУПКИ ТРЕБОВАНИЯ (ЦЕССИИ)

г. Москва                                                                  "15" мая  2023  г.

Давилла Инвестинг Лимитед (Davilla Investing Limited) в дальнейшем ЦЕДЕНТ, в лице уполномоченного представителя по доверенности, адвокат Селезнева Ирина Борисовна, с одной стороны, и гр. Грант Александр Александрович, именуемый в дальнейшем ЦЕССИОНАРИЙ, с другой стороны, заключили настоящий договор о нижеследующем:

П Р Е А М Б У Л А

Компания Голден Спиритс Лимитед (Golden Spirits Limited) является компанией с ограниченной ответственностью, учрежденной и зарегистрированной в соответствии с законодательством Острова Джерси, Нормандские острова, расположенной по адресу: 43 Ла Мот Стрит, Сент-Хелиер, Остров Джерси JE4 8SD, Нормандские острова («Заемщик»);

Компания Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Заемщик заключили Договор займа 20 апреля 2010 г. («Договор займа») и Соглашение об изменении и отказе от займа 23 августа 2012 г. («Соглашение об изменении и отсрочке долга»), которые вместе со всеми их Приложениями и Изменениями, включая, помимо прочего, право требовать выплаты сумм, в отношении которых Заемщик несет ответственность перед Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) по Гарантиям (а) компании АФБ Трейдинг Уан, Инк. (AFB Trading One, Inc.), зарегистрированной в штате Калифорния, США, имеющей юридический адрес: 8501 Уилшир Бульвар, Офис 330, Беверли Хиллс, Калифорния, США («Гарант 1»), и (б) Голден Сфинкс Лимитед (Golden Sphinx Limited), компании с ограниченной ответственностью, организованной и зарегистрированной в соответствии с законодательством Острова Джерси, Нормандские острова, расположенной по адресу: 43 Ла Мот Стрит, Сент-Хелиер, Остров Джерси JE4 8SD, Нормандские острова («Гарант 2»), далее совместно именуемые «Договор займа»);

Гарант 1 и Гарант 2 предоставили Компании Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) Гарантии, совместно и по отдельности, безоговорочно и безотзывно гарантируя Компании Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и правопреемникам Компании Аграгорн Холдингс Лимитед (Agragorn Holdings Limited), пунктуальное и добросовестное исполнение, сохранение, соблюдение, выполнение и оплату Задолженности Заемщиком, как предусмотрено в Договоре займа и Соглашении об изменении и отсрочке долга, далее именуемые «Обеспечительные документы», и вместе с Договором займа - «Документы по займу»);

В соответствии с Договором займа и в соответствии с его условиями, Заемщик имеет непогашенный основной долг перед Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) в размере 1 022 000 долларов США. В дополнение к непогашенному основному долгу перед Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) в размере 1 022 000 долларов США, в соответствии с условиями Соглашения об изменении и отсрочке долга продолжают начисляться неуплаченные проценты. Кроме того, Заемщик обязан оплатить Цеденту другие траты, издержки и расходы в соответствии с условиями, предусмотренными в Договоре займа и Соглашении об изменении и отсрочке долга (далее «Задолженность»);

Компания Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) имеет право по условиям Документов по займу передать и уступить третьей стороне все свои права и обязательства в соответствии с Документами по займу, включая все права и обязательства Цедента в связи с Задолженностью и возникающие в соответствии с положениями Документов по займу и в отношении любого обеспечения, обеспечительного интереса, гарантий, обременения или залога, предоставленных Цеденту в связи с Документами по займу, которые вместе со всеми такими интересами и правами совместно именуются в дальнейшем «Права и обязанности Цедента»;

Компания Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) продала и уступила Компании Давилла Инвестинг Лимитед (Davilla Investing Limited) («Цедент») все права и обязательства Компании Аграгорн Холдингс Лимитед (Agragorn Holdings Limited), а Цедент приобрёл и принял от Компании Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) все права и обязательства Компании Аграгорн Холдингс Лимитед (Agragorn Holdings Limited), и в силу этого Компания Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) была освобождена от любых дальнейших прав и обязательств по ним;

Принимая во внимание взаимные обещания и условия, содержащиеся в настоящем документе, Стороны настоящим договорились о следующем:

1. Цедент настоящим безотзывно и в полном объёме передаёт (уступает), а Цессионарий принимает все права и обязательства Цедента, вытекающие из следующих договоров и документов:

1.1. Договора займа от 20 апреля 2010г. заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Голден Спиритс Лимитед (Golden Spirits Limited),

1.2. Соглашения об изменении и отсрочке долга от 23 августа 2012г. заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Голден Спиритс Лимитед (Golden Spirits Limited),

1.3. Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и ЭйЭфБи Трейдинг Уан, Инк. (AFB Trading One. Inc.),

1.4. Корпоративной гарантии от 23 августа 2012г., заключенной между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Голден Сфинкс Лимитед (Golden Sphinx Limited),

1.5. Соглашения по передаче прав по Договору займа от 07 сентября 2020г., заключенного между Компанией Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компанией Давилла Инвестинг Лимитед (Davilla Investing Limited).

2. Передаваемые права включают:

2.1. сумму основного долга в размере 1 022 000 долларов США;

2.2. проценты, начисленные и подлежащие начислению;

2.3. судебные расходы;

2.4. право на обеспечение, включая все действующие корпоративные гарантии и иные обеспечительные инструменты;

2.5. право на взыскание в отношении всех солидарных должников и гарантов.

3. Передача прав и обязанностей осуществляется в полном соответствии с положениями Соглашения о передаче прав от 07.09.2020 г., которым ранее Agragorn Holdings Limited безусловно уступила соответствующие права Davilla Investing Limited.

4. Уступка осуществляется в полном объёме, без каких-либо ограничений, с одновременным освобождением Цедента от любых дальнейших прав и обязательств по передаваемым требованиям.

5. С момента подписания настоящего договора Цессионарий вступает во все права, интересы и обязательства, ранее принадлежавшие Цеденту, в качестве исключительного и полноправного правопреемника кредитора.

6. Цедент обязуется передать Цессионарию все относящиеся к уступаемому праву документы, включая, но не ограничиваясь:

6.1. подлинники договоров займа, приложений, соглашений и обеспечительных документов;

6.2. копии лицевых и платёжных документов;

6.3. решения третейского суда;

6.4. юридическое дело заёмщика и поручителей.

7. Цедент заявляет и гарантирует, что:

7.1. обладает исключительным правом на уступаемое требование

7.2. не существует иных уступок, ограничений или споров в отношении уступаемого права;

7.3. на момент уступки обязательства заёмщика и гарантов не исполнены;

7.4. корпоративные гарантии действуют и сохраняют свою силу в отношении Цессионария.

7.5. В случае необходимости Цедент окажет Цессионарию содействие в обеспечении взыскания, включая подготовку дополнительных документов, уведомлений и подтверждений для органов и контрагентов.

8. 20 апреля 2010г. Компания Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) и Компания Голден Спиритс Лимитед (Golden Spirits Limited) заключили договор займа. В соответствии с условиями данного договора Третье лицо предоставило заемщику в долг денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США. В соответствии с п.4.1. договора займа Ответчик 1 должен был вернуть заем не позднее двух лет с момента предоставления займа и в соответствии с п. 4.2. договора займа уплатить 1,1% годовых с суммы займа. 21.04.2010г. Третье лицо перевело Ответчику 1 денежные средства в размере 1022000 (Один миллион двадцать две тысячи) долларов США и уплатил комиссию за перевод в размере 268,36 (Двести шестьдесят восемь) долларов США. Таким образом, Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) в полном объеме выполнил обязательства по договору займа. Обязанности по возврату суммы займа и процентов по займу Ответчиком 1 выполнены не были в полном объеме. 23 августа 2012г. Третье лицо и Ответчик 1 заключили соглашение об изменении и отсрочке долга. В соответствии с данным соглашением стороны продлили срок исполнения обязательства по возврату долга Ответчиком 1 до «01» января 2020г. При этом процентная ставка, указанная в пункте 4.2 Договора займа, в соответствии с п.4 соглашения об изменении и отсрочке долга повышается до 6,5% годовых (в год), с

ежемесячным начислением сложных процентов, начиная с даты изменения, до полной выплаты. А также стороны согласовали следующих гарантов: ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One, Inc.), зарегистрированной в Штате Калифорния, США («Гарант 1»), и Голден Сфинкс Лимитед (Golden Sphinx Limited), зарегистрированной на острове Джерси, Нормандские Острова («Гарант 2»). 23 августа 2012г. Третье лицо и ЭйЭфБи Трейдинг Уан, Инк. (AFB One. Inc.) заключили корпоративную гарантию, в соответствии с которой Гарант 1 отвечает перед Истцом за исполнение обязательств Ответчиком 1 в том числе в случае неисполнения Ответчиком 1 своих обязательств и гарантирует погашение задолженности в течение 10 дней с момента предъявления требования. 23 августа 2012г. Третье лицо и Голден Сфинкс Лимитед (Golden Sphinx Limited) заключили корпоративную гарантию в соответствии с которой Гарант 2 отвечает перед Истцом за исполнение обязательств Ответчиком 1 в том числе в случае неисполнения Ответчиком 1 своих обязательств и гарантирует погашение задолженности в течение 10 дней с момента предъявления требования. 23 августа 2012г. Третье лицо, Ответчик 1, Гарант 1 и Гарант 2 заключили ДОГОВОР О ВЫБОРЕ (ЛИЧНОСТИ) АРБИТРА И ПРИМЕНЯМЫХ ПРАВИЛАХ. 07 сентября 2020г. Третье лицо и компания Давилла Инвестинг Лимитед (Davilla Investing Limited), заключили соглашение по передаче прав по договору займа, в соответствии с которым, все права по договору займа от 20 апреля 2010г. с изменениями от 23 августа 2012г., заключенному между Третьим лицом и Ответчиком 1, перешли к Давилла Инвестинг Лимитед, включая обеспечение в виде корпоративных гарантий, заключенных Третьим лицом с Ответчик 1, Гарант 1 и Гарант 2. 21 декабря 2020г. Истец направил Ответчику 2 требование об оплате задолженности Ответчика 1. 21го декабря 2020г. Истец направил Гарант 1 и Гарант 2 требование об оплате задолженности Ответчика 1. До настоящего времени ни один из ответчиков не произвел погашение задолженности по существующим обязательствам. Таким образом, у Ответчик 1, Гарант 1 и Гарант 2 есть солидарная задолженность на общую сумму 1804017,81 долл. США из которых: 1022000 долларов США – сумма основного долга. 1874,53 долл. США - сумма процентов за период с 21.04.2010г. по 21.04.2012г. и 780143,28 долл. США за период с 21.04.2012г. по 12.12.2020г.

9. В соответствии с Федеральным Законом Российской Федерации «О Третейских судах в Российской Федерации» ст.16, в соответствии с Арбитражным регламентом ЮНСИТРАЛ (регламент, принятый Комиссией ООН по праву международной торговли в 1976 г. и рекомендованный к использованию Генеральной Ассамблеей ООН 15 декабря 1976 г. с изменениями), 25 августа 2021г. третейский суд образованный сторонами для разрешения конкретного спора в составе единоличного третейского судьи, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича, рассмотрев исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) (истец) к Голден Спиритс Лимитед (Golden Spirits Limited) (Ответчик 1), ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.) (Гарант 1), Голден Сфинкс Лимитед (Golden Sphinx Limited) (Гарант 1), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям в отношении поименованных обязательств принял законное Решение удовлетворить исковые требования по иску Давилла Инвестинг Лимитед (Davilla Investing Limited) к Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк (AFB One. Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited), Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям:

9.1. Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк.(AFB One, Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) сумму основного долга в размере 1022000 (Один миллион двадцать две тысячи) долларов США, проценты за пользование денежными средствами в размере 782017 (Семьсот восемьдесят две тысячи семнадцать) долларов США 80 центов.

9.2. Солидарно взыскать с компаний Голден Спиритс Лимитед (Golden Spirits Limited), ЭйЭфБи Трейдинг Уан, Инк. (AFB One, Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) в пользу компании Давилла Инвестинг Лимитед (Davilla Investing Limited) судебные расходы в размере 278000 (Двести семьдесят восемь тысяч) рублей.

Указанное Решение вступило в законную силу с даты принятия, подлежит немедленному исполнению. В соответствии с ч. 4 ст. 238 АПК РФ, обстоятельства, установленные третейским судом, не подлежат переоценке либо пересмотру, по существу.

На момент подписания настоящего Соглашения о передаче прав требования указанные обязательства перед Давилла Инвестинг Лимитед (Davilla Investing Limited) не исполнены.

Договоры займа, цессии, не являются контрактом, заключенным в сфере закупок для государственных и муниципальных нужд, а также не является договором, заключенным в порядке, предусмотренном Федеральным законом N 223-ФЗ.

10. Цедент обязан передать Цессионарию все необходимые документы, удостоверяющие права требования, а именно:

10.1. подлинные кредитные договора, перечисленные в п. 1 настоящего договора, со всеми приложениями, дополнительными соглашениями и другими документами, являющимися неотъемлемой частью указанных договоров;

10.2. подлинные договора залога к указанным договорам или документы, их заменяющие;

10.3. копии лицевых (ссудных) счетов по кредитным договорам, перечисленным в п. 1 настоящего договора;

10.4. копии платежных документов, подтверждающих обязательства

10.5. юридическое дело Заемщика (регистрационные и учредительные документы, документы подтверждающие полномочия представителей Заемщика);

10.6. Решение от 25 августа 2021г. третейского суда, образованного сторонами для разрешения конкретного спора в составе единоличного третейского судьи, в лице единого арбитра (судьи), выбранного и согласованного сторонами - Князева Дмитрия Валерьевича, который, рассмотрев исковое заявление Давилла Инвестинг Лимитед (Davilla Investing Limited) (истец) к Голден Спиритс Лимитед (Golden Spirits Limited) (Ответчик 1), ЭйЭфБи Трейдинг Уан, Инк (AFB Trading One.Inc.), Голден Сфинкс Лимитед (Golden Sphinx Limited) и Аграгорн Холдингс Лимитед (Agragorn Holdings Limited) о взыскании задолженности по договору займа, соглашении об изменении и отсрочке долга, корпоративным гарантиям в отношении поименованных обязательств.

10.7. Цедент также обязан сообщить Цессионарию все иные сведения, имеющие значение для осуществления Цессионарием своих прав кредитора по указанным договорам требования.

Цедент несет ответственность за достоверность передаваемых в соответствии с настоящим договором документов и гарантирует наличие и передачу (уступку прав) всех уступленных Цессионарию требований.

10.8.

11. Сумма передаваемого в соответствии с п. 1 настоящего договора требования составляет на общую сумму 1804017,81 долл. США из которых: 1022000 долларов США – сумма основного долга. 1874,53 долл. США - сумма процентов за период с 21.04.2010г. по 21.04.2012г. и 780143,28 долл. США за период с 21.04.2012г. по 12.12.2020г., судебные расходы в размере 278000 (Двести семьдесят восемь тысяч) рублей.

12. В случае неисполнения Должником своих обязательств по погашению в срок кредитов и уплате процентов в соответствии с переданным правом требования, Цедент обязуется оказать Цессионарию необходимое содействие во взыскании с Должника соответствующих сумм, в том числе – обеспечить бесспорное взыскание соответствующих денежных средств с расчетного счета компаний Голден Спиритс Лимитед (Golden Spirits Limited), и перечисления этих средств на счет Цессионария.

13. Настоящий договор вступает в силу со дня подписания Цедентом и Цессионарием и действует до полного исполнения Заемщиком (Должником) своих обязательств по кредитным договорам, указанным в п. 1 и п. 3 данного договора, либо погашения задолженности Цедентом.

14. Цедент обязуется уведомить должников (Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited) о передаче прав в течение 7 рабочих дней с даты подписания настоящего договора

15. После подписания настоящего договора все соглашения, ранее заключённые Цедентом в пределах передаваемых прав, утрачивают силу, за исключением положений, прямо сохраняемых в интересах Цессионария.

16. Настоящий договор составлен в **трёх экземплярах**, имеющих равную юридическую силу.

17. Настоящий договор вступает в силу с момента его подписания Сторонами.

18. Все споры, разногласия и требования, возникающие из настоящего договора, подлежат разрешению в порядке, предусмотренном Арбитражным регламентом ЮНСИТРАЛ и соответствующим соглашением сторон о выборе арбитра.

19. Настоящий договор является обязательным и окончательным соглашением сторон, заменяет собой любые иные устные или письменные договорённости по предмету уступки.

Адреса и иные данные о сторонах:

ЦЕДЕНТ:
Давилла Инвестинг Лимитед (Davilla Investing Limited)
в лице уполномоченного представителя
по доверенности,
адвокат Селезнева Ирина Борисовна
регистрационный номер 50/2553,
удостоверение адвоката №2750 от 23декабря 2002г.

_____

ЦЕССИОНАРИЙ:
Грант Александр Александрович
Паспорт 4521 257214 ГУ МВД по г. Москве
ИНН 505202547582

# EXHIBIT 8

KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM

*Loan Agreement*

April 20th, 2010

Company **Agragorn Holdings Limited**, Trident Chambers, Wickhams Cay, P.O. Box 146, Road Town, Tortola, British Virgin Islands, hereinafter referred to as the "Creditor"
on the one part and
Company **Golden Spirits LTD.**, 43 La Motte Street, St. Helier, Isle of Jersey JE4 8SD, Channel Island, hereinafter referred to as the "Borrower"
on the other part,
together referred to as the "Parties" have entered into this Agreement as "Loan Agreement" as follows:

## 1. Definitions

Unless otherwise defined herein, terms that are used in this Agreement shall have the meaning set forth therein.

## 2. Subject of the Agreement.

The Creditor hereby undertakes an obligation to provide the financing of the Borrower with the Loan of total amount **of USD 1,022,000.00 (one million and twenty-two thousand USD only)**, hereinafter referred to as "the Loan", for the financing period not longer than three years from the date of submitting the Loan to the Borrower.

## 3. Obligations of the Creditors

3.1. The Creditor is obliged to transfer the sum of the Loan defined in item 2 of the present Agreement within 3 (three) business days from the date of signing of the present agreement without any other conditions save specified hereunder.

The Creditor is obliged not to claim the return of the Loan prior to the final date of the financing period.

## 4. Obligations of the Borrower

The Borrower undertakes an obligation to accept the Loan defined in item 2 of the present Agreement and

4.1. return the Loan to the Creditor not later than **two years from the date of submitting the Loan to the Borrower;**

4.2. to pay **1,1 % interest p.a.** of the amount of the loan provided to the Borrower at the date of the repayment of the Principal amount of the Loan;

4.3. to bear all the bank charges in connection with the use and return back of the Loan;

1

4.4. Borrower has the right to return the sum of the loan provided earlier than the date specified in the Article 4.1. of the present agreement.

## 5. Liability

If the Borrower fails to return the Principal amount of the Loan and interest in due time as per item 4.1. of the present Agreement, the Borrower shall be liable to the Creditors for direct actual damage caused by such delay, and pays the Creditor the penalty equal to LIBOR annual interest rate for the payment date of the delayed sum calculated as: {time of delay (number of days)/360 x interest rate x delayed sum} within 5 banking days from the Creditor's invoice date. The LIBOR rate is determined for the payment date by the REUTER or Wall Street Journal or Financial Times publication. If there is no publication for the payment date, the previous publication is to apply.

## 6. Force Majeure

Neither Creditor nor Borrower is liable for damages or otherwise for any failure or delay in performance of any obligations hereunder where such failure or delay is caused by force majeure, being any event, occurrence or circumstance reasonably beyond the control of that party, including without prejudice to the generality of the foregoing, failure or delay caused by or resulting from acts of God, strikes, fires, floods, wars (whether declared or undeclared), riots, delays of carriers due to breakdown or adverse weather, perils of the sea, embargoes, accidents, restrictions imposed by any governmental authority (including allocations, priorities, requisitions, quotas and price controls). The party affected by force majeure shall immediately notify the other party in writing about the commencement, expected duration and cessation of such force majeure. The time for performing parties' respective obligations hereunder shall be extended for a period in which the performance of any such obligation shall be prevented by reason of any of the foregoing causes.

## 7. Governing Law and Jurisdiction

This Agreement shall be governed by and construed in accordance with the laws of England.

The parties shall solve all disputes and differences which may arise out of this Agreement through amicable settlement. If it is impossible to settle the dispute amicably, the parties shall bring the dispute for settlement to the High Courts of England.

## 8. Special Conditions

8.1. After signing the present Agreement all previous negotiations and correspondence between the Parties in this connection will be considered as null and void.

8.2. All addenda, supplements and alterations to the present Agreement should be considered as the integral part of the present Agreement and are valid only if they are made in writing and signed by both Parties and their authorised representatives.

8.3. The Parties have agreed this Agreement and all the consequent correspondence to be strictly confidential.

8.4. Neither of the Parties is entitled to break the present Agreement unilaterally.

2

## 9. Other Conditions

9.1. This Agreement is effective from the date of the Loan transfer to the Borrowers account and remains valid till the full execution of the Parties' respective obligations, if the other is not stipulated in the present Agreement.

9.2. Neither of the Parties can transfer its rights and/or obligations under the present Agreement to a third Party without written consent of the other Party.

9.3. This Agreement is executed in English language in two copies, each having equal legal force.

## 10. Legal Addresses of the Parties

10.1. The Creditor:

**Company Agragorn Holdings Limited**, *Trident Chambers, Wickhams Cay, P.O. Box 146, Road Town, Tortola, British Virgin Islands*

Bank of Cyprus, International Business Unit 121, Georgiou Griva Digheni Ave,
P.O. Box 50215 CY-3699, Limassol, Cyprus
SWIFT: BCYPCY2N030
Beneficiary: Acc. No. 0385-40-06-065451
Agragorn Holdings Limited

10.2. The Borrower:

**Company Golden Spirits LTD.**, *43 La Motte Street, St. Helier, Isle of Jersey JE4 8SD, Channel Island*

UBS AG
Paradeplatz Zurich 8070, Switzerland
SWIFT UBSWCHZH80V
Acc. 020600P028421100000
IBAN: CH15 0020 6206 P028 4211 0

**SIGNATURES:**

THE CREDITOR:

AGRAGORN HOLDINGS LIMITED

THE BORROWER:

GOLDEN SPIRITS LTD
By: Garry Itkin, Director

3

# EXHIBIT 9

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

LOAN MODIFICATION AND FORBEARANCE AGREEMENT

This Loan Modification and Forbearance Agreement (this "Agreement") is entered into and becomes effective as of August 23 2012 ("Modification Date"), is made by and among Agragorn Holdings Limited, a company incorporated in British Virgin Islands, whose registered office is at Trident Chambers, Wickhams Cay, Road Town, Tortola, British Virgin Islands ("Creditor"), and Golden Spirits Limited, a limited liability company organized and registered under the laws of the Isle of Jersey, Channel Island, domiciled at 43 La Motte Street, St. Helier, Isle of Jersey JE4 8SD, Channel Island, ("Borrower") and is based on the following recitals of fact, which are material, incorporated herein, and made a part hereof.

1. RECITALS:

a. The Borrower is indebted to the Creditor under a Loan Agreement dated April 20 2010 (the "Loan Agreement"). As of the Modification Date, the outstanding principal balance of the Loan Agreement is $1,022,000 (the "Balance"). Unpaid interest continues to accrue according to the terms of the Loan Agreement. Additionally, the Borrower is obligated for other fees, costs, and expenses in accordance with, and as may be provided for in the Loan Agreement. Hereinafter, all indebtedness owing by Borrower to Creditor shall be referred to as the "Indebtedness".

b. As of the date of this Agreement an event of default exists under Loan Agreement due to Borrower's failure to honor its obligations under Section 4 and Section 5 of the Loan Agreement (the "Existing Default").

c. The Borrower has requested that Creditor temporarily forbear from exercising its rights and remedies under the Loan Agreement, law, and equity ("Default Rights") until January 1, 2020 (the "Forbearance Period"), notwithstanding Borrower's Existing Default under the Loan Agreement.

d. Creditor has advised Borrower that due to Borrower's Existing Default under the Loan Agreement, it is unwilling to forbear from exercising its Default Rights for the requested Forbearance Period unless, among other conditions contained in this Agreement, Borrower provide guarantees/guarantors to this Agreement who shall provide Creditor with duly and validly executed absolute, unconditional, and continuing guarantees for payment of the sums for which Borrower ever becomes liable to the Creditor. Borrower has identified, and Creditor has accepted, the following guarantors (collectively, "Guarantors"):

    a. AFB Trading One, Inc., a company incorporated in the State of California, USA, whose registered office are at 8501 Wilshire Blvd., Suite 330, Beverly Hills, California, USA ("Guarantor 1"), and

    b. Golden Sphinx Limited, a limited liability company organized and registered under the laws of the Isle of Jersey, Channel Island, domiciled at 43 La Motte Street, St. Helier, Isle of Jersey JE4 8SD, Channel Island (the "Guarantor 2").

Page 1 of 8
Loan Modification and Forbearance Agreement

2. FORBEARANCE. Subject to the terms and provisions of this Loan Modification and Forbearance Agreement, Creditor hereby agrees to forbear from exercising its Default Rights during the Forbearance Period, notwithstanding Borrower's Existing Default under the Loan Agreement. By signing below, Borrower acknowledges that it is currently in default, and as a result of the Existing Default Creditor is otherwise entitled to exercise its Default Rights. Creditor's Agreement to forbear from enforcing its Default Rights under the Loan Agreement during the Forbearance Period: (a) in no way shall be deemed an Agreement by Creditor to waive Borrower's compliance with all other terms of the Loan Agreement, as modified by this Loan Modification and Forbearance Agreement and (b) shall not limit or impair Creditor's right to demand strict performance of all other terms and covenants as of any date. Nothing in this Loan Modification and Forbearance Agreement in any way shall constitute Creditor's waiver of the Existing Defaults. Borrower further agrees that the accrual of any defenses based on the passage of time (e.g., estoppel, laches or any statute of limitations) shall be tolled and shall not accrue during the Forbearance Period, and that Borrower shall not assert any such defense in response to any action by Creditor to enforce its Default Rights after the Forbearance Period ends.

3. GUARANTEES. In consideration of Creditor's agreement to forbear from exercising its Default Rights during the Forbearance Period, the Guarantors hereby make themselves parties to this Agreement and provide Creditor with duly and validly executed absolute, unconditional, and continuing guarantees for payment of the sums for which Borrower ever becomes liable to the Creditor, which are attached herewith and made part of this Loan Modification and Forbearance Agreement (the "Guarantees").

Guarantors shall be jointly and severally unconditionally and irrevocably guaranteeing the Indebtedness to Creditor and Creditor's successors and assigns, as well as the punctual and faithful performance, keeping, observance, fulfillment and payment of the Indebtedness by Golden Spirits Limited as provided for in Loan Agreement and this Loan Modification and Forbearance Agreement.

Both Guarantors hereby waive presentment for payment, demand for payment, notice of nonpayment or dishonor, protest and notice of protest, diligence in collection, and any and all formalities that may be legally required to charge them with liability; and both Guarantors further agree that their liability as Guarantors shall in no way be impaired or affected by any renewals, waivers, or extensions that may be made from time to time, with or without the knowledge and consent of the Guarantors, of any default or the time of payment or performance required under said Loan, or by any forbearance or delay in enforcing any obligation thereof, or by assignment of said Loan, or by any modifications of the terms or provisions of the Loan. Both Guarantors further covenant and agree to pay all expenses and fees, including attorney fees that may be incurred by the Creditor or its successors or assigns enforcing any of the terms or provisions of this Guarantee.

4. DESCRIPTION OF CHANGE IN TERMS—INTEREST, ASSIGNABILITY.

In consideration of Creditor's agreement to forbear from exercising its Default Rights during the Forbearance Period, it is expressly agreed that the interest rate stated in

Page 2 of 8
Loan Modification and Forbearance Agreement

Paragraph 4.2 of the Loan Agreement is hereby increased to 6.5% p.a. (*per annum*), compounding monthly, commencing on the Modification Date until paid in full.

Additionally, Creditor may assign its rights under this the Loan Agreement and this Agreement for any reason whatsoever, in its sole discretion, including for the purpose of collections or any other enforcement of the Default Rights. This Agreement does not modify Borrower's ability to assign its obligations under the Loan Agreement, and Borrower may not assign its obligations under the Loan Agreement or this Agreement without Creditor's express, written consent thereto.

5. CONSISTENT CHANGES. The Loan Agreement is hereby amended wherever necessary to reflect the changes described above.

6. REAFFIRMATION. The Borrower hereby confirms that Loan Agreement executed by it, shall continue to be in full force and effect and is hereby in all respects ratified and reaffirmed as if fully restated as of the date hereof by this reaffirmation. The reaffirmed Loan Agreement, as confirmed, ratified and reaffirmed by this reaffirmation, secures Borrower's balance due to Creditor under the Loan Agreement. The Borrower hereby agrees and acknowledges that restatement herein of the original Loan Agreement will not result in the termination of the Loan Agreement and balance due thereunder.

7. NO DEFENSES OR OFFSET OF BORROWER/WAIVER AND RELEASE OF CLAIMS. Borrower agrees that, as of the date hereof, it has no defenses against the obligations to pay any amounts of the Indebtedness. The Borrower acknowledges and warrants that Creditor has acted in good faith and has conducted in a commercially reasonable manner its relationships with Borrower in connection with this Agreement and in connection with the Loan Agreement and the Indebtedness, the Borrower hereby waives and releases any claims to the contrary.

To further induce Creditor to enter into this Loan Modification and Forbearance Agreement, the Borrower and Guarantors represent and warrant to Creditor that as of the Modification Date there are no claims or offsets against, or defenses or counterclaims to its respective obligations under the Loan Agreement, and Borrower waives any and all such claims, offsets, defenses, or counterclaims whether known or unknown, arising prior to the Modification Date. Additionally, Borrower and Guarantors, on behalf of themselves and their shareholders, owners of record, and beneficial owners (each of the foregoing being a "Releasing Party"), hereby releases and agrees to hold Creditor, and its legal representatives, successors, affiliates, parents, subsidiaries, predecessors, assigns, shareholders, partners, trustees, beneficiaries, administrators, heirs, agents, attorneys, and employees, and their respective successors, assigns, heirs, executors, and administrators harmless from any and all claims, actions, suits, causes of action, accounts, judgments, agreements, promises, executions, debts, damages, demands, rights, obligations, liabilities, and controversies now in existence concerning or in connection with the Loan Agreement, this Loan Modification and Forbearance Agreement, or any other loan related documents, including but not limited to Guarantees pursuant paragraph 3 of this Agreement (collectively, the "Released Matters") of every nature and description, at law or in equity, whether known or unknown, foreseen or unforeseen, and regardless of

Page 3 of 8
Loan Modification and Forbearance Agreement

whether Borrower, or any other person hereafter discovers any fact which may give rise to any of the Claims. Each Releasing Party acknowledges that the Agreements in this section are intended to be in full satisfaction of all or any alleged injuries or damages arising in connection with the Released Matters.

California Civil Code Section 1542 Waiver. Each Releasing Party expressly waives the rights provided under California Civil Code Section 1542, which states that:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Each Releasing Party understands the significance and consequences of a California Civil Code Section 1542 waiver, and hereby assumes full responsibility for any damages or losses caused by this waiver.

Each Releasing Party acknowledges that:

    a. It has not relied, in executing the release set forth in this section, upon any representations, warranties, or conditions by Creditor or any other entity except as are specifically set forth in this Loan Modification and Forbearance Agreement.

    b. Nothing contained herein shall be construed at any time as an admission by Creditor of any liability to Borrower, Guarantors, or any other entity.

    c. Each Releasing Party warrants to Creditor that it has not purported to transfer, assign, or otherwise convey any right, title or interest of such Releasing Party in any Released Matter to any other entity, and that the foregoing constitutes a full and complete release of all Released Matters.

8. CONTINUING VALIDITY. Borrower understands and agrees that in modifying the existing Indebtedness, except as modified pursuant to this Loan Modification and Forbearance Agreement, the terms of the Loan Agreement remain unchanged and in full force and effect. Creditor's Agreement to modifications to the existing Indebtedness pursuant to this Loan Modification and Forbearance Agreement in no way shall obligate Creditor to make any future modifications to the Indebtedness. Nothing in this Loan Modification and Forbearance Agreement shall constitute a satisfaction of the Indebtedness. No maker, endorser, or guarantor will be released by virtue of this Loan Modification and Forbearance Agreement. The terms of this Paragraph apply not only to this Loan Modification and Forbearance Agreement, but also to any subsequent loan modification Agreements.

9. INTEGRATION. This Loan Modification and Forbearance Agreement, together with the Loan Agreement, constitutes the entire Agreement and understanding among the parties relating to the subject matter hereof, and supersedes all prior and contemporaneous proposals, negotiations, Agreements, and understandings relating to the subject matter.

Page 4 of 8
Loan Modification and Forbearance Agreement

In entering into this Loan Modification and Forbearance Agreement, Borrower acknowledges that it is relying on no statement, representation, warranty, covenant, or Agreement of any kind made by the Creditor or any employee or agent of Creditor, except for the Agreements of Creditor set forth herein. No modification, rescission, waiver, release, or amendment of any provision of this Loan Modification and Forbearance Agreement shall be made, except by a written Agreement signed by Creditor and Borrower.

10. SEVERABILITY. If any court of competent jurisdiction determines any provision of this Loan Modification and Forbearance Agreement or any provision of the Loan Agreement to be invalid, illegal, or unenforceable, that portion shall be deemed severed from the rest, which shall remain in full force and effect.

11. ATTORNEY'S FEES. If any lawsuit, reference, or arbitration is commenced which arises out of or relates to the Borrower's indebtedness pursuant Loan Agreement and this Loan Modification and Forbearance Agreement, the prevailing party shall be entitled to recover from each other party such sums as the court, referee, or arbitrator may adjudge to be reasonable attorneys' fees in the action, reference, or arbitration, in addition to costs and expenses otherwise allowed by law. In all other situations, including any matter arising out of or relating to any bankruptcy or insolvency proceeding, the Borrower agrees to pay all of the Creditor's costs and expenses, including attorneys' fees, which may be incurred in enforcing or protecting the Creditor's rights or interests. From the time(s) incurred until paid in full to the Creditor, all such sums shall bear interest at the rate specified in paragraph 4 of this Loan Modification and Forbearance Agreement.

12. MISCELLANEOUS.

   a. Counterparts. This Loan Modification and Forbearance Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one agreement; but in making proof of this Loan Modification and Forbearance Agreement, it shall not be necessary to produce or account for more than one such counterpart executed by the party to be charged.

   b. Amendments, etc. Any future waiver, alteration, amendment, or modification of any of the provisions of the Loan Agreement or this Loan Modification and Forbearance Agreement shall not be valid or enforceable unless in writing and signed by all parties, it being expressly agreed that neither the Loan Agreement, nor this Loan Modification and Forbearance Agreement can be modified orally, by course of dealing, or by implied agreement. Moreover, any delay by Creditor in enforcing her rights after a Default or an Event of Default shall not be a release or waiver of the Default or the Event of Default and shall not be relied upon by the Borrower as a release or waiver of the Default or Event of Default. Except as specifically provided in this Loan Modification and Forbearance Agreement, no express or implied consent to any further Modification or modifications involving any of the matters set forth in this Loan Modification and Forbearance Agreement or otherwise shall be inferred or implied by the Creditor's execution of this Loan Modification and Forbearance Agreement or any other action of the Borrower.

Page 5 of 8
Loan Modification and Forbearance Agreement

c.  Successors and Assigns.  This Loan Modification and Forbearance Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their heirs, executors, administrators, successors, legal representatives, transferees and assigns; however, nothing contained herein will constitute Creditor's consent to any assignment or delegation of any rights, duties or obligations of the Borrower hereunder or under the Loan Agreement or any other loan related document.

d.  Headings.  The headings of paragraphs in this Loan Modification and Forbearance Agreement are for convenience of reference only and shall not in any way affect the interpretation or construction of this Loan Modification and Forbearance Agreement.  As used herein, neuter pronouns include the masculine and feminine genders, and the singular includes the plural (and vice versa), unless the context otherwise requires.

e.  Governing Law.  This Loan Modification and Forbearance Agreement shall be deemed to have been made in Los Angeles County, California, United States of America, and the validity, construction, interpretation, and enforcement hereof, and the rights of the parties hereto, shall be determined under, governed by, and construed and enforced in accordance with the laws of the state of California and the federal laws of the United States of America, without regard to principles of conflicts of law.

f.  ARBITRATION.  Any and all disputes, disagreements or claims arising from or in connection with this agreement, including those relating to its execution, violation, termination or invalidity, shall be resolved by the arbitration court formed by the parties to resolve a specific dispute by any sole arbitration judge at the choice of the plaintiff, pursuant to that forum's applicable rules and in accordance with  laws and current legislation of the Russian Federation. Dispute resolution, at the option of the plaintiff, can only take place on the basis of written materials provided by the parties, without necessarily holding an oral hearing and calling the parties. Participation of the parties and the arbitrator in meetings is allowed via electronic video conference, for example Skype. The parties agreed that the proceedings will be conducted in Moscow, Russian Federation, in Russian language and in accordance with laws and regulations of Russian Federation.

The parties agree that the arbitrator shall determine the existence and scope of the agreement to arbitrate, and shall be authorized to issue any award, monetary or non-monetary, to effectuate their decision, to the maximum extent possible. THE PARTIES WAIVE ANY RIGHT TO APPEAL OR OTHERWISE CHALLENGE THE AWARD OF THE ARBITRATOR. The decision of the arbitral court (tribunal is final). The parties further agree that any award from the arbitrator may be entered in any jurisdiction where any of the parties are located, where they may have assets, or where entry of the award as a judgment may assist a party in enforcing the award or judgment thereon. Upon a default by Guarantor, Creditor may immediately demand arbitration with Guarantor, without any conditions precedent, which demand may be served be electronic means (such as email) on

Page 6 of 8
Loan Modification and Forbearance Agreement

Guarantor and/or their counsel—actual notice of the demand for arbitration is sufficient to initiate the arbitration. The parties agree to split the cost of the arbitration, 50/50. However, the arbitrator shall award costs and attorney's fees to the prevailing party in any arbitration, as well as incorporating an award of costs and attorney's fees on an ongoing basis for judgment enforcement efforts in favor of the prevailing party. To the extent any party fails or refuses to submit to or participate in an arbitration once that arbitration is initiated, the arbitrator may move forward to a hearing on the merits without the participation of the non-participating party, without the participating party first-moving to compel arbitration, so long as the party demanding arbitration pays the costs of that arbitration and gives notice of all proceedings to the non-participating party and/or the non-participating party's counsel. If the arbitration seeks to enforce this Guaranty upon a default by Guarantor, discovery in the arbitration shall be limited to any defenses the arbitrator determines to be factually and legally plausible, and shall not include depositions or interrogatories, but only document discovery and the identity and contact information for witnesses supporting those defenses, unless the parties agree otherwise, or the arbitrator specifically authorizes such means of discovery for good cause.

The writ of execution is issued at the place of arbitration or any jurisdiction where any of the parties are located, where they may have assets, or where entry of the award as a judgment may assist a party in enforcing the award or judgment thereon.

g. The headings and captions in this Loan Modification and Forbearance Agreement are for the convenience of the parties only and are not a part of this Loan Modification and Forbearance Agreement.

h. Survival. The warranties and representations of the parties in this Loan Modification and Forbearance Agreement shall survive the termination of this Loan Modification and Forbearance Agreement.

i. Further Performance. The Borrower and Guarantors, whenever and as often as it shall be requested by Creditor, shall execute, acknowledge, and deliver, or cause to be executed, acknowledged, and delivered such further instruments and documents and to do any and all things as may be reasonably requested in order to carry out the intent and purpose of this Loan Modification and Forbearance Agreement and the Loan Agreement.

THIS AGREEMENT AND THE LOAN AGREEMENT REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENT OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. EXCEPT AS MODIFIED OR SUPPLEMENTED HEREBY, THE AGREEMENT, THE LOAN AGREEMENT AND ALL OTHER DOCUMENTS AND AGREEMENTS EXECUTED IN CONNECTION THEREWITH SHALL CONTINUE IN FULL FORCE AND EFFECT.

IN WITNESS WHEREOF, the parties hereto have executed this Loan Modification and Forbearance Agreement as of the date first above written.

CREDITOR:

_____
Agragorn Holdings Limited
By: Theophanis Philippou
Title: representing the sole director
Imperium Dominices Ltd.
Accepted and agreed by "Guarantor 1"

_____
AFB Trading One, Inc
By: Garry Itkin
Title: President, Chief Executive Officer, Secretary

BORROWER:

_____
Golden Spirits Limited
By: Garry Itkin
Title: Sole director and officer

Accepted and agreed by "Guarantor 2"

_____
Golden Sphinx Limited
By: Garry Itkin
Title: Sole director and officer

Page 8 of 8
Loan Modification and Forbearance Agreement

# EXHIBIT 10

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

# CORPORATE GUARANTY

This GUARANTY (this "Guaranty"), dated as of August 23, 2012, is executed and delivered by AFB Trading One, Inc., a company incorporated in the State of California, USA, whose registered offices are located at 8501 Wilshire Boulevard, Suite 330, Beverly Hills, California, USA ("Guarantor"), in favor of Agragorn Holdings Limited, a company incorporated in British Virgin Islands and whose registered office is at Trident Chambers, Wickhams Cay, Road Town, Tortola, British Virgin Islands ("Creditor"), regarding that Loan Agreement dated April 20, 2010 ("Loan Agreement") and Loan Modification and Forbearance Agreement dated August 23, 2012 ("Loan Modification") entered into by Creditor and Golden Spirits Limited, a limited liability company organized and registered under the laws of the Isle of Jersey, Channel Island, domiciled at 43 La Motte Street, St. Helier, Isle of Jersey JE4 8SD, Channel Island, ("Borrower"). Guarantor and Creditor are referred to herein as the "parties" to this Guaranty.

# RECITALS

This Guaranty is entered into in reference to the following facts:

1. RECITALS:

a. The Borrower is indebted to the Creditor under a Loan Agreement. As of the Modification Date, the outstanding principal balance of the Loan Agreement is $1,022,000 (the "Balance"). Unpaid interest continues to accrue according to the terms of the Loan Agreement. Additionally, the Borrower is obligated for other fees, costs, and expenses in accordance with, and as may be provided for in the Loan Agreement. Hereinafter, all indebtedness owing by Borrower to Creditor shall be referred to as the "Indebtedness".

b. As of the date of this Agreement an event of default exists under Loan Agreement due to Borrower's failure to honor its obligations under Section 4 and Section 5 of the Loan Agreement (the "Existing Default").

c. The Borrower has requested that Creditor temporarily forbear from exercising its rights and remedies under the Loan Agreement, law, and equity ("Default Rights") until January 1, 2020 (the "Forbearance Period"), notwithstanding Borrower's Existing Default under the Loan Agreement.

d. Creditor has advised Borrower that due to Borrower's Existing Default under the Loan Agreement, it is unwilling to forbear from exercising its Default Rights for the requested Forbearance Period unless, among other conditions contained in this Agreement, Borrower provide guarantees/guarantors to this Agreement who shall provide Creditor with duly and validly executed absolute, unconditional, and continuing guarantees for payment of the sums for which Borrower ever becomes liable to the Creditor. Borrower has identified, and Creditor has accepted, Guarantor as a guarantor of the Loan Agreement and Loan Modification.

1 of 11
GUARANTY of August 23, 2012

Guarantor Initials: _____

e. The Guarantor is materially interested in the financial success of the Borrower and agrees that entering into the Agreement was in the Guarantor's and Borrower's best interests and acknowledges that the Creditor would not have entered into Loan Modification absent the execution and delivery to the Creditor of this Guaranty.

NOW, THEREFORE, in consideration of the foregoing and the Creditor entering into the Loan Modification and Forbearance Agreement, the Guarantor hereby agrees, in favor of the Creditor, as follows.

## ARTICLE 1 – DEFINITIONS

1.1     Definitions. All initially capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Agreement. In addition, the following terms, as used in this Guaranty, shall have the following meanings:

1.1.1   "Bankruptcy Code" means the Bankruptcy Reform Act of 1978 (11 U.S.C. Sections 101 et seq.), as amended or supplemented from time to time, and any successor statute, and any and all rules issued or promulgated in connection therewith.

1.1.2   "Business Day" means any day that is not a Saturday, Sunday, or a day on which banks in the State of California are required or permitted to be closed.

1.1.3   "Guaranteed Obligations" means, subject to the limitations set forth in Section 2.1, the Loan Obligations, in each case when and as the same shall become due and payable, whether at maturity, pursuant to a mandatory prepayment requirement, by acceleration, or otherwise; it being the intent of the Guarantor that the guaranty set forth herein shall be a guaranty of payment and performance and not a guaranty of collection.

1.1.4   "Loan Obligations" means all past, present and future loans, fees, advances, liabilities, obligations, covenants, duties, and indebtedness owing by the Borrower to the Creditor arising under the Agreement or any of the other Loan Documents, whether or not evidenced by any note, or other instrument or document, whether arising from an extension of credit, opening of a letter of credit, acceptance, loan, guaranty, indemnification or otherwise, whether direct or indirect (including, without limitation, those acquired by assignment from others, and any participation by the Creditor in the Borrower's debts owing to others), whether voluntarily or involuntarily made, incurred, or created, whether secured or unsecured (and if secured, regardless of the nature or extent of the security), whether absolute or contingent, liquidated or unliquidated, determined or indeterminate, due or to become due, primary or secondary, as principal or guarantor, and whether recovery is or hereafter becomes barred by any statute of limitations or otherwise becomes unenforceable for any reason whatsoever, including any act or failure to act by the Creditor, and including, without limitation, all principal, interest (including any interest which, but for the application of the provisions of the Bankruptcy Code, would have accrued on such amounts), charges, expenses, fees, attorneys' fees (including, attorneys' fees and costs incurred pursuant to proceedings arising under the Bankruptcy Code), filing fees and any other sums chargeable to the Borrower under the Agreement or any other of the Loan Documents.

2 of 11
GUARANTY of August 23, 2012

Guarantor Initials:

1.1.5  "Loan Documents" are Loan Agreement, Loan Modification and Forbearance Agreement, and any and all documents pertaining thereto

1.1.6  "Person" means any natural person, corporation, partnership, joint venture, association, trust or unincorporated organization or any other legal entity, or a nation, state, government entity or any agency or political subdivision thereof.

1.2  Construction. Unless the context of this Guaranty clearly requires otherwise, references to the plural include the singular, references to the singular include the plural, and the term "including" is not limiting. The words "hereof," "herein," "hereby," "hereunder," and other similar terms refer to this Guaranty as a whole and not to any particular provision of this Guaranty. Any reference herein to any of the Loan Documents includes any and all alterations, amendments, extensions, modifications, renewals, or supplements thereto or thereof, as applicable. Neither this Guaranty nor any uncertainty or ambiguity herein shall be construed or resolved against the Creditor or the Guarantor, whether under any rule of construction or otherwise. This Guaranty has been reviewed by the Guarantor, the Creditor, and their respective counsel, and shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of the Creditor and the Guarantor.

## ARTICLE 2 - GUARANTY

2.1  Guaranteed Obligations. The Guarantor hereby irrevocably and unconditionally guarantees to the Creditor, as and for the Guarantor's own debt, until the final and indefeasible payment and performance in full thereof has been made, the punctual and faithful performance, keeping, observance, fulfillment and payment of the Guaranteed Obligations.

2.2  Continuing Guaranty. This Guaranty includes Guaranteed Obligations arising under successive transactions continuing, compromising, extending, increasing, modifying, releasing, or renewing the Guaranteed Obligations, changing the interest rate, payment terms, or other terms and conditions thereof, or creating new or additional Guaranteed Obligations after prior Guaranteed Obligations have been satisfied in whole or in part. To the maximum extent permitted by law, the Guarantor hereby waives and agrees not to assert any right the Guarantor has under Section 2815 of the California Civil Code, or otherwise, to revoke this Guaranty as to future indebtedness.

2.3  Performance Under This Guaranty. In the event that the Borrower fails to make any payment of any of the Loan Obligations on or before the due date thereof, the Guarantor shall immediately cause such payment to be made to the Creditor within ten (10) Business Days after the Guarantor's receipt of written notice from the Creditor therefor.

2.4  Primary Obligations. This Guaranty is a primary and original obligation of the Guarantor, is not merely the creation of a surety relationship, and is an absolute, unconditional and continuing guaranty of payment and performance which shall remain in full force and effect without respect to future changes in conditions, including any change of law or any invalidity or irregularity with respect to any of the Loan Documents. The Guarantor agrees that the Guarantor is severally and not jointly and severally liable, with any other guarantor of the Guaranteed Obligations, to the Creditor that the obligations of the Guarantor hereunder are independent of

3 of 11
GUARANTY of August 23, 2012

Guarantor Initials:

the obligations of the Borrower or any such other guarantor, and that a separate action may be brought against the Guarantor whether such action is brought against the Borrower or any such other guarantor or whether the Borrower or any such other guarantor is joined in such action. The Guarantor agrees that the Guarantor's liability hereunder shall be immediate and shall not be contingent upon the exercise or enforcement by the Creditor of whatever remedies it may have against the Borrower or any other guarantor of the Guaranteed Obligations, or the enforcement of any lien or realization upon any security the Creditor may at any time possess. The Guarantor agrees that any release which may be given by the Creditor to the Borrower or any other guarantor of the Guaranteed Obligations shall not release Guarantor. The Guarantor consents and agrees that the Creditor shall be under no obligation to marshal any assets of the Borrower or any other guarantor of the Guaranteed Obligations in favor of the Guarantor, or against or in payment of any or all of the Guaranteed Obligations.

2.5     Indefeasible Payment. The Guaranteed Obligations shall not be considered indefeasibly paid and performed for purposes of this Guaranty unless and until all payments of the Guaranteed Obligations made to the Creditor are no longer subject to any right on the part of any Person, including the Borrower, the Borrower as a debtor in possession, or any trustee (whether appointed under the Bankruptcy Code or otherwise) of any of the Borrower's assets, to invalidate or set aside such payments or to seek to recoup the amount of such payments or any portion thereof, or to declare same to be fraudulent or preferential. Upon such full and final indefeasible payment and performance of the Guaranteed Obligations, whether by the Borrower pursuant to the Agreement or by any other Person, the Creditor shall have no obligation whatsoever to transfer or assign its interests in the Loan Documents to the Guarantor. If, for any reason, any portion of such payments to the Creditor is set aside or restored, whether voluntarily or involuntarily, after the making thereof, then the obligation intended to be satisfied thereby shall be revived and continued in full force and effect as if said payment or payments had not been made, and the Guarantor shall be liable hereunder for the full amount the Creditor is required to repay plus any and all costs and expenses (including attorneys' fees and expenses and attorneys' fees and expenses incurred pursuant to proceedings arising under the Bankruptcy Code) paid by the Creditor in connection therewith.

## ARTICLE 3 - WAIVERS; RELEASES

3.1     Waivers. (a) The Guarantor absolutely, unconditionally, knowingly, and expressly waives: (i) (1) notice of acceptance hereof; (2) notice of any loans or other financial accommodations made or extended under any of the Loan Documents or the creation or existence of any Guaranteed Obligations; (3) notice of the amount of the Guaranteed Obligations, subject, however, to the Guarantor's right to make inquiry of the Creditor to ascertain the amount of the Guaranteed Obligations at any reasonable time; (4) notice of any adverse change in the financial condition of the Borrower or of any other fact that might increase the Guarantor's risk hereunder; (5) notice of presentment for payment, demand, protest, and notice thereof as to any instruments among any of the Loan Documents; (6) notice of any Default or Event of Default under any of the Loan Documents; and (7) all other notices (except if such notice is specifically required to be given to the Guarantor hereunder or under any of the Loan Documents) and demands to which the Guarantor might otherwise be entitled. (ii) its right, under Sections 2845 or 2850 of the California Civil Code, or otherwise, to require the Creditor to

4 of 11
GUARANTY of August 23, 2012

Guarantor Initials: _____

institute suit against, or to exhaust any rights and remedies which the Creditor has or may have against, the Borrower or any third Person, or against any collateral for the Guaranteed Obligations provided by the Borrower or any third Person. In this regard, Guarantor agrees that the Guarantor is bound to the payment of all Guaranteed Obligations, whether now existing or hereafter accruing, as fully as if such Guaranteed Obligations were directly owing to the Creditor by the Guarantor. The Guarantor further waives any defense arising by reason of any disability or other defense (other than the defense that the Guaranteed Obligations have been fully and finally performed and indefeasibly paid) of the Borrower or by reason of the cessation from any cause whatsoever of the liability of the Borrower in respect thereof. (iii) (1) any rights to assert against the Creditor any defense (legal or equitable), set-off, counterclaim, or claim which the Guarantor may now or at any time hereafter have against the Borrower or any other Person liable to the Creditor; (2) any defense, set-off, counterclaim, or claim, of any kind or nature, arising directly or indirectly from the present or future lack of perfection, sufficiency, validity, or enforceability of the Guaranteed Obligations or any security therefor; (3) any defense the Guarantor has to performance hereunder, and any right the Guarantor has to be exonerated, provided by Sections 2819, 2822, or 2825 of the California Civil Code, or otherwise, arising by reason of: the impairment or suspension of the Creditor's rights or remedies against the Borrower; the alteration by the Creditor of the Guaranteed Obligations; any discharge of the Guaranteed Obligations to the Creditor by operation of law as a result of the Creditor's intervention or omission; or the acceptance by the Creditor of anything in partial satisfaction of the Guaranteed Obligations; (4) the benefit of any statute of limitations affecting the Guarantor's liability hereunder or the enforcement thereof, and any act which shall defer or delay the operation of any statute of limitations applicable to the Guaranteed Obligations shall similarly operate to defer or delay the operation of such statute of limitations applicable to the Guarantor's liability hereunder. (b) The Guarantor absolutely, unconditionally, knowingly, and expressly waives any defense arising by reason of or deriving from (i) any claim or defense based upon an election of remedies by the Creditor; or (ii) any election by the Creditor under the Bankruptcy Code Section 1111(b) to limit the amount of, or any collateral securing, its claim against the Borrower.

3.2     Election of Remedies. Pursuant to Section 2856 of the California Civil Code, the Guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the Guarantor's rights of subrogation and reimbursement against the Borrower.

3.3     Waiver of Subrogation. Until the final and indefeasible payment and performance in full of all of the Guaranteed Obligations, the Guarantor hereby absolutely, unconditionally, knowingly, and expressly waives: (i) any right of subrogation the Guarantor has or may have as against the Borrower with respect to the Guaranteed Obligations; (ii) any right to proceed against the Borrower or any other person or entity, now or hereafter, for contribution, indemnity, reimbursement, or any other suretyship rights and claims, whether direct or indirect, liquidated or contingent, whether arising under express or implied contract or by operation of law, which the Guarantor may now have or hereafter have as against the Borrower with respect to the Guaranteed Obligations; and (iii) any right to proceed or seek recourse against or with respect to any property or asset of the Borrower.

5 of 11
GUARANTY of August 23, 2012

Guarantor Initials:

3.4     General Waiver. WITHOUT LIMITING THE GENERALITY OF ANY OTHER WAIVER OR OTHER PROVISION SET FORTH IN THIS GUARANTY, THE GUARANTOR HEREBY ABSOLUTELY, KNOWINGLY, UNCONDITIONALLY, AND EXPRESSLY WAIVES AND AGREES NOT TO ASSERT ANY AND ALL BENEFITS OR DEFENSES ARISING DIRECTLY OR INDIRECTLY UNDER ANY ONE OR MORE OF CALIFORNIA CIVIL CODE SECTIONS 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821, 2822, 2825, 2839, 2845, 2848, 2849, AND 2850, CALIFORNIA UNIFORM COMMERCIAL CODE SECTIONS 3116, 3118, 3119, 3419, 3605, 9610, 9611, 9615, 9617, 9618, 9624, 9625, 9627 AND 9657, AND CHAPTER 2 OF TITLE 14 OF PART 4 OF DIVISION 3 OF THE CALIFORNIA CIVIL CODE.

3.5     Releases. The Guarantor consents and agrees that, without notice to or by Guarantor, and without affecting or impairing the obligations of the Guarantor hereunder, the Creditor may, by action or inaction: (a) compromise, settle, extend the duration or the time for the payment of, or discharge the performance of, or may refuse to or otherwise not enforce this Guaranty, any of the Loan Documents, or any part thereof, with respect to the Borrower or any other Person; (b) release the Borrower or any other Person or grant other indulgences to the Borrower or any other Person in respect thereof; (c) amend or modify in any manner and at any time (or from time to time) any of the Loan Documents to which the Guarantor is not a party without the Guarantor's consent; or (d) release or substitute any other guarantor, if any, of the Guaranteed Obligations, or enforce, exchange, release, or waive any security for the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations, or any portion thereof.

3.6     No Election of Remedies. The Creditor shall have all of the rights to seek recourse against the Guarantor to the fullest extent provided for herein, and no election by the Creditor to proceed in one form of action or proceeding, or against any Person, or on any obligation, shall constitute a waiver of the Creditor's right to proceed in any other form of action or proceeding or against other parties unless the Creditor has expressly waived such right in writing. Specifically, but without limiting the generality of the foregoing, no action or proceeding by the Creditor under any document or instrument evidencing the Guaranteed Obligations shall serve to diminish the liability of the Guarantor under this Guaranty except to the extent that the Creditor finally and unconditionally shall have realized the full and indefeasible payment and performance of the Guaranteed Obligations by such action or proceeding.

3.7     Subordination. The Guarantor hereby agrees that any and all present and future indebtedness of the Borrower owing to the Guarantor is postponed in favor of and subordinated to the payment in full, in cash, and the performance in full of the Guaranteed Obligations. In this regard, no payment of any kind whatsoever shall be made with respect to such indebtedness until the final and indefeasible payment and performance in full of all of the Guaranteed Obligations.

3.8     Payments; Application. All payments to be made hereunder by the Guarantor shall be made in lawful money of the United States of America at the time of payment, shall be made in immediately available funds, and shall be made without deduction (whether for taxes or otherwise) or offset. All payments received by the Creditor from the Guarantor hereunder shall be applied as follows: first, to all costs and expenses (including attorneys' fees and expenses and attorneys' fees and expenses incurred pursuant to proceedings arising under the Bankruptcy

6 of 11
GUARANTY of August 23, 2012

Guarantor Initials: _____

Code) incurred by the Creditor in enforcing this Guaranty or in collecting the Guaranteed Obligations; second, to all accrued and unpaid interest, premium, if any, and fees owing to the Creditor constituting Guaranteed Obligations; and third, to the balance of the Guaranteed Obligations.

3.9 Cumulative Remedies. No remedy under this Guaranty or under any of the Loan Documents is intended to be exclusive of any other remedy, but each and every remedy shall be cumulative and in addition to any and every other remedy given hereunder or under any of the Loan Documents, and those provided by law or in equity. No delay or omission by the Creditor to exercise any right under this Guaranty shall impair any such right nor be construed to be a waiver thereof. No failure on the part of the Creditor to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

## ARTICLE 4 - REPRESENTATIONS AND WARRANTIES

4.1 Representations and Warranties. The Guarantor hereby represents and warrants to the Creditor that:

4.1.1 The Guarantor is company duly organized, validly existing, and in good standing under the laws of the State of California, USA

4.1.2 Guarantor's execution, delivery, and performance of this Guarantee and all the Loan Documents have been duly authorized by all necessary action by Guarantor and do not conflict with, result in a violation of, or constitute a default under (1) any provision of Guarantor's articles of incorporation or organization, or bylaws, or any agreement or other instrument binding upon Guarantor or (2) any law, governmental regulation, court decree, or order applicable to Guarantor or to Guarantor's properties.

4.1.3 This Agreement constitutes legal, valid, and binding obligations of Guarantor enforceable against Guarantor in accordance with their respective terms.

4.2 Borrower's Financial Condition. The Guarantor represents and warrants to the Creditor that the Guarantor is currently informed of the financial condition of the Borrower and of all other circumstances which a diligent inquiry would reveal and which bear upon the risk of nonpayment of the Guaranteed Obligations. The Guarantor further represents and warrants to the Creditor that the Guarantor has read and understands the terms and conditions of the Agreement and the other Loan Documents. The Guarantor hereby covenants that the Guarantor will continue to keep informed of the Borrower's financial condition, the financial condition of other guarantors, if any, of any of the Guaranteed Obligations and of all other circumstances which bear upon the risk of nonpayment or nonperformance of the Guaranteed Obligations.

## ARTICLE 5 - GENERAL PROVISIONS

7 of 11
GUARANTY of August 23, 2012

Guarantor Initials:

5.1     Interest; Attorneys' Fees and Costs. All payments not made when due hereunder by the Guarantor to the Creditor on account of any of the Guaranteed Obligations shall bear interest from the due date hereunder until paid to the Creditor at the Default Rate specified in the Agreement. The Guarantor shall also, upon demand, indemnify the Creditor against and pay to the Creditor (a) any and all attorneys' fees, costs and other expenses that the Creditor actually expends or incurs in collecting the Guaranteed Obligations or in enforcing this Guaranty against the Guarantor, whether or not suit is filed, including, without limitation, all costs and all attorneys' fees and expenses actually expended or incurred by the Creditor in connection with, or in defense of, any insolvency, bankruptcy, reorganization, arrangement or other similar proceeding involving the Guarantor that in any way affects the exercise by Creditor of any of its rights and remedies under this Guaranty and (b) any and all amounts which the Creditor at any time returns to the Borrower or to the Borrower's trustee in bankruptcy, whether voluntarily or involuntarily and whether or not suit is filed, in response to any claim that the Creditor had theretofore received preferential payments or transfers in fraud of creditors within the meaning of any bankruptcy, insolvency or other similar law, now or hereafter existing.

5.2     Notices. All notices, requests, demands or other communications to the respective parties hereto shall be in writing and shall be delivered by hand, by internationally recognized overnight courier (e.g., FedEx or DHL), by facsimile or by email and shall be deemed to have been received by the party to which sent (a) on the day of delivery (if delivered by hand), or one (1) Business Day after being sent by facsimile (with confirmation of successful transmission issued from the sender's facsimile machine), or one (1) Business Day after being sent by email (with confirmation of successful transmission issued from the sender's email server), or two (2) Business Day after being sent by internationally recognized overnight courier, or (b) on such later date if the recipient gives verifiable proof of receipt on such later date, and shall be addressed to the parties hereto, as the case may be, at their respective addresses set forth herein. The addresses of the parties hereto (until notice of a change thereof is served as provided in this Section 5.2) shall be as follows:

If to the Guarantor:                      If to the Creditor:
AFB Trading One, Inc.                     Agragorn Holdings Limited
8501 Wilshire Boulevard                   Trident Chambers,Wickhams Cay, Road
Suite 330                                 Town, Tortola
Beverly Hills, California                 British Virgin Islands
USA 90211

5.3     Books and Records. The Creditor's books and records showing the account between the Creditor and the Borrower shall be admissible in any action or proceeding and shall, absent manifest error, constitute rebuttably presumptive proof thereof and shall be binding upon the Guarantor for the purpose of establishing the items therein set forth and shall constitute prima facie proof thereof.

5.4     Severability of Provisions. If any provision of this Guaranty is for any reason held to be invalid, illegal or unenforceable in any respect, that provision shall not affect the validity, legality or enforceability of any other provision of this Guaranty.

8 of 11
GUARANTY of August 23, 2012

Guarantor Initials: _____

5.5 Successors and Assigns. This Guaranty shall bind the heirs, administrators, executors, representatives, successors and assigns of the Guarantor, and shall inure to the benefit of the successors and assigns of the Creditor; provided, however, Guarantor may not assign this Guaranty or delegate any of his duties hereunder without the Creditor's prior written consent and any such prohibited assignment shall be absolutely null and void. The Creditor reserves its right to sell, assign, transfer, negotiate, or grant participations in all or any part of, or any interest in, the rights and benefits hereunder pursuant to and in accordance with the provisions of the Loan Documents. In connection therewith, the Creditor may disclose all documents and information which the Creditor now or hereafter may have relating to the Guarantor, the Guarantor's business, or this Guaranty to any such prospective or actual transferee.

5.6 Governing Law. This Guaranty shall be deemed to have been made in Los Angeles County, State of California, United States of America, and the validity, construction, interpretation, and enforcement hereof, and the rights of the parties hereto, shall be determined under, governed by, and construed and enforced in accordance with the laws of the state of California, and federal laws of the United States of America, without regard to principles of conflicts of law.

5.7 ARBITRATION. Any and all disputes, disagreements or claims arising from or in connection with this agreement, including those relating to its execution, violation, termination or invalidity, shall be resolved by the arbitration court formed by the parties to resolve a specific dispute by any sole arbitration judge at the choice of the plaintiff, pursuant to that forum's applicable rules and in accordance with laws and current legislation of the Russian Federation. Dispute resolution, at the option of the plaintiff, can only take place on the basis of written materials provided by the parties, without necessarily holding an oral hearing and calling the parties. Participation of the parties and the arbitrator in meetings is allowed via electronic video conference, for example Skype. The parties agreed that the proceedings will be conducted in Moscow, Russian Federation, in Russian language and in accordance with laws and regulations of Russian Federation.

The parties agree that the arbitrator shall determine the existence and scope of the agreement to arbitrate, and shall be authorized to issue any award, monetary or non-monetary, to effectuate their decision, to the maximum extent possible. THE PARTIES WAIVE ANY RIGHT TO APPEAL OR OTHERWISE CHALLENGE THE AWARD OF THE ARBITRATOR. The decision of the arbitral court (tribunal is final). The parties further agree that any award from the arbitrator may be entered in any jurisdiction where any of the parties are located, where they may have assets, or where entry of the award as a judgment may assist a party in enforcing the award or judgment thereon. Upon a default by Guarantor, Creditor may immediately demand arbitration with Guarantor, without any conditions precedent, which demand may be served be electronic means (such as email) on Guarantor and/or their counsel—actual notice of the demand for arbitration is sufficient to initiate the arbitration. The parties agree to split the cost of the arbitration, 50/50. However, the arbitrator shall award costs and attorney's fees to the prevailing party in any arbitration, as well as incorporating an award of costs and attorney's fees on an ongoing basis for judgment enforcement efforts in favor of the prevailing party. To the extent any party fails or refuses to submit to or participate in an arbitration once that arbitration is initiated, the arbitrator may move forward to a hearing on the merits without the participation of

9 of 11
GUARANTY of August 23, 2012

Guarantor Initials:

the non-participating party, without the participating party first-moving to compel arbitration, so long as the party demanding arbitration pays the costs of that arbitration and gives notice of all proceedings to the non-participating party and/or the non-participating party's counsel. If the arbitration seeks to enforce this Guaranty upon a default by Guarantor, discovery in the arbitration shall be limited to any defenses the arbitrator determines to be factually and legally plausible, and shall not include depositions or interrogatories, but only document discovery and the identity and contact information for witnesses supporting those defenses, unless the parties agree otherwise, or the arbitrator specifically authorizes such means of discovery for good cause.

The writ of execution is issued at the place of arbitration or any jurisdiction where any of the parties are located, where they may have assets, or where entry of the award as a judgment may assist a party in enforcing the award or judgment thereon.

5.8     Waiver of Jury Trial. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE GUARANTOR AND THE CREDITOR EACH WAIVES ITS RESPECTIVE RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS GUARANTY, THE DOCUMENTS EXECUTED IN CONNECTION HEREWITH, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION, PROCEEDING OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE. THE GUARANTOR AND THE CREDITOR EACH AGREES THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS GUARANTY OR THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY AND/OR THE DOCUMENTS EXECUTED IN CONNECTION HEREWITH.

5.9     Entire Agreement; Amendments and Waivers. This Guaranty constitutes the entire agreement between the Guarantor and the Creditor pertaining to the subject matter contained herein. Any provision of this Guaranty may be amended or waived if, but only if, such amendment or waiver is in writing and is signed by the party asserted to be bound thereby, and then such amendment or waiver shall be effective only in the specific instance and specific purpose for which given. No delay or omission by the Creditor to exercise any right under this Guaranty shall impair any such right, nor shall it be construed to be a waiver thereof. No waiver of any single breach or default under this Guaranty shall be deemed a waiver of any other breach or default.

5.10     Counterparts. This Guaranty may be executed in any number of counterparts, all of which shall be deemed an original and all of which, when taken together, shall constitute one in the same instrument. Executed copies of the signature pages of this Guaranty sent by facsimile or transmitted electronically in either a Tagged Image Format File ("TIFF") or a Portable

10 of 11
GUARANTY of August 23, 2012

Guarantor Initials:

Document Format ("PDF") shall be treated as originals, fully binding and with full legal force and effect, and the parties waive any rights they may have to object to such treatment. Any party delivering an executed counterpart of this Guaranty by facsimile or electronically in either TIFF or PDF shall also deliver a manually executed counterpart of this Guaranty but the failure to deliver a manually executed counterpart shall not affect the validity, enforceability, and binding effect of this Guaranty.

IN WITNESS WHEREOF, the Guarantor has executed and delivered this Guaranty as of the date set forth in the first paragraph hereof.

"GUARANTOR"

AFB Trading One, Inc
By: Garry Itkin
Title: President, Chief Executive Officer, Secretary

ACCEPTED AND AGREED BY "CREDITOR" (as of the date set forth in the first paragraph hereof):

Agragorn Holdings Limited
By: Theophanis Philippou
Title: representing the sole director
Imperium Nominees Ltd.

11 of 11
GUARANTY of August 23, 2012

Guarantor Initials:

# EXHIBIT 11

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

# CORPORATE GUARANTY

This GUARANTY (this "Guaranty"), dated as of August 23, 2012, is executed and delivered by Golden Sphinx Limited, a limited liability company organized and registered under the laws of the Isle of Jersey, Channel Island, domiciled at 43 La Motte Street, St. Helier, Isle of Jersey JE4 8SD, Channel Island ("Guarantor"), in favor of Agragorn Holdings Limited, a company incorporated in British Virgin Islands and whose registered office is at Trident Chambers, Wickhams Cay, Road Town, Tortola, British Virgin Islands ("Creditor"), regarding that Loan Agreement dated April 20, 2010 ("Loan Agreement") and Loan Modification and Forbearance Agreement dated August 23, 2012 ("Loan Modification") entered into by Creditor and Golden Spirits Limited, a limited liability company organized and registered under the laws of the Isle of Jersey, Channel Island, domiciled at 43 La Motte Street, St. Helier, Isle of Jersey JE4 8SD, Channel Island, ("Borrower"). Guarantor and Creditor are referred to herein as the "parties" to this Guaranty.

## RECITALS

This Guaranty is entered into in reference to the following facts:

1. RECITALS:

I. The Borrower is indebted to the Creditor under a Loan Agreement. As of the Modification Date, the outstanding principal balance of the Loan Agreement is $1,022,000 (the "Balance"). Unpaid interest continues to accrue according to the terms of the Loan Agreement. Additionally, the Borrower is obligated for other fees, costs, and expenses in accordance with, and as may be provided for in the Loan Agreement. Hereinafter, all indebtedness owing by Borrower to Creditor shall be referred to as the "Indebtedness".

II. As of the date of this Agreement an event of default exists under Loan Agreement due to Borrower's failure to honor its obligations under Section 4 and Section 5 of the Loan Agreement (the "Existing Default").

III. The Borrower has requested that Creditor temporarily forbear from exercising its rights and remedies under the Loan Agreement, law, and equity ("Default Rights") until January 1, 2020 (the "Forbearance Period"), notwithstanding Borrower's Existing Default under the Loan Agreement.

IV. Creditor has advised Borrower that due to Borrower's Existing Default under the Loan Agreement, it is unwilling to forbear from exercising its Default Rights for the requested Forbearance Period unless, among other conditions contained in this Agreement, Borrower provide guarantees/guarantors to this Agreement who shall provide Creditor with duly and validly executed absolute, unconditional, and continuing guarantees for payment of the sums for which Borrower ever becomes liable to the Creditor. Borrower has identified, and Creditor has accepted, Guarantor as a guarantor of the Loan Agreement and Loan Modification.

1 of 11
GUARANTY of August 23, 2012

Guarantor Initial:

V. The Guarantor is materially interested in the financial success of the Borrower and agrees that entering into the Agreement was in the Guarantor's and Borrower's best interests and acknowledges that the Creditor would not have entered into Loan Modification absent the execution and delivery to the Creditor of this Guaranty.

NOW, THEREFORE, in consideration of the foregoing and the Creditor entering into the Loan Modification and Forbearance Agreement, the Guarantor hereby agrees, in favor of the Creditor, as follows.

## ARTICLE 1 – DEFINITIONS

1.1     Definitions. All initially capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Agreement. In addition, the following terms, as used in this Guaranty, shall have the following meanings:

1.1.1    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978 (11 U.S.C. Sections 101 et seq.), as amended or supplemented from time to time, and any successor statute, and any and all rules issued or promulgated in connection therewith.

1.1.2    "Business Day" means any day that is not a Saturday, Sunday, or a day on which banks in the State of California are required or permitted to be closed.

1.1.3    "Guaranteed Obligations" means, subject to the limitations set forth in Section 2.1, the Loan Obligations, in each case when and as the same shall become due and payable, whether at maturity, pursuant to a mandatory prepayment requirement, by acceleration, or otherwise; it being the intent of the Guarantor that the guaranty set forth herein shall be a guaranty of payment and performance and not a guaranty of collection.

1.1.4    "Loan Obligations" means all past, present and future loans, fees, advances, liabilities, obligations, covenants, duties, and indebtedness owing by the Borrower to the Creditor arising under the Agreement or any of the other Loan Documents, whether or not evidenced by any note, or other instrument or document, whether arising from an extension of credit, opening of a letter of credit, acceptance, loan, guaranty, indemnification or otherwise, whether direct or indirect (including, without limitation, those acquired by assignment from others, and any participation by the Creditor in the Borrower's debts owing to others), whether voluntarily or involuntarily made, incurred, or created, whether secured or unsecured (and if secured, regardless of the nature or extent of the security), whether absolute or contingent, liquidated or unliquidated, determined or indeterminate, due or to become due, primary or secondary, as principal or guarantor, and whether recovery is or hereafter becomes barred by any statute of limitations or otherwise becomes unenforceable for any reason whatsoever, including any act or failure to act by the Creditor, and including, without limitation, all principal, interest (including any interest which, but for the application of the provisions of the Bankruptcy Code, would have accrued on such amounts), charges, expenses, fees, attorneys' fees (including, attorneys' fees and costs incurred pursuant to proceedings arising under the Bankruptcy Code), filing fees and any other sums chargeable to the Borrower under the Agreement or any other of the Loan Documents.

2 of 11
GUARANTY of August 23, 2012

Guarantor Initials: _____

       1.1.5  "Loan Documents" are Loan Agreement, Loan Modification and Forbearance Agreement, and any and all documents pertaining thereto

       1.1.6  "Person" means any natural person, corporation, partnership, joint venture, association, trust or unincorporated organization or any other legal entity, or a nation, state, government entity or any agency or political subdivision thereof.

    1.2    Construction. Unless the context of this Guaranty clearly requires otherwise, references to the plural include the singular, references to the singular include the plural, and the term "including" is not limiting. The words "hereof," "herein," "hereby," "hereunder," and other similar terms refer to this Guaranty as a whole and not to any particular provision of this Guaranty. Any reference herein to any of the Loan Documents includes any and all alterations, amendments, extensions, modifications, renewals, or supplements thereto or thereof, as applicable. Neither this Guaranty nor any uncertainty or ambiguity herein shall be construed or resolved against the Creditor or the Guarantor, whether under any rule of construction or otherwise. This Guaranty has been reviewed by the Guarantor, the Creditor, and their respective counsel, and shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of the Creditor and the Guarantor.

## ARTICLE 2 - GUARANTY

    2.1    Guaranteed Obligations. The Guarantor hereby irrevocably and unconditionally guarantees to the Creditor, as and for the Guarantor's own debt, until the final and indefeasible payment and performance in full thereof has been made, the punctual and faithful performance, keeping, observance, fulfillment and payment of the Guaranteed Obligations.

    2.2    Continuing Guaranty. This Guaranty includes Guaranteed Obligations arising under successive transactions continuing, compromising, extending, increasing, modifying, releasing, or renewing the Guaranteed Obligations, changing the interest rate, payment terms, or other terms and conditions thereof, or creating new or additional Guaranteed Obligations after prior Guaranteed Obligations have been satisfied in whole or in part. To the maximum extent permitted by law, the Guarantor hereby waives and agrees not to assert any right the Guarantor has under Section 2815 of the California Civil Code, or otherwise, to revoke this Guaranty as to future indebtedness.

    2.3    Performance Under This Guaranty. In the event that the Borrower fails to make any payment of any of the Loan Obligations on or before the due date thereof, the Guarantor shall immediately cause such payment to be made to the Creditor within ten (10) Business Days after the Guarantor's receipt of written notice from the Creditor therefor.

    2.4    Primary Obligations. This Guaranty is a primary and original obligation of the Guarantor, is not merely the creation of a surety relationship, and is an absolute, unconditional and continuing guaranty of payment and performance which shall remain in full force and effect without respect to future changes in conditions, including any change of law or any invalidity or irregularity with respect to any of the Loan Documents. The Guarantor agrees that the Guarantor is severally and not jointly and severally liable, with any other guarantor of the Guaranteed Obligations, to the Creditor that the obligations of the Guarantor hereunder are independent of

3 of 11
GUARANTY of August 23, 2012

Guarantor Initials: _____

the obligations of the Borrower or any such other guarantor, and that a separate action may be brought against the Guarantor whether such action is brought against the Borrower or any such other guarantor or whether the Borrower or any such other guarantor is joined in such action. The Guarantor agrees that the Guarantor's liability hereunder shall be immediate and shall not be contingent upon the exercise or enforcement by the Creditor of whatever remedies it may have against the Borrower or any other guarantor of the Guaranteed Obligations, or the enforcement of any lien or realization upon any security the Creditor may at any time possess. The Guarantor agrees that any release which may be given by the Creditor to the Borrower or any other guarantor of the Guaranteed Obligations shall not release Guarantor. The Guarantor consents and agrees that the Creditor shall be under no obligation to marshal any assets of the Borrower or any other guarantor of the Guaranteed Obligations in favor of the Guarantor, or against or in payment of any or all of the Guaranteed Obligations.

2.5     Indefeasible Payment. The Guaranteed Obligations shall not be considered indefeasibly paid and performed for purposes of this Guaranty unless and until all payments of the Guaranteed Obligations made to the Creditor are no longer subject to any right on the part of any Person, including the Borrower, the Borrower as a debtor in possession, or any trustee (whether appointed under the Bankruptcy Code or otherwise) of any of the Borrower's assets, to invalidate or set aside such payments or to seek to recoup the amount of such payments or any portion thereof, or to declare same to be fraudulent or preferential. Upon such full and final indefeasible payment and performance of the Guaranteed Obligations, whether by the Borrower pursuant to the Agreement or by any other Person, the Creditor shall have no obligation whatsoever to transfer or assign its interests in the Loan Documents to the Guarantor. If, for any reason, any portion of such payments to the Creditor is set aside or restored, whether voluntarily or involuntarily, after the making thereof, then the obligation intended to be satisfied thereby shall be revived and continued in full force and effect as if said payment or payments had not been made, and the Guarantor shall be liable hereunder for the full amount the Creditor is required to repay plus any and all costs and expenses (including attorneys' fees and expenses and attorneys' fees and expenses incurred pursuant to proceedings arising under the Bankruptcy Code) paid by the Creditor in connection therewith.

## ARTICLE 3 -WAIVERS; RELEASES

3.1     Waivers. (a) The Guarantor absolutely, unconditionally, knowingly, and expressly waives: (i) (1) notice of acceptance hereof; (2) notice of any loans or other financial accommodations made or extended under any of the Loan Documents or the creation or existence of any Guaranteed Obligations; (3) notice of the amount of the Guaranteed Obligations, subject, however, to the Guarantor's right to make inquiry of the Creditor to ascertain the amount of the Guaranteed Obligations at any reasonable time; (4) notice of any adverse change in the financial condition of the Borrower or of any other fact that might increase the Guarantor's risk hereunder; (5) notice of presentment for payment, demand, protest, and notice thereof as to any instruments among any of the Loan Documents; (6) notice of any Default or Event of Default under any of the Loan Documents; and (7) all other notices (except if such notice is specifically required to be given to the Guarantor hereunder or under any of the Loan Documents) and demands to which the Guarantor might otherwise be entitled. (ii) its right, under Sections 2845 or 2850 of the California Civil Code, or otherwise, to require the Creditor to

4 of 11
GUARANTY of August 23, 2012

Guarantor Initials

institute suit against, or to exhaust any rights and remedies which the Creditor has or may have against, the Borrower or any third Person, or against any collateral for the Guaranteed Obligations provided by the Borrower or any third Person. In this regard, Guarantor agrees that the Guarantor is bound to the payment of all Guaranteed Obligations, whether now existing or hereafter accruing, as fully as if such Guaranteed Obligations were directly owing to the Creditor by the Guarantor. The Guarantor further waives any defense arising by reason of any disability or other defense (other than the defense that the Guaranteed Obligations have been fully and finally performed and indefeasibly paid) of the Borrower or by reason of the cessation from any cause whatsoever of the liability of the Borrower in respect thereof. (iii) (1) any rights to assert against the Creditor any defense (legal or equitable), set-off, counterclaim, or claim which the Guarantor may now or at any time hereafter have against the Borrower or any other Person liable to the Creditor; (2) any defense, set-off, counterclaim, or claim, of any kind or nature, arising directly or indirectly from the present or future lack of perfection, sufficiency, validity, or enforceability of the Guaranteed Obligations or any security therefor; (3) any defense the Guarantor has to performance hereunder, and any right the Guarantor has to be exonerated, provided by Sections 2819, 2822, or 2825 of the California Civil Code, or otherwise, arising by reason of: the impairment or suspension of the Creditor's rights or remedies against the Borrower; the alteration by the Creditor of the Guaranteed Obligations; any discharge of the Guaranteed Obligations to the Creditor by operation of law as a result of the Creditor's intervention or omission; or the acceptance by the Creditor of anything in partial satisfaction of the Guaranteed Obligations; (4) the benefit of any statute of limitations affecting the Guarantor's liability hereunder or the enforcement thereof, and any act which shall defer or delay the operation of any statute of limitations applicable to the Guaranteed Obligations shall similarly operate to defer or delay the operation of such statute of limitations applicable to the Guarantor's liability hereunder. (b) The Guarantor absolutely, unconditionally, knowingly, and expressly waives any defense arising by reason of or deriving from (i) any claim or defense based upon an election of remedies by the Creditor; or (ii) any election by the Creditor under the Bankruptcy Code Section 1111(b) to limit the amount of, or any collateral securing, its claim against the Borrower.

3.2    Election of Remedies. Pursuant to Section 2856 of the California Civil Code, the Guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the Guarantor's rights of subrogation and reimbursement against the Borrower.

3.3    Waiver of Subrogation. Until the final and indefeasible payment and performance in full of all of the Guaranteed Obligations, the Guarantor hereby absolutely, unconditionally, knowingly, and expressly waives: (i) any right of subrogation the Guarantor has or may have as against the Borrower with respect to the Guaranteed Obligations; (ii) any right to proceed against the Borrower or any other person or entity, now or hereafter, for contribution, indemnity, reimbursement, or any other suretyship rights and claims, whether direct or indirect, liquidated or contingent, whether arising under express or implied contract or by operation of law, which the Guarantor may now have or hereafter have as against the Borrower with respect to the Guaranteed Obligations; and (iii) any right to proceed or seek recourse against or with respect to any property or asset of the Borrower.

5 of 11
GUARANTY of August 23, 2012

Guarantor Initials:

3.4     General Waiver. WITHOUT LIMITING THE GENERALITY OF ANY OTHER WAIVER OR OTHER PROVISION SET FORTH IN THIS GUARANTY, THE GUARANTOR HEREBY ABSOLUTELY, KNOWINGLY, UNCONDITIONALLY, AND EXPRESSLY WAIVES AND AGREES NOT TO ASSERT ANY AND ALL BENEFITS OR DEFENSES ARISING DIRECTLY OR INDIRECTLY UNDER ANY ONE OR MORE OF CALIFORNIA CIVIL CODE SECTIONS 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821, 2822, 2825, 2839, 2845, 2848, 2849, AND 2850, CALIFORNIA UNIFORM COMMERCIAL CODE SECTIONS 3116, 3118, 3119, 3419, 3605, 9610, 9611, 9615, 9617, 9618, 9624, 9625, 9627 AND 9657, AND CHAPTER 2 OF TITLE 14 OF PART 4 OF DIVISION 3 OF THE CALIFORNIA CIVIL CODE.

3.5     Releases. The Guarantor consents and agrees that, without notice to or by Guarantor, and without affecting or impairing the obligations of the Guarantor hereunder, the Creditor may, by action or inaction: (a) compromise, settle, extend the duration or the time for the payment of, or discharge the performance of, or may refuse to or otherwise not enforce this Guaranty, any of the Loan Documents, or any part thereof, with respect to the Borrower or any other Person; (b) release the Borrower or any other Person or grant other indulgences to the Borrower or any other Person in respect thereof; (c) amend or modify in any manner and at any time (or from time to time) any of the Loan Documents to which the Guarantor is not a party without the Guarantor's consent; or (d) release or substitute any other guarantor, if any, of the Guaranteed Obligations, or enforce, exchange, release, or waive any security for the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations, or any portion thereof.

3.6     No Election of Remedies. The Creditor shall have all of the rights to seek recourse against the Guarantor to the fullest extent provided for herein, and no election by the Creditor to proceed in one form of action or proceeding, or against any Person, or on any obligation, shall constitute a waiver of the Creditor's right to proceed in any other form of action or proceeding or against other parties unless the Creditor has expressly waived such right in writing. Specifically, but without limiting the generality of the foregoing, no action or proceeding by the Creditor under any document or instrument evidencing the Guaranteed Obligations shall serve to diminish the liability of the Guarantor under this Guaranty except to the extent that the Creditor finally and unconditionally shall have realized the full and indefeasible payment and performance of the Guaranteed Obligations by such action or proceeding.

3.7     Subordination. The Guarantor hereby agrees that any and all present and future indebtedness of the Borrower owing to the Guarantor is postponed in favor of and subordinated to the payment in full, in cash, and the performance in full of the Guaranteed Obligations. In this regard, no payment of any kind whatsoever shall be made with respect to such indebtedness until the final and indefeasible payment and performance in full of all of the Guaranteed Obligations.

3.8     Payments; Application. All payments to be made hereunder by the Guarantor shall be made in lawful money of the United States of America at the time of payment, shall be made in immediately available funds, and shall be made without deduction (whether for taxes or otherwise) or offset. All payments received by the Creditor from the Guarantor hereunder shall be applied as follows: first, to all costs and expenses (including attorneys' fees and expenses and attorneys' fees and expenses incurred pursuant to proceedings arising under the Bankruptcy

6 of 11
GUARANTY of August 23, 2012                                          Guarantor Initials

Code) incurred by the Creditor in enforcing this Guaranty or in collecting the Guaranteed Obligations; second, to all accrued and unpaid interest, premium, if any, and fees owing to the Creditor constituting Guaranteed Obligations; and third, to the balance of the Guaranteed Obligations.

3.9    Cumulative Remedies. No remedy under this Guaranty or under any of the Loan Documents is intended to be exclusive of any other remedy, but each and every remedy shall be cumulative and in addition to any and every other remedy given hereunder or under any of the Loan Documents, and those provided by law or in equity. No delay or omission by the Creditor to exercise any right under this Guaranty shall impair any such right nor be construed to be a waiver thereof. No failure on the part of the Creditor to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

## ARTICLE 4 - REPRESENTATIONS AND WARRANTIES

4.1    Representations and Warranties. The Guarantor hereby represents and warrants to the Creditor that:

4.1.1    The Guarantor is company duly organized, validly existing, and in good standing under the laws of the State of California, USA

4.1.2    Guarantor's execution, delivery, and performance of this Guarantee and all the Loan Documents have been duly authorized by all necessary action by Guarantor and do not conflict with, result in a violation of, or constitute a default under (1) any provision of Guarantor's articles of incorporation or organization, or bylaws, or any agreement or other instrument binding upon Guarantor or (2) any law, governmental regulation, court decree, or order applicable to Guarantor or to Guarantor's properties.

4.1.3    This Agreement constitutes legal, valid, and binding obligations of Guarantor enforceable against Guarantor in accordance with their respective terms.

4.2    Borrower's Financial Condition. The Guarantor represents and warrants to the Creditor that the Guarantor is currently informed of the financial condition of the Borrower and of all other circumstances which a diligent inquiry would reveal and which bear upon the risk of nonpayment of the Guaranteed Obligations. The Guarantor further represents and warrants to the Creditor that the Guarantor has read and understands the terms and conditions of the Agreement and the other Loan Documents. The Guarantor hereby covenants that the Guarantor will continue to keep informed of the Borrower's financial condition, the financial condition of other guarantors, if any, of any of the Guaranteed Obligations and of all other circumstances which bear upon the risk of nonpayment or nonperformance of the Guaranteed Obligations.

## ARTICLE 5 - GENERAL PROVISIONS

Guarantor Initials:

5.1    Interest; Attorneys' Fees and Costs. All payments not made when due hereunder by the Guarantor to the Creditor on account of any of the Guaranteed Obligations shall bear interest from the due date hereunder until paid to the Creditor at the Default Rate specified in the Agreement. The Guarantor shall also, upon demand, indemnify the Creditor against and pay to the Creditor (a) any and all attorneys' fees, costs and other expenses that the Creditor actually expends or incurs in collecting the Guaranteed Obligations or in enforcing this Guaranty against the Guarantor, whether or not suit is filed, including, without limitation, all costs and all attorneys' fees and expenses actually expended or incurred by the Creditor in connection with, or in defense of, any insolvency, bankruptcy, reorganization, arrangement or other similar proceeding involving the Guarantor that in any way affects the exercise by Creditor of any of its rights and remedies under this Guaranty and (b) any and all amounts which the Creditor at any time returns to the Borrower or to the Borrower's trustee in bankruptcy, whether voluntarily or involuntarily and whether or not suit is filed, in response to any claim that the Creditor had theretofore received preferential payments or transfers in fraud of creditors within the meaning of any bankruptcy, insolvency or other similar law, now or hereafter existing.

5.2    Notices. All notices, requests, demands or other communications to the respective parties hereto shall be in writing and shall be delivered by hand, by internationally recognized overnight courier (e.g., FedEx or DHL), by facsimile or by email and shall be deemed to have been received by the party to which sent (a) on the day of delivery (if delivered by hand), or one (1) Business Day after being sent by facsimile (with confirmation of successful transmission issued from the sender's facsimile machine), or one (1) Business Day after being sent by email (with confirmation of successful transmission issued from the sender's email server), or two (2) Business Day after being sent by internationally recognized overnight courier, or (b) on such later date if the recipient gives verifiable proof of receipt on such later date, and shall be addressed to the parties hereto, as the case may be, at their respective addresses set forth herein. The addresses of the parties hereto (until notice of a change thereof is served as provided in this Section 5.2) shall be as follows:

If to the Guarantor:
AFB Trading One, Inc.
8501 Wilshire Boulevard
Suite 330
Beverly Hills, California
USA 90211

If to the Creditor:
Agragorn Holdings Limited
Trident Chambers, Wickhams Cay, Road
Town, Tortola
British Virgin Islands

5.3    Books and Records. The Creditor's books and records showing the account between the Creditor and the Borrower shall be admissible in any action or proceeding and shall, absent manifest error, constitute rebuttably presumptive proof thereof and shall be binding upon the Guarantor for the purpose of establishing the items therein set forth and shall constitute prima facie proof thereof.

5.4    Severability of Provisions. If any provision of this Guaranty is for any reason held to be invalid, illegal or unenforceable in any respect, that provision shall not affect the validity, legality or enforceability of any other provision of this Guaranty.

8 of 11
GUARANTY of August 23, 2012

Guarantor Initials _____

5.5     Successors and Assigns. This Guaranty shall bind the heirs, administrators, executors, representatives, successors and assigns of the Guarantor, and shall inure to the benefit of the successors and assigns of the Creditor; provided, however, Guarantor may not assign this Guaranty or delegate any of his duties hereunder without the Creditor's prior written consent and any such prohibited assignment shall be absolutely null and void. The Creditor reserves its right to sell, assign, transfer, negotiate, or grant participations in all or any part of, or any interest in, the rights and benefits hereunder pursuant to and in accordance with the provisions of the Loan Documents. In connection therewith, the Creditor may disclose all documents and information which the Creditor now or hereafter may have relating to the Guarantor, the Guarantor's business, or this Guaranty to any such prospective or actual transferee.

5.6     Governing Law. This Guaranty shall be deemed to have been made in Los Angeles County, State of California, United States of America, and the validity, construction, interpretation, and enforcement hereof, and the rights of the parties hereto, shall be determined under, governed by, and construed and enforced in accordance with the laws of the state of California, and federal laws of the United States of America, without regard to principles of conflicts of law.

5.7     ARBITRATION. ARBITRATION. Any and all disputes, disagreements or claims arising from or in connection with this agreement, including those relating to its execution, violation, termination or invalidity, shall be resolved by the arbitration court formed by the parties to resolve a specific dispute by any sole arbitration judge at the choice of the plaintiff, pursuant to that forum's applicable rules and in accordance with  laws and current legislation of the Russian Federation. Dispute resolution, at the option of the plaintiff, can only take place on the basis of written materials provided by the parties, without necessarily holding an oral hearing and calling the parties. Participation of the parties and the arbitrator in meetings is allowed via electronic video conference, for example Skype. The parties agreed that the proceedings will be conducted in Moscow, Russian Federation, in Russian language and in accordance with laws and regulations of Russian Federation.

The parties agree that the arbitrator shall determine the existence and scope of the agreement to arbitrate, and shall be authorized to issue any award, monetary or non-monetary, to effectuate their decision, to the maximum extent possible. THE PARTIES WAIVE ANY RIGHT TO APPEAL OR OTHERWISE CHALLENGE THE AWARD OF THE ARBITRATOR. The decision of the arbitral court (tribunal is final). The parties further agree that any award from the arbitrator may be entered in any jurisdiction where any of the parties are located, where they may have assets, or where entry of the award as a judgment may assist a party in enforcing the award or judgment thereon. Upon a default by Guarantor, Creditor may immediately demand arbitration with Guarantor, without any conditions precedent, which demand may be served be electronic means (such as email) on Guarantor and/or their counsel—actual notice of the demand for arbitration is sufficient to initiate the arbitration. The parties agree to split the cost of the arbitration, 50/50. However, the arbitrator shall award costs and attorney's fees to the prevailing party in any arbitration, as well as incorporating an award of costs and attorney's fees on an ongoing basis for judgment enforcement efforts in favor of the prevailing party. To the extent any party fails or refuses to submit to or participate in an arbitration once that arbitration is initiated, the arbitrator may move forward to a hearing on the merits without the participation of

9 of 11
GUARANTY of August 23, 2012

Guarantor Initials: _____

the non-participating party, without the participating party first-moving to compel arbitration, so long as the party demanding arbitration pays the costs of that arbitration and gives notice of all proceedings to the non-participating party and/or the non-participating party's counsel. If the arbitration seeks to enforce this Guaranty upon a default by Guarantor, discovery in the arbitration shall be limited to any defenses the arbitrator determines to be factually and legally plausible, and shall not include depositions or interrogatories, but only document discovery and the identity and contact information for witnesses supporting those defenses, unless the parties agree otherwise, or the arbitrator specifically authorizes such means of discovery for good cause.

The writ of execution is issued at the place of arbitration or any jurisdiction where any of the parties are located, where they may have assets, or where entry of the award as a judgment may assist a party in enforcing the award or judgment thereon.

5.8    Waiver of Jury Trial. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE GUARANTOR AND THE CREDITOR EACH WAIVES ITS RESPECTIVE RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS GUARANTY, THE DOCUMENTS EXECUTED IN CONNECTION HEREWITH, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION, PROCEEDING OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE. THE GUARANTOR AND THE CREDITOR EACH AGREES THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS GUARANTY OR THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY AND/OR THE DOCUMENTS EXECUTED IN CONNECTION HEREWITH.

5.9    Entire Agreement; Amendments and Waivers. This Guaranty constitutes the entire agreement between the Guarantor and the Creditor pertaining to the subject matter contained herein. Any provision of this Guaranty may be amended or waived if, but only if, such amendment or waiver is in writing and is signed by the party asserted to be bound thereby, and then such amendment or waiver shall be effective only in the specific instance and specific purpose for which given. No delay or omission by the Creditor to exercise any right under this Guaranty shall impair any such right, nor shall it be construed to be a waiver thereof. No waiver of any single breach or default under this Guaranty shall be deemed a waiver of any other breach or default.

5.10    Counterparts. This Guaranty may be executed in any number of counterparts, all of which shall be deemed an original and all of which, when taken together, shall constitute one in the same instrument. Executed copies of the signature pages of this Guaranty sent by facsimile or transmitted electronically in either a Tagged Image Format File ("TIFF") or a Portable

Guarantor Initials:

Document Format ("PDF") shall be treated as originals, fully binding and with full legal force and effect, and the parties waive any rights they may have to object to such treatment. Any party delivering an executed counterpart of this Guaranty by facsimile or electronically in either TIFF or PDF shall also deliver a manually executed counterpart of this Guaranty but the failure to deliver a manually executed counterpart shall not affect the validity, enforceability, and binding effect of this Guaranty.

IN WITNESS WHEREOF, the Guarantor has executed and delivered this Guaranty as of the date set forth in the first paragraph hereof.

"GUARANTOR"

Golden Sphinx Limited
By: Garry Itkin
Title: Sole director and officer

ACCEPTED AND AGREED BY "CREDITOR" (as of the date set forth in the first paragraph hereof):

Agragorn Holdings Limited
By: Theophanis Philippou
Title: representing the sole director
keeperium Nominees Ltd.

11 of 11
GUARANTY of August 23, 2012

Guarantor Initials:

# EXHIBIT 12

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

<u>ASSIGNMENT OF RIGHTS UNDER LOAN AGREEMENT</u>

This Assignment of Rights Under Loan Agreement ("Assignment") is dated September 7th, 2020 by and among Agragorn Holdings Limited, a company incorporated in British Virgin Islands, whose registered office is at Trident Chambers, Wickhams Cay, Road Town, Tortola, British Virgin Islands ("**Assignor**"), and Davilla Investing Limited a company incorporated in British Virgin Islands, whose registered office is at Trident Chambers, Wickhams Cay, Road Town, Tortola, British Virgin Islands (the "**Assignee**"). Each of the Assignor and Assignee is hereinafter referred to as a "**Party**" and collectively the "**Parties**".

WITNESSETH

**WHEREAS,** Golden Spirits Limited, is a limited liability company organized and registered under the laws of the Isle of Jersey, Channel Island, domiciled at 43 La Motte Street, St. Helier, Isle of Jersey JE4 8SD, Channel Island (the "**Borrower**");

**WHEREAS,** the Assignor and Borrower have entered into the Loan Agreement on April 20 2010 ("Loan Agreement") and Loan Modification and Forbearance Agreement on August 23 2012 ("Loan Modification and Forbearance Agreement") which, together with all of their Schedules, Annexes, Exhibits and Amendments, and including without limitation the right to demand payment of the sums for which Borrower ever becomes liable to the Assignor upon the Guarantees of (a) AFB Trading One, Inc., a company incorporated in the State of California, USA, whose registered office are at 8501 Wilshire Blvd., Suite 330, Beverly Hills, California, USA ("Guarantor 1"), and (b) Golden Sphinx Limited, a limited liability company organized and registered under the laws of the Isle of Jersey, Channel Island, domiciled at 43 La Motte Street, St. Helier, Isle of Jersey JE4 8SD, Channel Island ("Guarantor 2") hereinafter collectively, the "**Loan Agreement**");

**WHEREAS,** Guarantor 1 and Guarantor 2 have granted to the Assignor Guarantees, jointly and severally unconditionally and irrevocably guaranteeing to Assignor and Assignor's successors and assigns, the punctual and faithful performance, keeping, observance, fulfillment and payment of the Indebtedness by the Borrower as provided for in Loan Agreement and Loan Modification and Forbearance Agreement, hereinafter "**Security Documents**", and together with the Loan Agreement, the "**Loan Documents**");

**WHEREAS**, under the Loan Agreement, and pursuant to its terms, the Borrower has an outstanding principal debt to the Assignor of US$1,022,000. In addition to outstanding principal debt to Assignor in amount of US$1,022,000, an unpaid interest continues to accrue according to the terms of the Loan Agreement and Loan Modification and Forbearance Agreement. Moreover, the Borrower is obligated to Assignor for other fees, costs, and expenses in accordance with and as may be provided for in the Loan Agreement and Loan Modification and Forbearance Agreement (hereinafter the "**Indebtedness**");

**WHEREAS**, the Assignor has the right, under the terms of the Loan Documents, to transfer and assign to a third party all of its rights and obligations under the Loan Documents, including all of the Assignor's rights and obligations in connection with the Indebtedness and arising pursuant to the provisions of the Loan Documents and with respect to any collateral, security interest, guarantees, charge or pledge granted to the Assignor in connection with the

Loan Documents, which together with all such interests and rights shall be collectively referred to hereinafter as "**Assignor's Rights and Obligations**";

**WHEREAS**, the Assignor wishes to sell and assign to Assignee the Assignor's Rights and Obligations, and the Assignee desires to purchase and assume from the Assignor the Assignor's Rights and Obligations, and by virtue thereof, the Assignor shall be released and discharged from any further rights and obligations thereunder;

**NOW, THEREFORE**, in consideration of the mutual promises and conditions herein contained, the Parties hereto hereby agree as follows:

## Article I

Sale and Assignment of the Assignor's Rights and Obligations.

The Assignor hereby irrevocably sells and assigns to Assignee in full the Assignor's Rights and Obligations, and the Assignee hereby irrevocably purchases and assumes in full the Assignor's Rights and Obligations, and as of such time the Assignor shall cease to have any rights and/or obligations under the Loan Documents. The sale and assignment by the Assignor of the Assignor's Rights and Obligations and the purchase and assumption thereof by the Assignee shall be against payment by Assignee to the Assignor of US$1,022,000 (hereinafter the "**Debt Sale Consideration**"), payable upon recovery of the Indebtedness, in cash in US$ to be paid via wire transfer of immediately available funds to a Assignor account designated by the Assignor.

## Article II

Representations, Warranties and Covenants

Each Party represents and warrants to the other Party as follows:

2.1    Such Party has full corporate and/or partnership power, as applicable, and authority to execute and deliver this Agreement and any other agreement contemplated hereby, to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated on its part hereby and thereby. The execution, delivery and performance by such Party of this Agreement and any other agreement contemplated hereby have been duly authorized by all necessary corporate action on the part of such Party, and no other action on the part of such Party is necessary to authorize the execution and delivery of this Agreement and any other agreement contemplated hereby by such Party, or the performance by such Party of its obligations hereunder. This Agreement has been duly executed and delivered by the Party and constitutes a legal, valid and binding agreement of such Party, enforceable against it in accordance with its terms.

2.2    The execution and delivery of this Agreement by such Party, the performance by such Party of its obligations hereunder and thereunder and the consummation by it of the transactions contemplated hereby and thereby will not violate any provision of law, rule, regulation, order, writ, judgment, injunction, decree, determination or award applicable to such Party, or any agreement to which such Party is a party. No consents, notices, filings, approvals or authorizations are required to be made to or with any person, entity or governmental body by such party for the consummation of the transactions contemplated by this Agreement which

have not been obtained or made and the failure of which to obtain or make would have a Material Adverse Effect.

2.3     Representations and Warranties of the Assignor. In addition to the foregoing, the Assignor represents and warrants to the Assignee as follows:

2.3.1   The Assignor is the sole legal and beneficial owner of the Assignor's Rights and Obligations and has the right under the terms of the Loan Documents to transfer and assign them in full to the Assignee. No other assignment, transfer or grant of any of the Assignor's rights and/or obligations under the Loan Documents exists and Assignee hereby acquires and assumes from the Assignor all of Assignor's rights, title and interests, in, to Assignor's Rights and Obligations.

2.3.2   The outstanding amount of principal debt by the Borrower to the Assignor is US$1,022,000. The Assignor has no obligation to make loans to, make guarantees on behalf of, or otherwise extend credit to or for the benefit of, the Borrower or any other person under or in connection with the Assignor's Rights and Obligations. To the actual knowledge of the Assignor, no Event of Default has occurred and is continuing, nor has the Assignor received written notice from the Borrower of any Potential Event of Default (as each of those terms is defined in the Loan Agreement).

2.3.3   No proceedings relating to the Assignor's Rights and Obligations are pending against the Assignor or to the Assignor's knowledge, threatened against the Assignor before any court, arbitrator or administrative or governmental body which, in the aggregate, would have a Material Adverse Effect.

2.3.4   The Assignor has provided Assignee with a complete and accurate copy of the Loan Documents, as amended to date, and other than the Loan Documents, the Assignor is not a party to any other agreement that materially affects the Assignor's Rights and Obligations.

2.3.5   Assignor has not breached any of its material representations, warranties, covenants or obligations under the Loan Documents.

3.3 Representations and Warranties of the Assignee. In addition to the foregoing, the Assignee represents and warrants to the Assignor as follows:

3.3.1   The Assignee is a sophisticated investor, experienced in financial and business matters and in purchasing shares or investing in companies, is capable of evaluating the merits and risks of the transactions contemplated hereunder, and is able to fend for itself and bear the risks thereof. Assignee is financially capable to perform all of its obligations under this Agreement.

3.3.2   The Assignee shall perform the obligations and receive the rights of the Assignor under the Assignor's Rights and Obligations and be fully and solely responsible for all liabilities, claims and demands arising thereunder and be bound by its terms in every way and by virtue thereof, the Assignor shall be released and discharged from any further performance under the Assignor's Rights and Obligations.

3.4 Covenants and Undertakings of the Parties. Each Party covenants and undertakes towards the other Party that:

3.4.1 The Parties shall respectively co-operate with each other to ensure that all information necessary or desirable for the making of (or responding to) any notifications or filings is supplied to the persons dealing with such notifications and filings and that they are

properly, accurately and promptly made, including any notifications or filings required to be made.

3.4.2 At all times after the date of this Agreement, the Parties shall, at their own expense, exert their reasonable commercial efforts, execute all such documents and do such acts and things as may reasonably be required by any Party for the consummation of this Agreement.

3.4.3 Each of the Parties shall do all things reasonably within its power which are necessary or desirable to give effect to the spirit and intent of this Agreement and to act reasonably and in good faith towards each other in the exercise of their rights and in the discharge of their obligations hereunder.

## Article IV
General Provisions and Miscellaneous

4.1 <u>Binding Agreement</u>. This Agreement, including all Schedules and other documents relating hereto, constitutes the entire agreement between the Parties hereto with respect to the subject matter hereof and embodies all the terms binding upon the Parties in respect thereof and supersedes and replaces any and all other prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof. No Party shall be liable or bound in any manner by prior or contemporaneous express or implied representation, warranty, statement, promise, covenant or agreement pertaining to said transactions made by it or on its behalf unless same is expressly set forth or referred to herein.

4.2 <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each Party and delivered to the other Party.

4.3 <u>Amendments, Waivers, Discharges and Consents</u>. No amendment, change or modification of this Agreement or any of the provisions, terms or conditions hereof, no waiver of a right, remedy, privilege or power, or discharge of an obligation or liability, conferred upon, vested in or imposed on either Party under or pursuant to this Agreement, and no consent to any act or omission pertaining hereto shall come into operation and be effective unless duly embodied in a written instrument signed by or on behalf of the Party against whom such amendment, change, modification, waiver, discharge or consent is asserted or sought.

No failure to exercise and no delay in exercising any right, remedy, privilege or power under or pursuant to this Agreement shall operate as a waiver thereof; nor shall any single or partial exercise of any such right, remedy, privilege or power preclude any other or further exercise thereof or the exercise of any other right, remedy, privilege or power.

4.4 <u>Partial Invalidity or Unenforceability, Assignment</u>. If any provision of this Agreement is held to be invalid or unenforceable, such invalidity or unenforceability shall not invalidate this Agreement as a whole, but this Agreement shall be construed as though it did not contain the particular provision held to be invalid or unenforceable and the rights and obligations of the Parties shall be construed and enforced only to such extent as shall be permitted by law and in accordance with the Parties' intentions as they were on the date hereof. Neither this Agreement as a whole nor any right or obligation hereunder shall be assignable by any Party without the prior written consent of the other Party, provided however, that the Assignee shall

be entitled to assign this Agreement to any affiliated party reasonably acceptable to the Assignor.

4.5 <u>Governing Law</u>. This Agreement and the rights and obligations of the Parties hereunder or pursuant hereto shall be governed by and construed in accordance with the laws of the United Kingdom (irrespective of its choice of law rules). Any controversy or claim arising under, out of, or in connection with this Agreement, its validity, its interpretation, its execution or any breach or claimed breach thereof shall be brought by private arbitration between the parties before any arbitrator they so pick, who shall have sole and exclusive jurisdiction over any matter arising hereunder, and each of the Parties irrevocably submits to such jurisdiction and irrevocably waives any objection, including, but not limited to, any objection to the laying of venue or based on the grounds of *forum non conveniens*, which it may now or hereafter have to the bringing of any matter arising hereunder in said jurisdiction.

4.6 <u>Public Announcements</u>. Neither Party shall make any public statements or issue any press releases with respect to this Agreement and the transactions contemplated hereby without the prior written consent of the other Party (which consent shall not be unreasonably withheld or delayed) except as may be required by applicable law. Parties hereby obligate themselves to maintain and provide confidentiality, oral as well as written, to Loan Documents and all information contained therein.

4.7 <u>Notices</u>. Each communication to be made under this agreement shall be made in writing and, unless otherwise stated, may be made also by fax transmission. Each communication or document to be made or delivered by one Party to another pursuant to this Agreement shall (unless that other Party has by 14 days' written notice specified another address) be made or delivered to that party, addressed as follows:

| If to the Assignor | If to Assignee |
|---|---|
| Agragorn Holdings Limited<br>Trident Chambers, Wickhams Cay<br>Road Town, Tortola,<br>British Virgin Islands | Davilla Investing Limited<br>Trident Chambers, Wickhams Cay<br>Road Town, Tortola,<br>British Virgin Islands |

and shall be deemed to have been made or delivered the next business day after delivery (in the case of any communication made by facsimile transmission) or (in the case of any communication made by letter) the next business day after being physically left at that address.

**IN WITNESS WHEREOF**, the Parties hereto have caused this **LOAN ASSIGNMENT AGREEMENT** to be duly executed and delivered as of the date first written above

**Assignor:**                  **Assignee:**

Agragorn Holdings Limited         Davilla Investing Limited
By: Theophanis Philippou        By:
Title: representing the sole        Title:
       director Imperium business Ltd.

# EXHIBIT 13

16

Document from CIS Legislation database © 2003-2025 SojuzPravoInform LLC

# FEDERAL LAW OF THE RUSSIAN FEDERATION

of December 29, 2015 No. 382-FZ

**About arbitration (arbitration) in the Russian Federation**

(as amended on 08-08-2024)

Accepted by the State Duma on December 15, 2015

Approved by the Federation Council on December 25, 2015

## Chapter 1. General provisions

**Article 1. Scope of this Federal Law**

1. This Federal Law regulates procedure for education and activities of reference tribunals and permanent arbitration institutions in the territory of the Russian Federation, and also arbitration (arbitration).

2. Part provisions 7.1 articles 7, of articles 39 and 43, of Chapters 9 - the 12th this Federal Law are applied to the organization not only arbitration of internal disputes, but also the international commercial arbitration which place is the Russian Federation.

3. To arbitration (arbitration) disputes between the parties of the civil relations by agreement of the parties can be referred if other is not provided by the Federal Law.

4. By the Federal Law transfer restrictions of separate categories of disputes in arbitration (arbitration) can be set.

5. If this Federal Law does not provide other, it extends as to the arbitration (arbitration) administered by permanent arbitration institution and to the arbitration (arbitration) performed by the reference tribunal formed by the parties for permission of specific dispute.

6. The procedure for consideration of disputes in the field of professional sport and elite sport is established by the Federal Law.

**Article 2. The basic concepts used in this Federal Law**

For the purposes of this Federal Law the following basic concepts are used:

1) the arbitrator (the arbitration judge) - the physical person elected by the parties or chosen (appointed) in the procedure approved by the parties or established by the Federal Law for the dispute resolution reference tribunal. Activities of arbitrators within arbitration (arbitration) are not entrepreneurial;

2) arbitration (arbitration) - process of the dispute resolution by reference tribunal and decision makings (arbitral decision) by reference tribunal;

3) administration of arbitration - accomplishment of functions by permanent arbitration institution on organizational support of arbitration, including on providing procedures of the choice, appointment or removal of arbitrators, record keeping, the organization of collection and distribution of the arbitration fees, except for directly functions of reference tribunal according to the dispute resolution;

4) arbitration of internal disputes - the arbitration which is not relating to the international commercial arbitration;

5) foreign arbitral organization - the organization created outside the Russian Federation and performing on permanent basis functions on administration of arbitration regardless of whether she is legal entity or is effective without education of the independent legal entity;

6) the international commercial arbitration - arbitration to which <u>the Law</u> of the Russian Federation of July 7, 1993 No. 5338-1 "About the international commercial arbitration" is applied;

7) competent court - the court of the Russian Federation determined according to the procedural legislation of the Russian Federation;

8) committee on appointments - the collegiate organ as a part of at least five people created in permanent arbitration institution, performing functions to destination, to branch and the termination of powers of arbitrators and other functions provided by this Federal Law;

9) permanent arbitration institution - the division of non-profit organization performing on permanent basis functions on administration of arbitration;

10) rules of arbitration - the rules regulating the arbitration including administered by permanent arbitration institution;

11) rules of arbitration of corporate disputes - the rules of permanent arbitration institution regulating arbitration of disputes which are connected with creation of the legal entity in the Russian Federation management of it or participation in the legal entity and which parties are founders, participants, members (further - participants) the legal entity and the legal entity, including disputes over claims of members of the legal entity in connection with legal relationship of the legal entity with the third party if members of the legal entity have right to submission of such claims according to the Federal Law, except for the disputes provided by part 7.1 of article 45 of this Federal Law;

12) rules of permanent arbitration institution - the charters, provisions, regulations containing including rules of arbitration and (or) the rule of accomplishment of separate functions by permanent arbitration institution on administration of the arbitration performed by the reference tribunal formed by the parties for permission of specific dispute;

13) the direct agreement - the agreement which is signed by the parties in the cases provided by part 4 Articles 11, part 3 Articles 13, part of 1 Article 14, part 3 Articles 16, part of 1 Article 27, Article 40, part 2 Articles 41, part 1 of article 47 of this Federal Law and has priority in relation to rules of

arbitration;

14) the parties of arbitration - the organization - the legal entities, citizens who are individual entrepreneurs, physical persons which showed the action for declaration according to the procedure of arbitration in protection of the rights and interests or to which the claim according to the procedure of arbitration and also which joined arbitration of corporate disputes as their participants in the cases provided by this Federal Law is made;

15) court - body of judicial system of the Russian Federation or foreign state;

16) reference tribunal - the single arbitrator or board of arbitrators;

17) the reference tribunal formed by the parties for permission of specific dispute, - the reference tribunal performing arbitration in the absence of administration from permanent arbitration institution (except for possible accomplishment of separate functions by permanent arbitration institution on administration of specific dispute if it is provided by the agreement of the parties of arbitration);

18) authorized federal executive body - the federal executive body authorized on implementation of functions on development and realization of state policy in the field of justice;

19) organization right predecessor - permanent reference tribunal which is created about day of entry into force of this Federal Law and in relation to which according to this Federal Law the organization legal successor for the purposes of administration of arbitration is created;

20) organization legal successor - the permanent arbitration institution which is created according to the procedure established by this Federal Law, and performs administration of arbitration according to earlier signed arbitral agreements providing administration of arbitration from organization right predecessor;

21) the electronic document transferred on communication channels - the information prepared, sent, received or stored by means of electronic, magnetic, optical or similar means including electronic data exchange and e-mail.

### Article 3. Receipt of documents and other materials

1. Documents and other materials go to the parties in the procedure approved by them and to the addresses specified by them.

2. If the parties of arbitration did not approve other procedure, documents and other materials go in the last known location of the organization which is the party of arbitration or for the residence of the citizen, including individual entrepreneur, being the party of arbitration, the registered mail with the assurance of receipt or different way providing fixing of attempt of delivery of the specified documents and materials. Documents and other materials are considered received in day of such delivery (delivery attempt fixing) even if the party of arbitration to this address is not or does not live.

### Article 4. Disclaimer on objection

If the party which knows that any dispositive provision of this Federal Law or any requirement provided by the arbitral agreement was not observed and nevertheless continues to participate in arbitration, without having declared objections against such non-compliance without unjustifiable delay and if for this purpose any term, during such term is provided, it is considered refused the right to objection.

### Article 5. Limits of intervention of court

On the questions regulated by this Federal Law, no judicial intervention shall take place, except as in cases when it is provided by this Federal Law.

### Article 6. Bodies for accomplishment of certain functions of assistance and control concerning arbitration

The functions specified in parts 3 and 4 of Article 11, speak rapidly 3 Articles 13, of part of 1 Article 14, of part 3 of Article 16 and article 40 of this Federal Law, are carried out by competent court.

## Chapter 2. Arbitral agreement

### Article 7. Determination, form and interpretation of the arbitral agreement

1. The arbitral agreement is the agreement of the parties on transfer to arbitration of all or certain disputes which arose or can arise between them in connection with any specific legal relationship irrespective of, it legal relationship had contractual character or not. The arbitral agreement can be signed in the form of the arbitration clause in the agreement or in the form of the free standing agreement.

2. The arbitral agreement is signed in writing.

3. The provision provided by part 2 of this Article is considered observed if the arbitral agreement is signed including by exchange of letters, telegrams, telex, telefaxes and other documents, including the electronic documents transferred on the communication channels allowing to determine authentically that the document proceeds from other party.

# EXHIBIT 14

17

## ЗАЯВЛЕНИЕ Дмитрия Валерьевича Князева, российского арбитра

Я, Дмитрий Валерьевич Князев, заявляю следующее:

1. Я имею надлежащее право заниматься юридической практикой в Российской Федерации и являюсь арбитром в Российской Федерации. Я лично знаком с фактами, изложенными в настоящем заявлении, за исключением случаев, когда я прямо указываю, что заявление основано на моем ознакомлении с публичными документами или информацией из арбитражного дела. В случае вызова в качестве свидетеля я мог бы и стал бы компетентно давать показания по фактам, изложенным в настоящем заявлении. Настоящее заявление сделано в связи с ходатайством об утверждении иностранных арбитражных решений, находящимся на рассмотрении в этом Суде. Настоящее подписанное заявление и прилагаемые к нему документы/приложения также будут впоследствии апостилированы; однако получение такого апостиля в Российской Федерации занимает приблизительно 2-4 недели.

19

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

2. Я был должным образом выбран сторонами в соответствии с их письменным Соглашением о выборе (идентификации) арбитра и применимыми правилами от 23 августа 2012 года. В этом качестве я вынес постановление/решение по существу спора 31 августа 2021 года. Стороны и их адвокаты присутствовали на арбитражном заседании, в том числе г-н Майкл Зоркин, представлявший компанию AFB Trading One, Inc., и Лариса Сабадаш в качестве ее уполномоченного представителя на первом арбитражном заседании.

3. Я выступал в качестве единственного арбитра в арбитражном разбирательстве ad hoc по спору о задолженности в арбитражном деле Davilla Investing Limited против Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited и Agragorn Holdings Limited, арбитражное дело № 1800-4/1301, предмет которого был решен путем вынесения мной окончательного письменного арбитражного решения 31 августа 2021 года. Подлинная и точная копия окончательного арбитражного решения, вынесенного мной 31 августа 2021 года по

20

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

арбитражному делу Davilla Investing Limited против Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited и Agragorn Holdings Limited, арбитражное дело № 1800-4/1301, прилагается к настоящему документу в качестве Приложения 1 и включена в него, как если бы она была изложена полностью. (Далее «Первое решение»).

4. После этого состоялось дополнительное арбитражное слушание, связанное с передачей прав кредитора по данному решению Александру Александровичу Гранту компанией Davilla Investing Limited и касающееся невыплаты долга и решения арбитража. После надлежащего уведомления всех сторон о слушании я вынес постановление/решение от 15 августа 2025 года и представил дополнительные выводы. Подлинная и точная копия окончательного арбитражного решения, вынесенного мной 15 августа 2025 года по арбитражному разбирательству в отношении Гранта Александра Александровича, правопреемника Davilla Investing Limited, против AFB Trading One, Inc. и Golden Sphinx Limited, в соответствии с арбитражным решением от 31

21

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

августа 2021 года по делу № 1800-4/1301, прилагается к настоящему документу в качестве Приложения 2 и включена в него, как если бы она была изложена полностью. (Далее «Второе решение»).

5. Мне сообщили, и я полагаю, что г-н Грант начал это дело, подав ходатайство об утверждении Первого и Второго арбитражных решений. После подачи этого ходатайства мне сообщили, что оно было отклонено компанией AFB Trading One, Inc. Мне были предоставлены копии и я ознакомился, в частности, с ходатайством и сопроводительными документами; а также с возражениями ответчиков против ходатайства, включая сопроводительное заявление Майкла Зоркина и приложения, заявление Лариссы Сабадаш и приложения, а также заявление Дарьи Трубиной.

6. Эти документы содержат несколько ложных утверждений, в том числе, помимо прочего, ложные заявления о том, что Первое и Второе арбитражные решения являются или были «поддельными»; и что фактических арбитражных слушаний не было. Приложения 1

22

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

и 2 к настоящему документу являются подлинными и достоверными копиями Первого и Второго арбитражных решений, и я председательствовал на арбитражных слушаниях после надлежащего уведомления, полученного ответчиками и третьей стороной.

7. Первое арбитражное разбирательство было начато компанией Davilla Investing Limited против Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited и Agragorn Holdings Limited с целью взыскания задолженности, возникшей в результате кредита, соглашения об изменении условий кредита/отсрочке платежей и гарантий, которые ответчики не выплатили.

8. В материалах арбитражного разбирательства указано, что 18 мая 2021 года всем сторонам, включая ответчиков, заказным письмом было направлено уведомление об арбитраже с исковым заявлением и приложениями. В материалах также отражено последующее письменное и электронное участие лиц, действующих от имени ответчиков или представляющих их интересы.

23

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

9. В ходе первого арбитражного разбирательства я получал сообщения и документы от лиц, представляющихся представителями ответчиков, включая Татьяну Падалко, Ларису Сабадаш и Майкла Зоркина (в том числе с адреса электронной почты mz@thezorkinfirm.com). Например, 25 августа 2021 года примерно в 3:50 утра я получил электронное письмо от г-на Зоркина с заголовком «Тема: AFB Trading One, Inc. и Golden Sphinx Limited» и несколькими приложениями. В тексте письма на русском языке мне было написано: «Г-н Князев,

Прилагается ответ на претензию Ларисы Сабадаш от имени AFB Trading One, Inc. и Golden Sphinx Limited.

Майкл Зоркин

Управляющий партнер».

Подлинная и точная копия электронного письма Майкла Зоркина от 25 августа 2021 года в 3:50 утра прилагается в качестве Приложения 3.

24

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

10. Эти действия ясно демонстрируют, что Ответчики получили фактическое уведомление и явились на арбитражное разбирательство.

11. 19 июля 2021 года Татьяна Падалко написала в трибунал, представившись финансовым управляющим Александра В. Сабадаша, и заявила, что организации-ответчики принадлежат Сабадашу, а также выдвинула обвинения в фальсификации представленных ей в рамках спора документов. На следующий день, 20 июля 2021 года, г-жа Падалко также представила заявление об истечении срока давности и заявление о фальсификации документов.

12. Я рассмотрел эти обвинения и возражения в надлежащем порядке в ходе разбирательства. Я изучил оригинальные документы, представленные в арбитраже, заявления сторон и дополнительную информацию, представленную арбитражному суду. На основании этого изучения я не обнаружил фальсификации действующих документов и установил, что иск не подпадает под действие срока давности.

25

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

13. В рамках первого арбитражного разбирательства 5 августа 2021 года я направил письменный запрос информации Гарри Иткину. Я получил его ответы приблизительно 10 августа 2021 года. Я рассмотрел эти ответы вместе с документальными доказательствами и письменными заявлениями ответчиков.

14. В ходе арбитража я рассмотрел, среди прочего:

(a) кредитное соглашение от 20 апреля 2010 года;

(b) подтверждение перевода приблизительно 1 022 000 долларов США;

(c) Соглашение от 23 августа 2012 года о внесении изменений и отсрочке платежей по долгу;

(d) соответствующие гарантии;

(e) письменное соглашение сторон о выборе арбитра; и

(f) более поздние материалы по назначению арбитра.

На основании представленных мне доказательств я пришел к выводу, что соответствующие соглашения были надлежащим образом оформлены и подлежат исполнению.

26

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

15. Возражений против моей юрисдикции по разрешению спора в соответствии с письменным арбитражным соглашением сторон не было. Это отражено в моем Постановлении от 31 августа 2021 года, в котором прямо указано, что до начала разбирательства по существу не было выдвинуто никаких возражений относительно юрисдикции арбитра по рассмотрению данного вопроса.

16. Точнее говоря, ответчики пытались представить с опозданием документы, содержащие такие аргументы, как ликвидация, недееспособность и связанные с этим возражения. Однако эти заявления не аннулировали арбитражное соглашение сторон, не представляли собой надлежащего и своевременного оспаривания моего назначения в качестве арбитра, выбранного сторонами, и не исключали моей юрисдикции в соответствии с письменным соглашением сторон и применимым арбитражным правом.

17. В частности, мой приказ/решение от 31 августа 2021 г., Приложение 1, отражает следующее:

27

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

(a) ответ Татьяны Падалко не оспаривал арбитражное соглашение в рамках специальной процедуры; и

(b) ответ Ларисы Сабадаш также не оспаривал мою юрисдикцию в качестве арбитра, вместо этого выдвигая лишь существенные возражения, связанные с ликвидацией и предполагаемым прекращением гарантийных обязательств.

18. Таким образом, ни в какой момент не было подано ходатайства об отклонении иска или возражений, оспаривающих мою юрисдикцию, со стороны ответчиков или их представителей: Татьяны Падалко, Ларисы Сабадаш, Михаила Зоркина или кого-либо от имени ответчиков в Первом решении. Следовательно, заявления, содержащиеся в декларациях Лариссы Сабадаш и Майкла Зоркина, представленных этому суду в качестве возражений, являются ложными и не соответствуют действительности.

19. В 12:00 по московскому времени 25 августа 2021 года, в назначенную дату слушания, ни один представитель Ответчика 1, Ответчика 2 или Ответчика 3 не явился в назначенное для слушания место. Я ждал 30

28

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

минут появления ответчиков или их представителей. Никто не пришел. Татьяна Падалко прибыла более чем через два с половиной часа. По прибытии ей вкратце сообщили, что:

a. трибунал получил многочисленные письменные ответы на иск 24 и 25 августа 2021 года, включая, помимо прочего, ответ Михаила Зоркина, переданный от имени Ларисы Сабадаш, действующей от имени AFB Trading One, Inc. и Golden Sphinx Limited; и отдельный ответ Татьяны Падалко от имени Александра Сабадаша (единственного владельца AFB Trading One, Inc.).

b. Несмотря на задержку с подачей этих документов, я решил принять их во внимание, а не игнорировать полностью; и,

c. по этой причине, и из уважения к ответчикам, я решил не продолжать рассмотрение дела по существу 25 августа 2021 года, а вместо этого перенести слушание на 31 августа 2021 года.

20. Г-жа Падалко подтвердила свое понимание и выразила мне благодарность за то, что я не продолжаю

29

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

рассмотрение с опозданием представленных ответчиками документов. Г-жа Падалко также подтвердила получение уведомления о следующем слушании и то, что она уведомит Майкла Зоркина и Ларису Сабадаш.

21. Насколько мне известно, ответчики теперь утверждают, что они не были уведомлены об арбитражном слушании 31 августа 2021 года, несмотря на их неявку 25 августа 2021 года и получение г-жой Падалко прямого личного уведомления о слушании 31 августа 2021 года после их многочисленных представленных мне документов. Ответчики были надлежащим образом уведомлены о слушании 31 августа 2021 года, и любые противоположные утверждения не соответствуют действительности.

22. Хочу четко заявить, что документ, приложенный к заявлению г-на Михаила Зоркина в данном деле в качестве Приложения 14, не является подлинным и представляет собой ложное или поддельное постановление об отклонении арбитражного разбирательства за отсутствием юрисдикции от 25 августа 2021 года. Я никогда не издавал никаких постановлений об отклонении арбитражного

30

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

разбирательства за отсутствием юрисдикции или о прекращении разбирательства. В той мере, в какой этот документ якобы содержит мое решение или подпись, он является ложным.

23. Если бы этот документ (Приложение 14 к заявлению Михаила Зоркина) был подлинным и правильным, в правом верхнем углу он содержал бы отметку (печать), отражающую регистрацию Торгово-промышленной палатой Российской Федерации (Москва), как и Первое решение от 31 августа 2021 года (Приложение 1). Требование заключается в том, что любое решение арбитражного трибунала не будет действительным или имеющим юридическую силу в отсутствие соответствующей отметки (печати), что также является моей обычной практикой при вынесении решений и постановлений. Таким образом, постановление, приложенное к заявлению г-на Зоркина в качестве Приложения 14, якобы прекращающее арбитражное разбирательство и расторгающее арбитраж в рамках данной специальной арбитражной процедуры для разрешения конкретного спора, от 25 августа 2021 года, является

31

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

ложным и не должно исполняться ни одним судом или юристом.

24. Кроме того, после ознакомления с заявлением г-на Зоркина я хочу подтвердить, что его утверждение о том, что «примерно через десять минут после начала слушания арбитр отправил г-ну Зоркину по электронной почте свое решение об отклонении дела на основании возражений AFB», просто не соответствует действительности. Заявление Зоркина, ¶5.

25. Как указано выше, я ждал 30 минут после назначенного времени начала слушания, пока ответчики или их представители явятся. Никто не явился. Затем более чем через 2,5 часа прибыла Татьяна Падалко, и ей прямо сообщили, что слушание перенесено на 31 августа 2021 года и что ответы, поданные с опозданием, будут рассмотрены.

26. Дальнейшее заявление г-на Зоркина о том, что «арбитр установил отсутствие у него юрисдикции для рассмотрения дела и прекратил разбирательство», также не соответствует действительности, что ясно следует из

32

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

Первого решения от 31 августа 2021 г. (Приложение 1), в котором прямо указано, что я обладал юрисдикцией и приступил к разрешению спора по существу. Заявление Зоркина, ¶5.

27. Я пытался найти электронное письмо и распоряжение, которые, по утверждению г-на Зоркина, он получил от меня 25 августа 2021 г. примерно в 2:12 утра, но после тщательного и разумного поиска в моей электронной почте мне не удалось найти никаких подобных сообщений или передач, соответствующих тем, которые отражены в Приложениях 14 и 15 к заявлению г-на Зоркина. Поэтому я не могу подтвердить подлинность этих приложений; И снова, постановление о прекращении арбитражного разбирательства от 25 августа 2021 года НЕ было вынесено или подписано мной (Приложение 14 к заявлению Зоркина).

28. Документ, представленный в качестве Приложения 14 к заявлению Зоркина, был сфабрикован или изменен задним числом, вероятно, путем изменения текста на страницах, на которых отсутствовала подлинная

33

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

оригинальная подпись. И снова, утверждение ответчиков о том, что дело было прекращено 25 августа 2021 года, является полностью ложным.

29. Я также хотел бы опровергнуть некоторые неверные или ложные утверждения, содержащиеся в рассмотренных мною документах противоположной стороны, в которых утверждается, что Первое решение от 31 августа 2021 года «должно быть поддельным», поскольку в нем упоминается разъяснение Министерства юстиции Российской Федерации от 2 сентября 2021 года. Я категорически не согласен с такими выводами, поскольку Первое решение является окончательным письменным решением, вынесенным после рассмотрения доказательств и слушаний. В связи с этим процессом, в правом верхнем углу решения стоит официальная отметка (печать), подтверждающая регистрацию А.А. Костиным, председателем МКАК Торгово-промышленной палаты Российской Федерации (Москва), под регистрационным номером 1800-4/1301 от 6 сентября 2021 года. Я не вижу в возражении МКАК, признанного арбитражного трибунала в Российской

34

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

Федерации, никаких документов, оспаривающих то, что Первое решение является чем-либо иным, кроме окончательного обязательного письменного арбитражного решения, и я не представлял никаких подобных документов в МКАК.

30. Поскольку решение было представлено в заверенной/зарегистрированной форме, я был обязан подтвердить наличие соответствующего уточнения, указанного в решении, на которое ссылалось уточнение от 2 сентября 2021 года. Оно лишь отражает форму, в которой решение было окончательно оформлено и представлено для регистрации/заверения. Соответственно, у оппозиции нет оснований для необоснованных предположений о том, что уточнение от 2 сентября 2021 года «доказывает ретроспективную фальсификацию», что совершенно неверно.

31. Я также понимаю, что оппозиция утверждает, что решение не может быть подлинным из-за незначительных вариаций в формулировках, таких как «доктор права» и «магистр права», или из-за износа пометок (печати),

35

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

предполагаемых орфографических ошибок и аналогичных моментов форматирования. Такие вариации в международных арбитражных разбирательствах являются обычным явлением, поскольку форматирование, повторное сканирование штампов, печатей или оттисков, а также плотность чернил являются нормой. Ни один из этих пунктов не меняет того факта, что я вынес Первое решение (Приложение 1) и Второе решение (Приложение 2), и что они являются подлинными и достоверными.

32. Я также понимаю, что оппозиция выражает подозрения по поводу моего юридического адреса (улица Ильинка, 4, офис 102-103, Москва, Российская Федерация). Я не являюсь корпорацией, и поэтому не обязан и не должен фигурировать в каком-либо корпоративном реестре. Я являюсь самозанятым российским адвокатом, который также выступает в качестве арбитра. Таким образом, мой юридический адрес и отсутствие у меня регистрации в корпоративном реестре являются обычными и не должны разумно вызывать подозрения у кого-либо.

36

33. Я также понимаю, что ответчики вызывают подозрения в отношении моей справки об отсутствии судимости. Однако справка, упомянутая в арбитражных материалах — № 13/5-099/264646-E от 11 июля 2021 года — является и была подлинной и действительной. Я не могу объяснить, почему Ответчики или их адвокаты могли правдиво подтвердить подлинность этих интернет-материалов или, тем более, полагаться на результаты своих интернет-поисков для оспаривания моего сертификата.

34. На протяжении всего моего участия в первом арбитражном разбирательстве между сторонами и вынесении первого решения все ответчики, включая AFB Trading One, Inc., были уведомлены об арбитраже, уведомлены о моем назначении и согласились с ним, а также уведомлены о слушаниях. Действительно, если вы приписываете Приложение 15 к Декларации Зоркина моему электронному письму, чего на самом деле нет, то это письмо подписано «С уважением,

Индивидуальный арбитр (судья)

37

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

избранный и согласованный сторонами Дмитрий Валерьевич Князев»

Приложение 15 к Декларации Зоркина, стр. 41 и 43.

35. Опять же, протокол арбитражного разбирательства отражает, что ответчики были уведомлены об арбитраже и дате слушания. В моем Постановлении от 31 августа 2021 года прямо указано, что Лариса Сабадаш в своем ответе подтвердила надлежащее уведомление о слушании, назначенном на 25 августа 2021 года в 12:00 по московскому времени. Ответчики также представили мне письменные ответы на первое арбитражное разбирательство через Ларису Сабадаш, Татьяну Падалко и Михаила Зоркина. Таким образом, не может быть никаких сомнений в том, что они были уведомлены, и их собственное поведение доказывает их участие.

36. После вынесения первого решения было подано заявление об изменении и Запрос на продление решения был впоследствии направлен мне в связи с продолжающейся невыплатой долга, отраженной в Первом решении от 31

38

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

августа 2021 года. В заявлении не содержалось просьбы о переоценке или пересмотре существа Первого решения, вместо этого запрашиваемая помощь включала дополнительную помощь, вытекающую из невыплаты долга с начисленными процентами и издержками, а также в связи с исполнением уступки прав.

37. После начала дальнейших разбирательств и надлежащего уведомления всех сторон я рассмотрел Соглашение об уступке прав от 15 мая 2023 года между Davilla Investing Limited и Grant A.A. и признал достаточным доказательством правомерность действий г-на Гранта в качестве правопреемника кредитора и в отношении его прав на непогашенную задолженность по Первому решению. Это разбирательство проводилось заочно, поскольку ответчики не явились и не ответили на заявление. Поэтому 15 августа 2025 года я вынес письменное Второе решение (Приложение 2) и принял дополнительные меры. Результаты.

38. Узнав о возражениях и возражениях, я провел краткий поиск в архивах и документах судов Российской

39

Федерации и соответствующих публичных архивах. После указанного обзора я пришел к следующим выводам:

· Александр Сабадаш — преступник, трижды осужденный в Российской Федерации за мошенничество и банковские махинации. Он постоянно отбывает наказание в различных российских исправительных учреждениях примерно с 2014 года. В настоящее время он находится в центре двух дополнительных судебных процессов по уголовным делам о мошенничестве в Москве, Российская Федерация, вместе со своей сообщницей Татьяной Падалко, ранее работавшей его адвокатом.

· Татьяна Падалко (бывший адвокат Александра Сабадаша) обвиняется в соучастии в одном из уголовных дел о мошенничестве. В настоящее время она содержится под стражей без права на залог в одной из московских тюрем и выступает в качестве сообвиняемой вместе с Александром Сабадашем.

· Дарья Трубина — российский адвокат, представляющая интересы Александра Сабадаша.

40

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

Александр Сабадаш и Татьяна Падалко участвуют в текущем уголовном процессе по делу о мошенничестве, упомянутом выше.

· Майкл Зоркин является адвокатом Александра Сабадаша в Соединенных Штатах. Он также выступает в качестве адвоката компании AFB Trading One, Inc. и Ларисы Сабадаш, жены Александра Сабадаша.

39. Я привожу эти факты не для сенсационного эффекта, а потому что они непосредственно связаны с моей оценкой достоверности и текущих заявлений ответчиков, содержащих неожиданные обвинения в фальсификации документов в данном деле. Действительно, текущие обвинения в фальсификации и мошенничестве выдвигались ответчиками или их представителями еще во время первого арбитражного разбирательства.

40. Как арбитр, я заявляю и сохраняю за собой все иммунитеты, привилегии, права и полномочия, предоставленные мне законом и договором или конвенцией, и никакое сообщение или согласие с настоящим документом не будет считаться отказом от них.

41

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

Я заявляю под страхом наказания за лжесвидетельство,

что вышеизложенное является истинным и правильным,

соответствии с законами о наказании за лжесвидетельстве

в Соединенных Штатах. Составлено **06** марта 2026 года

Москве. Российская Федерация.

Дмитрий Валерьевич Князев

42

# INTENTIONALLY LEFT BLANK


КОПИЯ

## ЗАЯВЛЕНИЕ Дмитрия Валерьевича Князева, российского

## арбитра

Я, Дмитрий Валерьевич Князев, заявляю следующее:

1. Я имею надлежащее право заниматься юридической практикой в Российской Федерации и являюсь арбитром в Российской Федерации. Я лично знаком с фактами, изложенными в настоящем заявлении, за исключением случаев, когда я прямо указываю, что заявление основано на моем ознакомлении с публичными документами или информацией из арбитражного дела. В случае вызова в качестве свидетеля я мог бы и стал бы компетентно давать показания по фактам, изложенным в настоящем заявлении. Настоящее заявление сделано в связи с ходатайством об утверждении иностранных арбитражных решений, находящимся на рассмотрении в этом Суде. Настоящее подписанное заявление и прилагаемые к нему документы/приложения также будут впоследствии апостилированы; однако получение такого апостиля в Российской Федерации занимает приблизительно 2-4 недели.

19

2. Я был должным образом выбран сторонами в соответствии с их письменным Соглашением о выборе (идентификации) арбитра и применимыми правилами от 23 августа 2012 года. В этом качестве я вынес постановление/решение по существу спора 31 августа 2021 года. Стороны и их адвокаты присутствовали на арбитражном заседании, в том числе г-н Майкл Зоркин, представлявший компанию AFB Trading One, Inc., и Лариса Сабадаш в качестве ее уполномоченного представителя на первом арбитражном заседании.

3. Я выступал в качестве единственного арбитра в арбитражном разбирательстве ad hoc по спору о задолженности в арбитражном деле Davilla Investing Limited против Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited и Agragorn Holdings Limited, арбитражное дело № 1800-4/1301, предмет которого был решен путем вынесения мной окончательного письменного арбитражного решения 31 августа 2021 года. Подлинная и точная копия окончательного арбитражного решения, вынесенного мной 31 августа 2021 года по

20

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

арбитражному делу Davilla Investing Limited против Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited и Agragorn Holdings Limited, арбитражное дело № 1800-4/1301, прилагается к настоящему документу в качестве Приложения 1 и включена в него, как если бы она была изложена полностью. (Далее «Первое решение»).

4. После этого состоялось дополнительное арбитражное слушание, связанное с передачей прав кредитора по данному решению Александру Александровичу Гранту компанией Davilla Investing Limited и касающееся невыплаты долга и решения арбитража. После надлежащего уведомления всех сторон о слушании я вынес постановление/решение от 15 августа 2025 года и представил дополнительные выводы. Подлинная и точная копия окончательного арбитражного решения, вынесенного мной 15 августа 2025 года по арбитражному разбирательству в отношении Гранта Александра Александровича, правопреемника Davilla Investing Limited, против AFB Trading One, Inc. и Golden Sphinx Limited, в соответствии с арбитражным решением от 31

21

августа 2021 года по делу № 1800-4/1301, прилагается к настоящему документу в качестве Приложения 2 и включена в него, как если бы она была изложена полностью. (Далее «Второе решение»).

5. Мне сообщили, и я полагаю, что г-н Грант начал это дело, подав ходатайство об утверждении Первого и Второго арбитражных решений. После подачи этого ходатайства мне сообщили, что оно было отклонено компанией AFB Trading One, Inc. Мне были предоставлены копии и я ознакомился, в частности, с ходатайством и сопроводительными документами; а также с возражениями ответчиков против ходатайства, включая сопроводительное заявление Майкла Зоркина и приложения, заявление Лариссы Сабадаш и приложения, а также заявление Дарьи Трубиной.

6. Эти документы содержат несколько ложных утверждений, в том числе, помимо прочего, ложные заявления о том, что Первое и Второе арбитражные решения являются или были «поддельными»; и что фактических арбитражных слушаний не было. Приложения 1

22

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

и 2 к настоящему документу являются подлинными и достоверными копиями Первого и Второго арбитражных решений, и я председательствовал на арбитражных слушаниях после надлежащего уведомления, полученного ответчиками и третьей стороной.

7. Первое арбитражное разбирательство было начато компанией Davilla Investing Limited против Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited и Agragorn Holdings Limited с целью взыскания задолженности, возникшей в результате кредита, соглашения об изменении условий кредита/отсрочке платежей и гарантий, которые ответчики не выплатили.

8. В материалах арбитражного разбирательства указано, что 18 мая 2021 года всем сторонам, включая ответчиков, заказным письмом было направлено уведомление об арбитраже с исковым заявлением и приложениями. В материалах также отражено последующее письменное и электронное участие лиц, действующих от имени ответчиков или представляющих их интересы.

23

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

9. В ходе первого арбитражного разбирательства я получал сообщения и документы от лиц, представляющихся представителями ответчиков, включая Татьяну Падалко, Ларису Сабадаш и Майкла Зоркина (в том числе с адреса электронной почты mz@thezorkinfirm.com). Например, 25 августа 2021 года примерно в 3:50 утра я получил электронное письмо от г-на Зоркина с заголовком «Тема: AFB Trading One, Inc. и Golden Sphinx Limited» и несколькими приложениями. В тексте письма на русском языке мне было написано: «Г-н Князев,

Прилагается ответ на претензию Ларисы Сабадаш от имени AFB Trading One, Inc. и Golden Sphinx Limited.

Майкл Зоркин

Управляющий партнер».

Подлинная и точная копия электронного письма Майкла Зоркина от 25 августа 2021 года в 3:50 утра прилагается в качестве Приложения 3.

24

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

10. Эти действия ясно демонстрируют, что Ответчики получили фактическое уведомление и явились на арбитражное разбирательство.

11. 19 июля 2021 года Татьяна Падалко написала в трибунал, представившись финансовым управляющим Александра В. Сабадаша, и заявила, что организации-ответчики принадлежат Сабадашу, а также выдвинула обвинения в фальсификации представленных ей в рамках спора документов. На следующий день, 20 июля 2021 года, г-жа Падалко также представила заявление об истечении срока давности и заявление о фальсификации документов.

12. Я рассмотрел эти обвинения и возражения в надлежащем порядке в ходе разбирательства. Я изучил оригинальные документы, представленные в арбитраже, заявления сторон и дополнительную информацию, представленную арбитражному суду. На основании этого изучения я не обнаружил фальсификации действующих документов и установил, что иск не подпадает под действие срока давности.

25

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

13. В рамках первого арбитражного разбирательства 5 августа 2021 года я направил письменный запрос информации Гарри Иткину. Я получил его ответы приблизительно 10 августа 2021 года. Я рассмотрел эти ответы вместе с документальными доказательствами и письменными заявлениями ответчиков.

14. В ходе арбитража я рассмотрел, среди прочего:

(a) кредитное соглашение от 20 апреля 2010 года;

(b) подтверждение перевода приблизительно 1 022 000 долларов США;

(c) Соглашение от 23 августа 2012 года о внесении изменений и отсрочке платежей по долгу;

(d) соответствующие гарантии;

(e) письменное соглашение сторон о выборе арбитра; и

(f) более поздние материалы по назначению арбитра.

На основании представленных мне доказательств я пришел к выводу, что соответствующие соглашения были надлежащим образом оформлены и подлежат исполнению.

26

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

15. Возражений против моей юрисдикции по разрешению спора в соответствии с письменным арбитражным соглашением сторон не было. Это отражено в моем Постановлении от 31 августа 2021 года, в котором прямо указано, что до начала разбирательства по существу не было выдвинуто никаких возражений относительно юрисдикции арбитра по рассмотрению данного вопроса.

16. Точнее говоря, ответчики пытались представить с опозданием документы, содержащие такие аргументы, как ликвидация, недееспособность и связанные с этим возражения. Однако эти заявления не аннулировали арбитражное соглашение сторон, не представляли собой надлежащего и своевременного оспаривания моего назначения в качестве арбитра, выбранного сторонами, и не исключали моей юрисдикции в соответствии с письменным соглашением сторон и применимым арбитражным правом.

17. В частности, мой приказ/решение от 31 августа 2021 г., Приложение 1, отражает следующее:

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

(a) ответ Татьяны Падалко не оспаривал арбитражное соглашение в рамках специальной процедуры; и

(b) ответ Ларисы Сабадаш также не оспаривал мою юрисдикцию в качестве арбитра, вместо этого выдвигая лишь существенные возражения, связанные с ликвидацией и предполагаемым прекращением гарантийных обязательств.

18. Таким образом, ни в какой момент не было подано ходатайства об отклонении иска или возражений, оспаривающих мою юрисдикцию, со стороны ответчиков или их представителей: Татьяны Падалко, Ларисы Сабадаш, Михаила Зоркина или кого-либо от имени ответчиков в Первом решении. Следовательно, заявления, содержащиеся в декларациях Лариссы Сабадаш и Майкла Зоркина, представленных этому суду в качестве возражений, являются ложными и не соответствуют действительности.

19. В 12:00 по московскому времени 25 августа 2021 года, в назначенную дату слушания, ни один представитель Ответчика 1, Ответчика 2 или Ответчика 3 не явился в назначенное для слушания место. Я ждал 30

28

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

минут появления ответчиков или их представителей. Никто не пришел. Татьяна Падалко прибыла более чем через два с половиной часа. По прибытии ей вкратце сообщили, что:

    a. трибунал получил многочисленные письменные ответы на иск 24 и 25 августа 2021 года, включая, помимо прочего, ответ Михаила Зоркина, переданный от имени Ларисы Сабадаш, действующей от имени AFB Trading One, Inc. и Golden Sphinx Limited; и отдельный ответ Татьяны Падалко от имени Александра Сабадаша (единственного владельца AFB Trading One, Inc.).

    b. Несмотря на задержку с подачей этих документов, я решил принять их во внимание, а не игнорировать полностью; и,

    c. по этой причине, и из уважения к ответчикам, я решил не продолжать рассмотрение дела по существу 25 августа 2021 года, а вместо этого перенести слушание на 31 августа 2021 года.

20. Г-жа Падалко подтвердила свое понимание и выразила мне благодарность за то, что я не продолжаю

29

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

рассмотрение с опозданием представленных ответчиками документов. Г-жа Падалко также подтвердила получение уведомления о следующем слушании и то, что она уведомит Майкла Зоркина и Ларису Сабадаш.

21. Насколько мне известно, ответчики теперь утверждают, что они не были уведомлены об арбитражном слушании 31 августа 2021 года, несмотря на их неявку 25 августа 2021 года и получение г-жой Падалко прямого личного уведомления о слушании 31 августа 2021 года после их многочисленных представленных мне документов. Ответчики были надлежащим образом уведомлены о слушании 31 августа 2021 года, и любые противоположные утверждения не соответствуют действительности.

22. Хочу четко заявить, что документ, приложенный к заявлению г-на Михаила Зоркина в данном деле в качестве Приложения 14, не.является подлинным и представляет собой ложное или поддельное постановление об отклонении арбитражного разбирательства за отсутствием юрисдикции от 25 августа 2021 года. Я никогда не издавал никаких постановлений об отклонении арбитражного

30

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

разбирательства за отсутствием юрисдикции или о прекращении разбирательства. В той мере, в какой этот документ якобы содержит мое решение или подпись, он является ложным.

23. Если бы этот документ (Приложение 14 к заявлению Михаила Зоркина) был подлинным и правильным, в правом верхнем углу он содержал бы отметку (печать), отражающую регистрацию Торгово-промышленной палатой Российской Федерации (Москва), как и Первое решение от 31 августа 2021 года (Приложение 1). Требование заключается в том, что любое решение арбитражного трибунала не будет действительным или имеющим юридическую силу в отсутствие соответствующей отметки (печати), что также является моей обычной практикой при вынесении решений и постановлений. Таким образом, постановление, приложенное к заявлению г-на Зоркина в качестве Приложения 14, якобы прекращающее арбитражное разбирательство и расторгающее арбитраж в рамках данной специальной арбитражной процедуры для разрешения конкретного спора, от 25 августа 2021 года, является

31

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

ложным и не должно исполняться ни одним судом или юристом.

24. Кроме того, после ознакомления с заявлением г-на Зоркина я хочу подтвердить, что его утверждение о том, что «примерно через десять минут после начала слушания арбитр отправил г-ну Зоркину по электронной почте свое решение об отклонении дела на основании возражений AFB», просто не соответствует действительности. Заявление Зоркина, ¶5.

25. Как указано выше, я ждал 30 минут после назначенного времени начала слушания, пока ответчики или их представители явятся. Никто не явился. Затем более чем через 2,5 часа прибыла Татьяна Падалко, и ей прямо сообщили, что слушание перенесено на 31 августа 2021 года и что ответы, поданные с опозданием, будут рассмотрены.

26. Дальнейшее заявление г-на Зоркина о том, что «арбитр установил отсутствие у него юрисдикции для рассмотрения дела и прекратил разбирательство», также не соответствует действительности, что ясно следует из

32

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

Первого решения от 31 августа 2021 г. (Приложение 1), в котором прямо указано, что я обладал юрисдикцией и приступил к разрешению спора по существу. Заявление Зоркина, ¶5.

27. Я пытался найти электронное письмо и распоряжение, которые, по утверждению г-на Зоркина, он получил от меня 25 августа 2021 г. примерно в 2:12 утра, но после тщательного и разумного поиска в моей электронной почте мне не удалось найти никаких подобных сообщений или передач, соответствующих тем, которые отражены в Приложениях 14 и 15 к заявлению г-на Зоркина. Поэтому я не могу подтвердить подлинность этих приложений; И снова, постановление о прекращении арбитражного разбирательства от 25 августа 2021 года НЕ было вынесено или подписано мной (Приложение 14 к заявлению Зоркина).

28. Документ, представленный в качестве Приложения 14 к заявлению Зоркина, был сфабрикован или изменен задним числом, вероятно, путем изменения текста на страницах, на которых отсутствовала подлинная

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

оригинальная подпись. И снова, утверждение ответчиков о том, что дело было прекращено 25 августа 2021 года, является полностью ложным.

29. Я также хотел бы опровергнуть некоторые неверные или ложные утверждения, содержащиеся в рассмотренных мною документах противоположной стороны, в которых утверждается, что Первое решение от 31 августа 2021 года «должно быть поддельным», поскольку в нем упоминается разъяснение Министерства юстиции Российской Федерации от 2 сентября 2021 года. Я категорически не согласен с такими выводами, поскольку Первое решение является окончательным письменным решением, вынесенным после рассмотрения доказательств и слушаний. В связи с этим процессом, в правом верхнем углу решения стоит официальная отметка (печать), подтверждающая регистрацию А.А. Костиным, председателем МКАК Торгово-промышленной палаты Российской Федерации (Москва), под регистрационным номером 1800-4/1301 от 6 сентября 2021 года. Я не вижу в возражении МКАК, признанного арбитражного трибунала в Российской

34

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

Федерации, никаких документов, оспаривающих то, что Первое решение является чем-либо иным, кроме окончательного обязательного письменного арбитражного решения, и я не представлял никаких подобных документов в МКАК.

30. Поскольку решение было представлено в заверенной/зарегистрированной форме, я был обязан подтвердить наличие соответствующего уточнения, указанного в решении, на которое ссылалось уточнение от 2 сентября 2021 года. Оно лишь отражает форму, в которой решение было окончательно оформлено и представлено для регистрации/заверения. Соответственно, у оппозиции нет оснований для необоснованных предположений о том, что уточнение от 2 сентября 2021 года «доказывает ретроспективную фальсификацию», что совершенно неверно.

31. Я также понимаю, что оппозиция утверждает, что решение не может быть подлинным из-за незначительных вариаций в формулировках, таких как «доктор права» и «магистр права», или из-за износа пометок (печати),

35

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

предполагаемых орфографических ошибок и аналогичных моментов форматирования. Такие вариации в международных арбитражных разбирательствах являются обычным явлением, поскольку форматирование, повторное сканирование штампов, печатей или оттисков, а также плотность чернил являются нормой. Ни один из этих пунктов не меняет того факта, что я вынес Первое решение (Приложение 1) и Второе решение (Приложение 2), и что они являются подлинными и достоверными.

32. Я также понимаю, что оппозиция выражает подозрения по поводу моего юридического адреса (улица Ильинка, 4, офис 102-103, Москва, Российская Федерация). Я не являюсь корпорацией, и поэтому не обязан и не должен фигурировать в каком-либо корпоративном реестре. Я являюсь самозанятым российским адвокатом, который также выступает в качестве арбитра. Таким образом, мой юридический адрес и отсутствие у меня регистрации в корпоративном реестре являются обычными и не должны разумно вызывать подозрения у кого-либо.

36

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

33. Я также понимаю, что ответчики вызывают подозрения в отношении моей справки об отсутствии судимости. Однако справка, упомянутая в арбитражных материалах — № 13/5-099/264646-Е от 11 июля 2021 года — является и была подлинной и действительной. Я не могу объяснить, почему Ответчики или их адвокаты могли правдиво подтвердить подлинность этих интернет-материалов или, тем более, полагаться на результаты своих интернет-поисков для оспаривания моего сертификата.

34. На протяжении всего моего участия в первом арбитражном разбирательстве между сторонами и вынесении первого решения все ответчики, включая AFB Trading One, Inc., были уведомлены об арбитраже, уведомлены о моем назначении и согласились с ним, а также уведомлены о слушаниях. Действительно, если вы приписываете Приложение 15 к Декларации Зоркина моему электронному письму, чего на самом деле нет, то это письмо подписано «С уважением,

Индивидуальный арбитр (судья)

37

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

избранный и согласованный сторонами Дмитрий Валерьевич Князев»

Приложение 15 к Декларации Зоркина, стр. 41 и 43.

35. Опять же, протокол арбитражного разбирательства отражает, что ответчики были уведомлены об арбитраже и дате слушания. В моем Постановлении от 31 августа 2021 года прямо указано, что Лариса Сабадаш в своем ответе подтвердила надлежащее уведомление о слушании, назначенном на 25 августа 2021 года в 12:00 по московскому времени. Ответчики также представили мне письменные ответы на первое арбитражное разбирательство через Ларису Сабадаш, Татьяну Падалко и Михаила Зоркина. Таким образом, не может быть никаких сомнений в том, что они были уведомлены, и их собственное поведение доказывает их участие.

36. После вынесения первого решения было подано заявление об изменении и Запрос на продление решения был впоследствии направлен мне в связи с продолжающейся невыплатой долга, отраженной в Первом решении от 31

38

августа 2021 года. В заявлении не содержалось просьбы о переоценке или пересмотре существа Первого решения, вместо этого запрашиваемая помощь включала дополнительную помощь, вытекающую из невыплаты долга с начисленными процентами и издержками, а также в связи с исполнением уступки прав.

37. После начала дальнейших разбирательств и надлежащего уведомления всех сторон я рассмотрел Соглашение об уступке прав от 15 мая 2023 года между Davilla Investing Limited и Grant A.A. и признал достаточным доказательством правомерность действий г-на Гранта в качестве правопреемника кредитора и в отношении его прав на непогашенную задолженность по Первому решению. Это разбирательство проводилось заочно, поскольку ответчики не явились и не ответили на заявление. Поэтому 15 августа 2025 года я вынес письменное Второе решение (Приложение 2) и принял дополнительные меры. Результаты.

38. Узнав о возражениях и возражениях, я провел краткий поиск в архивах и документах судов Российской

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

Федерации и соответствующих публичных архивах. После указанного обзора я пришел к следующим выводам:

· Александр Сабадаш — преступник, трижды осужденный в Российской Федерации за мошенничество и банковские махинации. Он постоянно отбывает наказание в различных российских исправительных учреждениях примерно с 2014 года. В настоящее время он находится в центре двух дополнительных судебных процессов по уголовным делам о мошенничестве в Москве, Российская Федерация, вместе со своей сообщницей Татьяной Падалко, ранее работавшей его адвокатом.

· Татьяна Падалко (бывший адвокат Александра Сабадаша) обвиняется в соучастии в одном из уголовных дел о мошенничестве. В настоящее время она содержится под стражей без права на залог в одной из московских тюрем и выступает в качестве сообвиняемой вместе с Александром Сабадашем.

· Дарья Трубина — российский адвокат, представляющая интересы Александра Сабадаша.

40

Александр Сабадаш и Татьяна Падалко участвуют в текущем уголовном процессе по делу о мошенничестве, упомянутом выше.

· Майкл Зоркин является адвокатом Александра Сабадаша в Соединенных Штатах. Он также выступает в качестве адвоката компании AFB Trading One, Inc. и Ларисы Сабадаш, жены Александра Сабадаша.

39. Я привожу эти факты не для сенсационного эффекта, а потому что они непосредственно связаны с моей оценкой достоверности и текущих заявлений ответчиков, содержащих неожиданные обвинения в фальсификации документов в данном деле. Действительно, текущие обвинения в фальсификации и мошенничестве выдвигались ответчиками или их представителями еще во время первого арбитражного разбирательства.

40. Как арбитр, я заявляю и сохраняю за собой все иммунитеты, привилегии, права и полномочия, предоставленные мне законом и договором или конвенцией, и никакое сообщение или согласие с настоящим документом не будет считаться отказом от них.

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

Я заявляю под страхом наказания за лжесвидетельство что вышеизложенное является истинным и правильн соответствии с законами о наказании за лжесвиде льст в Соединенных Штатах. Составлено *06* марта 2026 года Москве. Российская Федерация.

Дмитрий Валерьевич Князев



Российская Федерация. Город Москва
Тридцатое апреля две тысячи двадцать шестого года

Я, Глухов Сергей Иванович, нотариус города Москвы, свидетельствую верность копии с представленного мне документа.

Зарегистрировано в реестре: N 77/749-н/77-2026- *1-1085*
Уплачено за совершение нотариального действия: *3600р*

С.И. Глухов

Всего прошнуровано,
пронумеровано и скреплено
печатью *12*
_____ листов.

Нотариус

42

*Перевод с русского языка на английский (страницы 19-42)*
*Russian to English Translation  (Pages 19-42)*

## COPY

## DECLARATION OF DMITRY VALERYEVICH KNYAZEV, RUSSIAN ARBITRATOR

I, Dmitry Valeryevich Knyazev, declare as follows:

1. I am duly authorized to practice law in the Russian Federation and am authorized and practice as an arbitrator in the Russian Federation.

I have personal knowledge of the facts stated herein, except where I expressly indicate that a statement is based upon my review of public records or information in the arbitration file.

If called as a witness, I could and would testify competently to the facts stated in this declaration.

This declaration was made in connection with the petition to confirm foreign arbitral awards pending with this Court.

This signed declaration and its attachments/exhibits will also later be provided with an apostille in the future; but which requires approximately 2-4 weeks to obtain such apostille in the Russian Federation.

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

2. I was duly selected by the parties under their written Agreement on the Selection (Identity) of the Arbitrator and the Applicable Rules dated August 23, 2012. In that capacity, I issued an August 31, 2021 Order/Award on the merits of the dispute. The parties and their counsel made general appearances in the arbitration, including, Mr. Michael Zorkin making a general appearance for AFB Trading One, Inc. with Larissa Sabadash as its authorized representative at the hearing, at the first arbitration hearing.

3. I served as the sole arbitrator in the ad hoc arbitration concerning the debt dispute in the arbitration matter of *Davilla Investing Limited against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited,* Arbitration Case No. 1800-4/1301, the subject of which was decided by way of the final written arbitration award I issued on August 31, 2021. A true and correct copy of the final arbitration award I issued on August 31, 2021 in the arbitration of *Davilla Investing Limited against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited,* Arbitration Case No. 1800-4/1301, is attached hereto as Exhibit 1 and incorporated herein as if fully set forth. (Hereinafter "First Award").

4. Thereafter, a further arbitration hearing was held following an assignment of the creditor's rights

---

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

under that award to Aleksandr Alksandrovich Grant by Davilla Investing Limited and concerning the non-payment of debt and the award. After due notice to all parties of the hearing, I issued the August 15, 2025 Order/Award and made additional findings. A true and correct copy of the final arbitration award I issued on August 15, 2025 in the arbitration of *Grant Aleksandr Aleksandrovich, the successor of Davilla Investing Limited against AFB Trading One, Inc. and Golden Sphinx Limited, under the Arbitration Award issued August 31, 2021 in* Arbitration Case No. 1800-4/1301, which is attached hereto as Exhibit 2 and incorporated herein as if fully set forth. (Hereinafter "Second Award").

5. I was informed and believe that Mr. Grant commenced this action by filing a petition to confirm the First Award and Second award. After that petition was filed, I was advised that the petition was opposed by AFB Trading One, Inc. I was provided copies and reviewed, in pertinent part, Petition and accompanying documents; and the Respondents' Opposition to the petition with the accompanying Declaration of Michael Zorkin and Exhibits, Declaration of Larissa Sabadash and Exhibits, and the Declaration of Darya Trubina.

6. Those filings contain several false statements of fact including without limit, falsely stating that

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

the First Award and Second Award are or were "fake;" and that there was no actual arbitration hearings.   Exhibits 1 and 2 hereto are genuine and true copies of the First Award and Second Award, and I presided over the arbitration hearings after due and proper notice received by the Defendants and Third Party.

7. The first arbitration proceeding was commenced by Davilla Investing Limited against Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited for recovery of debt arising from the loan, debt modification/ forbearance agreement, and guarantees, which Defendants failed to pay.

8. The arbitration file reflects that, on May 18, 2021, notice of arbitration with the statement of claim and annexes was sent by registered mail to all parties including Defendants. The file further reflected subsequent written and electronic participation by persons acting on behalf of the Respondents or aligned with their interests.

9. During the pendency of the first arbitration, I received communications and submissions from persons identifying themselves as representatives of the Respondents, including Tatiana Padalko, Larissa Sabadash, and Michael Zorkin (including from the email address mz@thezorkinfirm.com). For example, I received an email from Mr. Zorkin on

August 25, 2021 at or about 3:50 am entitled, "Subject: AFB Trading One, Inc. and Golden Sphinx Limited" with several attachments and writing in the body to me in Russian: "**Mr. Knyazev**, please find attached the Response to the Claim of Larisa Sabadash on behalf of AFB Trading One, Inc. and Golden Sphinx Limited.

**Michael Zorkin**

Managing Partner"

A true and correct copy of Michael Zorkin's email of August 25, 2021 at 3:50 am is attached hereto as Exhibit 3.

10. These acts clearly demonstrated that the Respondents received actual notice and appeared in the underlying arbitration proceedings.

11. On July 19, 2021, Tatiana Padalko wrote to the tribunal identifying herself as the financial administrator of Alexander V. Sabadash, stating in substance that the respondent organizations belonged to Sabadash and she had made accusations that the documents submitted to me in the dispute were falsified. The next day, on July 20, 2021, Ms. Padalko also submitted a statement alleging expiration of the statute of limitations and a statement alleging falsification.

12. I considered those accusations and defenses in the due course of the proceedings. I reviewed the

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

original documents presented in the arbitration, the submissions from the parties, and the additional information submitted to the tribunal. Based on that review, I found no falsification of the operative documents, and I found that the claim was not barred by the statute of limitations.

13.  As part of the first arbitration proceedings, on August 5, 2021, I sent a written request for information to Garry Itkin. I received his responses by approximately August 10, 2021. I considered those responses together with the documentary evidence and the respondents' written submissions.

14.  In the course of the arbitration, I reviewed, among other things:

(a) the April 20, 2010 Loan Agreement;

(b) proof of transfer of approximately USD 1,022,000;

(c) the August 23, 2012 Agreement on Modification and Deferral of Debt;

(d) the related guarantees;

(e) the parties' written arbitrator-selection agreement; and

(f) the later assignment materials.

Based on the evidence before me, I concluded that the relevant agreements were validly executed and enforceable.

15.   No objection was raised to my jurisdiction to

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

adjudicate the dispute under the parties' written arbitration agreement. This is reflected in my August 31, 2021 Order, which expressly states that prior to the commencement of the proceedings on the merits, **no** *objections were raised pertaining to the Arbitral Judge's jurisdiction to adjudicate the matter at hand.*

16. To be precise, Respondents attempted to make late submissions asserting issues such as liquidation, legal incapacity, and related defenses. However, those submissions did not invalidate the parties' arbitration agreement, did not constitute a proper and timely challenge to my appointment as the parties' selected arbitrator, and did not negate my jurisdiction under the parties' written agreement and the applicable arbitration law.

17. In particular, my August 31, 2021 Order/Award, Exhibit 1, reflects that:

(a) Tatiana Padalko's response did not contest the arbitration agreement under the ad hoc procedure; and

(b) Larisa Sabadash's response likewise did not dispute my jurisdiction as Arbitrator, while instead only raising substantive defenses tied to liquidation and the alleged termination of guarantee obligations.

18. Thus, at no time was there any motion to

8

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

dismiss or objections raised contesting my jurisdiction by the respondents, or their representatives: Tatiana Padalko, Larissa Sabadash, Michael Zorkin, or anyone on behalf of the respondents in the First Award. Therefore, the statements contained in Larissa Sabadash and Michael Zorkin's declarations to this Court in opposition, are false and untrue.

19. At 12:00 noon Moscow time on August 25, 2021, which was the date set for hearing, no representatives from Defendant 1, Defendant 2, or Defendant 3 appeared at the place set for the hearing. I waited 30 minutes for the defendants or their representatives to appear. No one came. Tatiana Padalko arrived more than two and one-half hours later. When she arrived, she was informed in sum that:

a. the tribunal had received voluminous written responses to the claim on August 24 and August 25, 2021, including, without limit, a response from Michael Zorkin transmitted on behalf of Larisa Sabadash acting for AFB Trading One, Inc. and Golden Sphinx Limited; and a separate response from Tatiana Padalko on behalf of Alexander Sabadash (sole owner of AFB Trading One, Inc.).

b. notwithstanding the lateness of those submissions, I elected to take them into consideration rather than disregard them outright;

9

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

and,

c. for that reason, and in fairness to the respondents, I decided not to proceed on the merits on August 25, 2021, but instead to continue the hearing to August 31, 2021.

20. Ms. Padalko acknowledged her understanding and expressed her gratitude to me that I was not proceeding without consideration of the respondents' late submissions. Ms. Padalko also confirmed notice of the next hearing and that she would notify Michael Zorkin and Larisa Sabadash.

21. It is my understanding that respondents are now asserting that respondents were not notified of the arbitration hearing on August 31, 2021, despite their failure to appear on August 25, 2021 and Ms. Padalko receiving express notice in person of the August 31, 2021 hearing after their voluminous submissions to me. Respondents were duly notified of the August 31, 2021 hearing and any contrary assertion is untrue.

22. I want to be clear that the document attached to the declaration of Mr. Michael Zorkin in this case as Exhibit 14, is not authentic or genuine and is a false or fake order dismissing the underlying arbitration for lack of jurisdiction on August 25, 2021. At no time did I issue any order at any time, dismissing the arbitration for lack of jurisdiction or terminating the proceedings. To the

10

extent that document purports to bear my ruling or signature, it is false.

23.  If that document (Exhibit 14 to the declaration of Michael Zorkin) were true and correct, it would bear, in the upper right-hand corner, the notation (seal) reflecting registration by the ICAC Chamber of Commerce and Industry of the Russian Federation (Moscow), just like the First Award of August 31, 2021 does (Exhibit 1). It is a requirement that any decision from the tribunal would not be a valid or operative order in the absence of that notation (seal), which is also my custom and standard practice in issuing orders and awards. As such, the order attached to Mr. Zorkin's declaration as Exhibit 14 purporting to terminate the arbitration proceedings and dissolving the Arbitration within the framework of this ad hoc arbitration procedure for resolution of the specific dispute, on August 25, 2021, is false and must not be enforced by any Court or jurist.

24. Also, after reviewing Mr. Zorkin's declaration, I want to confirm that his statement that: "about ten minutes after the hearing was scheduled to start, the arbitrator emailed Mr. Zorkin his decision dismissing the case based on AFB's objections," is simply not true.  Zorkin Decl., ¶5.

25.  As stated above, I waited for 30 minutes after the scheduled start time for the defendants or

11

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

their representatives to appear. No one appeared. Tatiana Padalko then arrived more than 2.5 hours later and was expressly told that the hearing had been continued to August 31, 2021 and that the late-filed responses would be considered.

26.  Mr. Zorkin's further statement that "the arbitrator found that he lacks jurisdiction to hear the case and terminated the proceedings" is also not true, as is made clear by the First Award of August 31, 2021, (Exhibit 1), which expressly states that I had jurisdiction and proceeded to decide the dispute on the merits.  Zorkin Decl., ¶5.

27.  I have attempted to locate the email and order Mr. Zorkin claims to have received from me on August 25, 2021 at or about 2:12 am, but after a diligent and reasonable search of my email records, I have not been able to find any such communication or transmission matching those reflected in Exhibits 14 and 15 to Mr. Zorkin's declaration. I therefore cannot authenticate those exhibits; and again, the order purporting to dismiss the arbitration dated August 25, 2021 was NOT issued or signed by me (Exhibit 14 to Zorkin Declaration).

28.  The document presented as Exhibit 14 to Zorkin's Declaration was fabricated or altered after the fact, likely by changing text on pages that did not bear a genuine original signature.

12

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

Again, the respondents' allegation that the case was dismissed on August 25, 2021 is completely false.

29. I also want to address some incorrect or untrue assertions made by the opposing papers I reviewed claiming that the First Award of August 31, 2021 Award "must be fake" because it refers to a clarification of the Russian Ministry of Justice dated September 2, 2021. I fully disagree with such conclusions since the First Award is a final written award after review of evidence and hearings. In connection with that process, the award bears the official notation (seal) in the upper right-hand corner reflecting registration by A.A. Kostin, Chairman of the ICAC Chamber of Commerce and Industry of the Russian Federation (Moscow), under registration number 1800-4/1301 dated September 6, 2021. I see no documentation in the opposition from the ICAC which is a recognized arbitral tribunal in the Russian Federation which contests that the First Award was anything but a final binding written arbitral award nor have I submitted any such documentation to the ICAC.

30. Because the award was being presented in that certified/registered form, I was required to acknowledge the relevant clarification cited in the Award, which was referenced on the September 2, 2021 clarification. It merely reflects the form in

13

which the award was finalized and presented for registration/certification. Accordingly, there is no basis for the opposition to wildly speculate that the September 2, 2021 clarification "proves retroactive fabrication," which is entirely incorrect.

31. I also understand that the opposition alleges that the award could not be authentic because of slight wording variations such as "Doctor of Law" and "Master of Laws," or because of the worn appearances of notations (seal), alleged spelling irregularities, and similar formatting points. Such variations in international arbitration proceedings are common as formatting, repeated scans of stamps or seals or impressions, or ink density, are normal. None of those points changes the fact that I issued the First Award (Exhibit 1) and Second Award (Exhibit 2) and that they are genuine and true.

32. I also understand that the opposition asserts suspicion over my office address (at 4 Ilyinka Street, Office 102-103, Moscow, Russian Federation). I am not a corporation and therefore I am not required and I am not expected to appear in any a corporate registry. I am a self-employed Russian attorney who also serves as an arbitrator. As such, my office address and my lack of corporate registry is common and should not reasonably draw

14

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

suspicion to anyone.

33. I also understand that the respondents draw suspicion concerning my criminal-record certificate. But, the certificate referenced in the arbitration materials — No. 13/5-099/264646-E dated July 11, 2021 — is and was genuine and valid. I cannot explain why Respondents or their attorneys could truthfully authenticate those internet materials or let alone rely on their internet searches to dispute my certificate.

34. At all times I was involved in the first arbitrations between the parties and the First Award, all respondents, including, AFB Trading One, Inc., had notice of the arbitration, notice of my appointment and agreed, and notice of the hearings. Indeed, if you credit Exhibit 15 to the Zorkin Declaration as my email, which it is not, that email is signed "Respectfully,

> Individual arbitrator (judge elected and agreed upon by the parties
> Dmitry Valeryevich Knyazev"

Exhibit 15 to Zorkin Decl., pg. 41 and 43 thereof.

35. Again, the arbitration record reflected that the respondents had notice of the arbitration and the hearing date. My August 31, 2021 Order expressly notes that Larisa Sabadash, in her response, confirmed proper notice of the hearing

15

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

scheduled for August 25, 2021 at 12:00 PM Moscow time. The respondents also submitted to me written responses to the first arbitration through Larisa Sabadash, Tatiana Padalko, and Michael Zorkin. As such, their cannot be any dispute that they had notice and own conduct proves participation.

36. After the First Award was issued, an application to modify and renew the award was later submitted to me because there was a continued nonpayment of the debt reflected in the First Award of August 31, 2021. The application did not ask to re-evaluate or reconsider the merits of the First Award, but instead the relief requested included award additional relief arising from the non-payment of the debt with any accrued interest and costs, and in connection with the enforcement of an assignment of rights.

37. After commencement of further proceedings, and proper and due notice to all parties, I reviewed the Assignment Agreement dated May 15, 2023 between Davilla Investing Limited and Grant A.A. and admitted as sufficient evidence of Mr. Grant's standing to proceed as legal successor to the creditor and with respect to his rights to the unpaid indebtedness under the First Award. That proceeding was held in absentia since respondents did not appear or respond to the application. Therefore, on August 15, 2025, I issued a written

16

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

Second Award (Exhibit 2) and made additional findings.

38.  After learning of the opposition and objections, I conducted a brief search of records and files of the courts of the Russian Federation and related public records.  After said review, it is my understanding that:

· Alexander Sabadash is a felon, who has been convicted three times of fraud and bank-fraud-related offenses in the Russian Federation. He is continuously incarcerated in various Russian penitentiary facilities, serving his sentences, since approximately 2014. Currently he is in midst of two additional pending criminal fraud trials in Moscow, Russian Federation, alongside his accomplice Tatiana Padalko, formerly his attorney.

· Tatiana Padalko (Alexander Sabadash former attorney) is charged with being Alexander Sabadash's co-conspirator in one of his criminal charges for fraud. She is currently held without bail in one of Moscow jails and is being prosecuted as a co-defendant with Alexander Sabadash.

· Darya Trubina is a Russian attorney acting in defense of Alexander Sabadash and Tatiana Padalko in currently ongoing criminal fraud proceedings noted above.

· Michael Zorkin is Alexander Sabadash's attorney in the United States. He also acts as

17

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

attorney for AFB Trading One, Inc. and for Larisa Sabadash, the wife of Alexander Sabadash.

39.   I include these facts not for sensational effect, but because they are directly relevant to my assessment of credibility and respondents current statements making surprise accusations of falsification of documents in this action. Indeed, the current claims of falsification and fraud were being advanced respondents or their representatives during the first arbitration itself.

40. As an arbitrator, I invoke and reserve all immunities, privileges,   ghts and entitlements permitted me under law and treaty or convention with no communication or submission hereto to be considered a waiver.

*Перевод данного текста с русского языка на английский язык сделан мной, переводчиком Сулейманов Элиной Вахидовной.*

_____

*The translation of this text was performed by me, the translator Suleymanova Elina Vakhidovna.*
_____/signature/_____



### Российская Федерация

**Город Москва**

*Второго мая две тысячи двадцать шестого года*

Я, Бурейникова Леонора Леонидовна, нотариус города Москвы, свидетельствую подлинность подписи переводчика Сулеймановой Элины Вахидовны.

Подпись сделана в моем присутствии.

Личность подписавшего документ установлена.

Зарегистрировано в реестре: №40/87-н/77-2026-*12-2831*

Уплачено за совершение нотариального действия: 400 руб. 00 коп

_____ Л.Л. Бурейникова

Всего прошнуровано, пронумеровано и скреплено печатью(30) лист(ов)

Нотариус

### The city of Moscow

**02.05.2026**

I, Bureynikova Leonora Leonidovna, Notary of the city of Moscow, certify the authenticity of signature, made by the translator Suleymanova Elina Vakhidovna.

The signature was made in my presence.

Her identity is established.

It is registered in the register under № 40/87-н/77-2026-

Paid for the performance of a notarial act. 400 rubles 00 kop.

_____/signature_____     *L.L. Bureynikova*

| |
|---|
| **Seal: Notary Bureynikova L.L.** |
| **Notarial district of c. Moscow** |

Stitched up, numbered and sealed ( ) pages
Notary /signature/

| |
|---|
| **Seal: Notary Bureynikova L.L.** |
| **Notarial district of c. Moscow** |

*Seal:*
*Russian Federation Ministry of Justice Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator, city of Moscow*

I declare under penalty of perjury that the foregoing is true and correct under the laws for penalty of perjury in the United States. Executed this 06 day of March, 2026, in Moscow, Russian Federation.

- *signature-*

**Dmitry Valeryevich Knyazev**

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

*Seal:*
*Russian Federation Ministry of Justice*
*Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator*
*City of Moscow*

*Seal: Notary Public S. I. Glukhov, Notarial District: the city of Moscow*

*Russian Federation Ministry of Justice Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator, ciy of Moscow*

**The Russian Federation**
**City of Moscow**
**April thirty in the year two thousand and twenty-six**

I, Glukhov Sergei Ivanovich, a Notary Public for the city of Moscow, certify that this is a true and correct copy of the original document.
Recorded in the Register: No 77/749-n/77-2026-1-1085
Paid for notarial services: 3600 Roubles 00 kopecks.

- *signature-* S. I. Glukhov

*Seal: Notary Public S. I. Glukhov, Notarial District: city of Moscow*

*Stamp:*
*The document contains 12 pages,*
*bound, numbered and sealed*
*Notary Public - signature-*

## APOSTILLE

(Convention de La Haye du 5 octobre 1961)

| | | |
|---|---|---|
| **1.** **Страна:**<br>Country / Pays: | Российская Федерация | |

**Настоящий официальный документ**
This public document / Le présent acte public

| | |
|---|---|
| **2.** **был подписан**<br>has been signed by<br>a été signé par | Глухов С.И., Бурейникова Л.Л. |
| **3.** **выступающим в качестве**<br>acting in the capacity of<br>agissant en qualité de | нотариус, нотариус |
| **4.** **скреплен печатью / штампом**<br>bears the seal / stamp of<br>est revêtu du sceau / timbre de | нотариус г. Москвы Глухов Сергей Иванович, нотариус г. Москвы Бурейникова Леонора Леонидовна |

**Удостоверено**
Certified / Attesté

| | | | |
|---|---|---|---|
| **5.** **В**<br>at / à | г. Москва | **6.** **Дата**<br>the / le | 07.05.2026 |
| **7.** **учреждение**<br>by / par | Крымшокалова А.З.<br>Заместитель начальника отдела международной правовой помощи и проставления апостиля Главного управления Министерства юстиции Российской Федерации по Москве | | |
| **8.** **№**<br>N° / sous n° | 77/17833-26 | | |
| **9.** **Печать /**<br>**штамп:**<br>Seal / stamp:<br>Sceau / timbre: | | **10. Подпись**<br>Signature:<br>Signature: | |



Данный апостиль удостоверяет лишь подлинность подписи и должность лица, подписавшего официальный документ, и при необходимости подлинность печати или штампа, которым скреплен этот документ.

Апостиль не заверяет достоверность самого документа, для которого он был оформлен.

Информацию по проверке апостиля можно найти, отсканировав QR-код, либо перейдя по ссылке: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=673c84af-c7fb-4dff-9cef-9acb8d389351**

This apostille certifies only the authenticity of the signature and the position of the official who signed the official document, and, if necessary, the authenticity of the seal or stamp affixed to the said document.

The apostille does not certify the authenticity of the document for which it was issued.

Information on apostille verification can be found by scanning a QR code or by referring to the following link: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=673c84af-c7fb-4dff-9cef-9acb8d389351**

Cette apostille ne certifie que l'authenticité de la signature et le poste du fonctionnaire qui a signé le document officiel et, le cas échéant, l'authenticité du sceau ou du cachet apposé sur ledit document.

L'apostille n'assure pas la véracité du document lui-même pour lequel il a été délivré.

Les informations de vérification de l'apostille peuvent être trouvées en scannant le code QR ou en consultant le lien suivant: **https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=673c84af-c7fb-4dff-9cef-9acb8d389351**



Прошито, пронумеровано и скреплено печатью

31 ( *тридцать        один*    ) лист —

Заместитель начальника отдела
Главного управления Министерства юстиции
Российской Федерации по Москве

_____ А.З. Крымшокалова

# EXHIBIT 15

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

## ДОПОЛНИТЕЛЬНОЕ ЗАЯВЛЕНИЕ Дмитрия Валерьевича Князева, российского арбитра

Я, Дмитрий Валерьевич Князев, заявляю следующее:

1. Я имею надлежащее право заниматься юридической практикой в Российской Федерации и являюсь арбитром в Российской Федерации. Я лично знаком с фактами, изложенными в настоящем заявлении, за исключением случаев, когда я прямо указываю, что заявление основано на моем ознакомлении с публичными документами или информацией из арбитражного дела. В случае вызова в качестве свидетеля я мог бы и стал бы компетентно давать показания по фактам, изложенным в настоящем заявлении. Настоящее дополнительное заявление и прилагаемые к нему приложения были составлены в связи с ходатайством об утверждении иностранных арбитражных решений, находящимся на рассмотрении в этом Суде. Настоящее подписанное заявление и прилагаемые к нему приложения/приложения также будут впоследствии апостилированы; однако получение такого апостиля в Российской Федерации занимает приблизительно 2-4 недели.

2. 2. После подписания моего первого заявления в рамках данного иска, стремясь подтвердить уведомление и участие ответчиков в рассматриваемом арбитражном разбирательстве, я проверил свою электронную почту на наличие сообщений от ответчиков AFB Trading One, Inc., Майкла Зоркина или Татьяны Падалко и обнаружил несколько писем с вложениями, касающихся рассматриваемого арбитражного разбирательства, отправленных им и полученных от них, которые представляют собой мои деловые записи и файлы по рассматриваемому арбитражному разбирательству, а также сообщения от меня и от ранее указанных ответчиков, их представителей или их адвокатов. В качестве Приложений 4–9 прилагаются, соответственно, подлинные и корректные копии моих электронных писем, отправленных в

4

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

период с 19 июля 2021 года по 25 августа 2021 года мне, Майклу Зоркину (адвокату Golden Sphinx, AFB Trading One, Inc.) и Татьяне Падалко (представителю AFB Trading One Inc.), за исключением приложенных к ним документов. Эти электронные письма содержали несколько файлов и документов, относящихся к рассматриваемому арбитражному разбирательству, которое я проводил. После каждой копии электронных писем в Приложениях 4–9 приводятся переводы этих писем на английский язык, выполненные с помощью Google Translate, которые считаются подлинными и корректными. Я осведомлен и полагаю, что официальные переводы будут подготовлены и представлены позже, но неизвестно, будет ли достаточно времени, чтобы предоставить суду официальные переводы до истечения срока подачи документов.

3. В качестве арбитра я заявляю и сохраняю за собой все иммунитеты, привилегии, права и полномочия, предоставленные мне законом и договором или конвенцией, и никакое сообщение или согласие с настоящим документом не будет рассматриваться как отказ от них.

Я заявляю под страхом наказания за лжесвидетельство, что вышеизложенное является истинным и точным в соответствии с законами Соединенных Штатов Америки о наказании за лжесвидетельство. Подписано 10 марта 2026 года в Москве, Российская Федерация.



Дмитрий Валерьевич Князев

5



# INTENTIONALLY LEFT BLANK



КОПИЯ

## ДОПОЛНИТЕЛЬНОЕ ЗАЯВЛЕНИЕ Дмитрия Валерьевича Киязева, российского арбитра

Я, Дмитрий Валерьевич Князев, заявляю следующее:

1. Я имею надлежащее право заниматься юридической практикой в Российской Федерации и являюсь арбитром в Российской Федерации. Я лично знаком с фактами, изложенными в настоящем заявлении, за исключением случаев, когда я прямо указываю, что заявление основано на моем ознакомлении с публичными документами или информацией из арбитражного дела. В случае вызова в качестве свидетеля я мог бы и стал бы компетентно давать показания по фактам, изложенным в настоящем заявлении. Настоящее дополнительное заявление и прилагаемые к нему приложения были составлены в связи с ходатайством об утверждении иностранных арбитражных решений, находящимся на рассмотрении в этом Суде. Настоящее подписанное заявление и прилагаемые к нему приложения/приложения также будут впоследствии апостилированы; однако получение такого апостиля в Российской Федерации занимает приблизительно 2-4 недели.

2. 2. После подписания моего первого заявления в рамках данного иска, стремясь подтвердить уведомление и участие ответчиков в рассматриваемом арбитражном разбирательстве, я проверил свою электронную почту на наличие сообщений от ответчиков AFB Trading One, Inc., Майкла Зоркина или Татьяны Падалко и обнаружил несколько писем с вложениями, касающихся рассматриваемого арбитражного разбирательства, отправленных им и полученных от них, которые представляют собой мои деловые записи и файлы по рассматриваемому арбитражному разбирательству, а также сообщения от меня и от ранее указанных ответчиков, их представителей или их адвокатов. В качестве Приложений 4–9 прилагаются, соответственно, подлинные и корректные копии моих электронных писем, отправленных в

4

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV**

период с 19 июля 2021 года по 25 августа 2021 года мне, Майклу Зоркину (адвокату Golden Sphinx, AFB Trading One, Inc.) и Татьяне Падалко (представителю AFB Trading One Inc.), за исключением приложенных к ним документов. Эти электронные письма содержали несколько файлов и документов, относящихся к рассматриваемому арбитражному разбирательству, которое я проводил. После каждой копии электронных писем в Приложениях 4–9 приводятся переводы этих писем на английский язык, выполненные с помощью Google Translate, которые считаются подлинными и корректными. Я освeдомлен и полагаю, что официальные переводы будут подготовлены и представлены позже, но неизвестно, будет ли достаточно времени, чтобы прeдоставить суду официальные переводы до истечения срока подачи документов.

3. В качестве арбитра я заявляю и сохраняю за собой все иммунитеты, привилегии, права и полномочия, предоставленные мне законом и договором или конвенцией, и никакое сообщение или согласие с настоящим документом не будет рассматриваться как отказ от них.

Я заявляю под страхом наказания за лжесвидетельство, что вышеизложенное является истинным и точным в соответствии с законами Соединенных Штатов Америки о наказании за лжесвидетельство. Подписано 10 марта 2026 года в Москве, Российская Федерация.



Дмитрий Валерьевич Князев

---

5



Российская Федерация. Город Москва
Тридцатое апреля две тысячи двадцать шестого года

Я, Глухов Сергей Иванович, нотариус города Москвы,
свидетельствую верность копии с представленного мне
документа.

Зарегистрировано в реестре: N 77/749-н/77-2026- 1- 1086
Уплачено за совершение нотариального действия: 300

С.И. Глухов



Всего прошнуровано,
пронумеровано и скреплено
печатью 2
_____ листов.

Нотариус

*Перевод с русского языка на английский (страницы 4-5)*
*Russian to English Translation  (Pages 4-5)*

**COPY**

## SUPPLEMENTAL DECLARATION OF DMITRY VALERYEVICH KNYAZEV, RUSSIAN ARBITRATOR

I, Dmitry Valeryevich Knyazev, declare as follows:

1. I am duly authorized to practice law in the Russian Federation and am authorized and practice as an arbitrator in the Russian Federation.  I have personal knowledge of the facts stated herein, except where I expressly indicate that a statement is based upon my review of public records or information in the arbitration file. If called as a witness, I could and would testify competently to the facts stated in this declaration.  This supplemental declaration and accompanying exhibits were made in connection with the petition to confirm foreign arbitral awards pending with this Court.  This signed declaration and its attachments/exhibits will also later be provided with an apostille in the future; but which requires approximately 2-4 weeks to obtain such apostille in the Russian Federation.

2. Subsequent to signing my first declaration in this Action, in an effort to confirm notice and participation by the respondents in the underlying arbitration, I searched my email account for communications with respondents AFB Trading One, Inc., Michael Zorkin, or Tatyana Padalko and found several emails with attachments related to the underlying arbitration to and from them, which are my business records and files in the underlying arbitration and communications to/from myself and the

DECLARATION OF RUSSIAN ARBITRATOR, DMITRY VALERYEVICH KNYAZEV

previously identified respondents, their representatives, or their counsel. Attached hereto as Exhibits 4 through 9, respectively, are true and correct copies of my emails in and between July 19, 2021 and August 25, 2021 to or from myself, Michael Zorkin (counsel for Golden Sphinx, AFB Trading One, Inc., and, Tatiana Padalko (representative of AFB Trading One Inc.) exclusive of attachments thereto. These emails contained several files and records attached related to the underlying arbitration, which I considered in the underlying arbitration. Following each copy of the emails in Exhibits 4 through 9 hereto, are translations of the same emails into English using Google translate, which are believed to be true and correct translations. I am informed and believe that official translations will be prepared and submitted later, but it is unknown if there will be enough time to provide this Court with the official translations in time before the deadline for filing has expired.

3. As an arbitrator, I invoke and reserve all immunities, privileges, rights and entitlements permitted me under law and treaty or convention with no communication or submission hereto to be considered a waiver.

I declare under penalty of perjury that the foregoing is true and correct under the laws for penalty of perjury in the United States. Executed this _ft2_ day of March, 2026, in Moscow, Russian Federation.

Dmitry Valeryevich Knyazev – *signature* -

**DECLARATION OF RUSSIAN ARBITRATOR, DMITRV VALERVEVICH KNVAZEV**

*Seal:*
*Russian Federation Ministry of Justice*
*Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator*
*City of Moscow*


*Russian Federation Ministry of Justice Arbitration Court*
*Judge Knyazev, Dmitry Valeryevich*
*Sole Arbitrator, city of Moscow*

*Seal: Notary Public S. I. Glukhov, Notarial District:*
*the city of Moscow*


### The Russian Federation
### City of Moscow
### April thirty in the year two thousand and twenty-six

I, Glukhov Sergei Ivanovich, a Notary Public for the city of Moscow, certify that this is a true and correct copy of the original document.
Recorded in the Register: No 77/749-n/77-2026-1-1086
Paid for notarial services: 300 Roubles 00 kopecks.

*- signature-* S. I. Glukhov

*Seal: Notary Public S. I. Glukhov, Notarial District: city of Moscow*

*Stamp:*
*The document contains 2 pages,*
*bound, numbered and sealed*
*Notary Public - signature-*

*Перевод данного текста с русского языка на английский язык сделан мной, переводчиком Сулейман
Элиной Вахидовной.*

_____

**The translation of this text was performed by me, the translator Suleymanova Elina Vakhidovna.**
_____/signature/_____

| | |
|---|---|
| **Российская Федерация** | **The Russian Federation** |
| *Город Москва* | *The city of Moscow* |
| *Второго мая две тысячи двадцать шестого года* | *02.05.2026* |
| *Я, Бурейникова Леонора Леонидовна, нотариус города Москвы,* | *I, Bureynikova Leonora Leonidovna, notary of the city of* |
| *свидетельствую подлинность подписи переводчика* | *Moscow, certify the authenticity of signature, made by the* |
| *Сулеймановой Элины Вахидовны.* | *translator Suleymanova Elina Vakhidovna.* |
| *Подпись сделана в моем присутствии.* | *The signature was made in my presence.* |
| *Личность подписавшего документ установлена.* | *Her identity is established.* |

*Зарегистрировано в реестре: № 40/87-н/77-2026-12-2839*
*Уплачено за совершение нотариального действия: 400 руб. 00 коп*

*It is registered in the register under № 40/87-н/77-2026-*
*Paid for the performance of a notarial act. 400 rubles 00 kop.*

_____ Л.Л. Бурейникова

*Всего прошнуровано, пронумеровано и скреплено
печатью (5) лист(ов)*

*Нотариус*

_____/signature_____ L.L. Bureynikova

| |
|---|
| **Seal: Notary Bureynikova L.L.**<br>**Notarial district of c. Moscow** |

*Stitched up, numbered and sealed ( ) pages*
*Notary /signature/*

| |
|---|
| **Seal: Notary Bureynikova L.L.**<br>**Notarial district of c. Moscow** |

# APOSTILLE
(Convention de La Haye du 5 octobre 1961)

| | | |
|---|---|---|
| **1. Страна:**<br>Country / Pays: | Российская Федерация | |

**Настоящий официальный документ**
This public document / Le présent acte public

| | |
|---|---|
| **2. был подписан**<br>has been signed by<br>a été signé par | Глухов С.И., Бурейникова Л.Л. |
| **3. выступающим в качестве**<br>acting in the capacity of<br>agissant en qualité de | нотариус, нотариус |
| **4. скреплен печатью / штампом**<br>bears the seal / stamp of<br>est revêtu du sceau / timbre de | нотариус г. Москвы Глухов Сергей Иванович, нотариус г. Москвы Бурейникова Леонора Леонидовна |

**Удостоверено**
Certified / Attesté

| | | | |
|---|---|---|---|
| **5. В**<br>at / à | г. Москва | **6. Дата**<br>the / le | 07.05.2026 |
| **7. учреждение**<br>by / par | Крымшокалова А.З.<br>Заместитель начальника отдела международной правовой помощи и проставления апостиля Главного управления Министерства юстиции Российской Федерации по Москве | | |
| **8. №**<br>N° / sous n° | 77/17834-26 | | |
| **9. Печать /**<br>**штамп:**<br>Seal / stamp:<br>Sceau / timbre: | | **10. Подпись**<br>Signature:<br>Signature: | |

Данный апостиль удостоверяет лишь подлинность подписи и должность лица, подписавшего официальный документ, и при необходимости подлинность печати или штампа, которым скреплен этот документ.

Апостиль не заверяет достоверность самого документа, для которого он был оформлен.

Информацию по проверке апостиля можно найти, отсканировав QR-код, либо перейдя по ссылке: https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=dfd58b67-0713-4b58-a520-80d5d62ef1f8



This apostille certifies only the authenticity of the signature and the position of the official who signed the official document, and, if necessary, the authenticity of the seal or stamp affixed to the said document.

The apostille does not certify the authenticity of the document for which it was issued.

Information on apostille verification can be found by scanning a QR code or by referring to the following link: https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=dfd58b67-0713-4b58-a520-80d5d62ef1f8

Cette apostille ne certifie que l'authenticité de la signature et le poste du fonctionnaire qui a signé le document officiel et, le cas échéant, l'authenticité du sceau ou du cachet apposé sur ledit document.

L'apostille n'assure pas la véracité du document lui-même pour lequel il a été délivré.

Les informations de vérification de l'apostille peuvent être trouvées en scannant le code QR ou en consultant le lien suivant: https://minjust.gov.ru/ru/pages/apostil-ispf/?aposId=dfd58b67-0713-4b58-a520-80d5d62ef1f8



Прошито, пронумеровано и скреплено печатью

__6__ ( __шесть__ ) лист __86__

Заместитель начальника отдела
Главного управления Министерства юстиции
Российской Федерации по Москве

_____ А.З. Крымшокалова

Joseph M. Kar (SBN 207414)
jkar@civillegal.com
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite PH-1220
Sherman Oaks, CA 91403
Telephone:  (818) 501-6930
Facsimile:   (818) 501-6935

**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH GRANT,
ASSIGNEE AND SUCCESSOR OF DAVILLA
INVESTING LIMITED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual<br><br>**Petitioner,**<br><br>v.<br><br>AFB TRADING ONE, INC., a California Corporation;<br><br>**Respondents.** | **USDC Case No.: 2:25-cv-11869-JFW (MBKx)**<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARDS**<br><br>**DATE:  JULY 13, 2026**<br>**TIME:  1:30 PM**<br>**CTRM: 7A**<br><br>**[9 U.S.C. § 207]**<br><br>**Trial: Not set** |

**TO THE HONORABLE COURT, ALL INTERESTED PARTIES AND**

1

**REQUEST FOR JUDICIAL NOTICE RE: AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

**THEIR ATTORNEYS OF RECORDS:**

COME NOW, **PETITIONER**, Aleksandr Aleksandrovich Grant, Assignee And Successor of Davilla Investing Limited, an individual, by and through his attorneys, and hereby pursuant to Federal Rules of Evidence 201, respectfully requests that the Court take judicial notice of the following documents and things, in support of his petition to confirm the foreign arbitral awards.

As set forth more fully below, each of the documents is attached to the Declaration of Joseph M. Kar, Esq. and each is a document of which the Court may take judicial notice pursuant to Federal Rule of Evidence 201(b)(2) as a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

1) **Exhibit 1** to the first Declaration of Dmitry Valeryevich Knyazev dated April 30, 2026, is the apostilled original and certified copy of the final first arbitration award issued in Moscow, Russian Federation on August 31, 2021 ("First Award"), in arbitration proceedings before the Arbitration Court under the ad hoc arbitration procedure for the resolution of a specific dispute, presided over by the sole arbitrator appointed and agreed upon by the parties — Knyazev Dmitry Valeryevich (Master of Law), an arbitration duly constituted under the Civil Code of the Russian Federation and pursuant to the UNCITRAL Arbitration Rules, rendered its final award in *Davilla Investing Limited, Claimant, v. Golden Spirits Limited, AFB Trading One, Inc., Golden Sphinx Limited, and Agragorn Holdings Limited.* Petitioner respectfully requests that the Court take judicial notice under Federal Rule of Evidence 201(b)(2). *See, e.g,* Kurtcu v. U.S. Parking, Inc., No. C 08-02113, 2008 U.S. Dist. LEXIS 51302, at *5 (N.D. Cal. June 16, 2008) (taking judicial notice of arbitration award); *Starks v. S.W. Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1326 n.3 (8th Cir. 1994) (holding that a court may take judicial notice of arbitration awards under Federal Rule of Evidence 201).

2

**REQUEST FOR JUDICIAL NOTICE RE: AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

2) **Exhibit 2** to the first Declaration of Dmitry Valeryevich Knyazev dated April 30, 2026, is the apostilled original and certified copy of the second arbitration award issued in Moscow, Russian Federation on August 15, 2025 ("Second Award"), in arbitration proceedings before the Arbitration Court under the ad hoc arbitration procedure for the resolution of a specific dispute, presided over by the sole arbitrator appointed and agreed upon by the parties — Knyazev Dmitry Valeryevich (Master of Law), an arbitration duly constituted under the Civil Code of the Russian Federation and pursuant to the UNCITRAL Arbitration Rules, rendered its final award in *Aleksandr Aleksandrovich Grant, Claimant, v. AFB Trading One, Inc. and Golden Sphinx Limited*. Petitioner respectfully requests that the Court take judicial notice under Federal Rule of Evidence 201(b)(2). *See, e.g,* Kurtcu v. U.S. Parking, Inc., No. C 08-02113, 2008 U.S. Dist. LEXIS 51302, at *5 (N.D. Cal. June 16, 2008) (taking judicial notice of arbitration award); *Starks v. S.W. Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1326 n.3 (8th Cir. 1994) (holding that a court may take judicial notice of arbitration awards under Federal Rule of Evidence 201).

3) **Exhibit 13** to the Declaration of Joseph M. Kar, Esq. is believed to be a true and correct copy of the Russian Federation Federal Arbitration Law No. 382-FZ of December 29, 2015, Article 38 and Article 41.

Dated: May 26, 2026                          Respectfully Submitted,
                                  **LAW OFFICE OF JOSEPH M. KAR, PC**

By:_____
                     Joseph M. Kar
**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH GRANT,
ASSIGNEE AND SUCCESSOR OF DAVILLA
INVESTING LIMITED

3

**REQUEST FOR JUDICIAL NOTICE RE: AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

Joseph M. Kar (SBN 207414)
jkar@civillegal.com
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite PH-1220
Sherman Oaks, CA 91403
Telephone: (818) 501-6930
Facsimile: (818) 501-6935

**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH,
GRANT, ASSIGNEE AND SUCCESSOR OF
DAVILLA INVESTING LIMITED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual<br><br>Petitioner,<br><br>v.<br><br>AFB TRADING ONE, INC., a California Corporation;<br><br>Respondents. | **Case No.: 2:25-cv-11869-JFW (MBKx)**<br><br>**CERTIFICATE OF SERVICE RE: AMENDED PETITION AND SUPPORTING DOCUMENTS**<br><br>**Judge: Honorable John F. Walter**<br>**Ctrm: 7A**<br><br>**[9 U.S.C. § 207]**<br><br>**Trial: Not set** |

1

**CERTIFICATE OF SERVICE**

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA                )
                                   ) ss
COUNTY OF LOS ANGELES              )

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 15250 Ventura Blvd., Ste. 1220, Sherman Oaks, Ca 91403.

On May 27, 2026, I served the foregoing document described as (1) Amended Petition to Confirm Foreign Arbitral Awards, (2) Petitioner's Memorandum of Points and Authorities ISO Amended Petition, (3) Declaration of Dmitry Valeryevich Knyazev #1 and Exhibits 1 to 6 thereto, (4) Declaration of Dmitry Valeryevich Knyazev #2 and Exhibits A to C thereto, (5) Declaration of Joseph M. Kar, Esq. and Exhibits 7 to 15 thereto, (6) Declaration of Aleksandr Aleksandrovich Grant, and (7) Request for Judicial Notice on the interested parties as follows:

MICHAEL ZORKIN (Bar No. CA 313308)

Email: mz@thezorkinfirm.com

THE ZORKIN FIRM

6320 Canoga Ave., 15th Floor

Woodland Hills, California 91367

Telephone: 323.493.8075

Attorneys for RESPONDENT(S)

X   BY EMAIL SERVICE.       I served the foregoing documents on the interested parties in this action by placing a true and correct copy thereof via electronic mail attachment to the email address for the above identified person, and I sent such electronic mail to said persons personally without any transmission error.

_   BY US MAIL          By placing the above described true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of

2

CERTIFICATE OF SERVICE

record or parties in propria persona.  I caused such envelope to be deposited in the Sherman Oaks, CA box, which is regularly maintained by US Postal Service, with delivery fees pre-paid and provided for, addressed to the person on whom said document is to be served.

Executed on May 27, 2026, at Los Angeles, California.

X    (Federal) I declare that I am employed in the offices of a member of this court at whose direction the service was made.

_____

Joseph M. Kar

3

**CERTIFICATE OF SERVICE**

# EXHIBIT 4

Joseph M. Kar (SBN 207414)
jkar@civillegal.com
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite PH-1220
Sherman Oaks, CA 91403
Telephone:   (818) 501-6930
Facsimile:   (818) 501-6935


**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH,
GRANT, ASSIGNEE AND SUCCESSOR OF
DAVILLA INVESTING LIMITED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual<br><br>Petitioner,<br><br>v.<br><br>AFB TRADING ONE, INC., a California Corporation;<br><br>Respondents. | **Case No.: 2:25-cv-11869-JFW (MBKx)**<br><br>**PETITIONER'S REPLY TO OPPOSITION TO AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Judge: Honorable John F. Walter**<br>**Ctrm:  7A**<br><br>**DATE: JULY 13, 2026**<br>**TIME: 1:30 PM**<br>**CTRM: 7A**<br><br>**[9 U.S.C. § 207]**<br>**Trial: Not set** |

1

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

**TO THE HONORABLE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORDS:**

COMES NOW, PETITIONER, ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual, by and through his attorneys, and hereby respectfully submits the following memorandum of points and authorities, accompanying exhibits and declarations and any request for judicial notice if any, filed herewith,

<u>TABLE OF AUTHORITIES</u>

<u>*Laws, Statutes, and Rules*</u>

9 U.S.C. § 207 — ***Passim***

Federal Rule of Evidence 901(a) — **7**

Fed. R. Evid. 702 — **11**

Cal. R. Prof. Conduct 3.7 — **13**

28 U.S.C. § 1746 — **15**

Rule 11 — **19**

28 U.S.C. § 1927 — **19**

<u>*Case Law*</u>

*Vatyan v. Mukasey,* 508 F.3d 1179 (9th Cir. 2007) — **7**

*Baker Hughes Servs. Int'l LLC v. Joshi Techs. Int'l Inc.,* 73 F.4th 1139 (10th Cir. 2023) — **8**

*Mgmt. & Tech. Consultants S.A. v. Parsons-Jurden Int'l Corp.,* 820 F.2d 1531 (9th Cir. 1987) — **8**

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.,* 403 F.3d 85 (2d Cir. 2005) — **10**

*Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) — **11**

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) — **11**

*Comden v. Superior Court,* 20 Cal. 3d 906 (1978) — **13**

2

*Liu Luwei v. Phyto Tech Corp.,* 2018 WL 6016958

(C.D. Cal. 2018)                                                    **16**

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395

(1967)                                                             **17**

*Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440

(2006)                                                             **17**

*Marino v. Writers Guild of Am., E., Inc.,* 992 F.2d 1480

(9th Cir. 1993), *cert. denied,* 510 U.S. 978 (1994)              **17**

*AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs.,*

*Inc.,* 139 F.3d 980 (2d Cir. 1998)                               **17**

*Carter v. Anderson,* 164 F.3d 1, 4 (D.C. Cir. 1998)             **17**

*Cont'l Transfert Tech., Ltd. v. Fed. Gov't of Nigeria,* 932 F. Supp. 2d 153

(D.D.C. 2013)                                                      **18**

3

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT                                           **5**

II.   THE KNYAZEV DECLARATIONS ARE DISPOSITIVE OF EVERY
      FACTUAL DISPUTE                                                 **7**

III.  RESPONDENT'S NEW EVIDENCE DOES NOT WITHSTAND
      SCRUTINY                                                        **8**

      A. The ICAC Letter Confirms And Does Not Contradict The *Ad Hoc* Status
      of the Arbitration                                             **9**

      B. The Ministry of Justice Letter Confirms That *Ad Hoc* Arbitrators Require
      No State Authorization                                         **10**

      C. Ms. Hay's One-Letter Typography Opinion Is Inadmissible and Was
      Already Addressed                                              **11**

      D. Mr. Zorkin's "Native .eml" Testimony Is Self-Authentication by Counsel
      of Record                                                      **12**

      E. Ms. Padalko's Denial Is Refuted by the Apostilled Arbitrator
      Declaration                                                    **13**

      F. Respondent's Foreign-National Declarations Lack the Authentication
      Petitioner Has Been Required to Provide                        **14**

IV.   EACH ARTICLE V DEFENSE FAILS                                   15

      A. Notice Was Actual and Through Counsel of Record
         (Art. V(1)(b))                                              **15**

      B. The Validity Challenge to the 2012 Guarantee Is Waived and Severable
      (Art. V(1)(a))                                                 **16**

      C. Incapacity of Non-Party Golden Sphinx Does Not Affect AFB (Art.
      V(1)(a))                                                       **17**

      D. The Petition Is Timely Under 9 U.S.C. § 207                 **17**

V.    AFB IS THE PRISON-OPERATED SHELL OF A CONVICTED
      RUSSIAN FINANCIAL CRIMINAL                                     **18**

VI.   PETITIONER RESERVES ALL RIGHTS TO FEES AND
      SANCTIONS                                                      **18**

VII.  CONCLUSION                                                     **19**

4

---

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT.

In the original opposition, Respondent's near-exclusive position was that the Awards were *"fake. A phony. A forgery."* Original Opp. (Dkt. No. 18) at 1.  That accusation was and is specious from the start.  It relied on mischaracterizations of disputed Russian-language documents by counsel of record using speculation about institutional seals by witnesses with no forensic qualification and challenging the entirety of the Awards based on a one-letter Cyrillic-orthography complaint.  The prior asserted absence of an apostille that Respondent insisted could not be produced has been produced and valid the Awards as genuine undisputedly.

Petitioner now produced the apostilles and each Award now before this Court are supported by the true Declarations of arbitrator Knyazev Dmitry Valeryevich and Petitioner Aleksandr Aleksandrovich Grant which bear apostilles issued by the competent authority of the Russian Federation under the Hague Convention of October 5, 1961.[1]  The Respondnet's *"fake"* theory has been neutralized by the very international authentication Respondent represented could never be obtained themselves.

Confronted with that evidence, Respondent does not now contend, in this Opposition, that the Awards are forgeries.  The accusation is conspicuously absent. In its place, Respondent recycles the same five *"indicia of forgery"* from its original Opposition — repackaged through different witnesses, presented this time as *"expert"* opinion or *"institutional"* evidence rather than as direct forgery accusations.

In the latest opposition, Mr. Zorkin no longer signs his own name to the forgery charge.  The translator, Ms. Hay, improperly opines on a single Cyrillic

---

[1]    Petitioner is still being receipt of apostilled declarations from the Russian Federation which are expected to be lodged on or about the week of June 29, 2026 or sooner as international processing and transit times had been and are compromised due to the bureaucracy and war time challenges in that part of the world. Dkt#58-3 and 58-4.

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

Case 2:25-bk-18095-JFW-MB Doc 141 Filed 06/23/26 Entered 06/23/26 17 of 248 Page D
Case 2:25-cv-18095-JFW-MB Doc 14 Document 06/23/26 Entered 06/13/26 17 of 248 Page D
Main Document #:2295 Page 393 of 415

dieresis and the Russian counsel, Trubina, speculates about *"individuals outside Russia"* having drafted the Award. The opposition also wrongly claims that their ICAC letter and the Russian Ministry of Justice letter address procedural questions that confirm, rather than refute the validity of an *ad hoc* arbitration conducted under FZ-382 and the UNCITRAL Rules.

Each of these arguments was raised in substance in the original Opposition and each was addressed in Petitioner's original Reply (Dkt. No. 31). Thus, the recycled arguments fail after presentment of apostilled Awards. As such, recycling the same theories through new witnesses does not rehabilitate arguments that the international authentication provided now foreclosed.

Petitioner has been held to the apostille standard by Respondent and by this Court and the Court found in its April 21, 2026 Order that an amended petition with apostille certification was proper. Petitioner has now satisfied that standard fully but Respondent, by contrast, has submitted five foreign-national declarations from Trubina (Russia), Yurasova (Russia), Aleksandr Sabadash (Russia, incarcerated), Padalko (Russia), and Wood (Jersey, United Kingdom), without one apostilled and none of which is consularly authenticated. Accordingly, the Respondent's evidence is faulty on top of being without good basis.

Three foundational facts dispose of the opposition and require confirmation under 9 U.S.C. § 207. **First,** both Awards and the arbitrator's Declaration are apostilled or originally signed with apostilled copies in transit as well. That authentication is conclusive of genuineness under Article IV of the New York Convention.

**Second,** the person with first-hand dispositive knowledge of every factual dispute Respondent raises, the arbitrator, has sworn under oath that the Awards are genuine, that he did not issue the alleged August 25, 2021 dismissal order, that the August 31, 2021 hearing proceeded as scheduled, that Tatiana Padalko personally appeared and was advised of the continuance, and that the proceeding was

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

conducted as an *ad hoc* arbitration under FZ-382 and the UNCITRAL Rules. Knyazev Second Decl. ¶¶ 1-19; Knyazev Original Decl. (Dkt. No. 31) ¶¶ 1-23; Knyazev Supplement Decl. (Dkt. No. 43) ¶¶ 1-2.

**Third,** AFB Trading One, Inc. is the California shell of Aleksandr Vitalievich Sabadash, a convicted Russian financial criminal who has been incarcerated in Moscow since May 2014, a fact Sabadash himself has sworn to in this District. (Sabadash Decl. attached to Dkt. No. 31 as Ex. 11.) Thus, the forgery arguments Respondent waged in this Court is actually being orchestrated from a Russian prison cell through a California shell corporation by the same counsel (Zorkin Firm) who simultaneously represents Sabadash in the related involuntary-bankruptcy proceeding (Case No. 2:25-bk-11235-NB).

Hence there is no viable Article V defense survives these facts and the Court has good cause to grant the amended petition and all the requested relief.

## II.     THE KNYAZEV DECLARATIONS ARE DISPOSITIVE OF EVERY FACTUAL DISPUTE.

Federal Rule of Evidence 901(a) requires only "testimony of a witness with knowledge" to authenticate.  The arbitrator presided over the hearings, who took the evidence and authored both Awards, has provided all required facts and evidence under oath.  No more authoritative form of evidence is available to a court asked to confirm a foreign arbitral award.  *Vatyan v. Mukasey,* 508 F.3d 1179, 1185 (9th Cir. 2007). The apostilled Knyazev Second Declaration establishes:

(1) the First Award (8/31/2021) and Second Award (8/15/2025) are genuine, executed by the arbitrator, and bear his authentic seal (Knyazev Second Decl. ¶¶ 3-4, 13, 19; Exs. 1-2);

(2) no order dismissing the proceedings was issued on August 25, 2021, and the document Respondent presented as Dkt. No. 18-1, Ex. 14 is not authentic (Knyazev Second Decl. ¶¶ 11, 14, 19; Knyazev Original Decl. ¶¶ 22-23);

REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD

(3) the August 31, 2021 merits hearing proceeded on the continued date (Knyazev Second Decl. ¶¶ 5, 10, 13; Knyazev Original Decl. ¶ 9);

(4) Tatiana Padalko personally appeared at the 8/25/2021 hearing venue, was advised of the continuance, and agreed to notify Mr. Zorkin and Mrs. Sabadash (Knyazev Second Decl. ¶ 10; Knyazev Original Decl. ¶ 11);

(5) the proceeding was an *ad hoc* arbitration conducted under Federal Law No. 382-FZ and UNCITRAL Rules pursuant to the parties' August 23, 2012 Arbitration Agreement (Knyazev Second Decl. ¶¶ 1-2, 6 and Ex. 6); and

(6) Mr. Zorkin filed three written submissions in the arbitration on AFB's behalf, with substantive engagement on jurisdiction, the merits, and falsification — conduct inconsistent with absence of notice and inconsistent with belief that the case had been dismissed (Knyazev Second Decl. ¶¶ 6-9; Knyazev Original Decl. ¶ 12).

Respondent has offered no contrary testimony from any person who was present at the Moscow venue on August 31, 2021, no qualified forensic document examiner, no chain-of-custody declaration for any of its exhibits, and no expert report. What it has offered are Respondent's counsel's own mischaracterizations (Zorkin) which can be considered *ipse dixit*, interested-party denials (L. Sabadash, A. Sabadash, Padalko) along with the institutional letter from the wrong institution (Yurasova/ICAC). Likewise the irrelevant Ministry-of-Justice clarification (Trubina) and their translator's typographical opinion (Hay), are not sufficient.

A US court reviewing a New York Convention award may not set aside the award based on speculation, hearsay, or the arbitrator's alleged mistakes. *Baker Hughes Servs. Int'l LLC v. Joshi Techs. Int'l Inc.,* 73 F.4th 1139, 1148 (10th Cir. 2023); *Mgmt. & Tech. Consultants S.A. v. Parsons-Jurden Int'l Corp.,* 820 F.2d 1531, 1534 (9th Cir. 1987) (review of foreign arbitral awards is "strictly limited").

## III. RESPONDENT'S NEW EVIDENCE DOES NOT WITHSTAND SCRUTINY.

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

**A. The ICAC Letter Confirms And Does Not Contradict The *Ad Hoc* Status of the Arbitration.**

Respondent's main exhibit is a letter from the International Commercial Arbitration Court at the Russian Chamber of Commerce and Industry ("ICAC"), confirming that ICAC "never, at any time, including in 2021 or 2025, provided administrative or logistical support to the ad hoc arbitration involving the parties and arbitrator D.V. Knyazev," and that Knyazev was not on ICAC's roster of registered arbitrators. Yurasova Decl. Ex. 1, p. 1. Curiously, Respondent treats this as proof the arbitration was fictitious when in fact the opposite is true.

The ICAC letter affirms what the Awards themselves recite, what the arbitrator has sworn to, and what the Arbitration Agreement of August 23, 2012 establishes that this was an *ad hoc* arbitration was a proceeding conducted by an arbitrator selected and stipulated to by the parties without administration by a permanent arbitral institution.

UNCITRAL Arbitration Rules Art. 6; Russian Federal Law No. 382-FZ § 2(17) (defining ad hoc arbitration as "conducted in the absence of administration by a permanent arbitral institution"). Thus, the First Award correctly states that the proceeding was held "in accordance with the provisions of Federal Law No. 382-FZ of 12/29/2015 'On Arbitration (Arbitral Proceedings) in the Russian Federation.'" Knyazev Second Decl. Ex. 1, p. 1; *see also* Knyazev Second Decl. ¶ 1; Knyazev Original Decl. ¶ 1.

The assertion that ICAC did not have Knyazev on its institutional roster and did not administer this case is precisely what an *ad hoc* arbitration is supposed to be. The New York Convention does not require institutional administration at all and the Convention's authentication standard in Article IV is satisfied by "the duly authenticated original award or a duly certified copy thereof," together with the arbitration agreement. Here, the Court has been given both and thus it is irrelevant that whether ICAC was involved in the confirmation.

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

Cleanly Respondent's argument inverts the structure of the Convention since, under that logic no ad hoc Russian arbitration could ever be enforced in the United States because ICAC and the Chamber of Commerce will by definition disclaim knowledge of it.  That is not the law.  *See, e.g., Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.,* 403 F.3d 85, 90 (2d Cir. 2005) ["review of arbitral awards under the New York Convention is "very limited ... in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Yusuf Ahmed Alghanim*, 126 F.3d at 23 (quoting *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993))."]

**B. The Ministry of Justice Letter Confirms That *Ad Hoc* Arbitrators Require No State Authorization.**

Respondent's second institutional exhibit is asserted to be a letter dated April 7, 2026 from the Russian Ministry of Justice.  Trubina Decl. Ex. 2.  The letter confirms three points that defeat rather than support Respondent's opposition. **First,** the MoJ confirms that "the resolution of disputes through arbitration may be carried out... by an arbitral tribunal formed by the parties to resolve a specific dispute (ad hoc arbitration)."  Trubina Ex. 2, p. 1.  **Second,** the MoJ confirms that "an ad hoc arbitral tribunal is constituted by virtue of the parties' agreement for the purpose of resolving a specific dispute and ceases to exist after the dispute has been resolved. Given the nature of the ad hoc arbitration described above, no authorization to perform its functions is required." *Id.* at p. 2.  **Third,** the MoJ confirms that Federal Law 382-FZ "does not provide for the maintenance by the Ministry of Justice of Russia of any register or list of persons who may perform, are performing, or have performed the functions of an ad hoc arbitrator." *Ibid.*

Each statement undermines Respondent's position since the MoJ confirms that ad hoc arbitrators (i) require no authorization, (ii) need not be registered, and (iii) function entirely from the parties' written agreement.  Here, the Arbitration

10

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

Agreement of August 23, 2012, which the apostilled Awards expressly invoke and which Respondent's own attorneys did not contest as a written agreement during the underlying proceeding.  Knyazev Second Decl. Ex. 6.

The MoJ's separate statement about the use of the Coat of Arms is a question of Russian administrative law unconnected to the validity of an arbitral award. Neither FZ-382, the New York Convention, the FAA, nor Article IV of the Convention requires any particular seal style, much less the absence of a coat of arms.  In this case, the arbitrator's apostilled signature is what authenticates the Award.  Accordingly, the challenge to the dieresis on the seal deals with symbology not the validity of arbitral proceedings and thus does not matter.

Trubina's separate accusation that the Award "appears falsified" and "was prepared retroactively by individuals residing outside of Russia who are not fluent in Russian, Russian laws, or Russian legal terminology" (Trubina Decl. ¶¶ 4-5) is pure speculation by a foreign attorney with no personal knowledge of who drafted the Award or where.  It is inadmissible under FRE 602, 701, and 702, and is directly refuted by the apostilled Declaration of the arbitrator himself, who wrote the Award and is fluent in Russian language, law, and terminology.

**C. Ms. Hay's One-Letter Typography Opinion Is Inadmissible and Was Already Addressed.**

Tatiana Hay is a court-certified Russian language interpreter.  She is not a forensic seal examiner, not a typographer, not a document examiner.  Hay Decl. ¶ 1; Ex. 1 (CV).  Her opinion that the arbitrator's hand-applied rubber seal shows the Cyrillic letter *ё* (yo) where she would expect *е* (ye) in the word "процедуре," *i.e.*, the difference is the presence vs. absence of a dieresis over a single letter (Hay Decl. ¶¶ 3-6), is not *Daubert*-compliant expert testimony on document authenticity. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 591-92 (1993); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150 (1999); Fed. R. Evid. 702.

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

Ms. Hay offers no methodology, no comparative analysis with verified Russian arbitral seals, no industry standard for evaluating hand-applied rubber stamps, no analysis of ink-bleed or impression variability, and no qualification beyond translation competency. She does not address the well-known feature of modern Russian orthography that the dieresis over *ё* is routinely omitted in everyday text, signage, and rubber stamps.  Russian readers infer the letter from context too, so her opinion is also inconsistent with itself because she identifies the variance only at the bottom seal of the August 31, 2021 award (Hay Decl. ¶ 3) without addressing why a forger would commit the same single-letter "error" across two awards issued four years apart.

Even if admissible, the opinion proves nothing since a hand-applied rubber stamps routinely vary in impression as well.  The same arguments were made in Respondent's original opposition (Dkt. No. 18 at 5-7) and were addressed in Petitioner's prior reply (Dkt. No. 31).  More currently, the arbitrator confirmed in his Declarations that there is nothing irregular about his seal and that both Awards are genuine.  Knyazev Second Decl. ¶¶ 13, 19; Knyazev Original Decl. ¶¶ 12, 23. As such, Ms. Hay's typographical complaint is not well taken.

**D. Mr. Zorkin's "Native .eml" Testimony Is Self-Authentication by Counsel of Record.**

Mr. Zorkin wears too many hats and cannot simultaneously act as Respondent's counsel of record and as its only fact witness on the events of August 2021.  Now as a foundation witness for the "native .eml file," he incorrectly says it proves the case was dismissed.  Zorkin Decl. ¶¶ 8-15.[2]  But he purports to identify Internet headers, locate authentication checks, and authenticate Microsoft Outlook

---

[2] Concurrently, Respondent lodged a flash drive (Dkt. No. 70) purporting to contain "native" Outlook versions of these same emails as Exhibits 26 and 27. By Respondent's own description, those exhibits are the identical August 25, 2021 emails already filed in PDF as Exhibit 15 (Dkt. No. 60-6); the Notice states the native files "will be provided to Petitioner's counsel," and Petitioner has not been served with copies of Exhibits 26 and 27 as lodged until June 18. In any event, the native metadata of an email's transmission does not authenticate the dismissal order said to be attached, which the arbitrator has declared under apostille he never issued.  Knyazev Second Decl. ¶¶ 11, 14, 19.

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

metadata all from his one-sided personal review. He provides no chain of custody from receipt in August 2021 to production in 2026,--a 4.5-year gap. He also fails to provide any comparison with verified Knyazev emails.

Zorkin fails to also provide any analysis from a qualified third-party forensic examiner. The advocate-witness conflict is direct and disqualifying. Cal. R. Prof. Conduct 3.7; *Comden v. Superior Court,* 20 Cal. 3d 906, 912 (1978). Even if admissible, Mr. Zorkin's metadata testimony does not establish what he claims since the email headers reflect server routing, not the content's authenticity.

A forged email document attached to a real email message produces a real header sequence. The **document** Mr. Zorkin describes, which he said is the alleged August 25, 2021 dismissal order, has already been declared **inauthentic** by the arbitrator himself under oath. Knyazev Second Decl. ¶ 11; Knyazev Original Decl. ¶¶ 22-23. As such, no quantity of header analysis by counsel of record can rehabilitate a document the arbitrator says he did not issue.

**E. Ms. Padalko's Denial Is Refuted by the Apostilled Arbitrator Declaration.**

Tatiana Padalko declares that she went to Knyazev's office address on August **26,** 2021 (not the scheduled hearing date of August 25), found the office unoccupied, never met Knyazev, and never received notice of the August 31 continuance. Padalko Decl. ¶¶ 11-21. Then she newly asserts that any document bearing her signature is a forgery which she conveniently forgot and never raised in her prior declaration in opposition to the original petition. *Id.* ¶ 21.

The arbitrator's apostilled testimony is better evidence. Knyazev declares that on the scheduled date of August 25, 2021, after the noon Moscow time start, Ms. Padalko arrived approximately 2.5 hours late, that he advised her that Respondents' late submissions would be considered but the merits proceeding would be continued to August 31, 2021, and that Ms. Padalko acknowledged her

13

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

understanding and agreed to notify Mr. Zorkin and Mrs. Sabadash. Knyazev Second Decl. ¶ 10; Knyazev Original Decl. ¶ 11.

Thus, the arbitrator's testimony is corroborated by the documents he produced contemporaneously.  Padalko's testimony is not apostilled and is offered by a witness whose role as Sabadash's "financial manager" under Article 213.9 of Russian Bankruptcy Law (Padalko Decl. ¶ 5) which places her in a fiduciary relationship with the prison-incarcerated principal of AFB.  Therefore, the Court should give the testimony of the arbitrator stronger weight.

**F. Respondent's Foreign-National Declarations Lack the Authentication Petitioner Has Been Required to Provide.**

Five of the nine declarations Respondent submits in opposition are by foreign nationals: Darya Trubina (St. Petersburg, Russian Federation — Dkt. No. 63); Nadezhda Yurasova (Moscow Branch "Pravo," law firm "Nizam," Russian Federation — Dkt. No. 64); Aleksandr Vitalievich Sabadash (incarcerated in Moscow, Russian Federation — Dkt. No. 65); Tatiana Padalko (Moscow, Russian Federation — Dkt. No. 66); and Andrew Wood (Jersey, United Kingdom — Dkt. No. 67).  **None of those five declarations bears an apostille** issued under the Hague Convention of October 5, 1961 nor any consular authentication, nor are any documents accompanied by certification of the declarant's identity by any foreign official.

This is the precise authentication standard Respondent successfully required Petitioner to meet before this Court which delayed the petition being granted the first time.  After this Court's order of April 21, 2026, Petitioner has provided apostilled and originals of both Awards (Knyazev Second Decl. Exs. 1, 2), an Second Declaration of the arbitrator, and a Declaration of Petitioner himself which were all issued under the Hague Convention by the competent authority of the Russian Federation.

14

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

Respondent now offers in opposition to that authenticated evidence five foreign-national declarations executed without comparable authentication. Even if those declarations are credited and admit, nothing stated in them establishes any defense to the amended petition. While 28 U.S.C. § 1746 permits unsworn foreign declarations bearing the prescribed perjury language to be admitted, the integrity of the underlying foreign signatures, the identification of the foreign declarants, and the foreign-language documents they reference depend on the same authentication chain Petitioner has provided. As such, Respondent has failed to provide any competent evidence in opposition and Petitioner's evidence and declarations do establish the validity of the Awards and underlying proceedings, in detail, which is way better evidence.

In one specific respect, the Trubina Declaration attaches as Exhibit 2 a letter purporting to be from the Russian Ministry of Justice, dated April 7, 2026 (No. 12-32638/26) but document is a foreign public document subject to FRE 902(3), which requires authentication by certification of a foreign official, by an attesting officer, or under the Hague Convention by apostille. Trubina Exhibit 2 bears none of those certifications and it is presented as an emailed image of a letter, transmitted by Russian counsel to U.S. counsel. Whatever its substantive content (which, as Section III.B above demonstrates, confirms rather than refutes Petitioner's position), the document is not properly authenticated to the standard the Petition has been required to meet, and may not be considered as foreign public-document evidence on that basis. Thus, it can be disregarded.

## IV. EACH ARTICLE V DEFENSE FAILS.

### A. Notice Was Actual and Through Counsel of Record (Art. V(1)(b)).

The lack of notice argument fails since it wasn't raised in the first instance and because there was proper notice as well as actual notice. Mr. Zorkin's own testimony places him on a Skype call standing by, with Russian co-counsel coordinating in real time at 2:00 a.m. Pacific (noon Moscow) on August 25, 2021.

15

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

Zorkin Decl. ¶ 4.  Dismissed parties do not retain international co-counsel on overnight Skype standby.  Indeed, Mr. Zorkin's three written filings in the arbitration on August 19, 23, and 24, 2021 (Decl. Exs. 11, 12, 13) confirm AFB's actual notice and substantive participation.

After what Respondent tries to call a "dismissal," Mr. Zorkin transmitted yet another filing to the arbitrator at 3:50 a.m. Pacific on August 25, 2021 which was the "Response to the Complaint" which flatly discredits Zorkin and his clients. (Kar Reply Decl. ¶ 9.)  To suggest that Respondent did not get notice after appearing on August 25 and engaging actively in the arbitration, totally discredits the claim of lack of notice.

For the August 31, 2021 hearing, Ms. Padalko was personally informed and agreed to notify Zorkin and Sabadash which those people are imputed knowledge since Padalko was present and because they were on-standby for August 25, 2021. Knyazev Second Decl. ¶ 10.  For the August 15, 2025 hearing, pointedly, Mr. Grant filed his proof of claim in Case No. 2:25-bk-11235-NB on June 2, 2025 in this District in Sabadash's own bankruptcy proceeding represented by the Zorkin Firm which places AFB's principal on full notice of the continued proceedings two months before the Second Award issued.  Next, Even if we credited, Mr. Wood, the Joint Liquidator of non-party Golden Sphinx Limited, claims no service since 2022 (Wood Decl. ¶ 4) but his testimony does not concern AFB who is the only Respondent here.

Thus, the notice was actual, repeated, and sufficient under Article V(1)(b). *Liu Luwei v. Phyto Tech Corp.,* 2018 WL 6016958, at *13-14 (C.D. Cal. 2018).

**B. The Validity Challenge to the 2012 Guarantee Is Waived and Severable (Art. V(1)(a)).**

AFB argues, through L. Sabadash, that Garry Itkin lacked corporate authority to sign the August 23, 2012 Corporate Guarantee on AFB's behalf.  L. Sabadash Decl. (Dkt. No. 61) ¶¶ 4-6.  So what, those issues were previously

REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD

decided in arbitration and those merits defenses are not an Article V defense.  The Awards are not appealable and cannot be re-considered by this Court.

Also, under *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-404 (1967), and *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445-446 (2006), the arbitration agreement is severable from the underlying contract, challenges to the underlying contract's validity go to the arbitrator, not the confirming court.  AFB participated in the arbitration through L. Sabadash's three written submissions (Zorkin Decl. Exs. 11-13) and through Ms. Padalko's personal appearance.  None of those submissions raised disputes with Itkin's authority then and they cannot do so now.   Thus, the merits defense was waived. *Marino v. Writers Guild of Am., E., Inc.,* 992 F.2d 1480, 1484 (9th Cir. 1993), *cert. denied,* 510 U.S. 978 (1994); *AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,* 139 F.3d 980, 982 (2d Cir. 1998) (party who fails to raise defense during arbitration waives right to raise at confirmation).

**C. Incapacity of Non-Party Golden Sphinx Does Not Affect AFB (Art. V(1)(a)).**

Confirmation is sought only as to AFB Trading One, Inc. Pet. ¶ 2.  AFB is a solvent California corporation.  The Wood Declaration (Dkt. No. 67) addresses Golden Sphinx Limited, which is in liquidation in Jersey.  Solidly, Golden Sphinx is **not a party** to this Petition. The liquidation status of a non-party co-respondent is immaterial to confirmation of the Awards against AFB.

Here, the Awards are joint and several which is not affected by the insolvency or dissolution of one does not absolve the others. *Carter v. Anderson,* 164 F.3d 1, 4 (D.C. Cir. 1998).  As such, this argument fails.

**D. The Petition Is Timely Under 9 U.S.C. § 207.**

Section 207 establishes a three-year limitations period from the date of each award.  The **Second Award** is dated August 15, 2025.  The original Petition was filed December 16, 2025, four months later, and the Amended Petition follows the

17

REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD

Court's April 21 and May 6, 2026 Orders.  As to both Awards there is no statute of limitations question and the First Award was renewed in the Second Award which calculated four years of accrued interest on the same unpaid principal and formally recognized Petitioner's assignment from Davilla Investing Limited. Knyazev Second Decl. ¶¶ 4, 16-17 and Ex. 2, pg. 9.   Consequently, the renewed award reopens the limitations clock under the New York Convention.  *See, e.g.*, *Cont'l Transfert Tech., Ltd. v. Fed. Gov't of Nigeria,* 932 F. Supp. 2d 153, 157 (D.D.C. 2013).

## V.    AFB IS THE PRISON-OPERATED SHELL OF A CONVICTED RUSSIAN FINANCIAL CRIMINAL.

AFB's 28-page opposition does not mention that its sole shareholder, Aleksandr Vitalievich Sabadash, has been incarcerated in a Moscow prison since May 2014.  He swore: *"I was arrested in May 2014 in Moscow, Russia, and have remained incarcerated since that date." "I am the sole shareholder of AFB Trading One, Inc."  In re Aleksandr Vitalievich Sabadash,* No. 2:23-bk-15574-NB (Bankr. C.D. Cal.), Dkt. No. 30, ¶¶ 2-3 (Ex. 11 to Petitioner's Reply to Original Opposition, Dkt. No. 31).  Here, the original arguments claims the Awards were "fake," "phony," "forgery," "could not be apostilled."  Definitely, the Respondents misled the Court about the strength of the petition.  As such, the Court should weigh the opposition's credibility against that background.

## VI.    PETITIONER RESERVES ALL RIGHTS TO FEES AND SANCTIONS.

Respondent has now twice persuaded this Court (originally on April 21, 2026, and on the current opposition) that the Petitioner's apostilled, arbitrator-authenticated, controlling-shareholder-corroborated petition is somehow not worthy of confirmation under § 207.  Petitioner has also now adequately produced apostilled documents and originals which defeat of the Respondent's defenses. The pattern of making up arguments about "fake" awards and that it "could not be

18

apostilled" then, when apostilled, arguing the "institution did not register the arbitrator" or "the Cyrillic letter is wrong," reflect frivolous litigation and attrition delay tactics that cannot be considered good-faith opposition. As such, Petitioner reserves all rights under Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority to seek fees, costs, and sanctions following confirmation of the Awards.

## VII. CONCLUSION.

**WHEREFORE,** Petitioner respectfully requests that this Court: (1) confirm the First Award and Second Award pursuant to 9 U.S.C. § 207; (2) enter judgment against AFB Trading One, Inc. in the principal amount of **US $2,880,912.66** (comprising US $2,774,253.20 due through August 15, 2025 under the Awards, plus US $106,659.46 in post-award interest accrued from August 16, 2025 through July 13, 2026), with continuing post-award interest accruing at US $321.26 per day from July 14, 2026 until paid in full; (3) award Petitioner attorneys' fees and costs incurred herein by separately filed motion; and (4) grant such other relief as this Court deems just and proper.

Dated: June 19, 2026

Respectfully Submitted,
**LAW OFFICE OF JOSEPH M. KAR, PC**

By: _____

Joseph M. Kar
**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED

19

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA   )
           ) ss
COUNTY OF LOS ANGELES  )

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 15250 Ventura Blvd., Ste. 1220, Sherman Oaks, Ca 91403.

On June 19, 2026, I served the foregoing document described as **PETITIONER'S REPLY TO OPPOSITION TO AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES**, on the interested parties as follows:

MICHAEL ZORKIN (Bar No. CA 313308)
Email: mz@thezorkinfirm.com
THE ZORKIN FIRM
6320 Canoga Ave., 15th Floor
Woodland Hills, California 91367
Telephone: 323.493.8075
Attorneys for Plaintiff
Larisa Sabadash

**X   BY EMAIL SERVICE**.  I served the foregoing documents on the interested parties in this action by placing a true and correct copy thereof via electronic mail attachment to the email address for the above identified person, and I sent such electronic mail to said persons personally without any transmission error.

_   **BY US MAIL**     By placing the above described true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona.  I caused such envelope to be deposited in the Sherman Oaks, CA box, which is regularly maintained by US Postal Service, with delivery fees pre-paid and provided for, addressed to the person on whom said document is to be served.

Executed on June 19, 2026, at Los Angeles, California.

_X_  (Federal) I declare that I am employed in the offices of a member of this court at whose
     direction the service was made.

              _____
              **Joseph M. Kar**

20

**REPLY TO OPP TO PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

Joseph M. Kar (SBN 207414)
jkar@civillegal.com
**LAW OFFICE OF JOSEPH M. KAR, PC**
15250 Ventura Blvd., Suite PH-1220
Sherman Oaks, CA 91403
Telephone: (818) 501-6930
Facsimile: (818) 501-6935

**ATTORNEYS FOR PETITIONER,**
ALEKSANDR ALEKSANDROVICH,
GRANT, ASSIGNEE AND SUCCESSOR OF
DAVILLA INVESTING LIMITED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual<br><br>Petitioner,<br><br>v.<br><br>AFB TRADING ONE, INC., a California Corporation;<br><br>Respondents. | **Case No.: 2:25-cv-11869-JFW (MBKx)**<br><br>**DECLARATION OF JOSEPH M. KAR, ESQ. IN REPLY TO OPPOSITION TO PETITIONER'S AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARDS**<br><br>**DATE: JULY 13, 2026**<br>**TIME: 1:30 PM**<br>**CTRM:7A**<br><br>**Judge: Honorable John F. Walter**<br>**Ctrm: 7A**<br><br>**[9 U.S.C. § 207]**<br><br>**Trial: Not set** |

**TO THE HONORABLE JOHN F. WALTER, ALL INTERESTED**

1

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

**PARTIES AND THEIR ATTORNEYS OF RECORDS:**

    **COMES NOW**, **PETITIONER**, ALEKSANDR ALEKSANDROVICH GRANT, ASSIGNEE AND SUCCESSOR OF DAVILLA INVESTING LIMITED, an individual, ("Petitioner"), by and through his attorneys, and hereby respectfully submits the following Declaration of Joseph M. Kar, Esq. in support of the Amended Petition and accompanying and supporting documents,

**<u>DECLARATION OF JOSEPH M. KAR, ESQ.</u>**

I, Joseph Kar, say,

    1. I am an attorney licensed to practice law in all state courts in California and in the United States Supreme Court. I am the lead attorney of record for Petitioner Aleksandr Aleksandrovich Grant in the above-captioned proceeding. I have personal knowledge of the matters set forth herein, and if called as a witness, I could and would competently testify thereto. I make this Reply Declaration in support of Petitioner's Reply to Respondent AFB Trading One, Inc.'s Opposition to the Amended Petition to Confirm Foreign Arbitral Awards.

    2. All documents referenced herein are already part of the record before this Court, either as previously filed exhibits to Petitioner's Original Reply (Dkt. No. 31), the Knyazev Original Declaration (Dkt. No. 31), the Knyazev Supplemental Declaration (Dkt. No. 43), the Amended Petition and supporting declarations and exhibits, or Respondent's own filings.

    3. The two foreign arbitral awards Petitioner seeks to confirm, the First Award dated August 31, 2021 in the principal amount of US $1,804,017.81 and the Second Award dated August 15, 2025 awarding an additional US $962,853 in pre-award interest plus ₽300,000 in legal expenses,  are each authenticated by apostille issued by the competent authority of the Russian Federation under the Hague Convention of October 5, 1961, and are attached as **Exhibits 1 and 2**, respectively, to the apostilled Declaration of arbitrator Knyazev Dmitry Valeryevich, Master of Law, submitted in support of the Amended Petition ("Knyazev Second

2

Declaration"). The Knyazev Second Declaration is itself authenticated by apostille, as is the Declaration of Petitioner Aleksandr Aleksandrovich Grant submitted in support of the Amended Petition. Moreover, Plaintiffs caused to be filed original signed copies of both awards concurrently with the amended petition.

4. Based on the evidence, Respondent AFB Trading One, Inc. is the wholly-owned California shell corporation of Aleksandr Vitalievich Sabadash. Mr. Sabadash has sworn under penalty of perjury in this District, in his own bankruptcy declaration, that he has been incarcerated in Moscow, Russian Federation since May 2014 and that he is the sole shareholder of AFB Trading One, Inc. A true and correct copy of Mr. Sabadash's declaration was attached to Petitioner's Original Reply (Dkt. No. 31) as Exhibit 11 and remains part of the record in this Court. Sabadash Decl. ¶¶ 2-3. The case in which it was filed is *In re Aleksandr Vitalievich Sabadash*, No. 2:23-bk-15574-NB (Bankr. C.D. Cal.), Dkt. No. 30, in which the Zorkin Firm appeared as counsel for Mr. Sabadash.

5. The Zorkin Firm, which currently represents Respondent AFB Trading One, Inc. in this proceeding, is the same firm that represented Mr. Aleksandr Vitalievich Sabadash personally in *In re Aleksandr Vitalievich Sabadash*, supra. The Zorkin Firm also represents the putative-partner Sabadash in the pending involuntary-bankruptcy proceeding *In re Itkin & Sabadash*, Case No. 2:25-bk-11235-NB, Hon. Neil W. Bason presiding, in which Petitioner Grant filed his Proof of Claim on June 2, 2025 which was two months before the Second Award issued, and placing Mr. Sabadash, AFB's sole shareholder, on direct notice of the continuing arbitral proceedings as to the Davilla/Grant claim.

6. Respondent's opposition to the Amended Petition rests, in substantial part, on a document Mr. Michael Zorkin describes as a "native .eml" Microsoft Outlook email from arbitrator Knyazev dated August 25, 2021, said to attach an order dismissing the arbitration. Zorkin Decl. (Dkt. No. 60) ¶¶ 8-15. Mr. Zorkin offers himself as Respondent's counsel of record, its sole percipient witness on the

3

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

events of August 2021, and the foundation witness for the .eml file's authenticity. He has not been disclosed as a forensic IT expert and his testimony should be disregarded given the overwhelming evidence in support of the Awards validity before this Court. To my knowledge no qualified third-party forensic examiner has examined the file. No chain-of-custody declaration has been provided describing the storage, retrieval, or production of the file between August 2021 and June 2026.

7. The arbitrator who Respondent and its counsel have said authored the alleged August 25, 2021 "dismissal" order has expressly denied issuing it and stated it is invalid. In his Second Declaration submitted in support of the Amended Petition, the arbitrator declares that no order dismissing the arbitration was issued on or about August 25, 2021, and that the document Respondent presented (Dkt. No. 18-1, Ex. 14 and now re-tendered as Dkt. No. 60-5, Ex. 14) was not issued by him, was not signed by him, and is not authentic. Knyazev Second Decl. ¶¶ 11, 14, 19; Knyazev Original Decl. (Dkt. No. 31) ¶¶ 22-23.

8. The arbitrator's Declarations also directly refute the testimony of Tatiana Padalko. The arbitrator declares that on August 25, 2021, Ms. Padalko personally appeared at the scheduled hearing venue in Moscow, that he advised her that Respondents' late submissions would be considered but that the merits proceeding would be continued to August 31, 2021, and that Ms. Padalko acknowledged her understanding and agreed to notify Mr. Zorkin and Mrs. Larisa Sabadash of the continued hearing date. Knyazev Second Decl. ¶ 10; Knyazev Original Decl. ¶ 11. Ms. Padalko's denials (Padalko Decl., Dkt. No. 66, ¶¶ 11-21) are not apostilled, are not corroborated by any other percipient witness, and are offered by an individual who serves as Mr. Sabadash's bankruptcy-court-appointed financial manager under Article 213.9 of the Russian Bankruptcy Code (Padalko Decl. ¶ 5).

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

9. Respondent's own exhibits demonstrate that *Mr. Zorkin treated* the August 25, 2021 procedural ruling as an interlocutory order, not a final dismissal. Among the exhibits Respondent has placed in the record is Mr. Zorkin's own email to the arbitrator dated August 25, 2021 at 3:50 a.m. Pacific (12:50 p.m. Moscow), transmitting yet another filing he himself characterized as "Attached is the Response to the Complaint filed by Larisa Sabadash on behalf of AFB Trading One, Inc. and Golden Sphynx [sic] Limited." That email, identified as Exhibit 3 to the arbitrator's declaration, and is part of this record. It doesn't make sense that Mr. Zorkin claims the arbitration was dismissed while he still transmitted a "Response to the Complaint" to the same arbitrator hours later. Hence, Mr. Zorkin's and his clients' assertion cannot be credited.

10. Respondent's reliance on the International Commercial Arbitration Court ("ICAC") letter (Yurasova Decl., Dkt. No. 64, Ex. 1) confirms, rather than refutes, that this arbitration was an *ad hoc* arbitration proceeding. The ICAC letter states that ICAC "never, at any time, including in 2021 or 2025, provided administrative or logistical support to the ad hoc arbitration involving the parties and arbitrator D.V. Knyazev." Yurasova Decl. Ex. 1 (English translation), p. 1 (emphasis added). So what, the Awards themselves expressly recite that the proceeding was conducted under Federal Law No. 382-FZ as an ad hoc arbitration, not under ICAC administration. Knyazev Second Decl. ¶ 1; Ex. 1, p. 1; Ex. 2, p. 1. The Ministry of Justice letter (Trubina Decl., Dkt. No. 63, Ex. 2) likewise confirms that "an ad hoc arbitral tribunal is constituted by virtue of the parties' agreement... no authorization to perform its functions is required" and that the Ministry of Justice does not maintain a register of ad hoc arbitrators. Trubina Decl. Ex. 2 (English translation), pp. 1-2.

11. Based on the Awards as authenticated by their original signatures or by the concurrent apostille copies, and which have been confirmed by the arbitrator's Declaration, the total amount due and owing under the Awards as of August 15, 2025

5

KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM

is US $2,774,253.20 (comprising US $1,804,017.81 in debt recovery under the First Award, US $962,853 in pre-award interest awarded by the Second Award, and the U.S. dollar equivalent of ₱300,000 in legal expenses). Post-award interest continues to accrue at 6.5% per annum on the principal debt-recovery amount of US $1,804,017.81, equal to US $321.26 per day. From August 16, 2025 through July 13, 2026 (the date of hearing on the Amended Petition) is a period of 332 days, generating US $106,659.46 in additional post-award interest. Accordingly, the total principal judgment amount due as of July 13, 2026 is US $2,880,912.66, with continuing post-award interest accruing thereafter at US $321.26 per day until paid in full.

12. Too, Petitioner reserves all rights to seek attorneys' fees, costs, and sanctions under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, based on the Awards and/or the Court's inherent authority following entry of judgment confirming the Awards. The fees and costs incurred by Petitioner in this proceeding have been substantially increased by Respondent's successive forgery theories — each of which has, upon production of further authenticated evidence, been refuted, and each of which has now been replaced with a new theory aimed at the same outcome of preventing confirmation of awards Respondent does not contest on the merits.

13. Accordingly, the Court is respectfully requested to grant the petition as requested and all the relief requested and such other relief and remedies the Court deemed necessary and proper in the interest of justice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 19th day of June, 2026 at Sherman Oaks, CA.

_____
Joseph M. Kar

6

KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA** )

) **ss**

**COUNTY OF LOS ANGELES** )

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 15250 Ventura Blvd., Ste. 1220, Sherman Oaks, Ca 91403.

On June 19, 2026, I served the foregoing document described as **DECLARATION OF JOSEPH M. KAR, ESQ. IN REPLY TO OPPOSITION TO PETITIONER'S AMENDED PETITION TO CONFIRM FOREIGN ARBITRAL AWARDS** on the interested parties as follows:

MICHAEL ZORKIN (Bar No. CA 313308)

Email: mz@thezorkinfirm.com

THE ZORKIN FIRM

6320 Canoga Ave., 15th Floor

Woodland Hills, California 91367

Telephone: 323.493.8075

Attorneys for Plaintiff

Larisa Sabadash

X  BY EMAIL SERVICE.      I served the foregoing documents on the interested parties in this action by placing a true and correct copy thereof via electronic mail attachment to the email address for the above identified person, and I sent such electronic mail to said persons personally without any transmission error.

_  BY US MAIL        By placing the above described true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona. I caused such envelope to be deposited in the Sherman Oaks, CA box, which is regularly maintained by US Postal Service, with delivery fees pre-paid and provided for, addressed to the person on whom said document is to be served.

Executed on June 19, 2026, at Los Angeles, California.

X      (Federal) I declare that I am employed in the offices of a member of this court at whose direction the service was made.

_____

Joseph M. Kar

7

**KAR DECLARATION ISO PETITIONER'S AMENDED PETITION TO CONFIRM**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 515 South Flower Street, 7th Floor, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*):**RESPONDING PARTIES' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO (1) PUTATIVE PARTNER ALEXANDER SABADASH'S MOTION FOR FEES AND DAMAGES, UNDER 11 U.S.C. § 303(I) (DOCKET NO. 90), AND (2) PUTATIVE PARTNER ALEXANDER SABADASH'S MOTION FOR FEES AND DAMAGES, UNDER 11 U.S.C. § 303(I) AND SANCTIONS UNDER FRBP 9011 AND THE COURTS INHERENT AUTHORITY; (DOCKET NO. 91)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date* June 23, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Joseph E Caceres jec@locs.com,  generalbox@locs.com
Daniel J McCarthy  dmccarthy@hillfarrer.com,  spadilla@hillfarrer.com;dflowers@hfbllp.com
Kurt  Ramlo Adam RamloLegal@gmail.com,  kr@ecf.courtdrive.com,ramlo@recap.email
Charles  Shamash cs@locs.com,  generalbox@locs.com
Oleg Stolyar  astolyar@loeb.com
United States Trustee (LA)  ustpregion16.la.ecf@usdoj.gov
Michael  Zorkin  mz@thezorkinfirm.com

☐   Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 23, 2026 | Sonia Padilla | /s/ Sonia Padilla |
| *Date* | *Printed Name* | *Signature* |

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
CITY NATIONAL PLAZA
515 S. FLOWER STREET, 7TH FLOOR
LOS ANGELES, CALIFORNIA 90071